**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

In the Matter of the Arbitration Between    )
                                                     )

CORPORACIÓN MEXICANA
DE MANTENIMIENTO INTEGRAL,    )
S. DE R.L. DE C.V.,    )
a Mexican corporation,    )
                        )    Case No. 08-CV-00469-RWR

          Petitioner,    )

v.    )

PEMEX EXPLORACIÓN Y PRODUCCIÓN,    )
Gerencia Jurídica de Exploración y Producción    )
Marina Nacional 329 Edificio A, Octavo Piso    )
Colonia Huasteca, Delegación Miguel Delgado    )
Mexico City, Federal District    )
Mexico C.P. 11311,    )

         Respondent.    )

**PEMEX EXPLORACIÓN Y PRODUCCIÓN'S
REPLY TO PETITIONER'S OPPOSITION TO MOTION TO
DISMISS PETITION TO CONFIRM ARBITRATION AWARD AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Robert B. Duncan (D.C. Bar No. 416283)
René E. Browne (D.C. Bar No. 463989)
HOGAN & HARTSON L.L.P.
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
Tel. (202) 637-5600
Fax. (202) 637-5910
E-mail: rbduncan@hhlaw.com
E-mail: rbbrowne@hhlaw.com

*Attorneys for Respondent
Pemex Exploración y Producción*

Daniel E. González (D.C. Bar. No. 503371)
Richard C. Lorenzo (Florida Bar No. 071412)
(admitted *pro hac vice*)
Maria Eugenia Ramirez (Florida Bar No.
349320) (admitted *pro hac vice*)
HOGAN & HARTSON L.L.P.
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel. (305) 459-6500
Fax. (305) 459-6550
Email: degonzalez@hhlaw.com
Email: rlorenzo@hhlaw.com
Email: meramirez@hhlaw.com
*Attorneys for Respondent
Pemex Exploración Producción*

## TABLE OF CONTENTS

**Page**

I.   BACKGROUND .................................................................................................. 1

II.  MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 2

    A.   The Court Lacks Personal Jurisdiction Over PEP. ................................. 2

    B.   COMMISA's Process and Service of Process are Insufficient. ............... 6

        1.   Insufficient Process ..................................................................... 6

        2.   Insufficient Service of Process .................................................... 8

    C.   COMMISA's Enforcement Petition Fails to State a Claim. ................... 10

        1.   Summary of Proceedings in Mexico ........................................... 11

        2.   COMMISA's Arguments in its Opposition Concerning the
            Dismissal or Stay of the Enforcement Petition are Misleading
            and Erroneous ............................................................................ 15

    D.   COMMISA's Request Concerning the Posting of a Bond is Improper. ... 23

III. CONCLUSION ................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Assoc. Transp. Line, Inc. v. Productos Fotisanitarios Proficol El Carmen, S.A.*,
197 F.3d 1070 (11th Cir. 1999) ...................................................................................5, 6

*BPA Int'l., Inc. v. Kingdom of Sweden*,
281 F. Supp. 2d 73 (D. D.C. 2003)...................................................................................3

*Burman v. Phoenix Worldwide Industries, Inc.*,
437 F. Supp. 2d 142 (D. D.C. 2006)..................................................................................5

*Cellutech v. Centennial Cellular Corp.*,
871 F. Supp. 46 (D. D.C. 1994)..........................................................................................5

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
156 F.3d 310 (2nd Cir. 1998) ...................................................................................20, 23

*Evans v. Petróleos Mexicanos and Pemex Exploración y Producción*,
No. 05-20434, 2006 WL 952265 (5th Cir. April 13, 2006) ......................................24

*Fertilizer Corp. of India v. IDI Mgmt.*,
517 F. Supp. 948 (S.D. Ohio 1981) ...............................................................................23

*Higgins v. SPX Corp.*,
No. 1:05-CV-846, 2006 WL 1008677 (W.D. Mich. April 18, 2006) .........................23

*In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.*
528 F. Supp. 2d 340 (S.D.N.Y. 2007) ............................................................................21

*In The Matter of the Arbitration Between Space Systems/Loral, Inc.
and Yuzhnoye Design Office*, 164 F. Supp. 2d 397 (S.D.N.Y. 2001)........................10

*Intl. Road Fed'n v. Embassy of the Democratic Republic of the Congo*,
131 F. Supp. 2d 248 (D. D.C. 2001).................................................................................9

*Koken v. LDG Re Corp.*,
No. 06-mc-81, 2006 WL 3857489 (E.D. Pa. Dec. 28, 2006) .....................................7

*Libancell S.A.L. v. The Republic of Lebanon*,
No. 06-Civ. 2765 (HB), 2006 WL 1321328 (S.D.N.Y. 2006) ..................................24

*MGM Prods. Group, Inc. v. Aeroflot Russ. Airlines*,
No. 03 Civ. 0500, 2003 WL 21108367 (S.D.N.Y., May 14, 2003) ..........................21

ii

*Nedagro B.V. v. Zao Konversbank,*
    No. 02-Civ-3946(HB), 2003 WL 151997 (S.D.N.Y. Jan. 21, 2003) ........................23

*Pradhan v. Al-Sabah,*
    299 F. Supp. 2d 493 (D. Md. 2004)..................................................................8

*Price v. Socialist People's Lybian Arab Jamahiriya,*
    294 F.3d 82 (D.C. Cir. 2002)..........................................................................3

*Spier v. Calzaturificio Tecnica,*
    663 F. Supp. 871 (S.D.N.Y. 1987) ..........................................................22, 23

*Telcordia Tech., Inc. v. Telkom SA, Ltd.,*
    95 Fed. Appx. 361 (D.C. Cir. 2004)...............................................................23

*TMR Energy Limited v. State Property Fund of Ukraine,*
    411 F.3d 296 (D.C. Cir. 2005).........................................................................7

## Other Authorities

28 U.S.C. § 1330(b)...........................................................................................3

28 U.S.C. § 1608(b)...........................................................................................8

28 U.S.C. §1608(b)(2) ......................................................................................10

28 U.S.C. § 1610(d)(1)......................................................................................24

9 U.S.C. §§ 207, 302 ........................................................................................22

Art. 1458, Mexican Commerce Code ..................................................................11

Art. 1462, Mexican Commerce Code ..................................................................22

Art. 5, Inter-American Convention......................................................................22

Arts. 5(1)(b), 5(1)(c), 5(1)(d), 5(1)(e), (5)(2)(b), Inter-American Convention ............22

Art. 5(1)(e) Inter-American Convention ...............................................................2

D.C. Code Ann. §§13-422, 13-423 (2008) ...........................................................6

## Rules

Fed. R. Civ. P. 12(b)(2), (4), (5), (6) ....................................................................1

Local Civil Rule 5.4(b)(5) ..................................................................................9

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

Respondent, Pemex Exploración y Producción ("PEP"), hereby makes a special and limited entry of appearance in order to reply to Petitioner's, Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V.'s ("COMMISA"), Opposition to PEP's Motion to Dismiss Petition to Confirm Foreign Arbitral Award (the "Enforcement Petition"), for (i) lack of personal jurisdiction; (ii) insufficient process; (iii) insufficient service of process; and (iv) failure to state a claim upon which relief can be granted (the "Opposition") (D.E. 9). *See* Fed. R. Civ. P. 12(b)(2), (4), (5), (6). By making this special and limited appearance to contest the Court's jurisdiction, Respondent does not submit itself in any way to this Court's jurisdiction nor does it consent to jurisdiction, and Respondent reserves all other defenses that it may have with respect to this matter. In support of its reply and Motion to Dismiss, PEP states as follows:

## I.    BACKGROUND

As this Court is already aware, this matter involves a non-confirmed, non-unanimous arbitral decision issued in Mexico (the "Arbitral Decision") related to a certain Mexican Engineering, Procurement, and Construction Contract (the "Contract") entered into between two Mexican entities, PEP and COMMISA (collectively referred to herein as the "Parties"), concerning, among other things, the design, procurement, manufacture, and installation of a pipeline in Mexico. The Contract was to be interpreted in accordance with Mexican substantive law and the arbitration was conducted entirely in Spanish, in Mexico City, Mexico. Consistent with its rights under Mexican law, PEP timely petitioned the appropriate Mexican court – the "competent authority" where such a petition could be brought under Mexican law and the Inter-American Convention on International Commercial Arbitration (the "Inter-American Convention") – to review the Arbitral Decision and nullify it on a number of valid substantive grounds.

1

COMMISA, on the other hand, prematurely sought to enforce the Arbitral Decision before it was final and enforceable under Mexican law. Instead of initially seeking enforcement of the Arbitral Decision in Mexico, COMMISA first came to the United States of America and filed the instant Enforcement Petition before this Court. In doing so, COMMISA failed to comply with the essential requirements of due process and the Federal Rules of Civil Procedure. Notwithstanding the pending Enforcement Petition, and apparently realizing its violations of due process concerning its Enforcement Petition pending in the United States, COMMISA recently initiated Mexican enforcement proceedings of the Arbitral Decision, all of which evidence that COMMISA is simply engaged in a blatant act of forum shopping.

As will be explained in detail below, given that (i) PEP was not formally served with initial process in compliance with the Federal Rules of Civil Procedure and the Foreign Sovereign Immunities Act ("FSIA"); (ii) this Court lacks personal jurisdiction over PEP; (iii) PEP filed before the Eighth Judicial District on Civil Matters of the First Circuit, in Mexico City, Mexico, a 309-page Complaint to Nullify the Arbitral Award (the "Complaint to Nullify"); and (iv) COMMISA recently commenced enforcement proceedings of the Arbitral Decision in Mexico; this Court should exercise its discretion under the Inter-American Convention and dismiss this action in its entirety, or, in the alternative, stay these enforcement proceedings while the Mexican court – the "competent authority" – determines the validity of the Arbitral Decision in question under the laws of Mexico. *See* Inter-American Convention, Art. 5(1)(e).

## II.    MEMORANDUM OF POINTS AND AUTHORITIES

### A.    The Court Lacks Personal Jurisdiction Over PEP.

As explained in PEP's Motion to Dismiss the Enforcement Petition (the "Motion to Dismiss") (D.E. 7), this Court lacks personal jurisdiction over PEP. "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction

under subsection (a) *where service has been made under section 1608 of this title*." 28 U.S.C. § 1330(b) (emphasis provided).  Given that service in this case failed to comply with Section 1608 of the FSIA[1], the statutory requirements to acquire personal jurisdiction over PEP have not been met, and therefore this Court lacks personal jurisdiction.  *See* Discussion on Insufficient Service and Service of Process in Section B, below.

Further, even if there had been proper service of the Enforcement Petition upon PEP – which there was not – COMMISA failed to present evidence demonstrating specific facts that would support personal jurisdiction over PEP.  PEP affirmed in its Motion to Dismiss, and submitted a declaration in support thereof, that the Court lacked general or specific personal jurisdiction over PEP because, among other things, PEP was not "domiciled in, organized under the laws of, [n]or [does it] maintain … its principal place of business" in the District of Columbia nor in any other state in the United States.  *See* Motion to Dismiss at 4-7 and Exhibit B; D.C. Code Ann. §13-422 (2008).    In its Opposition, however, COMMISA misconstrues statements averred in (i) *Evans v. PEMEX*, Case No. H-04-1510, pending before the United States District Court for the Southern District of Texas; (ii) Hoover's Inc.'s reports; (iii) press releases and

---

[1]      The United States District of Columbia Court of Appeals' holding in *Price v. Socialist People's Lybian Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002) concerning foreign states and whether they are "persons" for purposes of the Due Process clause protected by the Fifth Amendment is not applicable here because COMMISA failed to meet the FSIA's statutory requirements for this Court to acquire personal jurisdiction over PEP.  *See* Discussion on Insufficient Service and Service of Process in Section B, herein.  Additionally, the court's personal jurisdiction analysis and holding in *Price* was limited to the application of the 1996 amendments to the FSIA, which were enacted as part of the Antiterrorism and Effective Death Penalty Act dealing with claims against foreign states for torture, hostage taking, and extrajudicial killing.  *See Price*, 294 F.3d 82 at 90.  Further, the *Price* court limited its holding to "actual foreign governments" as the court refused to comment on whether other entities that fall within the FSIA's definition of "foreign state, "such as corporations in which a foreign state owns a majority interest," could be considered "persons" under the Due Process clause.  *See id.* at 100 ("Our decision on this point reaches *only an actual foreign government*; we express no view as to whether other entities that fall within the FSIA's definition of foreign state – including corporations in which a foreign state owns a majority interest … could yet be considered persons under the Due Process Clause.") (emphasis provided).  *See also BPA Int'l., Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 82 (D. D.C. 2003) ("Neither the [1996 FSIA] amendments nor the discussion in *Price* changed the pre-existing requirements that there must be some connection between a plaintiff's claims and the United States for a U.S. court to assert [personal] jurisdiction over a foreign government or its instrumentality").

3

articles concerning PEP's parent company, Petróleos Mexicanos ("PEMEX"); and (iv) the United States Securities and Exchange Commission's ("SEC") website in its attempts to convince this Court that it has general personal jurisdiction over PEP. *See* Kennedy Declaration attached to Opposition ("Kennedy Dec.") ¶ 3-7 and Exhibits A-E. Contrary to COMMISA's allegations, these documents do not establish this Court's personal jurisdiction over PEP. *See* Opposition at 14-18.

First, the majority of the documents that COMMISA attaches to its Opposition in support of its argument concerning personal jurisdiction have no relation to PEP, but to alleged contacts between its parent company, *PEMEX,* and the United States. *See* Kennedy Dec. ¶ 3-7 and Exhibits A-E. For instance, the Hoover's report that COMMISA relies upon refers to PEMEX and another one of its subsidiaries, P.M.I. Comercio Internacional, *not* PEP. *See* Kennedy Dec. ¶ 5 and Exhibit C. The press releases attached to the Kennedy Dec. actually refer to PEMEX and to another one of PEMEX' subsidiaries, PEMEX Gas y Petroquímica Básica – *not* PEP – concerning services performed in Mexico by the subsidiary of a Texas company. *See* Kennedy Dec. ¶ 6 and Exhibit D. The SEC documents COMMISA relies upon in its Opposition concern PEMEX and PEMEX's Project Funding Master Trust, a Delaware statutory trust established by PEMEX (not PEP) pursuant to the terms of a trust agreement between The Bank of New York (as managing trustee), The Bank of New York (Delaware) (as Delaware trustee) and PEMEX (as sole beneficiary and guarantor). *See* Kennedy Dec. ¶ 7 and Exhibit E. Along with PEMEX's other subsidiaries, PEP acts, jointly and severally, as guarantor of PEMEX's payments, not as guarantor of the trust. *See id.*

Additionally, COMMISA alleges that PEP admitted, in a separate lawsuit pending in the United States District Court for the Southern District of Texas, that it "conducts some business in

4

the United States." *See id.* at ¶ 3-4 and Exhibits A-B.   Random, isolated statements made in that lawsuit hardly qualify as the level of "pervasive" conduct with the forum that is required to establish personal jurisdiction. *See id.*; *Assoc. Transp. Line, Inc. v. Productos Fotisanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) ("A party's contacts with the forum that are unrelated to the litigation must be *pervasive* in order to support the exercise of personal jurisdiction ...") (emphasis provided).

COMMISA is also incorrect when it argues that an analysis of PEP's minimum contacts *in the District of Columbia* is not necessary for this Court to establish personal jurisdiction over PEP as the relevant analysis to be made concerns only PEP's contacts with the United States as a whole and not the District of Columbia. *See* Opposition at 14-18.   To establish general jurisdiction over PEP under the District of Columbia's long-arm statute, COMMISA must show that PEP had "minimum contacts *with the District of Columbia* such that the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" (emphasis provided). *Burman v. Phoenix Worldwide Industries, Inc.*, 437 F. Supp. 2d 142, 148 (D. D.C. 2006). "A non-resident defendant need not have been physically present in the District [of Columbia] in order for a court to exercise personal jurisdiction under [the District of Columbia's long-arm statute] ... [h]owever '[a] defendant must purposefully avail himself of the privilege of conducting business *in the forum state* [i.e. the District of Columbia]." *Id. citing Cellutech v. Centennial Cellular Corp.*, 871 F. Supp. 46, 49 (D. D.C. 1994).   This requirement "ensures that the defendants will not be haled into court in a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts ... or of the unilateral activity of another party or third person ....'" *Id.* (citations omitted).

5

Moreover, the language in the District of Columbia's long-arm statute is unambiguous: a District of Columbia court may exercise personal jurisdiction over a person arising from the person's activities or acts that take place *in the District of Columbia*. *See* D.C. Code Ann. §§13-422, 13-423 (2008). As part of its Motion to Dismiss PEP submitted an affidavit in support of its argument that this Court lacks personal jurisdiction over it under the District of Columbia's long-arm statute. *See* Motion to Dismiss at 4-7 and Exhibit B. COMMISA failed to present any evidence of PEP's "pervasive" contacts, or indeed any contacts, in the District of Columbia to rebut PEP's evidence to the contrary. *See, e.g., Assoc. Transp. Line, Inc.*, 197 F.3d 1070 at 1075 ("A party's contacts with the forum that are unrelated to the litigation must be pervasive in order to support the exercise of personal jurisdiction ...").

Further, even if only minimum contacts with the United States as a whole were necessary for this Court to establish personal jurisdiction over PEP, the same reasoning applies. COMMISA failed to present any evidence of "pervasive" conduct or any contacts amounting to something more than "random, fortuitous, or attenuated" in the United States as a whole. *See* Motion to Dismiss at 4-7 and Exhibit B. *See also, e.g., Assoc. Transp. Line, Inc.*, 197 F.3d 1070 at 1075.

In short, given that COMMISA failed to comply with the service provisions of section 1608 of the FSIA and PEP has no adequate minimum contacts with the District of Columbia or the United States, this Court lacks personal jurisdiction over PEP.

**B.    COMMISA's Process and Service of Process are Insufficient.**

**1.    Insufficient Process**

In its Opposition, COMMISA argues, notwithstanding the language of the FSIA, that there is no need for a summons in an arbitral award enforcement action because arbitral award enforcement actions are summary proceedings governed by Federal motion practice. *See*

6

Opposition 2, 8-10. Alternatively, – COMMISA argues – PEP received notice of this proceeding and suffered no prejudice from COMMISA's omission of serving a summons. COMMISA's arguments are flawed and incorrect.

First, COMMISA cites no caselaw in support of its position that the requirement of formal service is merely *optional*. In fact, the two cases COMMISA cites in its Opposition are inapposite. *See id.* at 9. The first case, *Koken v. LDG Re Corp.,* No. 06-mc-81, 2006 WL 3857489 (E.D. Pa. Dec. 28, 2006), is a case from the Eastern District of Pennsylvania, not from the District of Columbia and therefore not binding on this Court. The *Koken* case is also easily distinguishable as it does not concern service upon a foreign state or an agency or instrumentality of a foreign state, but rather service upon an individual and a private company and therefore the service requirements of the FSIA (i.e. formal service with a summons) did not apply. *See generally Koken*, 2006 WL 3857489.

*TMR Energy Limited v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), also relied upon by COMMISA, fails to address the issue of a summons. *See generally TMR Energy*, 411 F.3d 296. In fact, in *TMR Energy,* the foreign state appellant never argued that it had been improperly served, and thus the matter of service of process and personal jurisdiction were never at issue as they are in the present case. *See id.*

Second, COMMISA's counsel's *ex-parte* conversation with the Clerk's Office does not excuse COMMISA for its failure to comply with proper service as mandated by the FSIA in this matter and certainly does not constitute binding legal authority. *See* Opposition at 2, 9; Kennedy Dec. at ¶¶ 8-9. The actual docket in this case reveals that COMMISA simply made no effort to bring this issue to the Court's attention, by filing, for instance, a motion requesting the Court to

7

direct the issuance of a summons.[2]

In short, regardless of whether COMMISA's filing initiating this action is labeled a petition, a complaint, or a motion, due process and the FSIA still demand that PEP be formally served with initial process.[3] *See* 28 U.S.C. § 1608(b) (service in United States courts of an agency or instrumentality of a foreign state shall take place "(1) by delivery of a copy of the summons *and* complaint") (emphasis provided).  COMMISA failed to serve sufficient process upon PEP, and thus COMMISA's Enforcement Petition must be dismissed.

## 2.     Insufficient Service of Process

COMMISA also argues in its Opposition that service of the Enforcement Petition via Federal Express and Express Mail constituted a "special arrangement" under the FSIA and therefore, PEP was properly served. *See* Opposition 2, 8-10.  PEP disagrees.

Although Section 21.1.1 of the Contract provides that "[n]otices of a legal or administrative nature shall be delivered in person, via certified mail or by any other courier service that will ensure receipt thereof, to the authorized representative of PEP's Material Resources Administration," this "Notices" provision is simply an agreement between the Parties with respect to the manner notices are to be provided as the Parties fulfill their respective obligations under the Contract, and *not* an agreement concerning service of process with respect

---

[2]     In its Opposition, COMMISA argues that even if a summons were required, that it is a minor, non-prejudicial defect that does not invalidate service since PEP received actual notice of this proceeding and has appeared by counsel. *See* Opposition at 10-12.  COMMISA obviates, however, that PEP has explicitly stated in every filing made before this Court that it is only specially appearing to contest the Court's jurisdiction over it, that it does not submit itself in any way to this Court's jurisdiction nor does it consent to jurisdiction, and that it reserves all other defenses that it may have with respect to this matter. *See, e.g.*, Motion to Dismiss.

[3]     COMMISA's reliance on *Pradhan v. Al-Sabah*, 299 F. Supp. 2d 493 (D. Md. 2004) in support of its position that its omission of a summons was a mere technical defect is misplaced. *See* Opposition at 10-12.  Although the *Pradhan* court may have held that substantial compliance with Section 1608(b) of the FSIA was sufficient as long as the defendants had actual notice of the suit against them, the district court nevertheless instructed plaintiffs to cure the deficiencies in service and ordered plaintiffs to properly serve *both* the complaint *and* a summons upon the defendants. *Pradhan*, 299 F. Supp. 2d at 500.

to judicial actions. *See* Declaration of Miguel Angel Hernández-Romo, dated June 18, 2008, attached hereto as **Exhibit A** ("Hernández Dec."), at ¶ 6;[4] Contract § 21.1.1. In fact, it is well-settled under Mexican law – the applicable substantive law to the underlying Contract and arbitration – that the domicile that parties provide in a contract is not the domicile where parties shall be legally served with process. *See* Hernández Dec. at ¶ 7.

As such, the execution of the Contract was to be performed in accordance with Mexican procedural law, and therefore, the "Notices" provision in the Contract, in accordance with Mexican law, refers only to the notification of legal documents from one party to the other, but not the service of process of judicial documents. *See* Contract § 23.1, Exhibit 5 to Paparella Affidavit (attached to Enforcement Petition); Hernández Dec. at ¶ 7. This fact is confirmed by COMMISA itself. COMMISA's opposition to PEP's Complaint to Nullify was "served" upon PEP via the Mexican court's judicial notification lists, and not in accordance with the Contract's "Notices" provision. *See* Hernández Dec. at ¶ 9. Further, COMMISA has requested that its recently filed Mexican Enforcement Petition (to enforce the Arbitral Decision in Mexico) similarly be served upon PEP not pursuant to the Contract's "Notices" provision, but rather at PEP's legal domicile in accordance with Mexican law. *See id.* at ¶ 10. In short, COMMISA's service efforts in Mexico confirm and acknowledge that no "special arrangement" exists regarding the service of legal actions concerning the enforcement of the Arbitral Decision.[5]

---

[4]    An electronic copy of the Hernández Dec. is being attached to PEP's Reply to the Opposition to the Motion to Dismiss. The original, executed version of the Hernández Dec. is available for review upon request pursuant to Local Civil Rule 5.4(b)(5).

[5]    The caselaw cited by COMMISA in its Opposition in support of its position is inapposite. For example, in *Intl. Road Fed'n v. Embassy of the Democratic Republic of the Congo*, 131 F. Supp. 2d 248 (D. D.C. 2001), this Court found that the plaintiff and the Embassy of the Democratic Republic of the Congo had a special arrangement for service of process and therefore the plaintiff had properly served the defendant pursuant to Section 1608(a) of the FSIA. *See Intl. Road Fed'n*, 131 F. Supp. 2d at 251. Here, unlike *Intl. Road Fed'n*, service of process must be effected pursuant to Section 1608(b) of the FSIA rather than Section 1608(a). In *In The Matter of the Arbitration Between Space Systems/Loral, Inc. and Yuzhnoye Design Office*, 164 F. Supp. 2d 397 (S.D.N.Y.

9

Given that no "special arrangement" under Section 1608(b)(1) of the FSIA for the service of arbitral award enforcement petitions exists between the Parties, service of the Enforcement Petition must take place in accordance with Section 1608(b)(2) of the FSIA. Specifically, service of the Enforcement Petition required delivering a copy of the summons *and* complaint to a PEP officer, managing or general agent authorized to receive service of process in the United States on behalf of PEP or in accordance to any applicable international convention on service of judicial documents, such as the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention"). As PEP has no officers or managing or general agents in the United States authorized to receive process, then service must be made in accordance with an international convention on the service of judicial documents, such as the Hague Service Convention. *See* Exhibit B to Motion to Dismiss at ¶ 8; 28 U.S.C. §1608(b)(2); *see generally* Hague Service Convention.

Given COMMISA's failure to serve PEP in accordance with an international convention on the service of judicial documents, service upon PEP was insufficient and therefore, COMMISA's Enforcement Petition should be dismissed. *See* 28 U.S.C. §1608(b)(2).

**C.    COMMISA's Enforcement Petition Fails to State a Claim.**

Even if this Court were to determine that personal jurisdiction over PEP meets constitutional muster – which it does not – and that initial service upon PEP was proper – which it was not – this Court should still exercise its discretion and dismiss, or at a minimum stay, these

---

2001), the district court also found that the defendants had been properly served pursuant to a special arrangement found in the parties' Launch Services Agreement. *See In The Matter of the Arbitration Between Space Systems/Loral, Inc. and Yuzhnoye Design Office*, 164 F. Supp. 2d at 402. The court concluded this given that the parties' arbitration clause in the Launch Services Agreement specifically provided "for a court proceeding to enforce the arbitration award." *Id.* Here, no such provision is present anywhere in the Parties' dispute resolution clause or anywhere in the Contract. *See generally* Contract; Exhibit 5 to Paparella Affidavit (attached to Enforcement Petition).

proceedings pending the Arbitral Decision annulment and enforcement actions filed by PEP and COMMISA, respectively, in Mexico.

1.    **Summary of Proceedings in Mexico**

On January 15, 2008 (but received by PEP on February 11, 2008), a non-unanimous Arbitral Tribunal issued its 183-page Arbitral Decision in favor of COMMISA and against PEP. *See* Hernández Dec. at ¶ 12. Co-arbitrator Darío Ulises Oscós Coria issued a reasoned, 30-page dissenting opinion (the "Dissenting Opinion") with regard to various aspects of the Arbitral Decision, holding, among other things, (i) that the parties' arbitration agreement was breached for failing to apply the applicable substantive Mexican law; (ii) that the Arbitral Tribunal went beyond the scope of the arbitration agreement; and (iii) that certain conditions stipulated in the Contract were breached in violation of Mexican law. *See id.* at ¶ 13; Exhibit 3 to Paparella Affidavit (attached to Enforcement Petition).

Notwithstanding that the Dissenting Opinion denies the viability of in excess of US $35 million in damages, plus all accrued interest thereon awarded to COMMISA in the non-unanimous Arbitral Decision, COMMISA argues in its Opposition that PEP's Complaint to Nullify is frivolous and brought solely for purposes of delay. *See* Opposition at 3, 23-24. COMMISA is mistaken.

PEP exercised its right under Mexican law to seek the nullification of the Arbitral Decision as a result of these and other irregularities that transpired during the arbitration. *See* Hernández Dec. at ¶ 14. In accordance with Article 1458 of Mexico's Commerce Code,[6] PEP had three months from the date of notification of the Arbitral Decision, until May 9, 2008, to

---

[6]    Article 1458 of Mexico's Commerce Code states that a "petition for nullity must be made within a period of three months counting from the date of notification of the award." *See* Hernández Dec. at ¶ 14 and Exhibit 1.

request the nullification of the Arbitral Decision. *See id.* On May 7, 2008, PEP timely filed before the Eighth Judicial District on Civil Matters of the First Circuit, in Mexico City, Mexico (the "Mexican Court"), a 309-page Complaint to Nullify the Arbitral Decision, the same Arbitral Decision that COMMISA prematurely now seeks to enforce before this District Court.[7] *See id.* at ¶ 15; Exhibit A to Motion to Dismiss.

In its Complaint to Nullify, PEP specifically alleges that (i) PEP was unable to present its complete defense during the arbitration proceedings; (ii) the Arbitral Decision is contrary to Mexico's public policy because, among other things, it is contradictory and lacks legal foundation; (iii) the Arbitral Decision contains decisions and rulings that go beyond the scope of the Parties' Contract and arbitration agreement; and (iv) the Arbitral Decision concerns controversies that were not intended by the Parties to be submitted to and resolved by arbitration. *See generally*, Exhibit A to Motion to Dismiss; Hernández Dec. at ¶ 16.

In conjunction with the Complaint to Nullify, PEP also requested the Mexican Court issue interim measures in order to maintain the *status quo* pending the final adjudication of PEP's Complaint to Nullify. *See* Hernández Dec. at ¶ 17. The Mexican Court did not issue a resolution with respect to PEP's request for interim measures. *See id.* Given the Mexican Court's omission, on May 12, 2008, PEP again requested the interim measures, which the Mexican Court denied on May 14, 2008, stating that PEP failed to attach certain legal documents to its request that would prove the urgency of the requested interim relief. *See id.* at ¶ 18; Von Wobeser Dec. at Exhibit 2 (attached to Opposition).

---

[7]    COMMISA incorrectly argues in its Opposition that PEP is only seeking the annulment of part of the Arbitral Decision. *See* Opposition at 7, 25. In fact, PEP formally requested the annulment of the entire Arbitral Decision, and COMMISA did not argue otherwise when it answered PEP's Complaint to Nullify in Mexico. *See* Hernández Dec. at ¶ 16.

On May 21, 2008, PEP again requested the issuance of the interim measures and notified the Mexican Court – attaching legal documents in support thereof – that COMMISA had already commenced enforcement proceedings in the United States and thus the entry of interim measures prohibiting COMMISA from further enforcing the Arbitral Decision was urgent. *See* Hernández Dec. at ¶ 19. The Mexican Court, however, denied PEP's request holding that "the urgency of the measures requested has not been verified … [given that] *it has not been verified that the arbitral award is enforceable in Mexico, as there is no evidence of a process for official recognition or enforcement, and there is no change in this situation*." (emphasis provided). *Id.* at ¶ 20 and Exhibit 3. The Mexican Court held that because the Arbitral Decision *had not yet been confirmed* and there was therefore *no proof that the Arbitral Decision was enforceable*, that PEP had not demonstrated the urgency requirement in order for the Mexican Court to grant the requested interim measures.[8] *See id.* at ¶ 21.

COMMISA responded to PEP's Complaint to Nullify on May 19, 2008, and as part of its answer, filed a counterclaim against PEP requesting the enforcement of the Arbitral Decision. *See id.* at ¶ 23. On May 21, 2008, the Mexican Court issued a resolution noting that COMMISA duly answered the Complaint to Nullify, but dismissed COMMISA's counterclaim filed in the Arbitral Decision annulment proceedings. *See id.* at ¶ 24. On May 26, 2008, COMMISA requested the Mexican Court to reconsider its ruling dismissing its counterclaim (the "motion for reconsideration"). *See id.* at ¶ 25. On May 28, 2008, the Mexican Court issued a ruling stating

---

[8]         On May 28, 2008, PEP filed an appeal of the Mexican Court's ruling (the "Mexican Appeal"). *See* Hernández Dec. at ¶ 22 and Exhibit 4. On June 9, 2008, the First Unitarian Tribunal in Civil and Administrative Matters in the Federal District, Mexico City, Mexico (the "First Unitarian Tribunal"), the judicial court responsible for resolving the Mexican Appeal, held that the Mexican Appeal had to be processed in accordance with the Mexican Commerce Code and ordered the Mexican Court to proceed with the appeal in accordance with the Mexican Commerce Code. *See id.*

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

that COMMISA filed the incorrect type of motion to request the court to reconsider its dismissal of COMMISA's counterclaim. *See id.*

As a result, on June 10, 2008, COMMISA filed an "amparo" action (the "amparo action"), a constitutional proceeding, wherein COMMISA alleges that the Mexican Court violated its constitutional rights. *See id.* at ¶ 28. COMMISA's "amparo" action is pending before the Thirteenth Judicial District on Civil Matters in Mexico City, Mexico, under case number 441/2008. *See id.*

Given the Mexican Court's decision to dismiss COMMISA's counterclaim in the nullification proceedings, on May 30, 2008, COMMISA commenced separate enforcement proceedings of the Arbitral Decision in Mexico (the "Mexican Enforcement Petition").[9] *See id.* at ¶ 26. The Mexican Enforcement Petition is currently pending before the Ninth Judicial District on Civil Matters in Mexico City, Mexico, under case number 192/2008, and seeks the identical relief COMMISA seeks before this Court. *See id.* On that same date, COMMISA requested the Mexican Court consolidate its Mexican Enforcement Petition to PEP's Complaint to Nullify. *See id.* at ¶ 27. The Mexican Court denied COMMISA's request stating that the nullification proceedings must be handled independently from the enforcement proceedings. *See id.* To date, PEP has not yet been officially served with COMMISA's Mexican Enforcement Petition.[10] *See id.* at ¶ 26.

---

[9]       Notably, nowhere in its Answer, Mexican Enforcement Petition or any other filing presented in Mexico does COMMISA mention or inform the Mexican courts that it has commenced enforcement proceedings concerning the Arbitral Decision in the United States. *See* Hernández Dec. at ¶ 30. In its Enforcement Petition and Opposition, COMMISA also fails to inform this Court about its multiple filings in Mexico. *See generally*, Enforcement Petition and Opposition.

[10]      Notably, COMMISA has requested that its Mexican Enforcement Petition be served by the Mexican court upon PEP at its legal domicile and not in accordance with the Contract's "Notices" provision. *See* Hernández Dec. at ¶ 10.

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

Finally, on June 13, 2008, the Mexican Court issued an order admitting PEP's Complaint to Nullify and closed the pleadings phase so that the Complaint to Nullify may be resolved. *See id.* at ¶ 29 and Exhibit 6. The Mexican Court's order evidences that PEP's nullification proceedings have been carried out by PEP without undue delay, that no other filings are necessary, and that the Parties now await the Mexican Court's decision on the Complaint to Nullify. *See id.*

Given the above, it is evident that both PEP and COMMISA are aggressively seeking to enforce and protect their respective rights in Mexico in multiple pending court proceedings. These proceedings will impact the validity and potential enforceability of the Arbitral Decision. Until these actions are concluded the Arbitral Decision is not final and therefore cannot be enforced. *See id.* at ¶¶ 1, 15, 21.

### 2. COMMISA's Arguments in its Opposition Concerning the Dismissal or Stay of the Enforcement Petition are Misleading and Erroneous

In its latest filing, COMMISA contends that there are no grounds for this Court to dismiss or stay these enforcement proceedings. *See* Opposition at 18-27. COMMISA is wrong.

COMMISA alleges that PEP is not entitled to a dismissal or stay of these proceedings because, among other things, (i) following the conclusion of the arbitral hearings, PEP's counsel confirmed to the Arbitral Tribunal that PEP had been afforded due process of law during the arbitration hearings; (ii) PEP has already attempted, but been denied in two separate occasions, to persuade the Mexican courts to issue an order granting interim measures concerning COMMISA's enforcement action in the United States pending PEP's annulment proceedings in Mexico; and (iii) United States courts are disinclined to stay enforcement proceedings that commenced prior to arbitral award annulment proceedings. *See id.* at 3, 18-27. COMMISA's arguments are misleading and flawed.

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

First, COMMISA argues that PEP's Complaint to Nullify is baseless because PEP's counsel confirmed to the Arbitral Tribunal, during the arbitration hearings, that PEP had been afforded due process of law during the arbitration. *See id.* at 3, 23-24. Although PEP's counsel did confirm to the Arbitral Tribunal in Mexico that the principles of due process and equality had not been breached during the arbitration hearings (held in Mexico City, Mexico from June 5-8, 2006), the violation PEP complains about in its Complaint to Nullify occurred *after* the arbitration hearings as will be further explained below. *See* Kennedy Dec. at Exhibit L; Hernández Dec. at ¶ 32.

At the inception of the arbitration, PEP challenged the Arbitral Tribunal's jurisdiction to resolve its disputes with COMMISA. The Arbitral Tribunal withheld adjudication on PEP's jurisdictional challenge *until the Arbitral Decision was rendered. See* Exhibit 2 at ¶ 770 to Paparella Affidavit (attached to Enforcement Petition) ("With regard to the claims of a lack of competent juridisdiction on the part of the Arbitral Tribunal and a lack of admissibility requirements posed by the Respondent, the Arbitral Tribunal has rejected these items in their entirety ...."). At no time did PEP waive its jurisdictional challenge through representations made during the arbitral hearings. *See id., e.g.,* at ¶¶ 93, 105.

Further, almost six months following the conclusion of the arbitration hearings, on December 13, 2006, the Arbitral Tribunal issued Procedural Order No. 6 wherein it ordered COMMISA and PEP to carry out proceedings to obtain more evidence ("Diligencias Para Mejor Proveer") and respond to a written questionnaire prepared by the Arbitral Tribunal through which the Parties would be able to offer new evidence not produced during the evidentiary hearings. *See* Hernández Dec. at ¶ 33 and Exhibit 7. The Parties responded to the Arbitral Tribunal's questionnaire in March 2007. *See id.* at ¶ 33.

16

One of the issues the Arbitral Tribunal inquired about in its written questionnaire dealt with Technical Controversies 34 and 35. *See id.* at ¶ 34. The Arbitral Tribunal requested that the Parties produce new evidence concerning the damages purportedly caused to COMMISA with respect to Technical Controversies 34 and 35. *See id.* Unsatisfied with the Parties' preliminary responses to the questionnaire, on July 31, 2007, the Arbitral Tribunal again requested that the Parties provide additional evidence with respect to Technical Controversies 34 and 35. These questions, however, asked the Parties to provide information, among other things, concerning certain costs allegedly incurred by COMMISA with respect to these Technical Controversies in order for the Arbitral Tribunal to conclude the drafting of the Arbitral Decision. *See id.* at ¶ 35 and Exhibit 8.

Although both Parties *objected* to the Arbitral Tribunal's request that they produce new evidence following the conclusion of the arbitration hearings, the Arbitral Tribunal insisted it needed the information to conclude its drafting of the Arbitral Decision. *See id.* at ¶ 36 and Exhibits 9, 10. In fact, not only did COMMISA object and inform the Tribunal it was not seeking the specific costs the Arbitral Tribunal was inquiring about (these costs were ultimately awarded in violation of the Contract and Mexican law), but PEP specifically objected to the production of this new evidence stating that it violated the Contract, the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules"), Mexican law, the principles of due process and equity, and left PEP completely defenseless. *See id.* at ¶ 36 and Exhibit 9.

Notwithstanding, in October 2007 the Arbitral Tribunal notified the Parties that the arbitration proceedings were closed. *See id.* at ¶ 37. The Arbitral Tribunal waited to rule on PEP's objections, and it did so in the Arbitral Decision, stating, among other things, that it did not believe it had exceeded the scope of the Parties' Contract and arbitration agreement. *See id.*

17

at ¶ 38.  Importantly, the dissenting arbitrator in his reasoned 30-page Dissenting Opinion held that the Arbitral Tribunal exceeded its authority, failed to follow Mexican law and decided matters not subject to arbitration.

Based in part on the violations outlined above, on May 7, 2008, PEP filed a Complaint to Nullify the Arbitral Decision in Mexico – the "competent authority" under the Inter-American Convention.  *See id.* at ¶ 39.  Therefore, contrary to COMMISA's allegations in its Opposition, PEP's Complaint to Nullify hardly qualifies as a baseless and meritless annulment proceeding as COMMISA leads this Court to believe.  *See* Opposition at 3, 23-24.  To the contrary, not only does PEP have various valid grounds for requesting the annulment of the Arbitral Decision, but even the Dissenting Opinion from one of the arbitrators evidences that various irregularities did indeed take place.  *See* Exhibit 3 to Paparella Affidavit (attached to Enforcement Petition). These irregularities, if confirmed by the Mexican Court, afford PEP valid grounds to seek the nullification of the Arbitral Decision.

Second, in conjunction with the Complaint to Nullify, PEP requested the Mexican Court issue interim measures in order to maintain the *status quo* of the annulment proceedings.  *See* Hernández Dec. at ¶ 17.  Although the Mexican Court denied PEP's initial request, COMMISA fails to explain in its Opposition the reasoning behind the Mexican Court's first denial of PEP's request:  that PEP failed to attach certain legal documents to its request that would prove the urgency of the requested interim measures.  *See id.* at ¶ 18 and Exhibit 2.

On May 21, 2008, PEP again requested the issuance of the interim measures, but this time it notified the Mexican Court – and attached legal documents in support thereof – that COMMISA had already commenced enforcement proceedings in the United States and thus the entry of interim measures prohibiting COMMISA from further enforcing the Arbitral Decision

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

was urgent. *See id.* at ¶ 19.  The Mexican Court denied PEP's request holding that "the urgency of the measures requested has not been verified … [given that] *it has not been verified that the arbitral award is enforceable in Mexico, as there is no evidence of a process for official recognition or enforcement, and there is no change in this situation.*"  (emphasis provided).  *Id.* at ¶ 20 and Exhibit 3.

Again, COMMISA attempts to mislead this Court by omitting important information concerning the Mexican Court's decision, principally that the Mexican Court held that because the Arbitral Decision *has not yet been confirmed* and there was therefore *no proof that the Arbitral Decision was enforceable in Mexico*, that PEP had not demonstrated the urgency requirement in order for the Mexican Court to grant the requested interim measures. *See id.* at ¶¶ 20-21 and Exhibit 3.  The Mexican Court's orders therefore further evidence that the Arbitral Decision is not yet final and is not binding, and should therefore not be confirmed by this Court. *See id.* at ¶¶ 1, 15, 21 and Exhibits 2, 3; Art. 5(1)(e), Inter-American Convention.

COMMISA also omits to inform this Court that, as a result of the Mexican Court's ruling, on May 28, 2008, PEP appealed the Mexican Court's ruling denying PEP's request for interim measures. *See* Hernández Dec. at ¶ 22.  PEP's Mexican Appeal is currently pending in Mexico. *See id.*

Third, contrary to COMMISA's assertions, United States courts are not disinclined to stay enforcement proceedings when the enforcement petition has been filed prior to the filing of arbitral award annulment proceedings in another jurisdiction. *See* Opposition at 25-27.  In fact, United States district courts have generated a list of factors that should be balanced by the district court where the enforcement petition is pending when determining whether to grant a stay of the United States enforcement proceedings. *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,

HOGAN & HARTSON L.L.P., IIII BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

156 F.3d 310 (2nd Cir. 1998). These factors are the following: (1) the general objectives of arbitration; (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved; (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review; (4) the characteristics of the foreign proceedings; (5) a balance of the hardships to each of the parties; and (6) any other circumstances that could shift the balance in favor or against the stay. *See Europcar Italia*, 156 F.3d at 317-318.

Here, the *Europcar* balancing factors weigh heavily in favor of granting, at a minimum, a stay of these proceedings. More specifically, (i) as previously explained, there are various actions currently pending before the Mexican courts, including PEP's Complaint to Nullify, PEP's Mexican Appeal, COMMISA's "amparo" action, and COMMISA's Mexican Enforcement Petition;[11] (ii) the Arbitral Decision will not be scrutinized in Mexico under a less deferential standard of review than in the United States given Mexico's comprehensive and modern arbitration rules, regulations, and laws; (iii) the foreign Mexican proceedings were commenced by both PEP (to annul the Arbitral Decision) and by COMMISA (to enforce the Arbitral Decision); (iv) COMMISA is seeking to enforce the Arbitral Decision in *both* the United States and Mexico (where PEP's Arbitral Decision annulment proceedings are also pending); and (v) the Arbitral Decision should not be enforced in the United States because it could eventually be annulled or set aside in Mexico (the "competent authority") and that would raise concerns of international comity. *See* Hernández Dec. at ¶ 40. Accordingly, the balance of the *Europcar* factors and of the Parties' hardship tilts in favor of PEP.

---

[11]    Although the proceedings pending in Mexico could be completed in less than one year, the proceedings may also take up to two years to complete depending on whether COMMISA takes any actions to delay the proceedings in Mexico. *See* Hernández Dec. at ¶ 31.

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

The two cases relied upon by COMMISA in its Opposition to support its argument against a stay are inapposite. *See* Opposition at 25. In *In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.*, 528 F. Supp. 2d 340 (S.D.N.Y. 2007), the court weighed the six *Europcar* balancing factors when deciding whether to stay the confirmation proceedings before it and held that it would weigh the first two factors – neither of which concerned the timing of the filing of the annulment action – "more heavily" than the others. *Id.* at 360 ("Here, the Court finds that, on balance, the above-cited factors favor enforcement of the Award, and, in particular, that the first and second factors overwhelmingly favor enforcement."). Although in *In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.* the timing of the filing of the annulment action was merely mentioned as a subpart of the fourth *Europcar* factor, COMMISA incorrectly alleges in its Opposition that the court based its reasoning on that one factor. *See id.*; Opposition at 25. To the contrary, the court determined that on balance, the *Europcar* factors favored enforcement of the award in that case. *See In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.*, 528 F. Supp. 2d at 362.

Similarly, in *MGM Prods. Group, Inc. v. Aeroflot Russ. Airlines*, No. 03 Civ. 0500, 2003 WL 21108367 (S.D.N.Y., May 14, 2003), also cited by COMMISA, the court weighed the same six *Europcar* factors when deciding whether to stay the confirmation proceedings before it and held that, on balance, all of the factors taken as a whole (not just the timing of the filing of the annulment action in Sweden) weighed heavily against granting a stay in that particular case. *Id.* at *5.

Finally, under the plain language of the Federal Arbitration Act ("FAA"), arbitral awards should be confirmed *unless* the federal court where enforcement is sought "finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said

21

[Inter-American] Convention." 9 U.S.C. §§ 207, 302.  Accordingly, pursuant to the FAA and the Inter-American Convention, this Court may exercise its discretion and refuse to enforce the Arbitral Decision given that multiple grounds for refusal of recognition or enforcement of the Arbitral Decision - as specified in the Inter-American Convention - are present and have been raised by PEP in its pending Complaint to Nullify in Mexico[12] as explained in more detail in PEP's Motion to Dismiss.[13]  *See* 9 U.S.C. §§ 207, 302; Arts. 5(1)(b), 5(1)(c), 5(1)(d), 5(1)(e), (5)(2)(b), Inter-American Convention.  *See also, e.g., Spier v. Calzaturificio Tecnica,* 663 F. Supp. 871, 874 (S.D.N.Y. 1987) (holding that adjournment of an arbitral award enforcement petition is "[c]learly [a] remedy [that] is discretionary with the district court.").

    In short, the courts in Mexico are clearly in a better position to determine whether the Arbitral Decision, entered at the conclusion of an arbitration between two Mexican parties conducted in Mexico entirely in Spanish, and where the Arbitral Tribunal was required to apply Mexican substantive law, is valid and enforceable under that foreign nation's laws.  Accordingly, and in accordance with the FAA, the Inter-American Convention, and the doctrine of comity,

---

[12]     In the Complaint to Nullify, PEP seeks the annulment of the Arbitral Decision under the following grounds provided in the Inter-American Convention:  (i) PEP was unable to present its complete defense during the arbitration proceedings; (ii) the Arbitral Decision concerns controversies that were not intended by the Parties to be submitted to and resolved by arbitration; (iii) the Arbitral Decision exceeds the scope of the Parties' Contract and arbitration agreement; and (iv) confirmation or enforcement of the Arbitral Decision would be contrary to public policy.  *See* Arts. 5(1)(b), 5(1)(c), 5(1)(d), (5)(2)(b), Inter-American Convention; *see generally,* Complaint to Nullify.  Given the pending Complaint to Nullify filed in Mexico, the Arbitral Decision is therefore "not yet binding on the [P]arties."  Art. 5(1)(e), Inter-American Convention.

[13]     In its Opposition, COMMISA disingenuously refers to Article 1461 of Mexico's Commerce Code to argue that when an arbitration award is entered, the arbitral award is binding and upon petition shall be enforced.  *See* Kennedy Dec. at ¶ 16 and Exhibit K, attached to Opposition; Hernández Dec. at ¶ 41 and Exhibit 1.  COMMISA, however, fails to inform this Court that Article 1462 of Mexico's Commerce Code then delineates, in detailed manner, all six grounds available under Mexican law for requesting the annulment of an arbitral award.  *See* Hernández Dec. at ¶ 41 and Exhibit 1.  Notably, these six annulment grounds under Mexican law are substantially identical to the seven arbitral award annulment grounds available under the Inter-American Convention.  *Compare* Art. 1462, Mexican Commerce Code *with* Art. 5, Inter-American Convention; Hernández Dec. at ¶ 41 and Exhibit 1. *See also* Claus Von Wobeser, *Mexico, in Arbitration World,* 205 (J. William Rowley QC et al. eds., 2006) (commenting that, in Mexico, the recognition or enforcement of an arbitral award may be denied under certain circumstances delineated under Mexican law).

this Court should exercise its discretion and dismiss, or in the alternative stay,[14] COMMISA's

Enforcement Petition given the Mexican Court's pending determination on the merits of the

Parties' multiple filings, particularly PEP's Complaint to Nullify, filed before the various

Mexican courts. *See* Art. 5(1)(e), Inter-American Convention; Article 6, Inter-American

Convention ("If the competent authority mentioned in Article 5.1.e [*e.g.* Mexico] has been

requested to annul or suspend the arbitral decision, the authority before which such decision is

invoked [e.g. United States] *may*, if it deems appropriate, *postpone a decision on the execution of*

*the arbitral decision ....*") (emphasis provided); *Telcordia Tech., Inc. v. Telkom SA, Ltd.,* 95 Fed.

Appx. 361 (D.C. Cir. 2004) (affirming district court's dismissal of arbitral award enforcement

petition in light of defendant's pending challenge of award before South Africa courts); *Nedagro*

*B.V. v. Zao Konversbank*, No. 02-Civ-3946(HB), 2003 WL 151997, at *7 (S.D.N.Y. Jan. 21,

2003) (holding that deferment of the arbitral award enforcement petition was appropriate in light

of the pendency of annulment proceedings in Russia).[15]

## D.    COMMISA's Request Concerning the Posting of a Bond is Improper.

COMMISA also argues that if this Court were to grant PEP's request for a stay, that it

should then require PEP to post a bond in an amount exceeding US $152.8 million, and to

---

[14]    Notably, pursuant to Mexican law, when a party has requested the annulment of an award in a foreign country, the Mexican court where enforcement is being sought can stay the enforcement proceedings at its discretion pending the completion of the annulment proceedings in the foreign country. *See* Claus Von Wobeser, *Mexico*, *in Arbitration World*, 205 (J. William Rowley QC et al. eds., 2006). Similarly, in its Motion to Dismiss and reply filed in support thereof, PEP requests this Court to grant, in the alternative, this same remedy also afforded by Mexican courts. *See generally* Motion to Dismiss and reply filed in support thereof.

[15]    *See also Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998) ("[W]here a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings."); *Higgins v. SPX Corp.*, No. 1:05-CV-846, 2006 WL 1008677, at *4 (W.D. Mich. April 18, 2006) (holding that "comity and efficient use of judicial resources does strongly favor staying this action to await the decision of the Brazilian courts as to the nullification action."); *Spier*, 663 F. Supp. at 871 (holding that stay of petition to enforce arbitral award was proper in light of respondent's challenge of award in Italy); *Fertilizer Corp. of India v. IDI Mgmt.*, 517 F. Supp. 948 (S.D. Ohio 1981) (holding that stay of petition to enforce arbitral award was proper in light of respondent's challenge of award in India).

23

increase such security by US $1 million per month for interest. *See* Opposition at 3, 28-29.

COMMISA's request for a bond requirement is improper under the Inter-American Convention,

the FSIA, Mexican law, and PEP's own organic law.

First, although the Inter-American Convention provides this Court with the discretion to

order the party opposing enforcement of the arbitral award to post appropriate guarantees, the

posting of appropriate guarantees is discretionary and not mandatory. *See* Art. 6, Inter-American

Convention.[16]

Second, the FSIA specifically states that the property of a foreign state is immune from a

pre-judgment writ of attachment – such as the one COMMISA seeks through its bond request –

unless the foreign state has *explicitly waived* its immunity from attachment. *See* 28 U.S.C. §

1610(d)(1). *See also Libancell S.A.L. v. The Republic of Lebanon*, No. 06-Civ. 2765 (HB), 2006

WL 1321328, at *3 (S.D.N.Y. 2006) (holding that the Republic of Lebanon was immune from

pre-judgment attachment pursuant to Section 1610(d) of the FSIA because it had not explicitly

waived its immunity from pre-judgment attachment).[17]  Here, no such explicit waiver by PEP

exists and, therefore, COMMISA's request that PEP be required to post a bond is improper.

Finally, PEP is a decentralized government agency of the Federal Government of Mexico

and a subsidiary of PEMEX, an agency of the Mexican government. *See Evans v. Petróleos*

*Mexicanos and Pemex Exploración y Producción*, No. 05-20434, 2006 WL 952265, at *1 (5th

Cir. April 13, 2006) (affirming district court's finding that PEMEX and PEP were agencies of

---

[16]        "If the competent authority mentioned in Article 5.1.e has been requested to annul or suspend the arbitral decision, the authority before which such decision is invoked may, if it deems appropriate, postpone a decision on the execution of the arbitral award decision and, at the request of the party requesting execution, *may* also instruct the other party to provide appropriate guaranties." (emphasis provided). *See* Art. 6, Inter-American Convention.

[17]        Notably, the property of a foreign central bank is "absolutely immune from pre-judgment attachment, and that immunity cannot be waived." *Libancell,* 2006 WL 1321328 at *3.

the Mexican government within the meaning of the Foreign Sovereign Immunities Act). As a decentralized government agency of the Federal Government of Mexico, PEP is exempt, under Mexican law and PEP's own organic law, from offering guarantees and posting bonds as is required of other non-governmental entities. *See* Hernández Dec. at ¶¶ 42-45 and Exhibits 11, 12, 13.

Further, the Supreme Court of Mexico has recognized PEMEX, PEP's parent company, as a solvent government entity that is also exempt from offering guarantees and posting bonds given that more than 40% of Mexico's monetary budget comes from PEMEX's oil income. *See id.* at ¶ 46. Therefore, the probabilities that PEP might disappear, become insolvent or hide its assets are basically null and non-existent. *See id.* at ¶ 47.

Based on the above, this Court should deny COMMISA's request that, if a stay is granted, PEP be ordered to post a bond.

## III.    CONCLUSION

Based on the allegations set forth above and in PEP's Motion to Dismiss, PEP respectfully requests that this Court grant, in its entirety, PEP's Motion to Dismiss COMMISA's Enforcement Petition (D.E. No. 7). Alternatively, PEP respectfully requests that the Court stay these proceedings, without the posting of a bond, pending a decision from the local Mexican courts on the various motions filed by the Parties in Mexico, particularly PEP's Complaint to Nullify.

25

Dated: June 18, 2008

Respectfully Submitted:

s/ Daniel E. González

Robert B. Duncan (D.C. Bar No. 416283)
René E. Browne (D.C. Bar No. 463989)
HOGAN & HARTSON L.L.P.
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
Tel. (202) 637-5600
Fax. (202) 637-5910
E-mail: rbduncan@hhlaw.com
E-mail: rbrowne@hhlaw.com
*Attorneys for Respondent*
*Pemex Exploración y Producción*

Daniel E. González (D.C. Bar No. 503371)
Richard C. Lorenzo (Florida Bar No. 071412)
(admitted *pro hac vice*)
Maria Eugenia Ramirez (Florida Bar No. 349320)
(admitted *pro hac vice*)
HOGAN & HARTSON L.L.P.
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel. (305) 459-6500
Fax. (305) 459-6550
Email: degonzalez@hhlaw.com
Email: rlorenzo@hhlaw.com
Email: meramirez@hhlaw.com
*Attorneys for Respondent*
*Pemex Exploración y Producción*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Daniel E. González
Daniel E. González

27

**SERVICE LIST**
**COMMISA V. PEP**
**CASE NO. 08-CV-00469**
**UNITED STATES DISTRICT COURT, DISTRICT OF COLUMBIA**

**Robert M. Kennedy, Jr.**
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: (202) 721-4600
Facsimile: (202) 721-4646
kennedyr@hugheshubbard.com
Attorney for Petitioner

Via Transmission of Notices of Electronic Filing
Generated by CM/ECF

**Christopher M. Paparella**
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Tel (212) 837-6644
Fax (212) 422-4726
paparella@hugheshubbard.com
Attorney for Petitioner

Via First Class Mail, postage pre-paid

28

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Arbitration Between )<br>)<br>CORPORACIÓN MEXICANA )<br>DE MANTENIMIENTO INTEGRAL, )<br>S. DE R.L. DE C.V., )<br>a Mexican corporation, )<br> )<br>          Petitioner, )<br> )<br>v. )<br> )<br>PEMEX EXPLORACIÓN Y PRODUCCIÓN, )<br>Gerencia Jurídica de Exploración y Producción )<br>Marina Nacional 329 Edificio A, Octavo Piso )<br>Colonia Huasteca, Delegación Miguel Delgado )<br>Mexico City, Federal District )<br>Mexico C.P. 11311, )<br> )<br>          Respondent. )<br>                     ) | Case No. 08-CV-00469-RWR |

## DECLARATION OF MIGUEL ÁNGEL HERNÁNDEZ-ROMO

I, Miguel Ángel Hernández-Romo, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that to the best of my knowledge, the following is true and correct:

1.      I am fluent in the English language and I work as an attorney at Bufete Hernández Romo located in Mexico City, Mexico. I am licensed to practice law in Mexico and have been practicing as an attorney in Mexico since 1992. Bufete Hernández Romo is currently representing PEMEX Exploración y Producción ("PEP") in an action commenced by PEP before the Eighth Judicial District on Civil Matters of the First Circuit, in Mexico City, Mexico, to nullify an arbitral decision (the "Arbitral Decision") entered in an arbitration between PEP and



Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V.'s ("COMMISA") (PEP and COMMISA collectively referred to herein as the "Parties"). The Arbitral Decision is therefore not yet final or enforceable because of PEP's pending nullification proceedings in Mexico. Bufete Hernández Romo has also been retained to represent PEP in an arbitral award enforcement action recently filed by COMMISA before the Ninth Judicial District on Civil Matters in Mexico City, Mexico (the "Mexican Enforcement Petition"), although PEP has not yet been formally served with this action.

2.      I submit this declaration in support of PEP's Reply to COMMISA's Opposition to Motion to Dismiss Petition to Confirm Foreign Arbitral Award (the "Enforcement Petition") filed in the United States District Court for the District of Columbia.

3.      I make this declaration based on my own personal knowledge and if called as a witness could testify competently to the facts stated herein.

### Insufficient Service of Process

4.      I have reviewed the Engineering, Procurement, and Construction Contract entered into between PEP and COMMISA (the "Contract") that formed the basis of the underlying Mexican arbitration dispute between PEP and COMMISA. *See generally* Contract.

5.      Section 21.1.1 of the Contract provides, in its pertinent part, that "[n]otices of a legal or administrative nature shall be delivered in person, via certified mail or by any other courier service that will ensure receipt thereof, to the authorized representative of PEP's Material Resources Administration" (the "Notices provision"). Contract § 21.1.1.

6.      Under Mexican law, contractual "Notices" provisions, such as the one in Section 21.1.1 of the Contract, constitute an agreement between parties with respect to the manner

2



notices are to be provided as the parties fulfill their respective obligations under a contract, but do not constitute an agreement concerning service of process with respect to judicial actions.

7.      In fact, it is well-settled law in Mexico that the domicile that parties provide in a contract is not the domicile where parties shall be legally served with process.  Under Mexican law, the domicile provided in a contract refers only to the parties' domicile for purposes of complying with each other's obligations under the contract, and not to the legal domicile of a party for purposes of service of process, which shall be made strictly in accordance with the applicable Mexican procedural rules for service.  *See* Arts. 116, 117, Code of Civil Procedure for the Federal District, Mexico.

8.      I have also reviewed COMMISA's Request for Arbitration filed against PEP and can confirm that it was the International Court of Arbitration of the International Chamber of Commerce (the "ICC"), not COMMISA, who, pursuant to the ICC Rules of Arbitration (the "ICC Rules"), served the Request of Arbitration upon PEP.  This further evidences that the "Notices" provision in the Contract is not a provision for the service of judicial actions.

9.      Further, I have also reviewed COMMISA's opposition to PEP's Complaint to Nullify the Arbitral Decision filed in Mexico.  Notably, COMMISA's opposition was notified to PEP via the Mexican court's judicial notification lists and not at the address provided in the Contract's "Notices" provision.

10.      Finally, I have also reviewed COMMISA's Mexican Enforcement Petition and can confirm that, although PEP has not yet been formally served with this action, in the Mexican Enforcement Petition COMMISA seeks to serve PEP at PEP's legal domicile and not the address provided in the Contract's "Notices" provision.

3

*Proceedings in Mexico*

11.     Both PEP and COMMISA have filed multiple legal proceedings in Mexico regarding the Arbitral Decision. These multiple Mexican proceedings remain pending and will directly impact the Arbitral Decision.

12.     More specifically, on January 15, 2008 (but received by PEP on February 11, 2008), the Arbitral Tribunal issued its 183-page Arbitral Decision in favor of COMMISA and against PEP in the arbitration between the Parties.

13.     One of the arbitrators, Arbitrator Darío Ulises Oscós Coria, issued a 30-page dissenting opinion (the "Dissenting Opinion") with regard to various aspects of the Arbitral Decision. In the Dissenting Opinion, Arbitrator Darío Ulises Oscós Coria held, among other things, (i) that the parties' arbitration agreement was breached because although the Arbitral Tribunal had to rule based on Mexican law, in some instances, it ruled based on equity; (ii) that the Arbitral Tribunal went beyond the scope of the arbitration agreement; and (iii) that certain conditions stipulated in the Contract were breached in violation of Mexican law. If the Dissenting Opinion is accurate, which PEP contends to be the case, the Arbitral Decision cannot be enforced under Mexican law and will be nullified.

14.     As a result of these and other irregularities that transpired during the arbitration, PEP timely requested the nullification of the Arbitral Decision. In accordance with Article 1458 of Mexico's Commerce Code, which provides that a "petition for nullity must be made within a period of three months counting from the date of notification of the award," PEP had three months from the date of notification of the Arbitral Decision, that is, until May 9, 2008, to request the nullification of the Arbitral Decision. Mexico's Commerce Code, Title Four on

Commercial Arbitration, Art. 1458, in Spanish with certified English translation, attached hereto as **Exhibit 1**.

15.    On May 7, 2008, two days before the expiration of the three months provided by Mexican law and in accordance with its rights under Mexican law, PEP timely filed, before the Eighth Judicial District on Civil Matters of the First Circuit, in Mexico City, Mexico (the "Mexican Court"), a 309-page Complaint to Nullify the Arbitral Decision (the "Complaint to Nullify"), the same Arbitral Decision that COMMISA prematurely now seeks to enforce before the United States District Court for the District of Columbia wherein COMMISA falsely alleges that the Arbitral Decision is final and binding on the parties – which it is not given PEP's pending Complaint to Nullify.

16.    In its Complaint to Nullify, PEP formally requested the annulment of the ***entire*** Arbitral Decision.  Specifically, in the Complaint to Nullify PEP alleges that (i) PEP was unable to present its complete defense during the arbitration proceedings; (ii) the Arbitral Decision is contrary to Mexico's public policy because, among other things, it is contradictory and lacks legal foundation; (iii) the Arbitral Decision contains decisions and rulings that go beyond the scope of the Parties' Contract and arbitration agreement; and (iv) the Arbitral Decision concerns controversies that were not intended by the Parties to be submitted to and resolved by arbitration.

17.    In conjunction with the Complaint to Nullify, PEP also requested the Mexican Court to issue interim measures in order to maintain the *status quo* of the proceedings in Mexico. The Mexican Court did not issue a resolution with respect to PEP's request for interim measures.

18.    As a result, on May 12, 2008, PEP again requested the interim measures, which the Mexican Court denied on May 14, 2008, stating that PEP failed to attach certain legal documents to its request that would establish the urgency of the requested interim measures.  *See*

5

Order from Mexican Court dated May 14, 2008, in Spanish with certified English translation, attached hereto as **Exhibit 2**.

19.      On May 21, 2008, PEP again requested the issuance of the interim measures, attached legal documents in support thereof, and notified the Mexican Court that COMMISA had already commenced enforcement proceedings in the United States and thus the entry of interim measures prohibiting COMMISA from further enforcing the Arbitral Decision was urgent.

20.      The Mexican Court, however, denied PEP's request holding that "the urgency of the measures requested ha[d] not been verified … [given that] it has not been verified that the arbitral award is enforceable in Mexico, as there is no evidence of a process for official recognition or enforcement, and there is no change in this situation." Order from Mexican Court dated May 26, 2008, in Spanish with certified English translation, attached hereto as **Exhibit 3**.

21.      In short, the Mexican Court found there was no urgency in PEP's request given that the Arbitral Decision was not yet final and as such was *unenforceable*. Both Mexican Court orders therefore evidence that the Arbitral Decision is not yet final and is therefore not binding due, in part, to PEP's pending Complaint to Nullify. Notwithstanding these affirmations from the Mexican Court, COMMISA nonetheless continues to press enforcement in the United States.

22.      As a result of the Mexican Court's decisions and COMMISA's continued efforts to enforce the Arbitral Decision in the United States, on May 28, 2008, PEP filed an appeal of the Mexican Court's ruling denying PEP's request for interim measures (the "Mexican Appeal") before the Mexican Court. *See* PEP's Mexican Appeal dated May 28, 2008, in Spanish with certified English translation, attached hereto as **Exhibit 4**. On June 9, 2008, the First Unitarian Tribunal in Civil and Administrative Matters in the Federal District, the judicial court responsible for resolving the Mexican Appeal, held that the Mexican Appeal had to be processed



6

in accordance with the Mexican Commerce Code instead of the Federal Mexican Code of Civil Procedure, and thus ordered the Mexican Court to proceed with the appeal in accordance with the Mexican Commerce Code.

      23.    With respect to PEP's Complaint to Nullify, on May 19, 2008, COMMISA responded to PEP's Complaint to Nullify and, as part of its answer, filed a counterclaim against PEP requesting the enforcement of the Arbitral Decision, the same relief COMMISA seeks before the United States District Court for the District of Columbia.

      24.    On May 21, 2008, the Mexican Court issued a resolution noting that COMMISA answered the Complaint to Nullify, but dismissing COMMISA's counterclaim filed in the Arbitral Decision annulment proceedings.

      25.    On May 26, 2008, COMMISA requested the Mexican Court to reconsider its ruling dismissing its counterclaim (the "motion for reconsideration"). Then, on May 28, 2008, the Mexican Court issued another ruling stating that COMMISA filed the incorrect type of motion to request the court to reconsider its dismissal of COMMISA's counterclaim.

      26.    On May 30, 2008, and in a separate and independent action, COMMISA commenced enforcement proceedings of the Arbitral Decision in Mexico (the "Mexican Enforcement Petition"). The Mexican Enforcement Petition is currently pending before the Ninth Judicial District on Civil Matters in Mexico City, Mexico, under case number 192/2008. *See* COMMISA's Mexican Enforcement Petition dated May 30, 2008, in Spanish with certified English translation, attached hereto as **Exhibit 5**. To date, PEP has not been officially served with COMMISA's Mexican Enforcement Petition, although COMMISA seeks to serve PEP at its legal domicile and not the address provided in the Contract's "Notices" provision.



27.    On that same date, May 30, 2008, COMMISA further requested the Mexican Court to consolidate its Mexican Enforcement Petition with PEP's Complaint to Nullify. The Mexican Court denied COMMISA's request holding that the nullification proceedings must be handled independently from the enforcement proceedings.

28.    On June 10, 2008, COMMISA filed an "amparo" action (the "amparo action"), a constitutional proceeding wherein COMMISA alleges that the Mexican Court violated its constitutional rights when it dismissed its counterclaim and motion for reconsideration. COMMISA's "amparo" action is currently pending before the Thirteenth Judicial District on Civil Matters in Mexico City, Mexico, under case number 441/2008.

29.    On June 13, 2008, the Mexican Court issued an order telling the Parties that it was in the process of preparing a judgment that would be issued with respect to this matter. *See* Mexican Court order dated June 13, 2008, in Spanish with certified English translation, attached hereto as **Exhibit 6**. The Mexican Court's order closed the pleading and discovery phase of this proceeding and evidences that PEP's nullification proceedings of the Arbitral Decision have been carried out by PEP without undue delay by PEP, and that no other filings are necessary now except for the Parties to await the Mexican Court's decision on the Complaint to Nullify.

30.    I have reviewed all of COMMISA's multiple filings in Mexico. I can confirm that *nowhere* in any of its filings presented in Mexico does COMMISA mention or inform the Mexican courts that it has commenced enforcement proceedings concerning the Arbitral Decision in the United States.

31.    Although all of the proceedings pending in Mexico and referenced above could be completed in less than one year, the proceedings may take up to two years to complete

8

depending on whether COMMISA takes any particular actions to delay the proceedings in Mexico.

### PEP's Complaint to Nullify Arbitral Decision

32.    Although during the underlying arbitration hearings PEP's counsel confirmed to the Arbitral Tribunal in Mexico that the principles of due process and equality had not been breached during the arbitration hearings (held in Mexico City, Mexico from June 5-8, 2006), and that PEP had not been defenseless during the arbitration hearings, the violation that PEP complains about in its Complaint to Nullify actually occurred *after* the arbitration hearings.

33.    More specifically, almost six months following the conclusion of the arbitration hearings, on December 13, 2006, the Arbitral Tribunal issued Procedural Order No. 6 wherein it ordered COMMISA and PEP to carry out proceedings to obtain more evidence ("Diligencias Para Mejor Proveer") and respond to a written questionnaire prepared by the Arbitral Tribunal through which the Parties would be able to offer new evidence not produced during the evidentiary hearings. *See* Arbitral Tribunal's Procedural Order No. 6 dated December 13, 2006, in Spanish with certified English translation, attached hereto as **Exhibit 7**. The Parties responded to the Arbitral Tribunal's questionnaire in March 2007. The written questionnaire and post-hearing evidentiary submissions were not contemplated in the arbitral procedural calendar and were *sua sponte* ordered by the Arbitral Tribunal.

34.    One of the issues the Arbitral Tribunal inquired about in its written questionnaire dealt with Technical Controversies 34 and 35. More specifically, the Arbitral Tribunal requested that the Parties produce new evidence concerning the damages purportedly caused to COMMISA with respect to Technical Controversies 34 and 35. *See* Arbitral Tribunal's Procedural Order No.

9



6 dated December 13, 2006, in Spanish with certified English translation, attached hereto as **Exhibit 7.**

35.    Apparently unsatisfied with the Parties' preliminary responses to the questionnaire, on July 31, 2007, the Arbitral Tribunal again requested that the Parties provide additional evidence with respect to Technical Controversies 34 and 35. These questions, however, requested the Parties provide information, among other things, concerning certain costs allegedly incurred by COMMISA with respect to these Technical Controversies in order for the Arbitral Tribunal to conclude the drafting of the Arbitral Decision. *See* Letter from Arbitral Tribunal to the Parties dated July 31, 2007, in Spanish with certified English translation, attached hereto as **Exhibit 8.**

36.    Although both Parties *objected* to the Arbitral Tribunal's request that they produce new evidence following the conclusion of the arbitration hearings, the Arbitral Tribunal insisted it required the information to conclude the drafting of the Arbitral Decision. In fact, not only did COMMISA object and inform the Tribunal it was not seeking the specific costs the Arbitral Tribunal was inquiring about, but PEP itself specifically objected to the production of this new evidence stating that it violated the Contract, the ICC Rules, the principles of due process and equity, and left PEP completely defenseless. *See* Letter from PEP to Arbitral Tribunal dated August 7, 2007, in Spanish with certified English translation, attached hereto as **Exhibit 9;** Letter from COMMISA to Arbitral Tribunal dated August 3, 2007, in Spanish with certified English translation, attached hereto as **Exhibit 10.**

37.    Notwithstanding the Parties' objections, the Arbitral Tribunal insisted on receiving the requested information. In October 2007, the Arbitral Tribunal notified the Parties that the arbitration proceedings were closed.

10



38.    The Arbitral Tribunal waited until the issuance of the Arbitral Decision to rule on PEP's objections referenced above.  In fact, the Arbitral Tribunal ruled upon PEP's objections in the actual Arbitral Decision stating, among other things, that it did not believe it had exceeded the scope of the Parties' Contract and arbitration agreement, a fact disputed by the dissenting arbitrator in his Dissenting Opinion.

39.    Based in part on the Arbitral Tribunal's actions outlined above, on May 7, 2008, PEP filed the Complaint to Nullify the Arbitral Decision in Mexico.  *See* Exhibit A to PEP's Motion to Dismiss.

### *Mexico's Arbitration Laws*

40.    Mexico has adopted and developed a comprehensive and modern compilation of arbitration rules and regulations contained in the Mexican Commerce Code, Title Four, and has entered into international arbitrations, such as the Inter-American Convention on International Commercial Arbitration (the "Inter-American Convention"), concerning the enforcement of arbitral awards.  *See, e.g.,* Mexico's Commerce Code, Title Four on Commercial Arbitration, in Spanish with relevant articles translated into English, attached hereto as **Exhibit 1**.  Further, Mexico's arbitration laws are almost an exact copy of UNCITRAL's Model Law on International Commercial Arbitration.

41.    Under Article 1461 of Mexico's Commerce Code, arbitral awards are recognized as binding.  *See* Mexico's Commerce Code, Title Four on Commercial Arbitration, Article 1461, in Spanish with certified English translation, attached hereto as **Exhibit 1**.  Notwithstanding this general rule, Article 1462 of Mexico's Commerce Code then delineates, in detailed manner, six grounds available under Mexican law through which a party may request the annulment of an arbitral award.  *See* Mexico's Commerce Code, Art. 1462, in Spanish with certified English

11

translation, attached hereto as **Exhibit 1**. These six grounds are substantially similar to the seven grounds for annulment provided under the Inter-American Convention. *See id.*, attached hereto as **Exhibit 1**. PEP is seeking the annulment of the Arbitral Decision based on many of the annulment grounds contemplated under Mexican law and the Inter-American Convention. Given that PEP timely sought annulment of the Arbitral Decision, the Arbitral Decision is not yet binding or enforceable. *See id.*, attached hereto as **Exhibit 1**.

### *The Posting of a Bond*

42.     As a decentralized government agency of the Federal Government of Mexico, PEP is exempt, under Mexican law and PEP's own organic law, from offering guarantees and posting bonds as is required of other non-governmental entities.

43.     Under Article 9 of Mexico's Amparo Law ("Ley de Amparo"), "official legal entities [such as PEP] [are] exempt from providing the guarantees that are required" of other parties under that law. Mexico's Amparo Law, Art. 9, in Spanish with certified English translation, attached hereto as **Exhibit 11**.

44.     Under Article 4 of Mexico's Federal Code of Civil Procedure, "[t]he institutions, services, and departments of the Public Administration of the Federation and of the federal entities [such as PEP] ... shall be exempt from providing the guarantees that the Code requires of the parties." Mexico's Federal Code of Civil Procedure, Art. 4, in Spanish with certified English translation, attached hereto as **Exhibit 12**.

45.     Further, PEP's own Organic Law provides, under Article 14, that "[t]he legal acts signed by Petróleos Mexicanos or any of its Subsidiary Entities [such as PEP] shall be governed by the applicable Federal Laws and the national disputes in which they are involved ... thus being exempt from providing the guarantees that the legal system requires of the parties, even in

12

cases of judicial disputes." PEP's Organic Law, Art. 14, in Spanish with certified English translation, attached hereto as **Exhibit 13**.

46.    Similarly, the Supreme Court of Mexico has recognized Petróleos Mexicanos ("PEMEX"), PEP's parent company, as a solvent government entity that is also exempt from offering guarantees and posting bonds given that more than 40% of Mexico's monetary budget comes from PEMEX's oil income. *See* 8a. Época; Pleno; Gaceta S.J.F.; 86-2, February 1995 at 12, under the title "SUSPENSION EN EL AMPARO PARA QUE ESTA SURTA EFECTOS. PETROLEOS MEXICANOS EN SU CARACTER DE PERSONA MORAL OFICIAL, NO ESTA OBLIGADA A DEPOSITAR LA CANTIDAD REFERIDA EN EL ARTICULO 135 DE LA LEY DE AMPARO."

47.    Therefore, the probabilities that PEP might disappear, become insolvent or hide its assets are entirely null and non-existent.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed in Mexico City, Mexico, on June 18, 2008.


MIGUEL ÁNGEL HERNÁNDEZ-ROMO

13

# EXHIBIT 1

# TÍTULO CUARTO

## Del arbitraje comercial

### CAPÍTULO I
### Disposiciones generales

**Arbitraje comercial nacional e internacional**
1060, 1416, 1422, 1424, 1425, 1461, 1463

**1415** Las disposiciones del presente título se aplicarán al arbitraje comercial nacional, y al internacional cuando el lugar del arbitraje se encuentre en territorio nacional, salvo lo dispuesto en los tratados internacionales de que México sea parte o en otras leyes que establezcan un procedimiento distinto o dispongan que determinadas controversias no sean susceptibles de arbitraje.

1424, 1425, 1461-1463

Lo dispuesto en los artículos **1424, 1425, 1461, 1462** y **1463**, se aplicará aún cuando el lugar del arbitraje se encuentre fuera del territorio nacional.

**Conceptos**
1423

**1416** Para los efectos del presente título se entenderá por:

I. Acuerdo de arbitraje, el acuerdo por el que las partes deciden someter a arbitraje todas o ciertas controversias que hayan surgido o puedan surgir entre ellas respecto de una determinada relación jurídica, contractual o no contractual. El acuerdo de arbitraje podrá adoptar la forma de una cláusula compromisoria incluida en un contrato o la forma de un acuerdo independiente;

1455, 1457 d), 1462 d)

II. Arbitraje, cualquier procedimiento arbitral de carácter comercial, con independencia de que sea o no una institución arbitral permanente ante la que se lleve a cabo;

1415

III. Arbitraje internacional, aquél en el que:

a) Las partes al momento de la celebración del acuerdo de arbitraje, tengan sus establecimientos en países diferentes; o

1418 a), 1457 a), 1461, 1462 a)

b) El lugar de arbitraje, determinado en el acuerdo de arbitraje o con arreglo al mismo, el lugar del cumplimiento de una parte sustancial de las obligaciones de la relación comercial o el lugar con el cual el objeto del litigio tenga una relación más estrecha, esté situado fuera del país en el que las partes tienen su establecimiento.

1418 a), 1422

Para los efectos de esta fracción, si alguna de las partes tienen más de un establecimiento, el establecimiento será el que guarde una relación más estrecha con el acuerdo de arbitraje; y si una parte no tiene ningún establecimiento, se tomará en cuenta su residencia habitual;

*1417, 1418*

IV. Costas, los honorarios del tribunal arbitral; los gastos de viaje y demás expensas realizadas por los árbitros; costo de la asesoría pericial o de cualquier otra asistencia requerida por el tribunal arbitral; gastos de viaje y otras expensas realizadas por los testigos, siempre que sean aprobados por el tribunal arbitral; costo de representación y asistencia legal de la parte vencedora si se reclamó dicho costo durante el procedimiento arbitral y sólo en la medida en que el tribunal arbitral decida que el monto es razonable; y honorarios y gastos de la institución que haya designado a los árbitros;

1416 F. II, 1452-1456, 1457 d), 1462 d)

V. Tribunal arbitral, el árbitro o árbitros designados para decidir una controversia.

1432, 1462

**1417** Cuando una disposición del presente título:

1441 F. I, 1445, 1449 F. II

I. Deje a las partes la facultad de decidir libremente sobre un asunto, esa facultad entrañará la de autorizar a un tercero, incluida una institución, a que adopte la decisión de que se trate, excepto en los casos previstos en el artículo **1445;**

1445

II. Se refiera a un acuerdo entre las partes, se entenderán comprendidas en ese acuerdo todas las disposiciones del reglamento de arbitraje a que dicho acuerdo, en su caso, remita;

1416, 1426, 1427, 1429, 1435-1438, 1452

III. Se refiera a una demanda, se aplicará también a una reconvención, y cuando se refiera a una contestación se aplicará asimismo a la contestación a esa reconvención, excepto en los casos previstos en la fracción I del artículo **1441** y el inciso **a)** de la fracción II del artículo **1449.** Lo anterior, sin perjuicio de la decisión de los árbitros sobre su competencia para conocer de la demanda y de la reconvención.

1414 F. II a), 1441 F. I

**1418** En materia de notificación y cómputo de plazos se estará a lo siguiente:

**Notificación y cómputo de plazos** 1419, 1450, 1451, 1458

I. Salvo acuerdo en contrario de las partes:

a) Se considerará recibida toda comunicación escrita que haya sido entregada personalmente al destinatario o que haya sido entregada en su establecimiento, residencia habitual o domicilio postal; en el supuesto de que no se obtenga después de una indagación razonable la ubicación de alguno de esos lugares, se considerará recibida toda comunicación escrita enviada al último establecimiento, residencia habitual o domicilio postal conocido del destinatario, por carta certificada o cualquier otro medio que deje constancia del intento de entrega;

b) La comunicación se considerará recibida el día en que se haya realizado tal entrega;

II. Las disposiciones de este artículo no serán aplicables a las comunicaciones habidas en un procedimiento judicial.

**Cuándo comenzarán a correr**
1418, 1420, 1450, 1451, 1458

**1419** Para los fines del cómputo de plazos establecidos en el presente título, dichos plazos comenzarán a correr desde el día siguiente a aquél en que se reciba una notificación, nota, comunicación o propuesta. Si el último día de ese plazo es feriado oficial o no laborable en el lugar de residencia o establecimiento de los negocios del destinatario, dicho plazo se prorrogará hasta el primer día laborable siguiente. Los demás días feriados oficiales o no laborables que ocurran durante el transcurso del plazo se incluirán en el cómputo del plazo.

**Renuncia al derecho de impugnar**
1416, 1419, 1420, 1423-1425, 1432, 1457, 1458, 1461, 1462

**1420** Si una parte prosigue el arbitraje sabiendo que no se ha cumplido alguna disposición del presente título de la que las partes puedan apartarse o algún requisito del acuerdo de arbitraje y no exprese su objeción a tal incumplimiento sin demora justificada o, si se prevé un plazo para hacerlo y no lo hace, se entenderá renunciado su derecho a impugnar.

**Intervención judicial**
1422

**1421** Salvo disposición en contrario, en los asuntos que se rijan por el presente título, no se requerirá intervención judicial.

**Lugar de intervención judicial**
1416, 1421

**1422** Cuando se requiera la intervención judicial será competente para conocer el juez de primera instancia federal o del orden común del lugar donde se lleve a cabo el arbitraje.

Cuando el lugar del arbitraje se encuentre fuera del territorio nacional, conocerá del reconocimiento y de la ejecución del laudo el juez de primera instancia federal o del orden común competente, del domicilio del ejecutado o, en su defecto. el de la ubicación de los bienes.

# CAPÍTULO II
## Acuerdo de arbitraje

**Requisitos del acuerdo de arbitraje**
1416, 1420, 1424, 1425, 1432, 1457 F. I a)

**1423** El acuerdo de arbitraje deberá constar por escrito, y consignarse en documento firmado por las partes o en un intercambio de cartas, télex, telegramas, facsímil u otros medios de telecomunicación que dejen constancia del acuerdo, o en un intercambio de escritos de demanda y contestación en los que la existencia de un acuerdo sea afirmada por una parte sin ser negada por la otra. La referencia hecha en un contrato a un documento que contenga una cláusula compromisoria, constituirá acuerdo de arbitraje siempre que dicho contrato conste por escrito y la referencia implique que esa cláusula forma parte del contrato.

**1424** El juez al que se someta un litigio sobre un asunto que sea objeto de un acuerdo de arbitraje, remitirá a las partes al arbitraje en el momento en que lo solicite cualquiera de ellas, a menos que se compruebe que dicho acuerdo es nulo, ineficaz o de ejecución imposible.

Si se ha entablado la acción a que se refiere el párrafo anterior, se podrá no obstante, iniciar o proseguir las actuaciones arbitrales y dictar un laudo mientras la cuestión esté pendiente ante el juez.

**Litigios acuerdo de arbitraje**
1415, 1416, 1420, 1423-1425, 1432, 1457, 1458, 1461, 1462

**1425** Aun cuando exista un acuerdo de arbitraje las partes podrán, con anterioridad a las actuaciones arbitrales o durante su transcurso, solicitar al juez la adopción de medidas cautelares provisionales.

**Medidas cautelares personales**
1415, 1416

# CAPÍTULO III
## Composición del tribunal arbitral

**1426** Las partes podrán determinar libremente el número de árbitros. A falta de tal acuerdo, será un solo árbitro.

**Número de árbitros**
1416 F. V, 1417 F. III

**1427** Para el nombramiento de árbitros se estará a lo siguiente:

**Nombramiento de árbitros**
1416 F. V, 1417 F. III, 1426

**I.** Salvo acuerdo en contrario de las partes, la nacionalidad de una persona no será obstáculo para que actúe como árbitro;

**II.** Sin perjuicio de lo dispuesto en las fracciones **IV** y **V** del presente artículo, las partes podrán acordar libremente el procedimiento para el nombramiento de los árbitros;

**III.** A falta de tal acuerdo:

**a)** En el arbitraje con árbitro único, si las partes no logran ponerse de acuerdo sobre la designación del árbitro, éste será nombrado, a petición de cualquiera de las partes, por el juez;

**b)** En el arbitraje con tres árbitros, cada parte nombrará un árbitro, y los dos árbitros así designados nombrarán al tercero; si una parte no nombra al árbitro dentro de los treinta días del recibo de un requerimiento de la otra parte para que lo haga, o si los dos árbitros no consiguen ponerse de acuerdo sobre el tercer árbitro dentro de los treinta días siguientes contados a partir de su nombramiento, la designación será hecha, a petición de cualquiera de las partes, por el juez;

IV. Cuando en un procedimiento de nombramiento convenido por las partes, una de ellas no actúe conforme a lo estipulado en dicho procedimiento, o las partes o dos árbitros no puedan llegar a un acuerdo conforme al mencionado procedimiento, o bien, un tercero, incluida una Institución, no cumpla alguna función que se le confiera en dicho procedimiento, cualquiera de las partes podrá solicitar al juez que adopte las medidas necesarias, a menos que en el acuerdo sobre el procedimiento de nombramiento se prevean otros medios para conseguirlo, y

V. Toda decisión sobre las cuestiones encomendadas al juez en las fracciones III o IV del presente artículo, será inapelable. Al nombrar un árbitro, el juez tendrá debidamente en cuenta las condiciones requeridas para un árbitro estipuladas en el acuerdo entre las partes y tomará las medidas necesarias para garantizar el nombramiento de un árbitro independiente e imparcial. En el caso de árbitro único o del tercer árbitro, tomará en cuenta asimismo, la conveniencia de nombrar un árbitro de nacionalidad distinta a la de las partes.

**Recusación de los árbitros**
**1429**

# 1428

La persona a quien se comunique su posible nombramiento como árbitro deberá revelar todas las circunstancias que puedan dar lugar a dudas justificadas acerca de su imparcialidad o independencia. El árbitro, desde el momento de su nombramiento y durante todas las actuaciones arbitrales, revelará sin demora tales circunstancias a las partes, a menos que ya se hubiera hecho de su conocimiento.

Un árbitro sólo podrá ser recusado si existen circunstancias que den lugar a dudas justificadas respecto de su imparcialidad o independencia, o si no posee las cualidades convenidas por las partes. Una parte sólo podrá recusar al árbitro nombrado por ella, o en cuyo nombramiento haya participado, por causas de las que haya tenido conocimiento después de efectuada la designación.

**Procedimiento de recusación de árbitros**
**1428**

# 1429

Las partes podrán acordar libremente el procedimiento de recusación de los árbitros.

A falta de acuerdo, la parte que desee recusar a un árbitro enviará al tribunal arbitral, dentro de los quince días siguientes a aquél en que tenga conocimiento de su constitución o de circunstancias que den lugar a dudas justificadas respecto de la imparcialidad del árbitro o su independencia, o si no posee las cualidades convenidas, un escrito en el que exponga los motivos para la recusación. A menos que el árbitro recusado renuncie a su cargo o que la otra parte acepte la recusación, corresponderá al tribunal arbitral decidir sobre ésta.

Si no prosperase la recusación incoada en los términos del párrafo anterior, la parte recusante podrá pedir al juez, dentro de los treinta días siguien-

tes de notificada la decisión por la que se rechaza la recusación, resuelva sobre su procedencia, decisión que será inapelable. Mientras esa petición esté pendiente, el tribunal arbitral, incluso el árbitro recusado, podrán proseguir las actuaciones arbitrales y dictar un laudo.

**1430** Cuando un árbitro se vea impedido de hecho o por disposición legal para ejercer sus funciones o por otros motivos no las ejerza dentro de un plazo razonable, cesará en su cargo si renuncia o si las partes acuerdan su remoción. Si existe desacuerdo, cualquiera de las partes podrá solicitar al juez dé por terminado el encargo, decisión que será inapelable.

**Remoción de los árbitros**
1431

**1431** Cuando un árbitro cese en su cargo en virtud de lo dispuesto en los artículos 1429 o 1430, renuncia, remoción por acuerdo de las partes o terminación de su encargo por cualquier otra causa, se procederá al nombramiento de un sustituto conforme al mismo procedimiento por el que se designó al árbitro que se ha de sustituir.

**Nombramiento de árbitro sustituto**
1429, 1430

# CAPÍTULO IV
## Competencia del tribunal arbitral

**1432** El tribunal arbitral estará facultado para decidir sobre su propia competencia, incluso sobre las excepciones relativas a la existencia o validez del acuerdo de arbitraje. A ese efecto, la cláusula compromisoria que forme parte de un contrato se considerará como un acuerdo independiente de las demás estipulaciones del contrato. La decisión de un tribunal arbitral declarando nulo un contrato, no entrañará por ese solo hecho la nulidad de la cláusula compromisoria.

**Facultad del tribunal arbitral**
1416, 1433, 1449

La excepción de incompetencia del tribunal arbitral deberá oponerse a más tardar en el momento de presentar la contestación. Las partes no se verán impedidas de oponer la excepción por el hecho de que hayan designado a un árbitro o participado en su designación. La excepción basada en que el tribunal arbitral ha excedido su mandato, deberá oponerse tan pronto como se plantee durante las actuaciones arbitrales la materia que supuestamente exceda su mandato. El tribunal arbitral podrá, en cualquiera de los casos, estimar una excepción presentada con posterioridad si considera justificada la demora.

El tribunal arbitral podrá decidir las excepciones a que se hace referencia en el párrafo anterior, desde luego o en el laudo sobre el fondo del asunto. Si antes de emitir laudo sobre el fondo, el tribunal arbitral se declara competente, cualquiera de las partes dentro de los treinta días siguientes a aquél en que se le notifique esta decisión, podrá solicitar al juez resuelva en definitiva; resolución que será inapelable. Mientras esté pendiente dicha

solicitud, el tribunal arbitral podrá proseguir sus actuaciones y dictar laudo.

**Providencias precautorias**
**1432**

**1433** Salvo acuerdo en contrario de las partes, el tribunal arbitral podrá, a petición de una de ellas, ordenar la adopción de las providencias precautorias necesarias respecto del objeto de litigio. El tribunal arbitral podrá exigir de cualquiera de las partes una garantía suficiente en relación con esas medidas.

# CAPÍTULO V
## Sustanciación de las actuaciones arbitrales

**Igualdad de las partes**
**1432, 1435**

**1434** Deberá tratarse a las partes con igualdad y darse a cada una de ellas plena oportunidad de hacer valer sus derechos.

**Libertad para convenir en procedimiento**
**1434**

**1435** Con sujeción a las disposiciones del presente título, las partes tendrán libertad para convenir el procedimiento a que se haya de ajustar el tribunal arbitral en sus actuaciones.

A falta de acuerdo, el tribunal arbitral podrá, con sujeción a lo dispuesto por el presente título, dirigir el arbitraje del modo que considere apropiado. Esta facultad conferida al tribunal arbitral incluye la de determinar la admisibilidad, pertinencia y valor de las pruebas.

**Lugar del arbitraje**
**1415, 1422, 1434, 1435, 1448**

**1436** Las partes podrán determinar libremente el lugar del arbitraje. En caso de no haber acuerdo al respecto, el tribunal arbitral determinará el lugar del arbitraje, atendiendo las circunstancias del caso, inclusive las conveniencias de las partes.

Sin perjuicio de lo dispuesto en el párrafo precedente, el tribunal arbitral podrá, salvo acuerdo en contrario de las partes, reunirse en cualquier lugar que estime apropiado para celebrar deliberaciones entre sus miembros, oír a las partes, a los testigos, o a los peritos, o para examinar mercancías u otros bienes o documentos.

**Fecha de actuaciones arbitrales**
**1424, 1425, 1429, 1436, 1438, 1446-1448**

**1437** Salvo que las partes hayan convenido otra cosa, las actuaciones arbitrales con respecto a una determinada controversia se iniciarán en la fecha en que el demandado haya recibido el requerimiento de someter esa controversia al arbitraje.

**Idioma de las actuaciones arbitrales**
**1424, 1425, 1428, 1436, 1438, 1446, 1447, 1451**

**1438** Las partes podrán acordar libremente el idioma o los idiomas que hayan de utilizarse en las actuaciones arbitrales. A falta de tal acuerdo, el tribunal arbitral determinará el o los idiomas que hayan de emplearse en las actuaciones. Este acuerdo o esta determinación

será aplicable, salvo pacto en contrario, a todos los escritos de las partes, a todas las audiencias y a cualquier laudo, decisión o comunicación de otra índole que emita el tribunal arbitral.

El tribunal arbitral podrá ordenar que cualquier prueba documental vaya acompañada de una traducción a uno de los idiomas convenidos por las partes o determinados por el tribunal arbitral.

**1439** Dentro del plazo convenido por las partes o del determinado por el tribunal arbitral, el actor deberá expresar los hechos en que se funda la demanda, los puntos controvertidos y las prestaciones que reclama; y el demandado deberá referirse a todo lo planteado en la demanda, a menos que las partes hayan acordado otra cosa respecto de los elementos que la demanda y la contestación deban necesariamente contener. Las partes aportarán, al formular sus alegatos, todos los documentos que consideran pertinentes con que cuenten o harán referencia a los documentos u otras pruebas que vayan a presentar.

**Elementos de la demanda**
1417 F. III, 1423, 1432, 1441 F. I, 1449 F. II a)

Salvo acuerdo en contrario de las partes, éstas podrán modificar o ampliar su demanda o contestación, a menos que el tribunal arbitral considere improcedente la alteración de que se trate en razón de la demora con que se haya hecho.

**1440** Salvo acuerdo en contrario de las partes, el tribunal arbitral decidirá si han de celebrarse audiencias para la presentación de pruebas o de alegatos orales, o si las actuaciones se sustanciarán sobre la base de documentos y demás pruebas. Si las partes no hubiesen acordado la no celebración de audiencias, el tribunal arbitral celebrará dichas audiencias en la fase apropiada de las actuaciones, a petición de una de las partes.

**Pruebas y alegatos**
1438, 1440, 1441, 1443

Deberá notificarse a las partes con suficiente antelación la celebración de las audiencias y las reuniones del tribunal arbitral para examinar mercancías u otros bienes o documentos.

De todas las declaraciones, documentos probatorios, peritajes o demás información que una de las partes suministre al tribunal arbitral se dará traslado a la otra parte.

**1441** Salvo acuerdo en contrario de las partes, cuando, sin invocar causa justificada:

**I.** El actor no presente su demanda con arreglo al primer párrafo del artículo **1439**, el tribunal arbitral dará por terminadas las actuaciones;

**Actuaciones del tribunal arbitral**
1417, 1439, 1449

1439  **II.** El demandado no presente su contestación con arreglo a lo dispuesto en el primer párrafo del artículo **1439,** el tribunal arbitral continuará las actuaciones, sin que esa omisión se considere por sí misma como una aceptación de lo alegado por el actor, y

**III.** Una de las partes no comparezca a una audiencia o no presente pruebas documentales, el tribunal arbitral podrá continuar las actuaciones y dictar el laudo basándose en las pruebas de que disponga.

**Peritos**
**1436, 1443**

**1442** Salvo acuerdo en contrario de las partes, el tribunal arbitral podrá nombrar uno o más peritos para que le informen sobre materias concretas y solicitar a cualquiera de las partes que proporcione al perito toda la información pertinente, o le presente para su inspección o le proporcione acceso a todos los documentos, mercancías u otros bienes pertinentes.

**Participación del perito en**
**audiencia**
**1436, 1442**

**1443** Salvo acuerdo en contrario de las partes, cuando una parte lo solicite o el tribunal arbitral lo considere necesario, el perito, después de la presentación de su dictamen escrito u oral, deberá participar en una audiencia en la que las partes tendrán oportunidad de formular preguntas y presentar peritos para que informen sobre los puntos controvertidos.

**Solicitud de asistencia del juez**
**1432**

**1444** El tribunal arbitral o cualquiera de las partes con la aprobación de éste, podrá solicitar la asistencia del juez para el desahogo de pruebas.

# CAPÍTULO VI
## Pronunciamiento del laudo y terminación de las actuaciones

**Estipulaciones del convenio**
**1417, 1432**

**1445** El tribunal arbitral decidirá el litigio de conformidad con las normas de derecho elegidas por las partes. Se entenderá que toda indicación del derecho u ordenamiento jurídico de un país determinado se refiere, a menos que se exprese lo contrario, al derecho sustantivo de ese país y no a sus normas de conflicto de leyes.

Si las partes no indicaren la ley que debe regir el fondo de litigio, el tribunal arbitral, tomando en cuenta las características y conexiones del caso, determinará el derecho aplicable.

El tribunal arbitral decidirá como amigable componedor o en conciencia, sólo si las partes le han autorizado expresamente a hacerlo.

En todos los casos, el tribunal arbitral decidirá con arreglo a las estipulaciones del convenio y tendrá en cuenta los usos mercantiles aplicables al caso.

**1446** En las actuaciones arbitrales en que hubiere más de un árbitro, toda decisión del tribunal arbitral se adoptará, salvo acuerdo en contrario de las partes, por mayoría de votos. Sin embargo, el árbitro presidente podrá decidir cuestiones de procedimiento, si así lo autorizan las partes o todos los miembros del tribunal arbitral.

**Actuaciones arbitrales**
1424, 1425, 1428, 1429, 1432, 1437, 1438, 1447-1449, 1451, 1457, 1459

**1447** Si durante las actuaciones arbitrales, las partes llegaren a una transacción que resuelva el litigio, el tribunal arbitral dará por terminadas las actuaciones y, si lo piden ambas partes y el tribunal arbitral no se opone, hará constar la transacción en forma de laudo arbitral en los términos convenidos por las partes.

**Forma del laudo arbitral**
1424, 1425, 1428, 1429, 1432, 1437, 1438, 1446-1449, 1451, 1457, 1459, 1462

Dicho laudo se dictará con arreglo a lo dispuesto en el artículo **1448**. Este laudo tendrá la misma naturaleza y efectos que cualquier otro dictado sobre el fondo del litigio.

1448

**1448** El laudo se dictará por escrito y será firmado por el o los árbitros. En actuaciones arbitrales con más de un árbitro, bastarán las firmas de la mayoría de los miembros del tribunal arbitral, siempre que se deje constancia de las razones de la falta de una o más firmas.

**Dictado el laudo**
1422, 1423, 1429, 1432, 1438, 1441, 1447, 1450, 1451, 1453, 1455-1458, 1461-1463

El laudo del tribunal arbitral deberá ser motivado, a menos que las partes hayan convenido otra cosa o se trate de un laudo pronunciado en los términos convenidos por las partes conforme al artículo **1447**.

1447

Constarán en el laudo la fecha en que ha sido dictado y el lugar del arbitraje determinado de conformidad con el primer párrafo del artículo **1436**. El laudo se considerará dictado en ese lugar.

Después de dictado el laudo, el tribunal arbitral lo notificará a cada una de las partes mediante entrega de una copia firmada por los árbitros de conformidad con el primer párrafo del presente artículo.

**1449** Las actuaciones del tribunal arbitral terminan por:

**Cuándo terminan**
1417, 1441, 1450, 1451, 1459

I. Laudo definitivo, y

II. Orden del tribunal arbitral cuando:

a) El actor retire su demanda, a menos que el demandado se oponga a ello y el tribunal arbitral reconozca su legítimo interés en obtener una solución definitiva de litigio;

b) Las partes acuerden dar por terminadas las actuaciones; y

c) El tribunal arbitral compruebe que la prosecución de las actuaciones resultaría innecesaria o imposible.

1450, 1451, 1459

El tribunal arbitral cesará en sus funciones al terminar las actuaciones arbitrales, salvo lo dispuesto en los artículos **1450, 1451 y 1459.**

**Corrección del laudo**
1422, 1423, 1429, 1432, 1436, 1438,
1441, 1447, 1448, 1450, 1451, 1453,
1455-1459, 1461-1463

# 1450

Dentro de los treinta días siguientes a la notificación del laudo, salvo que las partes hayan acordado otro plazo, cualquiera de ellas podrá, con notificación a la otra, pedir al tribunal arbitral:

**I.** Corrija en el laudo cualquier error de cálculo, de copia, tipográfico o de naturaleza similar.

El tribunal arbitral podrá corregir cualquiera de los errores mencionados por su propia iniciativa, dentro de los treinta días siguientes a la fecha del laudo;

**II.** Si así lo acuerdan las partes, dé una interpretación sobre un punto o una parte concreta de laudo. Si el tribunal arbitral lo estima justificado efectuará la corrección o dará la interpretación dentro de los treinta días siguientes a la recepción de la solicitud. Dicha interpretación formará parte del laudo.

**Laudo adicional**
1448-1450, 1458

# 1451

Salvo acuerdo en contrario de las partes, dentro de los treinta días siguientes a la recepción del laudo, cualquiera de las partes, con notificación a la otra parte, podrá solicitar al tribunal arbitral que dicte un laudo adicional respecto de reclamaciones formuladas en las actuaciones arbitrales pero omitidas en el laudo. Si el tribunal arbitral lo estima justificado, dictará el laudo adicional dentro de sesenta días.

1450

El tribunal arbitral podrá prorrogar, de ser necesario, el plazo para efectuar una corrección, dar una interpretación o dictar un laudo adicional, con arreglo a lo dispuesto en el párrafo anterior o en el artículo **1450.**

1448

En las correcciones o interpretaciones del laudo o en los laudos adicionales, se aplicará lo dispuesto en el artículo **1448.**

# CAPÍTULO VII
## De las costas

**Costas del arbitraje**
1453, 1455

# 1452

Las partes tienen la facultad de adoptar, ya sea directamente o por referencia a un reglamento de arbitraje, reglas relativas a las costas del arbitraje. A falta de acuerdo entre las partes, se aplicarán las disposiciones del presente capítulo.

**1453** El tribunal arbitral fijará en el laudo las costas del arbitraje.

**Quién las fija**
1416 F. IV, 1452, 1455

**1454** Los honorarios del tribunal arbitral serán de un monto razonable, teniendo en cuenta el monto en disputa, la complejidad del tema, el tiempo dedicado por los árbitros y cualesquiera otra circunstancias pertinentes del caso.

**Honorarios del tribunal arbitral**
1416 F. IV, 1456

Los honorarios de cada árbitro, se indicarán por separado y los fijará el propio tribunal arbitral.

Cuando una parte lo pida y el juez consienta en desempeñar esta función, el tribunal arbitral fijará sus honorarios solamente tras consultar al juez, el cual podrá hacer al tribunal arbitral las observaciones que considere apropiadas respecto de los honorarios.

**1455** Salvo lo dispuesto en el párrafo siguiente, las costas del arbitraje serán a cargo de la parte vencida. Sin embargo, el tribunal arbitral podrá prorratear los elementos de estas costas entre las partes si decide que el prorrateo es razonable, teniendo en cuenta las circunstancias del caso.

**Costo de representación y asistencia legal**
1452, 1453

Respecto del costo de representación y de asistencia legal, el tribunal arbitral decidirá, teniendo en cuenta las circunstancias del caso, qué parte deberá pagar dicho costo o podrá prorratearlo entre las partes si decide que es lo razonable.

Cuando el tribunal arbitral dicte una orden de conclusión del procedimiento arbitral o un laudo en los términos convenidos por las partes, fijará las costas del arbitraje en el texto de esa orden o laudo.

El tribunal arbitral no podrá cobrar honorarios adicionales por la interpretación, rectificación o por completar su laudo.

**1456** Una vez constituido, el tribunal arbitral podrá requerir a cada una de las partes que deposite una suma igual, por concepto de anticipo de honorarios del tribunal arbitral, gastos de viaje y demás expensas de los árbitros, y del costo de asesoría pericial o de cualquier otra asistencia requerida por el tribunal arbitral.

**Anticipo de honorarios del tribunal**
1416 F. IV, 1454

En el curso de las actuaciones, el tribunal arbitral podrá requerir depósitos adicionales de las partes.

Cuando una parte lo solicite y el juez consienta en desempeñar esa función, el tribunal arbitral fijará el monto de los depósitos o depósitos adicionales sólo después de consultar al juez, que podrá formular al tribunal arbi-

tral todas las observaciones que estime apropiadas relativas al monto de tales depósitos y depósitos adicionales.

Si transcurridos treinta días desde la comunicación del requerimiento del tribunal arbitral los depósitos requeridos no se han abonado en su totalidad, el tribunal arbitral informará de este hecho a las partes a fin de que cada una de ellas haga el pago requerido. Si este pago no se efectúa, el tribunal arbitral podrá ordenar la suspensión o la conclusión del procedimiento de arbitraje.

Una vez dictado el laudo, el tribunal arbitral entregará a las partes un estado de cuenta de los depósitos recibidos y les reembolsará todo saldo no utilizado.

# CAPÍTULO VIII
## De la nulidad del laudo

**Nulidad del laudo arbitral**
1432, 1458-1460, 1463

# 1457

Los laudos arbitrales sólo podrán ser anulados por el juez competente cuando:

I. La parte que intente la acción pruebe que:

a) Una de las partes en el acuerdo de arbitraje estaba afectada por alguna incapacidad, o que dicho acuerdo no es válido en virtud de la ley a que las partes lo han sometido, o si nada se hubiese indicado a ese respecto, en virtud de la legislación mexicana;

b) No fue debidamente notificada de la designación de un árbitro o de las actuaciones arbitrales, o no hubiere podido, por cualquier otra razón, hacer valer sus derechos;

c) El laudo se refiere a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje. No obstante, si las disposiciones del laudo que se refieren a las cuestiones sometidas al arbitraje pueden separarse de las que no lo están, sólo se podrán anular estas últimas; o

d) La composición del tribunal arbitral o el procedimiento arbitral no se ajustaron en el acuerdo celebrado entre las partes, salvo que dicho acuerdo estuviera en conflicto con una disposición del presente título de la que las partes no pudieran apartarse o, a falta de dicho acuerdo, que no se ajustaron al presente título; o

II. El juez compruebe que, según la legislación mexicana, el objeto de la controversia no es susceptible de arbitraje, o que el laudo es contrario al orden público.

**1458**  La petición de nulidad deberá formularse dentro de un plazo de tres meses contado a partir de la fecha de la notificación del laudo o, si la petición se ha hecho con arreglo a los artículos **1450** y **1451** desde la fecha en que esa petición haya sido resuelta por el tribunal arbitral.

**Petición de nulidad**
1432, 1450, 1451, 1459, 1460, 1463

**1459**  El juez, cuando se le solicite la anulación de un laudo, podrá suspender las actuaciones de nulidad, cuando corresponda y así lo solicite una de las partes, por el plazo que determine a fin de dar al tribunal arbitral la oportunidad de reanudar las actuaciones arbitrales o de adoptar cualquier otra medida que a juicio del tribunal arbitral elimine los motivos para la petición de la nulidad.

**Suspensión de las actuaciones de nulidad**
1432, 1449-1451, 1459, 1460, 1463

**1460**  El procedimiento de nulidad se sustanciará incidentalmente, de conformidad con lo dispuesto por el artículo **360** del Código Federal de Procedimientos Civiles.

**Procedimiento de nulidad**
1457-1459, 1463

La resolución no será objeto de recurso alguno.

## CAPÍTULO IX
## Reconocimiento y ejecución de laudos

**1461**  Un laudo arbitral, cualquiera que sea el país en que haya sido dictado, será reconocido como vinculante y, después de la presentación de una petición por escrito al juez, será ejecutado de conformidad con las disposiciones de este capítulo.

**Reconocimiento y ejecución de laudos**
1415, 1432, 1450, 1451, 1462

La parte que invoque un laudo o pida su ejecución deberá presentar el original del laudo debidamente autenticado o copia certificada del mismo, y el original del acuerdo de arbitraje a que se refieren los artículos **1416** fracción **I** y **1423** o copia certificada del mismo. Si el laudo o el acuerdo no estuviera redactado en español, la parte que lo invoca deberá presentar una traducción a este idioma de dichos documentos, hecha por perito oficial.

1416 F. I, 1423

**1462**  Sólo se podrá denegar el reconocimiento o la ejecución de un laudo arbitral, cualquiera que sea el país en que se hubiere dictado, cuando:

**Denegación del reconocimiento y ejecución de laudos**
1415

**I.** La parte contra la cual se invoca el laudo, pruebe ante el juez competente del país en que se pide en reconocimiento o la ejecución que:

1463

**a)** Una de las partes en el acuerdo de arbitraje estaba afectada por alguna incapacidad, o que dicho acuerdo no es válido en virtud de la ley a que las partes lo han sometido, o si nada se hubiere indicado a este respecto, en virtud de la ley del país en que se haya dictado el laudo;

*TRIBUNAL SUPERIOR DE JUSTICIA DEL DISTRITO FEDERAL*

1419            b) No fue debidamente notificada de la designación de un árbitro o de las actuaciones arbitrales, o no hubiere podido, por cualquier otra razón, hacer valer sus derechos;

               c) El laudo se refiere a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje. No obstante, si las disposiciones del laudo que se refieren a las cuestiones sometidas al arbitraje pueden separarse de las que no lo están, se podrá dar reconocimiento y ejecución a las primeras;

1416 F. V        d) La composición del tribunal arbitral o el procedimiento arbitral no se ajustaron al acuerdo celebrado entre las partes o, en defecto de tal acuerdo, que no se ajustaron a la ley del país donde se efectuó el arbitraje; o

               e) El laudo no sea aún obligatorio para las partes o hubiere sido anulado o suspendido por el juez del país en que, o conforme a cuyo derecho, hubiere sido dictado ese laudo; o

1415            II. El juez compruebe que, según la legislación mexicana, el objeto de la controversia no es susceptible de arbitraje; o que el reconocimiento o la ejecución del laudo son contrarios al orden público.

**Solicitud de reconocimiento o ejecución**
**1415, 1461, 1462**

# 1463
Si se solicitó a un juez del país en que, o conforme a su derecho, fue dictado el laudo, su nulidad o suspensión, el juez al que se solicita el reconocimiento o la ejecución de laudo podrá, si lo considera procedente, aplazar su decisión y a instancia de la parte que pida el reconocimiento o la ejecución del laudo, podrá también ordenar a la otra parte que otorgue garantías suficientes.

El procedimiento de reconocimiento o ejecución se sustanciará incidentalmente de conformidad con el Artículo **360** del Código Federal de Procedimientos Civiles. La resolución no será objeto de recurso alguno.

# 1464-1500   Derogados.

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel   202  349.4180
fax   202  349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Articles 1458, 1461, 1462 and 1463,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 16, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 17, 2008_

Signature: _____

Mariela Diaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this _17th_ day of _June_ 20_08_, at Washington, DC.

JAMES M. REED
Notary Public District of Columbia
My Commission Expires June 30, 2012

Notary Public

My Commission expires _____

**Commercial Code 2000**                                    **1458-1462**

**1458** The petition for nullity must be made within a period of three months counting from the date of notification of the award or, if the petition has been made in accordance with Articles 1450 and 1451, from the date on which that petition was decided on by the arbitration court.

Petition to nullify
1432, 1450, 1451, 1459, 1460, 1463

# CHAPTER IX
## Recognition and Enforcement of Awards

**1461**  An arbitral award, whatever the country in which it was issued, will be recognized as binding, and, after a written petition is submitted to the judge, it will be enforced pursuant to the provisions in this chapter.

**Recognition and enforcement of awards**
1415, 1432, 1450, 1451, 1462

The party that invokes an award or requests its enforcement must submit the original award duly authenticated or a certified copy thereof, and the original of the arbitration referred to in Articles **1416** section I and **1423** or certified copy thereof. If the award or agreement was not drafted in Spanish, the party that invokes it must submit a translation of said documents into Spanish done by an official translator.

1416 Section I., 1423

**1462**  Recognition and enforcement of an arbitral award, whatever the country in which it was issued, may only be denied when:

**Denial of recognition and enforcement of awards**
1415

I. The party against which the award is invoked proves before the judge with jurisdiction in the country in which recognition and/or enforcement are requested that:

1463

(a) One of the parties to the arbitration agreement is affected by some incapacity, or said agreement is not valid by virtue of the law to which the parties are subject, or if nothing has been stated in this regard, by virtue of the law in the country in which the award was issued;

1419
(b) [A party] was not duly notified of the appointment of an arbitrator or of arbitral proceedings, or was unable, for any other reason, to exercise its rights;

(c) The award refers to a dispute not stipulated in the arbitration agreement or contains decisions that go beyond the terms of the arbitration agreement. However, if the provisions of the award that refer to matters subject to arbitration may be separated from those that are not subject to arbitration, recognition and enforcement may be given for those that are;

1416 Section V
(d) The makeup of the arbitral tribunal or arbitral proceedings was not in conformity with the agreement entered into by the parties, or, if there was no such agreement, they were not in conformity with the law in the country where the arbitration took place; or

(e) The award was not binding on the parties or was annulled or suspended by a judge in the country in which, or pursuant to the laws of which, the award was issued; or

1415
II. The judge proves that, pursuant to Mexican law, the subject of the dispute may not be submitted to arbitration, or the recognition and/or enforcement of the award are contrary to public policy.

**Request for Recognition and/or Enforcement**
1415, 1461, 1462

**1463**   If nullity or suspension is requested from a judge in a country in which, or pursuant to the laws of which, the award was issued, the judge from whom recognition and enforcement of the award is requested may, if he/she so deems proper, postpone the decision and, upon request of the party petitioning for recognition and/or enforcement of the award, the judge may also order the other party to furnish sufficient guarantees.

The proceeding of recognition and/or enforcement will be deemed an incidental proceeding pursuant to Article 360 of the Federal Code of Civil Procedure. The resolution will not be subject to any appeal whatsoever.

# EXHIBIT 2



.....158/2008-II

En catorce de mayo de dos mil ocho, se da cuenta al Juez con el escrito firmado por **JAIME DUARTE AISPURO**, registrado en el libro de correspondencia de este juzgado bajo el número **6690**. Conste.

JUDICIAL DE LA FEDERACIÓN

CIÓN _____ _____

A _____ _____

NERO _____ ____ ___

**MÉXICO, DISTRITO FEDERAL, A CATORCE DE MAYO DE DOS MIL OCHO.**

Agréguese a sus autos, el escrito de Jaime Duarte Aispuro, en su carácter de apoderado legal de PEMEX EXPLORACIÓN Y PRODUCCIÓN, personalidad que acredita en términos del testimonio notarial número veinticinco mil setenta y ocho, expedido por el Notario Público número doscientos treinta y siete, del Distrito Federal y Notario del Patrimonio Inmobiliario Federal, licenciado Alfredo Ayala Herrera, por el cual con fundamento en el artículo 384 del Código Federal de Procedimientos solicita se decreten las medidas necesarias a efecto de mantener la situación de hecho existente, esto es, que se ordene a la demandada (COMMINSA) se abstenga de ejecutar o llevar cualquier acto tendiente a solicitar el reconocimiento del laudo arbitral del que ahora se reclama su nulidad, en atención a su petición, dígasele al promovente, que no resulta procedente decretar las medidas que solicita ya que no cumple con los requisitos que para su dictado establecen los artículos 384, 385, 386, 387 y 388 del Código Federal de Procedimientos Civiles.

En efecto, se da el nombre de medidas cautelares a una serie de providencias dictadas antes o durante un proceso, mediante las cuales se trata de impedir la modificación de la situación de hecho existente en el momento de iniciarse las actuaciones.

En consecuencia, lo que se persigue con las medidas cautelares es que el titular de un derecho subjetivo, asegure oportunamente su ejercicio, en especial, lo que se solicita son "medidas cautelares negativas" es decir aquellas por las que se procura, ante todo, impedir la modificación del estado que guardan las cosas existentes al tiempo de la petición, en vista de evitar el daño, que pueda surgir de su modificación. El carácter negativo surge de que no anticipan la ejecución de un acto, sino que la detienen, "le ponen pausa".

LISTA
15/MAYO/08

8º DE DISTRITO



FORMA R-2

ESTADOS UNIDOS MEXICANOS

XII JUDICIAL DE LA FEDERACIÓN

impugnar dichos procedimientos por otros medio legales, lo que también demuestra que en el caso no se satisface la urgencia requerida por la medida solicitada.

**NOTIFÍQUESE.**

Así, lo proveyó y firma el Licenciado **CARLOS MANUEL PADILLA PEREZ VERTTI,** Juez Octavo de Distrito en Materia Civil en el Distrito Federal, ante el Secretario que autoriza. Doy fe.

ECCIÓN _____

ESA _____

ÚMERO _____

L. CMPPV L.PPD

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel     202  349.4180
fax    202  349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: 5-14-08 Order,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 16, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 16, 2008_

Signature: _____
      Brian Friedman, Director
      Language Innovations, LLC

Subscribed and sworn before me this _16th_ day of _JUNE_ 20 _08_ , at Washington, DC.

JAMES M. REED
Notary Public District of Columbia  Notary Public
My Commission expires: My Commission Expires June 30, 2012

[Mexican Judicial branch
stamp partially cut off]

.... *158/2008-II*

On May fourteenth, two thousand eight, the Judge is informed of a pleading signed by **JAIME DUARTE AISPURO**, registered in the correspondence book of this court under No. **6690**. Let it be confirmed. [initials]

[3 lines to be filled in:
headers cut off]

MEXICO, FEDERAL DISTRICT, ON MAY FOURTEENTH, TWO THOUSAND EIGHT

Let the pleading of Jaime Duarte Aispuro be added to the files, in his capacity as attorney in fact of PEMEX EXPLORACIÓN Y PRODUCCIÓN, a capacity verified under the terms of notarial certified copy No. twenty-five thousand seventy-eight, issued by Public Notary No. two hundred thirty-seven of the Federal District and Federal Real Property Notary [Notario del Patrimonio Inmobiliario Federal], Alfredo Ayala Herrera, through which, based on Article 384 of the Federal Code of Civil Procedure, he requests that the necessary measures be ordered in order to maintain the existing de facto situation, that is, that the defendant (COMMINSA)[sic] refrain from enforcing or carrying out any act whose purpose is to request recognition of the arbitral award whose nullity is now claimed. With regard to its petition, let the party filing it be informed that it is not proper for the measures it requests to be ordered, since it does not meet the requirements for issuance established in Articles 384, 385, 386, 387 and 388 of the Federal Code of Civil Procedure.

In fact, a series of orders issued before or during a proceeding are called precautionary measures, through which an attempt is made to prevent modification of the de facto situation at the time of filing the proceedings.

Therefore, what is sought through the precautionary measures is that a party holding a private right may assure its exercise in a timely fashion, especially [if] the measures requested are "negative" precautionary measures, in other words, measures that seek above all to prevent any change in the current status of the situation as of the time of the petition, in order to prevent any damage that may arise from its modification. Its negative nature arises from the fact that it does not apply to enforcement of an act, but that it detains enforcement, puts it on hold.

*[Translator's note: this page begins in mid sentence and does not seem directly related to p. 1]*

[Mexican Judicial branch
stamp partially cut off]                                               FORM R-2

challenge said procedures by other legal means, which also shows that the
case is not at the level of urgency required by the measure requested.

**LET NOTIFICATION BE GIVEN.**

[3 lines to be filled in]          It was thus issued and signed by **CARLOS MANUEL PADILLA
PEREZ VERTTI,** Judge in the Eighth District Court in Civil Matters in the
Federal District, before the authorizing Court Clerk.  I so Certify.


[initials]                              [signature]

[illegible letters]

**EXHIBIT 3**

551 FORMA B-3

(3)

158/2008-II

En veintiséis de mayo de dos mil ocho, se da cuenta al Juez con los escritos firmados por **JAIME DUARTE AISPURO** y **MARCO TULIO VENEGAS CRUZ**, registrados en el libro de correspondencia de este juzgado bajo los números **7436** y **7447** respectivamente. Conste.

CIÓN _____

SA _____

MERO _____

**MÉXICO, DISTRITO FEDERAL, A VEINTISÉIS DE MAYO DE DOS MIL OCHO.**

Agréguese a sus autos, el escrito de Jaime Duarte Aispuro, en su carácter de apoderado legal de PEMEX EXPLORACIÓN Y PRODUCCIÓN, personalidad que tiene debidamente acreditada en autos, por el que reitera la solicitud de que se adopte una medida precautoria y manifiesta que existe la urgencia en dicha solicitud en base a lo dispuesto en el artículo 384 del Código Federal de Procedimientos, para que se decreten las medidas necesarias y se mantenga la situación de hecho existente, ya que afirma tener conocimiento de que se ha exigido a un juez americano confirme, reconozca y ejecute el fallo arbitral del que pide su nulidad, exhibiendo documentación tocante a su dicho, en atención a su petición; dígasele que se esté a lo ordenado en proveído de catorce de mayo del año en curso, al no acreditarse la urgencia de la medida solicitada, ya que como se afirmó en dicho proveído no se acredita que el laudo arbitral sea ejecutable en México, ya que no se prueba que se haya tramitado homologación y su ejecución y que ésta haya quedado firme, en consecuencia no se satisface la urgencia requerida para la adopción de la medida solicitada, como ya quedó establecido en el mencionado auto de catorce de mayo pasado.

Guárdese en el seguro del juzgado los documentos exhibidos con el escrito de cuenta.

Finalmente, visto el escrito de MARCO TULIO VENEGAS CRUZ en su carácter de representante de la demandada, personalidad que tiene reconocida en autos, por medio del cual solicita copias certificadas de diversas constancias; con fundamento en el artículo 1067 del Código de Comercio vigente, expídansele a su costa las copias certificadas de las constancias que indica, previa razón que por su recibo obre en autos.

**NOTIFÍQUESE.**

Así, lo proveyó y firma el Licenciado **CARLOS MANUEL PADILLA PEREZ VERTTI**, Juez Octavo de Distrito en Materia Civil en el Distrito Federal, ante el Secretario que autoriza. Doy fe.

L'CMPPVL/PPD.

SE HACE CONSTAR QUE SE HIZO A LAS PARTES LA NOTIFICACION
DE LA DETERMINACION ANTERIOR, POR MEDIO DE ROTULO QUE SE
FIJO EN LAS PUERTAS DEL JUZGADO EN LOS TERMINOS DE LA LEY DOY FE.

27 MAYO 2008

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: 5-26-08 Order,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 16, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 16, 2008_

Signature: _____

Brian Friedman, Director
Language Innovations, LLC

Subscribed and sworn before me this _16th_ day of _June_ 20 _08_, at Washington, DC.

_____

JAMES M. REED
Notary Public
My Commission expires: _Notary Public District of Columbia_
My Commission Expires June 30, 2012

[Mexican Judicial branch
stamp partially cut off]

**551** FORM R-2

*158/2008-II*

On May twenty-sixth, two thousand eight, the Judge is informed of pleadings signed by **JAIME DUARTE AISPURO** and **MARCO TULIO VENEGAS CRUZ**, both registered in the correspondence book of this court under Nos. **7436** and **7447** respectively. Let it be confirmed. [initials]

[3 lines to be filled in: headers cut off]

MEXICO, FEDERAL DISTRICT, ON MAY TWENTY-SIXTH, TWO THOUSAND EIGHT

Let the pleading of Jaime Duarte Aispuro be added to the files, in his capacity as attorney in fact of PEMEX EXPLORACIÓN Y PRODUCCIÓN, a capacity verified in the court files, through which he repeats his request for precautionary measures and states that there is an urgency in said request based on the provisions of Article 384 of the Federal Code of Civil Procedure, so that the necessary measures may be ordered and the de facto situation maintained, since he states that he is aware that a U.S. judge has been asked to confirm, recognize and enforce the arbitral award whose nullity is requested, showing documents related to this statement, with respect to his petition. Let him be informed that he is subject to the orders of the interlocutory decision of May fourteenth, two thousand eight and that the urgency of the measures requested has not been verified, since as is stated in the aforementioned interlocutory decision, it has not been verified that the arbitral award is enforceable in Mexico, as there is no evidence of a process for official recognition or enforcement, and there is no change in this situation. Therefore, there is no showing of the urgency required for adoption of the measures requested, as was already established in the aforementioned order of May fourteenth.

Let the documents presented with the pleading in the case be safeguarded by the Court.

Finally, given the pleading of MARCO TULIO VENEGAS CRUZ in his capacity of representative of the defendant, a capacity that is recognized in the court files, through which he requests certified copies of several records, based on Article 1067 of the Commercial Code in effect, let the certified copies of the records indicated be issued, at his cost, and let the receipt be placed in the files.

LET NOTIFICATION BE SENT.

It was thus issued and signed by **CARLOS MANUEL PADILLA PEREZ VERTTI**, Judge in the Eighth District Court in Civil Matters in the Federal District, before the authorizing Court Clerk. I so Certify.

[initials]                          [signature]
[illegible letters]

[STAMP]
MAY 27, 2008

---

IT IS CONFIRMED THAT THE PARTIES WERE NOTIFIED OF THE PRIOR DETERMINATION BY MEANS OF A NOTICE PLACED ON THE DOORS OF THE COURT UNDER THE TERMS OF THE LAW. I SO CERTIFY.

**EXHIBIT 4**

OFICINA DE CORRESPONDENCIA
C   O   M   U   N
DE LOS JUZGADOS DE DISTRITO EN

May 29    5 06 PM 2008

MATERIA CIVIL
EN EL DISTRITO FEDERAL

PEMEX EXPLORACIÓN Y PRODUCCION

VS.

CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R. L. DE C. V.
**RECURSO DE APELACION**

**EXPEDIENTE Nº 158/2008-II**

**C. JUEZ OCTAVO DE DISTRITO EN MATERIA
CIVIL EN EL DISTRITO FEDERAL.**

**CLAUDIO ERIC DEVEZE MONTOYA**, en mi carácter de apoderado de
PEMEX EXPLORACIÓN Y PRODUCCIÓN (de aquí en adelante y por economía
procesal denominada "PEP"), tal como se acredita con el instrumento público
que ya obra agregado en autos y que consiste en el testimonio de la escritura
pública 25,078 del libro 366 del protocolo a cargo del notario público del
Distrito Federal, Licenciado Alfredo Ayala Herrera, ante usted con el debido
respeto comparece y expone:

I. De conformidad con lo dispuesto por el artículo 241 en conjunción
con el artículo 384, ambos del Código Federal de Procedimientos Civiles,
interpongo recurso de apelación en contra del acuerdo dictado por Su
Señoría de fecha 26 de Mayo de 2008, mismo que fue listado el día 27 del
mismo mes y año y que es del tenor siguiente:

"MÉXICO, D.F. A VEINTISÉIS DE MAYO DE DOS MIL
OCHO.
        Agréguese a sus autos, el escrito de Jaime Duarte
Aispuro, en su carácter de apoderado legal de PEMEX

EXPLORACION Y PRODUCCION, personalidad que tiene debidamente acreditada en autos, por el que reitera la solicitud de que se adopte una medida precautoria y manifiesta que existe la urgencia en dicha solicitud en base a lo dispuesto en el artículo 384 del Código Federal de Procedimientos, para que se decreten las medidas necesarias y se mantenga la situación de hecho existente, ua que afirma tener conocimiento de que se ha exigido ante un juez americano confirme, reconozca y ejecute el fallo arbitral del que pide su nulidad, exhibiendo documentación tocante a su dicho, en atención a su petición, dígasele que se esté a lo ordenado en proveído de catorce de mayo del año en curso, al no acreditarse la urgencia de la medida solicitada, ya que como se afirmó en dicho proveido, no se acredita que el laudo arbitral sea ejecutable en México, ya que no se prueba que se haya tramitado homologación o su ejecución y que ésta haya quedado firme, en consecuencia no se satisface la urgencia requerida para la adopción de la medida solicitada, como ya quedó establecido en el mencionado auto de catorce de mayo pasado.

Guárdese en el seguro del juzgado los documentos exhibidos con el escrito de cuenta..."

II. Señalo como constancias para integrar el testimonio de apelación, todas las constancias de autos.

Por lo anteriormente expuesto, A USTED C. JUEZ atentamente pido que se sirva:

PRIMERO.- Se me tenga reconocida la personalidad que ostento como apoderado de PEP, misma que se acredita con el instrumento que consta en autos número 25,078 del libro 366 del protocolo a cargo del notario público del Distrito Federal, Licenciado Alfredo Ayala Herrera.

SEGUNDO.- Tenerme por presentado en términos del presente escrito interponiendo recurso de apelación en contra del auto dictado por Su Señoría de fecha 26 de Mayo de 2008, mismo que fue listado el día 27 del mismo mes y año.

TERCERO.- Tener por señaladas constancias para integrar el recurso de apelación.

CUARTO.- Dar trámite al recurso de apelación de mérito de conformidad con las disposiciones legales aplicables.

PROTESTO A USTED MI CONSIDERACION RESPETUOSA

México, Distrito Federal a Veintiocho de mayo de dos mil ocho

LIC. CLAUDIO ERIC DEVEZE MONTOYA
APODERADO DE PEP

3

PAGE INTENTIONALLY
LEFT BLANK

PEMEX EXPLORACIÓN Y PRODUCCION
VS.
CORPORACIÓN        MEXICANA        DE
MANTENIMIENTO INTEGRAL, S. DE R. L. DE C.
V.
**INCIDENTE DE NULIDAD DE LAUDO ARBITRAL**

**H.    PRIMER TRIBUNAL UNITARIO EN MATERIA CIVIL
Y ADMINISTRATIVA DEL PRIMER CIRCUITO.
P R E S E N T E.-**

**JAIME DUARTE AISPURO,** en mi carácter de apoderado de PEMEX EXPLORACIÓN Y

PRODUCCIÓN (de aquí en adelante y por economía procesal denominada **PEP**),

personalidad que tengo acreditada ante el a quo, ante Usted expongo respetuosamente:

I.- Por escrito de fecha 28 de mayo de 2008, mi representada interpuso Recurso de

Apelación en contra del auto dictado por el C. Juez Octavo de Distrito en Materia Civil en

el Distrito Federal, que expresa lo siguiente:

> "**México, Distrito Federal, a Veintiséis de Mayo
> del Dos Mil Ocho.**
>
> Agréguese a sus autos, el escrito de Jaime Duarte
> Aizpuru, en su carácter de apoderado legal de
> PEMEX        EXPLORACIÓN        Y        PRODUCCIÓN,
> personalidad que tiene debidamente acreditada
> en autos, por el que reitera la solicitud de que se
> adopte una medida precautoria y manifiesta que
> existe la urgencia en dicha solicitud en base a lo
> dispuesto en el artículo 384 del Código Federal de
> Procedimientos, para que se decreten las
> medidas necesarias y se mantenga la situación de
> hecho    existente,    ya    que    afirma    tener
> conocimiento de que se ha exigido a un juez
> americano confirme, reconozca y ejecute el fallo
> arbitral del que pide su nulidad, exhibiendo
> documentación tocante a su dicho, en atención a

su petición; dígasele que se esté al o ordenado en proveído de catorce de mayo del año en curso, al no acreditarse la urgencia de la medida solicitada, ya que como se afirmó en dicho proveído no se acredita que el laudo arbitral sea ejecutable en México, ya que no se prueba que se haya tramitado homologación o su ejecución y que esta haya quedado firme, en consecuencia no se satisface la urgencia requerida para la adopción de la medida solicitada, como ya quedó establecido en el mencionado auto de catorce de mayo pasado.

Guárdese en el seguro del juzgado los documentos exhibidos con el escrito de cuenta....

**NOTIFIQUESE.**

Así, lo proveyó y firma el Licenciado **CARLOS MANUEL PADILLA PEREZ VERTÍ**, Juez Octavo de Distrito en Materia Civil en el Distrito Federal, ante el Secretario que autoriza.   Doy fe."

2.- Por auto de 2 de junio de 2008, que fue notificado personalmente a PEP el 3 de junio de 2008, el a quo dictó auto admitiendo el recurso, en los siguientes términos:

"**MÉXICO, DISTRITO FEDERAL, A DOS DE JUNIO DEL DOS MIL OCHO.**

Visto el escrito de CLAUDIO ERIC DEVEZE MONTOYA, en su carácter de apoderado de PEMEX EXPLORACIÓN Y PRODUCCIÓN, personalidad que se le reconoce en términos del testimonio notarial número veinticinco mil setenta y ocho, expedido por el Notario Público número doscientos treinta y siete, del Distrito Federal y Notario del Patrimonio Inmobiliario Federal, Licenciado Alfredo Ayala Herrera que obra glosado en autos; por medio del cual interpone recurso de apelación en contra del

auto de veintiséis de mayo del año en curso.  Con fundamento en los artículos 231, 232, 233, 234, 240, 241 y demás aplicables del Código Federal de Procedimientos Civiles, **SE ADMITE** el recurso de apelación interpuesto por el gestionante en contra del auto mencionado con antelación, en el **EFECTO DEVOLUTIVO**, emplácese al ocursante mediante notificación personal, para que dentro del término de **tres días** comparezca ante el Tribunal Unitario en Materias Civil y Administrativa del Primer Circuito en Turno a continuar el medio de defensa; hecho lo anterior, remítase de inmediato el testimonio de apelación al tribunal de alzada para la substanciación del medio de impugnación.

**NOTIFÍQUESE; Y PERSONALMENTE A LA PARTE ACTORA.**

Lo proveyó y firma el licenciado **CARLOS MANUEL PADILLA PEREZ VERTTI,** Juez Octavo de Distrito en Materia Civil en el Distrito Federal, ante el secretario que autoriza y da fe. Doy fe."


3.- Por medio del presente escrito mi representada expresa los siguientes AGRAVIOS que considera le causa el auto apelado.


A G R A V I O S


1.- El Juez A quo ha infringido en perjuicio de PEP el artículo 384 de Código Federal de Procedimientos Civiles, y los artículos 386 y 388 del Código Civil Federal por falta de aplicación, así como el principio de congruencia que debe tener toda decisión judicial.


El Aquo ha desechado decretar las medidas necesarias y que se mantenga la situación de hecho existente, que mi representada ha solicitado con base en lo dispuesto por el artículo 384 del Código Federal de Procedimientos Civiles, a efecto de que la parte

apelada CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R. L. DE C. V., ( en adelante **COMMISA**) deje de ejecutar el Laudo Arbitral dictado el 15 de enero de 2008, por los árbitros JUAN FERNÁNDEZ-ARMESTO, JOSE W. FERNÁNDEZ y DARÍO ULISES OSCÓS CORIA, con voto disidente de este último, a nombre de la Corte Internacional de Arbitraje del CCI, por considerar dicho juez a quo que no se acredita la urgencia de la medida solicitada, por dos razones: la ejecución del laudo iniciada en los Estados Unidos de América no ha quedado firme, y no se demuestra que dicha resolución pueda ser ejecutable en México.

2.- Mi representada considera que tal resolución del juez a quo le agravia, y que es violatoria del artículo 384 del Código Federal de Procedimientos Civiles, toda vez que mi representada ha exhibido ante el inferior documentación comprobatoria de que **COMMISA** ha exigido a un Juez Americano del Distrito de Columbia, en Estados Unidos de América, que confirme, reconozca y ejecute el Laudo Arbitral de referencia y dicha solicitud se encuentra en proceso de tramitación ante ese Tribunal.    Esta solicitud de **COMMISA** ante el Tribunal Americano demuestra que sí existe urgencia en el caso.

En efecto, observando el significado de la palabra **urgencia** encontramos en el Diccionario de la Lengua Española de la Real Academia Española, 22ª Edición 2001 que el termino **"URGIR"** entre otras connotaciones, significa *"instar o precisar a su pronta ejecución o remedio"*. Ahora bien, en el presente caso, la parte contraria ha solicitado al Tribunal Americano a la pronta ejecución del Laudo Arbitral mencionado, por lo que es clara la urgencia de mi representada para solicitar las medidas contenidas en el artículo 384 del Código de Federal de Procedimientos Civiles, para el efecto de que durante la tramitación del juicio de nulidad del Laudo Arbitral promovido ante el juez a quo, la parte contraria deje de continuar insistiendo en la ejecución del Laudo Arbitral, toda vez que dicha ejecución causaría a mi representada un daño irreparable mientras se tramita el procedimiento el Incidente de Nulidad de Laudo Arbitral, ante el Juez a quo.

3. La medida solicitada permite al A quo conservar la materia del incidente, y en su caso, le permite al también al A quo dictar una sentencia efectiva. Nótese que sí el tribunal americano dicta orden de ejecución, ésta sería cumplida a pesar de la sentencia de anulación que pudiera dictarse en el presente negocio.

La medida de mantención tiene como propósito mantener la situación de hecho existente, y preservar el objeto del juicio, y NO se constituye como un requisito indispensable para entablar una demanda o para asegurar bienes o personas. La medida de mantención así de claro, tiene un propósito distinto al de los medios preparatorios de juicio o a las providencias precautorios, por lo que es completamente infundado que se pretenda que se satisfagan en el caso para conceder la mantención, requisitos que son propias de las providencias precautorias.

Por tal razón, el artículo 386 del Código Federal de Procedimientos Civiles establece como única condición para la obtención de la mantención, cuando se pida contra un acto, que se entable a la brevedad la demanda correspondiente. En el caso, tal demanda ya está incoada, por lo que necesariamente debió el A quo conceder la medida solicitada, causando agravios a mi representada por falta de aplicación del artículo 386 en comento.

Adicionalmente, es un hecho público y notorio que mi representada es solvente y por ello no se le causaría ningún daño a la parte apelada en caso de concederse la medida precautoria consistente en que las cosas se mantengan en el estado en que se encuentran, y por otro lado está exenta de dar las garantías del caso de conformidad con el artículo 4 del Código Federal de Procedimientos Civiles y artículo 14 de la Ley Orgánica de Petróleos Mexicanos y Organismos Subsidiarios, por lo que este requisito también se encuentra salvado.



6

4.- El juez A quo manifiesta de manera infundada que no existe urgencia en la medida solicitada porque no se prueba que haya quedado firme el trámite de la homologación o ejecución del Laudo Arbitral, sin embargo esto no es un requisito para el otorgamiento de la medida precautoria, el hecho de que la ejecución dictada por algún tribunal quede firme, sino que basta que la apelada se encuentre instando a un Tribunal Americano para que pronuncie resolución sobre la ejecución del Laudo. **Esto es así porque al dictarse la sentencia irrevocable por el Juez de la Corte Distrital de Columbia en Estados Unidos de América, la situación de hecho existente entre las partes se modificaría de manera irreparable,** perdiendo la mantención su razón de ser

El A quo aduce también que no se exhibe prueba de que la sentencia ejecutable en México, con lo cual está prejuzgando sobre los derechos de PEP y COMMISA, en violación al artículo 388 del Código Federal de Procedimientos Civiles.

Es de explorado derecho que las sentencias y laudos dictados en el extranjero son ejecutables en México. Tanto el Código Federal de Procedimientos Civiles y el Código de Comercio tienen disposiciones para ese efecto. El A quo está prejuzgando sobre la posibilidad de ejecución de la sentencia relativa a la ejecución del laudo, ya que al establecer a cargo de PEP la prueba de su ejecutabilidad, está prejuzgando o decidiendo sin ningún fundamento que no es ejecutable en México, y además todavía, está decidiendo sobre lo que le corresponde a otro juez resolver. En otro sentido, el A quo está condicionando la eficacia de su sentencia a la resolución del Tribunal Extranjero y a la decisión de otro juez mexicano sobre la ejecutabilidad de dicha sentencia en México.

PEP tiene derecho a que la sentencia de anulación que se pudiere dictar en el juicio natural sea efectiva y puede ejecutarse. Esto es un principio del debido proceso, y de las formalidades esenciales del procedimiento. Por tal razón es obligación del A quo realizar todas las acciones necesarias para que su sentencia sea eficaz y pueda oponerse a cualquier intento de ejecución por parte de COMMISA.

5.- E Juez A quo no valoró la conducta de COMMISA en su determinación. Se hace notar que COMMISA ha solicitado la ejecución del laudo en los Estados Unidos de América. En vía reconvencional ha solicitado la ejecución del laudo, y a pesar que fue rechazada, esto es prueba suficiente de que su intención es ejecutar el laudo aún a costa del procedimiento que decidirá sobre la nulidad del mismo. Todavía es un hecho más importante, que legalmente no existe mandato que le impida a COMMISA solicitar la ejecución del laudo en México, o en cualquier otro País. En ese tenor, la Convención sobre el Reconocimiento y Ejecución de las Sentencias Arbitrales Extranjeras del 10 de junio de 1958 (Convención de Nueva York), la Convención Interamericana sobre Arbitraje Comercial Internacional (Convención de Panamá), y el Código de Comercio en su Título Cuarto, no solamente no lo prohíbe sino que lo permite.

El único remedio para sancionar la conducta es la medida de mantención, para que se ordene a COMMISA guardar la situación de hecho existente y se abstenga de solicitar el reconocimiento y ejecución del laudo en México o en cualquier otro País, y que suspenda los procesos ya iniciados, precisamente antes de que causen estado, informando de ello a los Tribunales correspondientes.

6.-En otro agravio, la decisión del A quo, plasmada en el auto de 26 de mayo de 2008, es incongruente. En el mismo, se hace referencia al auto de 14 de mayo de 2008, en el que supuestamente el juez natural exigía acreditar la urgencia de la medida. Esta afirmación es inexacta, puesto que en el mencionado auto solamente requirió a PEP para que exhibiera prueba de que COMMISA había solicitado el reconocimiento o pretendiera ejecutare el laudo, nunca exigió que dicha solicitud de ejecución hubiere quedado firme o fuere ejecutable en México. Esos son electos nuevos, introducidos por el A quo en su acuerdo de 26 de mayo de 2008, que dejan en indefensión a PEP, y que como ya quedó demostrado, no son necesarios para el otorgamiento de la medida.

8

La medida de mantención no es una defensa contra la ejecución, por lo que el juez natural se equivoca cuando dice que PEP está en posibilidad de ejercer otros recursos cuando se solicite el reconocimiento o la ejecución del laudo. Es más, la mantención no es un recurso sino una medida de prevención. Precisamente, la solicitud de anulación si es una defensa contra el reconocimiento y ejecución del laudo arbitral defensa que puede volverse nugatoria si no se guarda la situación de hecho existente al momento de su interposición.

De todo lo expuesto, resulta claro que procede la revocación del auto apelado y que se otorgue a mi representada la nulidad solicitada.

Por lo expuesto y fundado,

A USTED H. TRIBUNAL UNITARIO EN MATERIA CIVIL Y ADMINISTRATIVA DEL PRIMER CIRCUITO, atentamente pido que se sirva:

PRIMERO.- Tenerme por presentado con este escrito expresando los agravios que le causa a PEP el acuerdo de 26 de mayo de 2008.

SEGUNDO.- Agotados los tramites de ley, dictar sentencia por la que se revoque el auto apelado a efecto de que se otorgue a mi representada la medida solicitada.

PROTESTO A USTED MI RESPETO.

México, Distrito Federal a cinco de junio del dos mil ocho.

**LIC. JAIME DUARTE AISPURO**
**APODERADO DE PEP**

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: PEP's Notification of Appeal,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 13, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _Sure 13, 2008_

Signature: _____
Mariela Díaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this _13th_ day of _June_ 20 _08_, at Washington, DC.

_James M. Reed_
Notary Public

JAMES M. REED
My Commission expires: Notary Public District of Columbia
My Commission Expires June 30, 2012

[Stamp:]
OFFICE OF COMMON
CORRESPONDENCE
FOR THE COURTS OF DISTRICT 64

MAY 29    5 06 PM    2006

CIVIL COURTS
OF THE FEDERAL DISTRICT

PEMEX EXPLORACIÓN Y PRODUCCIÓN
VS.
CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R.L. DE C.V.
**MOTION FOR APPEAL**

**FILE No. 158/2008-II**

[Signature – illegible]

**THE HONORABLE EIGHTH DISTRICT JUDGE
FOR CIVIL AFFAIRS IN THE FEDERAL DISTRICT**

I, **CLAUDIO ERIC DEVEZE MONTOYA**, in my capacity as legal representative of PEMEX EXPLORACIÓN Y PRODUCCIÓN (hereinafter called "**PEP**"), as is evidenced with the public instrument that has already been added to the records and which consists in the transcript of public document 25,078 of book 366 of the protocol that is under the care of the notary public of the Federal District, Lic. Alfredo Ayala Herrera, respectfully appear before you and state:

I. In conformity with the provisions of article 241, together with article 384, both belonging to the Federal Code of Civil Procedure, I am filing a motion for appeal of the sentence issued by Your Honor, dated May 26, 2008, which was registered on the 27th of the same month and year, which has the following tenor:

"**MEXICO, D.F., THE TWENTY-SIXTH OF MAY OF TWO THOUSAND EIGHT.**
Add to the court file the writ presented by Jaime Duarte Aispuro, in his capacity as legal representative of PEMEX

EXPLORACIÓN Y PRODUCCIÓN, a capacity that has been dully accredited in the records, in which he reiterates the request that a precautionary measure be adopted, and states that there is an urgency in said request, that bases on the provisions of article 384 of the Federal Code of Procedure, so that the necessary measures be decreed and that the existing de facto situation be preserved, since it asserts to have knowledge that a petition has been made before an American judge to confirm, acknowledge and execute the arbitral ruling, the nullity of which is being requested, exhibiting documentation in this respect. In terms of its petition, let it be stated that it must comply with the requirements of the ruling of May fourteenth of the present year, since the urgency of the measure requested has not been proven since, as was asserted in said ruling, it has not been deemed as proven that the arbitral ruling can be executed in Mexico, as we have no proof that its homologation or execution has been processed and that such homologation or execution has been set. Therefore, the urgency that is required for the adoption of the measure requested has not been satisfied, as has already been established in the aforementioned record of last May the fourteenth.

The documents exhibited and the petition herein are to be filed in the safety of the Court..."

II. All of the written proof in the records shall form part of the evidence for the motion for appeal.

Based on the foregoing, I respectfully ask of YOUR HONOR:

FIRST.- To acknowledge the capacity in which I serve as legal representative for PEP, capacity that is accredited with the document appearing in the records number 25,078 of book 366 of the protocol that is under the care of Federal District notary public, Lic. Alfredo Ayala Herrera.

SECOND.- To acknowledge my appearance in terms of this document, filing a motion for appeal against the ruling issued by Your Honor on May 26, 2008, which was registered on the 27th of the same month and year.

THIRD.- To designate the written proof as part of the motion for appeal.

FOURTH.- To process the above-mentioned motion for appeal in conformity with the applicable legal dispositions.

I GRANT YOU MY MOST RESPECTFUL CONSIDERATION.

Mexico, Federal District, the twenty-eighth of May of two thousand eight

[Signature]

**LIC. CLAUDIO ERIC DEVEZE MONTOYA**

**LEGAL REPRESENTATIVE OF PEP**

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel   202 349.4180
fax   202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: PEP's Appeal,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 13, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 13, 2008_

Signature: _____
Mariela Díaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this _13th_ day of _June_ 20_08_ , at Washington, DC.

JAMES M. REED
Notary Public District of Columbia
Notary Public

My Commission expires My Commission Expires June 30, 2012

PEMEX EXPLORACIÓN Y PRODUCCIÓN
VS.
CORPORACIÓN MEXICANA DE
MANTENIMIENTO INTEGRAL, S. DE R.L. DE C.V.
**MOTION FOR APPEAL OF THE ARBITRAL RULING**

**THE HONORABLE FIRST ONE-JUDGE CIVIL AND
ADMINISTRATIVE COURT OF THE FIRST CIRCUIT
HAND DELIVERED.**

I, **JAIME DUARTE AISPURO**, in my capacity as legal representative of PEMEX

EXPLORACIÓN Y PRODUCCIÓN (hereinafter called **PEP**), a capacity that I have

evidenced before the *a quo* court, respectfully state before Your Honor:

I. In a document dated May 28, 2008, my principal filed a Motion for Appeal of

the ruling issued by the Honorable Eighth District Judge for Civil Affairs in the Federal

District, which states the following:

> "**Mexico, Federal District, the Twenty-Sixth of May of Two
> Thousand Eight.**
>     Add to the court file the writ presented by Jaime Duarte
> Aispuro, in his capacity as legal representative of PEMEX
> EXPLORACIÓN Y PRODUCCIÓN, a capacity that has been
> dully accredited in the records, in which he reiterates the request
> that a precautionary measure be adopted, and states that there is
> an urgency in said request, basing on the provisions of article 384
> of the Federal Code of Procedure, that the necessary measures
> be decreed and that the existing de facto situation be preserved,
> since it asserts to have knowledge that a petition has been made
> before an American judge to confirm, acknowledge and enforce
> the arbitral ruling, the nullity of which is being requested,
> exhibiting documentation in this respect.  In terms of

its petition, let it be stated that it must comply with the requirements of the ruling of May fourteenth of the present year, since the urgency of the measure requested has not been proven since, as was asserted in said ruling, it has not been deemed as proven that the arbitral ruling can be executed in Mexico, as we have no proof that its homologation or execution has been processed and that such homologation or execution has been set. Therefore, the urgency that is required for the adoption of the measure requested has not been satisfied, as has already been established in the aforementioned record of last May the fourteenth.

The documents exhibited with the petition herein are to be filed in the safety of the Court...

**TO BE NOTIFIED,**

It was so provided and signed by Lic. **CARLOS MANUEL PADILLA PEREZ VERTÍ**, Eighth District Judge for Civil Affairs in the Federal District, before the authenticating Secretary. I attest to the foregoing."

2.  In a ruling dated June 2, 2008, which was personally served to PEP on June 3, 2008, the *a quo* Court issued a ruling admitting the motion for appeal, in the following terms:

"**MEXICO, FEDERAL DISTRICT, JUNE THE SECOND OF TWO THOUSAND EIGHT.**

Having seen the writ of CLAUDIO ERIC DEVEZE MONTOYA, in his capacity as legal representative of PEMEX EXPLORACIÓN Y PRODUCCIÓN, a capacity that has been acknowledged in terms of notarial transcript number twenty-five thousand seventy-eight, issued by Notary Public number two hundred thirty-seven of the Federal District and Notary of the Federal Real Estate Property, Lic. Alfredo Ayala Herrera, which is filed on the records; by means of which he files a motion for appeal of the

Ruling dated May twenty-sixth of the present year. Based upon articles 231, 232, 233, 234, 240, 241 and related provisions of the Federal Code of Civil Procedure, the motion for appeal filed by this person against the aforementioned ruling **IS ADMITTED, WITHOUT SUSPENSION OF JUDGMENT**, notify the petitioner via personal notification, so that it may appear within a term of **three days** before the One-Judge Civil and Administrative Court of the First Circuit on Duty to proceed with the complaint; once this has been done, immediately issue the evidence for appeal to the appeals court for substantiation of the means of objection.

**LET IT BE NOTIFIED AND NOTIFIED PERSONALLY TO THE PLAINTIFF.**

Submitted and signed by Lic. **CARLOS MANUEL PADILLA PEREZ VERTTI**, Eighth District Judge for Civil Affairs in the Federal District, before the Secretary that authenticates and attests. I attest to the foregoing."

3.  By means of the present document, my principal expresses the following GRIEVANCES, which it considers as causing the writ of appeal.

GRIEVANCES

1.  The judge *a quo* has breached, to the detriment of PEP, article 384 of the Federal Code of Civil Procedure, and articles 386 and 388 of the Federal Civil Code, by failing to apply them, as well as the principle of congruency that every legal ruling should have.

The judge *a quo* has failed to decree the necessary measures for the de facto situation to remain in place, which my principal petitioned for, basing upon the provisions of article 384 of the Federal Code of Civil Procedure, with the purpose

that the appealed party, CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R.L. DE C.V. (hereinafter called **COMMISA**), should cease enforcing the Arbitration Ruling issued on January 15, 2008, by arbiters JUAN FERNÁNDEZ-ARMESTO, JOSE W. FERNÁNDEZ and DARÍO ULISES OSCÓS CORIA, the latter casting a dissenting vote, on behalf of the International Court of Arbitration of the ICC, said judge *a quo* believing that the urgency of the measure petitioned has not been proven for two reasons: the enforcement of the ruling initiated in the United States of America has not become final, and it has not been demonstrated that said resolution can be enforced in Mexico.

2. My principal considers that such resolution by the judge *a quo* is an offense against it, and that it breaches article 384 of the Federal Code of Civil Procedure, given that my principal has submitted to the latter documentation evidencing that **COMMISA** has requested from an American judge in the District of Columbia, in the United States of America, that he confirm, acknowledge and enforce the referenced Arbitration Ruling, with said petition being presently processed before that Court. This petition by **COMMISA** before the American Court proves that there is indeed urgency in this matter.

In fact, looking up the meaning of the word **urgency**, we find in the Dictionary of the Spanish Language of the Royal Spanish Academy, 22nd Edition 2001, that the term "**TO URGE**" means, among other things, "*to exhort or prompt to a rapid execution or remedy.*" Now, in the present case, the opposing party has solicited from the American Court the rapid enforcement of the aforementioned Arbitration Ruling, which should make clear the urgency that my principal has to request the measures contained in article 384 of the Federal Code of Civil Procedure, with the purpose of having the opposing party cease insisting on the enforcement of the Arbitration Ruling while the motion for nullity of the Arbitration Ruling filed before the judge *a quo* is being processed, given that said enforcement would cause irreparable damage to my principal while the proceeding for the Motion to Nullify the Arbitration Ruling is being processed before the judge *a quo*.

3.  The measure requested would allow the judge *a quo* to preserve the matter of the proceeding and, as the case may be, it also permits the judge *a quo* to issue an effective sentence.  Please note that if the American court issues an order of execution, such order would be fulfilled despite an order for annulment that could be issued in the present case.

The measure for preservation has the purpose of maintaining the existing de facto situation, and to preserve the objective of the case, and it does NOT represent an indispensable prerequisite to filing a suit or to protect goods or persons.  Clearly stated, the measure for preservation has a purpose that is different from that of the preliminary proceedings for a trial, or of injunctive relief measures, reason for which the request that they should be satisfied in this case in order to grant the preservation, requirements that are proper of injunctive relief measures, is completely baseless.

For this reason, article 386 of the Federal Code of Civil Procedure sets as the sole condition to obtain preservation, when so requested against an action, that the corresponding claim be filed as soon as possible.  In this case, said claim has already been filed, reason for which the judge *a quo* should have granted the requested measure, causing grievance to my principal when failing to apply the referenced article 386.

Additionally, it is a public and well-known fact that my principal is solvent and thus would not cause injury to the appealed party should the precautionary measure, seeking to maintain things in their present state, be granted; furthermore, it is exempt from granting the pertinent guarantees pursuant to article 4 of the Federal Code of Civil Procedure and article 14 of the Organic Law of Petróleos Mexicanos and Subsidiary Entities, based upon which this prerequisite is also taken care of.

4. The judge *a quo* states in an unfounded manner that there is no urgency in the measure requested because it has not been proven that the process for homologation or execution of the Arbitration Ruling has become final. However, this is not a prerequisite to granting the precautionary measure, that the ruling issued by a court should become final, and it is sufficient when the appealed party is currently petitioning an American Court to issue a resolution on enforcement of the Ruling. **This is so because, should an irrevocable ruling be issued by the Judge of the Court of the District of Columbia in the United States of America, the existing de facto situation between the parties would change in an irreparable manner,** with preservation losing its reason for existence.

The judge *a quo* also states that there is no evidence that the sentence is enforceable in Mexico, with which it is prejudging on the rights of PEP and COMMISA, in violation of article 388 of the Federal Code of Civil Procedure.

It is researched fact that sentences and rulings issued abroad are enforceable in Mexico. Both the Federal Code of Civil Procedure and the Commercial Code contain provisions to this effect. The judge *a quo* is prejudging on the possibility of enforcement of the sentence relating to the enforcement of the ruling, because by placing on PEP the burden of proving its enforceability, it is prejudging or deciding without any legal basis that it is not enforceable in Mexico and, in addition, it is deciding on something that is to be ruled upon by another judge. Furthermore, the judge *a quo* is making the effectiveness of its sentence dependent upon the ruling by the Foreign Court and upon the ruling by another Mexican judge on the enforceability of such sentence in Mexico.

PEP has the right to have any annulment ruling that could be issued in the original trial be effective and enforceable. This is a principle of due process and of the essential formalities of the proceeding. For this reason, it is the obligation of the judge *a quo* to execute all of the actions necessary to make its ruling effective and so that it may oppose any attempt at enforcement on the part of COMMISA.

5. The judge *a quo* did not value COMMISA's conduct in its decision. Please note that COMMISA has requested enforcement of the ruling in the United States of America. In a counterclaim it has requested enforcement of the ruling and, despite the fact that it was denied, this is sufficient proof that its intention is to enforce the ruling, even despite the proceeding that will decide on the nullity of the same. It is an even more important fact, that there is no mandate that can legally prevent COMMISA from requesting enforcement of the ruling in Mexico or in any other country. In this tenor, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (New York Convention), the Inter-American Convention on International Commercial Arbitration (Panama Convention), and Section 4 of the Commercial Code, does not just not prohibit it, but they allow it indeed.

The only remedy to sanction this conduct is the measure for preservation, to order COMMISA to maintain the existing de facto situation, and that it abstain from requesting the acknowledgment and enforcement of the ruling in Mexico or any other country, and that it suspend the already-initiated process before the case should end definitively, informing the pertinent Courts of such suspension.

6. In another grievance, the sentence of the judge *a quo*, recorded on May 26, 2008, is incongruous. In such sentence, reference is made to the ruling dated May 14, 2008, in which the competent judge supposedly demanded proof regarding the urgency of the measure. This assertion is not accurate, since it only required PEP, in such ruling, to provide proof that COMMISA had requested such acknowledgment or enforcement of the ruling, it never required that such petition for enforcement be made final or enforceable in Mexico. These are new conditions that were introduced by the judge *a quo* in its decision of May 26, 2008, leaving PEP with a lack of defense and which, as has already been evidenced, are not necessary for granting of the measure.

The preservation measure is not a defense against execution, reason for which the judge errs when stating that PEP has the possibility to exercise other remedies when the acknowledgment or enforcement of the ruling is petitioned. Moreover, preservation is not a remedy but rather a preventive measure. However, the petition for annulment certainly is a defense against the acknowledgment and enforcement of the arbitration ruling, a defense that could become invalid if the existing de facto situation is not preserved when it is filed.

From all of the above, it is clear that the revocation of the appealed motion is admissible and that my principal should be granted the annulment requested.

By virtue of the aforesaid,

I respectfully ask that you, HONORABLE ONE-JUDGE CIVIL AND ADMINISTRATIVE COURT OF THE FIRST CIRCUIT:

FIRST.-   Acknowledge me as present with this document, expressing the grievances that the sentence of May 26, 2008, has caused to PEP.

SECOND.-   With all legal processes exhausted, to issue a ruling in which the appealed motion is revoked, such that the requested measure is granted to my principal.

RESPECTFULLY YOURS,

Mexico, Federal District, fifth of June of two thousand eight.

[Signature]

**LIC. JAIME DUARTE AISPURO**

**LEGAL REPRESENTATIVE OF PEP**

# EXHIBIT 5 (Part 1)

599

CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R.L. DE C.V.
VS.
PEMEX EXPLORACIÓN Y PRODUCCIÓN

Incidente de <u>Reconocimiento y Ejecución</u> de Laudo Arbitral

C. JUEZ DE DISTRITO EN TURNO EN
MATERIA CIVIL EN EL DISTRITO FEDERAL

MARCO TULIO VENEGAS CRUZ, en representación de la empresa denominada
CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R.L DE
C.V. (en adelante "COMMISA") personalidad que acredito en este acto mediante
la exhibición del segundo testimonio de la escritura pública número 58,042 pasada
ante la fe del Notario Público No. 1 del Distrito Federal, Licenciado Roberto Nuñez
y Bandera, en la cual consta el poder que otorga COMMISA al suscrito,
documento que se acompaña como <u>ANEXO UNO</u> del presente ocursó y que
*solicito me sea devuelto previa compulsa y cotejo que se realice con la copia
simple que de éste se acompaña,* señalando como domicilio para oír y recibir
notificaciones el ubicado en Guillermo González Camarena número 1100, 7°
piso, Colonia Santa Fe, Centro de Ciudad, Delegación Álvaro Obregón,
Código Postal 01210 y autorizando en los amplios términos del tercer párrafo del
artículo 1069 del Código de Comercio a los Licenciados en Derecho Fernando
Moreno Gómez de Parada (con cédula profesional número 1516258), Edmond
Frederic Grieger Escudero (con cédula profesional 4204176), Montserrat
Manzano Escalón (con cédula profesional número 4214290), Alberto Muerza
Sierra (con cédula profesional número 2948545), Adrián Magallanes Pérez
(con cédula profesional número 5295822) y Diego Ignacio Sierra Laris (con
carta de pasante para la práctica de la abogacía número 68851); y
autorizando, en términos del antepenúltimo párrafo del mismo artículo, para oír y
recibir notificaciones, documentos y valores, así como para imponerse de los
autos, a los pasantes en derecho Robert Edward Dolan Isunza, Elisa de Anda
Madrazo, Raymundo Soberanis Cortés, Ricardo Rabasa Cossu, Alejandra
Cárdenas Ducker, Mariana García Martínez Parente y Pablo Usobiaga
Hegewisch, ante Usted con el debido respeto comparezco y expongo:

Que por medio del presente escrito, con fundamento en lo dispuesto en los
artículos 1461 y 1463 último párrafo, ambos del Código de Comercio, vengo a
promover el <u>reconocimiento y ejecución</u>, del laudo final de fecha quince de
enero de dos mil ocho, dictado en el procedimiento arbitral número
13716/CCO/JRF seguido ante la Corte Internacional de Arbitraje de la Cámara de
Comercio Internacional en el que COMMISA participó como demandante y en el
cual se emitió un laudo definitivo e inapelable que condenó a la demandada

1

590

PEMEX EXPLORACIÓN Y PRODUCCIÓN (en lo subsecuente referida como "PEP") al pago de diversas prestaciones a favor de mi representada.

En virtud de lo expuesto en el párrafo precedente, con el debido respeto solicito a su Señoría:

1.- Reconozca la validez del laudo final de fecha quince de enero de dos mil ocho, emitido en el procedimiento arbitral número 13716/CCO/JRF seguido ante la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional, mismo que se acompaña en copia certificada dentro del legajo adjunto al presente escrito como **ANEXO DOS**.

2.- En consecuencia, ordene a PEP pagar a mi representada las cantidades determinadas a favor de **COMMISA** en el citado laudo, conforme a las especificaciones del laudo arbitral contenidas en el apartado denominado "XII. DECISIÓN", visibles en las páginas 182 y 183 del laudo en comento, mismas que se citan literalmente a continuación:

la suma de "S" Pesos mexicanos ["PME"], calculada de acuerdo con la siguiente fórmula

$$S = (A + B) \times 0,995$$

en la que

"S" es la suma en PME que PEP debe pagar a Commisa.

"A" es igual a 10 928 728 PME.

"B" es una suma en PME que resulta de convertir 75.075.635 Dólares de los Estados Unidos de América ["USD"] en PME al tipo de cambio de venta que el Banco de México haya determinado y publicado en el Diario Oficial de la Federación el día hábil inmediato anterior al 29 de septiembre de 2002.

"+" es el signo de adición

"x" es el signo de multiplicación

"=" es el signo de igualdad

0,995 refleja la reducción del 5 al millar que Commisa está obligada a efectuar a favor de la Secretaría de Contraloría y Desarrollo Administrativo

4     pagar a Commisa, en concepto de gastos financieros derivados del Contrato EPC-28, un interés calculado sobre la suma "S", definida en la Decisión precedente los gastos financieros se devengarán desde el 29 de septiembre de 2002 hasta la fecha de pago efectivo, a la tasa en cada momento establecida en la Ley de Ingresos de la Federación para los

2

casos de prórroga en el pago de créditos fiscales; el cómputo se hará por
días y el pago de los gastos financieros se realizará conjuntamente con el
de la suma "S" definida en la Decisión precedente

6    Condenar, en materia de gastos y costas, a.

(ii)    .  satisfacer a Commisa 200 000 USD como gastos incurridos
por ésta para defenderse de las objeciones de falta de
competencia del Tribunal Arbitral y de falta de requisitos de
procedibilidad planteadas por aquélla."

3.- Se condene a PEP al pago de la cantidad que determine su Señoría por
concepto de los gastos y costas derivados del presente procedimiento.

A.    _Emplazamiento._    Con el objeto de que la paraestatal PEP sea emplazada
al presente incidente de reconocimiento y ejecución de laudo final, solicito a su
Señoría ordene que la misma sea emplazada en el domicilio que se encuentra
ubicado en.

> Marina Nacional 329 Edificio A, 8° Piso
> Gerencia Jurídica de Exploración y Producción
> Colonia Huasteca, Delegación Miguel Hidalgo
> México, Distrito Federal, Código Postal 11311

B.    _Extremos de la Acción._    De conformidad con el artículo 1461 del Código
de Comercio, un laudo arbitral será reconocido como vinculante por los Jueces
mexicanos y, después de la presentación de una petición por escrito de la parte
interesada, será ejecutado. Lo anterior se verifica de la cita del precepto en
comento, que a continuación nos permitimos realizar:

> "Artículo 1461.- Un laudo arbitral, cualquiera que sea el país en
> que haya sido dictado, será reconocido como vinculante y,
> después de la presentación de una petición por escrito al juez,
> será ejecutado de conformidad con las disposiciones de este
> capítulo.
>
> La parte que invoque un laudo o pida su ejecución deberá
> presentar el original del laudo debidamente autenticado o copia
> certificada del mismo, y el original del acuerdo de arbitraje a que
> se refieren los artículos 1416 fracción I y 1423 o copia certificada
> del mismo. Si el laudo o el acuerdo no estuviera redactado en
> español, la parte que lo invoca deberá presentar una traducción a
> este idioma de dichos documentos, hecha por perito oficial."

Para conceder la ejecución referida se requiere única y exclusivamente al
solicitante, de conformidad con el segundo párrafo del artículo 1461 del Código de
Comercio, que se acompañe copia debidamente autenticada del laudo o copia

3

592

certificada del mismo, y el original del acuerdo de arbitraje o copia certificada del mismo, que sirvió de fundamento al procedimiento arbitral y, al laudo respectivo.

Sobre el particular, es pertinente citar la siguiente tesis de jurisprudencia:

"Novena Época
Instancia: OCTAVO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.
Fuente: Semanario Judicial de la Federación y su Gaceta
Tomo VIII, Agosto de 1998
Tesis I 8o C 159 C
Página: 877

LAUDO ARBITRAL EMITIDO EN TERRITORIO NACIONAL, FORMALIDADES QUE DEBE REVESTIR EL PROCEDIMIENTO DE HOMOLOGACIÓN. De acuerdo con el artículo 1461 del Código de Comercio, el procedimiento de homologación de un laudo arbitral, debe revestir las formalidades establecidas en ese dispositivo, así como en el diverso 360 del Código Federal de Procedimientos Civiles, formalidades que son las siguientes: 1) Presentación de la solicitud correspondiente por escrito ante el Juez de primera instancia; 2) Presentación original del laudo autenticado o copia certificada del mismo; 3) Presentación original del acuerdo de arbitraje o copia certificada del mismo, y 4) Las establecidas por el referido artículo 360 del código adjetivo federal; que son: a) Una vez promovido el incidente, el Juez mandará dar traslado a las partes, por tres días. b) Transcurrido el término, si las partes no ofrecieron pruebas ni el tribunal las estimó necesarias, debe citarse a una audiencia de alegatos dentro de los tres días siguientes, la que se celebrará con o sin la concurrencia de las partes. c) En caso de ofrecerse pruebas o el tribunal estime necesaria alguna, debe abrirse una dilación probatoria de diez días. d) Celebrada la audiencia de alegatos dentro de los cinco días siguientes debe dictarse la resolución correspondiente.

OCTAVO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO

Amparo en revisión 65/97. Lydia Marina de Álvarez y otros. 31 de marzo de 1997 Unanimidad de votos. Ponente Guillermo Antonio Muñoz Jiménez. Secretaria Ana Luisa Mendoza Vázquez "

De acuerdo a lo exigido por el Código de Comercio y refrendado en el precedente anterior, --según se mencionó previamente-- se acompaña al presente escrito como ANEXO DOS copia certificada del laudo arbitral de fecha quince de marzo de dos mil ocho, cuyo reconocimiento y ejecución se solicita en este acto, así como del Contrato que contiene el acuerdo de arbitraje que sirvió de base al mismo.

El laudo arbitral antes referido fue redactado en idioma español por lo que no es necesario presentar una traducción del mismo.

Adicionalmente, es importante destacar que la Autoridad Judicial debe omitir entrar al estudio del fondo del asunto resuelto por el laudo arbitral cuyo reconocimiento y ejecución se solicita. Es absoluto e indiscutible, el laudo final

4

593

cuya ejecución se solicita, tiene la calidad de *cosa juzgada*, situación que se verifica en los siguientes criterios judiciales:

No. Registro: 186,229
Tesis aislada
Materia(s): Civil
Novena Época
Instancia: Tribunales Colegiados de Circuito
Fuente: Semanario Judicial de la Federación y su Gaceta
XVI, Agosto de 2002
Tesis: XV.1o.50 C
Página: 1317

LAUDO ARBITRAL. SU HOMOLOGACIÓN POR AUTORIDAD JUDICIAL ORDINARIA Y EL ANÁLISIS DE ÉSTA, EN AMPARO, NO PERMITE EL ESTUDIO DE SU SENTIDO EN CUANTO AL FONDO. Un laudo arbitral es la decisión de un órgano no estatal, así convenida por las partes, para resolver una contienda, ya sea presente o futura; así, para efectos de la instancia ordinaria queda a la exclusiva potestad de la decisión del tribunal de arbitraje y pasa a ser una extensión de esa voluntad, que por ser un acto de particulares, en cuanto a su sentido, no se encuentra sujeto a revisión constitucional; sin embargo, tal revisión constitucional si se puede dar respecto a la resolución de homologación emitida por un órgano judicial estatal, la que, desde luego, se limitará al resultado del análisis de la debida composición del tribunal de arbitraje, del debido procedimiento, de la manifestación de voluntad de las partes de someterse al arbitraje, de la materia del mismo y de los demás supuestos contemplados en el artículo 1462 del Código de Comercio, supuestos que, como se advierte, contemplan únicamente cuestiones de *forma* y no de *fondo*, y, una vez dada la homologación, de los actos de ejecución con que el Juez auxilia al cumplimiento del laudo; por lo que en la vía de amparo únicamente se podrán alegar esas cuestiones y no las relativas al fondo y sentido del laudo. Lo anterior se robustece con el criterio sostenido por la Tercera Sala de la anterior integración de la Suprema Corte de Justicia de la Nación, en la tesis aislada, publicada en el Semanario Judicial de la Federación, Quinta Época, Tomo XXXVIII, página 801, de rubro: "ARBITRAJE.", en la que considera que el arbitraje es una convención que la ley reconoce, lo que constituye una renuncia de los particulares para que la autoridad judicial conozca de una controversia, por lo que tiene una importancia procesal negativa, en cuanto que las partes confían la decisión de sus conflictos a uno o más particulares, llamados árbitros; sin embargo, éstos no son funcionarios del Estado ni tienen jurisdicción propia o delegada, y sus facultades derivan únicamente de la voluntad de las partes, expresada de acuerdo a la ley, y si bien el laudo arbitral no puede revocarse a voluntad de uno de los interesados, no es ejecutivo en sí mismo, ya que sólo puede considerársele como una obra de la lógica jurídica que es acogida por el Estado, por lo que sólo puede ejecutarse a través de un acto realizado por un órgano jurisdiccional que, sin quitarle su naturaleza privada, asume su contenido, y es entonces que se equipara a un acto jurisdiccional. Sin embargo, los Jueces no están autorizados para revisar los laudos de manera integral, ya que de lo contrario podrían nulificarlos, aun por cuestiones de fondo, para lo que sería necesario que previamente las partes comparecieran ante el Juez a plantearle el debate, y el sistema generalmente adoptado

5

594

consiste en que si la violación contenida en el laudo transgrede el orden público, el Juez no debe ordenar su ejecución, pero si solamente perjudica intereses privados debe ordenarla; y una vez decretado judicialmente su cumplimiento se eleva a la categoría de acto jurisdiccional y es entonces que el agraviado puede ocurrir ante los tribunales de la Federación en demanda de amparo, que deberá tramitarse en la vía biinstancial, como así se advierte de la jurisprudencia número 32/93 de la Tercera Sala de la anterior integración de la Suprema Corte de Justicia de la Nación, publicada en la Gaceta del Semanario Judicial de la Federación, tomo 72, diciembre de 1993, página 41, de rubro: "LAUDO ARBITRAL, ACUERDOS DE HOMOLOGACIÓN Y EJECUCIÓN DEL. PROCEDE EN SU CONTRA EL JUICIO DE AMPARO INDIRECTO, EN TÉRMINOS DEL ARTÍCULO 114, FRACCIÓN III, DE LA LEY DE AMPARO, Y NO EL DIRECTO A QUE ALUDE EL 158 DEL MISMO ORDENAMIENTO.".

PRIMER TRIBUNAL COLEGIADO DEL DÉCIMO QUINTO CIRCUITO.

Amparo en revisión 138/2002. Mecalux, México, S.A de C.V. 28 de mayo de 2002 Unanimidad de votos. Ponente: Pedro Fernando Reyes Colín. Secretario Ángel Rodríguez Rico *

(Énfasis añadido)

Cumplidos así todos los requisitos establecidos por el Código de Comercio y no actualizándose cualquiera de los supuestos previstos por el artículo 1462 de ese mismo ordenamiento, a efecto de proporcionar a su Señoría los antecedentes que llevaron a la presente solicitud de reconocimiento y ejecución de laudo, a continuación expongo los siguientes:

### HECHOS

PRIMERO.- La demandante COMMISA, presentó su solicitud de arbitraje contra la demandada PEP, el once de febrero de dos mil cinco.

SEGUNDO.- La demandada PEP, presentó su contestación a dicha solicitud de arbitraje y una demanda reconvencional el tres de mayo de dos mil cinco.

TERCERO.- La demandante COMMISA, presentó su réplica a la demanda reconvencional el quince de junio de dos mil cinco.

CUARTO.- Se constituyó el Tribunal Arbitral y el dos de junio de dos mil cinco, los co-árbitros José W. Fernández y Darío Oscós Coria designaron a Juan Fernández-Armesto como Presidente del Tribunal Arbitral. Esta designación fue confirmada por el Secretario General de la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional, el diez del mismo mes y año.

QUINTO.- El Tribunal Arbitral elaboró un borrador de Acta de Misión y se firmó dentro del plazo prorrogado por la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional, en su sesión del doce de agosto, hasta el treinta y uno de octubre de dos mil cinco.

El veinte de septiembre de dos mil cinco, el Tribunal Arbitral emitió la Orden Procesal n°1 que incluía el calendario procesal

SEXTO.- La demandante COMMISA, presentó su escrito de demanda el dieciséis de enero de dos mil seis. La demandada PEP, contestó a dicho escrito a través de su escrito de contestación a la demanda y de reconvención el dos de marzo de dos mil seis.

SÉPTIMO.- El cinco de abril de dos mil seis, la demandante COMMISA, presentó su escrito de réplica y el nueve de mayo de dos mil seis, la demandada PEP presentó su escrito de dúplica.

OCTAVO.- Se llevaron a cabo las audiencias correspondientes los días cinco a nueve de junio de dos mil seis en el Hotel JW Marriott en México, Distrito Federal.

NOVENO. Con fecha quince de enero de dos mil ocho, se emitió el laudo arbitral por el Tribunal Arbitral constituido por Juan Fernández Armesto como Árbitro Presidente, José W. Fernández y Dario Oscós Coria como co-árbitros resolviendo lo siguiente:

> "1   Declarar que es competente para resolver todas las pretensiones y peticiones formuladas por "Corporación Mexicana de Mantenimiento Integral, S. de R L. de C V " ["Commisa"] en su demanda y por "PEMEX-Exploración y Producción" ["PEP"] en su reconvención.
>
> 2    Declarar que no existe impedimento alguno para entrar a conocer de todas las pretensiones y peticiones formuladas por Commisa en su demanda y por PEP en su reconvención
>
> 3    Condenar a PEP a pagar a Commisa, en concepto de remuneración e indemnización debida al amparo del contrato EPC-28, la suma de "S" Pesos Mexicanos ["PME"] calculada de acuerdo con la siguiente fórmula
>
> S = (A + B) x 0.995
>
> en la que
>
> "S" es la suma en PME que PEP debe pagar a Commisa.
> A" es igual a 10 928 728 PME.

7

596

"B" es una suma en PME que resulta de convertir 75.075.635 Dólares de los Estados Unidos de América ["USD"] en PME al tipo de cambio de venta que el Banco de México haya determinado y publicado en el Diario Oficial de la Federación el día hábil inmediato anterior al 29 de septiembre de 2002.

"+" es el signo de adición.

"x" es el signo de multiplicación.

"=" es el signo de igualdad.

0,995 refleja la reducción del 5 al millar que Commisa está obligada a efectuar a favor de la Secretaría de Contraloría y Desarrollo Administrativo

4   Condenar a PEP a pagar a Commisa, en concepto de gastos financieros derivados del Contrato EPC-28, un interés calculado sobre la suma "S", definida en la Decisión precedente; los gastos financieros se devengarán desde el 29 de septiembre de 2002 hasta la fecha de pago efectivo, a la tasa en cada momento establecida en la Ley de Ingresos de la Federación para los casos de prórroga en el pago de créditos fiscales; el cómputo se hará por días y el pago de los gastos financieros se realizará conjuntamente con el de la suma "S" definida en la Decisión precedente.

5   Declarar que las cantidades a cuyo pago PEP ha resultado condenada en virtud del presente laudo no incluyen el Impuesto sobre el Valor Agregado mexicano

6   Condenar, en materia de gastos y costas, a

(i) Cada parte a asumir la mitad de los honorarios y los gastos de los árbitros, la mitad de los gastos administrativos de la Cámara de Comercio Internacional y sus propios gastos de defensa

(ii) Condenar a PEP a satisfacer a Commisa 200.000 USD como gastos incurridos por ésta para defenderse de las objeciones de falta de competencia del Tribunal Arbitral y de falta de requisitos de procedibilidad planteadas por aquélla

7.   Desestimar todas las demás pretensiones y peticiones de las partes.

La decisión del Tribunal Arbitral se adopta por unanimidad, con la salvedad de que el árbitro D. Oscós Coria disidente de la opinión de la mayoría en lo referente a las Controversias Técnicas 36 ("Malos tiempos que afectaron a los trabajos de la Castoro 10 y del Bar Protector"), 34 y 35 ("Tiempos de espera por retrasos en el inicio de los trabajos de la Castoro 10 y del Bar Protector") y al cálculo de intereses y costas. Su opinión disidente en estos aspectos quedará recogida en un voto particular "

8

527

<u>CONSIDERACIONES DE DERECHO EN VIRTUD DE LAS CUALES SE</u>
<u>DEBERÁ CONSIDERAR PROCEDENTE Y FUNDADA LA ACCIÓN QUE SE</u>
<u>EJERCE MEDIANTE EL PRESENTE INCIDENTE</u>

1.- Mi representada tiene derecho para reclamar el <u>reconocimiento y</u>
<u>ejecución</u> de la condena dictada en el laudo del procedimiento arbitral
13716/CCO/JRF en virtud de que participó como parte demandante, lo cual fue
reconocido por el Tribunal Arbitral ante quien obtuvo laudo favorable.

Con fecha quince de enero de dos mil ocho, en el laudo final cuyo reconocimiento
y ejecución se solicita, el Tribunal Arbitral compuesto por los señores José W.
Fernández, Juan Fernández Armesto y Darío Oscós Coria condenó a la
demandada, según se aprecia a páginas 182 y 183 del laudo referido, a pagar las
siguientes cantidades:

3    la suma de "S" Pesos mexicanos ["PME"], calculada de acuerdo con la
siguiente fórmula

$$S = (A + B) \times 0.995$$

en la que

'S' es la suma en PME que PEP debe pagar a Commisa
"A" es igual a 10 928 728 PME
'B' es una suma en PME que resulta de convertir 75.075.635 Dólares de
los Estados Unidos de América ["USD"] en PME al tipo de cambio de
venta que el Banco de México haya determinado y publicado en el Diario
Oficial de la Federación el día hábil inmediato anterior al 29 de
septiembre de 2002.
"+" es el signo de adición.
"×" es el signo de multiplicación.
"=" es el signo de igualdad
0.995 refleja la reducción del 5 al millar que Commisa está obligada a
efectuar a favor de la Secretaría de Contraloría y Desarrollo
Administrativo

4    pagar a Commisa en concepto de gastos financieros derivados del
Contrato EPC-28 un interés calculado sobre la suma "S", definida en la
Decisión precedente los gastos financieros se devengarán desde el 29
de septiembre de 2002 hasta la fecha de pago efectivo, a la tasa en cada
momento establecida en la Ley de Ingresos de la Federación para los
casos de prórroga en el pago de créditos fiscales; el cómputo se hará por
días y el pago de los gastos financieros se realizará conjuntamente con el
de la suma "S" definida en la Decisión precedente.

509

6.    Condenar, en materia de gastos y costas, a.

(ii)    .. satisfacer a Commisa 200'000 USD como gastos incurridos
por ésta para defenderse de las objeciones de falta de
competencia del Tribunal Arbitral y de falta de requisitos de
procedibilidad planteadas por aquélla."

2.- Las personas que fungieron como árbitros en el procedimiento arbitral nunca se encontraron impedidos para conocer y resolver la disputa sometida a su competencia.

En virtud de lo anterior, cabe abundar que el Tribunal Arbitral fue adecuada y correctamente constituido puesto que:

i.    COMMISA cumplió con lo dispuesto en la cláusula arbitral y el Reglamento de Arbitraje de la Cámara de Comercio Internacional al momento de designar a su árbitro, tanto como lo hizo la propia PEP.

ii.    Derivado de lo anterior y como ya fue debidamente mencionado, mi representada realizó el nombramiento del citado árbitro en atención a su reputación y prestigio como un árbitro imparcial, independiente y conocedor tanto de la materia arbitral como de la materia jurídico-comercial.

3.- Es procedente el presente procedimiento de <u>reconocimiento y ejecución</u> de laudo arbitral en virtud de que las partes se sometieron voluntaria y expresamente al procedimiento arbitral.

4.- Lo resuelto por el Tribunal Arbitral no versa sobre la declaración de una violación a un tema de derecho administrativo –*como pudiera llegar a alegar PEP*–, sino sobre el incumplimiento de una obligación contractual.

El caso concreto tiene como presupuesto, la existencia previa de una obligación pactada por las partes y cuya consecuencia de incumplimiento es el pago de una indemnización por los daños causados por PEP a mi representada, situación jurídica que implica la procedencia del procedimiento arbitral.

5.- No se actualiza uno solo de los supuestos previstos en el artículo 1462, del Código de Comercio, mismo que se cita a continuación:

"Artículo 1462.- Sólo se podrá denegar el reconocimiento o la ejecución de un laudo arbitral cualquiera que sea el país en que se hubiere dictado, cuando:

10

590

I.- La parte contra la cual se invoca el laudo, pruebe ante el juez competente del país en que se pide en reconocimiento o la ejecución que:

a) Una de las partes en el acuerdo de arbitraje estaba afectada por alguna incapacidad, o que dicho acuerdo no es válido en virtud de la ley a que las partes lo han sometido, o si nada se hubiere indicado a este respecto, en virtud de la ley del país en que se haya dictado el laudo;

b) No fue debidamente notificada de la designación de un árbitro o de las actuaciones arbitrales, o no hubiere podido, por cualquier otra razón, hacer valer sus derechos,

c) El laudo se refiere a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje. No obstante, sin las disposiciones del laudo que se refieren a las cuestiones sometidas al arbitraje pueden separarse de las que no lo están, se podrá dar reconocimiento y ejecución a las primeras,

d) La composición del tribunal arbitral o el procedimiento arbitral no se ajustaron al acuerdo celebrado entre las partes o, en defecto de tal acuerdo, que no se ajustaron a la ley del país donde se efectuó el arbitraje; o

e) El laudo no sea aún obligatorio para las partes o hubiere sido anulado o suspendido por el juez del país en que, o conforme a cuyo derecho, hubiere sido dictado ese laudo, o

II.- El juez compruebe que, según la legislación mexicana, el objeto de la controversia no es susceptible de arbitraje; o que el reconocimiento o la ejecución del laudo son contrarios al orden público."

Efectivamente, según se desprende de lo ordenado el artículo antes citado, el Juez puede negar el reconocimiento del laudo arbitral si el objeto de la controversia no es susceptible de arbitraje o bien si el reconocimiento o la ejecución del laudo son contrarios al orden público.

En este tenor, jamás existieron violaciones que podrían ser catalogadas como violaciones procesales o formales y de fondo en el dictado del laudo. Tales cuestiones no son capaces de implicar una contravención al orden público.

Es importante tomar en cuenta que el concepto de orden público al que se refiere el artículo 1462 del Código de Comercio, en cita no tiene nada que ver con las formalidades del procedimiento arbitral. Por el contrario, a lo que la ley se refiere con esto es a que el laudo o su ejecución impliquen la contravención de principios que por su importancia, contengan valores superiores del ordenamiento legal. Esto es, el texto del Código de Comercio no se refiere a normas procesales del arbitraje, sino a normas sustantivas que por su importancia y trascendencia, se consideran como instituciones torales del ordenamiento jurídico mexicano y se entienden elevadas a la categoría de orden público.

En este contexto, el laudo arbitral sí se encuentra razonado en Derecho mexicano, contiene la cita de los preceptos que los árbitros consideraron aplicables al caso concreto, e igualmente contiene las razones, circunstancias y consideraciones de hecho y de derecho por las cuales determinaron el sentido del fallo.

11

600

Cabe además señalar que de conformidad con el artículo 25 del Reglamento de Arbitraje de la Cámara de Comercio Internacional –*que fue el ordenamiento al que las partes en forma voluntaria y obligatoria, se sujetaron en la tramitación del arbitraje–* la única obligación que tienen los árbitros en relación con el contenido del laudo se refiere a que el mismo se encuentre motivado. Sin embargo, dicha motivación no debe ni puede ser interpretada en los términos de la obligación de las autoridades jurisdiccionales estatales mexicanas, toda vez que ésta deviene del principio de legalidad existente en materia constitucional, mientras que la obligación de motivar el laudo deviene de un pacto entre las partes.

En este sentido, el Reglamento de Arbitraje de la Cámara de Comercio Internacional no define los términos y alcance de lo que debe entenderse por un laudo motivado. Sin embargo, la interpretación que se ha dado en la práctica arbitral, sobre todo considerando las versiones que en otros idiomas existen el citado artículo 25 (como por ejemplo en idioma inglés "The Award shall state the reasons upon which it is based" cuya traducción libre sería "El Laudo establecerá las razones en las cuales se encuentra basado"), es que basta con que en el laudo se expresen las razones de la decisión para que el mismo sea válido.

Esta expresión ha sido entendida en la doctrina del arbitraje internacional como que el Tribunal Arbitral debe dar exclusivamente *sus* razones respecto de las determinaciones que finalmente emita en el laudo final, inclusive considerando un laudo como *motivado* a pesar de que dentro del propio razonamiento del Tribunal Arbitral, se encuentren contradicciones. Es de especial trascendencia, que su Señoría tome en cuenta que la doctrina sostiene expresamente que los Juzgadores omitirán entrar al fondo de las cuestiones sustantivas resueltas por el Tribunal Arbitral. Lo anterior se confirma en la cita que a continuación nos permitimos efectuar del manual de arbitraje denominado "*Fouchard, Gaillard, Goldman on International Commercial Arbitration*", editado por Emmanuel Gaillard y John Savage:

> "Donde las bases para un laudo deben ser expresadas, eso no significa que aquellas deban ser bien fundadas en hechos o ley. Una corte revisando el laudo para asegurarse que se han dado razones no revisará por supuesto los hallazgos sustantivos del laudo. Consecuentemente, aún las bases que son claramente equivocadas satisfarán los requisitos de que los árbitros establezcan las razones para su laudo." [1]

---

[1] GAILLARD, Emmanuel y SAVAGE, John, *Fouchard Gaillard Goldman on International Commercial Arbitration*, The Hague/Boston/ London, Kluwer Law International, 1999, p. 763. La cita es una traducción libre del siguiente texto: "Where the grounds for the award must be stated, that does not mean that they must be well-founded in fact or law. A court reviewing the award to ensure that reasons have been given will not of course review the substantive findings of the award. Thus, even grounds that are clearly wrong will satisfy the requirement that the arbitrators state the reasons for their award."

12

En un sentido similar al anterior, Yves Derains y Erick A. Schwartz en su obra *El Nuevo Reglamento de Arbitraje de la Cámara de Comercio Internacional*, se han pronunciado respecto a la obligación de motivar, prevista en el artículo 25(2) del mencionado Reglamento, en el siguiente sentido:

> "... la motivación expresada en el laudo debe demostrar que el Tribunal Arbitral <u>ha tenido en cuenta las posiciones de las partes</u>."[2]
>
> *(Énfasis añadido)*

Es irrefutable, la única obligación que existe para que el Tribunal Arbitral emita su laudo, en cuanto a la motivación, es que del mismo se demuestre, que haya tomado en cuenta las posiciones de las partes, cuestión que se cumple sobradamente en el laudo final objeto del presente procedimiento de <u>reconocimiento y ejecución</u> de laudo.

6.- Adicionalmente, el laudo final de quince de enero de dos mil ocho, constituye *cosa juzgada*, y el hecho de que su Señoría, exclusivamente deberá avocarse al análisis cuestiones meramente formales respecto del mismo, se confirma con los siguientes criterios judiciales:

> 'Registro No 189345
> Localización:
> Novena Época
> Instancia Tribunales Colegiados de Circuito
> Fuente Semanario Judicial de la Federación y su Gaceta
> XIV Julio de 2001
> Página: 1107
> Tesis I 3o C 231 C
> Tesis Aislada
> Materia(s) Civil
>
> **ÁRBITRO. SUS RESOLUCIONES SON ACTOS DE AUTORIDAD, Y SU EJECUCIÓN LE CORRESPONDE AL JUEZ DESIGNADO POR LAS PARTES.** Para la ejecución de un laudo arbitral es preciso la mediación de un acto realizado por un órgano jurisdiccional que, sin quitarle la naturaleza privada, asume su contenido, de modo que el laudo es ejecutable por virtud del acto jurisdiccional, que sólo es el complemento necesario para ejecutar lo resuelto por el árbitro, ya que el laudo es una resolución dictada por el árbitro que dirime la controversia suscitada entre las partes, con calidad de cosa juzgada y constituye título que motiva ejecución, ante el Juez competente que debe prestar los medios procesales necesarios para que se concrete lo resuelto en el laudo. Por lo tanto, *el laudo es una resolución que tiene los atributos de inimpugnabilidad, inmutabilidad y coercibilidad*, sólo que la eficacia y realización concreta de lo condenado quedan siempre al Juez competente designado por las partes o el del lugar del juicio. El árbitro carece de la facultad de hacer cumplir, ante

[2] DERAINS Yves y SCHWARTZ, Erick A. *El Nuevo Reglamento de Arbitraje de la Cámara de Comercio Internacional*, México, D.F., Oxford, 2001, p. 349.

sí, el laudo que emitió, porque no tiene la potestad o imperium, que es uno de los atributos de la jurisdicción y que es inherente a los órganos jurisdiccionales del Estado. Ello implica que el árbitro carece de la fuerza del Estado para hacer efectiva la condena, pero *el laudo en sí mismo no está despojado de los atributos de la* **cosa juzgada**, puesto que la facultad de decidir la controversia es una delegación hecha por el Estado a través de la norma jurídica, y sólo se reserva la facultad de ejecutar. El Juez ante quien se pide la ejecución de un laudo dictado por un árbitro, para decretar el requerimiento de pago, únicamente debe y puede constatar la existencia del laudo, como una resolución que ha establecido una conducta concreta, inimpugnable e inmutable y que, por ende, debe provenir de un procedimiento en el que se hayan respetado las formalidades esenciales del procedimiento, y que no sea contrario a una materia de orden público.

TERCER TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.

Amparo directo 1303/2001. Constructora Aboumrad Amodio Berho, S.A. de C.V. 8 de marzo de 2001. Unanimidad de votos. Ponente: Neófito López Ramos. Secretaria: Lina Sharai González Juárez.

Nota: Por ejecutoria de fecha 26 de octubre de 2001, la Segunda Sala declaró inexistente la contradicción de tesis 14/2001-PL en que participó el presente criterio.

Aunado a lo anterior, suponiendo sin conceder, que resultaran aplicables al Tribunal Arbitral las obligaciones para fundar y motivar correlativas a la función jurisdiccional respecto el laudo final, su Señoría deberá tomar en consideración que éstas se cumplirían a plenitud a la luz de la Jurisprudencia de los tribunales nacionales tal como se percibe del siguiente criterio obligatorio:

Registro No. 170307
Localización:
Novena Época
Instancia: Tribunales Colegiados de Circuito
Fuente: Semanario Judicial de la Federación y su Gaceta
XXVII, Febrero de 2008
Página 1964
Tesis I.3o.C. J/47
Jurisprudencia
Materia(s): Común

FUNDAMENTACIÓN Y MOTIVACIÓN. LA DIFERENCIA ENTRE LA FALTA Y LA INDEBIDA SATISFACCIÓN DE AMBOS REQUISITOS CONSTITUCIONALES TRASCIENDE AL ORDEN EN QUE DEBEN ESTUDIARSE LOS CONCEPTOS DE VIOLACIÓN Y A LOS EFECTOS DEL FALLO PROTECTOR. La falta de fundamentación y motivación es una violación formal diversa a la indebida o incorrecta fundamentación y motivación, que es una violación material o de fondo, siendo distintos los efectos que genera la existencia de una u otra, por lo que el estudio de aquella omisión debe hacerse de manera previa. En efecto, el artículo 16 constitucional establece, en su primer párrafo, el imperativo para las autoridades de fundar y motivar sus actos que incidan en la esfera de los gobernados, pero la contravención al mandato constitucional que exige la expresión de ambas en los actos de autoridad puede revestir

14

663

dos formas distintas, a saber: la derivada de su falta, y la correspondiente a su incorrección. Se produce la falta de fundamentación y motivación, cuando se omite expresar el dispositivo legal aplicable al asunto y las razones que se hayan considerado para estimar que el caso puede subsumirse en la hipótesis prevista en esa norma jurídica. En cambio, hay una indebida fundamentación cuando en el acto de autoridad sí se invoca el precepto legal, sin embargo, resulta inaplicable al asunto por las características específicas de éste que impiden su adecuación o encuadre en la hipótesis normativa; y una incorrecta motivación, en el supuesto en que sí se indican las razones que tiene en consideración la autoridad para emitir el acto, pero aquéllas están en disonancia con el contenido de la norma legal que se aplica en el caso. De manera que la falta de fundamentación y motivación significa la carencia o ausencia de tales requisitos, mientras que la indebida o incorrecta fundamentación y motivación entraña la presencia de ambos requisitos constitucionales, pero con un desajuste entre la aplicación de normas y los razonamientos formulados por la autoridad con el caso concreto. La diferencia apuntada permite advertir que en el primer supuesto se trata de una violación formal dado que el acto de autoridad carece de elementos ínsitos, connaturales, al mismo por virtud de un imperativo constitucional, por lo que, advertida su ausencia mediante la simple lectura del acto reclamado, procederá conceder el amparo solicitado; y en el segundo caso consiste en una violación material o de fondo porque se ha cumplido con la forma mediante la expresión de fundamentos y motivos, pero unos y otros son incorrectos, lo cual, por regla general, también dará lugar a un fallo protector, sin embargo será menester un previo análisis del contenido del asunto para llegar a concluir la mencionada incorrección. Por virtud de esa nota distintiva, los efectos de la concesión del amparo, tratándose de una resolución jurisdiccional, son igualmente diversos en uno y otro caso, pues aunque existe un elemento común, o sea, que la autoridad deje insubsistente el acto inconstitucional, en el primer supuesto será para que subsane la irregularidad expresando la fundamentación y motivación antes ausente, y en el segundo para que aporte fundamentos y motivos diferentes a los que formuló previamente. La apuntada diferencia trasciende, igualmente, al orden en que se deberán estudiar los argumentos que hagan valer los quejosos, ya que si en un caso se advierte la carencia de los requisitos constitucionales de que se trata, es decir, una violación formal, se concederá el amparo para los efectos indicados, con exclusión del análisis de los motivos de disenso que, concurriendo con los atinentes al defecto, versen sobre la incorrección de ambos elementos inherentes al acto de autoridad; empero, si han sido satisfechos aquéllos, será factible el estudio de la indebida fundamentación y motivación, esto es, de la violación material o de fondo.

TERCER TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.

Amparo directo 551/2005 Jorge Luis Almaral Mendívil 20 de octubre de 2005 Unanimidad de votos Ponente Neófito López Ramos. Secretario. Raúl Alfaro Telpalo.
Amparo directo 66/2007 Juan Ramón Jaime Alcántara 15 de febrero de 2007 Unanimidad de votos Ponente Neófito López Ramos Secretario Raúl Alfaro Telpalo.

15

601

Amparo directo 364/2007. Guadalupe Rodríguez Daniel. 6 de julio de
2007 Unanimidad de votos Ponente: Neófito López Ramos. Secretaria:
Greta Lozada Amezcua.
Amparo directo 513/2007 Autofinanciamiento México, S.A. de C.V. 4 de
octubre de 2007. Unanimidad de votos Ponente: Neófito López Ramos.
Secretario: Raúl Alfaro Telpalo
Amparo directo 562/2007. Arenas y Gravas Xaltepec, S.A. 11 de octubre
de 2007 Unanimidad de votos. Ponente: Neófito López Ramos.
Secretario. Raúl Alfaro Telpalo

(Énfasis añadido)

Ahora bien, en el laudo arbitral se verifica la existencia de distintos fundamentos
legales –con lo que se cumpliría la hipotética e inadmisible obligación del Tribunal Arbitral de
"fundar" su laudo final–, así como de los motivos y razonamientos de aplicación de los
mismos que desarrolló el Tribunal Arbitral, resolviendo el fondo del asunto –con lo
que se cumpliría la también hipotética e inadmisible obligación del Tribunal Arbitral de "motivar" su
laudo final-- y acatando las disposiciones procesales del multicitado Reglamento de
Arbitraje de la Cámara de Comercio Internacional.

Así las cosas, al seguir existiendo una motivación, se cumpliría plenamente con lo
único a que estaba obligado el Tribunal Arbitral conforme al artículo 25(2) del
Reglamento de Arbitraje de la Cámara de Comercio Internacional, que era motivar
el laudo.

Con esto, su Señoría, se encuentra impedido de entrar al estudio de los
razonamientos por los que el Tribunal Arbitral emitió su decisión y en ese sentido
el multicitado laudo final tiene la calidad de cosa juzgada, por lo que deberá
declararse improcedente cualquier argumento de PEP en relación con un
supuesta nulidad derivada de una supuesta falta de fundamentación y motivación
legal

Adicionalmente, y aún suponiendo sin conceder que fueran aplicables al laudo
final los principios aplicables a la labor judicial estatal de motivación, en relación
con la obligación de motivación que tiene el Tribunal Arbitral conforme al artículo
25(2) del Reglamento de Arbitraje de la Cámara de Comercio Internacional, habría
que tomar en cuenta que nuestros tribunales han entendido al principio de
motivación como un concepto que obliga al Juzgador o Autoridad –se insiste, no e un
árbitro o Tribunal Arbitral, quienes son sólo particulares— a dar un argumento suficiente
para acreditar el razonamiento del que se deduzcan sus determinaciones.

En este sentido, este requisito –que es obligatorio exclusivamente para órganos Estatales—
de motivación quedó plenamente satisfecho en el laudo final cuyo
reconocimiento y ejecución se solicita a su Señoría. Lo anterior cobra sustento
en el criterio jurisprudencial que se cita a continuación:

No. Registro 175,082

16

605

Jurisprudencia
Materia(s): Común
Novena Época
Instancia: Tribunales Colegiados de Circuito
Fuente: Semanario Judicial de la Federación y su Gaceta
XXIII, Mayo de 2006
Tesis I.4o.A. J/43
Página: 1531

FUNDAMENTACIÓN Y MOTIVACIÓN. EL ASPECTO FORMAL DE LA GARANTÍA Y SU FINALIDAD SE TRADUCEN EN EXPLICAR, JUSTIFICAR, POSIBILITAR LA DEFENSA Y COMUNICAR LA DECISIÓN. El contenido formal de la garantía de legalidad prevista en el artículo 16 constitucional relativa a la fundamentación y motivación tiene como propósito primordial y ratio que el justiciable conozca el "para qué" de la conducta de la autoridad, lo que se traduce en darle a conocer en detalle y de manera completa la esencia de todas las circunstancias y condiciones que determinaron el acto de voluntad, de manera que sea evidente y muy claro para el afectado poder cuestionar y controvertir el mérito de la decisión, permitiéndole una real y auténtica defensa. Por tanto, no basta que el acto de autoridad apenas observe una motivación pro forma pero de una manera incongruente, insuficiente o imprecisa, que impida la finalidad del conocimiento, comprobación y defensa pertinente, ni es válido exigirle una amplitud o abundancia superflua, pues *es suficiente la expresión de lo estrictamente necesario para explicar, justificar y posibilitar la defensa, así como para comunicar la decisión a efecto de que se considere debidamente fundado y motivado*, exponiendo los hechos relevantes para decidir, citando la norma habilitante y un *argumento mínimo pero suficiente para acreditar el razonamiento* del que se deduzca la relación de pertenencia lógica de los hechos al derecho invocado, que es la subsunción.

CUARTO TRIBUNAL COLEGIADO EN MATERIA ADMINISTRATIVA DEL PRIMER CIRCUITO.

Amparo directo 447/2005. Bruno López Castro. 1o. de febrero de 2006. Unanimidad de votos. Ponente: Jean Claude Tron Petit. Secretaria: Claudia Patricia Peraza Espinoza.

Amparo en revisión 631/2005. Jesús Guillermo Mosqueda Martínez. 1o. de febrero de 2006. Unanimidad de votos. Ponente: Jean Claude Tron Petit. Secretaria: Alma Margarita Flores Rodríguez.

Amparo directo 400/2005. Pemex Exploración y Producción. 9 de febrero de 2006. Unanimidad de votos. Ponente: Jesús Antonio Nazar Sevilla. Secretaria: Ángela Alvarado Morales.

Amparo directo 27/2006. Arturo Alarcón Carrillo. 15 de febrero de 2006. Unanimidad de votos. Ponente: Hilario Bárcenas Chávez. Secretaria: Karla Mariana Márquez Velasco.

Amparo en revisión 78/2006. Juan Alcántara Gutiérrez. 1o. de marzo de 2006. Unanimidad de votos. Ponente: Hilario Bárcenas Chávez. Secretaria: Mariza Arellano Pompa.

(Énfasis añadido)

7.- No hubo violaciones al procedimiento arbitral. Según se desprende de lo dispuesto por el artículo 15 del Reglamento de Arbitraje de la Cámara de Comercio Internacional el derecho procesal nacional sólo es aplicable si el

17

6٤€

Reglamento es omiso y además, el Tribunal Arbitral considera conveniente hacer referencia a él.

Por su parte, el artículo 15(2) del referido Reglamento de Arbitraje, dispone sobre la oportunidad de defensa. Al respecto, tal numeral determina que el Tribunal Arbitral debe conceder a las partes una oportunidad suficiente para exponer su caso.

Por esto debe entenderse que el procedimiento arbitral debe cumplir con las formalidades suficientes para poder integrar un medio de solución de controversias. Esto es, debe prever la posibilidad de que, tanto la parte demandante como la demandada sean capaces de exponer sus casos para poder integrar una litis.

Igualmente, se requiere que las partes sean capaces de ofrecer las pruebas que sustenten sus pretensiones, que se les permita alegar, si es el caso y que el Tribunal Arbitral dicte un laudo que se ocupe congruentemente de los puntos planteados.

Tales elementos forman parte y se derivan específicamente de la jurisdicción que sobre el *fondo* del asunto tiene en forma exclusiva el Tribunal Arbitral. La manera de valorar las pruebas, así como las consideraciones en virtud de las cuales el Tribunal Arbitral toma sus decisiones no tienen nada que ver con las formalidades esenciales del procedimiento. Tales cuestiones no pueden ser sujetas a análisis por un tribunal estatal.

La autonomía del Tribunal Arbitral en la toma de sus decisiones y el correspondiente reconocimiento por parte de los tribunales estatales es justamente la razón de ser del arbitraje comercial. Dicha institución tiene como finalidad la existencia y el reconocimiento de un medio de solución de controversias basado en la voluntad contractual y cuyos límites deben ser mínimos para cumplir su razón de ser, la cual es la celeridad y economía propia del derecho mercantil.

En este sentido, los argumentos que pudiera hacer valer PEP consistentes en que el laudo no debe ser reconocido por no observar las supuestas formalidades esenciales del procedimiento que ella consideran son el hecho de considerar el interés público involucrado en el contrato base de la acción, la supuesta falta de fundamentación y motivación en diversa legislación administrativa supuestamente aplicable al contrato base de la acción, el valor probatorio dado a los documentos ofrecidos como prueba, y el análisis de los razonamientos respecto de la

arbitrabilidad de la controversia respecto de las distintas controversias técnicas sometidas a arbitraje, no son argumentos que, según lo explicado y según lo ordenado por el artículo 1462 del Código de Comercio, sean capaces de conllevar al desconocimiento del laudo.

8.- Asimismo, es importante tomar en cuenta lo dispuesto por el artículo 33 del Reglamento de Arbitraje de la Cámara de Comercio Internacional que establece que para el caso de que alguna de las partes omita objetar algún acto que estime violatorio de sus derechos a una adecuada defensa, en la primera oportunidad que tenga para hacerlo, se entenderá que ha perdido su derecho a objetar tal acto. Esta regla se confirmó en el inciso (vii) del punto G) del "Acta de Misión" vinculante para las partes, misma que se acompaña al presente escrito como parte del ANEXO DOS en el siguiente sentido:

> "Si durante el desarrollo del procedimiento alguna de las partes advirtiera que se está violando su derecho a un proceso justo y equitativo o los principios de igualdad, audiencia y contradicción, deberá ponerlo en conocimiento del Tribunal Arbitral tan pronto como lo advierta, entendiéndose que, si no lo hace en la primera oportunidad, renuncia a su posterior alegación."

PEP, jamás puso en conocimiento del Tribunal Arbitral cualquier tipo de violación de esta especie. En consecuencia, su Señoría deberá considerar que renunció a su derecho a alegar cualquier tipo de argumento en el sentido de que le fue violado el derecho de garantía de audiencia o debido proceso.

En este sentido, queda absolutamente excluida, la causal prevista por el inciso b), de la fracción I, del artículo 1462 del Código de Comercio, para que la parte condenada en el laudo final cuyo reconocimiento y ejecución se demanda, alegue una violación a sus derechos a una adecuada defensa.

Aporta todavía mayor contundencia al hecho de la pérdida de este derecho, lo establecido en el párrafo 41 del laudo final cuyo <u>reconocimiento y ejecución</u> se promueve, visible en la página 11 del mismo, en el que se reconoce que a PEP le fue preguntado "*si en algún momento del procedimiento arbitral se habían infringido los principios de audiencia, contradicción e igualdad o si [había] sufrido algún tipo de indefensión procesal*" y que ésta declaró no haber sufrido indefensión procesal alguna y que el procedimiento arbitral se siguió conforme a los principios del debido proceso.

## SOLICITUD DE ACUMULACIÓN

19

Por medio del presente, con fundamento en el artículo 72 del Código Federal de Procedimientos Civiles, con el debido respejo· solicito a su Señoría ordene la <u>acumulación</u> del expediente que se forme con motivo de la promoción de este incidente de <u>reconocimiento y ejecución</u> de laudo arbitral, con el expediente número <u>158/2008-II que actualmente se tramita en el Juzgado Octavo de Distrito en Materia Civil en el Distrito Federal</u>, respecto de un procedimiento incidental de de nulidad del laudo arbitral de quince de enero de dos mil ocho, promovido por PEP en contra de COMMISA (cuyo auto admisorio de fecha veintiuno de mayo de dos mil ocho, se acompaña como <u>ANEXO TRES</u> a la presente).

Como podrá apreciar su Señoría, la presente solicitud de acumulación, se realiza respecto de un procedimiento en el que existe identidad de *partes y acciones provenientes de una misma causa*: el laudo de quince de enero de dos mil ocho. Conforme al artículo 72 del Código Federal de Procedimientos Civiles deben acumularse dos o más litigios cuando la decisión de uno exige la modificación de relaciones jurídicas, derivadas de un mismo hecho o cuando debe resolverse una misma controversia.

En el caso que nos ocupa, ambos procedimientos, (i) el de declaración de nulidad de laudo arbitral –*tramitado ante el Juez Octavo de Distrito en Materia Civil en el Distrito Federal*–; y (ii) el de reconocimiento y ejecución de laudo arbitral –*que ahora se promueve*–, se tramitan en la vía incidental conforme al artículo 360 del Código Federal de Procedimientos Civiles. Lo anterior se verifica de lo dispuesto en los artículos 1460 y 1463, ambos del Código de Comercio, mismos que se citan a continuación en sus partes conducentes:

> "Artículo 1460.- El <u>procedimiento de nulidad</u> se sustanciará incidentalmente, de conformidad con lo dispuesto por el artículo <u>360</u> del <u>Código Federal de Procedimientos Civiles</u>.
> ..."

> "Artículo 1463.- ...
>
> El <u>procedimiento de reconocimiento o ejecución</u> se sustanciará incidentalmente de conformidad con el artículo <u>360</u> del <u>Código Federal de Procedimientos Civiles</u>. La resolución no será objeto de recurso alguno."

(Énfasis añadido)

Ambos procedimientos exigen la modificación de una relación jurídica que une a las partes. El de nulidad exige la declaración judicial de nulidad del laudo arbitral de quince de enero de dos mil ocho que condena a PEP a pagar a COMMISA

20

609

distintas cantidades, mientras que por otro lado, el incidente de reconocimiento y ejecución exige la orden coactiva del órgano jurisdiccional. del Estado del cumplimiento del _mismo_ laudo. Es indiscutible, ambos procedimientos resuelven una misma controversia, esto es, la validez y obligatoriedad del laudo arbitral referido.

Conforme a lo anterior, procede la acumulación de los presentes autos a aquellos tramitados en el expediente 158/2008-II seguido en el Juzgado Octavo de Distrito en Materia Civil en el Distrito Federal.

Adicionalmente, también resulta procedente la acumulación en razón de aquél procedimiento se encuentra en periodo probatorio con lo que se excluye definitivamente el impedimento del artículo 72 del Código Federal de Procedimientos Civiles, por cuanto no está para verificarse la audiencia final de primera instancia.

El hecho de la tramitación del procedimiento de nulidad de laudo dentro del expediente 158/2008-II seguido en el Juzgado Octavo de Distrito en Materia Civil en el Distrito Federal, promovido por PEP en contra de COMMISA se acredita tanto con el auto admisorio como con la certificación de fecha veintiocho de mayo de dos mil ocho, del legajo de documentos que se encuentran exhibidos como pruebas en ése Juzgado Octavo de Distrito y que se acompaña al presente escrito como ANEXO DOS. A continuación me permito citar los términos relevantes tanto del acuerdo admisorio como de la citada certificación:

> "En nueve de mayo de dos mil ocho, la Secretaría da cuenta al C Juez con el escrito inicial de demanda de PEMEX EXPLORACIÓN Y PRODUCCIÓN, por conducto de su apoderado JOSÉ NÉSTOR GARCÍA REZA, y cuarenta y seis anexos, registrado en el libro de correspondencia de este juzgado con el número 6441. Conste.
>
> MÉXICO, DISTRITO FEDERAL A NUEVE DE MAYO DE DOS MIL OCHO.
>
> Con el libelo de cuenta, fórmese expediente y regístrese en el libro de gobierno de la sección civil con el número 158/2008-II. Se tiene por presentado el incidente de nulidad de laudo arbitral promovido por PEMEX EXPLORACIÓN Y PRODUCCIÓN, por conducto de su apoderado JOSÉ NÉSTOR GARCÍA REZA, carácter que acredita y se le reconoce en términos de la copia certificada del instrumento numero 13,250 que para tal efecto anexa, con fundamento en el artículo 1457 y 1460 del Código de Comercio vigente, al cual se aplicará supletoriamente el Código Federal de Procedimientos Civiles de ser necesario. SE ADMITE a trámite el incidente de nulidad del laudo arbitral que hace valer PEMEX EXPLORACIÓN Y PRODUCCIÓN, por conducto de su apoderado JOSÉ NÉSTOR GARCÍA

610

REZA, por las diversas prestaciones indicadas en el capítulo correspondiente; en consecuencia, al tener este auto efectos de mandamiento en forma requiérase al demandado CORPORACIÓN MEXICANA DE MANTENIMIENTO INTERGRAL, S. DE R.L. DE C.V, en el domicilio ubicado en: HOMERO No. 534-7° PISO, COLONIA CHAPULTEPEC MORALES, MÉXICO 11570, DISTRITO FEDERAL, con las copias simples del presente incidente y anexos que se acompañan al mismo, así como de este acuerdo, debidamente cotejadas y selladas, córrase traslado para que dentro del término de tres días, manifieste lo que a su interés convenga respecto de dicho incidente, con apercibimiento que de no hacerlo se proveerá lo que en derecho corresponda.

..."

"EL QUE SUSCRIBE, LICENCIADO JOSÉ PEDRO PALMA DURÁN, SECRETARIO DEL JUZGADO OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, CERTIFICA: QUE LAS PRESENTES COPIAS FOTOSTÁTICAS CONSTANTES DE TRESCIENTA (sic.) NOVENTA Y DOS FOJAS ÚTILES, CONCUERDAN FIELMENTE CON LOS DOCUMENTOS QUE SE EXHIBIERON, LAS CUALES SE ENCUENTRAN EN EL SEGURO DEL JUZGADO CORRESPONDIENDO AL INCIDENTE DE NULIDAD DEL LAUDO ARBITRAL NÚMERO 158/2008-II, PROMOVIDO POR PEMEX EXPLORACIÓN Y PRODUCIÓN, EN CUMPLIMIENTO A LO ORDENADO EN AUTO DE FECHA VEINTISÉIS DE MAYO DEL PRESENTE AÑO. MÉXICO, DISTRITO FEDERAL A VEINTIOCHO DE MAYO DE DOS MIL..."

En conclusión, con el debido respeto solicito a su Señoría ordene la remisión de los autos que se abran con motivo de la presente demanda incidental, para que se acumulen al procedimiento de nulidad de laudo dentro del expediente 158/2008-II seguido en el Juzgado Octavo de Distrito en Materia Civil en el Distrito Federal, promovido por PEP en contra de COMMISA. Esta petición cobra sustento en el precedente judicial que se cita a continuación:

"No Registro: 232,528
Tesis aislada
Materia(s). Común
Séptima Época
Instancia. Pleno
Fuente. Semanario Judicial de la Federación
139-144 Primera Parte
Tesis:
Página 13

ACUMULACION DE AUTOS. El objetivo primordial de la acumulación de autos, según se desprende del análisis lógico y congruente de los artículos 57 y 63 de la Ley de Amparo, es acatar el principio de economía procesal traducido en que una sola audiencia se resuelvan dos o más juicios de garantías en donde se reclama el mismo acto y evitar que en dichos juicios se dicten sentencias contradictorias; resultando de lo anterior, que a pesar de la tramitación y de la resolución conjunta y simultánea, los juicios de amparo acumulados conservan su individualidad, es decir, sus características propias. De lo anterior se infiere

22

611

que la circunstancia de que no se haya declarado la acumulación de ninguna manera implica que se hubiere dejado sin defensa a las partes o que pudiera influir de manera decisiva en la sentencia que deba dictarse en definitiva, ni menos aún que no haya sido oída alguna de las partes que tenga derecho a intervenir en el juicio conforme a la ley; motivo por el cual es claro que no se está en presencia del supuesto normativo que contempla el artículo 91, fracción IV, segunda parte, de la Ley Reglamentaria de los Artículos 103 y 107 Constitucionales.

Amparo en revisión 3643/79 Ejes Tractivos, S.A. de C.V. 4 de noviembre de 1980 Unanimidad de dieciséis votos. Ponente: Alfonso Abitia Arzapalo.

Amparo en revisión 4256/79 Ferretería Nonoalco, S.A. y coagraviados. 17 de septiembre de 1980 Unanimidad de quince votos. Ponente: Gloria León Dorantes '

### DOCUMENTOS

En cumplimiento a lo ordenado por los artículos 1061, 1378 y 1461, todos del Código de Comercio, a continuación procedo a hacer una relación de los documentos en los que mi representada funda sus peticiones. Todos estos, salvo el poder con el que ahora comparece COMMISA y el acuerdo de fecha   se acompañan al presente escrito dentro del legajo de copias certificadas emitidas por el Juzgado Octavo de Distrito en Materia Civil en el Distrito Federal, que se presenta junto con esta demanda incidental, como ANEXO DOS, toda vez que aquellos documentos se encuentran en aquél Juzgado respecto del expediente 158/2008-II.

1.-  LA DOCUMENTAL PÚBLICA, consistente en la escritura pública número 58,042, de fecha catorce de marzo de dos mil ocho, otorgada ante la fe del Notario Público número 1 del Distrito Federal, Licenciado Roberto Nuñez y Bandera en la cual consta el poder otorgado por COMMISA a favor del Licenciado Marco Tulio Venegas Cruz y otros, misma que se acompaña como ANEXO UNO.

Esta prueba acredita la personalidad con la que comparece COMMISA al presente procedimiento incidental de reconocimiento y ejecución de laudo arbitral. Resulta idónea para acreditar este hecho en virtud de que el poder contenido en la referida escritura pública, se otorgó ante fedatario público cumpliendo con las formalidades exigidas por el Código Civil Federal para tal efecto.

La presente prueba se relaciona con todos y cada uno de los hechos de la presente contestación y reconvención, especialmente con la personalidad con la que comparece el suscrito Marco Tulio Venegas Cruz, en representación de COMMISA.

23

612

2.-    LA DOCUMENTAL PÚBLICA, consistente en la copia certificada por el Secretario del C. Juez Octavo de Distrito en materia Civil del Distrito Federal del laudo final de fecha quince de enero de dos mil ocho emitido en el arbitraje 13716/CCO/JRF sostenido entre COMMISA y PEP.

Esta prueba se ofrece para dar cumplimiento a lo dispuesto por el artículo 1461 del Código de Comercio a efectos de que el laudo final sea <u>reconocido y ejecutado</u> por su Señoría.

Esta copia certificada se incluye en el legajo que se acompaña como <u>ANEXO DOS</u> y es idónea para acreditar tal extremo en virtud de que la certificación que la misma contiene fue emitida por funcionario por parte de la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional que fue precisamente la institución administradora del arbitraje que dio origen al laudo objeto del presente procedimiento.

Esta prueba se relaciona con todos y cada uno de los hechos del presente escrito, especialmente con el relativo a la emisión del laudo arbitral y la condena cuyo reconocimiento y ejecución se solicita por medio de la presente demanda incidental de reconocimiento y ejecución de laudo.

3.-    LA DOCUMENTAL PÚBLICA, consistente en la copia certificada por el Secretario del C. Juez Octavo de Distrito en materia Civil del Distrito Federal del documento que contiene la certificación de fecha veintinueve de febrero de dos mil ocho emitida por Jason A. Fry, Secretario General de la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional en la cual se certifica lo siguiente.

1) que, CORPORACIÓN MEXICANA DE MANTENIMIENTO INTERGRAL, S. DE R L DE C.V. (antes denominada como CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S.A. DE C.V.) (México) ha sido Demandante en un arbitraje en contra de PEMEX-EXPLORACIÓN Y PRODUCCIÓN (México) (la "Demandada") (número de referencia 13716/CCO/JRF);

2) que la Demandada de arbitraje fue recibida por la Secretaría el 14 de febrero de 2005;

3) que, de acuerdo con el récord de la compañía de mensajería expresa DHL, la Demanda de Arbitraje fue recibida por la Demandada el 22 de febrero de 2005.

24

613

4) que la Contestación a la Demanda de Arbitraje fue presentada el 3 de mayo de 2005;

5) que, de acuerdo con el récord de la compañía de mensajería expresa DHL, el Laudo Final de fecha 15 de enero de 2008 fue recibido por la Demandada el 11 de febrero de 2008.

Esta prueba se ofrece para acreditar los hechos que se manifiestan en la certificación en relación con diversos acontecimientos procesales que se verificaron durante la tramitación del procedimiento arbitral 13716/CCO/JRF. Esta prueba resulta idónea para acreditar los extremos contenidos en la misma en virtud de que fue emitida por la Institución Administradora del arbitraje que concluyó en el laudo de fecha quince de enero de dos mil ocho objeto del presente procedimiento.

Esta copia certificada se incluye en el legajo que se acompaña como ANEXO DOS y se relaciona con todos y cada uno de los hechos del presente escrito, especialmente con el hecho de que se respetaron las formalidades esenciales del procedimiento previstas en el Reglamento de Arbitraje de la Cámara de Comercio Internacional.

4.- LA DOCUMENTAL PÚBLICA, consistente en la copia certificada por el Secretario del C. Juez Octavo de Distrito en materia Civil del Distrito Federal del Acta de Misión o "Terms of Reference" suscrita por los árbitros, los representantes de COMMISA y PEP durante la tramitación del procedimiento arbitral 13716/CCO/JRF

La presente se ofrece para acreditar la manifestación expresa de voluntad y acuerdo que existió entre las partes del arbitraje respecto a los puntos sobre los cuales debía pronunciarse el Tribunal Arbitral, es decir la fijación de la litis que este último debía resolver. Esta prueba acredita que las partes se sometieron expresamente a la determinación que eventualmente emitió el Tribunal Arbitral, consistente en el laudo final cuyo reconocimiento y ejecución se solicita por virtud del presente escrito.

Esta prueba resulta idónea para acreditar el extremo referido en el párrafo anterior en virtud de que la misma corresponde fielmente al original que en su momento suscribieron las partes.

Esta copia certificada se incluye en el legajo que se acompaña como ANEXO DOS y se relaciona con todos y cada uno de los hechos narrados en el presente escrito, particularmente con el hecho marcado con el número 8 del presente

25

611

incidente, así como con el hecho de que el Tribunal Arbitral resolvió en el laudo final, los puntos que las partes expresamente consintieron en que conformaran la litis del arbitraje.

**5.-** LA DOCUMENTAL PÚBLICA, consistente en copia certificada por el Secretario del C Juez Octavo de Distrito en materia Civil del Distrito Federal del documento consistente en el Anexo C del Contrato número PEP-O-IT 136/98.

Esta prueba se ofrece para acreditar que lo tratado en el aludido Anexo C era el material al que exclusiva y limitativamente se refería la cláusula 23.2 del Contrato y en ese sentido, sólo respecto del material tratado en dicho Anexo C, podrían haber surgido en su momento, cualesquiera controversias técnicas. En este sentido, las controversias técnicas a que se refería el Anexo C, no correspondían a aquellas por las que condenó el laudo arbitral.

Esta prueba es idónea para acreditar el hecho en comento en virtud de que la misma es prueba plena del contenido de dicho Anexo C y en este sentido, la misma hará indubitable que el texto de la cláusula 23.2 del Contrato sólo hacía referencia a controversias técnicas que pudieran suscitarse en razón de lo dispuesto en dicho Anexo C.

Esta copia certificada se incluye en el legajo que se acompaña como **ANEXO DOS** y se relaciona con todos los hechos del presente escrito, especialmente con el relativo a que las condenas emitidas en el laudo arbitral se refirieron a controversias técnicas distintas a aquellas que fueron materia de la cláusula 23.2. del Contrato.

**6.-** LA DOCUMENTAL PÚBLICA consistente en copia certificada por el Secretario del C. Juez Octavo de Distrito en materia Civil del Distrito Federal de la traducción de fecha diecinueve de mayo de dos mil ocho, realizada por Alberto de la Santa Cruz Manzano Alba, Perito Traductor No P.125-2004, respecto de dos citas. la primera de ellas consiste en el párrafo 9-32 del libro REDFERN, Alan; HUNTER, Martin; BLACKABY, Nigel; y PARTASIDES, C. *Ley y Práctica del Arbitraje Comercial Internacional*, Klewer Law Internacional, 2004. pp. 1-50; la segunda consiste en un párrafo de la página 180 del libro BROCHES, Aron. *Comentario del Modelo de Ley Uncitral, Consejo Internacional de Arbitraje Comercial*, Kluwer Law Internacional, Vol IV. 2004.

La presente prueba se ofrece para acreditar el cumplimiento que **COMMISA** da respecto de lo dispuesto por el artículo 131 del Código de Procedimientos Civiles Federal en relación con las traducciones que se deben presentar al español

26

015

respecto de documentos que se presenten en idioma extranjero. La misma resulta idónea para acreditar sendo cumplimiento toda vez que fue emitida por traductor autorizado para emitir traducciones como la de lá especie.

Esta copia se incluye en el legajo que se acompaña como **ANEXO DOS** y se relaciona con todos y cada uno de los hechos del presente escrito, especialmente con lo relativo a la doctrina de arbitraje internacional en cuanto al concepto más aceptado de "orden público".

7.-    LA DOCUMENTAL PÚBLICA, consistente en copia certificada por el Secretario del C. Juez Octavo de Distrito en materia Civil del Distrito Federal del Contrato de Obra Pública a Precios unitarios y Tiempo Determinado número PEP-O-IT-136/98 de fecha cuatro de septiembre de mil novecientos noventa y ocho celebrado entre COMMISA y PEP, que fue objeto del arbitraje y cuya cláusula arbitral dio origen al laudo final materia del presente procedimiento incidental.

Esta prueba acredita la existencia de la cláusula arbitral 23.3 y el fundamento de todos los reclamos que fueron motivo del laudo arbitral cuyo objeto del presente procedimiento incidental y cuyo reconocimiento y ejecución solicita COMMISA.

Esta copia certificada se incluye en el legajo que se acompaña como **ANEXO DOS** y se relaciona con todos los hechos del presente escrito, especialmente con el fundamento contractual de la disputa arbitral, de la competencia del Tribunal Arbitral para pronunciarse respecto de las controversias surgidas cpn relación a dicho Contrato y del mismo laudo final

8.-    LA DOCUMENTAL PÚBLICA, consistente en copia certificada por el Secretario del C. Juez Octavo de Distrito en materia Civil del Distrito Federal del *Anexo B 2 "Generalidades" del Contrato* No. PEP-O-IT-136/98 (IPC 28) celebrado entre COMMISA y PEP con fecha cuatro de septiembre de mil novecientos noventa y ocho

Esta prueba acredita la existencia de la cláusula arbitral 23.3 y el fundamento de todos los reclamos que fueron motivo del laudo arbitral cuyo objeto del presente procedimiento incidental y cuyo reconocimiento y ejecución solicita COMMISA.

Esta copia certificada se incluye en el legajo que se acompaña como **ANEXO DOS** y se relaciona con todos los hechos del presente escrito, especialmente con el fundamento contractual de la disputa arbitral, de la competencia del Tribunal

Arbitral para pronunciarse respecto de las controversias surgidas con relación a dicho Contrato y del mismo laudo final.

9.- LA DOCUMENTAL PÚBLICA, consistente en copia certificada por el Secretario del C. Juez Octavo de Distrito en materia Civil del Distrito Federal Anexo B 2 "Plan para la Ejecución del Trabajo" del Contrato No. PEP-O-IT-136/98 (IPC-28) celebrado entre COMMISA y PEP con fecha cuatro de septiembre de mil novecientos noventa y ocho y que fue exhibido por la parte actora en el presente incidente

Esta prueba acredita la existencia de la cláusula arbitral 23.3 y el fundamento de todos los reclamos que fueron motivo del laudo arbitral cuyo objeto del presente procedimiento incidental y cuyo reconocimiento y ejecución solicita COMMISA.

Esta copia certificada se incluye en el legajo que se acompaña como **ANEXO DOS** y se relaciona con todos los hechos del presente escrito, especialmente con el fundamento contractual de la disputa arbitral, de la competencia del Tribunal Arbitral para pronunciarse respecto de las controversias surgidas con relación a dicho Contrato y del mismo laudo final.

10.- LA DOCUMENTAL PÚBLICA, consistente en el original sellado del auto admisorio de fecha nueve de mayo de dos mil ocho, dictado por el C. Juez Octavo de Distrito en materia Civil del Distrito Federal y mediante el cual se admite a trámite la demanda de nulidad de laudo promovida por PEP en contra del laudo arbitral dictado en el procedimiento arbitral 13716/CCO/JRF, asignándole el número de expediente 158/2008.

Esta prueba acredita la existencia del diverso procedimiento de nulidad que se encuentra tramitándose ante el citado C. Juez Octavo de Distrito en materia Civil del Distrito Federal, por lo que resulta procedente la acumulación de autos solicitada.

Este acuerdo se acompaña como **ANEXO TRES** y se relaciona con todos los hechos del presente escrito, especialmente con la acumulación de autos solicitada

Por lo anteriormente expuesto y fundado,

A USTED C. JUEZ, atentamente pido se sirva

28

617

PRIMERO.- Tenerme por presentado, en representación de CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R.L. DE C.V., promoviendo el presente incidente de reconocimiento y ejecución de laudo arbitral, así como exhibiendo los documentos que se anexan al presente escrito.

SEGUNDO.- Ordenar la devolución de la escritura pública en la que consta el poder con el que se promueve el presente incidente, previo cotejo y compulsa del mismo con la copia simple que de él se acompaña a este escrito.

TERCERO.- Ordenar se emplace a PEMEX EXPLORACIÓN Y PRODUCCIÓN mediante notificación personal en el domicilio designado para tal efecto en el presente escrito

CUARTO.- Ordenar la acumulación de la presente demanda con el procedimiento seguido ante el Juzgado Octavo de Distrito en Materia Civil en el Distrito Federal.

QUINTO.- En el momento procesal oportuno, dictar sentencia en la que se declare el reconocimiento y ejecución del laudo que intenta mi representada y se ordene pagar a PEMEX EXPLORACIÓN Y PRODUCCIÓN las prestaciones a las que fue condenada en el laudo de quince de enero de dos mil cinco.


PROTESTO LO NECESARIO

México, Distrito Federal, a treinta de mayo de dos mil ocho.


_____
MARCO TULIO VENEGAS CRUZ
en representación de
CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R. L. DE C.V.

29

**EXHIBIT 5 (Part 2)**

# Language Innovations, LLC™

*Helping businesses communicate worldwide"*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202  349.4180
fax    202  349.4182
email  translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: COMMISA's Mexican Enforcement Petition,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 13, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 13, 2008_

Signature: _____
        Brian Friedman, Director
        Language Innovations, LLC

Subscribed and sworn before me this ___13th___ day of ___June___ 20 _08_ , at Washington, DC.

_____
Notary Public

JAMES M. REED
My Commission expires: Notary Public District of Columbia
My Commission Expires June 30, 2012

588

CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R.L. DE C.V.
v.
PEMEX EXPLORACIÓN Y PRODUCCIÓN

Incidental Proceeding for <u>Recognition and Enforcement</u> of Arbitral Award

DISTRICT JUDGE ON ROTATION FOR
CIVIL CASES IN THE FEDERAL DISTRICT

I, MARCO TULIO VENEGAS CRUZ, representing the company called CORPORACIÓN
MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R.L. DE C.V. (hereinafter
"COMMISA"), a capacity that I verify in this legal act through presentation of the second
copy of notarial instrument No. 58,042, shown to Public Notary No. 1 in the Federal District,
Roberto Nuñez y Bandera, in which the power of attorney granted by COMMISA to the
undersigned is confirmed, a document attached as <u>EXHIBIT ONE</u> to this pleading and which
*I request to be returned to me subject to certification and comparison to be carried out with
the non-notarized copy attached hereto,* indicating as my registered office for hearing and
receiving notifications that located at Guillermo González Camarena No. 1100, 7° piso,
Colonia Santa Fe, Centro de Ciudad, Delegación Álvaro Obregón, Código Postal 01210, and
authorizing under the broadest terms of paragraph three of Article 1069 of the Commercial
Code the Attorneys at Law, Fernando Moreno Gómez de Parada (with professional license
No. 1516258), Edmond Frederic Grieger Escudero (with professional license No. 4204176),
Montserrat Manzano Escalón (with professional license No. 4214290), Alberto Muerza Sierra
(with professional license No. 2948545), Adrian Magallanes Pérez (with professional license
No. 5295822), and Diego Ignacio Sierra Laris (with letter authorizing a law clerk to practice
law No. 68851); also authorizing [them], under the terms of the third to last paragraph of the
same Article, to hear and receive notifications, documents and securities, as well as for the
law clerks Robert Edward Dolan Insunza, Elisa de Anda Madrazo, Raymundo Soberanis
Cortés, Ricardo Rabasa Cossu, Alejandra Cárdenas Ducker, Marlana García Martínex Parente
and Pablo Usobiaga Hegewisch to become familiar with the court files, before Your Honor,
with proper respect, appear and state:

That through this pleading, based on the provisions of Articles 1461 and 1463, last paragraph,
both of the Commercial Code, I have come to file the <u>recognition and enforcement</u> of the
final arbitral award dated January fifteenth, two thousand eight, handed down in arbitral
proceeding No. 13716/CCO/JRF filed with the International Court of Arbitration of the
International Chamber of Commerce, in which COMMISA participated as the claimant and
in which a final, unappealable arbitral decision was issued ordering the respondent

1

*[note – there is no 589]* 590

PEMEX EXPLORACIÓN Y PRODUCCIÓN (hereinafter "PEP") to pay considerations in several amounts in favor of my client.

By virtue of the foregoing, with proper respect to Your Honor, I request:

1.- Recognition of the validity of final arbitral award No. 13716/CCO/JRF, filed with the International Court of Arbitration of the International Chamber of Commerce, a certified copy of which is attached in the file attached to this pleading as EXHIBIT TWO.

2.- As a result, that PEP be ordered to pay my client the amounts determined in favor of COMMISA in the aforementioned award, in conformity with the specifications of the arbitral award contained in the paragraph called, "XII. DECISION," which appear on pages 182 and 183 of the aforementioned award, and are transcribed word-for-word below:

[illegible stamp]

[illegible] sum of "S" Mexican pesos ("PME"), calculated in accordance with the following formula:

$$S = (A + B) \times 0.995$$

where

"S" is the sum in PME that PEP must pay to Commisa.
"A" is equal to PME 10,928,728.
"B" is a sum in PME that results from converting 75,075,635 dollars of the United States of America ("USD") into PME at the exchange rate determined by the Bank of Mexico and published in the Mexican Official Gazette on the business day immediately prior to September 29, 2002.
" + " is the addition sign.
" x " is the multiplication sign.
" = " is the equal sign.
0.995 reflects a deduction of 5 per thousand, [representing the amount] that Commisa is obligated to pay to the Ministry of Accounting and Administrative Operations [Secretaría de Contraloría y Desarrollo Administrativo.]

4    To pay interest to Commisa for financial costs derived from Contract EPC-28, calculated on the sum "S" defined in the aforementioned Decision. Financial costs will be accrued from September 29, 2002, through the date of payment, at a rate established at any given time in the Federal Revenue Law [Ley de Ingresos de la Federación] for

2

591[??]

cases of extensions for tax payments due; this computation will be based on days, and the payment of the financial costs will be made along with the sum "S" determined in the foregoing decision.

6    To order payment of costs and expenses to

(a)    pay Commisa USD 200,000 as costs incurred to defend itself against objections that the Arbitral Tribunal lacked jurisdiction and [that the case] failed to meet requirements for admissibility, filed by PEP.

3.-  That PEP be required to pay the amount determined by Your Honor for costs and expenses derived from this proceeding.

A.    _Summons_. In order for the quasi-governmental company PEP be summoned to this filing of the recognition and enforcement of a final arbitral award, I request that Your Honor order that it be summoned at the registered office located at:
[illegible stamp]

> Marina Nacional 329 Edificio A, 8° Piso
> Gerencia Jurídica de Exploración y Producción
> Colonia Huasteca, Delegación Miguel Hidalgo
> México, Distrito Federal, Código Postal 11311

B.    _Facts of the Action_. In conformity with Article 1461 of the Commercial Code, an arbitral award will be recognized by Mexican Courts as binding, and after presentation of a written petition by the interested party, it will be enforced. The foregoing is confirmed by quoting the above-mentioned legal provision, as follows:

> "Article 1461.- An arbitral award, whatever may be the country in which it was issued, will be recognized as binding, and, after a written petition has been submitted to the judge, will be enforced in conformity with the provisions in this chapter.
>
> The party that invokes an award or requests its enforcement must submit the original award duly authenticated or a certified copy thereof, and the original of the arbitration agreement referred to in Articles 1416, section I, and 1423, or a certified copy thereof. If the award or the agreement was not drafted in Spanish, the party invoking it must submit a translation of said documents into Spanish done by an official expert."

To grant the enforcement referred to, the single, exclusive requirement upon the claimant, in conformity with paragraph two of Article 1461 of the Commercial Code is that it attach a duly authenticated copy or certified copy of the award,

3

592

and of the arbitration agreement or certified copy thereof, which served as the basis of the arbitration proceeding, and the respective award. In this regard, it is relevant to cite the following excerpt from a Supreme Court decision:

"Series Nine
Court: EIGHTH THREE-PERSON COURT FOR CIVIL MATTERS OF THE
FIRST CIRCUIT
Source: Supreme Court Reports and Gazette
Volume VIII, August 1998
Excerpt I 8° C 159 C
Page 877

ARBITRAL AWARD ISSUED IN NATIONAL TERRITORY, FORMALITIES
THAT MUST BE OBSERVED IN COURT APPROVAL PROCESS. Pursuant to
Article 1461 of the Commercial Code, the proceeding to approve an arbitral award
must observe the formalities established in this provision, as well as those in Article
360 in the Federal Code of Civil Procedure, as follows: (1) Submit the related
petition in writing to the trial court Judge; (2) Submit an authenticated original or
certified copy of the award; (3) Submit an authenticated original or certified copy of
the arbitration agreement, and (4) The provisions established by the aforementioned
Article 360 of the Federal Code of Civil Procedure, which are: (a) Once the motion
has been filed, the Judge will order that it be sent to the parties for three days; (b)
Once this period has elapsed, if the parties have not offered proof or the court deems
it unnecessary, they must be summoned to a interlocutory proceeding within the
three following days, and the hearing will be held with or without attendance by the
parties; (c) In the event that proof is offered or the court deems some proof
necessary, a ten-day discovery period must be set; (d) The interlocutory proceeding
must be held within five days after the related order is issued.

EIGHTH THREE-PERSON COURT FOR CIVIL MATTERS OF THE FIRST
CIRCUIT.

Amparo under review 65/97. Lydia Marina de Álvarez et alia. March 31, 1997.
Unanimous vote. Judge writing the opinion: Guillermo Antonio Muñoz Jiménez.
Court Clerk Ana Luisa Mendoza Vázquez."

In accordance with the requirements of the Commercial Code and validated in the prior
precedent. ...*as stated above*... attached as <u>EXHIBT TWO</u> is a certified copy of the arbitral
award dated March fifteenth, two thousand eight, recognition and enforcement whereof is
requested in this pleading, as well as the Contract that contains the arbitration agreement on
which the award was based.

The aforementioned arbitral award was drafted in Spanish; therefore, it is unnecessary to
submit a translation thereof.

In addition, it is important to point out that the Judicial Authority must decline to enter into
an in-depth study of the matter decided by the arbitral award whose <u>recognition and
enforcement</u> is requested. The arbitral award whose enforcement is requested is final and

4

593

indisputable; it is res judicata, a situation verified in the following judicial decisions:

> "Registration No: 186,229
> Isolated excerpt
> Civil Matter
> Series Nine
> Court: Three-Judge Courts in the Circuit
> Source: Supreme Court Reports and Gazette
> Volume XVI, August 2002
> Excerpt XV. 1° 50 C
> Page 1317

ARBITRAL AWARD. ITS APPROVAL BY ORDINARY JUDICIAL AUTHORITY AND AN ANALYSIS THEREOF, UNDER AMPARO, DOES NOT ALLOW THE STUDY OF ITS SUBSTANCE. An arbitral award is the decision of a non-State body, as agreed upon by the parties, to resolve a dispute, whether present or future. Thus, the trial court is subject to the exclusive decision of the arbitral tribunal and functions as an extension of that decision, which, being a legal act of private citizens, is not subject to constitutional review regarding its substance; however, said constitutional review may be provided regarding the approval decision issued by a State judicial body. Of course said review will be limited to an analysis of the proper composition of the arbitral tribunal, of due process, of the statement of the parties' will to be submitted to arbitration, of the subject of the arbitration and other conditions considered in Article 1462 of the Commercial Code, conditions which, as stated, cover only questions of *form and* not *substance,* and, once approval is given, of the acts to be performed through which the Judge supports compliance with the award. Therefore, under amparo, only those matters may be argued and not any matter related to the substance and sense of the award. The foregoing was strengthened by the decision upheld by the Third Court of the prior involvement of the Mexican Supreme Court, in the isolated excerpt, published in the Supreme Court Reports, Series Five, Volume XXXVIII, page 801, headed, "ARBITRATION," in which it deems that arbitration is a convention recognized by law, which constitutes a waiver by private parties from the judicial authority hearing a dispute; therefore, it has a negative procedural significance, inasmuch as the parties entrust the decision of its disputes to one or more individuals, called arbitrators. However, these are not State officials and have no jurisdiction of their own or any delegated jurisdiction, and their powers are solely based on the will of the parties, stated pursuant to the law. Although an arbitral award may not be revoked by the will of one of the interested parties, it is not enforceable in and of itself, since it may only be considered a legally logical work that is accepted by the State; therefore, it may only be enforced through an act carried out by a body with jurisdiction which, without stripping it of its private nature, assumes its content, and thus it will be equated to a jurisdictional act. However, Judges are not authorized to fully review the decisions, since otherwise, they would be subject to nullification, even for substantive matters, for which it would be necessary that the parties first appear before the Judge to set forth the debate, and the system generally adopted

5

594

would be arranged so that if the violation contained in the award infringed public policy, it would not be right for the Judge to order its performance, but it would so order if the harm would only be to private interests. In this case, once compliance was judicially declared, it would raise the case to the level of a jurisdictional proceeding; therefore, the injured party could turn to the Mexican courts demanding amparo, which must be heard at two court levels, as is stated in Case Law No. 32/93 of the Third Court on the prior involvement of the Supreme Court, published in the Gazette of the Supreme Court Reports, Volume 72, December 1993, page 41, entitled: ARBITRAL AWARD, APPROVAL AGREEMENTS AND ENFORCEMENT THEREOF. CHALLENGED BY A TRIAL OF INDIRECT AMPARO, UNDER THE TERMS OF ARTICLE 114, SECTION III, OF THE AMPARO ACT, AND NOT DIRECT AMPARO ALLUDED TO BY ARTICLE 158 OF THE SAME REGULATIONS."

FIRST THREE-COURT JUDGE OF THE FIFTEENTH CIRCUIT.

Amparo under review 138/2002. Mecalux, México, S.A. de C.V. May 28, 2002. Unanimous vote. Judge writing the opinion: Pedro Fernando Reyes Colín. Court Clerk, Angel Rodríguez Rico."

(Emphasis added) *[Translator's note: no emphasis evident.]*

Once all the requirements established by the Commercial Code have been met, and none of the conditions set forth in Article 1462 of this same code have been updated, in order to provide Your Honor with the background that led to this petition for <u>recognition and enforcement of the award</u>, I state the following:

## FACTS

ONE.- The claimant COMMISA submitted its request for arbitration against the respondent PEP on February eleventh, two thousand five.

TWO.- The respondent PEP submitted its answer to said request for arbitration and its counterclaim on May third, two thousand five.

THREE.- The claimant COMMISA submitted its reply to the counterclaim on June fifteenth, two thousand five.

FOUR.- The Arbitral Tribunal was constituted, and on June second, two thousand five, the co-arbitrators José W. Fernández and Dario Oscós Coria appointed Juan Fernández-Armesto to be chief judge of the Arbitral Tribunal. This appointment was confirmed by the Chief Clerk of the International Court of Arbitration of the International Chamber of Commerce on June tenth, two thousand five.

595

FIVE.- The Arbitral Tribunal drew up a draft Mission Statement and signed it within the period granted by the International Court of Arbitration of the International Chamber of Commerce in its session of August twelfth through October thirty-first of two thousand five.

On September twentieth of two thousand five, the Arbitral Tribunal issued Procedural Order No. 1, which included the schedule of the proceedings.

SIX.- The claimant COMMISA submitted its statement of claim on January sixteenth of two thousand six. The respondent PEP answered this claim through its statement of answer and counterclaim of March second, two thousand six.

SEVEN.- On April fifth of two thousand six, the claimant COMMISA submitted its reply, and on May ninth, two thousand six, the respondent PEP submitted its rejoinder.

EIGHT. The related hearings were carried out on the fifth to ninth days of June, two thousand six, in Hotel JW Marriott in the Federal District, Mexico.

NINE. On January fifteenth, two thousand eight, the Arbitral Award was e-mailed by the Arbitral Tribunal made up of Juan Fernández-Armesto as chief judge, and José W. Fernández and Dario Oscós Coria as co-arbitrators, and the Court resolved [the dispute] as follows:

1   To state that it has jurisdiction to resolve all claims and petitions filed by Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. ["Commisa"] in its claim and by PEMEX- Exploración y Producción ["PEP"] in its counterclaim.

2   To declare that there is no impediment whatsoever for hearing all the claims and petitions filed by Commisa in its statement of claim and by PEP in its counterclaim.

3   To order PEP to pay Commisa, as remuneration and due compensation under the contract EPC-28, the amount of "S" Mexican Pesos ["PME"], calculated in accordance with the following formula:

$$S = (A + B) \times 0.995$$

where

"S" is the sum in PME that PEP must pay to Commisa.
"A" is equal to PME 10,928,728.

7

596

"B" is a sum in PME that results from converting 75,075,635 dollars of the United States of America ("USD") into PME at the exchange rate determined by the Bank of Mexico and published in the Mexican Official Gazette on the business day immediately prior to September 29, 2002.
" + " is the addition sign.
" x " is the multiplication sign.
" = " is the equal sign.
0.995 reflects a deduction of 5 per thousand, [representing the amount] that Commisa is obligated to pay to the Ministry of Accounting and Administrative Operations.

4    To order PEP to pay interest to Commisa for financial costs derived from Contract EPC-28, calculated on the sum "S," defined in the aforementioned Decision. Financial costs will be accrued from September 29, 2002, through the date of payment, at a rate established at any given time in the Federal Revenue Law for cases of extensions for tax payments due; this computation will be based on days, and the payment of the financial costs will be made along with the sum "S" determined in the foregoing decision.

5    To declare that the amounts that PEP has been ordered to pay by virtue of this award do not include Mexican value added tax.

6    To order payment of costs and expenses,

(i) For each party to assume half the fees and expenses of the arbitrators, half the administrative expenses of the International Chamber of Commerce and its own defense costs.

(ii) To order PEP to pay Commisa USD 200,000 for costs incurred by it to defend itself against objections that the Arbitral Tribunal lacked jurisdiction and [that the case] failed to meet requirements for admissibility, filed by PEP.

7    To dismiss all other claims and petitions of the parties.

The decision of the Arbitral Tribunal was unanimously adopted, with the exception that the arbitrator D. Oscós Coria dissented from the majority opinion with respect to Technical Disputes 36 ("Bad weather that affected the works of Castoro 10 and the Bar Protector"), 34 and 35 ("Waiting times for delays in the start of works of Castoro 10 and the Bar Protector") and the calculation of interest and costs. His dissenting opinion on other matters will be captured in one specific vote.

8

597

## CONSIDERATIONS OF LAW BY VIRTUE OF WHICH THE ACTION EXERCISED IN THIS PROCEEDING MUST BE CONSIDERED PROPER AND WELL FOUNDED

1.- My client has the right to claim <u>recognition and enforcement</u> of the order issued in the award in the arbitration proceedings 13716/CCO/JRF by virtue of which it participated as the claimant, which was recognized by the Arbitral Tribunal before which it obtained the favorable award.

On January fifteenth, two thousand eight, in the final arbitral award whose recognition and enforcement is sought, the Arbitral Tribunal made up of Messrs. José W. Fernández, Juan Fernández-Armesto and Dario Oscós Coria ordered the respondent, as seen on pages 182 and 183 of the aforementioned award, to pay the following amounts:

3   the sum of "S" Mexican pesos ("PME"), calculated in accordance with the following formula:

$$S = (A + B) \times 0.995$$

where

"S" is the sum in PME that PEP must pay to Commisa.
"A" is equal to PME 10,928,728.
"B" is a sum in PME that results from converting 75,075,635 dollars of the United States of America ("USD") into PME at the exchange rate determined by the Bank of Mexico and published in the Mexican Official Gazette on the business day immediately prior to September 29, 2002.
" + " is the addition sign.
" x " is the multiplication sign.
" = " is the equal sign.
0.995 reflects a deduction of 5 per thousand, [representing the amount] that Commisa is obligated to pay to the Ministry of Accounting and Administrative Operations [Secretaría de Contraloría y Desarrollo Administrativo.]

4   to pay interest to Commisa for financial costs derived from Contract EPC-28, calculated on the sum "S," defined in the aforementioned Decision. Financial costs will be accrued from September 29, 2002, through the date of payment, at a rate established at any given time in the Federal Revenue Law for cases of extensions for tax payments due; this computation will be based on days, and the payment of the financial costs will be made along with the sum "S" determined in the foregoing decision.

9

598

6    To order payment of costs and expenses to

    (ii)    .. to pay Commisa USD 200,000 for costs incurred to defend itself against objections that the Arbitral Tribunal lacked jurisdiction and [that the case] failed to meet requirements for admissibility, filed by PEP."

2.- The individuals who served as arbitrators in the arbitration proceeding found no impediment to hearing and resolving the dispute submitted to their jurisdiction.

By virtue of the foregoing, it is worth adding the information that the Arbitral Tribunal was suitable and correctly constituted, given that:

    (i)    COMMISA complied with the provisions in the arbitration clause of the Rules of Arbitration of the International Chamber of Commerce at the time when it appointed its arbitrator, as did PEP, itself.

    (ii)    Based on the foregoing and as was already duly stated, my client carried out its appointment of the aforementioned arbitrator based on his reputation and prestige as an impartial, independent arbitrator, with knowledge both of arbitration and of legal/commercial matters.

3.- This proceeding of <u>recognition and enforcement</u> of the arbitral award is proper by virtue of the fact that the parties voluntarily, expressly submitted to arbitration proceedings.

4.- The decision of the Arbitral Tribunal does not depend on declaring a violation of administrative law—*as PEP could have argued*—but rather on the breach of a contractual obligation.

The specific case rests on the assumption that an obligation had been agreed upon by the parties, a breach of which led to the consequence of payment of compensation for damage caused by PEP to my client, a legal situation that implies that arbitration proceedings are in conformity with the law.

5.- None of the assumptions set forth in Article 1482 of the Commercial Code were updated, which article is cited below:

    "Article 1462.- The recognition and/or enforcement of an arbitral award, regardless of the country where it was issued, may only be denied when:

10

599

I.- The party against which the award is issued proves before the competent judge in the country in which recognition and enforcement is requested that:

(a) One of the parties to the arbitration agreement was affected by some lack of capacity or that said agreement is not valid by virtue of the law to which the parties have submitted, or if nothing was filed in this regard, by virtue of the country in which the award was issued;

(b) Due notice was not sent of the appointment of one arbitrator or the arbitration proceedings, or for any other reason, [one party] was unable to exercise its rights.

(c) The award refers to a dispute not set forth in the arbitration agreement or contains decisions that go beyond the terms of the arbitration agreement. However, if the decisions of the award related to the matters submitted for arbitration can be separated from those that are not covered, recognition and enforcement can be granted to the decisions on the separable matters.

(d) The composition of the Arbitral Tribunal or the arbitration proceeding is not in conformity with the agreement signed by the parties, or, in the absence of such an agreement, that they are not in conformity with the law of the country where the arbitration was carried out.

(e) The award was either not yet binding on the parties or was annulled or suspended by the judge in the country in which, or in conformity with the laws of which, this award was issued, or

II.- The judge verified that, pursuant to Mexican law, the subject of a dispute could not be submitted to arbitration, or that recognition and enforcement of the award would be contrary to public policy."

In fact, as can be inferred from the provisions of the aforementioned Article, the Judge may deny recognition of the arbitral award if the matter disputed is not subject to resolution by arbitration or if the recognition and/or enforcement of the award is contrary to public policy.

Along these lines, there was no violation that could be categorized as a procedural/formal or substantive violation in the arbitral award. Such matters do not have the potential to entail infringement of public policy.

It is important to bear in mind that the concept of public policy referred to in the aforementioned Article 1462 of the Commercial Code has nothing to do with the formalities of arbitral proceedings. On the contrary, what the law refers to therein is an award or enforcement thereof involving infringement of significant principles whose importance entails values that prevail over the Code itself. That is, the text of the Commercial Code does not refer to procedural provisions on arbitration, rather to substantive provisions that, based on their importance and significance are deemed to be fundamental provisions of Mexican law and are understood to be on the level of public policy.

In this context, when the arbitral award is reasoned in Mexican law, it cites the precepts that arbitrators deem applicable to the specific case and also contains the reasons and circumstances de facto or de jure through which the sense of the decision was determined.

11

600

It is also worth pointing out that in conformity with Article 25 of the Rules of Arbitration of the International Chamber of Commerce—*which were the rules to which the parties voluntarily submitted, as a mandatory requirement in the arbitration proceedings*—the arbitrators' only obligation related to the content of the award is that it must be justified. However, said justification must and may not be interpreted under the terms of the obligation of the Mexican jurisdictional authorities, since that obligation is based on the principle of legality embodied in the constitution, while the obligation to justify an award arises from an agreement between the parties.

In this regard, the Rules of Arbitration of the International Chamber of Commerce do not define the terms and scope of what must be understood by a justified award. However, the interpretation given in arbitration practice is that it suffices that the reasons for the decision based upon which the award is valid be stated in the award. This is especially true, considering the versions of the aforementioned Article 25 that exist in other languages (as for example, in English, "The Award shall state the reasons upon which it is based," which would be freely translated as "El Laudo establecerá las razones en las cuales se encuentra basado"). *[Translator's note: the English given here is the official English version of Article 25(2), and it seemed best to leave the proposed Spanish translation as given. The official Spanish version is: "El laudo deberá ser motivado."]*

This expression has been understood in the opinion of legal scholars of international arbitration to mean that the Arbitral Tribunal must exclusively give *its* reasons for the determinations ultimately issued in the final arbitral award, including deeming an award *justified* in spite of the fact that there are contradictions in the reasoning of the Arbitral Tribunal itself. It is particularly important that Your Honor bear in mind that the opinion of legal scholars expressly maintains that the Courts are not to enter into the substantive matters resolved by the Arbitral Tribunal. The foregoing is confirmed in our citation from the arbitration manual called *Fouchard, Gaillard, Goldman on International Commercial Arbitration*, edited by Emmanuel Gaillard and John Savage:

> "Where the grounds for the award must be stated, that does not mean that they must be well-founded in fact or law. A court reviewing the award to ensure that reasons have been given will not of course review the substantive findings of the award. Thus, even grounds that are clearly wrong will satisfy the requirement that the arbitrators state the reasons for their award."[1]

12

---

[1] GAILLARD, Emmanuel and SAVAGE, John, *Fouchard Gaillard Goldman on International Commercial Arbitration*. The Hague/Boston/London, Kluwer Law International, 1999, page 763. [The quotation is a free translation of the following text:] *[Translator's Note: I have replaced said "free translation" in the body of the document, above, with the original English text from the footnote.]*

601

In a sense similar to the foregoing, Yves Derains and Erick A. Schwartz in their work *El Nuevo Reglamento de Arbitraje de la Cámara de Comercio Internacional* [The New Rules of Arbitration of the International Chamber of Commerce] state their opinion regarding the obligation to give reasons set forth in Article 25(2) of the aforementioned Rules, as follows:

> "... the reasons stated in the award must show that the Arbitral Tribunal <u>has taken into account the positions of the parties</u>."[2]

> (Emphasis added)

It is irrefutable; the only obligation that exists in order for the Arbitral Tribunal to issue its award, regarding justification, is that the Tribunal show that it has taken into account the positions of the parties, a matter which has reliably been carried out in the final award that is the subject of this <u>recognition and enforcement</u> of the award.

6.- In addition, the final award of January fifteenth, two thousand eight, is res judicata, and the fact that Your Honor must exclusively address the analysis of merely formal matters with respect to the decision, is confirmed in the following judicial opinions:

> "Registration No: 189,345
> Specification of Case:
> Series Nine
> Court: Three-Judge Courts in the Circuit
> Source: Supreme Court Reports and Gazette
> Volume XIV, July 2001
> Page 1107
> Excerpt I. 3° C 231 C
> Isolated excerpt
> Civil Matter
>
> ARBITRATION. ITS DECISIONS ARE AUTHORITATIVE ACTS, AND ITS ENFORCEMENT IS UNDER THE JURISDICTION OF THE COURT DESIGNATED FOR THE PARTIES. The enforcement of an arbitral award requires the mediation of an act carried out by a jurisdictional body which, while it remains private in nature, assumes its content in such a way that the award is enforceable through a jurisdictional act, which is the only additional act required for the enforcement of a decision issued by an arbitrator, since the award is a decision issued by the arbitrator who settles the dispute arisen between the parties, as res judicata, This reason is a justification for enforcement before the competent Judge, which may provide the procedural steps required so that the decision resolved by the award may be carried out. Therefore, *the award is a decision that may not be challenged, changed or coerced*; however, the effectiveness and specific performance of what is ordered are the province of the competent Judge designated for the parties or for the location of the trial. The arbitrator lacks the capacity to enforce, on his/her own,

13

---

[2] DERAINS Yves and SCHWARTZ, Erick A. *El Nuevo Reglamento de Arbitraje de la Cámara de Comercio Internacional,* México, D.F. Oxford 2001, p. 349.

602

the award he/she issued, because he/she lacks the power or judicial authority, which is one of the attributes of jurisdiction and is inherent in the jurisdictional bodies of the State. This means that the arbitrator lacks the force of the State to enforce the order, but *the award in and of itself is not stripped of the attributes of res judicata*, given that the authority to decide the dispute is a delegation made by the State through the law, reserving only the authority to enforce. In order to order payment, the Judge before whom enforcement of an award issued by an arbitrator is requested must and may only confirm the existence of the award, as a decision that has established specific conduct, which may not be challenged or changed, and which therefore must have come from a proceeding in which the essential formalities thereof were respected, and which is not contrary to a matter of public policy.

THIRD THREE-COURT JUDGE OF THE FIRST CIRCUIT IN CIVIL MATTERS.

Direct amparo 1303/2001. Constructora Aboumrad Amadia Berho, S.A. de C.V. March 8, 2001. Unanimous vote. Judge writing the opinion: Neófilo López Ramos. Court Clerk, Lina Sharal González Juárez.

Note: By summary judgment on October 26, 2001, the Second Court stated nonexistent the contradiction of excerpt 14/2001-PL in that the opinion issued here was involved."

Added to the foregoing, assuming—without granting—that the obligations to provide grounds and justification that correspond to the jurisdictional function related to the final award were applicable, Your Honor should take into consideration that these obligations would be fully carried out in the light of the Case Law of the federal courts as observed in the following binding opinion:

"Registration No: 170307
Specification of Case:
Series Nine
Court: Three-Judge Courts in the Circuit
Source: Supreme Court Reports and Gazette
Volume XXVII, February 2008
Page 1964
Excerpt I. 3° C  J/47
Case Law
Civil Matter

PROVIDING GROUNDS AND REASONS, THE DIFFERENCE BETWEEN FAILURE TO MEET AND IMPROPER MEETING OF BOTH CONSTITUTIONAL REQUIREMENTS TRANSCENDS THE LEGAL SPHERE IN WHICH THE CONCEPTS OF VIOLATION AND THE EFFECTS OF THE PROTECTIVE DECISION MUST BE STUDIED. The failure to provide grounds and reasons is a formal violation distinct from improper and incorrectly providing grounds and reasons, which is a material, substantive violation, and the effects caused by the one or the other are distinct. Therefore, the study of the failure to provide them must be done first. In fact, Article 16 of the Constitution establishes, in its first paragraph, the requirement for authorities to provide grounds and reasons for their acts that effect the sphere of those governed, but infringement of the constitutional requirement that requires that both be stated in acts by authorities

14

603

may take two different forms, as follows: that derived from the failure, and that related to being done incorrectly. A failure to provide grounds and reasons occurs when one does not state the legal provisions applicable to the matter and reasons that have been considered to decide that the case falls under a hypothesis set forth in the law. On the other hand, there is improper presentation of grounds and reasons when the act by the authority does invoke a legal precept; however, it is inapplicable to the matter based its specified characteristics, which prevent it from fitting in with or falling under the legal hypothesis and incorrect presentation of reasons in a case in which the reasons considered by the authority for issuing the act are stated, but they contradict the content of the legal provision applied to the case. Thus, the failure to provide grounds and reasons signifies the lack or absence of such requirements, while the improper or incorrect presentation of grounds and reasons involves a nod to both constitutional requirements, but with a mismatch between the application of provisions and the reasons stated by the authority in the specific case. The difference noted gives rise to the caveat that in the first case, there is a formal violation, given that an act by an authority lacks in situ, inherent elements, by virtue of a constitutional imperative; therefore, should one become aware of its absence by a simple reading of the act claimed, it is proper to concede the amparo requested. In the second case, there is a material or substantive violation, because the formal requirement has been met by stating the grounds and reasons, but one or another is incorrect. As a general rule, this will also give rise to a protective decision; however, first, it is necessary to analyze the content of the matter in order to reach the conclusion of the above-mentioned incorrectness. By virtue of that distinctive note, the effects of conceding amparo, with regard to a jurisdictional decision, are just as different in the one case and the other, since although there is a common element, that is, that the authority deems the unconstitutional act baseless, in the first case, it will be in order to correct the irregularity, [ordering] stating of the grounds and reasons previously lacking, and in the second, it will be to provide grounds and reasons different from those previously filed. The difference pointed out also transcends the legal system in which the arguments exercised by the claimants must be studied, since if, in one case, the failure to meet the related constitutional requirements is observed, that is, the violation is formal, amparo will be granted for the purposes indicated, excluding an analysis of the reasons for the dispute that, concurrently with those related to the defect, characterize the incorrectness of both elements inherent in the act by the authority. However, if they have been met, the study of the improper presentation of grounds and reasons will be feasible, in other words, [it will be possible to study] the material or substantive violation.

THIRD THREE-COURT JUDGE OF THE FIRST CIRCUIT IN CIVIL MATTERS.

Direct amparo 551/2005. Jorge Luis Almaral Mendivil. October 20, 2005. Unanimous vote. Judge writing the opinion: Neófilo López Ramos. Court Clerk, Raúl Alfaro Telpaio.
Direct amparo 66/2007. Juan Ramón Jaime Alcántara. February 15, 2007. Unanimous vote. Judge writing the opinion: Neófilo López Ramos. Court Clerk, Raúl Alfaro Telpaio.

604

Direct amparo 364/2007. Guadalupe Rodríguez Daniel. July 6, 2007. Unanimous vote. Judge writing the opinion: Neófilo López Ramos. Court Clerk, Greta Lozada Amezcua.

Direct amparo 513/2007. Autofinanciamiento México. October 2007. Unanimous vote. Judge writing the opinion: Neófilo López Ramos. Court Clerk, Raúl Alfaro Telpaio.

Direct amparo 562/2007. Arenad y Gravas Xallepec. October 11, 2007. Unanimous vote. Judge writing the opinion: Neófilo López Ramos. Court Clerk, Raúl Alfaro Telpaio.

(Emphasis added)

Therefore, in the arbitral award, different legal grounds can be verified—*thus, the hypothetical and inadmissible obligation of the Arbitral Tribunal to provide "grounds" for its final arbitral award would be met*—as well as the justification and reasoning applied by the Arbitral Tribunal to its resolution of the *substance* of the matter—*thus, the also hypothetical and inadmissible obligation of the Arbitral Tribunal to provide "reasons" for its final award would be met*—all in adherence to the procedural provisions of the much mentioned Rules of Arbitration of the International Chamber of Commerce.

This being the case, as long as there are *reasons,* [the award] would fully comply with the only rule to which the Arbitral Tribunal is obligated, consisting of Article 25(2) of the Rules of Arbitration of the International Chamber of Commerce, which called for providing *reasons* for the award.

Therefore, Your Honor, there prohibition on entering into the study of the reasons for which the Arbitral Tribunal issued its decision, and that sense of the much-cited final award is characterized as res judicata. Therefore, any PEP argument related to the supposed nullity derived from a supposed failure to provide legal grounds and reasons must be deemed improper.

In addition, even assuming, without granting, that the principles applicable to State judicial work were applicable to the final arbitral award—in connection with the Arbitral Tribunal's obligation to provide *reasons* pursuant to Article 25(2) of the Rules of Arbitration of the International Chamber of Commerce—it would have to be taken into account that our courts have understood the principle of providing *reasons* as a concept that is binding on the Judge or Authority—*insisting that this is not applicable to an arbitrator or Arbitral Tribunal, which are only individuals*: to give a sufficient argument to justify the reasoning on which it bases its determinations.

In this sense, this requirement—*which is mandatory exclusively for State bodies*—to provide *reasons* is fully met in the final arbitral award whose recognition and enforcement are requested from Your Honor. The foregoing is based on the opinion in the case cited below:

"Registration No: 175,082                                                    16

605

Case Law
Civil Matter
Series Nine
Court: Three-Judge Courts in the Circuit
Source: Supreme Court Reports and Gazette
Volume XXIII, May 2006
Excerpt I 4° A J/43
Page 1531

PROVIDING GROUNDS AND REASONS. THE FORMAL ASPECT OF THE GUARANTEE AND ITS PURPOSE TRANSLATE INTO EXPLAINING AND JUSTIFYING, MAKING A DEFENSE POSSIBLE AND COMMUNICATING THE DECISION. The formal content of the guarantee of legality set forth in the Constitution, Article 16, related to providing grounds and reasons, has the primary purpose and reason that the defendant know the reason for which the authorities do what they do, which translates into informing them in detail and fully on the essence of all the circumstances and conditions that determined the act of will, so that it is evident and very clear, so the party affected may question and dispute the merit of the decision, allowing a true and authentic defense. Therefore, it is insufficient that an act of the authorities scarcely observe a pro-forma but incongruent, insufficient or imprecise presentation of reasons, **nor is it valid to require from it a superfluous breadth or abundance, since *it suffices* to state what is strictly necessary to explain and justify, making a defense possible**, as well as reporting the decision **so that it is deemed to provide due grounds and reasons, stating the facts relevant to the decision, citing the applicable legal provisions and a *minimal but sufficient argument to support the reasoning*** from which is derived the logically relevant relationship of the facts to the law invoked, which is the action of subsuming a particular situation within the terms of the law.

FOURTH THREE-COURT JUDGE OF THE FIRST CIRCUIT IN ADMINISTRATIVE MATTERS.

Direct amparo 447/2005. Bruno López Castro. February 1, 2006. Unanimous vote. Judge writing the opinion: Jean Claude Tron Petit. Court Clerk: Claudia Patricia Peraza Espinoza.

Amparo under review 631/2005. Jesús Guillermo Mosqueda Martínez. February 1, 2006. Unanimous vote. Judge writing the opinion: Jean Claude Tron Petit. Court Clerk: Alma Margarita Flores Rodríguez.

Direct amparo 400/2005. Pemex Exploración y Producción. February 9, 2006. Unanimous vote. Judge writing the opinion: Jesús Antonio Nazar Sevilla. Court Clerk, Angela Alvardo Morales.

Direct amparo 27/2006. Arturo Alarcón Carrillo. February 15, 2006. Unanimous vote. Judge writing the opinion: Hilario Bárcenas Chávez. Court Clerk, Karla Mariana Márquez Velasco.

Amparo under review 78/2006. Juan Alcántara Gutiérrez. March 1, 2008. Unanimous vote. Judge writing the opinion: Hilario Bárcenas Chávez. Court Clerk, Mariza Arellano Pompa.

(Emphasis added)

7.- There was no violation of the arbitral procedure. As understood from the provisions of the Rules of Arbitration of the International Chamber of Commerce, Mexican procedural law is only applicable if these

17

606

Rules are silent; moreover, the Arbitral Tribunal deems it suitable to refer to these Rules.

Article 15(2) of the aforementioned Rules of Arbitration provides for the opportunity for defense. In this regard, said item determines that the Arbitral Tribunal "shall … ensure that each party has a reasonable opportunity to present its case." *[Translator's note: my quotation marks – quoted from official Rules.]*

Thus, it must be understood that the arbitral proceeding must comply with sufficient formalities for it to constitute a means of resolving disputes. That is, it must anticipate the possibility that both the claimant and the respondent are capable of presenting their cases in order to be able to litigate.

At the same time, it is required that parties be capable of providing evidence to support their claims, which allow them to argue, as the case may be, and allow for the Arbitral Tribunal to issue an award that coherently deals with the points raised.

Such elements are part of and specifically derived from the jurisdiction over the *substance* of the matter that is the exclusive province of the Arbitral Tribunal. The way it assesses evidence, as well as considerations by virtue of which the Arbitral Tribunal makes its decisions, have nothing to do with the essential formalities of the proceeding. Such [substantial] matters may not be subject to analysis by a State court.

The autonomy of the Arbitral Tribunal in making its decisions and the related recognition on the part of the State courts is precisely the raison d'être of commercial arbitration. The purpose of said institution is to provide and recognize a means of resolving disputes based on contractual intent, with minimal limits, in order for it to fulfill its raison d'être, which is the swiftness and economy characteristic of commercial law.

In this regard, any arguments that PEP may bring to bear—consisting of the fact that the award must not be recognized due to its failure to observe the supposedly essential formalities of the proceeding, which PEP considers to be: deeming the public interest to be involved in the contract on which the action is based, the supposed failure to provide grounds and reasons, [based] on several administrative laws supposedly applicable to the contract on which the action is based, the evidentiary value given to the documents offered as proof, and the analysis of the reasoning in terms of whether

18

607

the different technical disputes submitted for arbitration are subject to arbitration—are not arguments that, as explained, pursuant to the provisions of Article 1462 of the Commercial Code, are capable of leading to refusal to recognize the award.

8.- Similarly, it is important to bear in mind the provisions of Article 33 of the Rules of Arbitration of the International Chamber of Commerce, which establishes that if either of the parties fails to object to any act that it regards as violating its rights to a suitable defense at the first opportunity it has to do so, it "shall be deemed to have waived its right to object" to said act. *[Quotation marks added by translator, again quoting official Rules.]* This rule is confirmed in paragraph (vii) of item (G) of the "Mission Statement," which is binding on the parties, attached to this pleading as part of EXHIBIT TWO and reads as follows:

> "If during the course of the proceeding, either party should become aware that the proceeding is violating its right to a fair and equitable process or the principles of equity, hearing and an adversary proceeding, it must advise the Arbitral Tribunal as soon as it becomes aware, with the understanding that if it does not do so at the first opportunity, it waives its right to subsequent argument."

PEP never made the Arbitral Tribunal aware of any violation of this kind. As a result, Your Honor must deem that it waived its right to raise any type of argument to the effect that its right to a guarantee of hearing or due process was violated.

In this regard, the reason set forth in section (b) of paragraph I of Article 1462 of the Commercial Code is absolutely excluded, [providing] for the party whose payment is ordered in the final arbitral award whose recognition and enforcement is demanded to argue a violation to its rights to a suitable defense.

Of even greater significance to the fact of loss of this right are the provisions in paragraph 41 of the final arbitral award whose recognition and enforcement is sought, found on page 11 of the award, in which it is acknowledged that PEP was asked, "*if at any time in the arbitral proceeding its rights to a hearing, an adversary proceeding and equity were infringed, or whether it sustained any other procedural lack of proper defense.*" It stated that it had not sustained any lack of proper defense whatsoever and that the arbitral proceeding had been carried out in conformity with the principles of due process.

## REQUEST FOR JOINDER

19

608

Through this pleading, based on Article 72 of the Federal Code of Civil Procedure, with proper respect, I request that Your Honor order the <u>joinder</u> of the file created for filing this proceeding of <u>recognition and enforcement</u> of an arbitral award with file No. <u>158/2008-II</u> <u>which is currently in process in the Eighth District Court in Civil Matters in the Federal</u> <u>District</u>, regarding an incidental proceeding of nullity of the arbitral award of January fifteenth, two thousand eight, filed by PEP against COMMISA (whose order admitting the pleading was dated May twenty-first of two thousand eight, attached as <u>EXHIBIT THREE</u> to this pleading).

As Your Honor may see, this request for joinder is made with respect to a proceeding in which the same *parties and actions arise from one and the same case*: the arbitral award of January fifteenth, two thousand eight. Pursuant to Article 72 of the Federal Code of Civil Procedure, two or more lawsuits must be joined when the decision on one requires a modification of the legal relationships, derived from one and the same event or when one and the same dispute must be resolved.

In the case at hand, both proceedings, (i) the one to declare the nullity of the arbitral award— *in process before the Eight District Court in Civil Matters in the Federal District*—and (ii) the one to request recognition and enforcement of the arbitral award—*filed now*—are in process as incidental proceedings pursuant to Article 360 of the Federal Code of Civil Procedure. The foregoing is based on the provisions of Article 1460 and 1463, both of the Commercial Code, cited below in pertinent part:

> "Article 1460.- A <u>proceeding for nullity</u> shall be filed incidentally, in conformity with the provisions of Article <u>360</u> of the <u>Federal Code of Civil Procedure</u>. ..."

> "Article 1463.-
> A proceeding for <u>recognition and enforcement</u> shall be filed incidentally in conformity with Article <u>360</u> of the <u>Federal Code of Civil Procedure</u>. The decision will not be subject to any appeal whatsoever."

(Emphasis added)

Both proceedings require modification of a legal relationship that unites the parties. Nullity requires a judicial statement of nullity of the arbitral award of January fifteenth, two thousand eight that orders PEP to pay different amounts to COMMISA,

609

while on the other hand, the incidental proceeding of recognition and enforcement demands a mandatory order by the State jurisdictional body to [enforce] compliance with the same award. It is indisputable that both proceedings are to resolve one and the same dispute, that is, the validity and binding nature of the aforementioned arbitral award.

Based on the foregoing, let this case be joined with the one in process in file 158/2008-II, currently in process in the Eighth District Court in Civil Matters in the Federal District.

In addition, joinder is also proper because the other proceeding is in a discovery period, with which the impediment of Article 72 of the Federal Code of Civil Procedure has been definitively excluded; therefore, the final hearing in first instance does not need to be verified.

The fact of the proceeding in process for nullity of the arbitral award in file 158/2008-II which is currently in process in the Eighth District Court in Civil Matters in the Federal District, filed by PEP against COMMISA, is being verified both with the order admitting the pleading and with the certification dated May twenty-eighth, two thousand eight, of the court file of documents shown as evidence in that Eighth District Court attached to this pleading as EXHIBIT TWO. The following is a citation of the relevant terms both of the order admitting the pleading and the aforementioned certification:

> On May ninth of two thousand eight, the Court Clerk reported to the Judge with the initial complaint of PEMEX EXPLORACIÓN Y PRODUCCIÓN, through its attorney-in-fact, JOSÉ NÉSTOR GARCÍA REZA and forty-six exhibits, registered in the book for this court under No. 6441. Let it be confirmed.
>
> MEXICO, FEDERAL DISTRICT ON MAY NINTH OF TWO THOUSAND EIGHT.
>
> With the complaint in the case, let a file be set up and let it be registered in the government book, civil section, under No. 159/2008-II. A pleading for nullity of the arbitral award filed by PEMEX EXPLORACIÓN Y PRODUCCIÓN is deemed submitted by the attorney-in-fact, JOSÉ NÉSTOR GARCÍA REZA, a capacity that he verifies, and it is recognized under the terms of a certified copy of instrument No. 13,250, attached for this effect, based on Articles 1457 and 1460 of the Commercial Code in effect, to which the Federal Code of Civil Procedure is applied complementarily, if necessary. The pleading for nullity of the arbitral award filed by PEMEX EXPLORACIÓN Y PRODUCCIÓN IS ADMITTED for trial, filed by its attorney-in-fact, JOSÉ NÉSTOR GARCÍA REZA,

21

610

for the several instances of compensation set forth in the related chapter; therefore, as this act has the nature of an order in form, let the defendant, CORPORACIÓN MEXICANA DE MANTENIMIENTO INTERGRAL, S. DE R.L. DE C.V. be summoned at its registered office located at: HOMERO No. 534-7° PISO, COLONIA CHAPULTEPEC MORALES, MÉXICO 11570, DISTRITO FEDERAL, with non-notarial copies of this incidental pleading and exhibits attached thereto, as well as this agreement, duly compared and stamped. Let it be sent so that within a period of three days, [the other party] may state what is required in its interest regarding said pleading, under warning that if it does not do so, provision shall be made as required by law.
..."

"HE WHO SIGNS BELOW, JOSÉ PALMA DURÁN, CLERK OF THE EIGHTH DISTRICT COURT IN CIVIL MATTERS IN THE FEDERAL DISTRICT, CERTIFIES THAT THESE PHOTOCOPIES CONSISTING OF THREE HUNDRED NINETY-TWO PAGES OF TEXT ARE TRUE COPIES OF THE DOCUMENTS SHOWN, WHICH ARE IN THE SAFEKEEPING OF THE COURT THAT WILL HEAR THE INCIDENTAL PROCEEDING FOR NULLITY OF THE ARBITRAL AWARD No. 158/2008 II, FILED BY PEMEX EXPLORACIÓN Y PRODUCCIÓN IN FULFILLMENT OF THE ORDER DATED MAY TWENTY-SIXTH, TWO THOUSAND EIGHT. MEXICO, FEDERAL DISTRICT ON MAY TWENTY-EIGHTH, TWO THOUSAND EIGHT."
[Court Stamp]

In conclusion, with proper respect, I request that Your Honor order the remand of the files opened for this incidental proceeding in order to join them to the proceeding for nullity of the arbitral award of the file 158/2008-II, which is currently in process in the Eighth District Court in Civil Matters in the Federal District, filed by PEP against COMMISA. This petition is based on the judicial precedent cited below:

"Registration No: 232,528
Isolated excerpt
Local Matter
Series Seven
Court: En Banc
Source: Supreme Court Reports
139-144 First Part
Excerpt
Page 13

JOINDER. The primary objective of joinder, as one may conclude from a logical, coherent analysis of Articles 57 and 63 of the Amparo Act, is to adhere to the principle of procedural economy that translates into a single hearing resolving two or more amparo proceedings wherein the same act is claimed and avoid that said proceedings result in contradictory decisions; as a result, in spite of the ongoing process and the joint and simultaneous resolution, the amparo proceedings subject to joinder retain their individuality, that is, their own characteristics. From the foregoing, it can be inferred

22

611

that the circumstance that joinder has not been declared in no way implies that the parties have been left without defense or that this could have a decisive influence on the decision that must be issued in final form, or even less that any of the parties that has the right to participate in said proceedings in conformity with the law has not been heard. For this reason, it is clear that this is not the condition considered in Article 91, section IV, part two, of the Regulations enacting Articles 103 and 107 of the Constitution.

Amparo under review 3643/79. Ejes Tractivos, S.A. de C.V. November 4, 1980. Unanimous vote of sixteen. Judge writing the opinion: Alfonso Abilia Arzapalo.

Amparo under review 4256/79. Ejes Ferreteria Nonoalco, S.A. and other injured parties. September 17, 1980. Unanimous vote of fifteen. Judge writing the opinion: Gloria León Dorantes.


<u>DOCUMENTS</u>


In fulfillment of the requirements in Articles 1061, 1378 and 1461 of the Commercial Code, the following is a list of the documents on which my client is basing its petitions. All these documents, with the exception of the power of attorney through which COMMISA now appears and the agreement dated ____ are attached to this pleading in the file of certified copies issued by the Eighth District Court in Civil Matters in the Federal District, which is submitted along with the incidental complaint as EXHIBIT TWO, given that these documents are in that Court with respect to the file 158/2008-II.

1.-    NOTARIAL INSTRUMENTS, consisting of notarial instrument No. 58,042, dated March fourteenth, two thousand eight, granted and certified at Public Notary No. 1 in the Federal District, Roberto Nuñez y Bandera, in which the power of attorney granted by COMMISA in favor of Marco Tulio Venegas Cruz and others is verified, attached as <u>EXHIBIT ONE</u>.

This evidence verifies the capacity with which COMMISA appears in this incidental proceeding of recognition and enforcement of the arbitral award. It is suitable for verifying this fact by virtue of the fact that the power of attorney contained in the aforementioned notarial instrument was granted before the certifying public officer, thus fulfilling the formalities required by the Federal Civil Code for that purpose.

This evidence is related to each and every fact in this statement of answer and counterclaim, especially with the capacity in which the undersigned Marco Tulio Venegas Cruz appears, representing COMMISA.

23

612

2.-    NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of the final arbitral award of January fifteenth, two thousand eight, issued in arbitration 13716/CCO/JRF between COMMISA and PEP.

This evidence is offered to fulfill the provisions of Article 1461 of the Commercial Code so that the final award may be <u>recognized and enforced</u> by Your Honor.

This certified copy is included in the file attached as <u>EXHIBIT TWO</u> and is suitable for verifying this fact by virtue of the fact that the certification contained therein was issued by an officer on behalf of the International Court of Arbitration of the International Chamber of Commerce, which was precisely the Arbitration Administration Institution that gave rise to the award that is the subject of this proceeding.

This evidence is related to each and every fact in this pleading, especially as related to issuance of the arbitral award and the order whose recognition and enforcement is sought through this incidental proceeding for recognition and enforcement of the award.

3.-    NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of the instrument that contains the certification dated February twenty-ninth, two thousand eight, issued by Jason A. Fry, Chief Clerk of the International Court of Arbitration of the International Chamber of Commerce, in which the following is certified:

(1) that CORPORACIÓN MEXICANA DE MANTENIMIENTO INTERGRAL, S. DE R.L. DE C.V. (previously called CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R.L. DE C.V.) (Mexico) was the claimant in arbitration against PEMEX EXPLORACIÓN Y PRODUCCIÓN (Mexico) (the "Respondent") (reference No. 13716/CCO/JRF);

(2) that the Respondent in the arbitration was received by the Office of the Clerk on February 14, 2005;

(3) that, in accordance with the records of the express messenger company DLH, the Statement of Claim was received by the Respondent on February 22, 2005.

24

613

(4) that the Statement of Answer was submitted on May 3, 2005;

(5) that, in accordance with the records of the express messenger company DLH, the Final Award dated January 15, 2008 was received by the Respondent on February 11, 2008.

This evidence is offered to verify the facts stated in the certification related to several procedural events that were verified in the course of the arbitral proceeding No. 13716/CCO/JRF. This evidence is suitable for verifying the facts contained therein by virtue of the fact that it was issued by the Administrative Institution for the arbitration that concluded in the arbitral award of January fifteenth, two thousand eight, the subject of this proceeding.

This certified copy is included in the court file attached as <u>EXHIBIT TWO</u> and is related to each and every fact in this pleading, especially the fact that the essential formalities of the proceeding set forth by the Rules of Arbitration of the International Chamber of Commerce were observed.

4.    NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of the Mission Statement or Terms of Reference signed by the arbitrators, the representatives of COMMISA and PEP during the course of arbitral proceeding No. 13716/CCO/JRF.

This evidence is offered to verify the express statement of will and agreement that existed between the parties in the arbitration related to items on which the Arbitral Tribunal had to issue opinions, that is the calling of the hearing that said Tribunal had to resolve. This evidence verifies that the parties expressly submitted to the determination eventually issued by the Arbitral Tribunal, consisting of a final decision whose recognition and enforcement is requested through this pleading.

This evidence is suitable for verifying the fact referred to in the prior paragraph by virtue of its precise correspondence to the original signed by the parties in due course.

This certified copy is included in the court file attached as <u>EXHIBIT TWO</u> and is related to each and every fact in this pleading, especially the fact indicated in item (8) of this

614

incidental proceeding, as well as the fact that the Arbitral Tribunal resolved, in a final award, the items the parties expressly consented to submit to an arbitral hearing.

5.-    NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of the document Exhibit C of Contract No. PEP-O-IT 136/98.

This evidence is offered to verify that the subject matter of the aforementioned Exhibit C exclusively referred to and limited its reference to section 23.2 of the Contract, and in this regard, [and] only with respect to material covered in said Exhibit C, could any technical disputes have arisen in due course. In this regard, the technical disputes to which Exhibit C referred were not those for which the arbitral award ordered payment.

This evidence is suitable for verifying the fact under discussion by virtue of the fact it is full proof of the content of said Exhibit C, and in this regard, it will render indisputable the fact that the text of the Contract's section 23.2 referred to technical disputes that might arise based on the provisions in said Exhibit C.

[court stamp]

This certified copy is included in the court file attached as <u>EXHIBIT TWO</u> and is related to each and every fact in this pleading, especially the fact that the payment orders issued in the arbitral award refer to technical disputes other than those that were the subject of section 23.2 of the Contract.

6.-    NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of the translation dated May nineteenth, two thousand eight, done by Alberto de la Santa Cruz Manzano Alba, Expert Translator No. P.125-2004, of two quotations. The first quotation translated consisted of paragraph 9-32 from the book REDFERN, Alan, HUNTER, Martin, BLACKABY, Nigel, and PARTASIDES, C., *Law and Practice of International Commercial Arbitration*, 2004, pp. 1-50; the second consisted of a paragraph on page 180 of the book BROCHES, Aron, *Commentary on the UNCITRAL Model Law on International Commercial Arbitration*\*, Kluwer Law International, Vol. IV., 2004. *\*[Translator's Note: the book here cited was published in <u>1990</u> by the same author, while the actual book referenced may be an updated version of same, for which I could not find a listing.]*

This evidence is offered to verify COMMISA's fulfillment of the provisions of Article 131 of the Federal Code of Civil Procedure, as related to the translations that must be submitted in Spanish

26

615

for documents submitted in foreign languages. This is suitable for verifying compliance with both requirements, since it was issued by a translator authorized to issued translations such as the one in the exhibit.

This copy is included in the court file attached as EXHIBIT TWO and is related to each and every fact in this pleading, especially that related to legal opinion on international arbitration in connection with the most accepted concept of "public policy."

7.-    NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of the Contract of Public Works for Prices per Unit and a Set Term No. PEP-O-IT-136/98 dated September fourth, nineteen ninety-eight, entered into between COMMISA and PEP, which was the subject of arbitration and whose arbitral section gave rise to the final award that is the subject of this incidental proceeding.

This evidence verifies the existence of arbitral section 23.3 which provides the basis for all the claims that led to the arbitral award that is the subject of this proceeding and whose recognition and enforcement is requested by COMMISA.

This certified copy is included in the court file attached as EXHIBIT TWO and is related to each and every fact in this pleading, especially the contractual basis of the dispute under arbitration, the competence of the Arbitral Tribunal to resolve the disputes that arose related to said Contract and the final arbitral award.

8.-    NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of *Exhibit B 2 "Background"* of *Contract No.* PEP-O-IT-136/98 (IPC 28) entered into by COMMISA and PEP on September fourth, nineteen hundred ninety-eight.

This evidence verifies the existence of arbitral section 23.3, which provides the basis for all the claims that led to the arbitral award that is the subject of this proceeding and whose recognition and enforcement is requested by COMMISA.

This certified copy is included in the court file attached as EXHIBIT TWO and is related to each and every fact in this pleading, especially the contractual basis of the dispute under arbitration, the competence of the Arbitral Tribunal

27

616

to resolve the disputes that arose related to said Contract and the final arbitral award.

9.- NOTARIAL INSTRUMENTS, consisting of a copy certified by the Office of the Court Clerk of the Eighth District Court in Civil Matters in the Federal District, of *Exhibit B 2 "Plan for Performance of Work"* of *Contract No.* PEP-O-IT-136/98 (IPC 28) entered into by COMMISA and PEP on September fourth, nineteen hundred ninety-eight, which was shown by the plaintiff in this incidental proceeding.

This evidence verifies the existence of arbitral section 23.3, which provides the basis for all the claims that led to the arbitral award that is the subject of this proceeding and whose recognition and enforcement is requested by COMMISA.

This certified copy is included in the court file attached as <u>EXHIBIT TWO</u> and is related to each and every fact in this pleading, especially the contractual basis of the dispute subject to arbitration, the competence of the Arbitral Tribunal to resolve the disputes that arose related to said Contract and the final arbitral award.

10.-    NOTARIAL INSTRUMENTS, consisting of the original stamped order admitting the pleading dated May ninth, two thousand eight, issued by the Judge in the Eighth District Court in Civil Matters in the Federal District, through which the Court admitted the complaint for nullity of the award filed by PEP against the arbitral award issued in arbitral proceeding No. 13716/CCO/JRF, assigning it file No. 158/2008.

This evidence verifies the existence of a different proceeding for nullity in process before the aforementioned Judge in the Eighth District Court in Civil Matters in the Federal District; this is why the joinder of court files requested is proper.

This agreement is attached as <u>EXHIBIT THREE</u> and is related to each and every fact in this pleading, especially the joinder of court files requested.


Based on statements made and grounds provided in the foregoing pleading,


I respectfully request that YOUR HONOR:

28

617

ONE.- Deem that I have appeared to represent CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R.L. DE C.V., filing this incidental proceeding of recognition and enforcement of the arbitral award, as well as exhibiting documents attached to this pleading.

TWO.- Order the return of the notarial instrument in which the power of attorney is verified through which this incidental proceeding is filed, subject to comparison and certification thereof with the non-notarized copy attached to this pleading.

THREE.- Order a summons of PEMEX EXPLORACIÓN Y PRODUCCIÓN through personal notification at the registered office designated to that effect in this pleading.

FOUR.- Order joinder of this complaint with the proceeding currently in process in the Eighth District Court in Civil Matters in the Federal District.

FIVE.- At the suitable time in the proceeding, issue a decision in which the Court declares the recognition and enforcement of the award claimed by my client and orders PEMEX EXPLORACIÓN Y PRODUCCIÓN to pay the amounts it was ordered to pay in the award of January fifteenth, two thousand eight.


I DO SO SWEAR
Mexico, Federal District on May thirtieth, two thousand eight.


MARCO TULIO VENEGAS CRUZ
representing
CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R.L. DE C.V.

# EXHIBIT 6



En la ciudad de México, Distrito Federal, siendo las once horas con cinco minutos del día trece de junio de dos mil ocho, día y hora señalados por auto de fecha nueve de junio del año en curso, para la celebración de la audiencia relativa al artículo 360 del Código Federal de Procedimientos Civiles, en el **incidente de nulidad del laudo arbitral número 158/2008-II**, promovido por **PEMEX EXPLORACIÓN Y PRODUCCIÓN**, por conducto de su apoderado JOSÉ NÉSTOR GARCÍA REZA, se encuentra en audiencia pública el licenciado CARLOS MANUEL PADILLA PÉREZ VERTTI, Juez Octavo de Distrito en Materia Civil en el Distrito Federal, asistido del Secretario que autoriza y da fe, la declara abierta sin la asistencia personal de las partes. Acto continuo, el secretario hace relación de las constancias de autos entre las que se encuentra el escrito con registro número 6441 por el que promueve el incidente de nulidad del laudo arbitral y en este momento se da cuenta con el estado procesal que guardan los presentes autos y con el escrito de la parte actora registrado con el número 8690. **El Juez acuerda:** Téngase por hecha la relación secretarial que antecede. Se da cuenta con el estado procesal que guardan los presentes autos, de los que se advierte que en auto de fecha doce de junio del presente año, se asentó en el primer párrafo "...dígasele que no ha lugar a acordar de conformidad su petición, toda vez que el presente juicio de garantías se encuentra en trámite; lo anterior con apoyo en la parte final del segundo párrafo, del artículo 280, del Código Federal de Procedimientos Civiles. ..."; siendo lo correcto "...dígasele que no ha lugar a acordar de conformidad su petición, toda vez que el presente juicio se encuentra en trámite, lo anterior con apoyo en la parte final del segundo párrafo, del artículo 280, del Código Federal de Procedimientos Civiles. ..."; lo anterior para los efectos legales a que haya lugar. Finalmente, visto el escrito de la parte actora registrado con el número 8690, por medio del cual hace diversas manifestaciones en vía de alegatos, sin perjuicio de relacionarlos en el período correspondiente. **PERÍODO DE PRUEBAS.-** Abierto, éste el Secretario da cuenta con los escritos de la parte actora, registrados con números 6441, 8028, 8246, 8247 y 8553; y con los escritos de la demandada registrados con los números 7103 y 8186, por medio de los cuales se ofrecen pruebas documentales públicas, la instrumental de actuaciones y la presuncional legal y humana. **El Juez acuerda:** Se tienen por admitidas las pruebas documentales de las partes las que se desahogan por su propia y especial naturaleza, la instrumental de actuaciones y la presuncional legal y humana. **PERÍODO DE ALEGATOS.-** Abierto éste, el Secretario da cuenta con

con el escrito de la demandada, registrado con el número 8167: por medio de los cuales hacen diversas manifestaciones en vía de alegatos. **El Juez acuerda:** Se les tienen por hechas las manifestaciones que en vía de alegatos realizan sin perjuicio de tomarlos en consideración al momento de resolver. Sin promociones. ni alegatos pendientes de acordar. se pasan los autos para dictar la resolución que en derecho corresponda. Doy fe.

1 6 JUN. 2008

SE HACE CONSTAR QUE SE LLEVO A LAS PARTES LA NOTI-
FICACION DE LA RESOLUCION ANTERIOR, POR MEDIO DE
LISTA QUE DEBIDAMENTE AUTORIZADA SE FIJA EN LUGAR
VISIBLE DE ESTE JUZGADO. DOY FE.



JUZGADO OCTAVO
EN MATERIA C
DISTRITO FE

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel     202  349.4180
fax     202  349.4182
email:  translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Mexican Court Order dated June 13, 2008,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 17, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: *June 17, 2008*

Signature: _____

Mariela Díaz-Butler, Manager
Language Innovations, LLC

Subscribed and sworn before me this ___*17th*___ day of ___*June*___ 20 *08*, at Washington, DC.

JAMES M. REED
Notary Public District of Columbia     Notary Public
My Commission expires: My Commission Expires June 30, 2012



Federal Judicial Branch

[illegible] _____

[illegible] _____

[illegible] _____

[EIGHTH] DISTRICT
CIVIL [COURT]
FEDERAL [DISTRICT]

*List dated
June 16, 2008
Pemex*

In Mexico City, Federal District, at 11:05 A.M. on June 13, 2008. This is the date and time scheduled in the order dated June 9 of this year to hold a hearing under Article 360 of the Federal Code of Civil Procedure, in the **proceedings to vacate arbitration award** number **158/2008-II**. The motion was filed by **PEMEX EXPLORACION Y PRODUCCION**, by and through its attorney, JOSE NESTOR GARCIA REZA. Present at the hearing are CARLOS MANUEL PADILLA PEREZ VERTTI, Judge for the Eighth District Civil Court for the Federal District, with the assistance of the Clerk who authorizes and attests to this record. This hearing is declared opened without the personal attendance of the parties. Next, the clerk reads the record from the case file, among which are the brief with registration number 6441, which consists of the motion to vacate the arbitration award. The Clerk then recounts the procedural status of the case, and the brief filed by the plaintiff under registration number 8690. **The judge rules:** The reading of the record by the clerk is completed. The Court is informed of the procedural status of the case, which is that the Court issued an order on June 12 of this year that, in its first paragraph, states: "... tell him that it is not admissible to grant his petition, since this trial for Constitutional protection is currently pending. This is supported by the final part of the second paragraph of Article 280 of the Federal Code of Civil Procedure..." This should read: "... tell him that it is not admissible to grant his petition, since this trial is currently pending. This is supported by the final part of the second paragraph of Article 280 of the Federal Code of Civil Procedure..." The foregoing is for any appropriate legal purposes. Finally, the Court has seen the brief filed by the plaintiff under registration number 8690, in which he submits various statements in order to argue his case, without prejudice to his being able to present arguments at the respective time. **EVIDENTIARY PERIOD.** – This period was opened, and the Clerk recounts that the plaintiff filed briefs under registration numbers 6441, 8028, 8246, 8247 and 8553; and the defendant filed briefs under registration numbers 7103 and 8186. Under cover of these briefs, the parties submitted evidence consisting of public documents, other documentary evidence, and the presumptions of law and fact. **The judge rules:** The Court hereby admits the documentary evidence submitted by the parties in their own, particular roles, the body of documentary evidence, and presumptions of law and fact. **PERIOD FOR ARGUMENTS.** – This period was opened, and the Clerk recounts

the brief filed by the defendant under registration number 8187, in which he makes various statements in order to argue his case. **The judge rules:** The Court admits the statements made to submit arguments in the case, which is done without prejudice to the Court being able to take these statements into consideration at the time of the Court issues its resolution. Without further motions or arguments pending, the case file is forwarded for issuance of the resolution required by Law. I attest.

[two illegible signatures]

ON_____JUNE 16, 2008_____
LET THE RECORD REFLECT THAT THE PARTIES WERE SERVED
PROCESS [illegible] BY MEANS OF A LIST THAT [illegible] IS POSTED IN
A VISIBLE PLACE IN THIS COURT. I ATTEST.



EIGHTH [DISTRICT]
[CIVIL] COURT
[FEDERAL] DISTRICT

# EXHIBIT 7

ARMESTO & ASOCIADOS
ABOGADOS
—

GENERAL PARDIÑAS, 102
28006 MADRID
TELF. (34) 91 562 16 25
FAX. (34) 91 515 91 45
ABOGADOS@JFARMESTO.COM

**A 39**

13 de diciembre de 2006

D. Christopher Paparella
HUGHES HUBBARD & REED LLP
paparella@hugheshubbard.com

D. Jesús Sánchez Ugarte
D. Víctor Manuel Frías Garcés
KURI BREÑA, SÁNCHEZ UGARTE, CORCUERA Y AZNAR, S.C.
jsanchez@ksca.com.mx

D. José Néstor García Reza, D. Jaime Duarte Aispuro, D. Miguel Ángel Serrano Iriberri,
D. Ángel del Carmen Baqueiro Heredia y D. Sergio Alemán Mallen
ASESORÍA JURÍDICA DE PEMEX
saleman@dca.pemex.com

C/c.
D. José W. Fernández jose.fernandez@lw.com
D. Darío Oscós Coria oscosabogados@prodigy.net.mx
D. Cristián Conejero Roos (Consejero) cristian.conejero-roos@iccwbo.org

Estimados Señores,

**Caso CCI nº 13716/CCO**
**CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. de R.L. de C.V.**
**(México) c/ PEMEX-EXPLORACIÓN Y PRODUCCIÓN (México)**

Sírvanse encontrar adjunta Orden Procesal nº 6 que incluye unas Diligencias para mejor proveer.

Atentamente,

Juan Fernández-Armesto
Presidente del Tribunal Arbitral

# Orden Procesal nº 6

En el arbitraje ante la Corte Internacional de Arbitraje
de la Cámara de Comercio Internacional
entre

## CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL S. de R.L. de C.V (México)

### c/.

## PEMEX-EXPLORACIÓN Y PRODUCCIÓN (México)

**Caso CCI nº 13716/CCO**

2

CONSIDERANDO

1. El Tribunal Arbitral ha tenido la oportunidad de revisar en profundidad los miles de documentos que componen los anexos y apéndices a los escritos de las partes.

2. El Tribunal Arbitral recuerda que no ha declarado cerrada la instrucción, a los efectos del art. 22 del Reglamento CCI, por lo que la actividad probatoria no ha concluido aún.

3. Finalizada la revisión de la documentación, el Tribunal Arbitral estima que ha aflorado toda una serie de cuestiones cuya clarificación es imprescindible para instruir correctamente la causa. Estas cuestiones no han sido tratadas con suficiente profundidad por las partes en sus escritos o la prueba aportada resulta deficitaria. Por ello el Tribunal Arbitral ha decidido promulgar las presentes Diligencias para mejor proveer, con la finalidad de recabar nuevas alegaciones y prueba de las partes.

4. El Reglamento CCI prevé en su art. 20.5 que en todo momento durante el proceso arbitral, el Tribunal Arbitral podrá requerir a cualquiera de las partes que aporte pruebas adicionales.

El Tribunal Arbitral decide emitir las siguientes:

DILIGENCIAS PARA MEJOR PROVEER

I   Una u otra parte o ambas, según corresponda, deberá contestar al siguiente listado de preguntas y al contestar, deberá atenerse a las instrucciones en cuanto al formato de la respuesta, cuando así se indique; además, las partes podrán aportar prueba con respecto a las cuestiones que se indican.

**Controversias Técnicas 34 y 35**

1. Se solicita a ambas partes que contesten a la siguiente cuestión:

   **Antecedentes**: según el Convenio Modificatorio número 21, el Bar Protector debía comenzar su movilización entre el 12 de diciembre de 1999 y el 2 de enero de 2000 [RV 5].

   - El 21 de septiembre de 1999 Commisa solicita autorización para movilización.
   - El 4 de noviembre de 1999 el Supervisor autoriza la movilización del Bar Protector [CV 41].
   - El 14 de enero de 2000 el Supervisor apremia la movilización del Bar Protector [CV 43].
   - El 28 de enero a 24 de febrero de 2000 se produce la movilización [CV 44].

   **Pregunta:**

   ¿Cuáles son las causas del retraso en la movilización del Bar Protector?

   ¿Está justificado el retraso en algún Convenio Modificatorio – en especial el número 7?

2. Se solicita a ambas partes que contesten a la siguiente cuestión:

   **Preguntas:**

   ¿Cuáles son los costos directos causados a la Demandante por el retraso en la incorporación al trabajo de las embarcaciones Bar Protector y Castoro?

3

En especial, ¿cuáles son los importes satisfechos a EMC como indemnización por los retrasos?

¿Se han generado otros costos directamente por esta causa?

### Controversia Técnica 36

3. Se pide a ambas partes que contesten a la siguiente cuestión:

**Antecedentes**: En el cálculo de días de mal tiempo, existe una diferencia entre Commisa y PEP de 30,21 días para la Castoro 10 y de 19,39 días para el Bar Protector.

**Pregunta**:

Con respecto a estos días, se pide aclarar si durante ellos la Capitanía del Puerto del Carmen declaró el puerto cerrado o no.

### Controversia Técnica 37

4. Se pide a ambas partes:

- Rehacer el Anexo 16 de la Carpeta 67, reflejando en PME y USD los precios unitarios y las cantidades pagadas para cada cruce y los cruces con menos de un metro de separación.

- Cuantificar aproximadamente el ahorro de costos en el dragado, en el número de sacos de arena y otros insumos y en la ocupación de hombres y máquinas que conlleve la reducción de la separación de ductos de un metro a 0,5 metros.

### Controversias Técnicas 29 y 30

5. Commisa debe preparar una tabla de las siguientes características, en la que recoja:

- Todos los eventos de espera de la Castoro 10 a partir del 1 de junio de 2000 hasta el final de los trabajos.

- Todos los eventos de espera del Bar Protector desde el comienzo hasta el final de los trabajos.

Para cada embarcación se preparará un cuadro ordenado cronológicamente, con la siguiente forma:

| | Descripción[1] | Fecha | Prueba[2] | Conciliada[3] | Duración[4] | Tipo de Tarifa[5] | Tarifa[6] | | Cantidad reclamada[7] | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | PME | USD | PME | USD |
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| ... | | | | | | | | | | |
| TOTAL | | | | | | | | | | |

[1] Contendrá una descripción del evento; máximo 30 palabras.

[2] Referencia a la prueba aportada indicando si se trata de la bitácora de obra, la bitácora de embarcación, de una comunicación o cualquier otra; se añadirá la exacta localización del documento en los autos; máximo 30 palabras.

[3] Se indicará si el evento ha sido conciliado, o si no lo ha sido; de haberlo sido se indicará el Convenio y la página dentro del Convenio.

[4] Se indicará en minutos; de haber tiempos de equipamiento y desequipamiento, éstos se señalarán separadamente.

[5] Se indicará si la tarifa aplicable es de espera o de trabajo; en este segundo caso, se justificará; máximo 20 palabras.

[6] Se pondrá la tarifa aplicable en PME y en USD.
[7] Se pondrá la cantidad total reclamada por cada evento en PME y en USD.

## Controversia Técnica 31

6. Se pide a Commisa que señale específicamente dónde se acordaron en la Orden de Cambio 37 los precios unitarios para los cambios de modalidad operacional [cfr. C27 para. 82].

7. Se pide a ambas partes que clarifiquen si es cierto lo señalado por Commisa en COM-PEP 018953, en el sentido de que se reconocieron explícitamente los costos asociados al cambio de modo. ¿Dónde y por qué?

8. Commisa deberá preparar una tabla para cada uno de los 11 eventos de cambio de modo que solicita, con las siguientes características:

| | Descripción[1] | Fecha | Línea proveniente del EPC 27[2] | Duración | Tarifa | | Total | |
|---|---|---|---|---|---|---|---|---|
| | | | | | PME | USD | PME | USD |
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| ... | | | | | | | | |
| **TOTAL** | | | | | | | | |

[1] Máximo 30 palabras.
[2] Decir "sí" o "no".

## Controversia Técnica 19

9. Se pide a ambas partes que elaboren una tabla con la siguiente información:

| Obstrucción | Descripción[1] | Causa para aceptación o rechazo[2] | Importe | | Justificación cambio del importe[3] |
|---|---|---|---|---|---|
| | | | PME | USD | |
| PLAAC02 | | | | | |
| PLAAC05 | | | | | |
| PLAB01 | | | | | |
| PLAB02 | | | | | |
| PLAGP02 | | | | | |
| PLAJ04 | | | | | |
| PLAL04 | | | | | |
| PLAL06 | | | | | |
| PLALKL03 | | | | | |
| PLAO04 | | | | | |
| PLAO06 | | | | | |
| PLATA03 | | | | | |
| PLATA06 | | | | | |
| PLATJ01 | | | | | |
| PLATJ04 | | | | | |
| PLATJ05 | | | | | |
| PLATJ08 | | | | | |
| PLAN01 | | | | | |
| PLAN02 | | | | | |
| PLAN03 | | | | | |

[1] Máximo 30 palabras.
[2] Máximo 30 palabras.
[3] Máximo 30 palabras.

**10.** Se pide a PEP que compruebe los importes en USD correspondientes a las 60 obstrucciones restantes, especialmente, que la cuantía total efectivamente equivale al sumatorio de los importes individuales.

**Controversia Técnica 1 – 18 y 22**

**11.** Se pide a ambas partes que clarifiquen las diferencias entre las cantidades conciliadas:

- Según Commisa: 13.249.376 USD y 2.462.064 PME (a favor de PEP);
- Según PEP: 13.336.334 USD y 2.386.203 PME (a favor de PEP).

**Reconvención**

**12.** Se pide a ambas partes que indiquen si el período de espera de 4,366 días correspondiente a la Castoro 10 [COM-PEP 027545] fue posteriormente formalizado en algún Convenio Modificatorio, a los efectos de clarificar si las fechas críticas pactadas en el Convenio Modificatorio núm. 16 tenían o no en cuenta esta extensión.

**13.** Se pide a ambas partes que indiquen, en relación al ajuste de las partidas 2 y 10 de la línea 28-04:

- ¿Dónde y cuándo conciliaron el nuevo alcance del trabajo y el nuevo precio, tal como ambas partes afirman?

- ¿Qué valor tiene el monto acordado en la Orden de Cambio número 81?

- ¿Esta Orden de Cambio incrementa o reduce el precio a recibir por Commisa?

**II** Se concede a ambas partes un plazo hasta el 15 de enero de 2007 para contestar al listado de preguntas y presentar prueba en un primer trámite. Ambas partes gozarán de un plazo adicional, hasta el 30 de enero de 2007 para presentar alegaciones y prueba adicional que refute las alegaciones y pruebas presentadas por la contraparte en el trámite anterior.

**III** El Tribunal Arbitral resalta que las partes no deberán presentar alegaciones o prueba con respecto a ninguna cuestión diferente a las planteadas por el Tribunal Arbitral en la presente Diligencia.

Lugar del arbitraje, México, D.F., a 13 de diciembre de 2006

En nombre del Tribunal Arbitral

Juan Fernández-Armesto
Presidente del Tribunal Arbitral

6

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202  349.4180
fax    202  349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Procedural Order No. 6**, was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 16, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 16, 2008_

Signature: _____

Brian Friedman, Director
Language Innovations, LLC

Subscribed and sworn before me this __16th__ day of ___June___ 20 _08_ , at Washington, DC.

_____

JAMES M. REED
Notary Public District of Columbia
My Commission expires: My Commission Expires June 30, 2012

# ARMESTO & ASOCIADOS
### ATTORNEYS-AT-LAW

GENERAL PARDIÑAS 102
28006 MADRID
PHONE (34) 91 562 16 25
FAX (34) 91 515 91 45
ABOGADOS@JFARMESTO.COM

## A 39

December 13, 2006

Mr. Christopher Paparella
HUGHES HUBBARD & REED LLP
paparella@hugheshubbard.com

Mr. Jesús Sánchez Ugarte
Mr. Victor Manuel Frías Garcés
KURI BREÑA, SÁNCHEZ UGARTE, CORCUERA Y AZNAR, S.C.
jsanchez@ksca.com.mx

Mr. José Néstor García Reza, Mr. Jaime Duarte Aispuro, Mr. Miguel Ángel Serrano Iriberri,
Mr. Ángel del Carmen Baqueiro Heredia and Mr. Sergio Alemán Mallen
PEMEX LEGAL REPRESENTATIVES
saleman@dca.pemex.com

cc:
Mr. José W. Fernández   jose.fernandez@lw.com
Mr. Darío Oscós Coria   oscosabogados@prodigy.net.mx
Mr. Cristian Conejero Roos (Consultant)   cristian.conejero-roos@iccwbo.org

Dear Sirs,

### ICC Case No. 13716/CCO
### CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. de R.L. de C.V. (Mexico) vs. PEMEX EXPLORACIÓN Y PRODUCCIÓN (Mexico)

Enclosed please find Procedural Order No. 6 which contains Actions for rapid adjudication.

Sincerely,

[Signature]

Juan Fernández-Armesto
President of the Arbitration Tribunal

1

# Procedural Order No. 6

For the arbitration proceeding before the International Arbitration
Court of the International Chamber of Commerce
between

## CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL S. de R.L. de C.V. (Mexico)

**and**

## PEMEX EXPLORACIÓN Y PRODUCCIÓN (Mexico)

**ICC Case No. 13716/CCO**

## WHEREAS

1. The Arbitration Tribunal has had the opportunity to review in depth the thousands of documents that make up the annexes and appendices to the parties' petitions.

2. The Arbitration Tribunal reminds that it has not declared the proceeding as concluded, for purposes of art. 22 of the ICC Regulations, which means that evidentiary activities have not yet ended.

3. Having completed a review of the documentation, the Arbitration Tribunal notes that an entire set of questions has been raised, the clarification of which is essential to correctly decide upon the matter. These questions have not been covered by the parties with sufficient depth in their pleadings, or the proof submitted has been deficient. For this reason, the Arbitration Tribunal has decided to promulgate the present Actions for rapid adjudication, with the purpose of collecting new allegations and proof from the parties.

4. The ICC Regulations provide in article 20.5 that, at any time during the arbitration process, the Arbitration Tribunal may request that additional proof be submitted by any of the parties.

   The Arbitration Tribunal has decided to issue the following:

## ACTIONS FOR RAPID ADJUDICATION

I   One or the other party, or both, when applicable, will answer the following list of questions and, when answering, will have to adhere to instructions concerning the format of the reply when so indicated; in addition, the parties will be able to submit evidence relating to such questions.

### Technical Disputes 34 and 35

1. It is requested that both parties answer the following question:

   **Antecedents:** According to Modifying Agreement number 21, the Bar Protector was to initiate its mobilization between December 12, 1999, and January 2, 2000 [RV 5].

   - On September 21, 1999, Commisa requests authorization for mobilization.
   - On November 4, 1999, the Supervisor authorizes the mobilization of the Bar Protector [CV 41].
   - On January 14, 2000, the Supervisor pressures for the mobilization of the Bar Protector [CV 43].
   - From January 28 to February 24, 2000, mobilization takes place [CV 44].

   **Question:**

   What were the reasons for the delay in mobilization of the Bar Protector?

   Is this delay justified in any Modifying Agreement – especially number 7?

2. It is requested that both parties answer the following question:

   **Question:**

3

What are the direct costs incurred by the Plaintiff due to the delay in incorporating the Bar Protector and Castoro to the projects?

In particular, what were the sums paid to EMC as indemnification for the delays?

Have any other costs been directly generated due to this delay?

## Technical Dispute 36

3. It is requested that both parties answer the following question:

**Antecedents**: In calculating the number of adverse weather days, there is a difference between Commisa and PEP of 30.21 days for the Castoro 10 and of 19.39 days for the Bar Protector.

**Question:**

We request information on whether the Port Authority of Puerto del Carmen declared the port closed on those particular days, or not.

## Technical Dispute 37

4. It is requested of both parties:

- To redo Annex 16 in Folder 67 to reflect the prices per unit and the quantities paid for each crossing and for crossings with less than one meter of separation, in both PME and USD.

- To approximately quantify the cost savings in the dredging, in the number of sand bags and other materials, and in the employment of men and machines, which would lead to a reduction in the separation of the ducts from one meter to 0.5 meters.

## Technical Disputes 29 and 30

5. Commisa is to prepare a table with the following characteristics, showing:

- All of the standby events for the Castoro 10 starting from June 1, 2000, until the end of the projects.

- All of the standby events for the Bar Protector, from the start until the end of the projects.

For each boat, a table will be prepared, arranged in chronological order, containing the following information:

| | Description[1] | Date | Proof[2] | Conciliation[3] | Duration[4] | Type of fee[5] | Fee[6] | | Amount claimed[7] | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | PME | USD | PME | USD |
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| ... | | | | | | | | | | |
| TOTAL | | | | | | | | | | |

[1] Will contain a description of the event; maximum 30 words.
[2] Reference to the proof submitted indicating whether it involves the logbook for the project, the logbook for the boat, a communication or any other; the exact location of the document within the records will be added; maximum 30 words.
[3] Will indicate whether the event has been conciliated or not; if so, will indicate the Agreement and the page number within the Agreement.
[4] Will be indicated in minutes; should there be times for equipping and dismantling, these will be provided separately.
[5] Will indicate whether the applicable fee is for standby or for work; in the latter case it will be evidenced; maximum of 20 words.

4

[6] The applicable fee will be provided in PME and in USD.
[7] The total quantity claimed for each event will be provided in both PME and USD.

### Technical Dispute 31

6.  Commisa is requested to point out the specific location in Change Order 37 where the unit prices for changes in the operational modality were agreed upon (cf. C27 para. 82).

7.  Both parties are requested to clarify if the assertion by Commisa in COM-PEP 018953, that the costs associated with a change in the operational modality were explicitly acknowledged, is true.  Where and by whom?

8.  Commisa shall prepare a table for each one of the 11 modality change events that it requests, containing the following information:

|  | Description[1] | Date | Line originating from EPC 27[2] | Duration | Fee | | Total | |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | PME | USD | PME | USD |
| 1 |  |  |  |  |  |  |  |  |
| 2 |  |  |  |  |  |  |  |  |
| 3 |  |  |  |  |  |  |  |  |
| ... |  |  |  |  |  |  |  |  |
| TOTAL |  |  |  |  |  |  |  |  |

[1] Maximum of 30 words.
[2] State "yes" or "no".

### Technical Dispute 19

9.  Both parties are requested to prepare a table with the following information:

| Obstruction | Description[1] | Reason for acceptance or refusal[2] | Amount | | Justification for change in amount[3] |
|---|---|---|---|---|---|
|  |  |  | PME | USD |  |
| PLAAC02 |  |  |  |  |  |
| PLAAC05 |  |  |  |  |  |
| PLAB01 |  |  |  |  |  |
| PLAB02 |  |  |  |  |  |
| PLAGP02 |  |  |  |  |  |
| PLAJ04 |  |  |  |  |  |
| PLAL04 |  |  |  |  |  |
| PLAL06 |  |  |  |  |  |
| PLALKL03 |  |  |  |  |  |
| PLAO04 |  |  |  |  |  |
| PLAO06 |  |  |  |  |  |
| PLATA03 |  |  |  |  |  |
| PLATA06 |  |  |  |  |  |
| PLATJ01 |  |  |  |  |  |
| PLATJ04 |  |  |  |  |  |
| PLATJ05 |  |  |  |  |  |
| PLATJ08 |  |  |  |  |  |
| PLAN01 |  |  |  |  |  |
| PLAN02 |  |  |  |  |  |
| PLAN03 |  |  |  |  |  |

[1] Maximum of 30 words.
[2] Maximum of 30 words.
[3] Maximum of 30 words.

10. PEP is asked to verify the amounts in USD corresponding to the 60 remaining obstructions, especially that the total amount effectively equals the sum of all the individual amounts.

### Technical Dispute 1 - 18 and 22

11. Both parties are asked to clarify the differences between the conciliated amounts:

   - According to Commisa: USD 13,249,376 and PME 2,462,064 (in favor of PEP);
   - According to PEP:  USD 13,336,334 and PME 2,386,203 (in favor of PEP).

### Counterclaim

12. Both parties are asked to state whether the standby period of 4,366 days corresponding to the Castoro 10 [COM-PEP 027545] was subsequently formalized in any Modifying Agreement, with the purpose of clarifying whether the critical dates agreed upon in Modifying Agreement No. 16 included this extension or not.

13. Both parties are asked to indicate, in terms of the adjustment to entries 2 and 10 in line 28-04:

   - Where and when did you conciliate the new scope of the project and the new price, as is asserted by both parties?

   - What is the sum agreed upon in Change Order No. 81?

   - Does this Change Order increase or reduce the sum to be received by Commisa?

II  Both parties are granted a term ending on January 15, 2007, to answer this list of questions and to present evidence in an initial process.  Both parties will have an additional term, until January 30, 2007, to submit allegations and additional proof to refute the allegations and evidence presented by the opposing party during the previous step.

III  The Arbitration Tribunal would like to emphasize that the parties are not to submit allegations or evidence involving any matters other than those specified by the Arbitration Tribunal in the present Action.

Place of arbitration, Mexico D.F., December 13, 2006

On behalf of the Arbitration Tribunal

[Signature]

Juan Fernández-Armesto
President of the Arbitration Tribunal

6

# EXHIBIT 8

ARMESTO & ASOCIADOS
ABOGADOS

GENERAL PARDIÑAS, 102
28006 MADRID
TELF. (34) 91 562 16 25
FAX (34) 91 615 91 48
ABOGADOS@JFARMESTO.COM

## A 49

31 de julio de 2007

D. Christopher Paparella
HUGHES HUBBARD & REED LLP
paparella@hugheshubbard.com

D. Jesús Sánchez Ugarte
D. Víctor Manuel Frías Garcés
KURI BREÑA, SÁNCHEZ UGARTE, CORCUERA Y AZNAR, S.C.
jsanchez@ksca.com.mx

D. José Néstor García Reza, D. Jaime Duarte Aispuro, D. Claudio Eric Deveze Montoya,
D. Mario Enrique Aguilar Araujo
ASESORÍA JURÍDICA DE PEMEX
ngarcia@pemex.gob.mx; jduarte@pemex.gob.mx; cdeveze@pemex.gob.mx; maguilara@pemex.gob.mx

C/c.
D. José W. Fernández jose.fernandez@lw.com
D. Darío Oscós Coria oscosabogados@prodigy.net.mx
D. Cristián Conejero Roos (Consejero) cristian.conejero-roos@iccwbo.org

Estimados Señores,

### Caso CCI n° 13716/CCO
### CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. de R.L. de C.V. (México) c/ PEMEX-EXPLORACIÓN Y PRODUCCIÓN (México)

1.  El Reglamento CCI prevé en su artículo 20(5) que el Tribunal Arbitral puede en todo momento durante el proceso arbitral requerir a cualquiera de las partes para que aporte pruebas adicionales.

2.  El Tribunal Arbitral se encuentra actualmente ante la necesidad de requerir más información sobre un aspecto concreto de las Controversias Técnicas 34 y 35, para poder así dar por concluida la redacción del laudo. Se trata de determinar, dentro de los costos de arrendamiento de las embarcaciones Castoro 10 y Bar Protector:

    (i)   cuál es la tarifa justa y razonable a la que se debe remunerar la posposición en el inicio de los trabajos y
    (ii)  cuál ha sido la efectivamente satisfecha por Commisa a EMC.

3.  El Tribunal Arbitral ha encontrado en el folio COM-PEP 021544, aportado como Documento CV 15 por la Demandante, una estimación de los "cargos por renta de equipo (Dólares) EPC – 28, suspendiendo temporalmente el Contrato 126 días". Este documento arroja una estimación de una tarifa diaria de arrendamiento, por posposición en la iniciación del programa de trabajo, de 79.224,37 USD por la Castoro 10 y de 52.037,51 USD por el Bar Protector.

4.  El Tribunal Arbitral solicita a Commisa que, **antes del 10 de agosto de 2007,** presente alegaciones y aporte toda la prueba que estime necesaria, para demostrar:

    (i)   que las tarifas indicadas constituyen, en el marco del contrato de arrendamiento, un costo justo y razonable por posposición en la iniciación del programa de trabajo, y
    (ii)  que las tarifas indicadas fueron efectivamente incurridas y pagadas por Commisa.

5.  El Tribunal Arbitral solicita a PEP que, a continuación y en un plazo que vencerá **el 20 de agosto de 2007,** presente alegaciones y aporte toda la prueba que estime necesaria en relación a:

    (i)   lo alegado y aportado por Commisa en virtud del párrafo precedente;
    (ii)  las tarifas diarias que, de acuerdo con su experiencia y nivel de conocimiento, son justas y razonables para remunerar la posposición en la iniciación del programa de trabajo de unos buques de prestaciones semejantes a los de la Castoro 10 y del Bar Protector.

6.  El Tribunal Arbitral recuerda a las partes que, de acuerdo con el artículo 20(7) del Reglamento CCI, puede tomar medidas destinadas a proteger secretos comerciales o industriales e información confidencial. Por ello, en el caso de que alguna parte invoque argumentos relacionados al deber de confidencialidad para justificar la falta de presentación de prueba, deberá acompañar una propuesta de medidas que el Tribunal Arbitral pueda adoptar para proteger dicha confidencialidad, de acuerdo con el artículo indicado. En caso de no ofrecer ninguna alternativa, el Tribunal Arbitral podrá inferir consecuencias negativas.

7.  Las partes se abstendrán de presentar pruebas o alegaciones sobre materias distintas a las específicamente solicitadas en esta comunicación.

8.  Una vez realizados estos trámites, el Tribunal Arbitral tiene la intención de decretar el cierre de la instrucción, y someter el proyecto de Laudo a la Corte durante el mes de septiembre.


En nombre del Tribunal Arbitral,


Juan Fernández-Armesto
Presidente del Tribunal Arbitral

2

# Language Innovations, LLC™

*Helping businesses communicate worldwide"*

1725 I Street. NW
Suite 300
Washington, D.C. 20006

tel    202  349.4180
fax    202  349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Order from Arbitral Tribunal,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 12, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: *June 12, 2008*

Signature: *[signature]*
　　　　　Brian Friedman, Director
　　　　　Language Innovations, LLC

Subscribed and sworn before me this ___12th___ day of ___June___ 20 08 , at Washington, DC.

　　　　　　　　　　　　　　　　　　_[signature] James M. Reed_
　　　　　　　　　　　　　　　　　　Notary Public

JAMES M. REED
Notary Public District of Columbia
My Commission expires: My Commission Expires June 30, 2012

ARMESTO & ASOCIADOS
ATTORNEYS-AT-LAW

GENERAL PARDIÑAS 102
28006 MADRID
PHONE (34) 91 562 16 25
FAX (34) 91 515 91 45
ABOGADOS@JFARMESTO.COM

**A49**

July 31, 2007

Mr. Christopher Paparella
HUGHES HUBBARD & REED LLP
paparella@hugheshubbard.com

Mr. Jesús Sánchez Ugarte
Mr. Victor Manuel Frías Garcés
KURI BREÑA, SÁNCHEZ UGARTE, CORCUERA Y AZNAR, S.C.
jsanchez@ksca.com.mx

Mr. José Néstor García Reza, Mr. Jaime Duarte Aispuro, Mr. Claudio Eric Deveze Montoya,
Mr. Mario Enrique Aguilar Araujo
PEMEX LEGAL REPRESENTATIVES
ngarcia@pemex.gob.mx; jduarte@pemex.gob.mx; cdeveze@pemex.gob.mx; maguilara@pemex.gob.mx

cc:
Mr. José W. Fernández  jose.fernandez@lw.com
Mr. Darío Oscós Coria  oscosabogados@prodigy.net.mx
Mr. Cristian Conejero Roos (Consultant)  cristian.conejero-roos@iccwbo.org

Dear Sirs,

**ICC Case No. 13716/CCO**
**CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. de R.L. DE C.V.**
**(Mexico) vs. PEMEX EXPLORACIÓN Y PRODUCCIÓN (Mexico)**

1. ICC regulations stipulate in their article 20(5) that the Arbitration Tribunal may request additional proof from any of the parties, at any time during the arbitration process.

2. The Arbitration Tribunal finds it necessary at present to request additional information regarding a particular aspect involving Technical Disputes 34 and 35, to be able to conclude its preparation of the final ruling. We are trying to determine, within the framework of leasing costs for the Castoro 10 and Bar Protector boats:

   (i) what is the fair and reasonable rate with which to compensate the delay in the start of the project and
   (ii) what was the rate effectively paid by Commisa to EMC.

3. The Arbitration Tribunal has found in folio COM-PEP 021544, submitted as Document CV 15 by the Plaintiff, an estimate of the "fees for equipment rental (dollars) EPC-28, temporarily suspending the Contract for 126 days". This document provides an estimate of a daily leasing rate, resulting from the postponement in the initiation of the work schedule, of US$ 79,224.37 for the Castoro 10, and of US$ 52,037.51 for the Bar Protector.

4. The Arbitration Tribunal requests that Commisa present its allegations and submit all the evidence that it deems necessary, **prior to August 10, 2007,** in order to show:

   (i) that the rates indicated above are, within the scope of the rental contract, a fair and reasonable cost for the postponement in the initiation of the work schedule, and
   (ii) that the rates indicated above were effectively incurred and paid by Commisa.

5. The Arbitration Tribunal requests that PEP subsequently present its allegations and submit all the evidence that it deems necessary, by **August 20, 2007,** in relation to:

   (i) the allegations and submissions by Commisa as per the foregoing paragraph;
   (ii) the daily rates that, based on its experience and level of knowledge, are fair and reasonable to compensate for the postponement in the initiation of the work schedule using boats that provided services similar to the ones provided by the Castoro 10 and the Bar Protector.

6. The Arbitration Tribunal would like to remind the parties that, pursuant to article 20(7) of the ICC Regulations, it is possible to take measures intended to protect commercial or industrial secrets and confidential information. For this reason, should any party invoke arguments relating to confidentiality duties in order to justify the non-submission of any evidence, it shall also include a proposal for measures that the Arbitration Tribunal should adopt in order to protect said confidentiality, in accordance with the aforementioned article. Should no alternative be offered, the Arbitration Tribunal might anticipate negative consequences.

7. The parties shall abstain from presenting proof or allegations on matters other than the ones specifically requested in this letter.

8. Once these steps have been carried out, the Arbitration Tribunal has the intention of decreeing the end of the proceeding, and submitting the draft Ruling to the Court in the month of September.


On behalf of the Arbitration Tribunal,

[Signature]

Juan Fernández-Armesto
President of the Arbitration Tribunal

**EXHIBIT 9**


**PEMEX**
OFICINA DEL ABOGADO GENERAL

*13716/CCO CORPORACION MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R. L. DE C. V. (México) c/ PEMEX EXPLORACIÓN Y PRODUCCIÓN (México).*

México, Distrito Federal, a 7 de agosto de 2007

<u>**R 39**</u>

**CC. INTEGRANTES DEL TRIBUNAL ARBITRAL**

**D. JUAN FERNÁNDEZ-ARMESTO**
<u>FAX 003491 51 91 45</u>

**D. JOSÉ W. FERNÁNDEZ**
<u>FAX 001 212 326 20 61</u>

**D. DARÍO OSCÓS CORIA**
<u>FAX 55 50 28 29</u>

**LIC. JAIME DUARTE AISPURO**, representante legal de **Pemex Exploración y Producción** (PEP), con la personalidad que se encuentra debidamente acreditada y reconocida en autos, ante ese H. Tribunal Arbitral con el debido respeto comparezco para exponer:

**I.** En términos del artículo 33 del Reglamento de Arbitraje de la CCI, PEP se presenta a **OBJETAR** el Comunicado A-49 remitido por ese Tribunal Arbitral, y para oponer la **EXCEPCIÓN DE QUE EL TRIBUNAL ARBITRAL HA EXCEDIDO SU MANDATO**, en virtud de infringirse las disposiciones siguientes:

i) Las precisiones contenidas en el Acta de Misión; y,
ii) Los derechos de PEP a un proceso justo e imparcial en los términos del artículo 15 (2) del Reglamento de Arbitraje.

**II.** Se **objeta el comunicado A-50** del Tribunal Arbitral por violarse el derecho de PEP a obtener un Laudo sin dilaciones indebidas.

**III. Se objeta** la intención del Tribunal Arbitral de considerar **la documental COM-PEP 021544** por no tener vinculación con el acuerdo contractual, ni con ninguna obligación asumida por las partes.

1

**Capítulo I.**

El Acta de Misión, en su apartado G inciso vii dispone que:

*"Si durante el desarrollo del procedimiento alguna de las partes advierte que se están violando su derecho a un proceso justo y equitativo o las principios de igualdad, audiencia y contradicción, deberá ponerlo en conocimiento del Tribunal Arbitral tan pronto como lo advierta, entendiéndose que, si no lo hace en la primera oportunidad, renuncia a su posterior alegación."*

El Acta de Misión en su apartado G inciso i determina que el procedimiento deberá desarrollarse en los términos del artículo 15 del Reglamento de Arbitraje de la CCI.
En consecuencia el Tribunal Arbitral debe obedecer a los principios de justicia, equidad, imparcialidad, igualdad, audiencia y contradicción, en cuanto a las determinaciones que imponga sobre el procedimiento. PEP considera que con relación al Comunicado A-49 el Tribunal Arbitral no obedece estos principios.

1. En el caso, el Tribunal Arbitral excede los términos del artículo 20 (5) del Reglamento de Arbitraje que lo faculta a solicitar pruebas adicionales. Dicho artículo no lo faculta para suplir la deficiencia de la queja a favor de COMMISA, como PEP considera que ese Tribunal lo está haciendo en el Comunicado A-49.

2. COMMISA en su demanda inicial reclama el pago de tarifas de espera por retrasos en el inicio de los trabajos con embarcaciones; o en su defecto el pago de una indemnización que lo compense por supuestos daños y perjuicios sufridos.

3. En ambos casos, corresponde a COMMISA demostrar los hechos y justificar el derecho correspondiente a sus pretensiones. Esto es una carga procesal de cuyo cumplimiento depende el éxito o fracaso de su demanda. La misión y obligación del Tribunal consiste en darle oportunidad bastante, y en iguales circunstancias que a la contraria, para que cada parte pueda demostrar sus hechos y acreditar su derecho, lo cual ya se concedió de manera amplia a ambas partes.

4. Sin embargo, en su Memorial de Demanda Detallada, COMMISA sólo se refiere a su pretensión de obtener el pago de las tarifas por tiempos o cuotas de espera, sin exponer ningún hecho o derecho con relación a su pretensión de pago de una indemnización por daños o perjuicios.

5. En la Orden Procesal No. 6, como Diligencias para Mejor Proveer, en la Interrogante No. 2, ese Tribunal le solicitó a ambas partes (PEP y COMMISA) que respondieran cuestiones iguales o similares a las requeridas de nueva cuenta en su Comunicado A-49: el monto de los costos directos causados a la Demandante por el retraso en la incorporación de las embarcaciones a los trabajos; los importes satisfechos a EMC por los tiempos de espera y otros costos directos causados.



2

6. COMMISA, durante el procedimiento, fue omisa en acreditar con cualquier medio de convicción el pago efectivamente realizado a EMC con motivo del contrato de subarrendamiento (independientemente de las excepciones acreditadas de PEP que destruyen su pretensión), sino que además se ha negado expresamente, a solicitud de viva voz de ese Tribunal Arbitral, a informarle[1] sobre esas "supuestas tarifas" pagadas. También, y referente a los cuestionamientos contenidos en las Diligencias para Mejor Proveer, se ha negado a hacerlo aduciendo que su reclamación es por "tiempos de espera"; y para demostrarlo, PEP trascribe en lo conducente lo alegado por COMMISA: *"...los importes pagados por Commisa a EMC, son irrelevantes para efectos de la reclamación de Commisa por tiempos de espera de sus embarcaciones, como consecuencia de los retrasos de PEP en la fecha de inicio de los trabajos. **En efecto, Commisa no está reclamando ni los costos directos de las embarcaciones ni los importes pagados o adeudados a EMC.** De conformidad con lo establecido ene. Contrato EPC-28, en las Controversias Técnicas 34, 35 y 36 Commisa solicita el pago de tarifas de espera pactadas en dicho contrato, por los retrasos imputables a PEP."*[2]

7. Con esto es claro que COMMISA se ha desistido de su pretensión de una indemnización por daños y perjuicios. Siendo consistente con esta afirmación, COMMISA ha omitido de manera voluntaria y consciente informar a ese juzgador sobre cualquier costo causado o pago realizado a EMC. Basado en ello, ese Tribunal Arbitral no puede justificar como prueba adicional, el requerimiento de información, realizado en el Comunicado A-49, sobre un hecho que COMMISA se ha negado a probar expresamente. Por esta razón PEP no entiende la intención de ese Tribunal Arbitral de integrar a la disputa (suplir la queja) las omisiones conscientes y deliberadas cometidas por COMMISA en materia de pruebas y argumentaciones.

8. El procedimiento arbitral instruido con motivo de la demanda promovida por COMMISA es de **ESTRICTO DERECHO**, ya que PEP no le confirió al Tribunal Arbitral poder para actuar como **"amigable componedor"** o para decidir **"ex aequo et bono"** [3]. Sin embargo, en el punto 2 inciso (i) del A-49 solicita información para determinar *"cual es la tarifa justa y razonable a la que debe remunerarse la posposición en el inicio de los trabajos"*, en contravención a la posición de las partes resultante de las Diligencias para Mejor Proveer; e incluso a las pretensiones de COMMISA contenidas en el Acta de Misión. Esto es, el Derecho Civil Mexicano referente a los daños y perjuicios causados, fija el importe de las indemnizaciones con base en los daños directamente causados, y no por indemnizaciones "justas y razonables", lo que evidentemente aleja al Tribunal de la Misión encomendada por las partes.

---

[1] "...el propietario no tiene que conocer esta información y nunca la solicitan porque no se les debe dar el precio de nuestro contrato con EMC es un secreto. Y el único que pueden saber son los términos del contrato...", intervención de D. Cris Paparella en la audiencia del 7 de junio de 2006, visible a página 8 de la versión estenográfica.

[2] Visible a página 8 y 9, punto 23, del comunicado C-44 de COMMISA.

[3] Acta de Misión, página 6, numeral 2, inciso (d) "Pretensiones y Peticiones de la parte demandada" que dice "El Tribunal Arbitral no está autorizado para asumir las facultades de "amigable componedor" o "ex aequo et bono".

9. En atención a que el Tribunal Arbitral con el Comunicado A-49 ha excedido la misión que le fue encomendada por las partes, PEP en este momento opone la *"Excepción de que el Tribunal Arbitral ha excedido su Mandato"* contenida en el segundo párrafo del artículo 1432 del Título Cuarto del Código de Comercio, Título que constituye la *lex arbitri* mexicana.

10. Desde otro punto de vista, con la información que ese Tribunal solicita a COMMISA a través del comunicado A-49, le concede a la Demandante un plazo adicional para acreditar sus pretensiones, y se le advierte de sus deficiencias en su actuación probatoria, beneficio que en ningún momento se le concedió a PEP, rompiéndose la igualdad de las partes.

11. La cuestión que PEP objeta no sólo tiene implicaciones sobre la prueba, sino sobre la litis vertida por las partes, basada en las argumentaciones planteadas por COMMISA y respondidas por PEP. Es decir, si COMMISA nunca argumentó sobre la procedencia de la indemnización por daños y perjuicios, es evidente que PEP tampoco argumentó sobre la indemnización por daños y perjuicios, sin que pueda imputársele falta a PEP ya que era obligación de COMMISA fundamentar sus pretensiones. Si el Tribunal subsana las omisiones probatorias de COMMISA, y el resultado de la prueba se incluye en el Laudo, se dejaría en indefensión a PEP por no habérsele dado oportunidad para contradecir a COMMISA, derecho integrante del debido proceso que es muy distinto al de plena oportunidad probatoria.

12. Véase por ejemplo que el artículo 2117 del Código Civil Federal Mexicano faculta a las partes a regular la responsabilidad civil mediante convenio. La Cláusula 10.1.2 regula convencionalmente la responsabilidad de PEP con relación a los retrasos ocasionados a los trabajos con embarcaciones, por lo que en su caso, la demanda de COMMISA por daños y perjuicios es improcedente. En otras palabras, como la pretensión de COMMISA por el pago de cuotas o tarifas de espera es improcedente, también lo es la pretensión de una indemnización, porque ambas tienden a compensar a PEP sobre el mismo objeto. En otro tenor, la Cláusula 8.2.1 del Contrato relativo al IPC-28 exime a las partes de responsabilidad por cualquier **daño** indirecto o **especial** que ocurriere durante la ejecución del proyecto, por lo se opone al pago de cualquier reclamación por tarifas "justas y razonables". Estos puntos de derecho no han sido discutidos en el Arbitraje.

**Capítulo II.**

Se objeta el Comunicado A-50 del Tribunal Arbitral por violarse el derecho de mi representada a un Laudo sin dilaciones indebidas. La prórroga concedida a COMMISA para responder el Comunicado A-49 se realizó sin darle vista a PEP o considerar los intereses de PEP.

El artículo 20(1) del Reglamento de Arbitraje dispone que la instrucción del procedimiento deberá realizarse en el plazo más breve posible; el artículo 22(1) del Reglamento de Arbitraje establece que el cierre de la instrucción se hará cuando las partes hayan sido oídas suficientemente; y el artículo 32(2) del Reglamento de Arbitraje permite prorrogar los plazos solamente para que el Tribunal pueda cumplir con sus responsabilidades derivadas del Reglamento.

COMMISA, en su Comunicado C-47, declara de nueva cuenta que para su reclamación por cuotas de espera los importes pagados a EMC son irrelevantes, y que además no existe disputa sobre ellos. Es decir, COMMISA vuelve a reconocer que su reclamación se ha centrado únicamente en la procedencia o no del pago de las cuotas de espera por suspensiones a los trabajos con embarcaciones, dejando a un lado su reclamación por daños y perjuicios. Por otro lado, ya hemos señalado que la determinación de tarifas "justas y razonables" por ese Tribunal no corresponden a una indemnización por daños y perjuicios de conformidad con el derecho civil mexicano.

Prorrogar en esos términos la diligencia ordenada en el Comunicado A-49, y en consecuencia, dilatar la emisión del Laudo definitivo, para requerir información que no tiene relación con la litis planteada, y que por tanto no infringe el principio de audiencia y contradicción en perjuicio de ninguna de las partes, se opone a las disposiciones del Reglamento de Arbitraje. La fundamentación del Tribunal Arbitral en el Artículo 20 (5) del Reglamento no es suficiente en este caso. La ponderación del contexto del arbitraje define claramente que el derecho a un Laudo sin dilaciones indebidas es superior al derecho invocado por el Tribunal Arbitral.

De acuerdo a lo expuesto, ese Tribunal Arbitral debe revocar la prórroga concedida, y la diligencia ordenada en el Comunicado A-49.

**Capítulo III.**

La prueba documental COM-PEP 021544 es irrelevante para el caso porque no se trata de un documento fundatorio de la acción. El documento a que nos referimos constituye una propuesta de COMMISA para modificar las tarifas o cuotas de espera por suspensiones a los trabajos con embarcaciones, para modificar las estipuladas en EL contrato relativo al IPC-28, y para aplicarse durante el periodo de retraso en el inicio de los trabajos. Dicha propuesta nunca fue aceptada por PEP por lo que no tiene vinculación con el contrato ni con ninguna obligación asumida por las partes. COMMISA tampoco hace ninguna reclamación basada en tal documento, por lo que la valoración que hace de la misma y la importancia que le otorga para el Laudo no es justificada.

Por todo lo expuesto en este escrito, atentamente PEP solicita:

**PRIMERO:** PEP, para efectos del presente procedimiento, **OBJETA** el comunicado A-49 emitido por ese Tribunal, por las razones aludidas en el cuerpo del presente escrito; y opone la **EXCEPCIÓN DE QUE EL TRIBUNAL ARBITRAL HA EXCEDIDO SU MANDATO.**

5

**SEGUNDO:** Se tenga **objetando a PEP el Comunicado A-50** del Tribunal Arbitral, por una dilación indebida del procedimiento de arbitraje.

**TERCERO:** Se tenga a PEP **objetando la prueba de COMMISA COM-PEP 021544**.

Atentamente

**LIC. JAIME DUARTE AISPURO.**

C. c. p. Secretaría de la Corte Internacional de Arbitraje.- Cristián Conejero Roos.- Fax  331 49 53 29 33.-
    Christopher Paparella Fax (001) 212-422-6644.-  Lic. Jesús Sánchez Ugarte.- Fax 52-92-59-28.

# Language Innovations, LLC™

*Helping businesses communicate worldwide*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Letter from PEMEX dated Aug. 7, 2007,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 12, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 12, 2008_

Signature: _____

Brian Friedman, Director
Language Innovations, LLC

Subscribed and sworn before me this _12th_ day of _June_ 20 _08_, at Washington, DC.

_____
Notary Public

JAMES M. REED
My Commission expires: Notary Public District of Columbia
My Commission Expires June 30, 2012

[Logo] **PEMEX**
**OFFICE OF THE GENERAL ATTORNEY**

*13716/CCO CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R.L.*
*DE C.V. (Mexico) vs. PEMEX EXPLORACIÓN Y PRODUCCIÓN (Mexico)*

Mexico, Federal District, August 7, 2007

## <u>R 39</u>

## MEMBERS OF THE ARBITRATION TRIBUNAL

**MR. JUAN FERNÁNDEZ-ARMESTO**
<u>FAX 003491 51 91 45</u>

**MR. JOSÉ W. FERNÁNDEZ**
<u>FAX 001 212 326 20 61</u>

**MR. DARÍO OSCÓS CORIA**
<u>FAX 55 50 28 29</u>

**Attorney JAIME DUARTE AISPURO**, legal representative of **Pemex Exploración y Producción** (PEP), in the capacity that has been duly accredited and noted on the record, respectfully appears before this Honorable Arbitration Tribunal to state:

I.  In terms of article 33 of the ICC's Arbitration Regulations, PEP is present to **OBJECT** to Communication A-49 issued by that Arbitration Tribunal, and to enter a **PLEA TO DISMISS SINCE THE ARBITRATION TRIBUNAL HAS OVERSTEPPED ITS AUTHORITY**, by virtue of violation of the following provisions:

i)  The provisions contained in the Mission Statement, and
ii)  The right of PEP to a fair and impartial process pursuant to article 15 (2) of the Arbitration Regulations.

II.  **We object to communication A-50** by the Arbitration Tribunal, since it violates the right of PEP to obtain a Ruling without any undue delays.

III.  **We object** to the Arbitration Tribunal's intention to take **document COM-PEP 021544** into consideration, since it is not related to the contractual agreement or to any obligation assumed by the parties.

1

**Chapter I.**

The Mission Statement, in its section G, paragraph vii states that:

*"If in the course of a proceeding any of the parties realizes that its right to a fair and equitable process, or that the principles of equality, hearing, or opposition are being violated, said party will have to inform the Arbitration Tribunal as soon as the party becomes aware of this, with the understanding that if it does not do so immediately, said party waives the right to make a later claim."*

The Mission Statement, in its section G, paragraph i, states that the proceeding will have to be carried out under the terms of article 15 of the ICC's Arbitration Regulations. Therefore, the Arbitration Tribunal must obey the principles of justice, equity, impartiality, equality, hearing and opposition, when making any determinations regarding the proceeding. PEP feels that, as pertains to Communication A-49, the Arbitration Tribunal is not obeying these principles.

1. In this case, the Arbitration Tribunal oversteps the terms of article 20 (5) of the Arbitration Regulations, which authorizes it to request additional evidence. Said article does not authorize it to furnish the deficiency of the complaint with what is missing, in favor of COMMISA, as PEP feels that the Tribunal is doing in its Communication A-49.

2. In its initial claim, COMMISA demands the payment of standby tariffs due to delays in the initiation of work with boats or, in its absence, the payment of an indemnification that should compensate it for the alleged damages and losses incurred.

3. In both cases, it is the responsibility of COMMISA to present the facts and to justify the legal rights corresponding to its claims. This is a condition placed on COMMISA, with the success or failure of its claims depending on the fulfillment of such condition. The mission and obligation of the Tribunal is to grant said party an opportunity that is broad and similar to that granted to the opposing party, so that each party can present its facts and evidence its rights, which opportunity has already been granted in an ample manner to both parties.

4. However, in its Detailed Petition, COMMISA only makes reference to its intent to obtain payment for the tariffs for standby times, without presenting any facts or legal bases relating to its claim for payment of indemnification for damages or losses.

5. In Procedural Order No. 6, as Actions for Rapid Adjudication, in Question No. 2 the Tribunal requested that both parties (PEP and COMMISA) respond to questions that were identical or similar to those posed once again in its Communication A-49: the total for direct costs that the Plaintiff incurred due to the delay in incorporating the boats onto the projects; the fees paid to EMC for standby times, and other direct costs incurred.

2

6. During the proceeding, COMMISA was remiss in proving, using any type of evidence, the payment that was effectively made to EMC as a result of the sub-leasing contract (independent of any of PEP's substantiated motions which already shatter its intent). In addition, it has expressly refused, upon oral request from the Arbitration Tribunal, to provide it with information[1] on the "alleged tariffs" that were paid. Furthermore, and in reference to the questions contained in the Actions for Rapid Adjudication, it has refused to do so arguing that its claim is for "standby times", and to substantiate this, PEP transcribes the pertinent part of COMMISA's allegation: *"...the tariffs paid by Commisa to EMC are irrelevant for purposes of the claim by Commisa for standby times for its boats, as a consequence of PEP's delays in the start date for the projects. **In fact, Commisa is not claiming either the direct charges for the boats or the tariffs paid or owed to EMC.** Pursuant to the provisions of Contract EPC-28, in Technical Disputes 34, 35 and 36 Commisa asks for payment of the standby tariffs that were agreed upon in said contract, based on delays attributable to PEP."*[2]

7. This makes it clear that COMMISA has desisted from its intent for indemnification for damages and losses. Consistent with this assertion, COMMISA has abstained, in a conscious and voluntary manner, from informing the Tribunal of any charges incurred or payments made to EMC. Based on this, said Arbitration Tribunal may not justify the request for information that it made in Communication A-49, regarding a matter that COMMISA has expressly refused to prove, as being additional proof. For this reason, PEP does not understand the Arbitration Tribunal's intention to integrate the conscious and deliberate omissions made by COMMISA, in the form of proof and argumentations, into the dispute (to furnish the complaint with what is missing).

8. The arbitration proceeding that gathers evidence based on the claim filed by COMMISA is of **STRICT LAW**, since PEP did not confer the Arbitration Tribunal with the authority to act as "**amiable compositeur**" or to make decisions "**ex aequo et bono**"[3]. However, in item 2, paragraph (i) of A-49, the Tribunal requests information to determine "*what is the fair and reasonable rate with which to compensate the delay in the start of the projects*", in violation of the position of the parties contained in the Actions for Rapid Adjudication, and even of the intentions of COMMISA contained in the Mission Statement. In other words, Mexican Civil Law, as relates to damages and losses incurred, sets the total for indemnification based on damages directly caused and not on "fair and reasonable" compensation, something that evidently distances the Tribunal from the Mission that was commissioned by the parties.

---

[1] "...the legal representative does not have to know this information and they never request it because we are not to provide the price of our contract with EMC, that is a secret. And the legal representative may not learn it, the only thing they may know are the terms of the contract..." intervention by Mr. Cris Paparella at the hearing of June 7, 2006, which appears on page 8 of the stenographic version.
[2] Appearing on pages 8 and 9, item 23, of communication C-44 by COMMISA.
[3] Mission Statement, page 6, numeral 2, paragraph (d) "**Intentions and petitions from the Defendant**" which states "The Arbitration Tribunal is not authorized to assume the capacities of "amiable compositeur" or "ex aequo et bono".

3

9.   Considering that based on its Communication A-49 the Arbitration Tribunal has overstepped the mission with which it was commissioned by the parties, PEP enters at this time a "***Plea to Dismiss since the Arbitration Tribunal has Overstepped its Authority***", contained in the second paragraph of article 1432 of the Fourth Section of the Commercial Code, Section which constitutes the Mexican *lex arbitri*.

10.   As a different aspect, by requesting information from COMMISA through its Communication A-49, the Tribunal grants the Plaintiff an additional period of time to submit evidence for its claims, and it is warned of deficiencies in its evidentiary submissions, a benefit that was never granted to PEP, breaching the principle of equality of the parties.

11.   The matter to which PEP objects has implications not only on the evidence, but also on the entire litigation conducted by the parties, which bases on the argumentations set forth by COMMISA and responded to by PEP. In other words, if COMMISA never argued for the legal basis of the indemnification for damages and losses, it is clear that PEP also never argued about such indemnification for damages and losses, and no fault can be thus ascribed to PEP since it was the obligation of COMMISA to substantiate its claims. If the Tribunal rectifies COMMISA's evidentiary omissions, and the result of such proof is included in the Ruling, this would deny PEP's right to a defense since it would not be granted the opportunity to counter COMMISA, an integral right of due process that is very different to the one of ample evidentiary opportunity.

12.   See for example that article 2117 of the Mexican Federal Civil Code authorizes the parties to regulate civil responsibility by means of an agreement. Clause 10.1.2 regulates, via agreement, the responsibility of PEP in terms of the delays on the work with boats, reason for which the demand by COMMISA for damages and losses is inadmissible. In other words, since the claim by COMMISA for payment of standby charges or tariffs is inadmissible, so is the claim for indemnification, since they both tend to favor PEP on the same subject. In a different tenor, Clause 8.2.1 of the Contract relating to IPC-28 exempts the parties from responsibility for any indirect or **special damages** that should occur during the execution of the project, thus opposing the payment of any claim for "fair and reasonable" charges. These points of law have not been discussed in the Arbitration.

**Chapter II.**

We object to Communication A-50 by the Arbitration Tribunal since the right of my principal to a Ruling without any undue delays has been violated. The extension granted to COMMISA to respond to Communication A-49 was executed without notice being given to PEP and without its interests being considered.

4

Article 20(1) of the Arbitration Regulations provides that the evidentiary period of the proceeding should be carried out in the shortest timeframe possible; article 22(1) of the Arbitration Regulations stipulates that closing of the evidentiary period will occur when the parties have been sufficiently heard; and article 32(2) of the Arbitration Regulations allows for time extensions only for purposes of the Tribunal being able to fulfill its responsibilities deriving from the Regulations.

COMMISA, in its Communication C-47 once again declares that the amounts paid to EMC are irrelevant to its claim for standby fees, and furthermore that no dispute over such amounts is in existence. In other words, COMMISA acknowledges once again that its claim has centered solely on the admissibility or inadmissibility of the payment for standby fees resulting from suspensions in the work with boats, setting its claim for damages and losses aside. In addition, we have already pointed out that the calculation of "fair and reasonable" charges by the Tribunal is not in agreement with the indemnification for damages and losses pursuant to Mexican civil law.

Under those terms, to grant an extension of time for the actions requested in Communication A-49 and, in consequence, to delay the issuance of the Final Ruling, in order to request information that has no bearing on the litigation and which, therefore, does not breach the principle of hearing and opposition to the detriment of any of the parties, goes against the provisions of the Arbitration Regulations. The legal basis of the Arbitration Tribunal in Article 20 (5) of the Regulations is not sufficient in this case. A pondering of the context of the arbitration clearly establishes that the right to a Ruling without any undue delays is superior to the right invoked by the Arbitration Tribunal.

Pursuant to the foregoing, said Arbitration Tribunal must revoke the extension granted and the action requested in its Communication A-49.

**Chapter III.**

The documentary proof COM-PEP 021544 is irrelevant in this case because this document is not a basis for the action. The document to which we refer constitutes a proposal by COMMISA to modify the standby tariffs or rates due to suspensions in the work with boats, in order to modify those stipulated in the contract relating to IPC-28, and to be applied during the delay period at the start of such projects. This proposal was never accepted by PEP, reason for which it has no bearing on the contract or on any other obligation assumed by the parties. COMMISA also does not make any claim basing on this document, reason for which the value and the importance that it places on it for the Ruling are not justified.

By virtue of the foregoing, PEP respectfully requests:

**FIRST:** PEP, for purposes of the present proceeding, **OBJECTS** to communication **A-49** issued by that Tribunal for the reasons specified in the body of this document and enters the **PLEA TO DISMISS SINCE THE ARBITRATION TRIBUNAL HAS OVERSTEPPED ITS AUTHORITY.**

5

**SECOND:**  That **PEP** be acknowledged as **objecting to Communication A-50** by the Arbitration Tribunal, on the basis of an undue delay in the arbitration proceeding.

**THIRD:**  That PEP be acknowledged as **objecting to the evidence by COMMISA COM-PEP 021544**.


Respectfully,

[Signature]

**ATTORNEY JAIME DUARTE AISPURO**

cc:    Office of the Secretary of the International Arbitration Court.- Cristián Conejero Roos.- Fax 331 49 53 29 33.-
       Christopher Paparella, Fax (001) 212-422-6644.- Atty. Jesús Sánchez Ugarte.- Fax 52-92-59-28.

# EXHIBIT 10

# Hughes
# Hubbard

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

3 de agosto de 2007

Chris Paparella
Direct Dial: 212-837-6644
Direct Fax: 212-299-6644
Cell: 917-881-2365
paparella@hugheshubbard.com

POR CORREO ELECTRÓNICO

Juan Fernández-Armesto          José W. Fernández
Armesto & Asociados             Latham & Watkins LLP
General Pardiñas, 102           885 Third Avenue
28006 Madrid                    New York, New York 10022
España                          EE.UU.

Darío Oscós Coria               Cristián Conejero Roos
Oscos Abogados                  Corte Internacional de Arbitraje de la CCI
Paseo del Río, No. 53           38, Cour Albert 1er
Colonia Chimalistac             75008 Paris
04340 México, D.F.              France
México

Re:  *Corporación Mexicana de Mantenimiento Integral, S. de R. L. de C.V.,*
     *contra PEMEX Exploración y Producción*, Caso CCI No. 13716/CCO
     Comunicación C-47

Estimados Señores:

        La Demandante, Commisa, les escribe en relación con la Comunicación A-49 emitida por el Tribunal Arbitral. Mediante la Comunicación A-49 el Tribunal Arbitral ha solicitado en relación con las Controversias Técnicas 34 y 35 que Commisa y PEP presenten alegaciones y pruebas adicionales relacionadas con las tarifas de espera que PEP debe pagarle a Commisa por causa del retraso al inicio de los trabajos del contrato EPC-28. El Tribunal Arbitral busca información con respecto a pagos hecho por Commisa a EMC por el Bar Protector y la Castoro 10.

        Commisa solicita una prórroga de plazo para responder a la Comunicación A-49 hasta el 31 de agosto de 2007. Muchos de los documentos y otra información solicitada por el Tribunal Arbitral son complicados y se encuentran almacenados. Tendrán que ser localizados, recuperados y analizados. Varios individuos que participarán en la preparación de la respuesta habían programado vacaciones en el mes de agosto. Por lo tanto, Commisa solicita dicha prórroga para que tenga la oportunidad de presentar una respuesta completa y precisa a las solicitudes del Tribunal Arbitral.

2

Además, Commisa se encuentra sorprendida y preocupada por la solicitud por parte del Tribunal Arbitral posterior a la audiencia de esta información, la cual nunca fue discutida por PEP en sus escritos y no es relevante para las cuestiones planteadas por las Controversias Técnicas 34 y 35. Commisa respetuosamente solicita que el Tribunal Arbitral clarifique por qué solicita dicha información con respecto a los importes pagados por Commisa a EMC para las embarcaciones por el tiempo de espera reclamado en las Controversias Técnicas 34 y 35. Commisa pide dicha clarificación porque fue enteramente revelado en los escritos y en la audiencia en esta causa (y no existe disputa verdadera) que, de conformidad con el contrato EPC-28, los importes pagados por Commisa a EMC no tienen relevancia alguna para las reclamaciones de Commisa por tiempo de espera en las Controversias Técnicas 34 y 35.

El contrato EPC-28, el cual fue preparado por PEP, contiene tarifas unitarias especificadas y denominadas "tarifas por tiempo de espera" por el Castoro 10 y el Bar Protector. El contrato EPC-28 estipula que dichas tarifas se le pagarían a Commisa por PEP por concepto de un tipo de trabajo adicional definido como "tiempo de espera." Entre otras cosas, el Anexo C del contrato EPC-28 estipula que PEP le pagará a Commisa las tarifas por tiempo de espera por cualquier periodo durante el cual las embarcaciones de Commisa permanecían en espera por falta de acceso al trabajo durante el periodo del contrato EPC-28. Los importes pagados por Commisa a EMC son irrelevantes para la determinación sobre si PEP le debe a Commisa las tarifas por tiempo de espera por el tiempo de espera reclamado en las Controversias Técnicas 34 y 35. En efecto, durante el transcurso del contrato EPC-28, PEP aceptó y pago otros periodos de espera a las tarifas por tiempo de espera conforme al contrato EPC-28 y nunca afirmó que los tiempos de espera pagados por Commisa a EMC tenían relevancia alguna para dicha obligación. Como ya se ha notado, las Controversias Técnicas 34 y 35 solamente buscan cobrar las tarifas por tiempo de espera pactadas en el contrato EPC-28 (reducidas para tomar en cuenta los esfuerzos de mitigación por parte de Commisa) por el tiempo de espera experimentado por Commisa al principio del proyecto EPC-28. Las Controversias Técnicas 34 y 35 no están fundamentadas en los importes pagados por Commisa de conformidad con su subcontrato con EMC.

En vista de lo anterior, Commisa respetuosamente solicita que el Tribunal Arbitral le clarifique a las partes el fundamento de su solicitud que Commisa proporcione información con respecto as los importes pagados por Commisa a EMC por el tiempo de espera reclamado en las Controversias Técnicas 34 y 35.

Atentamente,

Chris Paparella

cc:    Jaime Duarte Aispuro
       Jesús Sánchez Ugarte
       Richard A. McGuirk

60003468_3

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Letter dated August 3, 2007 from COMMISA**, was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 16, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 16, 2008_

Signature: _____
           Brian Friedman, Director
           Language Innovations, LLC

Subscribed and sworn before me this _16th_ day of _June_ 20_08_, at Washington, DC.

JAMES M. REED
Notary Public District of Columbia    Notary Public
My Commission expires June 30, 2012

# Hughes
# Hubbard [logo]

Hughes Hubbard & Reed LLP

One Battery Park Plaza

New York, New York 1004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

August 3, 2007

Chris Paparella
Direct Dial: 212-837-6644
Direct Fax: 212-299-6644
Cell: 917-881-2365
paparella@hugheshubbard.com

BY E-MAIL

Juan Fernández-Armesto
Armesto & Asociados
General Pardiñas, 102
28006 Madrid
España

José W. Fernández
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
United States

Darío Oscós Coria
Oscos Abogados
Paseo del Río, No. 53
Colonia Chimalistac
04340 México, D.F.
México

Cristián Conejero Roos
International Court of Arbitration of the ICC
38, Cour Albert 1er
75008 Paris
France

Re:    *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V.,*
       *contra PEMEX Exploración y Producción, ICC Case No. 13716/CCO*
       *Communiqué C-47*

Dear Sirs:

      The Claimant, Commisa, is writing to you in connection with Communiqué A-49 issued by the Arbitral Tribunal. Through Communiqué A-49, the Arbitral Tribunal requested, in connection with Technical Disputes 34 and 35, that Commisa and PEP submit additional arguments and evidence related to the waiting charges that PEP must pay Commisa based on the delay in the start of the works under Contract EPC-28. The Arbitral Tribunal seeks information related to payments made by Commisa to EMC for the Bar Protector and the Castoro 10.

      Commisa herewith requests an extension of the deadline to respond to Communiqué A-49 until August 31, 2007. Many of the documents and other information requested by the Arbitral Tribunal are complicated and are in storage. They will have to be found, recovered and analyzed. Several of the people who will be participating in the response have planned vacations for the month of August. Therefore, Commisa requests said extension in order to have the opportunity to submit a complete and precise reply to the requests of the Arbitral Tribunal.

2

Moreover, Commisa is surprised and concerned by the request for said information from the Arbitral Tribunal after the hearing. This information was never disputed by PEP in its pleadings and is irrelevant to the matters raised by Technical Disputes 34 and 35. Commisa respectfully requests that the Arbitral Tribunal clarify why it is requesting said information related to amounts paid by Commisa to EMC for shipments for the waiting time claimed in Technical Disputes 34 and 35. Commisa requests said clarification because it was fully disclosed in its pleadings and in the hearing in said case (and there is no real dispute [about it]) that, in conformity with Contract EPC-28, amounts paid by Commisa to EMC have no relevance whatsoever to Commisa's claims for waiting time under Technical Disputes 34 and 35.

Contract EPC-28, which was drawn up by PEP, has charges per unit specified and called "waiting charge rate" for the Castoro 10 and Bar Protector. Contract EPC-28 stipulates that said charges would be paid to Commisa by PEP for a type of additional work defined as "waiting time." Among other things, Exhibit C to Contract EPC-28 stipulates that PEP pay Commisa waiting charges for any period during which Commisa's shipments are held up due to lack of access to the work, during the term of Contract EPC-28. Amounts paid by Commisa to EMC are irrelevant to the determination of whether PEP owes Commisa waiting charges for the waiting time claimed in Technical Disputes 34 and 35. In fact, during the term of Contract EPC-28, PEP accepted and paid for other waiting periods at the waiting charge rate set in Contract EPC-28 and never stated that the waiting periods paid by Commisa to EMC had any relevance whatsoever to said obligation. As has already been stated, Technical Disputes 34 and 35 only seek to collect charges for waiting periods agreed upon in Contract EPC-28 (reduced by taking into account mitigation efforts on the part of Commisa) for waiting times experienced by Commisa at the start of project EPC-28. Technical Disputes 34 and 35 are not based on amounts paid by Commisa in conformity with its subcontract with EMC.

In view of the foregoing, Commisa respectfully requests that the Arbitral Tribunal clarify to the parties the basis of its request that Commisa provide information related to the amounts paid by Commisa to EMC for the waiting time claimed in Technical Disputes 34 and 35.

Sincerely,

[signature]

Chris Paparella


cc:    Jaime Duarte Aispuro
       Jesús Sánchez Uguarte
       Richard A. McGuirk

60003468_3

# EXHIBIT 11

*Información Jurídica*

**Legislación Federal** (Vigente al 1o. de abril de 2008)

### LEY DE AMPARO, REGLAMENTARIA DE LOS ARTICULOS 103 Y 107 DE LA CONSTITUCION POLITICA DE LOS ESTADOS UNIDOS MEXICANOS

[Título]

LEY DE AMPARO, REGLAMENTARIA DE LOS ARTÍCULOS 103 Y 107 DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS

TEXTO VIGENTE

Ley (Publicada en el Diario Oficial de la Federación el 10 de enero de 1936)

Al margen un sello que dice: Poder Ejecutivo Federal.-Estados Unidos Mexicanos.-México.-Secretaría de Gobernación.

El C. Presidente Constitucional de los Estados Unidos Mexicanos, se ha servido dirigirme el siguiente Decreto:

"LAZARO CARDENAS, Presidente Constitucional de los Estados Unidos Mexicanos, a sus habitantes, sabed:

Que el H. Congreso de la Unión, se ha servido dirigirme el siguiente

DECRETO:

"El Congreso de los Estados Unidos Mexicanos, decreta:

LEY DE AMPARO, REGLAMENTARIA DE LOS ARTICULOS 103 Y 107 DE LA CONSTITUCION POLITICA DE LOS ESTADOS UNIDOS MEXICANOS

[Artículo 9]

ARTICULO 9.- Las personas morales oficiales podrán ocurrir en demanda de amparo, por conducto de los funcionarios o representantes que designen las leyes, cuando el acto o la ley que se reclame afecte los intereses patrimoniales de aquéllas.

Las personas morales oficiales estarán exentas de prestar las garantías que en esta ley se exige a las partes.

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202  349.4180
fax    202  349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Ley de Amparo**, was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 12, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 12, 2008_

Signature: _____
          Brian Friedman, Director
          Language Innovations, LLC

Subscribed and sworn before me this __12th__ day of __June__ 20_08_, at Washington, DC.

          JAMES M. REED    _James M. Reed_
        Notary Public District of Columbia  Notary Public
My Commission expires: My Commission Expires June 30, 2012

*Legal Information*

**Federal Legislation** (In force as of April 1, 2008)

### AMPARO LAW, WHICH ENABLES ARTICLES 103 AND 107 OF THE POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES

**[Title]**

AMPARO LAW, WHICH ENABLES ARTICLES 103 AND 107 OF THE POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES

TEXT IN FORCE

Law (Published in the Official Gazette of Mexico of January 10, 1936)

In the margin, a stamp that says: Federal Executive Branch.-United Mexican States.-Mexico.-Ministry of the Interior.

The Constitutional President of the United Mexican States has kindly sent me the following Decree:

"LAZARO CARDENAS, Constitutional President of the United Mexican States, to its inhabitants, be it known that:

The Congress of the Union has kindly sent me the following

DECREE:

"The Congress of the United Mexican States enacts:

### AMPARO LAW, WHICH ENABLES ARTICLES 103 AND 107 OF THE POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES

**[Article 9]**

ARTICLE 9.- The official legal entities may appear to petition for constitutional relief (amparo) through the officers or representatives designated by law, when the act or law that is challenged affects the interests of the assets of those entities.

The official legal entities shall be exempt from providing the guarantees that are required of the parties under this law.

# EXHIBIT 12

*Información Jurídica*

**Legislación Federal** (Vigente al 3 de octubre de 2007)

## CODIGO FEDERAL DE PROCEDIMIENTOS CIVILES

[Título]

CODIGO FEDERAL DE PROCEDIMIENTOS CIVILES

TEXTO VIGENTE

Publicado en el Diario Oficial de la Federación el día 24 de febrero de 1943.

(En vigor a los treinta días siguientes al de su publicación en el "Diario Oficial", 25 de Marzo de 1943)

CODIGO Federal de Procedimientos Civiles.

Al margen un sello con el Escudo Nacional, que dice: Estados Unidos Mexicanos, Presidencia de la República.

MANUEL AVILA CAMACHO, Presidente Constitucional de los Estados Unidos Mexicanos, a sus habitantes, sabed:

Que el H. Congreso de la Unión, se ha servido dirigirme el siguiente

D E C R E T O :

" EL Congreso de los Estados Unidos Mexicanos, decreta:

CODIGO FEDERAL DE PROCEDIMIENTOS CIVILES

**[Artículo 4]**

Artículo 4.- Las instituciones, servicios y dependencias de la Administración Pública de la Federación y de las entidades federativas tendrán, dentro del procedimiento judicial, en cualquier forma en que intervengan, la misma situación que otra parte cualquiera; pero nunca podrá dictarse, en su contra, mandamiento de ejecución ni providencia de embargo, y estarán exentos de prestar las garantías que este Código exija de las partes.

Las resoluciones dictadas en su contra serán cumplimentadas por las autoridades correspondientes, dentro de los límites de sus atribuciones.

La intervención que en diversos casos, ordena la ley que se dé al Ministerio Público, no tendrá lugar cuando, en el procedimiento, intervenga, ya el Procurador General de la República o uno de sus Agentes, con cualquier carácter o representación.

# Language Innovations, LLC™

*Helping businesses communicate worldwide*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Codigo Federal**, was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 12, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 12, 2008_

Signature: _____
Brian Friedman, Director
Language Innovations, LLC

Subscribed and sworn before me this ___12th___ day of ___June___ 2008 , at Washington, DC.

_James M. Reed_

JAMES M. REED
Notary Public District of Columbia    Notary Public
My Commission expires June 30, 2012

*Legal Information*

**Federal Legislation** (In force as of October 3, 2007)

### FEDERAL CODE OF CIVIL PROCEDURES

**[Title]**

FEDERAL CODE OF CIVIL PROCEDURES

TEXT IN FORCE

Law published in the Official Gazette of Mexico of February 24, 1943.

(In force 30 days after its publication in the "Official Gazette," March 25, 1943)

Federal CODE of Civil Procedures

In the margin, a stamp with the Mexican Coat of Arms that says: United Mexican States, Office of the President of the Republic.

MANUEL AVILA CAMACHO, Constitutional President of the United Mexican States, to its inhabitants, be it known that:

The Congress of the Union has kindly sent me the following

DECREE:

"The Congress of the United Mexican States enacts:

FEDERAL CODE OF CIVIL PROCEDURES

**[Article 4]**

Article 4.- The institutions, services, and departments of the Public Administration of the Federation and of the federal entities shall have, within the judicial proceeding, in any form in which they participate, the same status as any other party; but no writ of execution or order of attachment may ever be handed down against them and they shall be exempt from providing the guarantees that this Code requires of the parties.

The decisions handed down against them shall be carried out by the corresponding authorities within the limits of their powers.

The intervention that in various cases is ordered by the law to be given to the Attorney General's Office shall not take place when, in the proceeding, either the Attorney General of the Republic or one of his agents intervenes with any character or authority.

# EXHIBIT 13

*Información Jurídica*

**Legislación Federal** (Vigente al 1o. de abril de 2008)

## LEY ORGANICA DE PETROLEOS MEXICANOS Y ORGANISMOS SUBSIDIARIOS

[Título]

LEY ORGANICA DE PETROLEOS MEXICANOS Y ORGANISMOS SUBSIDIARIOS

TEXTO VIGENTE

Ley publicada en el Diario Oficial de la Federación el 16 de julio de 1992

(En vigor a partir del 17 de julio de 1992)

LEY Orgánica de Petróleos Mexicanos y Organismos Subsidiarios.

Al margen un sello con el Escudo Nacional que dice: Estados Unidos Mexicanos.- Presidencia de la República.

CARLOS SALINAS DE GORTARI, Presidente Constitucional de los Estados Unidos Mexicanos, a sus habitantes, sabed:

Que el H. Congreso de la Unión se ha servido dirigirme el siguiente

D E C R E T O

"EL CONGRESO DE LOS ESTADOS UNIDOS MEXICANOS, D E C R E T A:

LEY ORGANICA DE PETROLEOS MEXICANOS Y ORGANISMOS SUBSIDIARIOS

### CAPITULO I DISPOSICIONES GENERALES

[Artículo 1]

Artículo 1o.- El Estado realizará las actividades que le corresponden en exclusiva en las áreas estratégicas del petróleo, demás hidrocarburos y petroquímica básica, por conducto de Petróleos Mexicanos y de los organismos descentralizados subsidiarios en los términos que esta Ley establece, y de acuerdo con la Ley Reglamentaria del Artículo 27 Constitucional en el Ramo del Petróleo y sus reglamentos.

[Artículo 2]

Artículo 2o.- Petróleos Mexicanos, creado por Decreto del 7 de junio de 1938, es un organismo descentralizado, con personalidad jurídica y patrimonio propios, con domicilio en la ciudad de México, Distrito Federal, que tiene por objeto, conforme a lo dispuesto en esta Ley, ejercer la conducción central y la dirección estratégica de todas las actividades que abarca la industria petrolera estatal en

los términos de la Ley Reglamentaria del Artículo 27 Constitucional en el ramo del petróleo.

[Artículo 3]

Artículo 3o.- Se crean los siguientes organismos descentralizados de carácter técnico, industrial y comercial, con personalidad jurídica y patrimonio propios, mismos que tendrán los siguientes objetos:

I.- Pemex-Exploración y Producción: exploración y explotación del petróleo y el gas natural; su transporte, almacenamiento en terminales y comercialización;

II.- Pemex-Refinación: procesos industriales de la refinación; elaboración de productos petrolíferos y de derivados del petróleo que sean susceptibles de servir como materias primas industriales básicas; almacenamiento, transporte, distribución y comercialización de los productos y derivados mencionados;

III.- Pemex-Gas y Petroquímica Básica: procesamiento del gas natural, líquidos del gas natural y el gas artificial; almacenamiento, transporte, distribución y comercialización de estos hidrocarburos, así como de derivados que sean susceptibles de servir como materias primas industriales básicas; y

IV.- Pemex-Petroquímica: procesos industriales petroquímicos cuyos productos no forman parte de la industria petroquímica básica, así como su almacenamiento, distribución y comercialización.

Las actividades estratégicas que esta Ley encarga a Pemex-Exploración y Producción, Pemex-Refinación y Pemex-Gas y Petroquímica Básica, sólo podrán realizarse por estos organismos.

Petróleos Mexicanos y los organismos descritos estarán facultados para realizar las operaciones relacionadas directa o indirectamente con su objeto. Petróleos Mexicanos, los organismos subsidiarios y sus empresas podrán cogenerar energía eléctrica y vender sus excedentes a Comisión Federal de Electricidad y Luz y Fuerza del Centro, mediante convenios con las entidades mencionadas. En el Proyecto de Presupuesto de Egresos de la Federación, se someterán a discusión, análisis, aprobación y modificación de la Cámara de Diputados los recursos destinados a los proyectos de cogeneración de electricidad que Petróleos Mexicanos, los organismos subsidiarios y sus empresas propongan ejecutar, los recursos y esquemas de inversión pública con los que se pretendan llevar a cabo dichas obras, así como la adquisición de los excedentes por parte de las entidades.

Los organismos descritos en el párrafo primero tendrán el carácter de subsidiarios con respecto a Petróleos Mexicanos, en los términos de esta Ley.

[Artículo 4]

Artículo 4o.- Petróleos Mexicanos y sus organismos descentralizados, de acuerdo con sus respectivos objetos, podrán celebrar con personas físicas o morales toda clase de actos, convenios y contratos y suscribir títulos de crédito; manteniendo en exclusiva la propiedad y el control del Estado Mexicano sobre los hidrocarburos, con sujeción a las disposiciones legales aplicables.

CAPITULO II ORGANIZACION Y FUNCIONAMIENTO

[Artículo 5]

Artículo 5o.- El patrimonio de Petróleos Mexicanos y el de cada uno de los organismos subsidiarios estará constituído por los bienes, derechos y

obligaciones que hayan adquirido o que se les asignen o adjudiquen; los que adquieran por cualquier título jurídico; las ministraciones presupuestales y donaciones que se les otorguen; los rendimientos que obtengan por virtud de sus operaciones y los ingresos que reciban por cualquier otro concepto.

~~Petróleos Mexicanos y los organismos subsidiarios podrán responder solidaria o~~ mancomunadamente por el pago de las obligaciones nacionales e internacionales que contraigan.

Petróleos Mexicanos y los organismos subsidiarios administrarán su patrimonio conforme a las disposiciones legales aplicables y a los presupuestos y programas que formulen anualmente y que apruebe el Organo de Gobierno de Petróleos Mexicanos. La consolidación contable y financiera de todos los organismos será hecha anualmente por Petróleos Mexicanos.

[Artículo 6]

Artículo 6o.- Petróleos Mexicanos será dirigido y administrado por un Consejo de Administración, que será el órgano superior de gobierno de la industria petrolera, sin perjuicio de la autonomía de gestión de los organismos. El Director General será nombrado por el Ejecutivo Federal. (DR)IJ

[Artículo 7]

Artículo 7o.- El Consejo de Administración de Petróleos Mexicanos se compondrá de once miembros propietarios, a saber:

Seis representantes del Estado designados por el Ejecutivo Federal, entre los que deberá estar el Secretario de Medio Ambiente y Recursos Naturales; y cinco representantes del Sindicato de Trabajadores Petroleros de la República Mexicana, que deberán ser miembros activos de dicho sindicato y trabajadores de planta de Petróleos Mexicanos.

El Presidente del Consejo será el titular de la coordinadora del sector al que esté adscrito Petróleos Mexicanos y tendrá voto de calidad.

Por cada uno de los consejeros que se designe se nombrará un suplente. Los suplentes de los consejeros que representan al Estado serán designados por los respectivos titulares y los de los consejeros sindicales serán designados por el Sindicato, debiendo reunir los mismos requisitos exigidos para los propietarios.

[Artículo 8]

Artículo 8o.- Cada uno de los organismos subsidiarios será dirigido y administrado por un Consejo de Administración y por un Director General nombrado por el Ejecutivo Federal.

[Artículo 9]

Artículo 9o.- El Consejo de Administración de cada uno de los organismos subsidiarios, se compondrá de ocho miembros y sus respectivos suplentes. Los titulares serán: cuatro representantes del Gobierno Federal, designados por el Ejecutivo Federal; los tres Directores Generales de los otros organismos públicos descentralizados subsidiarios, y el Director General de Petróleos Mexicanos, quien lo presidirá.

Los suplentes de los Consejeros que representan al Gobierno Federal serán designados por los respectivos titulares y los de los organismos subsidiarios serán designados por los Directores correspondientes.

[Artículo 10]

Artículo 10.- El Consejo de Administración de Petróleos Mexicanos y los de los organismos subsidiarios, tendrán las atribuciones que les confieren las disposiciones legales aplicables y esta ley, conforme a sus respectivos objetos. Quedan reservadas al Organo de Gobierno de Petróleos Mexicanos las facultades que requiera la conducción central y la dirección estratégica de todas las actividades que abarca la industria petrolera incluyendo, en forma enunciativa más no limitativa: aprobar, conforme a la política energética nacional, la planeación y presupuestación de la industria petrolera estatal en su conjunto y evaluar el cumplimiento de los objetivos estratégicos de la misma. Asimismo se reserva al propio Organo de Gobierno el establecimiento de las políticas y lineamientos necesarios para lograr un sano equilibrio económico y financiero entre los organismos, así como para permitir el adecuado manejo y administración de los bienes que el Gobierno Federal destina a la industria petrolera.

Las actividades no reservadas en forma exclusiva a la Nación podrán llevarse a cabo por medio de empresas subsidiarias o filiales, cuya constitución o establecimiento deberá ser sometida por los Consejos de Administración de los organismos subsidiarios al de Petróleos Mexicanos, al igual que su liquidación, enajenación o fusión. Asimismo, se someterá a aprobación del propio Consejo la enajenación de las instalaciones industriales.

[Artículo 11]

Artículo 11.- Serán facultades y obligaciones de los directores generales las siguientes:

I.- Administrar y representar legalmente a los organismos;

II.- Cumplir los fines del organismo de manera eficaz, articulada y congruente con Petróleos Mexicanos y los otros organismos, conforme a la planeación estratégica de la industria petrolera estatal;

III.- Formular los programas institucionales de corto, mediano y largo plazo, los presupuestos de los organismos, establecer las políticas institucionales y los procedimientos generales, presentándolos para su aprobación al Consejo de Administración;

IV.- Remitir, por los conductos debidos, la información presupuestal y financiera que corresponda al organismo, para su integración a la Cuenta Anual de la Hacienda Pública Federal. Los directores generales de los organismos subsidiarios deberán hacerlo a través de Petróleos Mexicanos;

V.- Someter a la aprobación del Consejo de Administración que corresponda, los proyectos de organización, y los de creación, liquidación, enajenación o fusión de empresas subsidiarias o filiales; así como la enajenación de instalaciones industriales;

VI.- Establecer sistemas de control y mecanismos de evaluación, vigilar la implantación y cumplimiento de medidas correctivas e informar trimestralmente los resultados a su órgano de gobierno;

VII.- Asignar responsabilidades, delegar atribuciones y proponer al Consejo de Administración que corresponda el nombramiento y remoción de los funcionarios de los dos niveles inferiores al propio;

VIII.- Ejercer las facultades que en materia laboral determinen la Ley Federal del Trabajo y el Contrato Colectivo de Trabajo que regule las relaciones laborales de la industria petrolera estatal, y opinar sobre los asuntos de su competencia en la

contratación colectiva;

IX.- Cuidar de la observancia de las disposiciones relativas a normalización y seguridad industrial;

X.- Proponer medidas para asegurar la calidad de los productos, así como el desarrollo tecnológico correspondiente;

XI.- Cuidar de la observancia de las disposiciones relativas al equilibrio ecológico y preservación del medio ambiente que garanticen el uso adecuado de los recursos petroleros; y

XII.- Las otras que determinen las leyes y demás disposiciones aplicables.

[Artículo 12]

Artículo 12.- En su carácter de representantes legales, los directores generales tendrán todas las facultades que les corresponde a los mandatarios generales para pleitos y cobranzas, para actos de administración y de dominio, así como las que requieran cláusula especial conforme a la ley, en los términos de los primeros tres párrafos del Artículo 2554 del Código Civil para el Distrito Federal aplicable en materia federal; para formular querellas en los casos de delitos que sólo se pueden perseguir a petición de la parte afectada y para otorgar el perdón extintivo de la acción penal; ejercitar y desistirse de acciones judiciales, inclusive en el juicio de amparo, así como comprometerse en árbitros y transigir. Los directores generales podrán otorgar y revocar poderes generales o especiales, pero cuando sean en favor de personas ajenas a los organismos, deberán recabar previamente el acuerdo de su Consejo de Administración.

En su carácter de representantes legales, los directores de Petróleos Mexicanos y los funcionarios inmediatos inferiores a los titulares de los organismos, tendrán también las facultades de mandatarios generales en los términos antes apuntados, exclusivamente para los asuntos relacionados con las funciones de su competencia y para aquellos que les asigne o delegue expresamente el Director General correspondiente.

Cuando las operaciones tengan por objeto bienes inmuebles del dominio público de la Federación, se someterá al Ejecutivo Federal el decreto de desincorporación correspondiente.

[Artículo 13]

Artículo 13.- Quedan además reservadas al Director General de Petróleos Mexicanos las siguientes facultades:

I.- Elaborar, con la participación de los organismos subsidiarios, la planeación y presupuestación estratégica de la industria petrolera en su conjunto y someterla a la aprobación de su Consejo de Administración;

II.- Formular los programas financieros de la industria; definir las bases de los sistemas de supervisión, coordinación, control y desempeño de los organismos para optimizar su operación conjunta; y administrar los servicios comunes a los mismos;

III.- En los términos del apartado "A" del Artículo 123 Constitucional y de la Ley Federal del Trabajo, convenir con el Sindicato el Contrato Colectivo de Trabajo y expedir el Reglamento de Trabajo del Personal de Confianza, que regirán las relaciones laborales de Petróleos Mexicanos y de los organismos;

IV.- Resolver conflictos que se susciten entre los organismos sobre sus ámbitos

de actividad; y conocer de asuntos trascendentes para la industria;

V.- Las demás que le confieran las leyes y demás disposiciones legales aplicables. (DR)IJ

**[Artículo 14]**

Artículo 14.- Los actos jurídicos que celebren Petróleos Mexicanos o cualquiera de sus Organismos Subsidiarios se regirán por las Leyes Federales aplicables y las controversias nacionales en que sea parte, cualquiera que sea su naturaleza, serán de la competencia de los tribunales de la Federación, salvo acuerdo arbitral, quedando exceptuados de otorgar las garantías que los ordenamientos legales exijan a las partes, aun en los casos de controversias judiciales.

Tratándose de actos jurídicos de carácter internacional, Petróleos Mexicanos o sus Organismos Subsidiarios podrán convenir la aplicación de derecho extranjero, la jurisdicción de tribunales extranjeros en asuntos mercantiles y celebrar acuerdos arbitrales cuando así convenga al mejor cumplimiento de su objeto.

**[Artículo 15]**

Artículo 15.- El órgano de vigilancia de cada uno de los organismos descentralizados estará integrado por un Comisario Público Propietario y un Suplente, designados por la Secretaría de la Contraloría General de la Federación, quienes desarrollarán sus funciones de acuerdo con las disposiciones legales aplicables.

Petróleos Mexicanos establecerá un órgano de control de la industria petrolera estatal que coordinará las actividades de los órganos internos de control de los organismos subsidiarios, y que podrá realizar la fiscalización directa de los mismos, conforme a las disposiciones legales procedentes.

**TRANSITORIOS**

**[Artículo Primero Transitorio]**

Primero: La presente ley entrará en vigor al día siguiente de su publicación en el Diario Oficial de la Federación.

**[Artículo Segundo Transitorio]**

Segundo: Se abroga la Ley Orgánica de Petróleos Mexicanos de 23 de enero de 1971 publicada en el Diario Oficial de la Federación el 6 de febrero de 1971.

**[Artículo Tercero Transitorio]**

Tercero: En tanto el Ejecutivo Federal expide el Reglamento de esta Ley, se aplicará el vigente en lo que no se oponga a la misma.

**[Artículo Cuarto Transitorio]**

Cuarto: El domicilio legal de los organismos creados por esta Ley será el Distrito Federal, hasta en tanto en disposiciones reglamentarias se establezca, en su caso, otro diverso.

**[Artículo Quinto Transitorio]**

Quinto: Al entrar en vigor la presente Ley, el consejo de administración de

Petróleos Mexicanos proveerá lo necesario para llevar a cabo la formalización de los actos jurídicos que procedan, a efecto de determinar los derechos y obligaciones que regularán las relaciones operativas entre Petróleos Mexicanos y los organismos subsidiarios creados por esta Ley, en materia financiera, crediticia, fiscal, presupuestal, contable, de aplicación de excedentes, y demás que resulten pertinentes, en los términos de las leyes aplicables. (DR)IJ

[Artículo Sexto Transitorio]

Sexto: Los bienes inmuebles, el personal, los recursos presupuestales, financieros y materiales, incluidos mobiliario, vehículos, instrumentos, aparatos, maquinaria, archivos y en general el equipo e instalaciones cuya administración y manejo tiene encargados Petróleos Mexicanos, previo acuerdo de su Consejo de Administración, se transferirán a dichas entidades subsidiarias para constituir su patrimonio y cumplir con su objeto en los términos de esta ley. Dicha transferencia se llevará a cabo conforme a las disposiciones legales aplicables, en un lapso no mayor de un año a partir de la vigencia de esta ley. Las transferencias de bienes inmuebles no implicarán cambio de destino.

[Artículo Séptimo Transitorio]

Séptimo: Al asumir la realización de los objetos que esta Ley les asigna, los organismos descentralizados que se crean se subrogarán en los derechos y obligaciones de Petróleos Mexicanos que les correspondan; por consiguiente, competerán a los propios organismos las pretensiones, acciones, excepciones, defensas y recursos legales de cualquier naturaleza, deducidos en los juicios o procedimientos en los cuales Petróleos Mexicanos tenga interés jurídico en la fecha de la transferencia de los asuntos.

[Artículo Octavo Transitorio]

Octavo: Lo establecido en esta ley no afectará, en forma alguna, las obligaciones de pago nacionales e internacionales contraídas por Petróleos Mexicanos con anterioridad a la vigencia de este ordenamiento. Por consiguiente, los organismos subsidiarios que esta Ley establece, serán solidariamente responsables de dichas obligaciones.

[Artículo Noveno Transitorio]

Noveno: La adscripción de los trabajadores a los organismos se hará en los términos previstos por el Contrato Colectivo de Trabajo vigente, con la intervención que al Sindicato de Trabajadores Petroleros de la República Mexicana le confieren la Ley Federal del Trabajo y dicho Contrato Colectivo, y con pleno respeto de los derechos de los trabajadores.

[Artículo Décimo Transitorio]

Décimo: Los laudos de carácter laboral se ejecutarán en los términos que determine la Junta Federal de Conciliación y Arbitraje, así como las Juntas Especiales del referido Tribunal.

[Artículo Décimo Primero Transitorio]

Décimo Primero: Las menciones que leyes o reglamentos vigentes hacen de Petróleos Mexicanos, se entenderán referidas al propio Petróleos Mexicanos o a los organismos subsidiarios, según corresponda, atendiendo al objeto de cada uno de los términos de esta Ley.

México, D. F., 13 de julio de 1992.- Dip. Gustavo Carvajal Moreno, Presidente.- Sen. Manuel Aguilera Goméz, Presidente.- Dip. Julieta Mendívil Blanco, Secretaria.- Sen. Oscar Ramírez Mijares, Secretario.- Rúbricas."

En cumplimiento de lo dispuesto por la fracción I del Artículo 89 de la Constitución Política de los Estados Unidos Mexicanos y para su debida publicación y observancia, expido el presente Decreto en la residencia del Poder Ejecutivo Federal, en la Ciudad de México, Distrito Federal, a los quince días del mes de julio de mil novecientos noventa y dos.- Carlos Salinas de Gortari.- Rúbrica.- El Secretario de Gobernación, Fernando Gutiérrez Barrios.- Rúbrica.

**TRANSITORIOS DE LA REFORMA PUBLICADA EN EL DIARIO OFICIAL EL 12 DE ENERO DE 2006**

**[Artículo Primero Transitorio Reforma 12-01-2006]**

PRIMERO.- Este Decreto entrará en vigor al día siguiente de su publicación en el Diario Oficial de la Federación. (DR)IJ

**[Artículo Segundo Transitorio Reforma 12-01-2006]**

SEGUNDO.- Se derogan todas aquellas disposiciones legales que entren en contradicción con el presente Decreto; y se dejan sin efecto todas las disposiciones reglamentarias, circulares, acuerdos y todos los actos administrativos de carácter general que contradigan las disposiciones del presente Decreto.

México, D.F., a 13 de diciembre de 2005.- Dip. Heliodoro Díaz Escárraga, Presidente.- Sen. Enrique Jackson Ramírez, Presidente.- Dip. Marcos Morales Torres, Secretario.- Sen. Sara I. Castellanos Cortés, Secretaria.- Rúbricas."

En cumplimiento de lo dispuesto por la fracción I del Artículo 89 de la Constitución Política de los Estados Unidos Mexicanos, y para su debida publicación y observancia, expido el presente Decreto en la Residencia del Poder Ejecutivo Federal, en la Ciudad de México, Distrito Federal, a los nueve días del mes de enero de dos mil seis.- Vicente Fox Quesada.- Rúbrica.- El Secretario de Gobernación, Carlos María Abascal Carranza.- Rúbrica.

*Derechos Reservados, (C)1995-2003 IIJ-UNAM*
*Instituto de Investigaciones Jurídicas de la UNAM*
*Circuito Maestro Mario de la Cueva s/n, Ciudad Universitaria, CP. 04510, México, D.F.*
*Tel. (52) (55) 56-22-74-64 ó 78, Fax. (52) (55) 56-65-21-93*

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Ley Organica,** was performed by a professional translator and is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Hogan & Hartson, LLP**. The original document was translated from **Spanish** into **English** and at completion delivered to the client on **June 12, 2008.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: _June 12, 2008_

Signature: _____

    Brian Friedman, Director
    Language Innovations, LLC

Subscribed and sworn before me this _12th_ day of _June_ 20 _08_, at Washington, DC.

         JAMES M. REED                _James M. Reed_
    Notary Public District of Columbia    Notary Public
My Commission expires: My Commission Expires June 30, 2012

*Legal Information*

**Federal Legislation** (In force as of April 1, 2008)

### THE ORGANIC LAW OF PETROLEOS MEXICANOS AND SUBSIDIARY ENTITIES

**[Title]**

THE ORGANIC LAW OF PETROLEOS MEXICANOS AND SUBSIDIARY ENTITIES

TEXT IN FORCE

Law published in the Official Gazette of Mexico of July 16, 1992

(In force beginning on July 17, 1992)

The Organic LAW of Petroleos Mexicanos and Subsidiary Entities

In the margin, a stamp with the Mexican Coat of Arms that says: United Mexican States.- Office of the President of the Republic.

CARLOS SALINAS DE GORTARI, Constitutional President of the United Mexican States, to its inhabitants, be it known that:

The Congress of the Union has kindly sent me the following

DECREE:

"THE CONGRESS OF THE UNITED MEXICAN STATES ENACTS:

THE ORGANIC LAW OF PETROLEOS MEXICANOS AND SUBSIDIARY ENTITIES

**[Article 14]**

Article 14.- The legal acts signed by Petróleos Mexicanos or any of its Subsidiary Entities shall be governed by the applicable Federal Laws and the national disputes in which they are involved, regardless of their nature, shall be under the jurisdiction of the courts of the Federation, unless there is an arbitration agreement; thus being exempt from providing the guarantees that the legal system requires of the parties, even in cases of judicial disputes.

Regarding legal acts of an international nature, Petróleos Mexicanos or its Subsidiary Entities may agree to the application of foreign law, the jurisdiction of foreign courts in commercial matters, and sign arbitration agreements when this best suits the fulfillment of their purpose.