## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Arbitration Between )<br><br>CORPORACIÓN MEXICANA )<br>DE MANTENIMIENTO INTEGRAL, )<br>S. DE R.L. DE C.V., )<br>a Mexican corporation, )<br> )<br> )<br>Petitioner, )<br> )<br>v. )<br> )<br>PEMEX EXPLORACIÓN Y PRODUCCIÓN, )<br>Gerencia Jurídica de Exploración y Producción )<br>Marina Nacional 329 Edificio A, Octavo Piso )<br>Colonia Huasteca, Delegación Miguel Delgado )<br>Mexico City, Federal District )<br>Mexico C.P. 11311, )<br> )<br>Respondent. )<br> ) | Case No. 08-CV-00469-RWR |

## PEMEX EXPLORACIÓN Y PRODUCCIÓN'S
## NOTICE OF FILING ANSWER AND DEFENSES TO
## PETITIONER'S SECOND MEXICAN ENFORCEMENT PETITION

Respondent, Pemex Exploración y Producción ("PEP"), hereby provides notice that on

August 15, 2008, it filed, in Mexico, its Answer and Defenses to Petitioner's, Corporación

Mexicana de Mantenimiento Integral, S. de R.L. de C.V. ("COMMISA"), *second* Mexican

enforcement petition to enforce the arbitral decision subject of this dispute which was filed

before the Sixth Judicial District on Civil Matters, in Mexico City, Mexico, under case number

227/2008-II (the "Second Mexican Enforcement Petition"). *See* PEP's Answer and Defenses to

Second Mexican Enforcement Petition, in its original Spanish language, attached hereto as

**Exhibit 1**.[1]  PEP was served with the Second Mexican Enforcement Petition, via court order, on

August 12, 2008, at the following address:  Avenida Marina Nacional Numero 329, Edificio A,

Piso Ocho y/o Marina Nacional Número 329, Colonia Huasteca, Edificio B-2, Noveno Piso,

Delegacion Miguel Hidalgo, Código Postal 11311, Mexico, Federal District.  Notably, this

address is not one of the addresses provided in the Engineering, Procurement, and Construction

Contract (the "Contract") entered into between PEP and COMMISA for the service and

notification of documents.  *See* Contract, § 21.1.1, attached to COMMISA's Petition to Confirm

Arbitration Award (D.E. 1).

---

[1]    PEP's Answer and Defenses to Second Mexican Enforcement Petition is being filed in its original language in Spanish to bring it to the Court's attention at the earliest possible time.  Given the voluminous nature of PEP's Answer and Defenses to Second Mexican Enforcement Petition, a certified English translation will be provided upon the Court's request.

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

Dated:  August 18, 2008

Respectfully Submitted:

s/ Daniel E. González

Robert B. Duncan (D.C. Bar No. 416283)
René E. Browne (D.C. Bar No. 463989)
HOGAN & HARTSON L.L.P.
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
Tel. (202) 637-5600
Fax. (202) 637-5910
E-mail: rbduncan@hhlaw.com
E-mail: rbrowne@hhlaw.com
*Attorneys for Respondent*
*Pemex Exploración y Producción*

Daniel E. González (D.C. Bar No. 503371)
Richard C. Lorenzo (Florida Bar No. 071412)
(admitted *pro hac vice*)
Maria Eugenia Ramirez (Florida Bar No. 349320)
(admitted *pro hac vice*)
HOGAN & HARTSON L.L.P.
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel. (305) 459-6500
Fax. (305) 459-6550
Email: degonzalez@hhlaw.com
Email: rlorenzo@hhlaw.com
Email: meramirez@hhlaw.com
*Attorneys for Respondent*
*Pemex Exploración y Producción*

3

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Daniel E. González
Daniel E. González

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

**SERVICE LIST**
**COMMISA V. PEP**
**CASE NO. 08-CV-00469**
**UNITED STATES DISTRICT COURT, DISTRICT OF COLUMBIA**

**Robert M. Kennedy, Jr.**
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646
kennedyr@hugheshubbard.com
Attorney for Petitioner

Via Transmission of Notices of Electronic Filing
Generated by CM/ECF

**Christopher M. Paparella**
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Tel (212) 837-6644
Fax (212) 422-4726
paparella@hugheshubbard.com
Attorney for Petitioner

Via First Class Mail, postage pre-paid

# EXHIBIT 1
Part 1

CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R. L. DE C. V.
VS.

*C/ traslado*
*5 Anexos.*

PEMEX EXPLORACIÓN Y PRODUCCION
INCIDENTE DE RECONOCIMIENTO Y EJECUCIÓN
DE LAUDO ARBITRAL
EXPEDIENTE No. 227/2008-II

H. JUZGADO SEXTO DE DISTRITO EN MATERIA CIVIL
EN EL DISTRITO FEDERAL.
PRESENTE.-

*SELLO*

CLAUDIO ERIC DEVEZE MONTOYA, con el carácter de apoderado de
PEMEX EXPLORACIÓN Y PRODUCCIÓN (de aquí en adelante y por economía
procesal denominada "PEP") como se tiene acreditado en autos, y autorizando
para oir y recibir todo tipo de notificaciones y documentos e imponerse de los
autos a los Licenciados JORGE HERNÁNDEZ ROMO, MIGUEL ANGEL
HERNÁNDEZ ROMO, MIGUEL ANGEL HERNÁNDEZ-ROMO VALENCIA,
JORGE ENRIQUE HERNÁNDEZ MARÍN, HÉCTOR OMAR LÓPEZ REYNOSO y
MARIO ENRIQUE AGUILAR ARAUJO, indistintamente así como a los Señores
ERICK SÁNCHEZ OLVERA y GERARDO BAROJAS LECHUGA, indistintamente,
ante usted respetuosamente comparece y expone:

Mediante este escrito se da contestación a la demanda presentada por
CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R. L. DE
C. V., (en adelante COMMISA) en contra de mi representada PEMEX
EXPLORACIÓN Y PRODUCCIÓN (en adelante PEP), en la cual la actora
demanda el reconocimiento y ejecución del Laudo Arbitral final de fecha 15 de
Enero de 2008 dictado en el procedimiento arbitral No. 13716/CCO/JRF seguido
ante la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional y
al efecto manifiesto cuanto sigue:

CORPORACIÓN MEXICANA DE MANTENIMIENTO
INTEGRAL, S. DE R. L. DE C. V.
VS.

PEMEX EXPLORACIÓN Y PRODUCCION

INCIDENTE DE RECONOCIMIENTO Y EJECUCIÓN
DE LAUDO ARBITRAL
EXPEDIENTE No. 227/2008-II

H.  JUZGADO SEXTO DE DISTRITO EN MATERIA CIVIL
EN EL DISTRITO FEDERAL.
PRESENTE.-

**CLAUDIO ERIC DEVEZE MONTOYA,** con el carácter de apoderado de PEMEX EXPLORACIÓN Y PRODUCCIÓN (de aqui en adelante y por economia procesal denominada "PEP") como se tiene acreditado en autos, y autorizando para oír y recibir todo tipo de notificaciones y documentos e imponerse de los autos a los Licenciados JORGE HERNÁNDEZ ROMO, MIGUEL ANGEL HERNÁNDEZ ROMO, MIGUEL ANGEL HERNÁNDEZ-ROMO VALENCIA, JORGE ENRIQUE HERNÁNDEZ MARÍN, HÉCTOR OMAR LÓPEZ REYNOSO y MARIO ENRIQUE AGUILAR ARAUJO, indistintamente, así como a los Señores ERICK SÁNCHEZ OLVERA y GERARDO BAROJAS LECHUGA, indistintamente, ante usted respetuosamente comparece y expone:

Mediante este escrito se da contestación a la demanda presentada por CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R. L. DE C. V., (en adelante COMMISA) en contra de mi representada PEMEX EXPLORACIÓN Y PRODUCCIÓN (en adelante PEP), en la cual la actora demanda el reconocimiento y ejecución del Laudo Arbitral final de fecha 15 de Enero de 2008 dictado en el procedimiento arbitral No. 13716/CCO/JRF, seguido ante la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional y al efecto manifiesto cuanto sigue:

## CONTESTACIÓN A LAS PRESTACIONES RECLAMADAS

1.- Niego la procedencia de la solicitud formulada por COMMISA, del reconocimiento de la validez del laudo final de fecha 15 de enero de 2008, dictado en el procedimiento arbitral No. 13716/CCO/JRF seguido ante la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional.

2.- Niego la procedencia de la solicitud formulada por COMMISA, de que se ordene a PEP a pagar a COMMISA las cantidades mencionadas en el laudo arbitral solicitadas por la actora en el incidente.

3.- Niego la procedencia de la solicitud de la condena a PEP al pago de cantidad alguna por concepto de gastos y costas.

## EXCEPCIONES Y DEFENSAS
## INCOMPETENCIA

I.- Opongo la EXCEPCION DE INCOMPETENCIA POR DECLINATORIA que se interpone mediante el **INCIDENTE DE INCOMPETENCIA POR DECLINATORIA**

Con fundamento en lo dispuesto por el artículo 24, 34, siguientes y demás relativos del Código Federal de Procedimientos Civiles, inicio Incidente de Incompetencia por Declinatoria, toda vez que Su Señoría no es competente para conocer de la presente controversia, toda vez que mi representada tiene su domicilio en Villahermosa, Tabasco, como consta en la copia certificada del Diario Oficial de la Federación de fecha 11 de Noviembre de 1994, que obra en autos fundado en los siguientes hechos y consideraciones de derecho:



# H E C H O S

1.- El artículo 24 fracción IV del Código Federal de Procedimientos Civiles determina:

> "Por razón de territorio es tribunal competente: ... IV al del domicilio del demandado, tratándose de acciones reales sobre muebles **o de acciones personales** o del estado civil".

2.- Mi representada tiene su domicilio en la Ciudad de Villahermosa, Tabasco, según consta en el Diario Oficial de la Federación de 11 de noviembre de 1994, cuya copia certificada obra en autos al exhibirse con el Incidente de Nulidad de Emplazamiento propuesto.

3.- El actor en el presente juicio está ejercitando una **acción personal** contra mi representada, consistente en el reconocimiento y ejecución de laudo arbitral. Una acción personal es la que trata de hacer efectivo un derecho personal o de crédito, o el cumplimiento de una obligación. En consecuencia lo que pretende COMMISA es la ejecución del laudo arbitral, y el pago coactivo de una cantidad de dinero determinable.

4.- En consecuencia, el tribunal competente para conocer del presente caso es el Juez de Distrito en Materia Civil domiciliado en Villahermosa, Tabasco.

5.- Por ello, Su Señoría debe abstenerse de conoce del presente negocio.

# P R U E B A S

Ofrezco como prueba de este incidente la INSTRUMENTAL DE ACTUACIONES, en que obra el Diario Oficial de la Federación de 11 de



noviembre de 1994 en copia certificada, donde consta el domicilio de PEP, así como constancia de la acción personal ejercitada por COMMISA y las actuaciones llevadas a cabo por Su Señoría.

Relaciono esta prueba con los puntos 1, 2, 3, 4 y 5 del presente incidente.

# D E R E C H O

Son aplicables al presente caso las normas contenidas en los artículos 24, siguientes y demás relativos del Código de Procedimientos Civiles.

Por lo expuesto,

A USTED C. JUEZ, atentamente pido que se sirva:

PRIMERO.- Tener por opuesta la excepción de incompetencia por declinatoria.

SEGUNDO.- Tramitar el incidente conforme a derecho, suspendiendo el procedimiento como lo dispone el artículo 38 del Código Federal de Procedimientos Civiles.

TERCERO.- Decretar la procedencia de la incompetencia y abstenerse de conocer del presente negocio.

## LITISPENDENCIA

II.- Opongo la EXCEPCION DE LITISPENDENCIA, toda vez que la parte actora CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, S. DE R. L. DE C. V., **ha reconvenido** a mi representada ante el juzgado OCTAVO DE

5

DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, bajo el EXPEDIENTE 158/2008 **el reconocimiento y ejecución del Laudo Arbitral**, y ahora pretende que Su Señoría reconozca y ejecute el mismo laudo arbitral.

Si bien es cierto que el juez OCTAVO DE DISTRITO EN MATERIA CIVIL desechó la solicitud de la empresa COMMISA, esta resolución no es firme y está subjúdice el recurso tendiente a resolver su definitividad. Esto es, COMMISA interpuso recurso de revocación en contra del desechamiento de la reconvención, habiendo el Juez OCTAVO DE DISTRITO EN MATERIA CIVIL mencionado, desechado también dicho recurso. En contra de esta resolución dictada por el Juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL mencionado, COMMISA solicitó el amparo y protección de la Justicia Federal ante el C. JUEZ DÉCIMO TERCERO DE DISTRITO EN MATERIA CIVIL en el Distrito Federal bajo el AMPARO No. 441/2008 habiendo dicho tribunal de amparo concedido la protección de la Justicia Federal a COMMISA para efectos de admitir el recurso de revocación ya citado. En contra de esa resolución PEP interpuso Recurso de Revisión que se ventila actualmente ante el DÉCIMO PRIMER TRIBUNAL COLEGIADO EN MATERIA CIVIL en el Distrito Federal, bajo el Expediente No. R. C. 231/2008, pendiente de resolución.

En consecuencia, toda vez **que la demanda reconvencional de reconocimiento y ejecución del laudo arbitral presentada por COMMISA ante el Juez Octavo de Distrito en Materia Civil en el Distrito Federal Expediente 158/2008, se encuentra actualmente *sub judice*** nos encontramos ante la excepción de litispendencia, por lo cual Su Señoría debe abstenerse de conocer del presente negocio.

## P R U E B A S

Ofrezco como pruebas de esta excepción las siguientes:

1.- Todo lo actuado ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, bajo el EXPEDIENTE No. 158/2008-II, cuya copia certificada he solicitado como lo compruebo con el escrito que acompaño como **ANEXO DOS**, toda vez que no tengo dicha documental.

2.- Todo lo actuado ante el C. Juez DÉCIMO TERCERO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL en el juicio de AMPARO 441/2008, cuya copia certificada he solicitado, como lo demuestro con el escrito que acompaño como **ANEXO TRES**, por carecer de dicha documental.

3.- Todo lo actuado ante el DÉCIMO PRIMER TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO EN EL DISTRITO FEDERAL, expediente R.C. 231/2008, cuya copia certificada he solicitado, como lo compruebo con el escrito que acompaño como **ANEXO CUATRO**, por carecer de dicha documental.

## ACUMULACIÓN INDEBIDA DE ACCIONES.

III. COMMISA ha acumulado indebidamente las acciones de recocimiento de laudo con la de ejecución de laudo. De los artículos 1461 y 1463 del Código de Comercio se desprende que la nulidad o el reconocimiento de un laudo, debe ser previo a la solicitud de ejecución del mismo. Es decir, de conformidad con el primero de las disposiciones citadas, solamente después de que un laudo haya sido reconocido, se puede solicitar la ejecución del mismo. Así, la acción de reconocimiento de laudo no se intenta conjuntamente con su ejecución, pues de otra manera se infringiría el orden natural de las cosas, puesto que no puede ejecutarse un laudo, mientras no se declare su validez.

"No. Registro: 192,709
Tesis aislada
Materia(s): Civil
Novena Epoca

Instancia: Tribunales Colegiados de Circuito
Fuente: Semanario Judicial de la Federación y su
Gaceta X, Diciembre de 1999
Tesis. IX.1º.39 C
Página: 733

LAUDOS ARBITRALES DE CARÁCTER
COMERCIAL PRONUNCIADOS EN EL
EXTRANJERO. SU EJECUCIÓN.
Para ejecutar en el país un laudo arbitral de carácter
comercial emitido en el extranjero, es preciso que
previamente se produzca su reconocimiento, lo que
puede hacerse al pronunciar la resolución final en el
incidente que se debe promover conforme al
artículo 360 del Código Federal de Procedimientos
Civiles, pues los artículos 1461 al 1463 del Código
de Comercio, ley aplicable al caso, no excluyen a
dicha categoría de laudos arbitrales de ser
reconocidos; amén de que sería ilógico que se
procediera a la ejecución, con la sola promoción del
incidente y después, en la resolución final de éste,
se denegara tal reconocimiento o bien la ejecución,
por estarse en alguno de los casos que la propia ley
contempla.

PRIMER TRIBUNAL COLEGIADO DEL NOVENO
CIRCUITO.

Amparo en revisión 29/99. Aceros San Luis, S. A.
de C. V., y otros.    12 de agosto de 1999.
Unanimidad de votos. Ponente: Enrique Arizpe
Narro. Secretario: Juan Guillermo Alanís Sánchez."

Por tal razón, COMMISA actúa indebidamente al acumular su acción de reconocimiento con su acción de ejecución en el mismo incidente, por lo cual debe declararse improcedente de pleno derecho su pretensión de ejecutar el laudo, sin haber obtenido previamente el reconocimiento del mismo.

**NULIDAD DEL LAUDO**

IV.- EXCEPCION DE IMPROCEDENCIA DE RECONOCIMIENTO Y EJECUCIÓN DEL LAUDO ARBITRAL.

Toda vez que el laudo arbitral cuyo reconocimiento y ejecución solicita COMMISA, resulta nulo por ser contrario al orden público, por exceder las facultades de los árbitros y por contener cuestiones que no son arbitrable, es improcedente su reconocimiento y ejecución. Las causales de nulidad del laudo arbitral contenidas en el artículo 1457 del Código de Comercio son similares a las causales contenidas en el artículo 1462 del Código de Comercio para negar el reconocimiento y ejecución del laudo arbitral.

Como ya consta en autos, PEP solicitó ante el JUEZ OCTAVO DE DISTRITO EN MATERIA CIVIL DEL DISTRITO FEDERAL, según expediente 158/2008, la nulidad del laudo arbitral, exponiendo las causa y fundamentos por los cuales el mencionado laudo es nulo, y por ende, no puede ser reconocido y mucho menos ejecutado por ese juzgador. En este momento es pertinente referirnos a dichas causales y fundamentaciones:

Con fundamento en lo dispuesto por el artículo 1462 párrafo I c) y d) y párrafo II del Código de Comercio procede que se deniegue el reconocimiento y la ejecución del laudo arbitral solicitado por COMMISA, por las siguientes razones:

I.- El reconocimiento y la ejecución del laudo arbitral es contrario al orden público.

II.- El laudo arbitral se refiere a controversias no previstas en el acuerdo de arbitraje y contiene decisiones que exceden los términos del acuerdo de arbitraje.

III.- El procedimiento arbitral no se ajustó al acuerdo celebrado por las partes.

IV.- El objeto de la controversia en el arbitraje no es susceptible de arbitraje.

9

Paso a demostrar las razones que fundamentan la procedencia de la denegación al reconocimiento y ejecución del laudo arbitral, basado en lo siguiente:

**(INICIA CITA DE LA DEMANDA DE NULIDAD)**

I. Consta en el punto II del Laudo Arbitral (página 7 del mismo) que en el convenio arbitral, tanto los árbitros como las partes en el arbitraje determinaron en el punto 11 (once) lo siguiente:

> **"Los árbitros carecen de poderes de amigable componedor o para decidir en equidad"**

II. El 6 de Septiembre de 2005 las partes y el Tribunal Arbitral acordaron en el Acta de Misión, párrafo (H) **que el ordenamiento jurídico aplicable al fondo del asunto lo constituyen las Leyes Federales de los Estados Unidos Mexicanos. En consecuencia, las partes pactaron que el arbitraje se llevaría a cabo en estricto derecho y no conforme a la equidad o en conciencia.**

III. El proceso se desarrolló de la manera siguiente:

- El 16 de enero de 2006, COMMISA presentó ante el Tribunal Arbitral escrito detallado de su demanda, conforme a lo señalado en la Orden Procesal 1 ter, comunicación de 12 de diciembre de 2005.
- PEP, con fecha 2 de marzo de 2006, presentó su contestación a la demanda detallada de COMMISA, planteando a su vez demanda reconvencional.
- El 5 de abril de 2006, COMMISA presentó su escrito de Réplica y Contestación a la Reconvención, de acuerdo a la comunicación de 31 de marzo de 2006
- PEP presentó su escrito de Dúplica el 9 de mayo de 2006.

- Los días del 5 al 9 de junio de 2006, en la Ciudad de México, se celebró audiencia procesal en la que las partes expusieron su caso, se desahogaron testimoniales y se debatió sobre cada una de las controversias.

- Las partes emitieron sus conclusiones el día 11 de agosto del 2006.

- El 13 de diciembre del 2006 el Tribunal Arbitral emitió la Orden de Procedimiento Número 6 mediante la cual ordena la realización de Diligencias para Mejor Proveer, elaborando al efecto un cuestionario que fue respondido por ambas partes, y permitiéndose ofrecer nueva prueba al respecto.

- El 12 de marzo del 2007 PEP y COMMISA dieron respuesta a las Diligencias para Mejor Proveer ordenadas por el Tribunal Arbitral.

- El 20 de agosto de 2007, las partes rinden al Tribunal Arbitral nueva información requerida para Mejor Proveer, específicamente con relación a las Controversias Técnicas 34 y 35, que adelante se detallarán.

- Con fecha 10 de octubre de 2007, el Tribunal Arbitral notificó a las partes el cierre de la instrucción.


IV. Se hace notar a Su Señoría, que la litis del juicio de Arbitraje es compleja. COMMISA determinó sus pretensiones en 39 partes que indebidamente denominó "Controversias Técnicas" (de la 1 a la 39), cada una con un soporte de hechos y de derecho distintos, teniendo como causa común la ejecución del Contrato de Obra Pública a Precios Unitarios y Tiempo Determinado número PEP-O-IT-136/98 (IPC-28), cuyo objeto consistió, como se señalo anteriormente, en: diseño, procura, fabricación, tendido de tubería, revestimiento anticorrosivo, lastrado, protección catódica, ductos ascendentes, instalación y prueba de válvulas.


En ese tenor, tanto la demanda y réplica, como la contestación y la duplica, se elaboraron, abordando individualmente cada una de estas llamadas "Controversias Técnicas", aunque no se ajuste su denominación al termino pactado en el Contrato de Obra Pública. Es muy importante hacer esta distinción,



ya que de conformidad con el contrato, las controversias técnicas debían de haber sido resueltas previamente, y una vez que las mismas fueran resueltas, entonces y sólo hasta ese momento las mismas podían haber sido reclamadas ante el tribunal arbitral.

En efecto, las partes pactaron lo siguiente en el Contrato de Obra Publica:

> "23.2 **_Controversias Técnicas._** *El Contratista no tendrá derecho a efectuar ningún reclamo y PEP no será responsable por daños legales (incluyendo negligencia) o contractuales ante el Contratista, sus proveedores secundarios o subcontratistas, excepto en los casos específicamente previstos en este Contrato.*
>
> *Para efectos de esta Cláusula se entenderá por Controversia Técnica toda diferencia que surja por cualquier reclamo o sea atribuible a la interpretación o ejecución de este Contrato, entre el Supervisor y el Contratista, en relación con los Anexos Técnicos del Contrato (A, B, B-1, B-2, B-3, CEV, DT, DT-1, DT-2.1, DT-2.2, DT-3, DT-4, E-2, F-1 Y F-2)*
>
> *Si por cualquier motivo el Supervisor y el Contratista no coinciden en la apreciación para resolver un reclamo de ajuste derivado de una Controversia Técnica, el Contratista deberá hacer formal dicha Controversia Técnica por escrito al Supervisor y solicitarle la determinación correspondiente. Este tipo de solicitud del Contratista deberá ser claramente identificado indicando que se trata de una Controversia Técnica sujeta a resolución al amparo de esta Cláusula 23, debiendo contener un resumen de los hechos en controversia y la propuesta del Contratista para resolverlos.*
>
> ...........................................................
> ........................................................."

12

> "23.3 **Arbitraje.** Cualquier controversia,
> reclamación, diferencia o disputa que
> sobrevenga o se relacione o esté vinculada
> con este Contrato o el incumplimiento del
> mismo será dirimida finalmente mediante
> arbitraje conducido en el Distrito Federal,
> México, de acuerdo con las Reglas de
> Conciliación y Arbitraje de la Cámara
> Internacional de Comercio que estén en vigor
> en ese momento. El número de árbitros será
> de tres y el idioma para conducir el arbitraje
> será el español. **No obstante lo anterior,
> cualquier controversia técnica deberá ser
> sometida previamente al procedimiento
> previsto en la Cláusula 23.2 y sólo en caso
> de que mediante dicho procedimiento no
> se logré un acuerdo entre las partes, éstas
> quedarán facultadas para acudir al
> recurso previsto en la Cláusula 23.3".**

V. El 11 de febrero de 2008 PEP recibió el Laudo Final emitido por el Tribunal Arbitral en la ciudad de México, Distrito Federal, fechado 15 de enero de 2008, el cual básicamente:

a) Condenó a PEP a pagar MXP $10,928,728.00 y USD 75,075,635.00 a COMMISA, cantidad que resulta, una vez hecha la compensación de la condena comprendida en la reconvención. La cantidad denominada en USD se pagaría en pesos mexicanos al tipo de cambio publicado en el Diario Oficial de la Federación el día hábil inmediato anterior al 29 de septiembre de 2002.

b) La deducción a la cantidad anteriormente mencionada, de los derechos de la Secretaría de la Función Pública (de aquí en adelante y por economía procesal denominada "SEFUPU"), equivalente al 5 al millar de la cantidad comprendida en la condena del Laudo Final.

c) Condenó a PEP al pago de gastos financieros a favor de COMMISA, a partir del 29 de septiembre de 2002 hasta la fecha en que se verifique el pago, a la tasa en cada momento establecida en la Ley de Ingresos de la

Federación para el caso de prórroga de créditos fiscales: el cómputo se hará por días tomando como base la cantidad que resulte de multiplicar la condena en pesos señalada en el inciso a) por 0.995, debiéndose realizar su pago conjuntamente con el principal.

d) Condenó a PEP al pago del impuesto al valor agregado, y

e) Condenó a PEP a pagar a COMMISA USD $200,000.00 por gastos incurridos en el arbitraje.

VI. El detalle de la decisión del Tribunal Arbitral se refleja en los cuadros siguientes:

**Prestaciones reclamadas por COMMISA:**

| Cuadro Comparativo Caso 13716/CCO/JRF (IPC-28) | | | | | |
|---|---|---|---|---|---|

| Controversias Técnicas | Concepto | Posición COMMISA | | Posición PEP | | Laudo Final |
|---|---|---|---|---|---|---|
| | | MXP | USD | MXP | USD | |
| 1-18, y 22 | Controversias Conciliadas | $2,462,064.00 | $13,249,376.00 | (-) $2,386,203.92 | $13,336,334.49 | (-)$2386,203 MXP $13,336,334 USD |
| 19 | Obstrucciones | $2,049,594.48 | $4,851,169.60 | $975,044.16 | $2,270,800.94 | $1,225,734 MXP $2,831,053 USD |
| 20 | Colocación Sacos Arena Cemento | $21,568.50 | $710,993.00 | $100,390.59 | $52,909.93 | $27,064 MXP $61,062 USD |



14

| | | | | | |
|---|---|---|---|---|---|
| 21 | Colocación Sacos Arena Cemento | $21,568.50 | $710,993.00 | $39,525.93 | $40,984.98 | $18,225 MXP $78,695 USD |
| 23 | Trabajos Adicionales de Ingeniería Convenio 12 | 0.00 | $1,091,045.39 | 0.00 | $178,033.03 | $ 0.00 MXP $1,091,045 USD |
| 24 | Inspección Previa | 0.00 | $521,865.35 | 0.00 | 0.00 | Rechazada |
| 25 | Deducible de Seguro | 0.00 | $250,000.00 | 0.00 | 0.00 | $ 0.00 MXP $250,000 USD |
| 26 | Ajuste de los Costos Cotizados en Dólares | 0.00 | $3,285,222.05 | 0.00 | 0.00 | Rechazada |
| 27 | Diferencial por Trabajos en Plataformas | $63,468.69 | $1,948,210.00 | 0.00 | $104,408.08 | $ 62,502 MXP $1,947,288 USD |
| 28 | Almacenaje, Transporte y Carga y Descarga de Tubería | 0.00 | $414,470.08 | 0.00 | $412,441.22 | $ 0.00 MXP $412,440 USD |
| 29 | Tiempos de espera y Tránsitos Adicionales C10 | $2,877,082.80 | $4,177,552.00 | 0.00 | 0.00 | $1,222,395 MXP $1,356,793 USD |

| | | | | | |
|---|---|---|---|---|---|
| 30 | Tiempos de espera y Tránsitos Adicionales BP | $4,880,945.41 | $3,873,876.00 | 0.00 | 0.00 | $2,722,538 MXP $2,163,068 USD |
| 31 | Acondicionamiento Barcaza C10 | $1,498,175.00 | $3,107,462.00 | 0.00 | 0.00 | Rechazada |
| 32 | Tránsitos Adicionales C10 y BP | $239,458.00 | $739,330.00 | $39,643.55 | $67,568.13 | $180,915 MXP $667,291 USD |
| 33 | Alargamiento Programa de Ingeniería | 0.00 | $9,895,687.50 | 0.00 | 0.00 | Rechazada |
| 34 | Tiempos de Espera Bar Protector, iniciales | $30,309,308.00 | $28,885,344.00 | 0.00 | 0.00 | $ 0.00 MXP $9,031,536 USD |
| 35 | Tiempos de Espera Castoro 10, iniciales | 0.00 | $18,494,205.33 | 0.00 | 0.00 | $ 0.00 MXP $4,891,478 USD |
| 36 | Malos Tiempos | $33,308,347.00 | $26,415,850.00 | 0.00 | 0.00 | $ 0.00 MXP $22,038,954 USD |
| 37 | Cruces IPC-28 | $6,877,278.00 | $11,632,024.00 | $3,261,832.08 | (-) $304,761.14 | $ 6,877,278 MXP $11,632,024 USD |
| 38 | Modificación | 0.00 | $725,000 | 0.00 | 0.00 | $ 0.00 |

| | | | | | |
|---|---|---|---|---|---|
| | de Fecha Crítica | | .00 | | $396,765 USD |
| 39 | Cruces IPC-27 | $1,000,991.00 | $2,924,951.00 | $599,538.72 | $975,712.72 | $1,000,991 MXP $2,924,951 USD |
| | Total | $85,609,849.00 | $137,904,626.30 | $2,629,771.11 | $17,134,432.30 | $10,951,438 MXP $75,110,777 USD |

## Prestaciones reclamadas reconvencionalmente por PEP:

| Reconvención de PEP | | | | |
|---|---|---|---|---|
| **Reconvención** | **Reclamado** | | **Concedido** | |
| | MXP | USD | MXP | USD |
| Pago de pena por retraso en entrega de documentación final | 0.00 | $1,135,000 | Rechazada | |
| Pago de pena por atraso en terminación de gasoducto | 0.00 | $135,000 | 0.00 | $17,280 |
| Pago de apoyo prestado por servicio de | $1,261 | $153 | $1,261 | $153 |

| grúas | | | | |
|---|---|---|---|---|
| Ajustes en el precio de las partidas 2 y 10 de la línea 28-04 | $430,457 | $705,789 | Rechazada | |
| Ajustes en el precio de la partida 10 de la línea 28-02 | $21,449 | $17,709 | $21,449 | $17,709 |
| Total | $453,167 | $1,858,651 | $22,710 | $35,142 |

VII. El co-árbitro, licenciado Darío Oscós Coria, emitió voto particular para disentir de la opinión de la mayoría con relación a la decisión tomada por el Tribunal Arbitral respecto a las Controversias 36 (malos tiempos) 34 y 35 (retrasos en el inicio de los trabajos con embarcaciones) por considerar que i) se infringió el pacto de las partes en el sentido que el tribunal arbitral únicamente podía decidir el asunto de conformidad con las leyes federales de México, sin embargo, haciendo caso omiso de ello, en algunos aspectos el tribunal arbitral resolvió en equidad; ii) el Tribunal Arbitral excedió el acuerdo de arbitraje; y, iii) por que se violentaron las condiciones contractuales en contravención al artículo 70 de la LAOP, y al artículo 14 de la Constitución Política Mexicana.

Por otro lado, el árbitro disidente, Licenciado Darío Oscós Coria, disintió sobre la condena al pago de gastos financieros, por no haberse acreditado los requisitos legales y contractuales para su causación; e igualmente de la condena al pago de los gastos incurridos en el arbitraje, por la improcedencia de las reclamaciones mencionadas.

VIII. PEP considera que el Laudo Final emitido está afectado de nulidad por encontrarnos frente a diversas causales contenidas en el artículo 1457 del Código de Comercio, mismas que serán expresadas en el capítulo de hechos de la presente demanda.

# HECHOS

## I. Causas de Nulidad del Laudo Final con relación a la decisión de la Controversia Técnica 36: Malos tiempos en trabajos de la Castoro 10 y del Bar Protector.

1.-COMMISA reclamo de PEP una compensación por los retrasos supuestamente sufridos por COMMISA como consecuencia de la prórroga del plazo de vigencia del Contrato relativo al Proyecto IPC-28. En el contrato original se prevea un plazo original 528 días, mismo que fue prorrogado a 1322 días. COMMISA alegó que esta prórroga la obligó a trabajar bajo condiciones climáticas mucho menos favorables que aquéllas que tomó en consideración para efectos de su propuesta para la integración de los precios unitarios en el proceso de licitación del Contrato IPC-28.

2.- PEP contestó que esta reclamación era improcedente, así como que tal reclamación no podía ser materia de arbitraje. No obstante la objeción de PEP, la decisión del Tribunal Arbitral fue estudiar la misma y condenar parcialmente a PEP por este concepto, y derivado delo anterior, afectando con ello de nulidad el Laudo Arbitral, por las siguientes razones:

# PRIMERA

3.- La decisión del Tribunal Arbitral, declarando procedente la pretensión de COMMISA contenida en la llamada Controversia Técnica 36, denominada "*Malos tiempos que afectaron a los trabajos de la Castoro 10 y del Bar Protector*" (la



Castoro 10 y el Bar Protector son dos embarcaciones con las que COMMISA realizó los trabajos), y condenando a PEP a pagar a COMMISA la cantidad de USD $22,038,954.00, (como consta en el capítulo VII.2, páginas 51 a 60 del Laudo Final) es nula por ser contraria a disposiciones del orden público mexicano, específicamente las contenidas en los artículos 126 y 134 de la Constitución Política Federal; artículo 70 de la LAOP; artículo 44 fracción III del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público Federal, y artículo 66, fracción III del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria.

4.- El artículo 126 de la Constitución Política Federal establece:

> "No podrá hacerse pago alguno que no esté comprendido en el presupuesto o determinado por ley posterior".

5.- Por su parte, el artículo 134 de la Constitución Política Federal establece en su penúltimo párrafo que

> "El manejo de los recursos económicos federales se sujetará a las bases de este artículo"

6.- De conformidad con lo establecido en los artículos anteriormente transcritos, es claro que el manejo de los recursos económicos federales, y el pago de obligaciones con cargo a dichos recursos económicos federales, es una cuestión constitucional y por tanto, de orden público mexicano.

7.- Estos principios básicos son reflejados en diversos ordenamientos legales que están relacionados con la presupuestación y ejecución del gasto público federal, entre ellos, la LAOP, que en su artículo 1 establece:

> "Artículo 1.- La presente Ley es de orden público e interés social y tiene por objeto

> regular las acciones relativas a la planeación,
> programación, **presupuestación, gasto,
> ejecución,** conservación, mantenimiento y
> control de las adquisiciones y arrendamientos
> de bienes muebles; la prestación de servicios
> de cualquier naturaleza; así como **de la obra
> pública** y los servicios relacionados con la
> misma, **que contraten**:
> I. .......
> V. **Los organismos descentralizados**, y
> VI. .......".

8.- Por otro lado, el artículo 39 del Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, aplicable a la relación jurídica constituida por el Contrato de Obra Pública, establece:

> "**Artículo 39.-** El ejercicio del gasto público
> federal comprenderá el manejo y aplicación
> que de los recursos realicen las entidades,
> para dar cumplimiento a los objetivos y metas
> de los programas contenidos en sus
> presupuestos aprobados".

9.- El artículo 2 de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, en su fracción VI, define como entidad a los organismos públicos descentralizados, como lo es PEP.

10.- De lo anterior se puede concluir que todo gasto y ejecución de una obra pública, realizado por organismos descentralizados como lo es PEP, es de orden público mexicano por referirse al manejo de recursos federales, y al pago de obligaciones con relación a los recursos federales presupuestados.

11.- En consecuencia, las obligaciones a cargo del presupuesto federal deben ser explícitas, sobre todo aquéllas que deriven de contratos de obra pública, <u>no pudiéndose generar obligaciones en un contrato eminentemente administrativo, por analogía o mayoría de razón, o realizando interpretaciones de derecho civil</u>. De la misma manera, todas las

modificaciones a los contratos de obra pública que generen nuevas obligaciones a
ejecutarse contra recursos federales, deben ser explícitas, tal como se desprende
del artículo 70 de la LAOP, que establece:

> *"Artículo 70.- Las dependencias y entidades*
> *podrán, dentro del programa de inversiones*
> *aprobado, bajo su responsabilidad y por*
> *razones fundadas y explícitas, modificar los*
> *contratos de obra pública mediante*
> *convenios, siempre y cuando éstos,*
> *considerados conjunta o separadamente, no*
> *rebasen el veinticinco por ciento del monto o*
> *del plazo pactados en el contrato, ni*
> *impliquen variaciones sustanciales al*
> *proyecto original.*
>
> *Si las modificaciones exceden el porcentaje*
> *indicado o varían sustancialmente el*
> *proyecto, se deberá celebrar, por una sola*
> *vez, un convenio adicional entre las partes*
> *respecto de las nuevas condiciones, en los*
> *términos del artículo 29. Este convenio*
> *adicional deberá ser autorizado bajo la*
> *responsabilidad del titular de la dependencia*
> *o entidad o por el oficial mayor o su*
> *equivalente en entidades. Dichas*
> *modificaciones no podrán, en modo alguno,*
> *afectar las condiciones que se refieran a la*
> *naturaleza y características esenciales de la*
> *obra objeto del contrato original, ni*
> *convenirse para eludir en cualquier forma el*
> *cumplimiento de la Ley o de los Tratado...".*

12.- Una violación a lo dispuesto por el artículo 70 de la LAOP, es tan grave,
que el artículo 15 de la misma ley sanciona cualquier omisión al texto de la Ley,
con la nulidad absoluta del acto, privando al mismo de surtir efecto alguno o de ser
convalidado o confirmado por voluntad de las partes. En efecto, el mencionado
artículo 15 de la LAOP establece:

> *"Artículo 15.- .......*

> *Los actos, contratos y convenios que las
> dependencias y entidades realicen en
> contravención a lo dispuesto por esta Ley,
> serán nulos de pleno derecho".*

13.- Siguiendo con estos mismos lineamientos que son de ORDEN
PUBLICO, los artículos 44 fracción III del Reglamento de la Ley Federal de
Presupuesto, Contabilidad y Gasto Público Federal, y 66 fracción III del
Reglamento de la Ley Federal de Presupuesto y Responsabilidad  Hacendaria,
respectivamente disponen lo siguiente:

> *"Artículo 44.- Las entidades deberán cuidar
> bajo su responsabilidad, que los pagos que
> se efectúen con cargo a sus presupuestos
> aprobados se realicen con sujeción a los
> siguientes requisitos:*
> *I. ........*
> *III. Que se encuentren debidamente
> justificados y comprobados con los
> documentos originales respectivos,
> entendiéndose por justificantes las
> disposiciones y documentos legales que
> determinen la obligación de hacer un pago y,
> por comprobantes, los documentos que
> demuestren la entrega de las sumas de
> dinero correspondientes".*

> *"Artículo 66. Los pagos con cargo al
> Presupuesto de Egresos se realizarán por las
> dependencias a través de la Tesorería. Los
> pagos que realicen las entidades se
> efectuarán por conducto de sus propias
> tesorerías, llevando los registros
> presupuestarios correspondientes en sus
> respectivos flujos de efectivo.*

> *Las dependencias, en el ejercicio de sus
> erogaciones, adicionalmente deberán:*
> *I. ........*
> *III. Que se encuentren debidamente
> justificados y comprobados con los
> documentos originales respectivos,
> entendiéndose por justificantes las*

> *disposiciones y documentos legales que determinen la obligación de hacer un pago y, por comprobantes, los documentos que demuestren la entrega de las sumas de dinero correspondientes....".*

**De estos dos último artículos citados se desprende que todo pago con cargo al erario federal debe estar contemplado en:**

i)      **Una disposición legal; o**

ii)     **Un documento legal.**

**Además, dicha obligación deber ser explícita o clara, no implícita o deducida por analogía, mayoría de razón, o supuestamente determinada por la *"equidad"*, como se desprende de toda la exposición legal precedente.**

14.- La lógica de lo anterior se reduce a que la formalización de las obligaciones permite su presupuestación, administración y control, y permite cumplir con el mandato del artículo 126 constitucional que permite hacer pagos con cargo a recursos federales, sólo cuando estén presupuestados.

15.- En el presente caso, el Tribunal Arbitral ha condenado a PEP a pagar a COMMISA, con cargo a recursos federales como corresponde a toda obra pública, la cantidad de USD $22,038,954.00, derivada de suspensiones a la ejecución de los trabajos objeto del contrato de obra pública referido, a causa de condiciones climáticas adversas o malos tiempos, considerados contractual y legalmente como eventos de caso fortuito o fuerza mayor, sin que dicha condena tenga una justificación legal (plasmada en una ley) o contractual.

16.- Es un principio de derecho civil que nadie está obligado al caso fortuito o a la fuerza mayor, a menos que se haya convenido expresamente. El Código Civil Federal establece:

24

> *"Artículo 1847. No podrá hacerse efectiva la pena cuando el obligado a ella no haya podido cumplir el contrato por hecho del acreedor, caso fortuito o fuerza insuperable".*

17.- En el Contrato de Obra Pública a Precios Unitarios y Tiempo Determinado número PEP-O-IT-136/98 (IPC-28), las partes pactaron que el caso fortuito traería como consecuencia una prórroga del tiempo para terminar los trabajos, en la misma medida en que dichos trabajos hubieran sido suspendidos por caso fortuito, <u>sin que se hubiere pactado compensación económica</u> <u>alguna, es decir, pagos con cargo al erario federal por las suspensiones a la</u> <u>ejecución de los trabajos causadas por condiciones climáticas adversas o</u> <u>malos tiempos, considerados como eventos de caso fortuito o fuerza mayor.</u> En efecto, PEP y COMMISA pactamos en la clausula 12.1 del Contrato:

> *"12.1 **Alcance del Caso Fortuito o Fuerza Mayor.** ....... Tratándose de trabajos costa afuera, las tormentas únicamente serán consideradas como caso fortuito o fuerza mayor cuando así lo determinen en forma conjunta el supervisor de PEP y el representante autorizado del Contratista, asentando en bitácora que las actividades se suspenden por caso fortuito o fuerza mayor; en caso de controversia, se estará a lo dispuesto por la Capitanía del Puerto más cercano al Sitio de los Trabajos, que hubiere declarado oficialmente el cierre de tal puerto".*

> *"12.4 **Efectos del Caso Fortuito o de Fuerza Mayor.** A menos que el Caso Fortuito o Fuerza Mayor impida total y definitivamente o en forma considerable el cumplimiento de este Contrato, en cuyo caso se estará a lo establecido en la Cláusula 10.2.4, el Caso Fortuito o Fuerza Mayor sólo actuará para diferir el cumplimiento de las obligaciones pactadas en este Contrato y no para excusar el incumplimiento".*

25

18.- Por otro lado, y en el mismo sentido, PEP y COMMISA, pactamos expresamente en la cláusula 23.2 del Contrato de Obra Pública, que PEP no sería responsable de ningún daño contractual o legal, excepto en los casos específicamente previstos en este Contrato. Dicha disposición contractual señala:

> "23.2 ***Controversias Técnicas.*** *El Contratista no tendrá derecho a efectuar ningún reclamo y PEP no será responsable por daños legales (incluyendo negligencia) o contractuales ante el Contratista, sus proveedores secundarios o subcontratistas, excepto en los casos específicamente previstos en este Contrato....".*

En ese sentido, tenemos una Cláusula expresa en el Contrato que especifica que en caso de suspensiones a los trabajos por Caso Fortuito o Fuerza Mayor (tormentas), PEP sólo tendrá obligación de diferir la fecha de terminación de los trabajos. Por otro lado, la Cláusula 23.2 del Contrato de Obra Pública celebrado entre COMMISA y PEP, arriba citada, excluye cualquier obligación implícita de pago por caso fortuito o fuerza mayor, reafirmándose que todas las obligaciones de pago deben haberse acordado expresamente, en concordancia con las leyes presupuestarias antes citadas.

Esta cláusula tiene un doble efecto: por un lado constituye para PEP una excluyente de responsabilidad, es decir, PEP no responde económicamente por malos tiempos porque no está pactada esa responsabilidad en el contrato; y por otro lado se encuentra fuera del ámbito del arbitraje cualquier disputa relacionada con este tema, puesto que al no haber sido una prestación económica pactada contractualmente, su pago o cualquier disputa, reclamo o controversia que pretenda su pago, no puede ser materia del arbitraje, toda vez que la responsabilidad a cargo de PEP está excluida.

19.- Por otro lado, en los 16 Convenios Modificatorios celebrados entre las partes, las partes jamás modificamos los derechos y las obligaciones, así como las liberaciones de responsabilidad contenidas en la Cláusula 12 del Contrato, relativa

a Caso Fortuito o Fuerza Mayor. Al contrario, en cada uno de los Convenios Modificatorios las partes expresamente reiteramos, que cada una de las cláusulas del contrato original, subsistían sin variación alguna, en cuanto no hubieren sido modificadas expresamente. Esto es, en razón de que en cada extensión del contrato, COMMISA se obligó a trabajar bajo la cláusula que exime de pago a PEP por suspensiones causadas por malos tiempos, es evidente que dicha exención opera durante el plazo original y las prórrogas que en dichos convenios se acordaron.

20.- A pesar de lo expuesto en hechos anteriores, el Tribunal Arbitral, *"llega a la conclusión de que los precios unitarios pactados en el Contrato se refieren a la realización del trabajo en los meses previstos en el programa original de trabajo; dichos precios no cubren la realización de trabajos en otras fechas, en las que el riesgo de malos tiempos sea significativamente superior o inferior"* (párrafo 220, página 54 y párrafo 228, página 55 del Laudo Final).

21.- El Tribunal Arbitral consideró, sin fundamentación legal, que todos aquéllos trabajos no incluidos en el programa, es decir, aquellos trabajos realizados en una época diferente a la prevista originalmente, *constituye un trabajo extraordinario, que tiene que ser satisfecho como tal de acuerdo con la Cláusula 6.1 del Contrato"* (párrafos 222 y 223, página 54 del Laudo Final).

22.- La anterior consideración es falsa, la cláusula 1 del Contrato de Obra Pública define lo que es proyecto y lo que es programa. Cuando en el Contrato se utiliza la palabra **Proyecto** se refiere a la modernización y optimización del Campo Cantarell, mismo que se encuentra ubicado en la Bahía de Campeche, México. El **Programa de Trabajo** se refiere al diagrama de red de procedencia que deberá ser elaborada por el Contratista (COMMISA) de conformidad con el numeral 3 *Programa de Trabajo* del Anexo B-2[1]. Por trabajo se entiende toda actividad

---

[1] Según el numeral 3 del Anexo B-2, el programa de trabajo deberá consistir en un diagrama de red de procedencia que utilice el método de camino crítico  para mostrar cada actividad esencial e individual, en forma secuencial y lógica, y en el cual se debería indicar la duración y secuencia lógica de actividades, en

27

explícita e implícita que el Contratista debe realizar bajo el Contrato para cumplir con la ejecución de la obra.

Derivado de lo anterior, es claro que un trabajo realizado fuera de la época originalmente pactada no es un trabajo extraordinario porque el programa de trabajo no es un calendario de actividades, sino el ordenamiento lógico y secuencial de los trabajos o red de actividades: es decir, qué actividades comprende la obra, y cuáles se realizarán primero y cuales después, atendiendo a su dependencia. En otras palabras, si el trabajo se encuentra listado en la red de procedencia de actividades, aunque se realice en época distinta a la pactada originalmente sigue siendo un trabajo original, y es improcedente modificar los precios en los términos de la cláusula 6.1 del Contrato, porque ésta sólo se refiere a trabajos extraordinarios.

Es pertinente mencionar que los malos tiempos no son actividades explícitas ni implícitas de la obra, y sobre todo porque COMMISA de ninguna manera puede programar los malos tiempos. Por eso, cuando suceden, y si afectan la terminación del trabajo, se prorroga la fecha de terminación de los mismos[2].

23.- El Tribunal Arbitral dicta su laudo arbitral en violación a principios de orden público, como lo es, la soberanía constitucional, toda vez que no funda ni motiva su resolución, altera la regulación legal de orden público para el manejo de recursos públicos, y el pago de obligaciones con cargo al erario federal, por las razones siguientes: i) no cita una disposición legal mexicana que fundamente su decisión; ii) no cita una cláusula contractual expresa de los convenios que diga que PEP responde económicamente por los malos tiempos, a partir del vencimiento del plazo original del contrato.

---

número de días, así como la dependencia entre las mismas, incluyendo actividades fuera del sitio de los trabajos.
[2] Esto también indica la falta de sentido común de Tribunal Arbitral, aún dentro de las condiciones originales del contrato, era posible que COMMISA realizara trabajos fuera del término original, porque debido a los malos tiempos era posible la prórroga a la fecha de terminación de los Trabajos.

Es claro que el Tribunal Arbitral omite justificar o fundar debidamente la obligación de pago a cargo de PEP, ignorando una cláusula expresa en contrario pactada por las partes, lo que es ilegal tratándose de pagos con cargo al erario público. En el párrafo 228, página 55, del Laudo Final, el Tribunal Arbitral pretende fundar su resolución, pero en realidad no cita disposición contractual alguna en la cual exista la obligación por parte de PEP de obligarse al caso fortuito, ni durante la vigencia original del contrato ni una vez que se haya cumplido el plazo originalmente contratado.

En efecto, el tribunal arbitral expresa:

> 228. En resumen, en la Orden de Cambio núm. 56 y en el Convenio Modificatorio núm. 12, PEP ha reconocido:
>
> -      que los precios unitarios ofertados por Commisa e incluidos en el Contrato incluía implícitamente una previsión de que, por cada 100 días trabajados, la Castoro 10 sufriría 8,45 días de malos tiempos y el Bar Protector 5,02;
> -      que si se encargaban trabajos a realizar en períodos con mayores probabilidades de malos tiempos que las previstas en el programa original, el impacto de los malos tiempos se dividía: el Contratista asumía los días incluidos en sus precios unitarios, y el resto de los días se asumían por PEP, que los determinaba mediante observación directa y pagaba por ellos la tarifa de espera correspondiente.

Es preciso decir también, que no basta un acuerdo expreso para generar una obligación de pago con cargo al presupuesto, que se insiste, en este caso no la hay, sino que dicho acuerdo debe estar documentado y revestir las formalidades expresas exigidas por la ley.

24.- El Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Público Federal define lo que es un documento justificante de pago. Este Reglamento estuvo vigente durante la vigencia del contrato de obra pública y su ejecución, por lo que claramente es el referente para determinar si existe o no obligación de pago con cargo al presupuesto federal. Los artículos 69 y 70 del Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Publico Federal establecen:

> "**Artículo 69.-** _Para el ejercicio del gasto público federal por concepto de_ adquisiciones, servicios generales y _obras, las entidades formalizarán los compromisos correspondientes mediante la adjudicación, expedición y autorización de contratos de obras públicas, pedidos para la adquisición_ de bienes y servicios, y convenios y presupuestos en general, _así como la revalidación de éstos, los que deberán reunir los mismos requisitos que los pedidos y contratos para que tengan el carácter de justificante._
>
> En el caso de adquisiciones y obras públicas las entidades deberán contar con los programas y presupuestos de adquisiciones y obras respectivos, de conformidad con las disposiciones legales y reglamentarias aplicables".
>
> "Artículo 70.- Para los pedidos y contratos a que se refiere el artículo anterior tengan carácter de documentos justificantes, deberán sujetarse a lo siguiente:
> I. En ningún caso se aceptará la estipulación de penas convencionales ni intereses moratorios a cargo de las entidades:
> Tratándose de cargas fiscales, no deberá autorizarse el pago de ninguna de ellas a excepción de los impuestos de importación y de aquellos que por disposición legal sean causantes o acepten su traslación;
> II. Todo contrato que deba cubrirse con recursos de crédito interno o externo requerirá la autorización previa y por escrito

> *de la Secretaría. La tramitación del*
> *financiamiento de dichos créditos se hará por*
> *conducto o con la autorización de la*
> *Secretaría de Hacienda y Crédito Público;*
> *III. Deberán señalar con precisión su*
> *vigencia, importe total, el plazo de*
> *terminación o entrega de los servicios o*
> *bienes contratados, así como la fecha y*
> *condiciones para su pago. En los casos que*
> *por la naturaleza del contrato no se pueda*
> *señalar un importe determinado, se deberán*
> *estipular las bases para fijarlos.*
> *IV. En los casos procedentes, que exista la*
> *garantía correspondiente, y*
> *V. Observar lo dispuesto en el artículo 42 de*
> *este reglamento".*

25.- La condena realizada por el Tribunal arbitral no está debidamente fundada, puesto que no señala ley o disposición contractual alguna en la cual se pueda apreciar que PEP se haya obligado a pagar por malos tiempos, afectando de esta manera el interés público. La necesidad de presupuestar, administrar y controlar la obra pública, y las obligaciones de pago que de ella deriven, son materia del orden público, toda vez que tienen su fundamento en la Constitución Política de los Estados Unidos Mexicanos. Por tal razón la decisión del Tribunal violenta los artículos 126 y 134 de la Constitución Mexicana, infringe en consecuencia el sistema jurídico mexicano, y el orden público que éste impone, acarreando la nulidad del laudo.

En consecuencia, el análisis arbitral sobre la cuantificación de esta controversia, también es ilegal y contraría el orden público.

26.- Nuestros tribunales federales confirman la posición de PEP al establecer lo siguiente:

> No. Registro: 179,575
> Tesis aislada
> Materia(s): Administrativa
> Novena Época

# EXHIBIT 1
Part 2

Instancia: Segunda Sala
Fuente: Semanario Judicial de la Federación
y su Gaceta
XXI, Enero de 2005
Tesis: 2a. IX/2005
Página: 605
**GASTO PÚBLICO.**
Del artículo 31, fracción IV, de la Constitución
Política de los Estados Unidos Mexicanos,
que establece la obligación de los mexicanos
de "contribuir para los gastos públicos, así de
la Federación, como del Distrito Federal o del
Estado y Municipio en que residan, de la
manera proporcional y equitativa que
dispongan las leyes", en relación con los
artículos 25 y 28 de la propia Constitución,
así como de las opiniones doctrinarias, se
infiere que <u>el concepto de "gasto público",</u>
<u>tiene un sentido social y un alcance de</u>
<u>interés colectivo, por cuanto el importe de</u>
<u>las contribuciones recaudadas se destina</u>
<u>a la satisfacción de las necesidades</u>
<u>colectivas o sociales, o a los servicios</u>
<u>públicos;</u> así, el concepto material de "gasto
público" estriba en el destino de la
recaudación que el Estado debe garantizar
en beneficio de la colectividad.
Amparo en revisión 1305/2004. Jorge
Ernesto Calderón Durán. 19 de noviembre de
2004. Cinco votos. Ponente: Juan Díaz
Romero. Secretario: César de Jesús Molina
Suárez.

No. Registro: 336,366
Tesis aislada
Materia(s): Administrativa
Quinta Época
Instancia: Segunda Sala
Fuente: Semanario Judicial de la Federación
XL
Tesis:
Página: 677

**CONTRATOS ADMINISTRATIVOS.**
<u>Cualesquiera que sean las estipulaciones</u>
<u>que hagan dos contratantes, éstas no</u>

pueden subsistir cuando son contrarias a una
ley de orden público y mucho menos cuando
están en pugna con los preceptos
terminantes de la Constitución General y
como el artículo 28 de la misma dice que :
"en los Estados Unidos Mexicanos, no habrá
monopolios ni estancos de ninguna clase; ni
exención de impuestos.....", si en un contrato
administrativo se estipuló la exención de
impuestos, para determinada industria, la
cláusula relativa pudo subsistir hasta antes
de que fuera promulgada la Constitución de
1917; pero a raíz de esa promulgación, su
existencia es imposible y las autoridades
contratantes no cometen violación alguna al
desconocer la validez de la cláusula, pues la
Suprema Corte de Justicia ha establecido
que tratándose de actos nulos de pleno
derecho, la autoridad administrativa puede
revocarlos por sí y ante sí, sin necesidad de
acudir a los tribunales.
Amparo administrativo en revisión 433/25.
Compañía Hidroeléctrica e Irrigadora del
Chapala, S.A. 23 de enero de 1934. Mayoría
de tres votos. Disidentes: Daniel V. Valencia
y Luis M. Calderón. La publicación no
menciona el nombre del ponente.


No. Registro: 331,037
Tesis aislada
Materia(s): Administrativa
Quinta Época
Instancia: Segunda Sala
Fuente: Semanario Judicial de la Federación
LVII
Tesis:
Página: 220

**CONTRATOS ADMINISTRATIVOS,
APLICABILIDAD DEL CODIGO CIVIL, EN
LOS.**
No siempre son de aplicación forzosa los
preceptos del Código Civil, tratándose
cuestiones administrativas, cuando de
preferencia a toda legislación debe acatarse
un precepto de la Constitución.

Amparo administrativo en revisión 3977/36.
Gavito Hermanos y Compañia. 8 de julio de
1938. Unanimidad de cinco votos. Relator:
José María Truchuelo.


No. Registro: 189,995
Tesis aislada
Materia(s): Administrativa, Civil
Novena Época
Instancia: Pleno
Fuente: Semanario Judicial de la Federación
y su Gaceta
XIII, Abril de 2001
Tesis: P. IX/2001
Página: 324

**CONTRATOS ADMINISTRATIVOS. SE
DISTINGUEN POR SU FINALIDAD DE
ORDEN PÚBLICO Y POR EL RÉGIMEN
EXORBITANTE DEL DERECHO CIVIL A
QUE ESTÁN SUJETOS.**
La naturaleza administrativa de un contrato
celebrado entre un órgano estatal y un
particular puede válidamente deducirse de la
finalidad de orden público que persigue,
identificada también como utilidad pública o
utilidad social, así como del régimen
exorbitante del derecho civil a que está
sujeto. De ello se infiere que los contratos
celebrados por un órgano estatal con los
particulares están regidos por el derecho
privado cuando su objeto no esté vinculado
estrecha y necesariamente con el
cumplimiento de las atribuciones públicas del
Estado y, por lo mismo, la satisfacción de las
necesidades colectivas no se perjudique
porque en aquellos actos el Estado no haga
uso de los medios que le autoriza su régimen
especial. Por el contrario, cuando el objeto o
la finalidad del contrato estén íntimamente
vinculados al cumplimiento de las
atribuciones estatales, de tal manera que la
satisfacción de las necesidades colectivas no
sea indiferente a la forma de ejecución de las
obligaciones contractuales, entonces se
estará en presencia de un contrato

administrativo, siendo válido estipular cláusulas exorbitantes que, desde la óptica del derecho privado, pudieran resultar nulas, pero que en el campo administrativo no lo son, en atención a la necesidad de asegurar el funcionamiento regular y continuo del servicio público.
Juicio ordinario civil federal 1/2000. Jesús Guillermo Puente Cutiño. 20 de febrero de 2001. Unanimidad de diez votos. Ausente: Genaro David Góngora Pimentel. Ponente: Juan Díaz Romero. Secretario: Silverio Rodríguez Carrillo.
El Tribunal Pleno, en su sesión privada celebrada hoy veintinueve de marzo en curso, aprobó, con el número IX/2001, la tesis aislada que antecede; y determinó que la votación es idónea para integrar tesis jurisprudencial. México, Distrito Federal, a veintinueve de marzo de dos mil uno.

## **SEGUNDA**

27.- La decisión del Tribunal Arbitral, declarando procedente la pretensión de COMMISA contenida en la "Controversia Técnica" 36, denominada *"Malos tiempos que afectaron a los trabajos de la Castoro 10 y del Bar Protector"*, y condenando a PEP a pagar a COMMISA la cantidad de USD $22,038,954.00, (capítulo VII.2, páginas 51 a 60 del Laudo Final) encuadra dentro de los supuestos de nulidad contemplados en el artículo 1457, fracción I, inciso c), y fracción II, del Código de Comercio, que dispone la nulidad del Laudo cuando el mismo contiene decisiones que exceden los términos del acuerdo de arbitraje o es contrario al orden público.

28.- Como ya se explicó anteriormente, el Arbitraje entre PEP y COMMISA es un arbitraje que debe de ser resuelto en estricto derecho, es decir con base en la ley y no en principios de equidad o justicia, lo que no sucedió en nuestro caso. Además, las partes y el tribunal arbitral están obligadas a observar el principio de

*pacta sunt servanda*, previsto en el artículo 1796 del Código Civil Federal, que dispone:

> "**Artículo 1796.-** Los contratos se perfeccionan por el mero consentimiento; excepto en aquellos que deben revestir una forma establecida por la Ley. Desde que se perfeccionan, obligan a los contratantes no sólo al cumplimiento de lo expresamente pactado, sino también a las consecuencias que, según su naturaleza, son conformes a la buena fe, al uso o a la ley".

Por ello, el Tribunal Arbitral carece de facultades para moderar o alterar las estipulaciones contractuales celebradas entre PEP y COMMISA, en equidad o como amigable componedor. En ese sentido, el texto expreso del Contrato Original debe ser respetado, independientemente del cambio climático acaecido durante la vida del contrato.

29.- Nuestros tribunales federales han confirmado la postura de PEP al establecer:

> No. Registro: 186,972
> **Jurisprudencia**
> Materia(s): Civil
> Novena Época
> Instancia: Tribunales Colegiados de Circuito
> Fuente: Semanario Judicial de la Federación
> y su Gaceta
> XV, Mayo de 2002
> Tesis: I.8o.C. J/14
> Página: 951
>
> **CONTRATOS. LOS LEGALMENTE CELEBRADOS DEBEN SER FIELMENTE CUMPLIDOS, NO OBSTANTE QUE SOBREVENGAN ACONTECIMIENTOS FUTUROS IMPREVISIBLES QUE PUDIERAN ALTERAR EL CUMPLIMIENTO DE LA OBLIGACIÓN, DE ACUERDO A LAS**

**CONDICIONES QUE PRIVABAN AL CONCERTARSE AQUÉLLA.**

De acuerdo al contenido de los artículos 1796 y 1797 del Código Civil para el Distrito Federal, que vienen a complementar el sistema de eficacia de los contratos a partir de su perfeccionamiento no adoptan la teoría de la imprevisión o cláusula rebus sic stantibus derivada de los acontecimientos imprevistos que pudieran modificar las condiciones originales en que se estableció un contrato sino, en todo caso, el sistema seguido en el Código Civil referido adopta en forma genérica la tesis pacta sunt servanda, lo que significa que debe estarse a lo pactado entre las partes, es decir, que los contratos legalmente celebrados deben ser fielmente cumplidos, no obstante que sobrevengan acontecimientos futuros imprevisibles que pudieran alterar el cumplimiento de la obligación de acuerdo a las condiciones que privaban al concertarse aquélla, sin que corresponda al juzgador modificar las condiciones de los contratos.

OCTAVO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.

Amparo directo 246/98. Martha Irene Bustos González. 12 de noviembre de 1998. Unanimidad de votos. Ponente: Carlos Arellano Hobelsberger. Secretario: José David Cisneros Alcaraz .

Amparo directo 1284/98. Industrias Cormen, S.A. de C.V. 11 de diciembre de 1998. Unanimidad de votos. Ponente: Carlos Arellano Hobelsberger. Secretario: José David Cisneros Alcaraz.

Amparo directo 29/2001. Gustavo Parrilla Corzas. 22 de junio de 2001. Unanimidad de votos. Ponente: Patricio González-Loyola Pérez. Secretario: Enrique Villanueva Chávez.

Amparo directo 427/2001. Dachi, S.A. de C.V. 22 de junio de 2001. Unanimidad de votos. Ponente: Carlos Arellano Hobelsberger. Secretario: Dante Adrián Camarillo Palafox.

Amparo directo 2/2002. Restaurante Villa
Reforma, S.A. de C.V. y otros. 25 de marzo
de 2002. Unanimidad de votos. Ponente:
Patricio González-Loyola Pérez. Secretario:
Enrique Villanueva Chávez.

30.- En el presente caso, el tribunal arbitral sin fundamento jurídico alguno
concede a COMMISA el derecho a recibir pagos por las suspensiones a los
trabajos causados por malos tiempos, en contravención a lo pactado por las partes
en el Contrato de Obra Pública, cuya Cláusula 12.4 señala:

> "12.4 **Efectos del Caso Fortuito o de
> Fuerza Mayor.** A menos que el Caso Fortuito
> o Fuerza Mayor impida total y definitivamente
> o en forma considerable el cumplimiento de
> este Contrato, en cuyo caso se estará a lo
> establecido en la Cláusula 10.2.4, el Caso
> Fortuito o Fuerza Mayor sólo actuará para
> diferir el cumplimiento de las obligaciones
> pactadas en este Contrato y no para excusar
> el incumplimiento".

(pero de ninguna manera el caso fortuito influye para incrementar los
precios pactados, como lo pretende el tribunal arbitral)

31.- El laudo arbitral cuya nulidad se demanda, viola además lo dispuesto
por el artículo 70 de la LAOP, que establece:

> "**Artículo 70.-** Las dependencias y entidades
> podrán, dentro del programa de inversiones
> aprobado, bajo su responsabilidad y por
> razones fundadas y explícitas, modificar los
> contratos de obra pública mediante
> convenios, siempre y cuando éstos,
> considerados conjunta o separadamente, no
> rebasen el veinticinco por ciento del monto o
> del plazo pactados en el contrato, ni
> impliquen variaciones sustanciales al
> proyecto original.

> *Si las modificaciones exceden el porcentaje indicado o varían sustancialmente el proyecto, se deberá celebrar, por una sola vez, un convenio adicional entre las partes respecto de las nuevas condiciones, en los términos del artículo 29. Este convenio adicional deberá ser autorizado bajo la responsabilidad del titular de la dependencia o entidad o por el oficial mayor o su equivalente en entidades. Dichas modificaciones no podrán, en modo alguno, afectar las condiciones que se refieran a la naturaleza y características esenciales de la obra objeto del contrato original, ni convenirse para eludir en cualquier forma el cumplimiento de la Ley o de los Tratado....".*

32.- Toda vez que las partes jamás celebraron convenio modificatorio alguno para incrementar el precio del contrato por malos tiempos, o para documentar la obligación de pagar malos tiempos por la extensión del programa de trabajo, por tal razón, el Tribunal Arbitral carece de facultad legal para condenar a PEP al pago de los malos tiempos en trabajos de las embarcaciones Castoro 10 y Bar Protector.

33.- El Tribunal Arbitral al condenar a PEP al pago por malos tiempos viola lo pactado y excede el límite legal del 25% previsto en el artículo 70 invocado, pretendiendo modificar el contrato de obra y por ello resulta nulo el laudo arbitral.

34.- En efecto, el Tribunal Arbitral excede la materia de la controversia, pues en el arbitraje no se reclama la formalización de un convenio que fijara nuevas condiciones de trabajo, que diera pauta al pago de los malos tiempos. Por el contrario, la demandante reclama sólo su pago. Al reclamar COMMISA sólo su pago, el Tribunal Arbitral debió determinar su procedencia o improcedencia atendiendo a las condiciones del proyecto, fijadas por el contrato y a los 16 convenios modificatorios, que determinan únicamente en caso de malos tiempos, la prórroga a la fecha de terminación de los trabajos; y no alterar o modificar

39

primero las condiciones contractuales y luego declarar procedente el pago, porque con ello excedió el acuerdo de arbitraje, al no resolver en estricto derecho.

35.- El Tribunal Arbitral no puede de propia autoridad modificar los derechos y las obligaciones pactadas por las partes. El Tribunal Arbitral carece de facultades para modificar las condiciones contractuales.

36.- Vale decir también que la capacidad de PEP para modificar los contratos se encuentra reducida, de acuerdo a lo dispuesto por el artículo 70 de la LAOP, citado en párrafos precedentes, y atendiendo a lo dispuesto en el artículo 29 del mismo ordenamiento, que se transcribe a continuación:

> "**Artículo 29.-** *Las dependencias y entidades podrán convocar, adjudicar o llevar a cabo adquisiciones, arrendamientos y servicios, así como obra pública, solamente cuando se cuente con saldo disponible, dentro de su presupuesto aprobado, en la partida correspondiente. En casos excepcionales y previa autorización de la Secretaría las dependencias y entidades podrán convocar sin contar con saldo disponible en su presupuesto.*
>
> *Tratándose de obra pública, además se requerirá contar con los estudios y proyectos, las normas y especificaciones de construcción, el programa de ejecución y, en su caso, el programa de suministro.*
>
> *Los servidores públicos que autoricen actos en contravención a lo dispuesto en este artículo, se harán acreedores a las sanciones que resulten aplicables*".

En otras palabras, por disposición legal es imposible jurídicamente que la conducta de PEP o de sus funcionarios, al ejecutar un contrato, puedan generar obligaciones distintas a las pactadas, para ello se tiene que manifestar esa

voluntad de manera expresa, y previo cumplimiento del procedimiento de modificación contractual previsto en la ley.

37.- En el presente caso, la decisión del Tribunal Arbitral viola también disposiciones de planeación, presupuestación y ejercicio de gasto público federal, que son cuestiones de orden público, al estar dispuestas por los artículos 126 y 134 de la Constitución Política Federal, acarreando por esa razón a nulidad del laudo arbitral.

En consecuencia, el análisis realizado por el tribunal arbitral sobre la cuantificación de esta controversia, también es ilegal y contraría el orden público y por ello resulta nulo el laudo arbitral.

## **TERCERA**

38.- El laudo emitido por el tribunal arbitral, declarando procedente la pretensión de COMMISA contenida en la Controversia Técnica 36, denominada *"Malos tiempos que afectaron a los trabajos de la Castoro 10 y del Bar Protector"*, y condenando a PEP a pagar a COMMISA la cantidad de USD $22,038,954.00 (capítulo VII.2, páginas 51 a 60 del Laudo Final), encuadra dentro de los supuestos de nulidad contemplados en el artículo 1457, fracción I, inciso c), del Código de Comercio, que dispone la nulidad del Laudo cuando el mismo "... *se refiera a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje".*

39.- En el acuerdo de arbitraje celebrado entre PEP y COMMISA plasmado en el contrato PEP-O-IT-136/98, se pactó que sólo serían materia de arbitraje aquéllas disputas o reclamaciones que fueran formalizadas como Controversias Técnicas, como se demuestra a continuación:



"23.2  **_Controversias  Técnicas._**  El
Contratista  no  tendrá  derecho  a  efectuar
ningún  reclamo  y  PEP  no  será  responsable
por  daños  legales  (incluyendo  negligencia)  o
contractuales  ante  el  Contratista,  sus
proveedores  secundarios  o  subcontratistas,
excepto  en  los  casos  específicamente
previstos  en  este  Contrato.

Para  efectos  de  esta  Cláusula  se  entenderá
por  Controversia  Técnica  toda  diferencia  que
surja  por  cualquier  reclamo  o  sea  atribuible  a
la  interpretación  o  ejecución  de  este
Contrato,  entre  el  Supervisor  y  el  Contratista,
en  relación  con  los  Anexos  Técnicos  del
Contrato  (A,  B,  B-1,  B-2,  B-3,  CEV,  DT,  DT-1,
DT-2.1,  DT-2.2,  DT-3,  DT-4,  E-2,  F-1  Y  F-2)

Si  por  cualquier  motivo  el  Supervisor  y  el
Contratista  no  coinciden  en  la  apreciación
para  resolver  un  reclamo  de  ajuste  derivado
de  una  Controversia  Técnica,  _el  Contratista
deberá  hacer  formal  dicha  Controversia
Técnica  por  escrito  al  Supervisor  y  solicitarle
la  determinación  correspondiente.  Este  tipo
de  solicitud  del  Contratista  deberá  ser
claramente  identificado  indicando  que  se
trata  de  una  Controversia  Técnica  sujeta  a
resolución  al  amparo  de  esta  Cláusula  23,
debiendo  contener  un  resumen  de  los  hechos
en  controversia  y  la  propuesta  del  Contratista
para  resolverlos._

...

"23.3  **_Arbitraje._**  Cualquier  controversia,
reclamación,  diferencia  o  disputa  que
sobrevenga  o  se  relacione  o  esté  vínculada
con  este  Contrato  o  el  incumplimiento  del
mismo  será  dirimida  finalmente  mediante
arbitraje  conducido  en  el  Distrito  Federal,
México,  de  acuerdo  con  las  Reglas  de
Conciliación  y  Arbitraje  de  la  Cámara
Internacional  de  Comercio  que  estén  en  vigor
en  ese  momento.  El  número  de  árbitros  será
de  tres  y  el  idioma  para  conducir  el  arbitraje
será  el  español.  **No  obstante  lo  anterior,**

> *cualquier controversia técnica deberá ser*
> *sometida previamente al procedimiento*
> *previsto en la Cláusula 23.2 y sólo en caso*
> *de que mediante dicho procedimiento no*
> *se logré un acuerdo entre las partes, éstas*
> *quedarán facultadas para acudir al*
> *recurso previsto en la Cláusula 23.3".*

De conformidad con las Cláusulas contractuales indicadas, las controversias tenían una naturaleza estrictamente formal, pues en primer término si el Supervisor y el Contratista no coincidían en la apreciación para resolver un reclamo de ajuste derivado de una Controversia Técnica, entonces el contratista tenía que plantearla por escrito, **especificando en el documento que se trataba de una controversia técnica,** proporcionando un resumen de los hechos que motivaban la reclamación y presentar una propuesta de solución.

40.- A pesar de lo pactado por las partes y a pesar de que COMMISA incumplió con las obligaciones contractuales relativas a las controversias técnicas, el tribunal arbitral, determinó en los párrafos 233 y 234 del laudo lo siguiente:

> *"232. PEP también alega que Commisa no*
> *manifestó esta situación durante la vida del*
> *Contrato. En opinión del Tribunal Arbitral, la*
> *prueba practicada demuestra que la anterior*
> *aseveración no se ajusta a la realidad.*
>
> *233. Desde el inicio de la reprogramación,*
> *Commisa dejó constancia de los posibles*
> *costos adicionales por el incrmento de los*
> *malos tiempos. En efecto, el 5 de marzo de*
> *1999 PEP le había pedido al Contratista los*
> *costos estimados de una posible*
> *reprogramación. Commisa contestó mediante*
> *carta de 15 de marzo de 1999, en la que dio*
> *unas cifras de 49M USD (ó de 28M USD,*
> *según las circunstancias). Commisa añadió:*
> *"Esto no incluye ningún tiempo adicional de*
> *espera por condiciones climatológicas,*
> *debido a la extensión del programa de*
> *trabajo."*

> *234. La mencionada carta prueba que, al menos desde marzo de 1999, Commisa esperaba ser remunerada por los malos tiempos adicionales que generara la extensión del programa de trabajo. Es cierto que durante el desarrollo del Contrato PEP únicamente reconoció el derecho a la remuneración en la Orden de Cambio núm. 56 y en el Convenio Modificatorio núm.12. Pero no existe indicio alguno de que Commisa renunciara a su reclamación, y cejara en su empeño de exigir lo que le correspondía cobrar. Buena prueba de ello es que cuando se firmó el Acta de Recepción Física Total de la obra, se hace referencia expresa a que existen aún reclamos pendientes de Commisa, y entre ellos se encuentran precisamente las "afectaciones por condiciones climatológicas (Castoro 10 y Bar Protector)".*

Las consideraciones del tribunal arbitral carecen de fundamentación y de motivación, al estimar la existencia de una formulación de una controversia técnica por parte de COMMISA, cuando es evidente que dicha mención no constituye una controversia técnica. Es más, en ese momento al que se refiere el tribunal arbitral, todavía no había disputa alguna al respecto.

De igual manera, el tribunal arbitral pretende justificar la condena que hizo en contra de PEP por concepto de malos tiempos, con consideraciones ilegales.

41.- Toda vez que COMMISA incumplió con el procedimiento de reclamación contractual establecido por las partes en el contrato, entonces era claro que el tribunal arbitral carecía de facultades para entrar al estudio de dicha reclamación, sin embargo el tribunal arbitral para subsanar dicha omisión de la contratista, recurre a la invocación de una carta de COMMISA del 15 marzo de 1999, cuando era claro que a esa fecha las embarcaciones Castoro 10 y Bar Protector todavía ni siquiera comenzaban a trabajar. Derivado de lo anterior, es lógico que no exista un reclamo de COMMISA derivado de malos tiempos, y por lo tanto dicha carta,

anterior al inicio de los trabajos, no puede suplir la formalidad de un reclamo en los términos en que fue pactado en el Contrato. Además, un reclamo en términos del contrato celebrado entre PEP y COMMISA, solamente podía surgir con motivo de la ejecución de los trabajos y no antes, como lo pretende ejemplificar e infundadamente justificar el tribunal arbitral.

42.- También el tribunal arbitral en su propósito de enmendar las omisiones de COMMISA respecto de la falta de observancia del procedimiento de reclamación (formulación de una controversia técnica), vuelve a incurrir en consideraciones infundadas e interpretaciones meramente subjetivas cuando manifiesta que: "...cuando se firmó el Acta de Recepción Física Total de la obra, se hace referencia expresa a que existen aún reclamos pendientes de Commisa, y entre ellos se encuentran precisamente las "afectaciones por condiciones climatológicas (Castoro 10 y Bar Protector). Lo manifestado por COMMISA en el Acta de Recepción Física Total, de ninguna forma puede considerarse como la observancia del procedimiento de reclamación establecido en la cláusula 23.2 del contrato celebrado entre PEP y COMMISA, pues COMMISA jamás manifestó haber presentado un reclamo ante el Supervisor de PEP, porque apenas se encontraba en elaboración, y mucho menos haber cumplido con todas las formalidades que el caso exigía. Con la finalidad de ser muy claros en la exposición de este punto es importante transcribir literalmente lo asentado por dicha contratista en la página 17 de la citada Acta de Recepción Física Total:

"RECLAMOS EN ELABORACIÓN POR COMMISA
...

PAQUETE 7 Afectación por condiciones climatológicas (Castoro 10 y Bar Protector). PENDIENTE PENDIENTE"

Con la anterior transcripción se acredita fehaciente y plenamente que a la fecha en que se suscribió el Acta de Recepción Física Total, no existía ningún tipo de reclamo o controversia técnica formulada por COMMISA respecto de malos



tiempos que hayan afectado los trabajos de las embarcaciones Castoro 10 y Bar Protector. Aún así y en un claro exceso y defecto interpretativo del contrato y de los derechos y obligaciones que de él emanan, el tribunal arbitral en el párrafo 234 del laudo asentó que: "*es cierto que durante el desarrollo del contrato PEP únicamente reconoció el derecho a la remuneración en la orden de cambio núm. 56 y en el convenio número 12, pero que no existe indicio alguno de que COMMISA renunciara a su reclamación y cejara en su empeño de exigir lo que le correspondía cobrar*".

El Tribunal Arbitral jamás resolvió la cuestión objeto de la controversia y que básicamente consistía en el hecho de que COMMISA había cumplido con las formas o requisitos para sus reclamaciones, mas no que COMMISA hubiera usado o no sus derecho de reclamo.

En esta última consideración el tribunal arbitral deja sin fundamentación el laudo arbitral, toda vez que hace mención de que no existe indicio alguno de que COMMISA hubiera renunciado a su reclamación, como si esa fuera la condición para tener por no presentada el reclamo de malos tiempos, cuando que en este tipo de reclamos era condición indispensable que COMMISA cumpliera una obligación de hacer, consistente en que si en primer término, el Supervisor y el Contratista no coincidían en la apreciación para resolver un reclamo de ajuste derivado de una Controversia Técnica, entonces el contratista tenía que plantearla por escrito, especificando en el documento que se trataba de una controversia técnica, proporcionando un resumen de los hechos que motivaban la reclamación y presentar una propuesta de solución, obligación que por supuesto COMMISA no cumplió.

43.- Ahora bien, toda vez que el tribunal arbitral no resolvió el reclamo de COMMISA de malos tiempos, ajustándose al procedimiento de reclamación estipulado en el contrato, resulta claro que con la consideración del tribunal dictada sin observar lo dispuesto en el contrato, el tribunal arbitral se excedió en el

mandato que le fue conferido por PEP y COMMISA, de resolver conforme a estricto a estricto derecho las cuestiones que le fueron planteadas por las partes. En virtud de ello, la resolución emitida por el tribunal arbitral se encuentra afectada de nulidad, al actualizarse el supuesto contemplado en el artículo 1457, fracción I, inciso c), disposición que para pronta referencia se transcribe a continuación:

> "ARTÍCULO 1457. Los laudos arbitrales sólo podrán ser anulados por el juez competente cuando:
>
> I.    La parte que intente la acción pruebe que:
>
> c) El laudo se refiere a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje..."
> (Énfasis añadido).

Esto es de suma importancia jurídica, porque la formalización de la Controversia Técnica, y únicamente esta actuación, origina el procedimiento para obtener un documento justificativo de pago, en los términos del artículo 44 fracción III del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público Federal, y artículo 66, fracción III,  del Reglamento de la Ley Federal de Presupuesto y Responsabilidad  Hacendaria. En otras palabras, no puede constituirse una obligación de pago a cargo del erario público federal mientras no exista un documento justificativo de dicho pago.

Así, la parte final del cuarto párrafo, y la inicial del quinto siguiente, de la Cláusula 23.2 del Contrato señalan lo siguiente:

> "Lo anterior en la inteligencia de que cualquier determinación de modificación técnico-contractual que implique o necesariamente deriven en una ampliación del monto del Contrato o del plazo de ejecución establecidos en las Cláusulas 3.1 y

> *4.1, respectivamente, deberá contar con la previa aprobación por escrito del representante del Proyecto ....... Una vez recibida la aceptación escrita por parte del Contratista de la determinación efectuada por el supervisor, se modificará el Contrato en lo conducente y se implementará la determinación".*

La Cláusula 5 del Contrato *"Modificaciones al Contrato"* establece lo siguiente:

> *"Las partes convienen en que por razones fundadas y explícitas **y a través de la suscripción de un convenio,** PEP podrá modificar el Contrato, en términos de lo establecido en el artículo 70 de la Ley de Adquisiciones y Obras Públicas".*

45.- En el presente caso COMMISA, presentó y formalizó extemporáneamente esta controversia, en un momento en que por disposición contractual, ya no podía ser atendida, por lo que la misma no podía ser materia del arbitraje ni ser válidamente considerada.

46.- Del Acta de Recepción Física Total de los trabajos de 30 de agosto de 2002, es claro que, la demandante no había planteado formalmente una controversia técnica por malos tiempos en los términos y condiciones contractuales, en la que hubiere planteado por escrito los motivos de su reclamo. Así consta en el párrafo 234, página 56 del Laudo Final y Voto Particular de D. Darío Oscós, párrafos 2 y 3, página 2, que es parte integrante del Laudo Final. El párrafo 234 establece lo siguiente:

> 234. La mencionada carta prueba que, al menos desde marzo de 1999, Commisa esperaba ser remunerada por los malos tiempos adicionales que generara la extensión del programa de trabajo. Es cierto que durante el desarrollo del Cambio núm. 56

> y en el Convenio Modificatorio núm. 12. Pero no existe indicio alguno de que Commisa renunciara a su reclamación, y cejara en su empeño de exigir lo que le correspondía cobrar. Buena prueba de ello es que cuando se firmó el Acta de recepción física Total de la obra, se hace referencia expresa a que existen aún reclamos pendientes de Commisa, y entre ellos se encuentran precisamente las *"afectaciones por condiciones climatológicas (Castoro 10 y Bar Protector)"*.

47.- Asimismo, en los párrafos 233 y 234, página 56 del Laudo Final, el Tribunal Arbitral manifiesta que COMMISA supuestamente alegó su derecho a una remuneración por malos tiempos debido a la reprogramación de los trabajos, esto con base en una carta referente a otro tema, que de ninguna manera puede ser considerada la formalización de una controversia técnica. El párrafo en cuestión dice *"Esto no incluye ningún tiempo adicional de espera por condiciones climatológicas. Debido a la extensión del programa de trabajo"*. Es decir, durante la vigencia del contrato COMMISA nunca le solicitó a PEP formalmente, que tomara una determinación con relación a su esperanza de ser remunerado de los tiempos de espera por condiciones climatológicas, atribuidos a la extensión del programa de trabajo.

48.- Como ya se señaló anteriormente, fue hasta la terminación del contrato, y en la recepción física de los trabajos, de fecha 30 de agosto de 2002, en la cual, COMMISA anuncia su intención de formalizar su controversia técnica por malos tiempos, como consta en el Acta correspondiente, en el párrafo 234, página 56 del Laudo Final y en el Voto Particular de D. Darío Oscós, párrafos 3, 4 y 5, páginas 2 y 3, que es parte integrante del Laudo Final. Por otro lado, no fue sino hasta el 8 de abril de 2003 (Documento COM/EP2800/2003-5556), siete meses después de terminada la obra, cuando COMMISA presenta su controversia, siendo rechazada por PEP por ser extemporánea.



49.- El Contrato, en su Anexo B-2 "Generalidades" Sección 5 "Modificaciones", establece que *"toda demora del contratista para dar aviso o presentar la propuesta a que se refiere el párrafo anterior, será motivo suficiente para rechazar la reclamación si el retraso perjudica a PEP y en la medida que lo haya perjudicado.* **En ningún caso se considerará una reclamación del Contratista si se hace después de la Recepción Parcial o Total ...".**

El tribunal aribtral dejó de aplicar este pacto y por ello omitió fundar debidamente el laudo arbitral.

50.- Es de suma importancia subrayar que el Supervisor de la Obra no cesa en sus funciones una vez terminada la obra, sino hasta que se extingan todos los derechos y obligaciones que resulten de la misma. Por lo que no puede deducir el Tribunal Arbitral que COMMISA haya tenido imposibilidad jurídica y/o fáctica y/o de actuar conforme al Contrato.

51.- Con fecha 8 de abril de 2003, siete meses después de terminada la obra, pero de manera extemporánea y sin posibilidad de surtir efectos, COMMISA le solicita al supervisor del Contrato, Ingeniero Alfredo Gómez Rangel que formalizara la Controversia Técnica relativa a malos tiempos (COM/EP2800/2003-5556). Este documento era conocido por el Tribunal Arbitral, el cual, contra las garantías del debido proceso omitió tomarlo en cuenta en el laudo, tal como se acredita con la cita que hace del mismo el árbitro Darío Oscós Coria en su Voto Particular (página 4, párrafo 8)

52.- Por otro lado, este mismo documento acredita, tomando en cuenta la conducta de las partes, que era necesaria la formalización de la controversia técnica para ser atendido el reclamo de COMMISA; que COMMISA aún no había formalizado Controversia Técnica alguna en esta materia, al terminar el Contrato, y que su reclamación fue extemporánea, cuando no había posibilidad jurídica que PEP tomara en cuenta el fondo del asunto.

50

53.- En tal virtud, es ilegal la actitud del Tribunal Arbitral al considerar que se formalizó la controversia técnica, aún en contra de la expresa manifestación de COMMISA. Es más, esto demuestra la parcialidad del tribunal arbitral en violación del artículo 17 Constitucional, porque supuestamente resuelve tomando en cuenta la conducta de PEP (párrafo 118 del Laudo Final), pero no examina la conducta de COMMISA.

Cabe también constatar que esto refuerza la posición de PEP del "Acta de Recepción Física Total" de los Trabajos, en el sentido de que tampoco COMMISA formalizó su controversia técnica con respecto a las controversias técnicas 19, 27, 34 y 35, y el tribunal arbitral actuando en violación del contrato de obra, se aboca a juzgar indebidamente sobre tales temas.

54.- Con base en el contrato de obra, antes de haber presentado la controversia a un arbitraje, COMMISA tenía que haber formalizado previa y oportunamente su Controversia Técnica, tal como lo exige el acuerdo de arbitraje contenido en la Cláusula 23.3 del Contrato de Obra Pública. Si no fue así, dicha Controversia Técnica no podía ser materia de arbitraje, por lo que las consideraciones del Tribunal Arbitral se refieren a una controversia no prevista en el acuerdo de arbitraje, ya que sólo controversias técnicas formales pueden ser materia de arbitraje, toda vez que el Tribunal Arbitral sólo podía resolver en definitiva, controversias técnicas. Al no dar cumplimiento con lo anterior, la resolución del tribunal arbitral se encuentra afectada de nulidad en razón de que se actualiza la causal de nulidad establecida en el artículo 1457, fracción I, inciso c) del Código de Comercio, cuyo texto es el siguiente:

> "c) *El laudo* se refiere a una controversia no prevista en el acuerdo de arbitraje..."

En consecuencia, cualquier análisis sobre la procedencia y la cuantificación de esta controversia, también es ilegal y contraria el orden público.



## CUARTA

55.- La decisión del Tribunal Arbitral, declarando procedente la pretensión de COMMISA contenida en la denominada Controversia Técnica 36, denominada *"Malos tiempos que afectaron a los trabajos de la Castoro 10 y del Bar Protector"*, y condenando a PEP a pagar a COMMISA la cantidad de USD $22,038,954.00, (capítulo VII.2, páginas 51 a 60 del Laudo Final) encuadra dentro de los supuestos de nulidad contemplados en el artículo 1457, fracción I, inciso c), del Código de Comercio, que dispone la nulidad del Laudo cuando el mismo contiene decisiones que exceden los términos del acuerdo de arbitraje.

56.- No existe justificación para que el Tribunal Arbitral haya violado las estipulaciones contractuales relativas a Controversias Técnicas y Arbitraje que se expresaron en las Cláusulas 23.2 y 23.3 del Contrato, para permitir que un simple reclamo, fuera materia del arbitraje. La inconformidad de COMMISA con las condiciones contractuales no hace arbitrable su reclamación; para ello era necesario que le solicitara formalmente a PEP que decidiera sobre la materia, durante la vigencia del Contrato, lo cual nunca hizo, y así ha quedado demostrado en el arbitraje, como consta en el párrafo 234, página 56 del Laudo Final; y en el Voto Particular de D. Darío Oscós, párrafos 3, 4 y 5, páginas 2 y 3, que es parte integrante del Laudo Final.

57.- El Arbitraje entre PEP y COMMISA es de estricto derecho, por lo que los derechos y facultades de las partes se determinan con base en disposiciones legales o contractuales, situación que el tribunal arbitral no observó. Además, tanto el tribunal arbitral como las partes están obligadas a observar el principio de *pacta sunt servanda*, previsto en el artículo 1796 del Código Civil Federal, que dispone:

> "**Artículo 1796.-** Los contratos se
> perfeccionan por el mero consentimiento;
> excepto en aquellos que deben revestir una
> forma establecida por la Ley. Desde que se
> perfeccionan, obligan a los contratantes no
> sólo al cumplimiento de lo expresamente
> pactado, sino también a las consecuencias
> que, según su naturaleza, son conformes a la
> buena fe, al uso o a la ley".

58.- Formalizar la controversia, contractualmente no es lo mismo que insinuar o presumir un supuesto derecho, como lo hizo COMMISA. La decisión del Tribunal Arbitral fue dictada sin tener una base legal, una base jurídica, toda vez que dejo el cumplimiento del contrato al arbitrio de COMMISA, lo que expresamente prohíbe el artículo 1797 del Código Civil Federal, que establece:

> "**Artículo 1797.** La validez y el cumplimiento
> de los contratos no puede dejarse al arbitrio
> de uno de los contratantes".

Este principio tiene una trascendencia esencial en los contratos de obra pública, regulados por el derecho administrativo, en los cuales por su propia naturaleza, las partes tienen restringida su voluntad en la contratación, y porque en los mismos se reproducen disposiciones de orden público, que emanan directamente del artículo 126 y 134 Constitucionales, relativas a obra pública y gasto público.

59.- Derivado de lo anterior, es claro que no existe ninguna facultad para el Tribunal Arbitral para violar las estipulaciones contractuales celebradas entre PEP y COMMISA, ni puede el tribunal arbitral decidir en equidad o como amigable componedor. Además dicha estipulación sería nula de pleno derecho porque implicaría darle facultades al Tribunal Arbitral para regular cuestiones de orden público mexicano, que ya están contempladas en normas que son de orden público mexicano. Por eso el laudo arbitral solamente debió versar sobre prestaciones incluidas en el Contrato de Obra Pública, y su procedencia de

conformidad a los supuestos también establecidos contractualmente, y observándose las Leyes Mexicanas (estricto derecho).

60.- En tal sentido, era obligación del Tribunal Arbitral aplicar correctamente las Cláusulas 23.2 y 23.3 del Contrato conforme a su texto. Es decir, el Tribunal Arbitral realizó una aplicación indebida de las cláusulas 23.2 y 23.3 del Contrato, excediendo el pacto comisorio. El tribunal arbitral dictó un laudo sin la debida fundamentación y motivación al dictar la condena por malos tiempos en contra de PEP, invocando una carta de COMMISA del 15 marzo de 1999 (que ya fue previamente transcrita), así como el Acta de Recepción Física Total del 30 de agosto de 2002, con lo cual consideró que en su momento COMMISA dejó constancia de los posibles costos adicionales por el incremento de malos tiempos y de que no existía indicio alguno de que COMMISA renunciara a su reclamación, cuando la única realidad es que al mes de marzo de 1999, las embarcaciones Castoro 10 y Bar Protector aún no comenzaban a trabajar en las obras del IPC-28, por lo que resulta carente de toda lógica jurídica y sin fundamentación ni motivación alguna considerar que a esa fecha COMMISA ya estuviera en condiciones de formular algún reclamo relacionados con dichas embarcaciones.

61.- Resulta ilegal que el Tribunal Arbitral haya considerado en el laudo que la formalización de una controversia técnica se haya llevado a cabo simplemente porque COMMISA manifestó en un escrito de 15 de marzo de 1999, referente a las controversias 34 y 35 que: "*Esto no incluye ningún tiempo adicional de espera por condiciones climatológicas. Debido a la extensión del programa de trabajo*".

62.- Por otro lado, y como ya quedó señalado en apartados anteriores, en el Acta de Recepción Física Total de ninguna forma COMMISA formuló ningún tipo de reclamo derivado de malos tiempos que hayan afectado los trabajos de las citadas embarcaciones (porque aún estaba en elaboración como se indica en la referida acta) y mucho menos cumplió, como era su obligación hacerlo, con las formalidades establecidas en el contrato en la cláusula 23.2, para estar en

54

condiciones de acceder y formular sus reclamos en un juicio de arbitraje, en términos de la cláusula 23.3 del mismo Contrato. A pesar de ello, el tribunal arbitral consideró que la conducta de COMMISA cumplía con el contrato y era su fundamento para la condena contra PEP.

63.- El tribunal arbitral, al violar y desdeñar en su resolución el contenido de las cláusulas 23.2 y 23.3 del contrato, y en su lugar fundar y justificar su resolución en documentos que no cumplen con las formalidades exigidas en el contrato para tener por válidas e interpuestas en tiempo las reclamaciones de COMMISA, es claro que el tribunal arbitral se excedió del acuerdo de arbitraje, pues su obligación consistía en resolver las cuestiones que le fueran planteadas conforme a estricto derecho, lo cual como ya quedó demostrado, no cumplió, razón por la cual el laudo arbitral se encuentra afectado de nulidad en términos de lo establecido en el artículo 1452, fracción I, inciso c) del Código de Comercio.

64.- Por otro lado, la aplicación de la ley en materia civil es una cuestión también de orden público por mandato del artículo 14 de la Constitución Política Federal, que en su último párrafo establece la garantía constitucional de la legalidad, cuyo mantenimiento es una cuestión de orden público mexicano.

El artículo 14 constitucional expresa:

> "**Artículo 14.-** ....... *En los juicios del orden civil, la sentencia definitiva deberá ser conforme a la letra o a la interpretación jurídica de la ley, y a falta de ésta se fundará en los principios generales del derecho*".

En consecuencia, cualquier análisis sobre procedencia y la cuantificación de esta controversia en la forma como lo hace el tribunal arbitral, también es ilegal y contraría el orden público.

65.- Esta argumentación está relacionada de igual manera con la decisión del Tribunal Arbitral, contenida en el Capítulo VI del Laudo Final, para declararse competente para conocer de todas las controversias y reclamaciones propuestas por COMMISA, alegando que todas las materias se relacionan o están vinculadas al Contrato relativo al Proyecto IPC-28, incluyendo las Controversias Técnicas en los términos del Contrato, según los párrafos 105 y 129 del Laudo Final, cuando éstas debieron haber sido resueltas conforme al contrato de obra, mediante un procedimiento distinto y previo al arbitraje. Por tal razón, para mayor detalle sobre las violaciones a la garantía de legalidad cometidas por el Tribunal Arbitral sobre este punto, le solicitamos a ese juzgador, que en obvio de repeticiones, se remita al capítulo correspondiente de este escrito (hechos 472 a 508), en el cual se refuta la decisión del Tribunal Arbitral para considerarse competente en el asunto, mismo que solicitamos se tenga aquí insertado como si se hiciese al pie de la letra.

## II. Causas de Nulidad del Laudo Final con relación a la decisión de las Controversias 34 y 35: Tiempos de espera por retrasos en el inicio de los Trabajos de la Castoro 10 y del Bar Protector.

66.- En las denominadas "Controversias Técnicas 34 y 35" COMMISA alega que el Contrato de Obra Pública lo obligaba a mantener sus embarcaciones disponibles desde el inicio del Contrato, pero que no obstante ello, las plataformas necesarias para comenzar los trabajos con embarcaciones no se terminaron conforme se habían programado. Aduce entonces que PEP retrasó el acceso al sitio de trabajo y el inicio de los trabajos con embarcaciones y que por ello ocasiono a COMMISA tiempos de espera considerables para las embarcaciones Bar Protector y la Castoro 10.

67.- PEP contestó que esta reclamación era improcedente, porque las embarcaciones no se encontraban operando, y además que esta reclamación no podía ser materia de arbitraje.

68.- No obstante lo alegado por PEP, la decisión del Tribunal Arbitral fue la de conceder parcialmente esta prestación condenando a PEP a diversos pagos, afectando con ello de nulidad el Laudo Final dictado, atendiendo a las consideraciones siguientes.

## PRIMERA

69.- Es nulo el laudo del Tribunal Arbitral, que declara parcialmente procedente la pretensión de COMMISA contenida en las llamadas "Controversias Técnicas" 34 y 35, denominada *"Tiempos de espera por retrasos en el inicio de los trabajos de la Castoro 10 y del Bar Protector"*, y que condena a PEP a pagarle a COMMISA la cantidad de USD $13,923,014.00, ya que las consideraciones vertidas por el Tribunal Arbitral, visibles en el Capítulo VII.1 del Laudo, de la página 36 a la 50, evidencian que la decisión encuadra dentro de los supuestos de nulidad contemplados en el artículo 1457, fracciones I y II del Código de Comercio, que dispone la nulidad del Laudo cuando en el mismo se haya infringido el acuerdo de arbitraje, o gravemente se haya violentado el procedimiento de arbitraje, o que la decisión del laudo sea contrario al orden público.

70.- En el capítulo I precedente (consideración primera de la presente demanda), ya quedó demostrado que el manejo de recursos federales, y el régimen de pago de obligaciones con cargo a dichos recursos federales, es un régimen constitucional derivado de los artículos 126 y 134 de nuestra Carta Magna, y por tanto, cualquier infracción a los mismos atentaría precisamente contra el sistema jurídico en materia presupuestaria y de gasto público, que precisamente consagra la Constitución. Solicitamos que dichas disposiciones se tengan por reproducidos en este apartado, en obvio de repeticiones.

71.- También ha quedado acreditado, de la lectura de los artículos 1 y 15 de la Ley de Adquisiciones y Obras Públicas (LAOP), que la misma es de orden

público e interés social ya que tiene por objeto regular las acciones relativas a la planeación, programación, presupuestación, gasto, ejecución y control de la obra pública y los servicios relacionados con la misma, que contraten los organismos descentralizados, en perfecta concordancia con el sistema constitucional al que nos referimos. De igual manera, y para evitar repeticiones, solicitamos que dichos argumentos se tengan por reproducidos como si se hiciera al pie de la letra, por economía procesal.

72.- **El Contrato fue restringido sobre algunos temas derivados de penalidades, o con relación al caso fortuito o fuerza mayor, que no podía el Tribunal resolver sobre ellos, porque estaría resolviendo en conciencia y no en estricto derecho, principio conforme al cual debió emitirse el laudo.**

73.- En ese tenor, las condiciones y requisitos de pago de obligaciones contraídas en virtud o relacionadas con contratos de obras públicas, al ser con cargo a recursos federales, están sujetos a disposiciones jurídicas de orden público pertenecientes al derecho público constitucional y administrativo, y no al mercantil.

74.- Así, podemos citar en esa misma idea, los artículos 44 fracción I del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público Federal, y 66, fracción I, del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria, que establecen lo siguiente:

> "*Artículo 44.- Las entidades deberán cuidar bajo su responsabilidad, que los pagos que se efectúen con cargo a sus presupuestos aprobados se realicen con sujeción a los siguientes requisitos:*
> *I. **Que correspondan a compromisos efectivamente devengados,** con excepción de los anticipos previstos en los ordenamientos legales y los mencionados ;*
> *........".*

> *"Artículo 66. Los pagos con cargo al*
> *Presupuesto de Egresos se realizarán por las*
> *dependencias a través de la Tesorería. Los*
> *pagos que realicen las entidades se*
> *efectuarán por conducto de sus propias*
> *tesorerías, llevando los registros*
> *presupuestarios correspondientes en sus*
> *respectivos flujos de efectivo.*
> *Las dependencias, en el ejercicio de sus*
> *erogaciones, adicionalmente deberán:*
> *I. **Que correspondan a compromisos***
> ***efectivamente devengados,** con excepción*
> *de los anticipos previstos en las*
> *disposiciones aplicable; …. ".*

75.- **Es el caso que el pago determinado por el Tribunal Arbitral no fue efectivamente devengado por COMMISA, por lo que el laudo que condena a PEP al pago de las cantidades de dinero referidas, carece de fundamentación y motivación y por ello resulta nulo al violar las normas de orden público consagradas en la Constitución.**

76.- Como quedó expresado en hechos anteriores, COMMISA reclamaba tiempos de espera causados por retrasos en los inicios de los trabajos. En el Contrato, los tiempos de espera son un concepto de trabajo pagable, contenido en el último párrafo de la cláusula 10.1.2. En el Laudo Arbitral, el Tribunal Arbitral consideró, en los párrafos 165 a 167, visibles en la página 44, que dichos tiempos de espera eran inaplicables al presente caso, dado que esas tarifas o cuotas sólo pueden pagarse por suspensiones, una vez que hayan iniciado los trabajos con embarcaciones. En efecto, el tribunal arbitral estableció:

> *"165. En el presente arbitraje, el Demandante*
> *pretende que a los días de retraso*
> *imputables a PEP se les aplique la tarifa de*
> *tiempo de espera convenidas en el Contrato*
> *para esperas acaecidas después de la*
> *movilización.*
>
> *"166. El Tribunal Arbitral no está de acuerdo.*
> *En su opinión, las tarifas de tiempo de espera*

> *únicamente resultan aplicables si se producen interrupciones en el funcionamiento de las embarcaciones, una vez que éstas han sido movilizadas y admitidas al sitio de los trabajos. **Las tarifas de espera, por el contrario, no son aplicables si lo que se producen son retrasos en la puesta en servicio de las embarcaciones antes de la movilización.** En estos casos lo convenido es que PEP pague a Commisa los costos razonables y comprobados que el retraso le haya causado.*
>
> *La anterior conclusión del Tribunal se fundamenta en la literalidad del propio Contrato (i), en el comportamiento pre y post contractual de las partes (ii) y en la lógica económica del negocio (iii).*

77.- Basado en esta lógica, el Tribunal Arbitral continuó con el análisis del caso, e indebidamente condenó a PEP a su pago. Como se desprende de la transcripción de las pretensiones de la Demandante, visible en el párrafo 80, página 23 del Laudo Final, existía una diversa pretensión de COMMISA con relación a estos hechos, misma que era la siguiente:

> *"Commisa demanda una compensación de aproximadamente US$81 millones de dólares. Dicha suma se calcula de acuerdo con el Contrato EPC-28. En caso de que por alguna razón el Tribunal Arbitral determinará que las cuotas o tarifas por tiempos de espera o de reserva que se establecen en el Contrato EPC-28 no son aplicables para el cálculo de la compensación correspondiente a estos retrasos, Commisa atentamente solicita que se dicte laudo conforme al cual se decrete el pago de una indemnización a cargo de PEP que resulta suficiente para compensar a Commisa por los daños y perjuicios sufridos como consecuencia de los retrasos antes sufridos. Para tales efectos, Commisa estima que dichos daños y*

> *perjuicios asciendes aproximadamente a
> US$81 millones de dólares...*"

78.- Es decir, COMMISA pretendía el pago de tarifas de espera pactadas para el trabajo con embarcaciones, o en su defecto, el pago de una indemnización por daños y perjuicios, por lo que al haberse resuelto desfavorablemente a COMMISA su primera pretensión, procedía examinar la segunda.

79.- Relacionando la pretensión de COMMISA y la posición del Tribunal Arbitral plasmada en el Laudo Final, con la exigencia de orden público de que los pagos correspondan a trabajos efectivamente devengados, tenemos lo siguiente:

a) El concepto de trabajo *"retrasos en la puesta en servicio de las embarcaciones antes de la movilización"* (párrafo 166, página 44 del Laudo Final) no existe en el Contrato, y mucho menos como un concepto de trabajo pagable, por ello no hay obligación contractual de pagar este evento.

b) La frase *"retrasos en la puesta en servicio de las embarcaciones antes de la movilización"*, denota claramente el carácter vacío de los hechos de la reclamación del Contratista, es decir, se está reclamando un pago por no acreditar las condiciones de operación de las embarcaciones, por no trabajar, o por prorrogar la fecha en que empezarían a trabajar.

Por otro lado, que los compromisos cuyo pago se solicita hayan sido efectivamente devengados, como lo exigen los artículos 44 fracción I y 66 fracción I del Reglamento de la Ley de Prepuesto, Contabilidad y Gasto Público y del Reglamento de la Ley de Presupuesto y Responsabilidad Hacendaria, respectivamente, puede interpretarse con relación a los conceptos de trabajo pactados en el contrato o a los daños y perjuicios solicitados por COMMISA, como que estos se hayan efectivamente terminado conforme al proyecto y a la calidad y

# EXHIBIT 1
Part 3

especificaciones pactadas[3], e incluyendo las operaciones y materiales contemplados en el concepto de trabajo pactado[4], o que se hayan realmente causado.

80.- De conformidad con el derecho civil mexicano el pago de daños y perjuicios no operan automáticamente como consecuencia directa e inmediata de un incumplimiento contractual; al contrario, ese nexo tiene que probarse, independientemente del monto del daño. Lo anterior tiene fundamento en el artículo 2110 del Código Civil Federal, que establece:

> "**Artículo 2110.** Los daños y perjuicios deben ser consecuencia inmediata y directa de la falta de cumplimiento de la obligación, ya sea que se hayan causado o que necesariamente deban causarse".

81.- Nuestras más altas autoridades han reiterado en jurisprudencia firme lo establecido en el artículo 2110 del Código Civil Federal, en los siguientes términos:

> **DAÑOS Y PERJUICIOS. EL DERECHO A ELLOS DEBE DEMOSTRARSE EN FORMA AUTÓNOMA AL INCUMPLIMIENTO DE LA OBLIGACIÓN EN QUE SE FUNDEN, EN TANTO ESTA ÚLTIMA NO IMPLICA QUE NECESARIA E INDEFECTIBLEMENTE SE CAUSEN[5].** Si bien conforme a lo dispuesto por el artículo 2110 del Código Civil Federal,

---

[3] Reglamento de la Ley de Obras Públicas. Artículo 42. " *Para los efectos del artículo 39 de la Ley se entenderá por: I. Precio unitario, el importe de la remuneración o pago total que debe cubrirse al contratista por unidad de concepto de trabajo terminado; ejecutado conforme al proyecto, especificaciones de construcción y normas de calidad ...*"

[4] Reglas Generales para la Ejecución y Contratación de la Obra Pública: "*5.2.3 CONCEPTO DE TRABAJO. Conjunto de operaciones y materiales que de acuerdo con las formas y especificaciones respectivas, integran cada una de las partes en que se dividen convencionalmente los estudios y proyectos, la ejecución y equipamiento de las obras, la puesta en servicio, su conservación o mantenimiento y la supervisión de estos trabajos con fines de medición y pago*".

[5] No. Registro: 184,165. **Jurisprudencia. Materia(s): Civil.** Novena Época. Instancia: Tribunales Colegiados de Circuito. Fuente: Semanario Judicial de la Federación y su Gaceta. XVII, Junio de 2003. Tesis: I.7o.C. J/9. Página: 727.

tales renglones deben ser el resultado del
incumplimiento de una obligación, no puede
sostenerse que ante tal supuesto el afectado
forzosa y necesariamente sufra pérdida o
menoscabo en su patrimonio o se vea
privado de cualquier ganancia lícita de
acuerdo con los artículos 2108 y 2109 del
propio ordenamiento, pues casos habrá en
que aun ante el deber incumplido ninguna
afectación de aquella índole traiga consigo.
**De lo anterior se sigue que no basta con
demostrar el extremo aludido para
sostener que se materializaron los daños
y perjuicios, que por lo mismo deben
probarse en forma independiente, ya que
sostener lo contrario conduciría a decretar
una condena en forma automática aun en
aquellos casos en que no se resintió
ninguna de las afectaciones a que se hizo
mérito.** Tal es el sentido de la jurisprudencia
que puede verse en el Apéndice al
Semanario Judicial de la Federación 1917-
1985, Cuarta Parte, página 357, que dice:
"DAÑOS   Y   PERJUICIOS.   CONDENA
GENÉRICA.-Los artículos 85, 515 y 516 del
Código de Procedimientos Civiles para el
Distrito Federal, y los códigos procesales de
los Estados de la República que tienen
iguales disposiciones, permiten concluir que
si el actor en un juicio que tiene por objeto
principal el pago de daños y perjuicios, probó
su   existencia   y   su   derecho   a   ser
indemnizado, pero no rindió pruebas que
permitan precisar su importe, ni establecer
las bases con arreglo a las cuales debe
hacerse la liquidación, la condena al pago
genérico de los mismos es procedente,
reservándose la determinación de su cuantía
para   el   procedimiento   de   ejecución   de
sentencia.". Desde el momento en que el
criterio exige las pruebas del derecho a ser
indemnizado, éste no puede ser otro que la
presencia de la pérdida, menoscabo o
privación que ya quedaron mencionados y,
por tanto, si no quedan acreditadas no habrá
lugar a la condena por daños y perjuicios,
aunque prevalezca la relacionada con que la



obligación debe cumplirse.

SÉPTIMO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.

Amparo directo 1177/93. Autos Tlaxcala, S.A. de C.V. y Hermanos Rivera, S.A. de C.V. 6 de abril de 1993. Unanimidad de votos. Ponente: Carlos Gerardo Ramos Córdova. Secretaria: Irma Rodríguez Franco.

Amparo directo 3123/2001. Petróleos Mexicanos. 29 de noviembre de 2001. Unanimidad de votos. Ponente: Anastacio Martínez García. Secretario: Carlos Arturo Rivero Verano.

Amparo directo 466/2002. Aseguradora Hidalgo, S.A. 11 de julio de 2002. Unanimidad de votos. Ponente: Sara Judith Montalvo Trejo. Secretaria: Teresa Bonilla Pizano.

Queja 90/2002. 16 de enero de 2003. Unanimidad de votos. Ponente: Anastacio Martínez García. Secretario: Carlos Arturo Rivero Verano.

Amparo directo 154/2003. Promociones Russek, S.A. de C.V. 10 de abril de 2003. Unanimidad de votos. Ponente: Anastacio Martínez García. Secretario: José Ybraín Hernández Lima.

**DAÑOS Y PERJUICIOS DERIVADOS DE ACTOS DE COMERCIO. EL SOLO INCUMPLIMIENTO NO HACE QUE SE GENEREN EN FORMA AUTOMÁTICA[6].** De conformidad con el artículo 376 del Código de Comercio, en las compraventas mercantiles, una vez perfeccionado el contrato, el contratante que cumpliere tendrá derecho a exigir, del que no cumpliere, la rescisión o cumplimiento del contrato y la indemnización, además de los daños y perjuicios. Sin embargo, de ello no se sigue que al demostrarse el incumplimiento de una parte que celebró un contrato mercantil, se tengan por actualizados los daños y

---

[6] No. Registro: 178,481. Tesis aislada. Materia(s): Civil. Novena Época. Instancia: Tribunales Colegiados de Circuito. Fuente: Semanario . Judicial de la Federación y su Gaceta. XXI, Mayo de 2005. Tesis: III.2o.C.94 C. Página: 1448.

> perjuicios que se le ocasionaron, igual a su
> monto, pues del dispositivo legal indicado
> sólo se colige que el contratante cumplido
> tiene derecho a exigir del que no lo hizo, la
> rescisión o el cumplimiento forzoso del
> contrato, y las demás consecuencias legales
> como son la indemnización de los daños y
> perjuicios. **De tal manera que, con**
> **independencia de que los actos**
> **comerciales sean lucrativos, para la**
> **procedencia de dicha indemnización, es**
> **necesario probar en juicio que se**
> **pudieron haber obtenido ganancias, y que**
> **éstas no ingresaron a su patrimonio**
> **merced al incumplimiento del demandado,**
> pues de otra manera, implicaría considerar
> que aquéllos se generan en forma
> automática, lo cual no está previsto por la ley.
> SEGUNDO TRIBUNAL COLEGIADO EN
> MATERIA CIVIL DEL TERCER CIRCUITO.
> Amparo directo 549/2004. Pablo Álvarez
> Magaña. 26 de noviembre de 2004.
> Unanimidad de votos. Ponente: José
> Guadalupe Hernández Torres. Secretario:
> José Guadalupe Bustamante Guerrero.

82.- Es de suma importancia el establecer claramente cuáles daños reclamó COMMISA. Y la respuesta es que COMMISA únicamente reclamó como daños el pago de las tarifas de espera plasmadas en el contrato (párrafo 80, página 23 del Laudo Final, transcrito supra), las cuales fueron declaradas improcedentes y no aplicables por el Tribunal Arbitral (párrafos 165 a 167, visibles en la página 64 del Laudo Final).

83.- Es decir, COMMISA reclamaba la misma cantidad bajo dos causas distintas: (a) por concepto de tarifas de espera, o (b) por concepto de daños y perjuicios, lo cual es totalmente improcedente. Al respecto, cabe señalar que el código civil federal, aplicado supletoriamente dispone en su artículo 1840 lo siguiente:

> *"Art. 1840.- Pueden los contratantes estipular*
> *cierta prestación como pena para el caso de*
> *que la obligación no se cumpla o no se*
> *cumpla de la manera convenida. Si tal*
> *estipulación se hace, no podrán reclamarse,*
> *además, daños y perjuicios."*

84.- La simple aplicación del artículo 1840 del Código Civil Federal le debería haber bastado al Tribunal Arbitral para declarar improcedente el reclamo de COMMISA por daños, precepto legal que era conocido del Tribunal ya que esta situación fue reconocida por la propia COMMISA en su comunicado C 44 (párrafo 26, página 9), relativo a las Diligencias para Mejor Proveer, mismo que se exhibe como prueba, añadiendo que, como lo único que estaba solicitando era el pago de tarifas de espera, no tenía obligación de probar ningún daño (o lo que es lo mismo, que durante el procedimiento no había acreditado ningún daño).

Esto hubiera sido suficiente para declarar improcedente la reclamación por daños y perjuicios planteada por COMMISA, porque nunca demostró en su demanda daño alguno, por el contrario, toda la actuación de COMMISA consistió en argumentar que se encontraba dentro del supuesto del pago de tarifas de espera. No obstante esto, el Tribunal Arbitral, de manera incongruente, nunca se propuso establecer la procedencia o improcedencia de la acción por daños y perjuicios, que por supuesto resultaba clara y notoriamente improcedente.

85.- La decisión del tribunal arbitral agravio a PEP, toda vez que sin mediar solicitud de parte de COMMISA, el tribunal arbitral de manera oficiosa, infringiendo el principio de estricto derecho y equilibrio que deben tener las partes dentro del proceso, así como el principio de imparcialidad que deben regir su actuación, se excedió en el mandato que le fue conferido y pasando por encima de disposiciones de orden público, resolvió sobre la procedencia de una prestación completamente distinta a la reclamada por COMMISA, es decir, el tribunal arbitral resolvió sobre una cuestión diferente a la que le fue planteada.



86.- Esta actuación del tribunal arbitral es suficiente para anular el laudo arbitral.

87.- El Tribunal Arbitral se encontró con que la Cláusula 10.1.2 del Contrato en sus dos primeros párrafos regula el pago de "Gastos no Recuperables", que se definen como aquellos gastos en que hubiere incurrido el Contratista en caso de suspensión a los trabajos en los términos de la Cláusula 10.1 del Contrato, y **solamente a solicitud del propio Contratista.** Dichos gastos deben ser razonables, **estar debidamente comprobados** y relacionarse directamente con el Contrato.

88.- Cabe señalar que estos gastos no recuperables regulan un supuesto distinto al de la suspensión a los trabajos con embarcaciones que generan el pago de tarifas de espera (como lo admite en principio el Tribunal), tarifas que están reguladas en la misma Cláusula 10.1.2, párrafo tercero, prestación que el Tribunal Arbitral declaró previamente improcedente; y de igual manera, los gastos no recuperables es una prestación distinta a una indemnización por daños y perjuicios, que ni siquiera estudió.

89.- Por otro lado, el Tribunal Arbitral también se encontró que conforme a la Orden de Cambio Núm. 1 Rev 2, PEP se comprometió a satisfacer a COMMISA los *"costos justos, razonables y debidamente comprobados"* que se hubieran devengado. Como bien lo reconoció el Tribunal Arbitral (véanse párrafos 174[7] y 175[8], página 45 del Laudo Final), esta definición es semejante a la de "Gastos No

---

[7] "En las contestaciones a las dudas planteadas por los licitantes en la Junta de Aclaraciones la Demandada dejó claro que, en caso de que hiciere uso de su derecho de reprogramación de fechas, PEP indemnizaría al Contratista aplicando las disposiciones contractuales y que la tarifa de espera se aplicaría durante la suspensión de operaciones".

[8] "Aún más significativo que estas aclaraciones precontractuales, es el comportamiento de las partes en la ejecución del Contrato. En la Orden de Cambio núm. 1 Rev 2, firmada por ambas partes, se convino la extensión del plazo para la incorporación de las embarcaciones y PEP se obligó a satisfacer al Contratista los <los costos justos, razonables y debidamente comprobados> que se le hubieren irogado. Es de resaltar que los términos empleados en esta Orden de Cambio son idénticos a los empleados en el párrafo primero de la cláusula 10.1.2 del Contrato. No queda pues, duda alguna que las partes entendieron que lo pactado en el Contrato, para el caso de retraso en la incorporación de embarcaciones, era que PEP resarciera los costos reales incurridos por el Contratista, y no que se devengara la tarifa de espera".

Recuperables" contenida en la Cláusula 10.1.2, primer y segundo párrafo. Siendo así las cosas, es evidente que PEP de conformidad a la Orden de Cambio Núm. 1, Rev. 2, se comprometió a resarcir a COMMISA, los Gastos No Recuperables que COMMISA acreditara debidamente, pero de ninguna manera se comprometió a pagar las Cuotas de Espera o de Tiempos de Espera, definida en la misma Cláusula 10.1.2, tercer párrafo, establecidas para esperas con embarcaciones, ni ninguna otra prestación.

90. Es decir, en la Orden de Cambio 1 Rev 2, PEP no se comprometió a pagar los tiempos de espera del barco que reclamaba COMMISA. No obstante ello, el Tribunal Arbitral consideró indebidamente su aplicación al caso (lo que será materia de la causa de nulidad que se expondrá en apartado subsecuente).

91.- El punto en este apartado es que bajo ningún concepto o causa de reclamación COMMISA ha demostrado que se hayan devengado las cantidades que reclama.

92.- Toda vez que COMMISA no demostró que efectivamente hubiese devengado las cantidades que reclama, entonces, el Tribunal Arbitral, al condenar a PEP a pagar a COMMISA al pago de ciertas cantidades no demostradas que se hubieren erogado, le esta ordenando a PEP que realice una conducta que las leyes mexicanas le impiden realizar. Es decir, se demostrará que no hay justificación contractual y legal para su pago (véase también el apartado Cuarto de este capítulo).

93.- El Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, disposición de orden público, el artículo 2110 del Código Civil Federal, y la jurisprudencia en materia civil, así como el Contrato de Obra y acuerdos posteriores, establecen para que se puedan pagar los compromisos, daños o gastos, estos deben de haber sido efectivamente devengados, causados o comprobados, situación que no ocurrió en el presente caso. El Tribunal Arbitral

supuestamente tuvo por acreditado un incumplimiento contractual (lo cual se niega porque el derecho de PEP a suspender trabajos está claramente estipulado en las cláusulas 4.4 y 10.1 del Contrato, y al estar previsto, es claro que se realiza legítimamente), y luego, sin hacer ninguna consideración de la causación del daño (falta de motivación y fundamentación), dicho tribunal arbitral se encausó directamente a determinar la compensación correspondiente, lo que constituye una violación grave en el laudo, al debido proceso y a las formalidades esenciales del procedimiento.

94.- Es importante señalar que para la ejecución de los trabajos objeto del contrato de obra pública, la contratista (COMMISA) debía contar con embarcaciones capaces de desarrollar trabajos costa afuera, ya sea en el tendido de ductos submarinos, o en su conexión a plataformas. COMMISA carecía de embarcaciones propias y subcontrató las embarcaciones Castoro 10 y Bar Protector a la empresa EMC.

95.- La fecha de inicio de los trabajos se difirió porque ciertas plataformas petroleras costa afuera, relacionadas con el objeto del contrato de obra del proyecto IPC-28, no estuvieron terminadas oportunamente. COMMISA alegó al Tribunal Arbitral que el Contrato de Obra Pública lo obligaba a mantener sus embarcaciones disponibles, aduciendo luego que el retraso de PEP en proporcionar acceso al sitio de trabajo causó tiempos de espera considerables para las embarcaciones Bar Protector y la Castoro 10, mismos que debían de ser compensados.

96.- De la reclamación hecha por COMMISA, es claro que el costo o daño a compensar (si COMMISA tuviera base contractual o legal para ello, por la razón que se explicara en el apartado Tercero de este Capítulo) serían las cantidades efectivamente pagadas por COMMISA al dueño de las embarcaciones por el retraso en la puesta en servicio de las embarcaciones, en caso de que las embarcaciones hubieren estado disponibles. O de acuerdo con la postura del

69

Tribunal Arbitral, COMMISA debía acreditar que había incurrido en gastos no recuperables (es importante subrayar desde este momento que COMMISA no acreditó lo primero, ni tampoco lo segundo).

97.- A pesar de ello, el tribunal arbitral sin fundamento ni motivación condenó a PEP al pago mencionado.

98.- Con lo hasta aquí narrado, podemos establecer qué tipo de eventos debía probar COMMISA para la procedencia de su reclamación; y también se demuestra que la tarifa establecida por el Tribunal arbitral como condena, (párrafo 183 del Laudo Final) no se apega a la normatividad de orden público del caso, por estar su fundamentación fuera del contexto fáctico y normativo del procedimiento, y del marco jurídico a aplicarse, debido a que el costo que la integra: **i)** no fue efectivamente incurrido; y, **ii)** No está debidamente probado, requisitos a los cuales expresó el Tribunal sujetaría su determinación conforme al acta de misión.

Este no es un caso de indebida aplicación de la ley, sino de la trasgresión a normas que afectan materialmente el gasto público, materia de soberanía constitucional.

99.- **Para que exista un costo debidamente incurrido**, es necesario que las partes estén en aptitud de cumplir con las obligaciones asumidas en el contrato. Así las cosas, para que un costo tenga esas características se hace necesario; **1)** La existencia de un atraso imputable a PEP; y, **2)** Que sea un costo pactado en el contrato o que sea pagable por haberse actualizado los supuestos contractuales de su pago.

100.- Suponiendo sin conceder, que existiera un retraso imputable a PEP (que no lo hay, porque era un derecho de PEP), la falta de la segunda condición sería suficiente para desestimar la acción, y sobre todo, relacionándola con el



texto del artículo 65 de la Ley de Adquisiciones y Obras Públicas, y diversas normas de orden público mexicano.

101. No obstante lo anterior, queremos dejar en claro ciertos cuestionamientos de fondo, para que se entienda mejor la actuación ilegal del Tribunal Arbitral. Por un lado, la culpa en el retraso de los inicio de los trabajos, por la falta de plataformas, era un evento independiente de las condiciones para el pago de tarifas de espera para embarcaciones. En otras palabras, si COMMISA no acreditó de ninguna manera que sus embarcaciones estuvieran en condiciones de operar y en el sitio de los trabajos, no tenía derecho a pago alguno, por tanto es ilegal la imputación de responsabilidad a PEP que realiza el Tribunal Arbitral en el párrafo 153 del Laudo Final[9].

102.- Siendo así las cosas, es claro que el laudo es incongruente, toda vez que el Tribunal Arbitral no analizó en sus términos la defensa de PEP, y tampoco la acción de COMMISA. La principal excepción de PEP era que las embarcaciones estuvieran disponibles y en condiciones de operar para generar el pago de tarifas de espera, según consta en el párrafo 131 del laudo final[10] y en lo cual, en apariencia, el Tribunal estuvo de acuerdo, de conformidad con lo asentado en el párrafo 166 del Laudo Final. Sin embargo, el Tribunal Arbitral, excediéndose en sus facultades, introdujo nuevas demandas al pleito, y alteró la litis, en beneficio de COMMISA, como se expondrá en el apartado segundo de este capítulo.

103.- Todavía es más evidente la parcialidad del Tribunal Arbitral, cuando afirma en el párrafo 159 del Laudo Final, que PEP se opuso en dos ocasiones a la

---

[9] Por el contrario, si hubiere cumplido con las condiciones contractuales para la operación de embarcaciones, sólo en ese evento se pudiere hablar de retrasos imputables a PEP, si no le proporcionaba acceso al sitio de los trabajos. En otro sentido, el cumplimiento de las operaciones para la puesta en servicio era responsabilidad de COMMISA, y mientras ella no cumpliera con su obligación, no le podía exigir a PEP el cumplimiento de la suya.

[10] La excepción de contrato no cumplido non adimpleti contractus tiene por efecto diferir la ejecución. No ataca al contrato: ambas partes quedan obligadas y bastará cumplir a la que se rehusaba hacerlo para que la otra no pueda ya invocar la excepción; la que se rehusaba podría demandar la ejecución. Una situación de espera es creada: hay negativa provisional de ejecución. En ese sentido, no hay pago si no hay embarcaciones, en condiciones de operar de acuerdo al Contrato.

movilización de las embarcaciones, cuando solamente le exigía a COMMISA el cumplimiento de sus obligaciones contractuales. Al calificar estos documentos, de acuerdo a su texto, como una oposición de PEP a la llegada de los barcos, el tribunal arbitral omite fundar y motivar debidamente el laudo arbitral.

104.- Esta falta de fundamentación por parte del tribunal arbitral, se refleja en la propia cita de documentos realizada por el tribunal arbitral al emitir su consideración en comento, pues invoca en el pie de página 88 (página 42 del laudo) los documentos CV 37 y CV 40, que no tienen relación alguna con el punto a estudio.

105.- Mediante correo electrónico del 29 de junio de 2006, la Secretaria del Tribunal Arbitral, Deva Villanúa, adjuntó una relación de los documentos aportados por las partes durante la audiencia arbitral, en la que se lee en lo referente al documento CV 37:

> *"Ref. Inf. Diario actividades. Movilización barco "DSV". (2 pág.) COM-PEP 020700-703".*
>
> *Con relación al documento denominado CV 40, se describe con los siguientes datos:*
>
> *"Ref: Anexo B 1, cláusula 3.5.1. Re: Programa de Movilización."*

Ahora bien, de la revisión exhaustiva de ambas documentales, de ninguna de sus partes se desprende que PEP se haya opuesto a la movilización de las embarcaciones, como equivocada e infundadamente lo afirma el tribunal arbitral en el punto 159 del laudo, pues cabe agregar que la documental señalada en primer término se refiere a un informe de actividades de la propia embarcación bajo el control de la propia COMMISA, y con relación a la segunda documental, la misma consiste en un anexo del contrato en la que consta el programa de



actividades y que no contiene la oposición de una de las partes a la movilización de embarcaciones.

106.- Es importante mencionar también, como ejemplo del tipo de documentación que tuvo que examinar el Tribunal Arbitral para decidir el punto, el Documento EP2800/COM/99-1696 de fecha 11 de junio de 1999 así como el Documento EP2800/COM/99 1604 de 21 mayo de 1999, exhibido como prueba en el arbitraje, y en los cuales se le exigía el cumplimiento a COMMISA de las condiciones contractuales para el arribo de las embarcaciones, exigencia que de ninguna manera puede ser una oposición a la llegada de las embarcaciones.

Por ello resulta infundado el laudo arbitral.

107.- En el párrafo 166 del Laudo Final, el Tribunal Arbitral reconoce que las embarcaciones no habían sido puestas en servicio, es decir, no habían sido movilizadas al sitio de los trabajos, ni admitidas al sitio de los mismos[11], al señalar:

> "166. El Tribunal Arbitral no está de acuerdo.
> En su opinión, las tarifas de tiempo de espera
> únicamente resultan aplicables si se
> producen interrupciones en el funcionamiento
> de las embarcaciones, una vez que éstas
> han sido movilizadas y admitidas al sitio de
> los trabajos. Las tarifas de espera, por el
> contrario, no son aplicables si lo que se
> producen son retrasos en la puesta en
> servicio de las embarcaciones antes de la
> movilización. En estos casos lo convenido es
> que PEP pague a Commisa los costos
> razonables y comprobados que el retraso le
> haya causado".

Véase también el párrafo 169 del Laudo Final.

---

[11] La Cláusula 16.1.1 del Contrato establece claramente que mientras las embarcaciones no se sometan y aprueben el Check List o inspección para verificar sus condiciones y capacidad para el trabajo, así como para acreditar que cuenta con todos los permisos y registros necesarios para navegar en aguas mexicanas, no pueden ser puestas en servicio. **Si las embarcaciones no aprueban la inspección, no es posible considerarlas como disponibles.**

108.- Esto es, los trabajos no habían iniciado todavía, sin embargo, el Tribunal Arbitral estableció en el párrafo 168 del Laudo Final que dicha reclamación encuadraba dentro de la hipótesis normativa de la cláusula 10 y cláusula 10.1.2 del Contrato, relativa a suspensiones a los trabajos ordenadas por PEP y el pago de gastos no recuperables, de conformidad con los párrafos 174[12] y 175[13] del laudo, lo cual es completamente infundado.

109.- Los retrasos en la puesta en servicio de las embarcaciones antes de la movilización, no es un concepto pagable conforme al contrato, porque sería ilegal y penado por las leyes, que una entidad pública o un servidor público, estableciera un pago, o pagara, por algo que no puede ser considerado un trabajo, ni suspensión a un trabajo.

110.- El artículo 65[14] de la LAOP es buena prueba de ello, puesto que dispone únicamente como sanción al retraso en el inicio de los trabajos por falta de acceso al sitio de los trabajos, la prórroga a la fecha de terminación de los trabajos.

111.- Asimismo, como esta disposición regula el supuesto de la falta de acceso al sitio de los trabajos, y los artículos 71[15] y 72 fracción I [16] de la LAOP, el

---

[12] [12] "En las contestaciones a las dudas planteadas por los licitantes en la Junta de Aclaraciones la Demandada dejó claro que, en caso de que hiciere uso de su derecho de reprogramación de fechas, PEP indemnizaría al Contratista aplicando las disposiciones contractuales y que la tarifa de espera se aplicaría durante la suspensión de operaciones".

[13] "Aún más significativo que estas aclaraciones precontractuales, es el comportamiento de las partes en la ejecución del Contrato. En la Orden de Cambio núm. 1 Rev 2, firmada por ambas partes, se convino la extensión del plazo para la incorporación de las embarcaciones, y PEP se obligó a satisfacer al Contratista los <los costos justos, razonables y debidamente comprobados> que se le hubieran irrogado. Es de resaltar que los términos empleados en esta Orden de Cambio son idénticos a los empleados en el párrafo primero de la cláusula 10.1.2 del Contrato. No queda pues, duda alguna que las partes entendieron que lo pactado en el Contrato, para el caso de retraso en la incorporación de embarcaciones, era que PEP resarciera los costos reales incurridos por el Contratista, y no que se devengara la tarifa de espera".

[14] Artículo 65.- La ejecución de la obra contratada deberá iniciarse en la fecha señalada, y para ese efecto, la dependencia o entidad contratante oportunamente pondrá a disposición del contratista el o los inmuebles en que deba llevarse a cabo. El incumplimiento de la dependencia o entidad, prorrogará en igual plazo la fecha originalmente pactada de terminación de los trabajos.

[15] Artículo 71.- Las dependencias y entidades podrán suspender temporalmente en todo o en parte la obra contratada, por cualquier causa justificada. Los titulares de las dependencias y los órganos de gobierno de las entidades designarán a los servidores públicos que podrán ordenar la suspensión..

supuesto de la suspensión a los trabajos, es claro que dichas distinciones legales echan por tierra las presunciones del Tribunal Arbitral para aplicar los efectos jurídicos de la cláusula 10 del Contrato, que contempla el supuesto de suspensiones a los trabajos, al supuesto de retrasos en el inicio de los trabajos. La analogía no opera en materia de gasto público, y menos cuando ambos supuestos se encuentran regulados.

112.- En otro sentido, estas disposiciones permiten entender que la cláusula 10 del Contrato resume las disposiciones del artículo 71 y 72 fracción I de la LAOP, y también que la cláusula 10 del contrato **no** resume el artículo 65 de la LAOP, y que en general el Contrato no contempla el supuesto para el pago de retrasos en el inicio de los trabajos. Todavía más allá, permite establecer que si no se pactó una prestación contractual por este concepto, y el artículo 65 de la LAOP, no contempla para ese evento ninguna prestación económica, se denota claro que la condena carece de justificación contractual o legal.

113.- PEP se comprometió desde la licitación a satisfacer los tiempos de espera en los términos del Contrato, y los términos del Contrato son claros: las suspensiones a los trabajos con embarcaciones causarían tarifas de espera siempre y cuando ya estuvieren operativas. Si las embarcaciones no se encontraban operando, es claro que no hay obligación de ningún pago, porque el retraso de su puesta en servicio solamente genera prórroga a la fecha de terminación de los trabajos.

114.- **No ésta debidamente probado el costo,** debido a que la documental conforme a la cual el Tribunal Arbitral fija el costo, es una propuesta de COMMISA para minimizar daños (véase párrafos 180, 181, 182 y 183, páginas 46 y 47 del Laudo Final). Es decir, es una propuesta de COMMISA de fecha 15 de marzo de

---

[16] Artículo 72.- En la suspensión, rescisión administrativa o terminación anticipada de los contratos de obra pública, deberá observarse lo siguiente: I. Cuando se determine la suspensión de la obra o se rescinda el contrato por causas imputables a la dependencia o entidad, ésta pagará los trabajos ejecutados, así como los gastos no recuperables, siempre que éstos sean razonables, estén debidamente comprobados y se relacionen directamente con el contrato de que se trate;

1999, proponiendo una tarifa por el tiempo de espera de las embarcaciones por el retraso en los inicios de los trabajos, misma que se anexa como prueba.

115.- En consecuencia, es claro que una tarifa no es un costo incurrido (cantidades realmente pagadas), sino una propuesta de un precio por pagar mientras durara el retraso. La misma fecha del documento es clara prueba de que no es costo incurrido, pues fue realizada antes de que concluyera el retraso inicial. El documento es de 15 de marzo de 1999, y el inicio de los trabajos con la Castoro 10 fue el 1° de agosto de 1999, cinco meses después, y el inicio de los trabajos con la Bar Protector fue el 3 de marzo de 2000, casi un año después, según consta en el párrafo 152 del laudo final. Además COMMISA describe su propuesta, en el documento al que nos referimos, de la manera siguiente:

> *1. Costos Probables de Reserva si se movilizan las embarcaciones de construcción*
> ....
> *2. Orden de Magnitud de Costos Estimados para reprogramar el trabajo costa-afuera para el día 05 de agosto de 1999.*

Esto es, de la simple lectura del documento de 15 de marzo de 1999, se evidencia que eran costos probables o costos estimados (no costos incurridos). Además que esos costos se generarían si las embarcaciones se movilizaran en esa fecha, lo que no ocurrió (veáse párrafo 166 del Laudo Final). Luego entonces, el costo es a condición de la movilización, no por tenerlas inmovilizadas.

116.- COMMISA nunca exhibió facturas o cualquier otro documento idóneo que acreditara los pagos efectivamente realizados por renta de barcos o movilización o desmovilización entre otros, dichas facturas serían la prueba que COMMISA tenía que haber exhibido para demostrar el gasto en que realmente incurrió. Por el contrario, en el procedimiento arbitral quedó acreditado que COMMISA no hizo pago alguno por renta de embarcaciones a favor de EMC, subcontratista dueña de



las embarcaciones (véase párrafo 180[17], páginas 46 y 47 del Laudo Final), por lo que el contrato de subarrendamiento tampoco es prueba idónea. Valga decir, ni siquiera exhibió el convenio de transacción al cual hace referencia, ni el Tribunal se lo solicitó, como sí solicitó la exhibición para mejor proveer de otros documentos e información, que no le sirvieron para decidir el negocio.

117.- Ahora bien, centrándonos en los gastos no recuperables, estos no se generaron, y para afirmar esto, primero se tiene que entender que es un gasto no recuperable. Esta consideración jamás fue hecha por el Tribunal Arbitral: El Tribunal Arbitral condenó a pagar gastos no recuperables cuando no sabe que son los gastos no recuperables.

118.- La definición de gastos no recuperables, contenida en la Cláusula 10.1.2 del Contrato, es general y no limitativa, por lo que en su momento se prestó a abusos por parte de los Contratista. Sin embargo, el criterio normativo OP-5 de la Secretaría de Contraloría y Desarrollo Administrativo (SECODAM) hoy Secretaría de la Función Pública (SFP)[18], detalló en ejercicio de la facultad que le confiere el artículo 8 de la LAOP, cuáles eran estos gastos en caso de suspensión a los trabajos:

> *1. Las rentas de equipo inactivo o, si resulta más barato, los fletes del retiro y regreso del mismo a la obra;*
> *2. La plantilla de veladores y personal de conservación y vigilancia de las instalaciones y obras, asignados durante la suspensión;*
> *3. Costos de administración de obra en cuanto a honorarios, sueldos y prestaciones del personal técnico y administrativo estrictamente necesario y que tenga una función específica durante la suspensión;*

---

[17] ... La Demandante ha reconocido que esta cantidad no fue satisfecha directamente a EMC, sino que se saldó como consecuencia de un Contrato de Transacción celebrado el 30 de septiembre de 2004 entre COMMISA, EMC y sus respectivas matrices (las compañías Halliburton Brown & Root Limited y European Marine Investments Limited).
[18] Localizable en la dirección electrónica siguiente: http://200.34.175.29:8080/wb3/wb/SFP/op_deroga06.

**4.** *Costo del mantenimiento y renta, si es el caso, de oficinas y demás instalaciones de campo.*

119.- Este criterio estuvo vigente durante la ejecución de los Trabajos, y con relación a la vigencia de la Ley de Adquisiciones y Obras Públicas, aplicable al Contrato. Posteriormente, el Reglamento de la Ley de Obras Públicas y Servicios Relacionados con las Mismas, en su artículo 116, recogió la experiencia en cuanto a gastos no recuperables, definiendo éstos en los términos siguientes:

> *"**Artículo 116.-** Tratándose de suspensión de trabajos el pago de gastos no recuperables se limitará a lo siguiente:*
> I. *Las rentas de equipo o, si resulta más barato, los fletes del retiro y regreso del mismo a la obra;*
> II. *Hasta un dos por ciento de los costos directos para los conceptos de trabajo programados y que no fueron ejecutados durante el periodo de la suspensión. En ningún caso, el monto aplicado podrá ser mayor al determinado por el contratista para los indirectos de las oficinas centrales en su proposición;*
> III. *La plantilla de veladores y personal de conservación y vigilancia de las instalaciones y obras, asignados durante la suspensión;*
> IV. *Costos de administración de obra en cuanto a honorarios, sueldos y prestaciones del personal técnico y administrativo estrictamente necesario y que tenga una función específica durante la suspensión;*
> V. *La mano de obra que sea estrictamente necesaria y que tenga una función específica durante la suspensión y que no haya sido trasladada a otro frente de trabajo;*
> VI. *Costo del mantenimiento y renta, si es el caso, de oficinas y demás instalaciones de campo, y*
> VII. *En su caso, el costo que represente la extensión de las garantías.*
> *Para la determinación de estos gastos se deberán considerar como base para su*

> *cálculo, los programas y costos originalmente propuestos por el contratista, debiéndose ajustar con el último porcentaje de ajuste autorizado antes de la suspensión".*

120.- Examinando esta noción de gastos no recuperables se puede apreciar que PEP no tenía obligación de pagar la renta de las embarcaciones, si le eran más económicas otras soluciones, como regresar las embarcaciones a su lugar de origen, o dejarlas donde estaban, **que fue lo que ocurrió.**

121.- El documento de 15 de marzo de 1999, citado por el Tribunal Arbitral, como base de la cuantificación del inexistente daño, no integra el costo siguiendo esta disposición normativa, así que COMMISA no reclamaba Gastos no Recuperables, o en su caso, claramente se encuentra alegando fuera de la descripción de lo que podía reclamar como gastos no recuperables.

122.- En conclusión, el compromiso de pago nunca fue efectivamente devengado por COMMISA, y mucho menos fue probado el monto del gasto incurrido, como lo exige el Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, norma aplicable al caso por estar vigente durante la vida del Contrato de Obra Público, y determinar los derechos y obligaciones asumidos por las partes. El pago no importa un interés particular, sino público, por consistir en una erogación de recursos federales o ejecución de gasto público, regidos por principios emanados directamente de la Constitución Mexicana, por lo que la determinación de la procedencia del pago **NO** debe tomarse con base en principios del derecho civil, como la analogía o la mayoría de razón, porque se trataría de pagos no justificados o no presupuestados (artículo 126 de la Constitución). El interés a satisfacer es el público derivado de la obra, no el interés particular de COMMISA.

Sirve de apoyo a lo anterior la siguiente tesis judicial:

**CONTRATOS    ADMINISTRATIVOS.    SE**

DISTINGUEN POR SU FINALIDAD DE ORDEN PÚBLICO Y POR EL RÉGIMEN EXORBITANTE DEL DERECHO CIVIL A QUE ESTÁN SUJETOS[19]. La naturaleza administrativa de un contrato celebrado entre un órgano estatal y un particular puede válidamente deducirse de la finalidad de orden público que persigue, identificada también como utilidad pública o utilidad social, así como del régimen exorbitante del derecho civil a que está sujeto. De ello se infiere que los contratos celebrados por un órgano estatal con los particulares están regidos por el derecho privado cuando su objeto no esté vinculado estrecha y necesariamente con el cumplimiento de las atribuciones públicas del Estado y, por lo mismo, la satisfacción de las necesidades colectivas no se perjudique porque en aquellos actos el Estado no haga uso de los medios que le autoriza su régimen especial. Por el contrario, cuando el objeto o la finalidad del contrato estén íntimamente vinculados al cumplimiento de las atribuciones estatales, de tal manera que la satisfacción de las necesidades colectivas no sea indiferente a la forma de ejecución de las obligaciones contractuales, entonces se estará en presencia de un contrato administrativo, siendo válido estipular cláusulas exorbitantes que, desde la óptica del derecho privado, pudieran resultar nulas, pero que en el campo administrativo no lo son, en atención a la necesidad de asegurar el funcionamiento regular y continuo del servicio público.

Juicio ordinario civil federal 1/2000. Jesús Guillermo Puente Cutiño. 20 de febrero de 2001. Unanimidad de diez votos. Ausente: Genaro David Góngora Pimentel. Ponente: Juan Díaz Romero. Secretario: Silverio Rodríguez Carrillo.

El Tribunal Pleno, en su sesión privada celebrada hoy veintinueve de marzo en

---

[19] No. Registro: 189,995. Tesis aislada. Materia(s): Administrativa, Civil. Novena Época. Instancia: Pleno. Fuente: Semanario Judicial de la Federación y su Gaceta. XIII, Abril de 2001. Tesis: P. IX/2001. Página: 324.

> curso, aprobó, con el número IX/2001, la
> tesis aislada que antecede; y determinó que
> la votación es idónea para integrar tesis
> jurisprudencial. México, Distrito Federal, a
> veintinueve de marzo de dos mil uno.

123.- En consecuencia, el análisis sobre la cuantificación de esta controversia así como la condena a PEP, también es ilegal y contraría el orden público y por esa razón procede que se decrete la nulidad del laudo arbitral.

## S E G U N D A

124.- La decisión del Tribunal Arbitral, declarando procedente la pretensión de COMMISA contenida en las llamadas "Controversias Técnicas" 34 y 35, denominada "*Tiempos de espera por retrasos en el inicio de los trabajos de la Castoro 10 y del Bar Protector*", y condenando a PEP a pagar a COMMISA la cantidad de USD $13,923,014.00, es nula porque se refiere a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje, supuestos de nulidad contemplados en el artículo 1457, fracción I, inciso c), del Código de Comercio.

125.- En el procedimiento arbitral y en el Laudo Final se manejaron por el Tribunal Arbitral y las partes, tres conceptos o causas de pedir, perfectamente identificables, como se explicó en el capítulo precedente: i) las cuotas o tarifas de espera (cuotas de reserva); ii) los gastos no recuperables; y iii) los daños y perjuicios.

126.- Las cuotas o tarifas de espera (cuotas de reserva) se contemplan en el último párrafo de la Cláusula 10.1.2 y se definen de la manera siguiente:

> "*En caso de suspensión de los Trabajos por
> causas imputables a PEP durante el período
> en que se encuentren operando la(s)
> embarcación(es), PEP únicamente pagará al*



> Contratista    la(s)    Cuota(s)    de    Espera
> (Reserva-Códigos Nos. 10-01, 10-02, 10-03,
> 10-04 y 10-5) que corresponda(n), según lo
> estipulado en el Anexo "C" de este Contrato.
> Lo anterior en la inteligencia de que en este
> supuesto no aplica el pago de gastos no
> recuperables".

127.- Los gastos no recuperables se definen en el primero y segundo párrafo de la Cláusula 10.1.2 del Contrato, de la manera siguiente:

> "En el caso de suspensión de los Trabajos en
> términos de lo estipulado en la Cláusula 10.1,
> PEP pagará al Contratista, **a solicitud de**
> **éste,** los trabajos ejecutados así como los
> gastos no recuperables en que hubiere
> incurrido, siempre que, a juicio de PEP, éstos
> sean    razonables,    estén    debidamente
> comprobados y se relacionen directamente
> con el presente Contrato".

Esta definición está tomada del artículo 72 fracción I de LAOP que establece:

> "**Artículo 72.-** En la suspensión, rescisión
> administrativa o terminación anticipada de los
> contratos de obra pública, deberá observarse
> lo siguiente:
> I. Cuando se determine la suspensión de la
> obra o se rescinda el contrato por causas
> imputables a la dependencia o entidad, ésta
> pagará los trabajos ejecutados, así como los
> gastos no recuperables, siempre que éstos
> sean    razonables,    estén    debidamente
> comprobados y se relacionen directamente
> con el contrato de que se trate; .......".

La definición de gastos no recuperables contenida en la LAOP, se expresaba de manera general, y no limitativa, por lo que se prestaba a reclamaciones absurdas de los Contratistas. Por tal razón, la SECODAM realizó

una interpretación administrativa de la   disposición en comento, de conformidad con el artículo 8 de la LAOP[20].

El criterio normativo OP-5 de la Secretaría de   Contraloría y Desarrollo Administrativo (SECODAM) hoy Secretaría de la Función Pública (SFP)[21], con relación al artículo 72 de la LAOP, detalla cuáles son estos gastos en caso de suspensión a los trabajos:

> **1.** *Las rentas de equipo inactivo o, si resulta más barato, los fletes del retiro y regreso del mismo a la obra;*
> **2.** *La plantilla de veladores y personal de conservación y vigilancia de las instalaciones y obras, asignados durante la suspensión;*
> **3.** *Costos de administración de obra en cuanto a honorarios, sueldos y prestaciones del personal técnico y administrativo estrictamente necesario y que tenga una función específica durante la suspensión;*
> **4.** *Costo del mantenimiento y renta, si es el caso, de oficinas y demás instalaciones de campo.*

Posteriormente, la Ley de Obras Públicas y Servicios Relacionados con las Mismas, que sustituyó a la LAOP, a través del artículo 116 de su Reglamento, define lo que son los gastos no recuperables en caso de suspensión temporal de los trabajos.

> **"Artículo 116.-** *Tratándose de suspensión de trabajos el pago de gastos no recuperables se limitará a lo siguiente:*
> I.   *Las rentas de equipo o, si resulta más barato, los fletes del retiro y regreso del mismo a la obra;*

---

[20] Artículo 8.- **La Secretaría, la Contraloría** y la Secretaría de Comercio y Fomento Industrial, en el ámbito de sus respectivas competencias, estarán facultadas para interpretar esta Ley a efectos administrativos.   La Secretaría y la Contraloría dictarán las disposiciones administrativas que sean estrictamente necesarias para el adecuado cumplimiento de esta Ley, tomando en cuenta la opinión de la otra secretaría, así como, cuando corresponda, de la Secretaría de Comercio y Fomento Industrial. Tales disposiciones se publicarán en el Diario Oficial de la Federación.
[21] Localizable en la dirección electrónica siguiente: http://200.34.175.29:8080/wb3/wb/SFP/op_deroga06.

II. *Hasta un dos por ciento de los costos directos para los conceptos de trabajo programados y que no fueron ejecutados durante el periodo de la suspensión. En ningún caso, el monto aplicado podrá ser mayor al determinado por el contratista para los indirectos de las oficinas centrales en su proposición;*

III. *La plantilla de veladores y personal de conservación y vigilancia de las instalaciones y obras, asignados durante la suspensión;*

IV. *Costos de administración de obra en cuanto a honorarios, sueldos y prestaciones del personal técnico y administrativo estrictamente necesario y que tenga una función específica durante la suspensión;*

V. *La mano de obra que sea estrictamente necesaria y que tenga una función específica durante la suspensión y que no haya sido trasladada a otro frente de trabajo;*

VI. *Costo del mantenimiento y renta, si es el caso, de oficinas y demás instalaciones de campo, y*

VII. *En su caso, el costo que represente la extensión de las garantías.*
*Para la determinación de estos gastos se deberán considerar como base para su cálculo, los programas y costos originalmente propuestos por el contratista, debiéndose ajustar con el último porcentaje de ajuste autorizado antes de la suspensión".*

128.- Es importante señalar que el Tribunal Arbitral ha considerado infundada y equivocadamente que los gastos no recuperables se causan cuando se retrasa el inicio o la continuación de los trabajos, (párrafo 168, página 44 del Laudo Final), lo cual es falso, tal como  se demostró en el apartado primero anterior a este capítulo, cuando se explicó que el retraso en el inicio de los trabajos se compensa únicamente con prórroga en la fecha de terminación de los trabajos, y además se corrobora lo anterior con la simple lectura a la primera oración del primer párrafo de la cláusula 10.1.2 del Contrato que establece: *"En el caso de suspensión a los **trabajos** ... ".*

129.- La indemnización por daños y perjuicios, es una exigencia genérica que tiene como objeto compensar económicamente a una persona por toda afectación a su patrimonio, o la privación de una ganancia lícita.

130.- La acción indemnizatoria es una acción fundada en la legislación civil y no en el Contrato o en la LAOP, de conformidad con los artículos 1910, 1915 y 1934 del Código Civil Federal.

131.- Derivado de lo anterior, son claramente distinguibles contractualmente y por ley los conceptos de "tarifa de espera", "gasto no recuperable" e "indemnización".

132.- En el presente caso, la pretensión de COMMISA, transcrita en el párrafo 80, página 23 del Laudo Final, con relación a las Controversias 34 y 35, era la siguiente:

> *"Con base en las reclamaciones antes señaladas, Commisa demanda una compensación de aproximadamente US$81 millones de dólares. Dicha suma se calcula de acuerdo con el Contrato EPC-28. En caso de que por alguna razón el Tribunal Arbitral determinará que las cuotas o tarifas por tiempos de espera o de reserva que se establecen en el Contrato EPC-28 no son aplicables para el cálculo de la compensación correspondiente a estos retrasos, Commisa atentamente solicita que se dicte laudo conforme al cual se decrete el pago de una indemnización a cargo de PEP que resulta suficiente a para compensar a Commisa por los daños y perjuicios sufridos como consecuencia de los retrasos antes sufridos. Para tales efectos, Commisa estima que dichos daños y perjuicios ascienden aproximadamente a US$81 millones de dólares".*

Es decir, en el arbitraje, COMMISA reclamaba lo siguiente:

i)     El pago de las Cuotas o Tarifas por Tiempos de Espera o Cuotas de
       Reserva que se establecen en el Contrato relativo al Proyecto IPC-28, y
       para el caso de que dichas cuotas no fueren aplicables,

ii)    El pago de una indemnización por daños y perjuicios.

133.- El Tribunal Arbitral declaró improcedente la reclamación por el pago de
cuotas o tarifas de reserva o de espera, según se desprende de los apartados
165, 166 y 1667, página 44 del Laudo Final. Luego entonces, el Tribunal Arbitral
sólo tenía pendiente abocarse a examinar la procedencia de la acción
indemnizatoria.

134.- Sin embargo, el Tribunal Arbitral nunca consideró en el Laudo Final la
acción indemnizatoria, pero en cambio resolvió, sobre la base de pago de gastos
no recuperables, tal como se desprende de los párrafos 168 a 183, páginas 44 a
47, del Laudo Final, cuestión que no era materia del arbitraje.

En efecto, **COMMISA jamás solicitó ser resarcida con base en el pago de
gastos no recuperables, requisito indispensable para su concesión, en los
términos del primer párrafo de la Cláusula 10.1.2 del Contrato**, y en los
términos del artículo 19 del Reglamento de Arbitraje de la CCI.

135.- El Tribunal Arbitral, al resolver demandas o cuestiones que no eran
materia del arbitraje, ha excedido sus funciones e infringido gravemente el
procedimiento de arbitraje acordado por las partes, y por ello el laudo arbitral es
nulo con base en lo dispuesto por el artículo 1457, fracción I, inciso d), del Código
de Comercio.

136.- En la cláusula 23.2 del Contrato, que es el acuerdo de arbitraje celebrado
entre las partes, se pactó que el arbitraje se llevaría a cabo de conformidad con

las Reglas de Arbitraje expedidas por la CCI. El artículo 19 de las reglas de arbitraje de la CCI establece que:

> *"Una vez firmada el Acta de Misión, o aprobada por la Corte, ninguna de las partes podrá formular nuevas demandas principales o reconvencionales, que estén fuera de los límites fijados en ella, salvo autorización del Tribunal Arbitral el cual, al decidir al respecto, deberá tener en cuenta la naturaleza de las nuevas demandas, la etapa en que se encuentra el proceso arbitral y las demás circunstancias que sean pertinentes"*

137.- El Tribunal Arbitral introdujo oficiosamente al pleito nuevas demandas, sin solicitud de las partes, sin una indicación expresa de que se trataba de nuevas demandas, de mala fe, y en beneficio de COMMISA. Por esta razón, también resulta nulo el laudo arbitral.

138.- Por otro lado, en la Orden Procesal No. 6 (comunicación A 39 de fecha 13 de diciembre de 2006) expedida por el Tribunal Arbitral, éste decretó diligencias para mejor proveer en los términos del artículo 20.5 del Reglamento de Arbitraje de la CCI. Con relación a las Controversias 34 y 35, apartado 2, el Tribunal Arbitral solicitó a ambas partes responder a las preguntas siguientes:

> *"¿Cuáles son los costos directos causados a la Demandante por el retraso en la incorporación al trabajo de las embarcaciones Bar Protector y Castoro 10?*
>
> *En especial, ¿cuáles son los importes satisfechos a EMC[22] como indemnización por los retrasos?*
>
> *¿Se han generado otros costos directamente por esta causa?".*

---

[22] EMC es la subcontratista dueña de las embarcaciones.

139.- En un principio PEP no dudó de la buena fe del Tribunal Arbitral, porque aparentemente estos cuestionamientos tenían relación con la pretensión de COMMISA por una indemnización por daños y perjuicios. Además, COMMISA, al desahogar las diligencias mediante la comunicación C 44, que se acompaña como prueba, expresamente manifestó que los únicos costos que reclamaba eran las tarifas de espera pactadas en el tercer párrafo del artículo 10.1.2 del Contrato (no los costos directos, no los importes pagados a EMC, y no los costos indirectos), prestación que el Tribunal Arbitral consideró a la postre improcedente (párrafos 166 y 172 del Laudo Final).

140.- No obstante el desahogo de las partes al requerimiento del Tribunal Arbitral, el Tribunal Arbitral, mediante comunicación A 49 de fecha 31 de julio de 2007, solicitó de nueva cuenta, a las partes, prueba adicional sobre lo siguiente:

> 2.   El   Tribunal   Arbitral   se   encuentra actualmente ante la necesidad de requerir más información sobre un aspecto concreto de las Controversias Técnicas 34 y 35, para poder así dar por concluida la redacción del laudo. Se trata de determinar, dentro de los costos   de   arrendamiento   de   las embarcaciones Castoro 10 y Bar Protector:
>
> (i)   cuál es la **tarifa justa y razonable** a la que se debe remunerar la posposición en el inicio de los trabajos y
> (ii)   cuál   ha   sido   la   efectivamente satisfecha por Commisa a EMC ....
>
> 4. El Tribunal Arbitral solicita a COMMISA que, antes del 10 de agosto de 2007, presente alegaciones y aporte toda la prueba que estime necesaria para demostrar:
>
> (i)   que las tarifas indicadas constituyen, en el marco del arrendamiento, **un costo   justo   y   razonable**   por posposición   en   la   iniciación   del programa de trabajo, y

> *(ii)    que las tarifas indicadas fueron*
> *efectivamente incurridas y pagadas*
> *por Commisa.*

141.- De constancias de autos y de la narrativa hecha por mi representada, se puede apreciar que COMMISA nunca reclamó el pago de costos o tarifas justas y razonables, y así lo reconoció al contestar la diligencia de prueba adicional. En este momento, PEP todavía desconocía la intención del Tribunal.

142.- Para ser más claro en la postura que guardaba COMMISA sobre el punto en estudio y lo cual no deja lugar a dudas sobre la naturaleza de su reclamo, a continuación se transcribe la respuesta de COMMISA formulada a la comunicación A 49 del tribunal arbitral:

> *"...Commisa se encuentra sorprendida y*
> *preocupada por la solicitud por parte del*
> *Tribunal Arbitral posterior a la audiencia de*
> *esta información, la cual nunca fue discutida*
> *por PEP en sus escritos y no es relevante*
> *para las cuestiones planteadas por las*
> *Controversias Técnicas 34 y 35. Commisa*
> *respetuosamente solicita que el Tribunal*
> *Arbitral clarifique por que solicita dicha*
> *información con respecto a los importes*
> *pagados por Commisa a EMC para las*
> *embarcaciones por el tiempo de espera*
> *reclamado en las Controversias Técnicas 34*
> *y 35. Commisa pide dicha clarificación*
> *porque fue enteramente revelado en los*
> *escritos y en la audiencia en esta causa (y no*
> *existe disputa verdadera), que, de*
> *conformidad con el contrato EPC-28, los*
> *importes pagados por Commisa a EMC no*
> *tienen relevancia alguna para las*
> *reclamaciones de Commisa por tiempo de*
> *espera en las Controversias Técnicas 34 y*
> *35.*
>
> *El contrato PC-28, el cual fue preparado por*
> *PEP, contiene tarifas unitarias especificadas*

*y denominadas "tarifas por tiempo de espera" por el Castoro 10 y el Bar Protector.*

*El contrato EPC-28 estipula que dichas tarifas se le pagarían a Commisa por PEP por concepto de un tipo de trabajo adicional definido como "tiempo de espera". Entre otras cosas, el anexo C del contrato EPC-28 estipula que PEP le pagará a Commisa las tarifas por tiempo de espera por cualquier periodo durante el cual las embarcaciones de Commisa permanecían en espera por falta de acceso al trabajo durante el periodo del contrato EPC-28. Los pagados por Commisa a EMC son irrelevantes para la determinación sobre si PEP le debe a Commisa las tarifas por tiempo de espera por el tiempo de espera reclamado en las Controversias Técnicas 34 y 35. En efecto, durante el transcurso del contrato EPC-28, PEP aceptó y pagó otros periodos de espera a las tarifas por tiempo de espera conforme al contrato EPC-28 y nunca afirmó que los tiempos de espera pagados por Commisa a EMC tenían relevancia alguna para dicha obligación. Como ya se ha notado, las Controversias Técnicas 34 y 35 solamente buscan cobrar las tarifas por tiempo de espera pactadas en el contrato EPC-28 (reducidas para tomar en cuenta los esfuerzos de mitigación por parte de Commisa) por el tiempo de espera experimentado por Commisa al principio del proyecto EPC-28. Las Controversias Técnicas 34 y 35 no están fundamentadas en los importes pagados por Commisa de conformidad con su subcontrato con EM.*

*En vista de lo anterior, Commisa respetuosamente solicita que el Tribunal Arbitral le clarifique a las partes el fundamento de su solicitud que Commisa proporciones información con respecto a los importes pagados por Commisa a EMC por el tiempo de espera reclamado en alas Controversias Técnicas 34 y 35."*

143.- Hasta que se dictó el laudo, PEP entendió qué es lo que buscaba el Tribunal Arbitral en su comunicado A 49 (párrafos 168,169 y 170) y a que el Tribunal se refería con el concepto de gastos no recuperables mencionados en el segundo párrafo de la cláusula 10.1.2 del contrato, y en la Orden de Cambio no. 1 Rev. 2 (prestación que no fue reclamada por COMMISA). El Tribunal Arbitral nunca le hizo notar a las partes que se trataba de una nueva demanda, ni que las partes discutieran su procedencia, sino solamente solicitó a COMMISA que acreditara su monto y a PEP que desmintiera el monto propuesto por COMMISA, actuando reticentemente, y por tanto de mala fe.

144.- Así, de manera oficiosa, y sin consentimiento de las partes, sobre todo de PEP, el Tribunal Arbitral introdujo nuevas demandas, con la fundamentación falsa de que se trataba de prueba adicional, en contravención al Reglamento de Arbitraje de la CCI (19), al contrato (cláusula 10.1.2 párrafo segundo), y a la imparcialidad del juzgador, por considerar el interés de COMMISA sobre cualquier otra cuestión.

145.- Tanto PEP como COMMISA objetamos el comunicado A 49 del Tribunal en el cual ordena la rendición de prueba adicional en los términos que ya quedaron precisados con anterioridad.

146.- El Tribunal Arbitral respondió mediante comunicación A 50 de fecha 6 de agosto de 2007, en el sentido de que se traba de información relevante para la preparación de las deliberaciones que conducirían a la redacción final del laudo.

147.- Por su parte, PEP, en su comunicado R 39 de 7 de agosto de 2007, se opuso a las pruebas adicionales ordenadas en el comunicado A 49 del 31 de julio de 2007, fundándose en que el Tribunal Arbitral excedía los límites del artículo 20.5 del Reglamento de Arbitraje de la CCI, relativas a las pruebas para mejor proveer, y que infringía las reglas de un procedimiento de estricto derecho (capítulo I incisos 1 y 8), y además de que violaba el principio de igualdad de las



# EXHIBIT 1
Part 4

partes y dejaba en indefensión a PEP. De igual manera, PEP objetó en el capítulo III del comunicado R 39, el documento de 15 de marzo de 1999, referido en el apartado Primero de este capítulo.

148.- En su comunicado A 51 el Tribunal Arbitral remite al laudo, para la respuesta a estas objeciones de PEP, lo que efectivamente hizo en los párrafos 184 a 189 del Laudo Final, aduciendo que no ha excedido su mandato y que tampoco había infringido el artículo 1432 del Código de Comercio Mexicano, porque se trataba de una pretensión de COMMISA, comprendida en el apartado C (c) relativa a las *Pretensiones y peticiones de la Parte Demandante* del Acta de Misión, y de igual manera se encontraba listada en el capítulo de *Puntos litigiosos por resolver*, contenido en el apartado D del mismo documento.

149.- Sin embargo, en ninguno de estos apartados se menciona el concepto de costos justos o razonables o gastos no recuperables. De la lectura del Acta de Misión, que se ofrece como prueba, únicamente se desprende que COMMISA solicita el pago de tarifas de espera pactadas en el contrato para el evento de suspensión a los trabajos con embarcaciones, o el pago de las mismas tarifas de espera a título de indemnización por daños y perjuicios. Así, de la simple lectura del Acta de Misión se demuestra la falta de fundamentación y motivación del laudo.

150.- No cabe duda que el laudo atenta contra el sentido común, puesto que la propia COMMISA reconoció que no estaba solicitando el pago de costos justos y razonables o gastos no recuperables. Si en contra del texto claro de la solicitud de COMMISA, y de su propia explicación sobre los términos de la solicitud, el Tribunal decide que COMMISA pretendía otra cosa, es evidente que se trata de una resolución incongruente y absurda, carente de fundamentación y motivación, violando el estricto derecho para resolver en conciencia y de manera arbitraria.

Por esta razón también procede declarar nulo el laudo arbitral.

151.- Por otro lado, el Tribunal Arbitral consideró que no violó el principio de igualdad de las partes en los párrafos 192 a 194 del Laudo Final, solamente porque le concedió derecho a PEP a replicar y ofrecer prueba sobre el punto. Este es un argumento ilegal del Tribunal Arbitral, toda vez que, por un lado, es indudable que el Tribunal en el caso suplió la deficiencia de la queja o mejoró la demanda de COMMISA, sin estar autorizado por el Reglamento de Arbitraje, ni por las partes, ni por el sano juicio, atendiendo a la igualdad de las partes en el procedimiento, al ser COMMISA una empresa mexicana, subsidiaria de Halliburton, una de las mayores empresas de construcción en el mundo; y, por otro lado, nunca le reveló a PEP que se trataba de una nueva demanda o una mejora en la demanda de COMMISA.

152.- En los párrafos 195 a 198 del Laudo Final, el Tribunal Arbitral consideró que su conducta no había dejado en indefensión a PEP, porque tuvo la oportunidad de alegar y probar en contra de la acción de COMMISA por daños. Ésta consideración del Tribunal Arbitral, carece de sustento legal alguno, toda vez que si la litis planteada desde el Acta de Misión era determinar el pago de las tarifas de espera o el pago de una indemnización por daños y PEP se excepcionó de las pretensiones de COMMISA en los términos planteados, entonces, si el Tribunal Arbitral resolvió sobre una cuestión distinta a la planteada, nos encontramos frente a un exceso del mandato que las partes le confirieron al Tribunal Arbitral y ante una incongruencia del laudo, puesto que es claro que el Tribunal Arbitral actuó oficiosamente y a espaldas de PEP.

153.- No puede alegar el Tribunal Arbitral que las diligencias para mejor proveer fueron suficientes para salvaguardar el interés de PEP, porque **lo que en realidad lo que salvaguarda el interés de PEP es un proceso debidamente observado tratándose de nuevas demandas, y no un mero trámite para mejor proveer.**

154.- La observancia del debido proceso está previsto como causal de nulidad contemplada en el artículo 1457 fracción I inciso b) del Código de Comercio, al señalar como causal de nulidad cualquier evento que impida a una de las partes, como en el caso, "hacer valer sus derechos"; pero además es un imperativo de orden público contenido en el artículo 14 de la Constitución que precisamente protege el derecho de audiencia y las formalidades esenciales del procedimiento.

155.- Por otro lado, la incongruencia del laudo al resolver en el mismo demandas no planteadas por las partes, infringe el acuerdo de las partes sobre el procedimiento arbitral, por no ajustarse al artículo 19 del Reglamento de Arbitraje de la CCI, incurriendo en la causal de nulidad contemplada en el inciso d) de la fracción I del artículo 1457 del Código de Comercio.

156.- En consecuencia, el análisis y la resolución del tribunal arbitral sobre la cuantificación de esta controversia, también es ilegal y contraría el orden público, por lo que resulta nulo el laudo arbitral.

## **T E R C E R A**

157.- El laudo del Tribunal Arbitral, que declara procedente la pretensión de COMMISA contenida en las denominadas "Controversias Técnicas" 34 y 35, denominada "*Tiempos de espera por retrasos en el inicio de los trabajos de la Castoro 10 y del Bar Protector*", y condenando a pagar a PEP la cantidad de USD $13,923,014.00, es nulo, como se verá en la relatoría de los siguientes hechos.

158.- Las consideraciones vertidas por el Tribunal Arbitral, visibles en el Capítulo VII.1 del Laudo, de la página 36 a la 50, evidencian que la decisión encuadra dentro de los supuestos de nulidad contemplados en el artículo 1457, fracción I, inciso c), del Código de Comercio, que dispone la nulidad del Laudo

cuando el mismo "... *se refiera a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje*".

159.- La Cláusula 23.2 del Contrato pactado por las partes establece que COMMISA no tiene derecho a reclamar y que PEP no es responsable por daños legales o contractuales, ante el contratista o subcontratista, que no estuvieran específicamente previstas en el Contrato. Es decir, contractualmente se limitaba la responsabilidad de PEP a lo pactado en el contrato, excluyendo por tanto, el pago de cualquier indemnización prevista en leyes.

160.- En el ámbito del acuerdo de arbitraje, dicha estipulación contractual determinaba que todo reclamo, controversia o disputa por daños, que no estuviera específicamente prevista en el contrato, no era susceptible de ser considerada Controversia Técnica, es decir, una disputa relacionada o vinculada al contrato.

161.- Además, también se pactó que antes de que se solicitara la solución de la disputa en el marco de un arbitraje, debería de haber existido un procedimiento previo, mediante el cual se resolvieran las controversias. En otras palabras, toda reclamación por daños no prevista en el contrato, de ninguna manera puede referirse a una controversia o disputa relacionada con la aplicación o ejecución del contrato, o su incumplimiento.

162.- La cláusula 23.3 del Contrato, en su parte final, estableció que solamente si no se llegaba a algún acuerdo mediante la formalización de la Controversia Técnica, entonces se podría acudir para ello al arbitraje. Es decir, no podía ser materia de arbitraje cualquier prestación no pactada en el contrato, que primeramente no hubiese sido reclamada o convertida en controversia técnica.

163.- En resumen, la cláusula 23.2 del Contrato establece en qué casos y bajo qué circunstancias procede el arbitraje: es decir, si la reclamación no es una

prestación contractual no solamente es improcedente su pago, sino que tampoco puede ser materia de arbitraje.

164.- Toda vez que la compensación económica otorgada por el Tribunal Arbitral, por retrasos en el inicio de los Trabajos de la Castoro 10 y del Bar Protector, en las mal llamadas "Controversias Técnicas 34 y 35" no estaban contempladas en el Contrato, estas compensaciones o pagos no pueden ser materia alguna de disputa o reclamación, ni tampoco pueden ser materia de arbitraje, y al resolver favorablemente a COMMISA las mismas, el Tribunal Arbitral infringe el acuerdo de arbitraje contenido en la Cláusula 23.3 del Contrato que señala que una disputa o controversia sólo puede ser sometida a arbitraje si previamente fue sometida formalmente al procedimiento de Controversia Técnica prevista en la Cláusula 23.2, o mejor dicho, si la prestación no estaba pactada en el contrato, no tiene derecho el contratista a realizar reclamación alguna, y el Tribunal Arbitral ni siquiera puede examinar si la Contratista tiene derecho a su pago ni a otorgársela en el laudo.

165.- Este es una cuestión de fondo, relacionada claramente con disposiciones contractuales establecidas para evitar reclamaciones infundadas de COMMISA, no pactadas en el Contrato. También es importante hacer notar a Su Señoría, que es infundado que el Tribunal Arbitral señale que las reclamaciones hechas por COMMISA se encuentran relacionadas al contrato porque se funda en hechos del contrato, según lo establece en los párrafos 103, 104 y 105 del Laudo Final, cuando dichos hechos no tienen ninguna sanción pactada en el contrato, porque lo que al final demanda COMMISA es el pago en dinero de una obligación.

166.- En los dos apartados precedentes (primera y segunda) de este capítulo, se ha demostrado que no existía ninguna prestación económica pactada en el contrato para el evento de retraso en el inicio de los trabajos por falta de acceso a las plataformas, o por el retraso en la puesta en servicio de las embarcaciones, y además en este capítulo se ha demostrado que COMMISA no



tenía derecho a reclamar daños legales, y es por ello, que es claro que el Tribunal Arbitral ha infringido el acuerdo de arbitraje, y ha resuelto materias no pactadas por las partes para ser resueltas en arbitraje, por lo que el laudo ha sido emitido en infracción al inciso c) de la fracción I del artículo 1457 del Código de Comercio.

167.- En consecuencia, cualquier análisis y la resolución del tribunal arbitral sobre la procedencia y cuantificación de esta controversia, también es ilegal y contraría el orden público, por lo que resulta nulo el laudo arbitral.

### C U A R T A

168.- La decisión del Tribunal Arbitral, declarando procedente la pretensión de COMMISA contenida en las denominadas "Controversias Técnicas" 34 y 35, denominada *Tiempos de espera por retrasos en el inicio de los trabajos de la Castoro 10 y del Bar Protector*", y condenando a PEP a pagar a COMMISA la cantidad de USD $13,923,014.00, está afectada de la nulidad contemplada en el artículo 1457, fracción I, inciso c), del Código de Comercio, que dispone la nulidad del Laudo cuando el mismo "... *se refiera a una controversia no prevista en el acuerdo de arbitraje o contiene decisiones que exceden los términos del acuerdo de arbitraje*".

169.- El Tribunal Arbitral ha infringido requisitos de procedibilidad, que impiden considerar a esta controversia como materia de arbitraje. Por otro lado, la conducta de COMMISA durante el arbitraje ha impedido que se pueda justificar cualquier pago en su favor, como lo exigen normas de orden público mexicano.

170.- En el Contrato celebrado entre PEP y COMMISA se pactó que sólo serían materia de arbitraje aquéllas disputas o reclamaciones que fueran formalizadas previamente como Controversias Técnicas. En efecto, en las cláusulas 23.2 y 23.3 del Contrato, las partes pactamos lo siguiente:

"23.2 **_Controversias    Técnicas._** El
Contratista no tendrá derecho a efectuar
ningún reclamo y PEP no será responsable
por daños legales (incluyendo negligencia) o
contractuales ante el Contratista, sus
proveedores secundarios o subcontratistas,
excepto en los casos específicamente
previstos en este Contrato.

Para efectos de esta Cláusula se entenderá
por Controversia Técnica toda diferencia que
surja por cualquier reclamo o sea atribuible a
la interpretación o ejecución de este
Contrato, entre el Supervisor y el Contratista,
en relación con los Anexos Técnicos del
Contrato (A, B, B-1, B-2, B-3, CEV, DT, DT-1,
DT-2.1, DT-2.2, DT-3, DT-4, E-2, F-1 Y F-2)

Si por cualquier motivo el Supervisor y el
Contratista no coinciden en la apreciación
para resolver un reclamo de ajuste derivado
de una Controversia Técnica, _el Contratista_
_deberá hacer formal dicha Controversia_
_Técnica por escrito al Supervisor y solicitarle_
_la determinación correspondiente. Este tipo_
_de solicitud del Contratista deberá ser_
_claramente identificado indicando que se_
_trata de una Controversia Técnica sujeta a_
_resolución al amparo de esta Cláusula 23,_
_debiendo contener un resumen de los hechos_
_en controversia y la propuesta del Contratista_
_para resolverlos._


................................................................................
................................................................................"


"23.3 **_Arbitraje._** Cualquier controversia,
reclamación, diferencia o disputa que
sobrevenga o se relacione o esté vinculada
con este Contrato o el incumplimiento del
mismo será dirimida finalmente mediante
arbitraje conducido en el Distrito Federal,
México, de acuerdo con las Reglas de
Conciliación y Arbitraje de la Cámara
Internacional de Comercio que estén en vigor
en ese momento. El número de árbitros será
de tres y el idioma para conducir el arbitraje

> será el español. **No obstante lo anterior,**
> **cualquier controversia técnica deberá ser**
> **sometida previamente al procedimiento**
> **previsto en la Cláusula 23.2 y sólo en caso**
> **de que mediante dicho procedimiento no**
> **se logre un acuerdo entre las partes, éstas**
> **quedarán facultadas para acudir al**
> **recurso previsto en la Cláusula 23.3".**

171.- De conformidad con las Cláusulas contractuales anteriormente transcritas, por una parte, pueden haber simples controversias, disputas o reclamos, y por otra parte, controversias técnicas formales que deben plantearse por escrito, de manera solemne, especificando en el documento que se trata de una controversia técnica, proporcionando los hechos que motivan la reclamación y una propuesta de solución.

172.- Estos pactos contractuales son de suma importancia, toda vez que la formalización del reclamo en Controversia Técnica, convierte a la disputa o reclamación en materia de arbitraje, de conformidad al acuerdo suscrito entre las partes.

173.- De igual manera, únicamente esta actuación, la formalización del reclamo en Controversia Técnica, origina el procedimiento para obtener un documento justificativo de pago, en los términos del artículo 44 fracción III del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público Federal, y artículo 66, fracción III, del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria, ya transcritos en el apartado primero de este capítulo. En otras palabras, no puede constituirse una obligación de pago a cargo del erario público federal mientras no exista un documento justificativo de dicho pago.

174.- En esos términos, la parte final del cuarto párrafo, y la inicial del quinto siguiente, de la Cláusula 23.2 del Contrato señalan lo siguiente:

> *"Lo anterior en la inteligencia de que
> cualquier determinación de modificación
> técnico-contractual que implique o
> necesariamente deriven en una ampliación
> del monto del Contrato o del plazo de
> ejecución establecidos en las Cláusulas 3.1 y
> 4.1, respectivamente, deberá contar con la
> previa aprobación por escrito del
> representante del Proyecto....Una vez
> recibida la aceptación escrita por parte del
> Contratista de la determinación efectuada por
> el supervisor, se modificará el Contrato en lo
> conducente y se implementará la
> determinación".*

175.- La Cláusula 5 del Contrato *"Modificaciones al Contrato"* establece que *"Las partes convienen en que por razones fundadas y explícitas **y a través de la suscripción de un convenio,** PEP podrá modificar el Contrato, en términos de lo establecido en el artículo 70 de la Ley de Adquisiciones y Obras Públicas".*

176.- El tribunal arbitral, que se obligó a llevar el arbitraje y dictar el laudo conforme a las Leyes Federales Mexicanas, conocía o debía conocer tales normas y resolver conforme a dichas normas y no lo hizo.

177.- En efecto, como quedó demostrado en el juicio de Arbitraje, la demandante COMMISA, presentó y formalizó extemporáneamente esta controversia, en un momento en que por disposición contractual, ya no podía ser atendida, por lo que la misma no podía ser materia del arbitraje ni ser válidamente considerada.

178.- Del Acta de Recepción Física Total de los trabajos de 30 de agosto de 2002, que se anexa como prueba a la presente solicitud, se evidencia que en esa fecha, COMMISA no había planteado formalmente una controversia técnica por obstrucciones (C.T. 19), pago de diferencias por tiempos de espera por trabajos de la Castoro 10 en plataformas (C. T. 27), por retrasos en el inicio de los trabajos con embarcaciones en los términos y condiciones contractuales (C. T. 34 y 35), o

por retrasos por malos tiempos. (C. T. 36) Véase también el Voto Particular del árbitro D. Darío U. Oscós que es parte integrante del Laudo Final.

179.- En el Acta de Recepción Física Total del Contrato PEP-O-IT-136/98 de 30 de agosto de 2007, en la página 17 (folio 1158), se establece un capítulo titulado "RECLAMOS EN ELABORACIÓN POR COMMISA". Estos reclamos pendientes de elaboración se dividen en varios paquetes de reclamaciones, que son los siguientes:

Los paquetes 1 a 5 se refieren a diversos extraordinarios relativos a trabajos de construcción relativos al retiro de obstrucciones, que en laudo se decidieron como Controversia Técnica 19.

El Paquete 7 se refiere a "Afectaciones por condiciones climatológicas (Castoro 10 y Bar Protector), que en laudo se decidieron como Controversia Técnica 36.

**En el paquete 13 se comprende la reclamación por "Retraso en el inicio de la construcción por falta de disponibilidad de las plataformas" (Notificación de Cambio 23), que en laudo se decidieron como Controversias Técnicas 34 y 35; la reclamación por "Variación de costos de trabajos en tuberías partes superiores (top sides), que en laudo se decidieron como Controversia Técnica 27.**

180.- Es de suma importancia señalar que el Acta de Recepción Física Total de los Trabajos fue firmada tanto por los representantes de COMMISA, Ingenieros Juan Manuel Herrera y Nicolás Martínez Bocanegra, así como por los representantes de PEP. Es preciso hacer notar, de igual manera, que el listado de Reclamos o Controversias Técnicas en proceso de elaboración, fue una manifestación de COMMISA, tal como se desprende del párrafo puesto al pie del listado y que a la letra dice:

"LA CONTRATISTA MANIFIESTA QUE FALTA INCLUIR EN ESTE CUADRO EL MONTO DE ALGUNOS PRECIOS (como en la reclamación referente a malos tiempos, es decir, en esta fecha ni siquiera tenía COMMISA una cantidad líquida) EN LO REFERENTE A OBRA EXTRAORDINARIA EJECUTADA ASÍ COMO DIVERSOS RECLAMOS QUE HASTA EL MOMENTO SE ENCUENTRAN EN PROCESO DE ELABORACIÓN".

181.- La preclusión del derecho de COMMISA para ventilar sus reclamos mediante el arbitraje, va aparejada de la preclusión de su derecho a reclamar de PEP el pago de cualquier cantidad de dinero por estos reclamos, de conformidad con las consideraciones siguientes:

El Anexo B Sección 5, del Contrato, denominado "Modificaciones" establece que "*toda demora del contratista para dar aviso o presentar la propuesta a que se refiere el párrafo anterior, será motivo suficiente para rechazar la reclamación si el retraso perjudica a PEP y en la medida que lo haya perjudicado. **En ningún caso se considerará una reclamación del Contratista si se hace después de la Recepción Parcial o Total ...**".

Lo cierto es que para efectos del arbitraje, COMMISA tenía que haber formalizado previa y oportunamente su Controversia Técnica, como cumplimiento de una condición *sine qua non*, tal como lo exige el acuerdo de arbitraje contenido en la Cláusula 23.3 del Contrato de Obra Pública. Si no fue así, dicha Controversia Técnica no podía ser materia de arbitraje, por lo que las consideraciones del Tribunal Arbitral se refieren a una controversia no prevista en el acuerdo de arbitraje, ya que sólo controversias técnicas formales pueden ser materia de arbitraje, o contiene decisiones que exceden los términos del acuerdo de arbitraje, ya que el Tribunal Arbitral sólo puede resolver en definitiva, controversias técnicas.



182.- Siendo así las cosas, y toda vez que el Tribunal Arbitral resolvió las Controversias Técnicas 34 y 35, es claro que ha infringido el acuerdo de arbitraje al haber dejado de observar los requisitos de procedibilidad, o condiciones para convertir la controversia técnica en materia del arbitraje, según el párrafo 199 del Laudo Final.

Por ello el laudo dictado por el tribunal arbitral resulta nulo.

183.- No existe justificación para que el Tribunal Arbitral haya violado las estipulaciones contractuales relativas a Controversias Técnicas y Arbitraje que se expresaron en las Cláusulas 23.2 y 23.3 del Contrato, para impedir que un simple reclamo, fuera materia del arbitraje. La inconformidad de COMMISA con las condiciones contractuales no hace arbitrable su reclamación; para ello era necesario que le solicitara formalmente a PEP que decidiera sobre la materia, durante la vigencia del Contrato, lo cual nunca hizo, y así quedó demostrado en el arbitraje.     En ese sentido debe verse el Voto Particular de D. Darío Oscós, párrafos 34 a 38, páginas 12 y 13, que es parte integrante del Laudo Final, del cual se desprende que el Acta de Recepción Física de los trabajos, era conocida por los señores árbitros.

184.- El Arbitraje entre PEP y COMMISA es de estricto derecho, por lo que los derechos y facultades de las partes se determinan con base en disposiciones legales o contractuales, lo que no observó el tribunal arbitral en el presente caso. Además, el tribunal arbitral y las partes están obligadas a observar el principio de *pacta sunt servanda*, previsto en el artículo 1796 del Código Civil Federal, que dispone:

> "*Artículo     1796.-   Los     contratos     se perfeccionan  por  el  mero  consentimiento; excepto  en  aquellos  que  deben  revestir  una forma  establecida  por  la  Ley.  Desde  que  se perfeccionan,  obligan  a  los  contratantes  no sólo  al  cumplimiento  de  lo  expresamente*

> *pactado, sino también a las consecuencias*
> *que, según su naturaleza, son conformes a la*
> *buena fe, al uso o a la ley".*

185.- Formalizar la controversia contractualmente no es lo mismo que insinuar o presumir un supuesto derecho, como lo hizo COMMISA. La decisión del Tribunal Arbitral aprobó la conducta de COMMISA, en contradicción al pacto arbitral. En otras palabras, el tribunal arbitral permitió que la ejecución del contrato, con relación al cumplimiento de los supuestos del arbitraje, estuviera sujeta al arbitrio de COMMISA, lo que expresamente prohibe el artículo 1797 del Código Civil Federal.

> **"Artículo 1797.** La validez y el cumplimiento
> de los contratos no puede dejarse al arbitrio
> de uno de los contratantes".

El principio consagrado en el artículo 1797 anteriormente transcrito, todavía es más importante en los contratos de obra pública, regulados por el derecho administrativo, en los cuales por su propia naturaleza, las partes tienen restringida su voluntad en la contratación, y porque en los mismos se reproducen disposiciones de orden público, que emanan directamente del artículo 126 y 134 Constitucionales, relativos a obra pública y gasto público.

186.- Además, no existe ninguna facultad para el Tribunal Arbitral para moderar o alterar las estipulaciones contractuales celebradas entre PEP y COMMISA, en equidad o como amigable componedor, toda vez que  dicha estipulación sería nula de pleno derecho porque implicaría darle facultades al Tribunal Arbitral para regular cuestiones de orden público mexicano, que ya están contempladas en normas de orden público mexicano. Por eso el Arbitraje fue de estricto derecho. Es decir, no es materia de arbitraje determinar qué obligaciones derivan de un contrato de obra pública, puesto que esa facultad le corresponde a la ley y a la autoridad mexicana. En cambio el tribunal arbitral debía abocarse

únicamente a determinar si la reclamación correspondía a una prestación contractual y obrar en consecuencia.

187.- En tal sentido, era obligación del Tribunal Arbitral aplicar las Cláusulas 23.2 y 23.3 del Contrato conforme a su texto en primer lugar, lo cual no hizo. Es decir, realizó una aplicación indebida de las Cláusulas 23.2 y 23.3 del Contrato, excediendo el acuerdo de arbitraje.

188.- Por otro lado, la aplicación de la ley en materia civil es una cuestión también de orden público por devenir del mandato del artículo 14 de la Constitución Política Federal, que en su último párrafo establece el derecho constitucional a la garantía de legalidad, por lo que el mantenimiento de la legalidad es una cuestión de orden público mexicano.

> "**Artículo 14.-** ....... En los juicios del orden civil, la sentencia definitiva deberá ser conforme a la letra o a la interpretación jurídica de la ley, y a falta de ésta se fundará en los principios generales del derecho".

189.- Esta argumentación está relacionada de igual manera con la decisión del Tribunal Arbitral, contenida en el Capítulo VI del Laudo Final, para declararse competente para conocer de todas las controversias y reclamaciones propuestas por la Demandante, alegando que todas las materias se relacionan o están vinculadas al Contrato relativo al Proyecto IPC-28, o constituyen Controversias Técnicas en los términos del Contrato, según los párrafos 105 y 129 del Laudo Final.

Para una mayor comprensión del presente argumento, solicitamos a Su Señoría que se refiera a los argumentos esgrimidos por PEP contra la decisión del tribunal arbitral para considerarse competente en el negocio arbitral y para resolver la presente materia, en obvio de repeticiones inútiles y por economía procesal.

190.- En conclusión, el Tribunal Arbitral incumplió con el procedimiento acordado por las partes, en el sentido de que el arbitraje fuera resuelto en estricto derecho. Esto es, en la cláusula 23.3 del Contrato se pactó que el arbitraje se tramitara de conformidad a las Reglas de Arbitraje de la CCI. El Reglamento de Arbitraje de la CCI establece en su artículo 17.3 que el arbitraje será de estricto derecho, a menos que las partes expresamente dispongan que el Tribunal asuma funciones de amigable componedor o resuelva *ex aequo et bono*.

Por tal razón el Tribunal Arbitral ha incurrido en la causal de nulidad contemplada en el inciso c de la fracción I del artículo 1457 del Código de Comercio, porque infringió gravemente el procedimiento de arbitraje en los términos expuestos. En consecuencia, cualquier análisis sobre la procedencia y la cuantificación de esta controversia, también es ilegal y contraría el orden público.

### III. Causas de Nulidad con relación a la decisión sobre las Controversias 37 y 39 relativa a Cruces.

191.- El laudo arbitral que condena a PEP a pagar a favor de COMMISA, la totalidad de las prestaciones reclamadas por ésta, con relación a las controversias de cruces (37 y 39) contraviene disposiciones de orden público mexicano, afectando de nulidad al Laudo Final emitido de conformidad con el artículo 1457 fracción II del Código de Comercio.

192.- En el Contrato de Obra Pública origen de la Controversia, se pactaron trabajos o conceptos de trabajo denominados cruces, cuya terminación a satisfacción de PEP en cuanto a especificaciones y calidad proyectada, daba causa para pagar los precios unitarios pactados, consignados en el Anexo "C" del Contrato. Sin embargo, apartándose de la relación jurídica descrita, el Tribunal



Arbitral condenó a PEP a su pago sin acreditarse la realización y terminación del trabajo de conformidad al concepto de trabajo propuesto.

Todas las consideraciones y decisiones del Tribunal Arbitral, en relación con este punto, son visibles en el Capítulo VII. 3, páginas de la 60 a la 70, del Laudo Final.

193.- Ya se ha establecido, en el presente escrito, en múltiples ocasiones, que el pago de trabajos relativo a obras públicas, realizado por PEP, constituye la aplicación y el manejo de recursos catalogados dentro del gasto público basados en el artículo 1 de la Ley de Adquisiciones y Obras Públicas, artículos 1 y 2 de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, y artículo 39 de su Reglamento, por lo que es una cuestión de orden público de conformidad con los artículos 126 y 134 de la Constitución Política Federal.

En consecuencia, las condiciones y requisitos de pago de obligaciones contraídas en virtud o relacionadas con contratos de obras públicas, al ser con cargo a recursos federales, están sujetos a disposiciones jurídicas de orden público pertenecientes al derecho público, y no al mercantil, por lo que el estudio de las mismas trasciende la esfera privada, para interpretarse de manera más rigurosa.

194.- Así, podemos citar entre éstas, los artículos 44 fracción I del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público Federal, y 66, fracción I, del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria, respectivamente disponen lo siguiente:

> "*Artículo 44.- Las entidades deberán cuidar bajo su responsabilidad, que los pagos que se efectúen con cargo a sus presupuestos aprobados se realicen con sujeción a los siguientes requisitos:*

> *I. Que correspondan a compromisos efectivamente devengados, con excepción de los anticipos previstos en los ordenamientos legales y los mencionados ; ....... ".*

> *"Artículo 66. Los pagos con cargo al Presupuesto de Egresos se realizarán por las dependencias a través de la Tesorería. Los pagos que realicen las entidades se efectuarán por conducto de sus propias tesorerías, llevando los registros presupuestarios correspondientes en sus respectivos flujos de efectivo.*
> *Las dependencias, en el ejercicio de sus erogaciones, adicionalmente deberán:*
> *I. Que correspondan a compromisos efectivamente devengados, con excepción de los anticipos previstos en las disposiciones aplicable; ....... ".*

195.- **Como ya lo expresamos, en el caso, el "compromiso" que da causa para el pago no fue efectivamente devengado, es decir, no se realizó el concepto de trabajo contratado.**

El hecho de que no se realizó el trabajo como fue originalmente conceptualizado y contratado, es un hecho probado en el juicio de arbitraje tal como se desprende de los hechos narrados en el propio Laudo Arbitral. Es decir, COMMISA solicitó realizar los cruces con una especificación distinta a la original, lo que implicaba menos recursos a los trabajos a realizar. PEP aceptó la realización de esos trabajos al ser técnicamente aceptables. Véase el Capítulo VII. 3, páginas de la 60 a la 70, del Laudo Final. Sin embargo, al Tribunal Arbitral, no tomó en consideración estas nuevas condiciones contractuales que son indispensables para generar el pago de conformidad con el derecho mexicano sobre gasto público y que son de orden público, como se explicará a continuación.

196.- El Contrato de Obra Pública objeto del Arbitraje es un contrato de Obra a precios unitarios de conformidad con el artículo 57 de la Ley de

Adquisiciones y Obras Públicas, el cual muy claramente señala que **la remuneración o pago total que deba cubrirse al contratista se hará por unidad de concepto de trabajo terminado.** En efecto, dicho artículo establece en su parte conducente:

> *"Artículo 57.- Para los efectos de esta Ley, los contratos de obra pública podrán ser de dos tipos:*
> *I. Sobre la base de precios unitarios, en cuyo caso el importe de la **remuneración o pago total que deba cubrirse al contratista se hará por unidad de concepto de trabajo terminado**, o ......".*

197.- Las Reglas Generales para la Contratación y Ejecución de la Obra Pública, aplicables a la relación jurídica creada por el Contrato de Obra Pública, en su Sección 5 relativa a los lineamientos para la integración de los precios unitarios, define lo que es un precio unitario, y que es del tenor siguiente:

> *"5.2.5 PRECIO UNITARIO. Importe total por unidad de medida de cada concepto de trabajo".*

198.- En la cláusula 3.3. del Contrato, fue ratificada esta disposición legal, en el sentido de que el pago sólo procedería contra la conclusión del concepto de trabajo pactado, de la siguiente forma:

> ***"3.3 Precios Unitarios.*** *Los trabajos objeto de este Contrato se pagarán a base de precios unitarios conforme a lo consignado en el Anexo "C" del presente Contrato. Dichos trabajos incluyen la remuneración o pago total que deba cubrirse al Contratista por los trabajos, bajo los conceptos de costo directo, costo indirecto, financiamiento y utilidad, así como el costo de las obligaciones adicionales estipuladas en el presente Contrato a favor del Contratista. Dichos precios unitarios son fijos y sólo podrán ajustarse los costos directos que integran los mismos, en los casos y bajo las condiciones*

*previstas en la Cláusula 3.7 del presente Contrato".*

199.- El problema o el litigio nunca fue entendido por el Tribunal Arbitral y por ello el tribunal arbitral no lo resolvió conforme al Derecho Federal Mexicano, a pesar de que fue planteado correctamente por PEP. Es decir, la cuestión no era determinar que los cruces fueron hechos por COMMISA, o si fueron aceptados por PEP, sino que los cruces, tal como fueron realizados por COMMISA, no se ajustan al concepto de trabajo originalmente contratado y conforme al cual se fijó el precio unitario pactado por la terminación de cada uno de ellos.

Esta correspondencia entre precio unitario y concepto de trabajo está establecida legalmente. Así lo establece la Regla General para la Contratación y Ejecución de la Obra Pública 5.1.2, y la Cláusula 3.3 del Contrato antes citado.

200.- De igual manera, el Reglamento de la Ley de Obras Públicas, aplicable a la presente controversia, establece esta relación.

> *"ARTICULO 31.- La proposición que el concursante deberá entregar en el acto de presentación y apertura, contendrá según las características de la obra:*
>
> I.    *Garantía de seriedad y carta de compromiso de la proposición;*
> II.   *Manifestación escrita de conocer el sitio de los trabajos;*
> III.  ***Catálogo de conceptos, unidades de medición, cantidades de trabajo, precios unitarios propuestos e importes parciales y el total de la proposición;***
> IV.   *Datos básicos de costos de materiales puestos en el sitio de los trabajos, de la mano de obra y del uso de la maquinaria de construcción;*
> V.    ***Análisis de precios unitarios de los conceptos solicitados, estructurados con costos directos,***

*costos indirectos, costos de financiamiento de los trabajos y cargo por utilidad. El procedimiento de análisis de los precios unitarios, podrá ser por asignación de recursos calendarizados o por el rendimiento por hora o turno.*

*Los costos directos incluirán los cargos por concepto de materiales, mano de obra, herramientas, maquinaria y equipo de construcción.*

*Los costos indirectos estarán representados como un porcentaje del costo directo, dichos costos se desglosarán en los correspondientes a la administración de oficinas centrales, de la obra y seguros y fianzas.*

*El costo de financiamiento de los trabajos, estará representado por un porcentaje de la suma de los costos directos e indirectos; para la determinación de este costo deberán considerarse los gastos que realizará el contratista en la ejecución de los trabajos, los pagos por anticipos y estimaciones que recibirá y la tasa de interés que aplicará, debiendo adjuntarse el análisis correspondiente.*

*El cargo por utilidad, será fijado por el contratista mediante un porcentaje sobre la suma de los costos directos, indirectos y de financiamiento;*

VI.    *.Programas de ejecución de los trabajos, utilización de la maquinaria y equipo de construcción, adquisición de materiales y equipos de instalación permanente, así como utilización del personal técnico, administrativo y de servicios encargado de la dirección, supervisión y administración de los*

> *trabajos, en la forma y términos*
> *solicitados, y*
>
> VII.   *Relación de maquinaria y equipo de*
> *construcción indicando si es de su*
> *propiedad, y su ubicación física.*
>
> *Tratándose de propuestas que presenten*
> *concursantes extranjeros, estos deberán*
> *acreditar que la integración de las mismas,*
> *partió de iguales condiciones en cuanto a*
> *precio, costo, financiamiento, oportunidad y*
> *demás que resulten pertinentes, de las que*
> *hubieren servido a los nacionales para*
> *integrar las suyas".*

201.- Esto es así, porque un concepto de trabajo, conforme a las Reglas Generales para la Contratación y Ejecución de Obra Pública, es definido de la manera siguiente:

> *"5.2.3 CONCEPTO DE TRABAJO. **Conjunto***
> ***de operaciones y materiales** que de*
> *acuerdo con las formas y especificaciones*
> *respectivas, integran cada una de las partes*
> *en que se dividen convencionalmente los*
> *estudios y proyectos, la ejecución y*
> *equipamiento de las obras, la puesta en*
> *servicio, su conservación o mantenimiento y*
> *la supervisión de estos trabajos con fines de*
> *medición y pago".*

202.- Toda vez que el concepto de trabajo es esencialmente un conjunto de operaciones y materiales, es evidente que el precio unitario que se pacte responde a esos costos.

Así, el Tribunal Arbitral sin fundamentación y sin motivación, considera que no existe base legal para alterar los precios unitarios. En otras palabras, si el conjunto de operaciones y materiales realmente aplicados al trabajo de cruces, correspondían a lo conceptualizado originalmente, corresponde entonces aplicar los precios unitarios del Contrato. Si dichas operaciones y materiales no

corresponden a los originalmente pactados, estamos ante un concepto de trabajo distinto, y no procede la aplicación de los precios originales, sino integrar precios unitarios extraordinarios.

203.- El Tribunal Arbitral no estudió el asunto como correspondía, puesto que un cruce no era cruzar un tubo con otro, sino el conjunto de operaciones y materiales que se emplearían en ese trabajo.

204.- Así, PEP y COMMISA debían integrar y conciliar precios unitarios extraordinarios para cubrir los nuevos trabajos de COMMISA. Entonces, los pagos ya realizados por PEP se constituyen en pagos en exceso o indebidos, a cuya retribución está obligada COMMISA de conformidad con la LAOP y el contrato. El artículo 69 de la LAOP establece:

> "*Artículo 69.- .......*
>
> *Tratándose de pagos en exceso que haya recibido el contratista, éste deberá reintegrar las cantidades pagadas en exceso, más los intereses correspondientes, conforme a una tasa que será igual a la establecida por la Ley de Ingresos de la Federación en los casos de prórroga para el pago de créditos fiscales. Los cargos se calcularán sobre las cantidades pagadas en exceso en cada caso y se computarán por días calendario desde la fecha del pago hasta la fecha en que se pongan efectivamente las cantidades a disposición de la dependencia o entidad*".

De igual manera es aplicable la Cláusula 3.8.7 del Contrato relativa a pagos en exceso.

El pago ofrecido por PEP correspondía al resultado de la compensación de ambas deudas o créditos.

Estos razonamientos son aplicables a los trabajos de cruces reclamados ante el tribunal arbitral como Controversia Técnica 37, y también a los reclamados como Controversia Técnica 39, en su totalidad.

205.- Nada mejor muestra la violación cometida por el tribunal arbitral a las normas de orden público citadas, que la consideración vertida por el Tribunal Arbitral en el párrafo 302, visible en la hoja 70, del Laudo Final, relativo a los cruces 1, 4 y 6 del IPC-27, en el cual decide que era legítima la expectativa de COMMISA de obtener el pago contemplado en el contrato, simplemente porque PEP le encargo trabajos adicionales de cruces, cuando por la misma razón, **era expectativa de PEP, de que COMMISA realizara el trabajo adicional de cruces, conforme a como este trabajo fue conceptualizado originalmente, es decir, que dicho trabajo incluyera las operaciones y materiales originalmente convenidos, incluyendo por supuesto las especificaciones técnicas previstas desde el principio.**

**Esto demuestra la parcialidad del Tribunal Arbitral, porque no pondera el derecho de PEP contra el derecho de COMMISA, sino que examina únicamente el derecho de COMMISA.**

206.- Otro hecho que revela y deja en evidencia la falta de imparcialidad con la que se condujo el tribunal arbitral al resolver el tema de cruces, lo constituye las siguientes consideraciones contenidas en los párrafos 295 y 296 del laudo, que a la letra dicen:

> "295. En febrero de 2000 durante la ejecución de los trabajos, las partes convinieron que en ciertos cruces se podía reducir la separación hasta 0,5 m., y que el impacto en costes de esa reducción (en los cruces afectados, no en los restantes) se debería tener en cuenta.

El problema radica en determinar cuál habría
de ser el impacto en precio de la reducción
de la separación. En su comunicación A39, el
Tribunal solicitó a las partes que cuantificaran
"aproximadamente el ahorro de costos en el
dragado, en el número de sacos de arena y
otros insumos y en la ocupación de hombres
y máquinas que conlleve la reducción de la
separación de ductos de un metro a 0,5
metros". En su contestación, COMMISA
argumentó que la reducción de separación
no supuso una disminución de costes, sino al
contrario un incremento de tiempo y
materiales. PEP por su parte presentó una
tabla en la que detallaba para cada uno de
los 19 cruces que, según su alegación,
tenían una distancia inferior a un metro, un
precio unitario extraordinario. Estos precios
extraordinarios difieren significativamente de
los precios unitarios convenidos en el Anexo
C del Contrato: en general, la parte del precio
extraordinario cifrada en PME es mayor que
la del precio unitario, mientras que en la
porción en USD ocurre exactamente lo
contrario.

296. <u>En conclusión</u>, ante las posturas
encontradas de las partes, el Tribunal Arbitral
ha decidido en base a un dato adicional
según consta en autos: es un hecho
incontrovertido que, durante la ejecución del
Contrato, PEP pagó el 100% del precio de
los cruces en los que la separación era
inferior a un metro. Este hecho parece indicar
que, durante la fase de cumplimiento, las
partes estimaron que los cruces con menos
de un metro de separación costaban y valían
lo mismo que los cruces con separación
superior. Así las cosas, el Tribunal Arbitral no
encuentra razón convincente para no
extender la misma regla a los restantes
cruces con separación reducida, y decide
que todos los cruces, sea cual sea su
separación, deben ser satisfechos a los
precios unitarios pactados en el Contrato."

207.- La consideración del Tribunal Arbitral es ilegal, porque un pago de lo indebido genera la obligación del contratista de restituir las cantidades en exceso, y no como lo indica el Tribunal Arbitral, de constituir una obligación a cargo de PEP de pagar lo indebido.

208.- También es preciso destacar en el apartado en cita, que el Tribunal Arbitral jamás entendió la litis y por ello no la resolvió conforme a derecho mexicano, ya que no se trataba de reducirle a COMMISA los ahorros que obtuvo en la ejecución de los trabajos, sino en la de generar nuevos precios por los cruces, atendiendo a que COMMISA los ejecutó con una especificación y calidad distintas a las pactadas originalmente (párrafo 258 del Laudo Final).

209.- Sobre el mismo tema de incongruencia, el apartado transcrito no refleja la actuación del Tribunal Arbitral durante el procedimiento, ni sus propias determinaciones. Así, el Tribunal Arbitral mediante su comunicación A 39, a la que anexó la Orden Procesal No. 6, solicitó a PEP y a COMMISA, que calcularan el ahorro de costos en el dragado, en el número de sacos de arena y otros insumos y en la ocupación de hombres y máquinas que conlleve la reducción de la separación de ductos de un metro a 0,5 metros, toda vez que el tribunal arbitral adujo en los considerandos 1 y 3 de la orden procesal No. 6 lo siguiente:

> "1. El Tribunal Arbitral ha tenido oportunidad de revisar en profundidad los miles de documentos que componen los anexos y apéndices a los escritos de las partes".
>
> "Finalizada la revisión de la documentación, el Tribunal Arbitral estima que ha aflorado toda una serie de cuestiones cuya clarificación es imprescindible para instruir correctamente la causa. Estas cuestiones no han sido tratadas con suficiente profundidad por las partes en sus escritos o la prueba aportada resulta deficitaria. Por ello el Tribunal Arbitral ha decidido promulgar las presentes Diligencias para mejor proveer,

> *con la finalidad de recabar nuevas*
> *alegaciones y pruebas de las partes."*

210.- Es decir, en primer término el tribunal arbitral manifiesta que ha tenido la oportunidad de revisar en profundidad *"los miles de documentos que componen los anexos y apéndices a los escritos de las partes"*, para después argüir que finalizada la revisión de la documentación, ha aflorado toda una serie de cuestiones cuya clarificación es imprescindible para instruir correctamente la causa, pues esas cuestiones no han sido tratadas con suficiente profundidad por las partes en sus escritos o la prueba aportada resulta deficitaria y que en virtud de ello, el tribunal decidió promulgar esas diligencias para mejor proveer con el propósito de recabar nuevas alegaciones y pruebas de las partes.

211.- La conducta del tribunal constituye un expreso reconocimiento por parte del tribunal arbitral, que a la fecha en que fueron emitidos el comunicado A 39 y la Orden Procesal No. 6, ambos del 13 de diciembre de 2006, el tribunal arbitral no contaba con los elementos suficientes tanto en argumentos como en medios probatorios para emitir una resolución sobre el reclamo de COMMISA denominado como "controversia técnica 37".

212.- Contraria a la propia conducta y solicitudes del Tribunal Arbitral, dicho Tribunal Arbitral en el punto 295 del laudo señaló que COMMISA, en su contestación, manifestó que la reducción de separación no supuso una disminución de costes, sino al contrario un incremento de tiempo y materiales, en tanto que PEP presentó una tabla en la que detallaba para cada uno de las 19 cruces que tenían una distancia menor a un metro, un precio unitario extraordinario, a lo que el tribunal arbitral agregó que esos precios extraordinarios difieren significativamente de los precios unitarios convenidos en el anexo C del contrato.

213.- Siguiendo ese orden de ideas, en el punto 296 del mismo laudo, el tribunal determinó que ante las posturas encontradas de las partes, decidió con

base en un dato adicional que consta en autos, que toda vez que es un hecho incontrovertido que durante la ejecución del contrato, PEP pagó el 100% del precio de cinco cruces en los que separación era inferior a un metro, no encontrando a su juicio, razón convincente para no extender la misma regla a los restantes cruces con separación reducida y decide que todos los cruces, sea cual sea su separación, deben ser satisfechos a los precios unitarios pactados en el contrato. Esta última consideración es ilegal, porque un pago de lo indebido genera la obligación del contratista de restituir las cantidades en exceso, y no como lo indica el Tribunal Arbitral, de constituir una obligación a cargo de PEP de pagar lo indebido.

214.- La propia conducta del tribunal es contraria a la resolución tomada en el Laudo Arbitral, puesto que en un momento determinado el Tribunal Arbitral reconoció de manera clara y precisa que no contaba con los elementos suficientes para emitir su determinación y para ello ordenó unas diligencias para mejor proveer (mismas que con posterioridad decidió no tomarlas en cuenta en virtud de las posiciones encontradas de las partes) y posteriormente dictó una resolución en un dato o información que ya constaba en autos desde antes de que ordenara el desahogo de las referidas diligencias para mejor proveer, entonces es claro que el tribunal arbitral emitió una determinación basada en criterios parciales y subjetivos, de justicia, apartándose de la legislación federal mexicana que se obligó a observar en el arbitraje, sin contar con elementos válidos y objetivos. Es decir, el tribunal arbitral dictó el laudo arbitral en un estado de ignorancia similar al que tenía antes de elaborar el comunicado A 39 y Orden Procesal No. 6. En otras palabras: si su resolución no se basó en las pruebas adicionales aportadas por las partes, quiere decir que su resolución se basó en pruebas insuficientes según su propio dicho. De ahí resulta que el tribunal arbitral dicta un laudo incongruente y por ello resulta nulo.

215.- Entonces, con la resolución emitida por el tribunal arbitral, se actualiza la causal de nulidad del laudo arbitral, establecida en el articulo 1457,

fracción I, inciso c), toda vez que incurrió en un exceso del mandato conferido por las partes al no resolver las cuestiones planteadas por las partes en estricto derecho, como era su obligación. Por el contrario, decidió resolver con criterios de carácter subjetivos y de acuerdo a argumentos que no contaban con los elementos necesarios para resolver válidamente, pues baste recordar lo manifestado por el propio tribunal arbitral en el considerando 3 de la orden procesal No. 6, en el sentido de que: *"El Tribunal Arbitral estima que ha aflorado toda una serie de cuestiones cuya clarificación es imprescindible para instruir correctamente la causa".*

A contrario sensu, al no haber tomado en cuenta los argumentos y pruebas aportados por las partes, en particular las de PEP, con motivo del desahogo de las diligencias para mejor proveer, NO SE INSTRUYÓ CORRECTAMENTE LA CAUSA.

216.- **Así las cosas, el Tribunal Arbitral pretende que PEP haga pagos por un trabajo no devengado por COMMISA, en franca violación a las normas constitucionales y de orden público que regulan el ejercicio del gasto público en los contratos de obra y por ello el laudo resulta nulo.**

## III. O T R A S   C O N T R O V E R S I A S

### 1. Controversia Técnica 19: Reclamaciones por Obstrucciones.

217.- El laudo asimismo es nulo, toda vez que en relación con la Controversia Técnica 19, relativa a las reclamaciones por obstrucciones contenida en el Laudo Final, visible de la hoja 127 a 132 (párrafos 500 a 526), el mismo se refiere a una controversia no prevista en el acuerdo de arbitraje y por lo tanto se trata de una decisión que excede los términos del acuerdo de arbitraje, de conformidad con el artículo 1457, fracción I, inciso c), del Código de Comercio.



218.- Durante la ejecución del contrato relativo al IPC-28, cuyo objeto era el tendido en el lecho marino de ductos submarinos, ductos ascendentes, y su interconexión con plataformas costa afuera, surgieron problemas de carácter técnico, no previstos en el contrato, y que las partes denominamos obstrucciones.

219.- Dichas obstrucciones constituían impedimentos físicos que impedían el tendido de ductos y su interconexión a las plataformas, tales como basura depositada en el fondo marino, maleza, o elementos constructivos no contemplados en los planos, entre otros. Estas obstrucciones son consideradas trabajos extraordinarios.

220.- COMMISA reclamó a PEP el pago de 80 obstrucciones, de las cuales PEP sólo reconoció la procedencia de pagar 29 de ellas, y que no fueron liquidadas debido a la posición de COMMISA de apostar al "todo o nada".

221.- El Tribunal Arbitral consideró procedente el pago de 74 de ellas atendiendo a las siguientes razones:

i)    Veinte de estos eventos no fueron reconocidos por PEP como obstrucciones, porque los consideraba ya previstos en el contrato, o inexistentes. Sin embargo, el Tribunal Arbitral, sin ninguna motivación (párrafo 521 del Laudo Arbitral), considera procedentes 14 de ellas, absolviendo a PEP del pago de 6 de ellas, debido al reconocimiento expreso de COMMISA, que tales eventos no eran obstrucciones.

ii)   De los 60 eventos restantes, PEP argumentó que técnicamente todos ellos podían calificarse como obstrucciones, sin embargo, PEP sólo reconocía como procedente el pago en 29 de estos casos, porque en los 31 restantes le había precluido el derecho a COMMISA para reclamar cualquier compensación.

222.- Con relación al primer grupo de obstrucciones, es decir, las veinte no reconocidas por PEP, el Tribunal Arbitral excede su mandato al resolver cuestiones no previstas en el acuerdo de arbitraje, afectando de nulidad el Laudo emitido.

En efecto, existía en el caso una diferencia técnica entre PEP y COMMISA, sobre la calificación o no de obstrucciones, de estos catorce eventos. Independientemente de esto, vale mencionar la falta de legalidad del Tribunal Arbitral de resolver una cuestión técnica, sin ningún apoyo pericial, y sin motivación fáctica o jurídica alguna (párrafo 521 del Laudo Arbitral).

223.- Si COMMISA no hubiese estado de acuerdo con la decisión de PEP, de conformidad con los términos del contrato, COMMISA tenía la obligación de formalizar sus reclamaciones como Controversias Técnicas, lo cual no hizo. Como ya se ha señalado en múltiples ocasiones, en el contrato celebrado entre PEP y COMMISA se pactó que sólo serían materia de arbitraje aquéllas disputas o reclamaciones que fueran formalizadas como Controversias Técnicas, como se demuestra a continuación, tal y como se establece en el punto 23.2 que señala:

> *"23.2 **Controversias Técnicas.** El Contratista no tendrá derecho a efectuar ningún reclamo y PEP no será responsable por daños legales (incluyendo negligencia) o contractuales ante el Contratista, sus proveedores secundarios o subcontratistas, excepto en los casos específicamente previstos en este Contrato.*
>
> *Para efectos de esta Cláusula se entenderá por Controversia Técnica toda diferencia que surja por cualquier reclamo o sea atribuible a la interpretación o ejecución de este Contrato, entre el Supervisor y el Contratista, en relación con los Anexos Técnicos del Contrato (A, B, B-1, B-2, B-3, CEV, DT, DT-1, DT-2.1, DT-2.2, DT-3, DT-4, E-2, F-1 Y F-2)*

# EXHIBIT 1
Part 5

*Si por cualquier motivo el Supervisor y el Contratista no coinciden en la apreciación para resolver un reclamo de ajuste derivado de una Controversia Técnica, <u>el Contratista deberá hacer formal dicha Controversia Técnica por escrito al Supervisor y solicitarle la determinación correspondiente. Este tipo de solicitud del Contratista deberá ser claramente identificado indicando que se trata de una Controversia Técnica sujeta a resolución al amparo de esta Cláusula 23, debiendo contener un resumen de los hechos en controversia y la propuesta del Contratista para resolverlos.</u>*

............................................................

............................................................"

*"23.3 **Arbitraje.** Cualquier controversia, reclamación, diferencia o disputa que sobrevenga o se relacione o esté vinculada con este Contrato o el incumplimiento del mismo será dirimida finalmente mediante arbitraje conducido en el Distrito Federal, México, de acuerdo con las Reglas de Conciliación y Arbitraje de la Cámara Internacional de Comercio que estén en vigor en ese momento. El número de árbitros será de tres y el idioma para conducir el arbitraje será el español. **No obstante lo anterior, cualquier controversia técnica deberá ser sometida previamente al procedimiento previsto en la Cláusula 23.2 y sólo en caso de que mediante dicho procedimiento no se logré un acuerdo entre las partes, éstas quedarán facultadas para acudir al recurso previsto en la Cláusula 23.3".***

224.- Tenemos entonces, de conformidad a las Cláusulas contractuales indicadas, que puede haber controversias, disputas o reclamos, informales, por llamarlos de alguna manera (aunque es obvio que deben ser por escrito) y formales. Las controversias formales deben plantearse por escrito, de manera formal, especificar en el documento que se trata de una controversia técnica,



proporcionando los hechos que motivan la reclamación y una propuesta de solución.

225.- Esto tiene una importancia jurídica esencial, porque la formalización de la Controversia Técnica, y únicamente esta actuación, origina el procedimiento para obtener un documento justificativo de pago, en los términos del artículo 44 fracción III del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público Federal, y artículo 66, fracción III, del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria. En otras palabras, no puede constituirse una obligación de pago a cargo del erario público federal mientras no exista un documento justificativo de dicho pago.

226.- Así, la parte final del cuarto párrafo, y la inicial del quinto siguiente, de la Cláusula 23.2 del Contrato señalan lo siguiente:

> "Lo anterior en la inteligencia de que cualquier determinación de modificación técnico-contractual que implique o necesariamente deriven en una ampliación del monto del Contrato o del plazo de ejecución establecidos en las Cláusulas 3.1 y 4.1, respectivamente, deberá contar con la previa aprobación por escrito del representante del Proyecto ....... Una vez recibida la aceptación escrita por parte del Contratista de la determinación efectuada por el supervisor, se modificará el Contrato en lo conducente y se implementará la determinación".

227.- La Cláusula 5 del Contrato "*Modificaciones al Contrato*" establece que "*Las partes convienen en que por razones fundadas y explícitas y a través de la suscripción de un convenio, PEP podrá modificar el Contrato, en términos de lo establecido en el artículo 70 de la Ley de Adquisiciones y Obras Públicas*".

228.- Formalizar la controversia, contractualmente no es lo mismo que insinuar o presumir un supuesto derecho, como lo hizo COMMISA. La decisión del Tribunal Arbitral aprobó la conducta de COMMISA, en contradicción al pacto contractual. En otras palabras, el tribunal arbitral consideró que la ejecución del contrato, con relación al cumplimiento de los supuestos del arbitraje, estuviera sujeta al arbitrio de COMMISA, lo que expresamente prohíbe el artículo 1797 del Código Civil Federal, que señala:

> **"Artículo 1797.** La validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes".

229.- El principio establecido en el artículo 1797 anteriormente transcrito cobra suma importancia en los contratos de obra pública, regulados por el derecho administrativo, en los cuales por su propia naturaleza, las partes tienen restringida su voluntad en la contratación, y porque en los mismos se reproducen disposiciones de orden público, que emanan directamente del artículo 126 y 134 Constitucionales, relativos a obra pública y gasto público.

La falta de formalización de los eventos de obstrucciones como controversias técnicas se demuestra con la multicitada Acta de Recepción Física de los trabajos de fecha 30 de agosto de 2002, en la cual se manifiesta en la página 17 que estos reclamos estaban en elaboración apenas.

230.- Lo cierto es que para efectos del arbitraje, COMMISA tenía que haber formalizado previa y oportunamente su Controversia Técnica, tal como lo exige el acuerdo de arbitraje contenido en la Cláusula 23.3 del Contrato de Obra Pública y toda vez que COMMISA no lo hizo, dicha Controversia Técnica no podía ser materia de arbitraje, por lo que las consideraciones del Tribunal Arbitral se refieren a una controversia no prevista en el acuerdo de arbitraje, ya que sólo controversias técnicas formales pueden ser materia de arbitraje, o contiene decisiones que exceden los términos del acuerdo de arbitraje, ya que el Tribunal Arbitral sólo puede resolver en definitiva, controversias técnicas.

231.- En el segundo grupo, no existe justificación legal para que el tribunal arbitral condene a PEP al pago de los 31 eventos de obstrucciones, toda vez que el derecho de COMMISA para reclamarlos ya había precluido. Esto es, no existe una orden de PEP que los considere trabajos extraordinarios, o una ley que los catalogue como trabajos pagables. Por el contrario, su reconocimiento fuera de las normas contractuales y el marco jurídico aplicable infringe diversas normas de orden público mexicano.

232.- Es claro que todos los trabajos deben estar justificados, ya sea en un contrato, un convenio, o una orden o notificación de cambio, de conformidad con los artículos 44 fracción III del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público, y 66 fracción III del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria, citados precedentemente, disposiciones que regulan el ejercicio del gasto público, como los pagos a cuenta de obra pública, y por ende, disposiciones de orden público mexicano.

233.- En este tenor, podemos citar también el artículo 70 de la LAOP, que prevé las condiciones para modificar en cuanto a tiempo y monto los contratos de obra pública. El artículo 70 de la LAOP dispone como regla general que los contratos de obra pública no pueden ser modificados, salvo casos excepcionales. En ese caso, los trabajos extraordinarios y adicionales deben calificarse de manera estricta, al ser eventos excepcionales, debiendo revestir la misma formalidad que los trabajos originales. Es decir, la Contratista no puede hacer trabajos extraordinarios sin una orden expresa de PEP, por lo que ante la ausencia de una orden expresa, dicho trabajo no solamente no es pagable sino que incluso a la Contratista se le imputa responsabilidad.

234.- Ahora bien, con base en estas disposiciones, la Contratista no puede determinar unilateralmente la existencia de trabajos extraordinarios, y proceder a su ejecución sin una orden expresa de PEP. En el caso de los contratos de obra

pública, no se privilegia el interés de la Contratista, sino el interés de la hacienda pública, por ello el principio de utilidad no opera en beneficio de COMMISA para ser resarcida por PEP, sino al contrario, en el caso obra el interés público para impedir el pago de trabajos ejecutados unilateralmente por COMMISA, y adicionalmente responder por los daños y perjuicios.

235.- El Anexo B-2 del Contrato, denominado "Generalidades", en su Sección 5, denominado "Modificaciones" establece lo siguiente:

> "Cualquier modificación que implique cambios en las estipulaciones originalmente pactadas en el Contrato o bien, estipulaciones adicionales deberán formalizarse mediante convenio escrito entre las partes, en términos de lo señalado en la Cláusula 5 del Contrato.
>
> "_Si en algún momento el Contratista considera que hay acciones u omisiones de PEP que constituyen un cambio al trabajo no cubierto por una notificación de cambio, el Contratista deberá presentar dentro de diez (10) días naturales después de la acción u omisión, una Solicitud de Notificación de Cambio, explicando detalladamente la razón de la solicitud._ El Supervisor emitirá una notificación de Cambio o bien negará la petición por escrito.
>
> ----------------------------------------------
> ----------------------------------------------
>
> "_Si el Contratista considera que con la Notificación de Cambio se afecta el costo o tiempo requerido para la ejecución de cualquier parte del Trabajo, deberá enviar notificación escrita a PEP, dentro de los diez (10) días naturales siguientes a la fecha en que se hubiere recibido la Notificación de Cambio, y deberá presentar a PEP, dentro de los siguientes veinte (20) días naturales siguientes, una propuesta escrita que indique_

> *la naturaleza, efecto sobre el programa y el alcance monetario de dicha demanda con suficiente detalle para permitir un análisis exhaustivo y negociación.*
>
> *"Toda demora del contratista para dar aviso o presentar la propuesta a que se refiere el párrafo anterior, será motivo suficiente para rechazar la reclamación si el retraso perjudica a PEP y en la medida que lo haya perjudicado. En ningún caso se considerará una reclamación del Contratista si se hace después de la Recepción Parcial o Total ...".*

236.- La disposición anteriormente transcrita es muy clara: el Contratista tenía un término de diez días para notificar a PEP sobre cualquier cambio en las condiciones contractuales que pudiere causar un aumento en el tiempo o monto del Contrato. De igual manera debía proponer a PEP una propuesta de solución económica dentro de los veinte días siguientes.

237.- Por otro lado, el derecho de PEP para ordenar la realización de trabajos extraordinarios o rechazar la realización de trabajos extraordinarios también se encuentra regulado. Esto es así porque PEP podría realizar dichos trabajos, en caso de no serle convenientes las condiciones propuestas por la contratista, ya sea con medios propios mediante administración directa o encargárselos a terceras personas (Regla 3.3.4. de las Reglas Generales para la Contratación y Ejecución de la Obra Pública), para de esta manera asegurar las mejores condiciones para el Estado, en cuanto a calidad y precio.

238.- Por tales razones, un aviso oportuno formal de la Contratista de todos aquellos eventos que causaren trabajos extraordinarios era esencial, puesto que detonaba la orden de trabajo y la posibilidad de que COMMISA pudiera ejecutarla, sin contravenir la LAOP. Ante estos incumplimientos, PEP está facultado para rechazar su pago, en cuanto hayan causado un daño al erario público como en el caso sucedió. En efecto, la cláusula 8.1.9 del Contrato, establece



> *"8.1.9. Trabajos Excedentes. Si el Contratista, sin la autorización previa y por escrito de PEP, realiza trabajos por mayor valor del convenido en este Contrato, independientemente de la responsabilidad en que incurra por los Trabajos Excedentes, no tendrá derecho a reclamar pago alguno por ello".*

239.- Es decir, la realización de trabajos extraordinarios sin el debido consentimiento de PEP ocasiona daños al erario público, no es un beneficio, puesto que afectan recursos no contemplados en el presupuesto, y destinados a otros propósitos, y además que resultan de una actuación unilateral de la Contratista, que no garantiza las mejores condiciones económicas y técnicas para el Estado.

240.- Estos principios legales anteriormente transcritos, fueron pactados por las partes en la Cláusula 6 del Contrato, relativa a Trabajos Extraordinarios, en la siguiente forma:

> *"El Contratista se obliga a realizar los trabajos extraordinarios que eventualmente pudieran resultar durante la ejecución del Contrato, entendiéndose por éstos los que no están comprendidos en el proyecto y en el programa. En todos los casos, PEP dará por escrito al Contratista, previamente a la ejecución de los trabajos extraordinarios, la orden de trabajo correspondiente, en la inteligencia, los conceptos, las especificaciones y los precios unitarios respectivos quedarán incorporados al Contrato para todos sus efectos, en los términos del convenio que se suscriba".*

241.- En consecuencia, no basta que COMMISA tuviera informado a PEP sobre los eventos de obstrucciones, como lo considera el Tribunal Arbitral, sino que debió solicitar una notificación de cambio y proponer un precio por ese trabajo extraordinario, y luego esperar la decisión de PEP. En efecto, cualquier

notificación de cambio hecho por COMMISA, en forma de informe extemporáneo, necesariamente tenía que esperar la respuesta de PEP.

242.- De ningún modo puede imputársele responsabilidad a PEP, como lo hace el Tribunal Arbitral, por no emitirse la Notificación de Cambio, por dos razones: (a) es un derecho de PEP rechazar la solicitud de COMMISA, y (b) COMMISA necesariamente debía esperar la orden expresa de PEP para iniciar los trabajos.

243.- En el presente caso no se trata de la falta de formalización de los trabajos, sino de la inexistencia de una causa que obligue a PEP, como entidad pública a pagar. El Tribunal Arbitral, avala la conducta de COMMISA para imponerle precios y trabajos adicionales y extraordinarios a PEP, fuera de las restricciones contractuales. Es decir, el tribunal arbitral consideró válida la conducta de COMMISA para realizar, sin autorización previa de PEP, trabajos extraordinarios, y sin cuidado de las disposiciones de orden público que regulan el ejercicio presupuestal.

244.- Esta decisión del Tribunal Arbitral infringe el orden público mexicano y vicia de nulidad el Laudo Final por dos razones:

a. El artículo 70 de la LAOP, como ya explicamos, privilegia la inmovilidad de las condiciones contractuales y restringe las condiciones a las modificaciones contractuales. Esta disposición preserva diversos principios de orden público a saber: la obtención de mejores condiciones económicas para el Estado, y la eficiencia en el gasto público. Se propone evitar que a través de modificaciones del contrato se asignen trabajos que deberían ser materia de una licitación pública, o que se alteren injustificadamente los precios ofrecidos por el Contratista.

Así las cosas, y sin estar facultado para ello en la cláusula 23.3 del contrato ni en el Acta de Misión, el tribunal arbitral altera las condiciones

contractuales, para determinar el pago de trabajos extraordinarios, y lo que es peor, infringe disposiciones de orden público mexicano para determinar la procedencia y pago de trabajos extraordinarios. Por estar así las cosas, esta controversia es nula al infringirse el artículo 1457 del Código de Comercio, en sus fracciones I inciso c) y II.

b. Los pagos que se hagan con cargo al erario público deben estar justificados, ya sea en un documento, o en una ley. Sin esa orden se consideran trabajos excedentes y un daño al erario público. Por tal razón, el principio de utilidad no opera en el caso, y COMMISA no tiene derecho a retribución alguna, precisamente porque su derecho deriva de un acto ilícito, y los actos ilícitos no genera consecuencia alguna.

Por estas razones es evidente que el tribunal arbitral dictó su laudo en violación de las normas de derecho mexicano de orden público y por ello resulta nulo el laudo.

**2. Controversia Técnica 27: costos por el diferencial de tarifas de tiempo de espera de la Castoro 10 en Trabajos de plataformas.**

245.- En el desarrollo de los trabajos pactados bajo el contrato de obra relativo al proyecto IPC-28, se presentaron interrupciones o suspensiones a los trabajos, que fueron previstas en el Contrato. De acuerdo con el Contrato, la interrupción o suspensión a los trabajos que emplearan embarcaciones daría causa para el pago de tarifas de espera o cuota de reserva

246.- Para la ejecución de los trabajos, COMMISA contrató dos embarcaciones: la Castoro 10 y la Bar Protector. Por sus características y capacidades, la primera era apta para el trabajo de tendido de ductos y la segunda para el trabajo en plataformas.

247.- Atendiendo a la diferenciación clara entre el trabajo de tendido de ductos y el trabajo en plataformas, y atendiendo al tipo de embarcación que originalmente se iba a emplear en cada uno de ellos, se pactaron en el Anexo C del Contrato tarifas de espera distintas para el Castoro 10 y el Bar Protector, puesto que cada uno de dichos buques realizaba trabajos distintos, es decir, había tarifas de espera para las suspensiones a los trabajos de tendido de ductos y tarifas de espera distintas para el trabajo en plataforma; siendo en mayor monto los pactados para suspensiones en el tendido de ductos.

248.- Por falta de disponibilidad de la embarcación Bar Protector, se hizo necesario que la embarcación Castoro 10 realizara trabajos en plataformas, lo cual ya estaba previsto desde la firma del Contrato (Anexo B-2 Plan de Trabajo). Durante los trabajos, sucedieron eventos que suspendieron los trabajos de la embarcación Castoro 10, y causaron que se actualizara el supuesto para el pago de tarifas de espera o cuotas de reserva.

249.- La disputa entre las partes fue determinar las tarifas de espera aplicables, bien la pactada para el tendido de ductos reclamada por COMMISA, o bien la pactada para el trabajo en plataformas, sostenida por PEP, posición que después cambió para proponer el pago de precios unitarios extraordinarios.

250.- COMMISA sostenía que debían pagarse las tarifas de espera para el trabajo de ductos, porque dicha tarifa reflejaba el uso de la Castoro 10. Mientras que PEP sostenía, en principio el pago de tarifas de espera para trabajos en plataformas, porque dichas tarifas se habían pactado en atención a los trabajos pactados. PEP pagó y COMMISA recibió el pago de las tarifas de espera de conformidad a la tarifa estipulada para el trabajo de plataformas, reclamando luego el pago de las diferencia entre esta tarifa y aquélla pactada para el tendido de ductos.

131

251.- Tomando en cuenta que los trabajos realmente ejecutados emplearon recursos distintos, a los que fueron tomados en consideración para integrar o pactar las tarifas de espera para los eventos de suspensión, tanto para uno u otro trabajo, PEP propuso a COMMISA, y así lo sostuvo ante el Tribunal Arbitral, que lo procedente era integrar precios unitarios extraordinarios, ante trabajos que realmente no se correspondían con los originalmente pactados, y en su caso, compensar las diferencias.

252.- El Tribunal resolvió que lo procedente era pagarle a COMMISA las tarifas de espera por trabajos de tendido de ductos, y que entonces PEP debia dicha diferencia. El tribunal arbitral, pare emitir su laudo se basó en que COMMISA propuso para los trabajos extraordinarios aludidos, dichas tarifas y PEP no se opuso a ella (valga aclarar que tampoco lo consintió).

Los hechos y consideraciones de esta controversia son visibles en el Capítulo VII.10 del Laudo Final, de la página 127 a 132, párrafo 500 a 526, de dicho documento.

253.- Los fundamentos del Tribunal Arbitral son incorrectos y violentan diversas disposiciones de orden público mexicano, relativas al empleo de recursos federales, lo cual hace procedente que se declare la nulidad del laudo arbitral.

254. En primer lugar es importante subrayar que no hay un acuerdo de voluntades entre las partes. En efecto, PEP nunca aceptó pagar las cuotas de espera por trabajos de tendido, a las suspensiones ocurridas en los trabajos de plataforma. Por el contrario, de su conducta se desprende que PEP ofreció y pago una tarifa distinta a la solicitada por COMMISA (solamente se reclaman "diferencias").

255.- En segundo lugar, el Tribunal Arbitral no atendió a la conducta de las partes para tomar su determinación, conductas que determinaban cuál era el procedimiento correcto para determinar el pago al cual COMMISA tenía derecho.

Esta conducta se evidenciaba de la Controversia Técnica 17 en la cual COMMISA aceptó el pago de precios unitarios extraordinarios por trabajos en plataformas en los cuales se empleo a la Castoro 10 y no a la Bar Protector. Por lo que la actuación del Tribunal Arbitral es incongruente, y hace de lado la misión que le fue encomendada por las partes.

256.- La decisión no fue hecha con base en estricto derecho. El artículo 1805 del Código Civil Federal, aplicable al presente caso, establece que la falta de respuesta inmediata de una proposición contractual sin plazo de contestación, provoca que la propuesta de contrato se entienda rechazada. Entonces, la falta de respuesta de PEP a la propuesta de COMMISA, presume su rechazo, y no su aceptación como incorrectamente lo ha considerado el Tribunal Arbitral. El silencio de PEP no implica consentimiento y no es fuente de obligaciones.

257.- En el caso, el consentimiento debe ser expreso, en los términos del artículo 1803, fracción II, última parte, del Código Civil Federal; Regla 3.3.4. General para la Contratación y Ejecución de la Obra Pública; y Cláusulas 6 y 6.1 del Contrato, por lo que la ejecución de los trabajos no provoca el consentimiento del precio unilateralmente propuesto por COMMISA. No hay entonces una obligación pagable con recursos públicos.

258.- Todas estas infracciones legales claramente provocaron que el Tribunal Arbitral ordenara el pago de trabajos que no se ejecutaron en la realidad. Es decir, que ordenara el pago de precios que no fueron integrados para compensar el trabajo extraordinario ejecutado sino otro distinto, que contenía operaciones y recursos empleados distintos al que se paga. En materia de aplicación y ejecución de gasto para el pago de obras públicas, no hay una justificación para el pago porque no hay un costo efectivamente incurrido, es decir, el concepto de trabajo originalmente pactado no se cumplió. La problemática aquí expuesta es similar a la planteada en el Capítulo correspondiente a la materia de cruces, por lo que aplican los mismos principios legales y fácticos.

133

259.- El hecho de que no se realizó el trabajo como fue originalmente conceptualizado y contratado, es un hecho plenamente demostrado en el procedimiento arbitral, tal y como se desprende de los hechos narrados en el propio Laudo Arbitral. Es decir, COMMISA solicitó realizar trabajos en plataforma con la Castoro 10, en lugar de con la Bar Protector, es decir, con recursos distintos a los originalmente pactados. PEP aceptó la realización de esos trabajos al ser técnicamente aceptables. Sin embargo, al Tribunal Arbitral, no tomó en consideración estas nuevas condiciones contractuales que son indispensables para generar el pago de conformidad con el derecho mexicano sobre gasto público y que son de orden público.

260.- El Contrato de Obra Pública objeto del Arbitraje es un contrato de Obra a precios unitarios de conformidad con el artículo 57 de la Ley de Adquisiciones y Obras Públicas, el cual muy claramente señala que **la remuneración o pago total que deba cubrirse al contratista se hará por unidad de concepto de trabajo terminado.** Dicha disposición legal establece:

> "*Artículo 57.- Para los efectos de esta Ley, los contratos de obra pública podrán ser de dos tipos:*
> *I. Sobre la base de precios unitarios, en cuyo caso el importe de **la remuneración o pago total que deba cubrirse al contratista se hará por unidad de concepto de trabajo terminado**, o ......".*

261.- Por su parte, las Reglas Generales para la Contratación y Ejecución de la Obra Pública, aplicables a la relación jurídica creada por el Contrato de Obra Pública, en su Sección 5, relativa a los lineamientos para la integración de los precios unitarios, define lo que es un precio unitario, al establecer:

> "*5.2.5 PRECIO UNITARIO. Importe total por unidad de medida de cada concepto de trabajo*".

262.- En el Contrato fue adoptada esta disposición legal, en el sentido de que el pago sólo procedería contra la conclusión del concepto de trabajo pactado. En efecto, en la cláusula 3.3 del contrato, las partes pactamos:

> **"3.3 Precios Unitarios.** Los trabajos objeto de este Contrato se pagarán a base de precios unitarios conforme a lo consignado en el Anexo "C" del presente Contrato. Dichos trabajos incluyen la remuneración o pago total que deba cubrirse al Contratista por los trabajos, bajo los conceptos de costo directo, costo indirecto, financiamiento y utilidad, así como el costo de las obligaciones adicionales estipuladas en el presente Contrato a favor del Contratista. Dichos precios unitarios son fijos y sólo podrán ajustarse los costos directos que integran los mismos, en los casos y bajo las condiciones previstas en la Cláusula 3.7 del presente Contrato".

263.- Esta correspondencia entre precio unitario y concepto de trabajo está establecida legalmente. Así lo establece la Regla General para la Contratación y Ejecución de la Obra Pública 5.1.2, y la Cláusula 3.3 del Contrato antes citado. De igual manera, el Reglamento de la Ley de Obras Públicas, aplicable a la presente controversia, establece esta relación:

> **"ARTICULO 31.-** La proposición que el concursante deberá entregar en el acto de presentación y apertura, contendrá según las características de la obra:
>
> I.      Garantía de seriedad y carta de compromiso de la proposición;
> II.     Manifestación escrita de conocer el sitio de los trabajos;
> III.    **Catálogo de conceptos, unidades de medición, cantidades de trabajo, precios unitarios propuestos e**

135

*importes parciales y el total de la proposición;*

IV.   *Datos básicos de costos de materiales puestos en el sitio de los trabajos, de la mano de obra y del uso de la maquinaria de construcción;*

V.   **Análisis de precios unitarios de los conceptos solicitados, estructurados con costos directos, costos indirectos, costos de financiamiento de los trabajos y cargo por utilidad. El procedimiento de análisis de los precios unitarios, podrá ser por asignación de recursos calendarizados o por el rendimiento por hora o turno.**

*Los costos directos incluirán los cargos por concepto de materiales, mano de obra, herramientas, maquinaria y equipo de construcción.*

*Los costos indirectos estarán representados como un porcentaje del costo directo, dichos costos se desglosarán en los correspondientes a la administración de oficinas centrales, de la obra y seguros y fianzas.*

*El costo de financiamiento de los trabajos, estará representado por un porcentaje de la suma de los costos directos e indirectos; para la determinación de este costo deberán considerarse los gastos que realizará el contratista en la ejecución de los trabajos, los pagos por anticipos y estimaciones que recibirá y la tasa de interés que aplicará, debiendo adjuntarse el análisis correspondiente.*

*El cargo por utilidad, será fijado por el contratista mediante un porcentaje sobre la suma de los costos directos, indirectos y de financiamiento;*

> VI.  .*Programas de ejecución de los trabajos, utilización de la maquinaria y equipo de construcción, adquisición de materiales y equipos de instalación permanente, así como utilización del personal técnico, administrativo y de servicios encargado de la dirección, supervisión y administración de los trabajos, en la forma y términos solicitados, y*
> VII.  *Relación de maquinaria y equipo de construcción indicando si es de su propiedad, y su ubicación física.*
>
> *Tratándose de propuestas que presenten concursantes extranjeros, estos deberán acreditar que la integración de las mismas, partió de iguales condiciones en cuanto a precio, costo, financiamiento, oportunidad y demás que resulten pertinentes, de las que hubieren servido a los nacionales para integrar las suyas".*

264.- Esto es así porque un concepto de trabajo, conforme a las Reglas Generales para la Contratación y Ejecución de la Obra Pública, es definido de la manera siguiente:

> *"5.2.3 CONCEPTO DE TRABAJO. **Conjunto de operaciones y materiales** que de acuerdo con las formas y especificaciones respectivas, integran cada una de las partes en que se dividen convencionalmente los estudios y proyectos, la ejecución y equipamiento de las obras, la puesta en servicio, su conservación o mantenimiento y la supervisión de estos trabajos con fines de medición y pago".*

265.- Toda vez que el concepto de trabajo es esencialmente un conjunto de operaciones y materiales, es evidente que el precio unitario que se pacte responde a esos costos. Así el Tribunal Arbitral dicta el laudo sin fundamentación al considerar que no existe base legal para alterar los precios unitarios. En otras

palabras, si el conjunto de operaciones y materiales realmente aplicados al trabajo de tendido de tubería, correspondían a lo conceptualizado originalmente, corresponde entonces aplicar los precios unitarios del Contrato. Si dichas operaciones y materiales no corresponden a los originalmente pactados, estamos ante un concepto de trabajo distinto, y no procede la aplicación de los precios originales, sino integrar precios unitarios extraordinarios.

266.- Ya se ha establecido que el pago de trabajos relativo a obras públicas, realizado por PEP, constituye la aplicación y el manejo de recursos catalogados dentro del gasto público basados en el artículo 1 de la Ley de Adquisiciones y Obras Públicas, artículos 1 y 2 de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, y artículo 39 de su Reglamento, por lo que es una cuestión de orden público de conformidad con los artículos 126 y 134 de la Constitución Política Federal.

267.- En consecuencia, las condiciones y requisitos de pago de obligaciones contraídas en virtud o relacionadas con contratos de obras públicas, al ser con cargo a recursos federales, están sujetos a disposiciones jurídicas de orden público pertenecientes al derecho público, y no al mercantil.

268.- Así, podemos citar entre las disposiciones jurídicas de orden público, los artículos 44 fracción I del Reglamento de la Ley Federal de Presupuesto, Contabilidad y Gasto Público Federal, y 66, fracción I, del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria, que respectivamente disponen lo siguiente:

> "*Artículo 44.- Las entidades deberán cuidar bajo su responsabilidad, que los pagos que se efectúen con cargo a sus presupuestos aprobados se realicen con sujeción a los siguientes requisitos:*
> *I.* ***Que correspondan a compromisos efectivamente devengados,*** *con excepción de los anticipos previstos en los*

*ordenamientos legales y los mencionados ;*
*........"*.

*"Artículo 66. Los pagos con cargo al*
*Presupuesto de Egresos se realizarán por las*
*dependencias a través de la Tesorería. Los*
*pagos que realicen las entidades se*
*efectuarán por conducto de sus propias*
*tesorerías, llevando los registros*
*presupuestarios correspondientes en sus*
*respectivos flujos de efectivo.*
*Las dependencias, en el ejercicio de sus*
*erogaciones, adicionalmente deberán:*
*I.* **Que correspondan a compromisos**
**efectivamente devengados,** *con excepción*
*de los anticipos previstos en las*
*disposiciones aplicable; ........ "*.

**Como ya lo expresamos anteriormente, en el presente caso, el**
**"compromiso" que da causa para el pago no fue efectivamente devengado,**
**es decir, no se realizó el concepto de trabajo contratado, por lo que su pago**
**es nulo y la orden de pago infringe disposiciones de derecho mexicano de**
**orden público.**

269.- De igual manera podemos señalar que COMMISA no formalizó esta
reclamación como controversia técnica, y al igual que lo hemos explicado
anteriormente, la falta de formalización de los eventos de obstrucciones como
controversias técnicas se demuestra con la multicitada Acta de Recepción Física
de los trabajos de fecha 30 de agosto de 2002, en la cual se manifiesta en la
página 17 que estos reclamos estaban en elaboración apenas.

## V. Gastos Financieros.

**Primero**

270.- El Tribunal Arbitral no fundamentó los supuestos y requisitos legales
necesarios para condenar a PEP al pago de gastos financieros, mismos que son

139

de orden público mexicano.    Por otro lado, COMMISA no acreditó en el procedimiento arbitral que hubiere dado cumplimiento al procedimiento pactado para el pago establecido en el contrato. Como dijimos, dicho procedimiento de pago es de orden público, al tratarse de recursos presupuestados por el gobierno federal. Es decir, al tratarse de recursos cuya erogación o gasto o ejercicio o aplicación están regulados por normas constitucionales y tienen como propósito la consecución del interés público y no el interés particular.

Es decir, si COMMISA no estimó los trabajos oportunamente, no tiene derecho a reclamar gastos financieros porque incumplió normas de orden público que hacían imposible ejercer tal facultad. Este pacto contractual, que reproduce disposición de ley, es de interpretación estricta, puesto que no puede disponerse de recursos pertenecientes al gasto público por analogía, mayoría de razón, o por un simple principio de derecho comercial como el invocado por el Tribunal arbitral

271.- El Tribunal Arbitral consideró (párrafos 734[23] y 735[24] del Laudo Final) que de la interpretación conjunta de las Cláusulas 3.8.6 y 3.8.8 del Contrato, era procedente el pago del gasto financiero conforme a los requisitos siguientes:

i)    El pago de gastos financieros procede por retraso en el pago de estimaciones.

ii)    Existe retraso en el pago de estimaciones cuando no se paga en 30 días siguientes a la presentación de la estimación al supervisor.

---

[23] "734. En cuanto a los intereses devengados por las cantidades adeudadas, esta cuestión está regulada en la cláusula 3.8.6 del Contrato, que ordena que "en caso de retraso en el pago de estimaciones y de ajustes de costos PEP, a solicitud del Contratista, pagará gastos financieros conforme a una tasa que será igual a la establecida en la Ley de Ingresos de la Federación en los casos de prórroga para el pago de créditos fiscales", añadiendo la cláusula 3.8.8 que, por excepción, no se generan gastos financieros cuando PEP legítimamente suspenda el pago de estimaciones".

[24] "735. Del juego de las cláusulas 3.8.6 y 3.8.8 del Contrato, resultan las siguientes conclusiones:
-- el primer requisito para que se devenguen gastos financieros **es que se haya producido un retraso en el pago de estimaciones y de ajustes de costos.** Retraso implica que las cantidades debidas no hayan sido pagados en plazo. Y el plazo de pago viene determinado en la cláusula 3.8.2: 30 días después de la presentación de la estimación correspondiente.
-- en cuanto al comienzo del devengo, la cláusula 3.8.6 se limita a señalar que la tasa LFI se devengará en caso de "retraso", es decir, "desde que se venció el plazo" para pagarlas. Y el plazo para el pago es de 30 días, a contar desde la fecha de la estimación correspondiente (cláusula 3.8.2). Los gastos financieros dejarán de devengarse en la fecha en que se produzca el pago en efectivo."

iii)     Dicho pago procede a solicitud del Contratista

iv)     Que no exista una legítima causa para que PEP pueda rehusar el pago.

**Uno.**

272.- Dentro del primer punto, podemos señalar que el Tribunal Arbitral fue completamente incongruente en sus consideraciones, si tomamos en cuenta que la estimación es el acto mediante el cual se determina el volumen o cantidad de los trabajos realmente ejecutados, y se valoran los mismos, aplicando los precios unitarios pactados por unidad de medida, a dichas cantidades de trabajo. La estimación también es el documento donde consta dicha valoración, Así las cosas, la estimación de una obra es un acto formal.

273.- La estimación se define en la Regla 5.2.6 de las Reglas Generales para la Contratación y Ejecución de Obra Pública, aplicable al caso que nos ocupa, como la "*Valuación de los trabajos ejecutados en determinado período aplicando los precios unitarios de los conceptos de trabajo pactados durante dicho período o el porcentaje de precio alzado pactado correspondiente al avance de cada unidad de obra o de la obra. Por extensión el documento en el que se consignan las valuaciones antes mencionadas, para efectos de pago*".

274.- En cambio, el efecto jurídico del "Acta de Recepción Física Total de los Trabajos" es la de: i) verificar por parte de la dependencia o entidad (PEP), que los trabajos estén debidamente concluidos dentro del plazo pactado en el contrato; ii) una vez constatado lo anterior, proceder a su recepción; iii) determinar la fecha a partir de cuándo la contratista responde por vicios ocultos o cualquier defecto de la obra. Lo anterior en términos de los artículos 74, 75 de la Ley de Adquisiciones y Obras Públicas, y 49 del Reglamento de la Ley de Obras Públicas, y la cláusula 9.2.6 del contrato.

275.- Sin embargo, el Tribunal Arbitral, a pesar de que se obligó a aplicar normas federales mexicanas al caso, no consideró estas disposiciones normativas



al decidir la cuestión, porque no atendió la primera premisa establecida por él mismo, lo que es notoriamente incongruente, y origina que el laudo se encuentre en contradicción consigo mismo. Esto es, lo primero que el Tribunal debió establecer es la definición de estimación y si ésta fue elaborada y presentada al supervisor, lo cual nunca hizo el Tribunal Arbitral. Además, el Tribunal Arbitral consideró el tema de una manera muy distinta a la originalmente establecida por el mismo:

276.- En el párrafo 743[25] del laudo arbitral, el Tribunal Arbitral consideró que en el Contrato se había pactado que el pago sería procedente una vez que se concluyera cada parte de la obra, conforme fue seccionada convencionalmente, concluyendo con base en esa argumentación, que una vez concluida la obra y entregada procedería el pago de todos los trabajos de la obra. De esa manera determina indebidamente que PEP está en mora a partir de la terminación de los trabajos, y la recepción de la obra por parte de PEP, soslayando que las cláusulas contractuales sobre el pago, exigen la estimación del trabajo previamente a su pago; y soslayando la propia premisa inicial plasmada por el Tribunal que había considerado el plazo de pago contado a partir de la presentación de la estimación, y no de la terminación de los trabajos.

277.- Estas cláusulas contractuales en juego (3.8.6 y 3.8.8) reproducen lo dispuesto por el primer párrafo del artículo 69 de la LAOP, que claramente exige el requisito de una estimación no pagada para la procedencia del pago de gastos financieros, y no el supuesto de la entrega de la obra y su recepción, al señalar:

> *"Artículo 69.- En caso de incumplimiento en los pagos de estimaciones y de ajustes de costos, la dependencia o entidad, a solicitud del contratista, deberá pagar gastos financieros conforme a una tasa que será igual a la establecida por la Ley de Ingresos*

---

[25] "El Contrato está basado sobre el principio de que el Contratista debía ir cumpliendo con la obra encomendada, y que sería remunerada por PEP en un plazo de 30 días desde la finalización del trabajo —así se desprende de su cláusula 3.8. ...".

142

> de la Federación en los casos de prórroga
> para el pago de créditos fiscales. Dichos
> gastos se calcularán sobre las cantidades no
> pagadas y se computarán por días calendario
> desde que se venció el plazo, hasta la fecha
> en que se pongan efectivamente las
> cantidades a disposición del contratista ... ".

278.- Por otro lado, los principios de la mora, desde el punto de vista mercantil (utilidad, reciprocidad), no son aplicables a los contratos de obra pública, por lo que en consecuencia la realización y presentación de la estimación es un requisito indispensable para la condenación al pago de gastos financieros, por lo que al no existir dichas estimaciones, es improcedente pagar las obras, y pagar los gastos financieros correspondientes, con mayor razón.

279.- En su artículo 70 fracción I, el Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, vigente durante la vigencia del contrato de obra pública y su ejecución, establece que en los contratos de obra pública no pueden pactarse penas convencionales ni intereses moratorios a cargo de los organismos públicos, y establece:

> "Artículo 70.- Para los pedidos y contratos a
> que se refiere el artículo anterior tengan
> carácter de documentos justificantes,
> deberán sujetarse a lo siguiente:
> I. **En ningún caso se aceptará la
> estipulación de penas convencionales ni
> intereses moratorios a cargo de las
> entidades: ...**"

Con esto queda demostrado que dicho laudo es incongruente e infundado, porque no define ni considera los supuestos de la norma, sino manifiestamente supuestos distintos, a pesar de que ostensiblemente ha citado las cláusulas contractuales del caso.

Por esta razón es procedente declarar la nulidad del laudo.

**Dos.**

280.- En cuanto a la segunda premisa establecida por el juzgador para el pago de gastos financieros, es decir, la fecha a partir de cuándo comenzarían a correr los gastos financieros, dicha fecha la establece el Tribunal al día siguiente del 29 de septiembre del 2002.

281.- El juzgador considera que el pago debe hacerse 30 días después de la recepción física total de los trabajos (párrafo 743[26] del laudo final), porque considera que a partir de ese momento PEP se enriquece, al recibir y utilizar los bienes u obras contratados, sin haberlos pagado, y que COMMISA se empobrece al no recibir el precio (párrafo 743 del laudo final, ya transcrito). En consecuencia, el Tribunal determina (párrafo 743 del laudo final) que si la recepción física total de los trabajos se produjo el 30 de agosto de 2002, a partir de esa fecha se cuentan 30 días que tenía PEP para pagar dichos trabajos, venciéndose el 29 de septiembre de 2002[27]. En consecuencia, a partir del día siguiente se calculan los intereses, de acuerdo con el Tribunal Arbitral.

282.- Vale la pena subrayar que las consideraciones del juzgador son infundadas, porque la obligación de pago no nace a partir de la recepción de la obra sino a partir de la estimación, porque el contrato es a precios unitarios y NO a

---

[26] "...Constituye un hecho probado que el 30 de agosto de 2002 la Contratista entregó a PEP la totalidad de la obra, otorgando ambas partes el Acta de Recepción Física Total. De una interpretación conjunta de las cláusulas 3.8.2 y 9.2.6 del Contrato resulta, en opinión del Tribunal, que PEP tenía la obligación de pagarle a Commisa todas las cantidades debidas por la construcción de la obra, a más tardar 30 días después de su entrega, es decir, el 29 de septiembre de 2002. Esta es una interpretación resulta de un análisis sistemático del Contrato, y además satisface de forma equitativa los intereses en juego" ... "Hasta el Acta de Recepción Física, PEP no había recibido la obra a su entera satisfacción y, por lo tanto, no podía haber surgido la obligación recíproca de satisfacer íntegramente el precio. A partir del otorgamiento del Acta de Recepción Física Total, se rompe el sinalagma entre las partes: el patrimonio de la Demandada se enriquece, pues disfruta a su entera satisfacción de la obra sin haberla pagado en su integridad, mientras que el Contratista sufre un empobrecimiento, pues ha entregado su prestación, sin haber recibido el precio. **Para restablecer el sinalagma, las cantidades impagadas por PEP, se deben incrementar con el devengo, a partir del 29 de septiembre de 2002, de un interés moratorio, calculado al tipo convenido en el propio Contrato.**"

[27] Una violación al fondo del asunto es que el Tribunal Arbitral empieza a contar el término desde el mismo día de la fecha del Acta de Recepción Física Total" de los trabajos, y no a partir del día siguiente.

precio alzado. Es decir, en los contratos de obra a precio alzado[28], la cantidad a pagar se determina aplicando los precios unitarios pactados a las cantidades de trabajo realmente ejecutados, de conformidad con el artículo 57 fracción I de la LAOP, y cláusulas 3.3, 3.4, y 3.8 del Contrato.. "... *en este caso el precio no se fija por la totalidad de la obra, sino por cada parte, tomándose como parámetro una unidad o medida*" (Humberto Podetti. Contrato de Construcción. Editorial Astrea. Página 244).

283.- Esta argumentación tiene relación con las definiciones normativas de "Concepto de Trabajo", "Unidad de Medida", y "Precio Unitario", relacionadas en el capítulo correspondiente a "Otras Controversias", apartado 2, respecto a la reclamación por las diferencias de tarifas de espera por trabajos en plataformas, mismas que solicitamos se tengan aquí por reproducidas, como si se hiciesen al pie de la letra, por economía procesal.

284.- Por otro lado, no es el Supervisor o el Residente de Obra el que va a pagar la estimación. Estas figuras contractuales únicamente reciben la estimación, y la aprueban en caso de estar debidamente justificado el volumen de trabajo y las cantidades que en el mismo se consignan. En este punto se equivoca el Tribunal Arbitral, porque la función del Supervisor no es pagar estimaciones, y no puede disponer del presupuesto de PEP, y si hipotética y materialmente pudiere hacerlo, estaría incumpliendo con sus deberes impuestos por el artículo 8, fracciones I y IV, de la Ley de Responsabilidades Administrativas de los Servidores Públicos, y se haría acreedor a las sanciones del caso. En otro sentido, sería un acto ilícito; hay una imposibilidad jurídica de que el Supervisor pague reclamaciones. El Tribunal no alcanzó a comprender el momento oportuno para el pago de estimaciones.

285.- Los pagos de PEP no pueden realizarse por ninguna otra dependencia que no sea la ventanilla única de pagos de PEP (artículo 11 de la

---

[28] En los contratos de obra a precio alzado el pago está determinado por el resultado: terminada la obra, el Contratista recibe el pago.

Ley Federal de las Entidades Paraestatales), de la misma manera, que los pagos de la administración pública federal, únicamente pueden realizarse a través de la Tesorería de la Federación, de conformidad con el artículo 39 del Servicio Público de la Tesorería de la Federación.

286.- En el párrafo 746[29] del Laudo Final, el Tribunal Arbitral consideró que la presentación de la estimación y su factura en la ventanilla única de pagos de PEP, como causa que detona el plazo para el pago de trabajos, sólo es una cláusula operativa durante la vigencia del contrato, y no es aplicable una vez que el contrato ha terminado; alegando adicionalmente que para condenar al pago de gastos financieros basta acreditar el retraso en el pago y la solicitud del contratista, y no que se haya presentado documentación alguna a la ventanilla única.

287.- Es infundada esta argumentación del Tribunal Arbitral. PEP jamás ha dicho que para la procedencia del pago de gastos financieros COMMISA tenía que haber solicitado su pago por escrito a la ventanilla única. Lo que PEP ha alegado desde el inicio, es que PEP no ha incumplido con ninguna obligación de pago, porque para ello COMMISA tenía que constituir dicha obligación de pago de dinero, en los términos del Contrato y la LAOP.

288.- En este caso, el Tribunal Arbitral infringe el sistema del control del gasto público contenido en el presupuesto de egresos de la federación, que concentra en una sola dependencia dichos pagos con cargo a recursos federales. Si el pago se concentra en una sola dependencia, lo que en el caso de PEP es la ventanilla única, cuando se habla de retrasos en el pago se tiene que entender

---

[29] "746. El primer argumento esgrimido por PEP consiste en que Commisa debería haber presentado la factura y la documentación soporte en la ventanilla única de PEP, sita en Ciudad del Carmen, Campeche, tal como prevé la cláusula 3.8.3 del Contrato. El argumento no convence". **El procedimiento de pago a través de la ventanilla única está previsto para los pagos durante la ejecución de la obra, no a los pagos exigidos a través de un arbitraje, años después de haberse finalizado la obra.** Pero es más: de acuerdo con la cláusula 3.8.6, reguladora del incumplimiento en el pago, los intereses moratorios deben ser pagados "en caso de retraso en los pagos de estimaciones y ajustes de costos de PEP, a solicitud del Contratista". La cláusula únicamente exige que se haya producido "un retraso en los pagos" y que Commisa haya solicitado el pago de intereses moratorios, pero no que **Commisa haya presentado algún tipo de documentación en la ventanilla única de Ciudad del Carmen.** Dado que los dos requisitos exigidos por la cláusula 3.8.6 se han cumplido, el Tribunal Arbitral no alberga duda alguna de que han de devengarse gastos financieros".

como retrasos de la ventanilla única, El sistema de asignación de funciones y responsabilidades de la administración pública, impide resolver la situación de una manera eminentemente de derecho privado.

289.- En ese sentido, la disposición contractual relativa al procedimiento de pago, contenida en las cláusulas 3.8.1, primer párrafo, parte final, y 3.8.4, es obligatoria para las partes (además de que en el contrato no hay ninguna limitación al respecto) durante la vigencia y después de la vigencia del contrato, por una norma imperativa relativa a la erogación de recursos federales. Esto es, el Contratista (él personalmente) debe presentar su estimación a la ventanilla única, y si ésta no paga en 30 días, entonces, y sólo en ese evento, se causará gasto financiero.

290.- Esto es, COMMISA tenía que conseguir la autorización de las estimaciones, es decir, la conformidad del Supervisor del Contrato, con la valuación hecha por el Contrista de los trabajos ejecutados. Para eso, primero tenía que elaborar sus estimaciones. Esto nos lleva a otro punto de nulidad de la decisión, que es la parcialidad del juzgador para presumir que las reclamaciones de COMMISA tenían sustento, y que PEP tenia que pagarlas antes que cualquier otra consideración, véase el párrafo 749[30] del laudo final, en la cual el Tribunal considera que "le bastaría a PEP manifestar su inconformidad con la liquidación para no pagar gastos financieros". Es decir, presume la buena fe del contratista y la mala fe de PEP, sin justificación, lo que es claro signo de parcialidad a favor de COMMISA y en contra de PEP.

291.- Este criterio del Tribunal Arbitral infringe también las disposiciones presupuestarias que indican que la administración pública no puede hacer pagos con cargo al erario federal, sin antes cerciorarse que efectivamente sea un costo

---

[30] ... Entender lo contrario sería lo mismo que dejar el pago de los gastos financieros al libre arbitrio de PEP, que con solo discrepar de las cuantías reclamadas, podrá evadir su obligación de pagar intereses moratorios. Una interpretación del Contrato en erste sentido no podría nunca ser acogida, por violar el principio imperativo impuesto por el artículo 1797 C. c. : *"La validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contretantes".*

incurrido (artículo 44 del Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, y artículo 66 del Reglamento de la Ley Federal de Presupuesto y Responsabilidad Hacendaria), y en el caso eso no sucede sino hasta la presentación de la estimación. Por tal razón, no puede correr ningún plazo para el pago, ni actualizarse la obligación de gastos financieros en beneficio de COMMISA.

292.- Vale la pena referirnos a la disgregación argumentativa del Tribunal Arbitral, contenida en el párrafo 744[31] y 748[32] del Laudo Arbitral, que señala que el "Acta de Recepción Física Total de los Trabajos", hace las veces de interpelación para el cobro, lo cual también es inconsistente con las disposiciones y alegaciones antes expuestas. El "Acta de Recepción Física Total de los Trabajos", no es un documento que se pueda considerar como una interpelación de pago, no solamente por los efectos jurídicos que tiene su expedición, como ya se expuso supra, sino principalmente porque COMMISA tiene que presentar posteriormente a dicha acta (y acto), su estimación final en los términos de la regla 5.2.7[33] de las Reglas Generales para la Contratación y Ejecución de la Obra Pública.

293.- Sin liquidación de los trabajos (cantidad líquida) no puede surtir efectos una interpelación. La interpelación al cobro se produce, una vez que COMMISA presente su estimación debidamente autorizada, junto con su factura, a la ventanilla única de PEP, y si no se ha producido el cobro, no puede correr el

---

[31] "744. La anterior conclusión se ve reforzada por el tenor del artículo 2080 C.c., según el cual "si no se ha fijado el tiempo en que deba hacerse el pago y se trata de obligaciones de dar, no podrá el acreedor exigirlo sino después de los treinta días siguientes a la interpelación que se haga, ya judicialmente, ya en la extrajudicial, ante un notario o ante dos testigos. Es decir: aun si se interpretara que el Contrato no tiene un tiempo fijado para que PEP hiciera el pago final, de acuerdo con el C .c. éste debería haberse hecho en un plazo de 30 días desde la interpelación extrajudicial. Interpelación que se produjo a través a través del Acta de Recepción Física Total, en la que Commisa planteó sus reclamaciones y de la que PEP, al recibir y firmar el documento, se dio por enterada."

[32] "748. En cuanto al primero de estos argumentos, el tenor literal de la cláusula 3.8.6 del Contrato no existe ningún tipo de interpelación o intimación para que comience el devengo de intereses, sino simplemente que el Contratista los solicite, como ha ocurrido en el presente arbitraje. Pero es más: aún si se exigiera, al amparo del artículo 2050 C.c., que Commisa hubiera planteado una interpelación a PEP, para que los intereses comenzaran a devengarse, esto habría ocurrido a través del Acta de Recepción Física Total, en la que la Demandante planteó sus reclamaciones, dándose el deudor por enterado de su existencia".

[33] "5.2.7 Liquidación. Estimación final en la cual se ajusta el pago total de los trabajos ejecutados en los términos del contrato".

plazo para pagar en contra de PEP, y si no existe retraso, no hay causación de gasto financiero.

**Tres.**

294.- En cuanto a que dicho pago procede a solicitud del Contratista, esto es cierto, siempre y cuando PEP se haya negado a autorizar injustificadamente una estimación, o la ventanilla única de pagos no haya hecho el pago correspondiente en treinta días. El hecho de que COMMISA haya solicitado el pago de gastos financieros, sólo porque terminó y entrego sus trabajos, y transcurrieron treinta días, no se ajusta a la normatividad de orden público, antes citada.

295.- El procedimiento de pago estipulado en el contrato era a grandes rasgos que el contratista debía elaborar sus estimaciones; luego presentar las estimaciones (con toda la documentación que soporte la valuación) al supervisor de obra para que las aprobara; una vez aprobada, si la cantidad correspondía a los trabajos realmente ejecutados con la calidad y en la cantidad exigida por el contrato, el Contratista debía presentarla, junto con su factura, a la ventanilla única de PEP. Ni COMMISA probó haber cumplido este procedimiento, ni el tribunal arbitral se lo exigió.

296.- Para pronta referencia y a efecto de facilitar la tarea de Su Señoría, transcribimos a continuación el contenido de las citadas cláusulas 3.8.1, 3.8.2, 3.8.6 y 3.8.8 del Contrato No. PEP-O-IT-136/98.

> *"3.8 Forma de Pago. Los trabajos objeto del presente Contrato se pagarán mediante la formulación de estimaciones que abarcarán periodos de un mes calendario; estas estimaciones serán presentadas por el Contratista al Supervisor, acompañadas de la documentación que acredite la procedencia de su pago dentro de los 4 (cuatro) días hábiles siguientes a la fecha de corte, la que*

*será el día último de cada mes; si las estimaciones no son presentadas en el término antes señalado, los conceptos correspondientes se incorporarán en la siguiente estimación.*

*3.8.1 Revisión, Aprobación y Autorización de Estimaciones. El supervisor, dentro de los 8 (ocho) días naturales siguientes a la fecha en que hubiere recibido las estimaciones, revisará y, en su caso emitirá recomendación de pago de las estimaciones, turnándolas al representante autorizado de la Dirección del Proyecto Cantarell, quien, dentro de un plazo de 2 (dos) días naturales, autorizará el pago correspondiente, al Contratista para que éste las presente, junto con la factura correspondiente, en la Ventanilla Única de PEP, y éste inicie su trámite de pago.*

*En el supuesto de que durante la revisión de las estimaciones surjan diferencias técnicas o numéricas, el Supervisor lo notificará de inmediato al Contratista para que, de ser posible, dichas diferencias queden conciliadas y, en su caso, aprobada la estimación correspondiente por el Supervisor, dentro de los 8 (ocho) días señalados para la revisión de las estimaciones.*

*De no ser posible conciliar todas las diferencias de modo que la estimación sea aprobada dentro del plazo indicado, las pendientes deberán resolverse e incorporarse en la siguiente estimación.*

*Las estimaciones y la liquidación aunque hayan sido pagadas no se considerarán como aceptación de los Trabajos, ya que PEP se reserva expresamente el derecho de reclamar por trabajos faltantes o mal ejecutados o por pago de lo indebido.*

*En el evento que el Contratista sea declarado en quiebra o haga una asignación general a beneficio de acreedores, o si un síndico o un*

interventor es nombrado a cuenta de la insolvencia del Contratista, o si se rescinde este Contrato parcial o totalmente, salvo que las leyes aplicables indiquen lo contrario, la propiedad de todo el equipo y los materiales que el Contratista hubiere traspasado a PEP en concordancia con la Cláusula 16.4, no serán parte del patrimonio del Contratista.

Si el Contratista estuviese inconforme con las estimaciones o con la liquidación de dichas estimaciones, tendrá un plazo de 30 (treinta) días naturales, a partir de la fecha en que se haya autorizado la estimación o su liquidación, según sea el caso, para hacer por escrito la reclamación. Si transcurrido este plazo el Contratista no efectúa la reclamación, se considerará que la estimación o liquidación quedó definitivamente aceptada por él y sin derecho a posterior reclamación.

3.8.2 Plazo para el Pago de Estimaciones. El pago correspondiente se efectuará a los 30 (treinta) días naturales siguientes a la fecha en que el Contratista presente al Supervisor de PEP las estimaciones correspondientes.

A solicitud del Contratista, el pago de los ajustes de costos que resulten de la aplicación de la Cláusula 3.7, se realizará a los 30 (treinta) días naturales siguientes a la fecha en que PEP resuelva por escrito el aumento o reducción, mediante las estimaciones mencionadas en esta Cláusula, que contendrán, en su caso, tanto los pagos por Trabajos ejecutados como su correspondiente ajuste y en caso de no incluirse en la misma estimación, se contemplará en la subsecuente con la aclaración respectiva.

Cuando la fecha de vencimiento de acuerdo con las condiciones de pago sea día inhábil bancario en la plaza de pago, se aplicará el siguiente criterio:

# EXHIBIT 1
Part 6

*Vencimiento día inhábil*
  *Pago*

| | |
|---|---|
| Domingo posterior (lunes) | *Día* |
| Sábado (viernes) | *Día anterior* |
| Lunes a jueves posterior | *Día* |
| Viernes (jueves) | *Día anterior* |

*3.8.6 Incumplimiento en el Plazo de Pago de Estimaciones. En caso de retraso en los pagos de estimaciones y de ajustes de costos de PEP, a solicitud del Contratista, pagará gastos financieros conforme a una tasa que será igual a la establecida en la Ley de Ingresos de la Federación en los casos de prórroga para el pago de créditos fiscales. Dichos gastos se calcularán sobre las cantidades no pagadas y se computarán por días calendario desde que se venció el plazo, hasta la fecha en que se pongan efectivamente las cantidades a disposición de PEP.*

*3.8.8 Facultad de Suspensión de Pagos. Queda expresamente pactado por las partes que PEP podrá suspender el pago de estimaciones por Trabajos ejecutados que hayan sido presentadas o que se presenten para su cobro, reteniendo los montos correspondientes, sin que dicha suspensión genere el pago de gastos financieros y siendo bajo la responsabilidad y costo del Contratista cualquier situación de la que PEP pudiera resultar responsable si permanece sin pagar (ejem., retención no pagada e impuestos atrasados), en caso de que se presente alguno de los siguientes supuestos:*

I.    *El incumplimiento por parte del Contratista en la presentación de la póliza de fianza de cumplimiento o de los endosos correspondientes, en los términos y dentro de los plazos*

señalados al efecto en las Cláusulas
7.1 y 7.1.3.

II.     El   incumplimiento   por   parte   del
        Contratista en la presentación de las
        copias certificadas de las pólizas y/o
        certificados a que se refiere la cláusula
        7.3.2, en los términos y dentro de los
        plazos estipulados en las Cláusulas
        7.3.2 y 7.3.3.

III.    Existan reclamaciones pendientes de
        resolver de PEP contra el Contratista;

IV.     El    Contratista    esté    en    mora
        substancial en el cumplimiento de
        cualquiera    de    sus    obligaciones
        contractuales, incluyendo, pero no
        limitadas a, el programa, la garantía
        de calidad y los requisitos de salud y
        seguridad;

V.      El Contratista no ha presentado el
        Programa de Trabajo en los términos y
        condiciones estipuladas en el numeral
        3 (Programa de Trabajo) del Anexo "B-
        2".

VI.     Existan   cantidades   pendientes   de
        pago por parte del Contratista y a
        favor de PEP, por concepto de pagos
        en exceso; o

VII.    Se   determinen   compensaciones   a
        favor de PEP resultantes de otras
        transacciones."

297.- La transcripción anteriormente hecha, determina el criterio infundado,
erróneo e incorrecto del tribunal, formado a partir de una interpretación equivocada
y parcial del contenido de las cláusulas del contrato celebrado entre PEP y
COMMISA, pues sólo tomó en consideración para arribar a su determinación las
cláusulas 3.8 (forma de pago), 3.8.2 (plazo para el pago de estimaciones) y la
9.2.6 (Acta de Recepción Total), ignorando y desdeñando por completo el
contenido de la cláusula 3.8.1, referida a la Revisión, Aprobación y Autorización de
Estimaciones, misma que establece en su primer párrafo, el que una vez
autorizado el pago de las estimaciones correspondientes, estas se devolverían al

contratista para que esta las presente, junto con la factura correspondiente, en la ventanilla única de PEP, y éste inicie el trámite de pago.

298.- De todas las argumentaciones expuestas anteriormente, y de las citas contractuales realizadas, se desprende claramente que la resolución del Tribunal Arbitral no respetó el pacto contractual celebrado entre las partes, infringiendo el pacto de las partes en el sentido de que el arbitraje fuera resuelto con apego a estricto derecho[34], e infringiendo el artículo 17(2) del Reglamento de Arbitraje de la CCI, conforme al cual se desarrolló el arbitraje, que ordena claramente que al dictarse el laudo el Tribunal Arbitral deberá tomar en cuenta lo estipulado contractualmente.

**Cuatro.**

299.- En cuanto a que no exista causa legítima para la suspensión del pago, el Tribunal Arbitral no desarrolla este requisito para la procedencia del gasto financiero. Es decir, en ninguna parte de la decisión argumenta, motiva o funda, que no existe ninguna causa de suspensión, no obstante mencionar, en el párrafo 735[35] del laudo final, que ha considerado relevantes de discernir las fracciones III y IV de la Cláusula 3.8.8 del Contrato. Esto por sí mismo vicia el laudo arbitral al ser una infracción notoria al debido proceso (por ausencia de motivación y congruencia), protegido en nuestro sistema jurídico por el artículo 16 de la Constitución, actuación que deja en indefensión a PEP. Esta decisión del Tribunal Arbitral, de igual manera, infringe el Reglamento de Arbitraje de la CCI, ordenamiento conforme al cual se desarrolló el proceso en el procedimiento arbitral, y que en su Artículo 25(2) ordena que el laudo deberá ser motivado, y el

---

[34] El procedimiento de arbitraje es por naturaleza de estricto derecho, a menos que las partes acuerden expresamente que el tribunal arbitral actuara como amigable componedor o *ex aequo et bono*, según el artículo 17(3) del Reglamento de Arbitraje de la CCI.
[35] " ... el tercer requisito consiste en que PEP no tenga legítima causa para suspender el pago; la cláusula 3.8.8 enuncia siete causas de este tipo, siendo las dos únicas potencialmente relevantes para resolver la presente litis las (III) Y (IV) ; de acuerdo con la primera, PEP puede suspender el pago, sin devengarse intereses , si existen *reclamaciones pendientes de resolver de PEP contra el Contratista*"; la segunda amplía el ámbito de la suspensión a supuestos en los que "*el Contratista esté en mora substancial en el cumplimiento de las obligaciones contractuales*". .

artículo 27, que indica que debe ser congruente, por lo que el laudo no se emitió conforme a las reglas pactadas por las partes para el arbitraje. Esta infracción al procedimiento, es de tal manera grave que por sí misma acarrea la nulidad del laudo.

300.- Sin embargo, se insiste que la principal causa para suspender el pago, es la falta de estimaciones (Regla 5.2.7 de las Reglas Generales para la Contratación y Ejecución de la Obra Pública, la cual contempla la estimación final del contrato). Esto es, para liquidar el contrato hace falta la elaboración de la estimación final, no la simple recepción de los trabajos. La Regla 5.2.7 establece:

> "5.2.7 Liquidación. Estimación final en la cual se ajusta el pago total de los trabajos ejecutados en los términos del contrato".

301.- Así las cosas, la excepción opuesta por PEP ante el tribunal arbitral, en el sentido de que las reclamaciones de COMMISA no estaban liquidadas era procedente, por lo que es ilegal e incorrecta la afirmación del Tribunal Arbitral manifestada en el párrafo 749[36] del Laudo Final de que la Cláusula 3.8.6 del Contrato no exige que las cantidades sean líquidas para proceder al pago de gastos financieros. Además, el tribunal arbitral claramente sigue ignorando la definición de estimación, la cual evidentemente determina cantidades líquidas, al valuar los trabajos y es fundamental para dictar el laudo en relación a los gastos financieros.

302.- Es importante subrayar que el Supervisor de la Obra no cesa en sus funciones una vez terminada la obra, sino hasta que se extingan todos los

---

[36] "749. Y en cuanto al argumento de la falta de liquidez, tampoco puede prosperar, pues la cláusula 3.8.6 del Contrato no exige que las cantidades sean líquidas para que, con respecto a ellas, se devenguen intereses moratorios. Basta con que la cuantía de las cantidades debidas se determine, tal como ocurre en este Laudo, para que devenguen intereses desde la fecha en que contractualmente debieron ser pagadas. Entender lo contrario sería lo mismo que dejar el pago de los gastos financieros al libre arbitrio de PEP, que con solo discrepar de las cuantías reclamadas, podría evadir su obligación de pagar intereses moratorios. Una interpretación del Contrato en este sentido no podría nunca ser acogida, por violar el principio imperativo impuesto por el artículo 1797 C. c.: "La validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes".

derechos y obligaciones que resulten de la misma, es decir, hasta que se liquide el contrato mediante la estimación final.

303.- En efecto, con fecha 8 de abril de 2003, siete meses después de terminada la obra, por supuesto, de manera extemporánea y sin posibilidad de surtir efectos, COMMISA le solicitó al supervisor del Contrato, Ingeniero Alfredo Gómez Rangel que formalizara la Controversia Técnica relativa a malos tiempos (Documento COM/EP2800/2003-5556). Este documento era conocido por el Tribunal Arbitral, y negligentemente no fue tomado en cuenta en la decisión, tal como se acredita con la cita que hace del mismo el árbitro disidente Licenciado Darío Oscós Coria en su Voto Particular (página 4, párrafo 8), que corre agregado como parte del laudo arbitral.

304.- Por otro lado, ese mismo documento acredita, tomando en cuenta la conducta de las partes, que COMMISA aún no había formalizado Controversia Técnica alguna en esta materia al terminar el Contrato, y que su reclamación fue extemporánea, cuando no había posibilidad jurídica que PEP tomara en cuenta el fondo del asunto. Es decir, no había posibilidad de causar obligación alguna.

305.- En tal virtud, es infundada y constituye un contrasentido la actitud del Tribunal Arbitral al considerar que se formalizó la controversia técnica, aún en contra de la expresa manifestación de COMMISA, es decir, que en el Acta de Recepción había cantidades que se debían por ciertas controversias, cuando apenas el reclamo se encontraba en elaboración, y en algunos casos, como malos tiempos, ni siquiera había cuantificación. Es más, esto demuestra su parcialidad, porque supuestamente resuelve tomando en cuenta la conducta de PEP (Párrafo 118 del Laudo Final), pero no examina la conducta de COMMISA.

306.- Asimismo, esto refuerza la interpretación de PEP del "Acta de Recepción Física Total" de los Trabajos, en el sentido de que tampoco COMMISA

formalizó su controversia técnica con respecto a las llamadas "controversias técnicas" 19, 27, 34 y 35.

307.- La elaboración de la estimación era requisito indispensable del Contrato, y las partes ajustaron su conducta a dicho requisito. Durante la vigencia del contrato celebrado con PEP, de acuerdo al "Acta de Recepción Física Total" del 30 de agosto de 2002 suscrita por PEP y COMMISA, ésta **presentó 52 estimaciones que fueron aprobadas y pagadas** por PEP, generando un total acumulado por obra ejecutada de $251'188,059.62 M.N. y 215'903,797.64 dólares de los Estados Unidos de América, y por concepto de ajustes de costos **presentó 4 estimaciones** por un total de $90'562,422.65 M.N., lo cual quedó asentado expresamente en la citada Acta en las páginas 14 y 15.

308.- Además, en la propia Acta de Recepción Física de los Trabajos, página 23, bajo el rubro de CONCEPTOS PENDIENTES DE PAGO, se estableció que la Contratista presentaría estimación para autorizar su pago previa conciliación. En consecuencia, la conducta de las partes ratifica la obligatoriedad del procedimiento de pago y de las estimaciones autorizadas y presentadas en ventanilla de pagos, aún después de terminado el contrato, por lo que el Tribunal Arbitral infringe nuevamente el Reglamento de Arbitraje de la CCI (artículo 17 (2)).

309.- De todo lo anteriormente expuesto, es claro que la acción por el pago de gastos financieros, no fue acreditada por COMMISA, ni desde el punto de vista del derecho público ni desde el punto de vista del derecho privado, sin embargo y a pesar de ello, el tribunal arbitral dictó el laudo que atenta contra normas de orden público, por lo cual resulta nulo el laudo arbitral.

**Nulidad**

310.- Queda claro que los elementos determinados por el propio Tribunal Arbitral para declarar procedente el pago de gastos financieros no se han

cumplido. Queda también de manifiesto que las conclusiones infundadas y equivocadas del Tribunal Arbitral obedecen al pretender resolver una controversia de naturaleza administrativa y de disposición de recursos públicos, a la luz de los principios y preceptos del derecho mercantil.

311.- Como se expuso en el capítulo correspondiente, el Tribunal Arbitral no aplicó las disposiciones pertinentes del caso. En ninguna parte hace referencia el Tribunal Arbitral a las disposiciones de orden público que regulan los pagos con cargo al presupuesto de las entidades de la administración pública.

312.- Por otro lado, el Tribunal Arbitral, que se obligó a dictar el laudo no en equidad, sino en estricto derecho, aplicando las leyes federales mexicanas, señala expresamente  en su resolución que la misma **"además satisface de forma equitativa los intereses en juego"**(párrafo 743 del Laudo Final, ya transcrito), sin entender que los intereses en juego no son ambos privados, sino que hay una disputa entre un interés público y un interés privado, en el cual, la justicia conmutativa no es idónea para decidir el pleito (véanse los párrafos 739[37] y 740[38] del Laudo Final).  También es evidente la parcialidad del Tribunal Arbitral en los supuestos señalados anteriormente: es decir, el Tribunal pondera como mejor derecho el beneficio del Contratista que el respeto irrestricto al contrato. **Es decir, el Tribunal permite que COMMISA se aproveche de su propio dolo, porque evidentemente no cumplió con el procedimiento de pago establecido contractualmente, lo cual constituye una violación al orden público**

---

[37] "739. Constituyen hechos probados que el 30 de agosto de 2002 ambas partes firmaron y otorgaron el Acta de Recepción Física Total, prevista en la cláusula 9.2.6 del Contrato, en la que se dejó constancia de la entrega de la obra al Propietario, y también de que el Contratista le reclamaba el pago de determinadas partidas. Desde entonces PEP viene utilizando a su satisfacción los sistemas de ductos que conforman el objeto del Contrato".

[38] "740.-El Tribunal Arbitral deja constancia de que PEP no ha alegado que la obra adolezca de ningún vicio, ni ha presentado reclamación alguna frente a Commisa basada en un incumplimiento de sus obligaciones dimanantes del Contrato. Desde el 30 de agosto de 2002 PEP viene disfrutando del uso y disfrute, pacífico y satisfactorio de la obra que Commisa le construyó y entregó. Sin embargo, el Contratista no ha cobrado una parte sustancial del precio debido, a pesar de haber transcurrido más de cinco años desde su entrega".



internacional, porque ningún país permite que el cumplimiento de un contrato quede al arbitrio de uno de los contratantes. Aunque fuere cierta la consideración del Tribunal Arbitral (que no lo es), eximir a COMMISA de cumplir con el contrato sólo porque ha sufrido un perjuicio, es completamente injustificado, y violenta el estricto derecho.

313.- En caso de diferencias técnicas, el Contrato establecía en su cláusula 23.2 la posibilidad de elevar la disputa a Controversia Técnica (dispute board), establecido además, como un requisito procedimental *sine qua non* para acudir al arbitraje.

314.- De conformidad con el Acta de Misión (Capítulo C, apartado (d), inciso 2 d), PEP expresamente solicitó la aplicación del artículo 126 de la Constitución Política Mexicana, de la Ley de Presupuesto, Contabilidad y Gasto Público Federal, del Reglamento de la Ley de Presupuesto, Contabilidad y Gasto Público Federal; de la Ley Federal de Responsabilidades de los Servidores Públicos; la Ley General de Bienes Nacionales; y de la Ley de Adquisiciones y Obras Públicas, entre otras, **ninguna de las cuales aplicó el tribunal arbitral**.

315.- Las leyes aplicables al fondo de la controversia, o leyes sustantivas de aplicación, lo eran las leyes federales mexicanas, de conformidad con el Capítulo H del Acta de Misión. Especialmente eran aplicables las leyes administrativas porque el contrato base de la acción es un contrato administrativo.

316.- El Contrato de Obra Pública es un Contrato Administrativo y no Civil. Así se refleja por estar celebrado por un organismo público descentralizado, como PEP; por estar celebrado y regulado por la Ley de Adquisiciones y Obras Públicas, y por haber sido celebrado en interés público de conformidad con el segundo párrafo del artículo 134 de la Constitución.

317.- Los Contratos Administrativos no responden a las mismas reglas que los Contratos Civiles, por lo que no pueden interpretarse de la misma manera. Por

ejemplo, ya ha quedado asentado en tesis de los tribunales federales, que los contratos administrativos establecen un régimen exorbitado de derechos, es decir, son en beneficio del Estado. De igual manera, la capacidad de contratación y el consentimiento del Estado para contratar, está regulado por un sinnúmero de disposiciones como la LAOP, la Ley Federal de Responsabilidad Administrativa para los Servidores Públicos, la Ley Federal de Presupuesto y Responsabilidad Hacendaria; la Ley Federal de Entidades Paraestatales; la ley del servicio de tesorería; entre otras, así como sus reglamentos, reglas administrativas, lineamientos, oficios y circulares expedidos por la administración pública. Así las cosas, pocas materias de un contrato de obra pública pueden ser negociadas por las partes, ni dispuesta por ellas.

318.- De igual manera, el Tribunal Arbitral no puede disponer de normas de orden público mexicano, es decir, no puede determinar de ninguna manera el tribunal arbitral que los pagos con cargo al erario federal se hagan por dependencias distintas a las señaladas en la ley, como medida de control presupuestal, y tampoco alterar los procedimientos de pago de recursos federales, también establecidos en aras de una administración eficiente y honrada de los recursos federales, y menos con base en principios mercantilistas.

319.- Por otro lado, el interés privado de COMMISA, como el derecho a obtener una contraprestación por su trabajo, de ninguna manera puede prevalecer sobre el interés público de un manejo eficiente, eficaz y honrado, de los recursos públicos, principios rectores contenidos en el artículo 134 de la Constitución. Así, al tener su causa en un acto claramente ineficaz y carente de validez por parte del Tribunal Arbitral, la condena al pago de gastos financieros también rompe el sistema jurídico-constitucional de administración de los recursos federales.

320.- En ese entendido, la naturaleza mercantil del procedimiento de arbitraje, no le cambia al contrato base de la acción su naturaleza administrativa. Así las cosas, la interpretación y aplicación del contrato administrativo de obra

pública bajo las reglas del derecho privado resulta inconsistente con la naturaleza del mismo y su objetivo. Por lo que, al no establecer correctamente el marco regulatorio del contrato de obra pública, el Tribunal Arbitral cometió el error manifiesto de aplicar los principios del derecho mercantil a relaciones jurídicas de carácter administrativo.

**Segundo**

321.- El Laudo Final dictado asimismo es nulo en lo relativo a la condena realizada para el pago de gastos financieros (o intereses, tal cual los considera el Tribunal Arbitral) por contravenir normas de orden público mexicano, de conformidad con el artículo 1457 fracción II del Código de Comercio.

322.- En efecto, en el derecho mexicano se prohíbe la capitalización de intereses aún no devengados, bajo pena de nulidad, y de igual manera se prohíbe capitalizar los gastos financieros. En el caso de los intereses o gastos financieros devengados, para ello hace falta de manera indispensable el consenso de las partes, y sobre todo de la persona que los va a pagar. En este caso, la ley no suple ni puede suplir la voluntad de las partes, ni puede imponerse sobre ésta, y tampoco lo puede hacer el Tribunal, porque no fue un derecho puesto a su disposición, y que además es indisponible mientras no haya acuerdo. La autonomía de la voluntad es ilimitada en la materia.

323.- Los artículos que soportan estos argumentos son el artículo 2397 del Código Civil Federal y 363 del Código de Comercio, los que respectivamente indican lo siguiente:

> "*Artículo 2397. Las partes no pueden, bajo pena de nulidad, convenir de antemano que los intereses se capitalicen y que produzcan intereses*".

> "*ARTÍCULO 363. Los intereses vencidos y no pagados, no devengarán intereses. Los*

> *contratantes    podrán,    sin    embargo,*
> *capitalizarlos".*

324.- Contrariamente a lo dispuesto por las disposiciones legales anteriormente transcritas, el Tribunal Arbitral resolvió que:

> *"Los gastos financieros se computarán **por***
> ***días calendario y serán satisfechos en***
> ***PME conjuntamente con el principal ...***"

Esto se puede apreciar en los párrafos 750 y 780, páginas 174 y 180 del Laudo Arbitral, que señalan:

> *"750. En relación a este punto litigioso, el*
> *Tribunal Arbitral decide que:*
> --------------------------------------------
> *- los gastos financieros se computarán por*
> *días calendario y serán*
> *satisfechos conjuntamente con el principal de*
> *las cantidades adeudadas por PEP".*
>
> *"780. ......... . Los gastos financieros se*
> *computarán por días calendario y serán*
> *satisfechos conjuntamente con el principal de*
> *las cantidades adeudadas por PEP".*

325.- Así las cosas, el derecho de capitalizar los intereses, es una disputa fuera del acuerdo de Arbitraje, porque no existe ni puede haber una cláusula en ese sentido, porque las disposiciones aplicables prohíben la acumulación del interés generado al capital, como base del cálculo de los intereses. Así el juzgador incurre también en la causal de nulidad contemplada en el artículo 1457 fracción I inciso c) del Código de Comercio, por exceder su mandato.

326.- Por otro lado, la pretensión del Tribunal Arbitral en el sentido de que los gastos financieros o intereses se computen de manera diaria, implica la capitalización diaria de las sumas generadas, lo que es un negocio prohibido por

el derecho mexicano, y su establecimiento es contrario al orden público por contrariar precisamente una ley prohibitiva, cuya sanción es la nulidad del acto.

## VI. Examen de las Causales de Nulidad del Laudo.

327.- La solicitud de nulidad de laudo comercial arbitral está regida por la Convención sobre el Reconocimiento y Ejecución de las Sentencias Arbitrales Extranjeras del 10 de junio de 1958 (Convención de Nueva York), la Convención Interamericana sobre Arbitraje Comercial Internacional (Convención de Panamá), y el Código de Comercio en su Título Cuarto, Capítulo VII, que comprende los artículos 1457, 1458, 1459 y 1460; de conformidad con el artículo 133 de la Constitución Política Federal.

328.- La Convención sobre el Reconocimiento y Ejecución de las Sentencias Arbitrales Extranjeras del 10 de junio de 1958, ratificada por el Senado Mexicano en el año de 1971, conocida comúnmente como Convención de Nueva York, en su artículo primero dispone que dicha Convención se aplicará al reconocimiento y la ejecución de las sentencias arbitrales dictadas en el territorio de un estado distinto de aquel en el que se pide el reconocimiento y la ejecución de dichas sentencias, y que tengan su origen en diferencias entre personas naturales o jurídicas.

329.- La Convención de Nueva York, establece en su Artículo V, una serie de causas o motivos eficientes, para que un tribunal jurisdiccional nacional, le niegue a un laudo comercial arbitral su reconocimiento, y/o rehúse su ejecución. Estas causas o motivos eficientes, sirven también para, que en vía de acción, la parte afectada solicite la anulación del laudo arbitral comercial. Dichas causales son las siguientes:

> "Artículo V
> 1. Sólo se podrá denegar el reconocimiento
>    y la ejecución de la sentencia, a instancia

de la parte contra la cual es invocada, si esta prueba ante la autoridad competente del país en que se pide el reconocimiento y la ejecución:

a) Que las partes en el acuerdo que se refiere el art. II estaban sujetas a alguna incapacidad en virtud de la ley que les es aplicable o que dicho acuerdo no es válido en virtud de la ley a que las partes se han sometido, o si nada hubiere indicado a este respecto, en virtud de la ley del Estado en que se haya dictado la sentencia; o

b) Que la parte contra la cual se invoca la sentencia arbitral no ha sido debidamente notificada de la designación del árbitro o del procedimiento de arbitraje o no haya podido por cualquier otra razón, hacer valer sus medios de defensa; o

c) Que la sentencia se refiera a una diferencia no prevista en el compromiso o no comprendida en las disposiciones de la cláusulas compromisoria, o contiene disposiciones que exceden los términos del compromiso o de la cláusula compromisoria; no obstante, si las disposiciones de la sentencia que se refieren a las cuestiones sometidas al arbitraje pueden separarse de las que no hayan sido sometidas al arbitraje, se podrá dar reconocimiento y ejecución a las primeras; o

d) Que la constitución del tribunal arbitral o el procedimiento arbitral no se han ajustado al acuerdo celebrado entre las partes o, en defecto de tal acuerdo, que la constitución del tribunal arbitral o el procedimiento arbitral no se han ajustado a la ley del Estado donde se haya efectuado el arbitraje; o

e) Que la sentencia no sea aún obligatoria para las partes o haya sido anulada o suspendida por una autoridad competente del Estado en

> *que, conforme a cuya ley, haya sido
> dictada esa sentencia.*
> 2. *También se podrán denegar el
>    reconocimiento y la ejecución de una
>    sentencia arbitral si la autoridad
>    competente del Estado en que se pide el
>    reconocimiento y la ejecución comprueba:*
>    a) *Que, según la ley de este Estado, el
>       objeto de la diferencia no es
>       susceptible de solución por vía de
>       arbitraje; o*
>    b) *Que el reconocimiento o la ejecución
>       de la sentencia sean contrarios al
>       orden público del mismo Estado".*

330.- La Convención Interamericana sobre Arbitraje Comercial Internacional (Convención de Panamá), contiene una disposición similar a la de la Convención de Nueva York, que contiene las causas o motivos suficientes para rehusar la ejecución de un laudo arbitral comercial, o solicitar su anulación, mismo que se transcribe a continuación:

> *"Artículo 5*
> 1. *Sólo se podrá denegar el reconocimiento y la
>    ejecución de la sentencia, a solicitud de la
>    parte contra la cual es invocada, si ésta
>    prueba ante la autoridad competente del
>    Estado en que se pide el reconocimiento y la
>    ejecución:*
>    a) *Que las partes en el acuerdo estaban
>       sujetas a alguna incapacidad en virtud de la
>       ley que les es aplicable o que dicho acuerdo
>       no es válido en virtud de la ley a que las
>       partes se han sometido, o si nada hubiere
>       indicado a este respecto, en virtud de la ley
>       del Estado en que se haya dictado la
>       sentencia; o*
>    b) *Que la parte contra la cual se invoca la
>       sentencia arbitral no haya sido debidamente
>       notificada de la designación del árbitro o del
>       procedimiento de arbitraje o no haya podido
>       por cualquier otra razón, hacer valer sus
>       medios de defensa; o*

*c) Que la sentencia se refiera a una diferencia no prevista en el acuerdo de las partes de sometimiento al procedimiento arbitral; no obstante, si las disposiciones de la sentencia que se refieren a las cuestiones sometidas al arbitraje pueden separarse de las que no hayan sido sometidas al arbitraje, se podrá dar reconocimiento y ejecución a las primeras; o*

*d) Que la constitución del tribunal arbitral o el procedimiento arbitral no se hayan ajustado al acuerdo celebrado entre las partes o, en defecto de tal acuerdo, que la constitución del tribunal arbitral o el procedimiento arbitral no se hayan ajustado a la ley del Estado donde se haya efectuado el arbitraje; o*

*e) Que la sentencia no sea aún obligatoria para las partes o haya sido anulada o suspendida por una autoridad competente del Estado en que, conforme a cuya ley, haya sido dictada esa sentencia.*

*2. También se podrá denegar el reconocimiento y la ejecución de una sentencia arbitral si la autoridad competente del Estado en que se pide el reconocimiento y la ejecución comprueba:*

*a) Que, según la ley de este Estado, el objeto de la diferencia no es susceptible de solución por vía de arbitraje; o*

*b) Que el reconocimiento o la ejecución de la sentencia sean contrarios al orden público del mismo Estado".*

331.- El Artículo 1457 del Código de Comercio determina las causales por las cuales, las partes en el arbitraje, pueden solicitar la anulación de laudo arbitral comercial, las cuales son las siguientes:

*"ARTÍCULO 1457. Los laudos arbitrales sólo podrán ser anulados por el juez competente cuando.*

*I. La parte que intente la acción pruebe que:*

*a) Una de las partes en el acuerdo de arbitraje estaba afectada por alguna incapacidad, o que dicho acuerdo no es*

*válido en virtud de la ley a que las partes lo
han sometido, o si nada se hubiese indicado
a ese respecto, en virtud de la legislación
mexicana;
b) No fue debidamente notificada de la
designación de un árbitro o de las
actuaciones arbitrales, o no hubiere podido,
por cualquier otra razón, hacer valer sus
derechos;
c) El laudo se refiere a una controversia no
prevista en el acuerdo de arbitraje o contiene
decisiones que exceden los términos del
acuerdo de arbitraje. No obstante, si las
disposiciones del laudo que se refieren a las
cuestiones sometidas al arbitraje pueden
separarse de las que no lo están, sólo se
podrán anular estas últimas; o
d) La composición del tribunal arbitral o el
procedimiento arbitral no se ajustaron en el
acuerdo celebrado entre las partes, salvo que
dicho acuerdo estuviera en conflicto con una
disposición del presente título de la que las
partes no pudieran apartarse o, a falta de
dicho acuerdo, que no se ajustaron al
presente título; o
II. El juez compruebe que, según la
legislación mexicana, el objeto de la
controversia
no es susceptible de arbitraje, o que el laudo
es contrario al orden público".*

332.- Como puede observarse, todos estos ordenamientos, son coincidentes en señalar las causas que impiden el reconocimiento o la ejecución del laudo arbitral comercial. Algunas de estas causas han sido invocadas por PEP para solicitar la nulidad del laudo, por lo que a continuación se hará el listado de las mismas, y su desarrollo dogmático, para demostrar claramente que los hechos y derecho invocado en el capítulo correspondiente, encuadran dentro de las mencionadas causales de nulidad, que son las siguientes.

333.- La imposibilidad de PEP de hacer valer sus derechos o medios de defensa en el Arbitraje (Falta de debido proceso), sancionado  en el artículo V

fracción 1 inciso b), de la Convención de Nueva York; artículo 5 fracción 1 inciso b), de la Convención de Panamá; y artículo 1457 fracción I inciso b) del Código de Comercio.

334.- Cuando la decisión no está prevista en el acuerdo de arbitraje excede los términos del arbitraje (plus petitio o extra petita) sancionado  en el artículo V fracción 1 inciso c), de la Convención de Nueva York; artículo 5 fracción 1 inciso c), de la Convención de Panamá; y artículo 1457 fracción I inciso c) del Código de Comercio.

335.- Cuando el procedimiento es contrario al acuerdo arbitral (indebido procedimiento arbitral), sancionado  en el artículo V fracción 1 inciso d), de la Convención de Nueva York; artículo 5 fracción 1 inciso d), de la Convención de Panamá; y artículo 1457 fracción I inciso d) del Código de Comercio.

Todas estas causales se invocan y proceden a petición de parte.

336. Cuando el laudo es contrario al orden público mexicano, sancionado en el artículo V fracción 2 inciso b), de la Convención de Nueva York; artículo 5 fracción 2 inciso b), de la Convención de Panamá; y artículo 1457 fracción II  del Código de Comercio.

**Esta causal de nulidad exige que proceda de Oficio el examen por parte del tribunal jurisdiccional, y además permite el estudio por parte del Tribunal Arbitral del fondo del asunto, del procedimiento y de las pruebas aportadas y desahogadas, si esto es necesario para demostrar la violación al orden público mexicano.**

337.- Lo señalado en el párrafo anterior es claro en el derecho internacional privado. La resolución 3 (c) adoptada por la Internacional Law Association en su Septuagésima Conferencia Verificada en Nueva Delhi, India del 2 al 6 de abril de

2002, en la cual se aprobaron una serie de recomendaciones a los tribunales de los Estados, elaboradas por su Comité de Arbitraje Internacional, tendientes a establecer Bases Generales, Principios Fundamentales, Reglas Generales sobre el **Concepto de Orden Público** y de lo que constituyen en este contexto las Obligaciones Internacionales (Dr. José Luis Siqueiros, *EL ORDEN PÚBLICO COMO MOTIVO PARA DENEGAR EL RECONOCIMIENTO Y LA EJECUCIÓN DE LAUDOS ARBITRALES INTERNACIONALES*, en la Revista Pauta No. 40, Página 21).

> *"Recomendación 3 (c) Cuando la violación del orden público del foro se alegue por una de las partes y tal violación no pueda establecerse de una simple revisión del laudo y sólo pueda determinarse a través de un escrutinio de los antecedentes fácticos del caso, el tribunal podrá llevar a cabo un nuevo examen de los hechos"*

338.- Esta idea sobre el concepto de orden público fue retomada en el Informe Final del Comité de Arbitraje Internacional de la Internacional Law Association, que fue presentado en la  Conferencia de dicha Asociación, celebrada en Londres Inglaterra, en julio de 2002, donde se le dio su respaldo definitivo (Alvaro López de Argumedo Piñeiro y Marcos de Benito Llopis-Llombart, EL ORDEN PÚBLICO COMO CAUSA DE DENEGACIÓN DEL RECONOCIMIENTO DE UN LAUDO ARBITRAL EXTRANJERO: CRITERIOS PARA SU APLICACIÓN PRÁCTICA, en la Revista Actualidad Jurídica Uría y Menéndez, de noviembre de 2005, Página 120).

> *"Recomendación 3 (c).- Cuando la supuesta infracción de una norma de orden público no resulte evidente de la mera lectura del fallo del laudo, el Tribunal del exequatur podrá entrar a examinar los hechos fundamentales fácticos y jurídicos del asunto".*

339.- Otros estudiosos del arbitraje también toman esta idea, por ejemplo

Francisco González de Cossío, que acepta la posibilidad de que el juez revise los hechos del caso de manera excepcional, si es necesario para determinar la violación al orden público (Francisco González de Cossío, EJECUCIÓN DE LAUDOS ARBITRABLES, en Manual de Arbitraje Comercial, Editorial Porrúa, Página 19).

**Uno.**

340.- El objetivo de declarar la nulidad cuando no se permita a una persona hacer valer sus derechos o medios de defensa, es que las partes gocen de un mínimo de justicia e igualdad. El debido proceso es lo que en el ámbito del derecho constitucional mexicano se conoce como garantía de audiencia; garantía cuyo cumplimiento le da credibilidad a cualquier tipo de procedimiento y hace confianza en su resultado. Es innecesario decir que el debido proceso responde a un principio universal de justicia.

341.- En este caso se trata de establecer que PEP estuvo imposibilitado para hacer valer sus derechos; y esta imposibilidad resultó en una sentencia adversa a sus intereses. Esta causal se invocó a propósito de nuestros argumentos en contra de la decisión de la Controversia 34 y 35 (segunda), en la cual el Tribunal Arbitral concedió a COMMISA prestaciones que no eran reclamadas por esta. Recuérdese que se acreditó que el Tribunal Arbitral trajo de propia autoridad al pleito una cuestión ajena a la litis planteada y condenó a PEP a pagar una cantidad de dinero como compensación a COMMISA de los gastos no recuperables en los cuales supuestamente incurrió, cuando COMMISA solamente reclamó o el pago de tarifas de espera por suspensión a los trabajos o en su defecto, una indemnización por daños y perjuicios, justificando el Tribunal Arbitral su actuación mediante el ordenamiento de Diligencias para Mejor Proveer, que no le dieron a PEP la oportunidad de hacer valer sus derechos como ya se expuso.

Al respecto, nuestras más altas autoridades han establecido lo siguiente:

**ÁRBITRO. SUS RESOLUCIONES SON ACTOS DE AUTORIDAD, Y SU EJECUCIÓN LE CORRESPONDE AL JUEZ DESIGNADO POR LAS PARTES[39].** Para la ejecución de un laudo arbitral es preciso la mediación de un acto realizado por un órgano jurisdiccional que, sin quitarle la naturaleza privada, asume su contenido, de modo que el laudo es ejecutable por virtud del acto jurisdiccional, que sólo es el complemento necesario para ejecutar lo resuelto por el árbitro, ya que el laudo es una resolución dictada por el árbitro que dirime la controversia suscitada entre las partes, con calidad de cosa juzgada y constituye título que motiva ejecución, ante el Juez competente que debe prestar los medios procesales necesarios para que se concrete lo resuelto en el laudo. Por lo tanto, el laudo es una resolución que tiene los atributos de inimpugnabilidad, inmutabilidad y coercibilidad, sólo que la eficacia y realización concreta de lo condenado quedan siempre al Juez competente designado por las partes o el del lugar del juicio. El árbitro carece de la facultad de hacer cumplir, ante sí, el laudo que emitió, porque no tiene la potestad o imperium, que es uno de los atributos de la jurisdicción y que es inherente a los órganos jurisdiccionales del Estado. Ello implica que el árbitro carece de la fuerza del Estado para hacer efectiva la condena, pero el laudo en sí mismo no está despojado de los atributos de la cosa juzgada, puesto que la facultad de decidir la controversia es una delegación hecha por el Estado a través de la norma jurídica, y sólo se reserva la facultad de ejecutar. El Juez ante quien se pide la ejecución de un laudo dictado por un árbitro, para decretar el requerimiento de pago, únicamente debe y puede constatar la existencia del laudo, como una resolución

---

[39] No. Registro: 189,345. Tesis aislada. Materia(s): Civil. Novena Época. Instancia: Tribunales Colegiados de Circuito. Fuente: Semanario Judicial de la Federación y su Gaceta. XIV, Julio de 2001. Tesis: I.3o.C.231 C. Página: 1107.

> que ha establecido una conducta concreta, inimpugnable e inmutable y que, por ende, **debe provenir de un procedimiento en el que se hayan respetado las formalidades esenciales del procedimiento,** y que no sea contrario a una materia de orden público.
> TERCER TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.
> Amparo directo 1303/2001. Constructora Aboumrad Amodio Berho, S.A. de C.V. 8 de marzo de 2001. Unanimidad de votos. Ponente: Neófito López Ramos. Secretaria: Lina Sharai González Juárez.

**Dos.**

342.- Cuando la decisión no está prevista en el acuerdo de arbitraje o excede los términos del acuerdo de arbitraje (plus petitio o extra petita), causa la nulidad del laudo, porque la controversia se refiera a controversias no incluidas en el acuerdo de arbitraje, es decir, cuando los temas de la litis del arbitraje, no son parte del acuerdo de arbitraje, para ser materia precisamente del Juicio de Arbitraje.

343.- De conformidad con la Cláusula 23.2 del Contrato, no podían ser materia del arbitraje aquellas disputas, reclamaciones o controversias que no hubieren sido formalizadas como controversias técnicas, y de igual manera aquellas compensaciones por daños legales que no estuvieran expresamente pactadas en el contrato.

344.- En ese tenor, quedó demostrado que en relación a las controversias técnicas 34 y 35 (cuarta), sobre retrasos iniciales en trabajos con embarcaciones, controversia técnica 36 (tercera y cuarta), sobre compensación por malos tiempos, parcialmente con relación a la controversia técnica 19, relativa a obstrucciones, y a la controversia técnica 27, relativa a pago de diferencias, que éstas no fueron formalizadas precisamente como controversias técnicas, por lo que no podían ser materia del arbitraje. De igual manera, con relación a la

controversia técnica 36 (primera), sobre compensación por malos tiempos, se demostró que el pago de malos tiempos no fue una prestación que PEP se comprometió a pagar por virtud del contrato, y por el contrario, se demostró que PEP no estaba obligada a ninguna compensación de eventos considerados como de caso fortuito o fuerza mayor, como las condiciones climáticas adversas.

**Tres.**

345.- Cuando el procedimiento es contrario al acuerdo arbitral (indebido procedimiento arbitral). En este tenor, hemos alegado y dado prueba de que el tribunal arbitral no decidió la controversia en estricto derecho, además de que el laudo es incongruente y contradictorio consigo mismo.

346.- El Tribunal Arbitral no respetó el estricto derecho. El procedimiento de arbitraje pactado por las partes, de conformidad con la cláusula 23.3 del contrato fueron las Reglas de Arbitraje de la Cámara  Internacional de Comercio que estuvieren en vigor al momento del arbitraje. De acuerdo con el artículo 17(3)  del Reglamento de Arbitraje de la CCI, el procedimiento de arbitraje es por naturaleza de estricto derecho, a menos que las partes acuerden expresamente que el tribunal arbitral actuara como amigable componedor o *ex aequo et bono*. En ninguna parte del acuerdo de arbitraje a que nos referimos o en el Acta de Misión se expresó que el Tribunal Arbitral actuaría como amigable componedor o que el mismo se resolvería en "equidad".

Además, en cuanto al fondo del asunto, éste debía resolverse de conformidad con las leyes federales mexicanas, de conformidad con el Capítulo H del Acta de Misión.

347.- Lo que se puede desprender de la lectura del laudo arbitral es que el Tribunal Arbitral privilegió un supuesto derecho o interés de COMMISA a ser compensado  por sus trabajos, sobre cualquier consideración contractual o de

orden público. Al ser el laudo arbitral divisible, las cuestiones de nulidad se abordan controversia por controversia. Sin embargo, podemos claramente identificar un patrón de violación al principio de estricto derecho, que afecta todo el laudo.

348.- Existen múltiples ejemplos de violaciones al principio de estricto derecho en el laudo arbitral.

349.- En las cuestiones competenciales, al no observar la cláusula 23.3 del Contrato, que establece como requisito de arbitrabilidad de una disputa, el que se formalicen como controversia técnica.

350.- En las controversias técnicas 34 y 35 (primera, segunda, tercera y cuarta), sobre retrasos iniciales en trabajos con embarcaciones; controversia técnica 36 (primera, segunda, tercera y cuarta), sobre compensación por malos tiempos; controversias técnicas 37 y 39, relativas a cruces; controversia técnica 19, relativa a obstrucciones; controversia técnica 27, relativa a pagos de diferencias; y en la decisión sobre el pago de gastos financieros, se observan violaciones al estricto derecho.

351.- En todas estas controversias el Tribunal Arbitral dejó de aplicar cláusulas contractuales pertinentes en el caso; dejó de observar leyes pertinentes al caso, cuya aplicación fue solicitada expresamente por PEP, sobre todo leyes administrativas. Por ejemplo, en la controversia 36 hizo a un lado el hecho de que PEP no estaba obligada, de conformidad al contrato, a pagar malos tiempos; en las controversias 34 y 35 no tomó en cuenta que COMMISA no acreditó ningún extremo contractual o legal para ser indemnizada por el retraso en el inicio de los trabajos con embarcaciones. Con relación a la controversia 19, no obedeció reglas contractuales para determinar la preclusión de los derechos de la Demandante, y en las controversias 27, 37 y 39, ordenó el pago pactado por trabajos que no correspondían a los realmente ejecutados por COMMISA. En la decisión sobre gastos financieros, evidentemente el Tribunal Arbitral, para

solucionar la controversia, no hizo ningún caso del derecho aplicable a gastos financieros, ni a cláusulas esenciales del contrato.

352.- El laudo además es incongruente y notoriamente contradictorio consigo mismo. Por ejemplo, en las controversias técnicas 34 y 35 (segundo), el Tribunal Arbitral condena a pagar una prestación no solicitada por COMMISA; en las controversias técnicas 37 y 39 (sobre cruces), condena a pagar cantidades pactadas como compensación para un tipo distinto de trabajo; y por si lo anterior no fuera suficiente, en la controversia de gastos financieros, el Tribunal Arbitral establece correctamente los supuestos de la norma, y después considera unos supuestos totalmente distintos a los primeros, y con base en ellos condena a PEP a su pago.

353.- Todas estas circunstancias vician el laudo arbitral, tal como ya lo han determinado los tribunales jurisdiccionales, conforme a las siguientes tesis:

> **LAUDO ARBITRAL. CUÁNDO EL JUEZ PUEDE NEGARSE A EJECUTARLO**[40]. Los laudos nacionales no requieren de la aprobación judicial u homologación para que puedan ser ejecutados; los Jueces sólo pueden negarse a ejecutar un laudo cuando por no respetar formalidades esenciales, se vicia el laudo arbitral, como, entre otros supuestos, cuando: 1. El árbitro no se haya apegado al compromiso arbitral (artículo 616 del Código de Procedimientos Civiles para el Distrito Federal); 2. Se trate de asuntos no comprometibles arbitralmente; 3. La designación del árbitro se hubiera hecho por quien no esté en pleno ejercicio de sus derechos o no se haya realizado en la forma y con los requisitos que establece la ley (artículos 612 a 614 del Código de

---

[40] No. Registro: 186,920. Tesis aislada. Materia(s): Civil. Novena Época. Instancia: Tribunales Colegiados de Circuito. Fuente: Semanario Judicial de la Federación y su Gaceta. XV, Mayo de 2002. Tesis: I.4o.C.53 C. Página: 1241.

Procedimientos Civiles para el Distrito Federal); 4. El árbitro designado sea incapaz, y en caso de que hayan ocurrido el fallecimiento, la recusación o la excusa de la persona prevista para el cargo, o de su designación como funcionario judicial, si además no existía, ni por convenio de las partes, ni por disposición legal, la posibilidad de nombrar un sustituto (artículos 222, 612, 613 y 622 del Código de Procedimientos Civiles para el Distrito Federal); 5. Antes de pronunciarse el laudo, los árbitros hayan sido revocados por consentimiento expreso y unánime de las partes (artículo 618 del Código de Procedimientos Civiles para el Distrito Federal); 6. El laudo se haya dictado una vez vencidos tanto los plazos y prórrogas concedidos por los comprometientes, como los plazos que establece la ley (artículos 617, 622, 624 y 627 del Código de Procedimientos Civiles para el Distrito Federal); 7. Se violen los derechos fundamentales de acción y de defensa; 8. **Se declare la nulidad del convenio, ya sea por vicios formales, o porque siendo de derecho y no de amigable composición, no se cumpla con la garantía de audiencia.**
CUARTO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO. Amparo en revisión 364/2002. Koblenz Eléctrica, S.A. de C.V. 22 de febrero de 2002. Unanimidad de votos. Ponente: Marco A. Rodríguez Barajas. Secretaria: Ana Paola Surdez López.


**LAUDO, LOS JUECES PUEDEN REHUSAR LA EJECUCION DEL, CUANDO ADVIERTAN QUE EL ARBITRO NO CUMPLIO LAS FORMALIDADES PROCESALES PACTADAS POR LOS INTERESADOS, PUES TAL CUESTION ES DE ORDEN PUBLICO**[41]. Aunque los Jueces

---

[41] No. Registro: 252,781. Tesis aislada. Materia(s): Civil. Séptima Época. Instancia: Tribunales Colegiados de Circuito. Fuente: Semanario Judicial de la Federación. 103-108 Sexta Parte. Tesis: Página: 129. Genealogía: Informe 1977, Tercera Parte, Tribunales Colegiados de Circuito, tesis 9, página 264.

del orden común carecen de facultades para revisar la legalidad del laudo arbitral, en cuanto al fondo, lo que es propio de la apelación en el supuesto de que tal recurso no haya sido renunciado por las partes, sí pueden, en cambio, rehusar la ejecución del laudo, **cuando adviertan que el árbitro se ha apartado ostensiblemente de los requisitos procesales estipulados en el respectivo compromiso o cláusula compromisoria**, con evidente violación a las normas esenciales de todo juicio, que son de orden público.
SEGUNDO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.
Amparo en revisión 286/77. Etla, S.A. 23 de septiembre de 1977. Unanimidad de votos. Ponente: Martín Antonio Ríos.

354.- La violación al acuerdo de arbitraje, en el sentido de que el procedimiento sería de estricto derecho, es de suma importancia, toda vez que la voluntad de PEP de someterse al arbitraje, reiterado en el Acta de Misión, se pactó con el requisito de que se tratara de un procedimiento de derecho, resuelto conforme a las leyes federales mexicanas. Para demostrar la existencia de esta violación al procedimiento pactado por las partes, se debe estudiar la decisión del Tribunal Arbitral.

355.- Por otro lado, en el caso, no puede existir lesión entre las partes que induzcan al juzgador a proceder de diversa manera a la pactada por las partes. Cualquier prestación contractual, y sus alcances, son plenamente conocidos por la Contratista, y en esos términos fue la contratación.

356.- El estricto derecho, es más importante aún en el derecho administrativo, toda vez que, como ya explicamos a lo largo del presente escrito, el contrato de obra pública es un contrato administrativo, que resume ineludiblemente una serie de normas relativas al control y ejecución de la obra pública, así como al control y aplicación de recursos federales, que se enmarcan



en un sistema de control presupuestal establecido en los artículos 126 y 134 de la
Constitución Política Federal, por lo que su violación indudablemente anula el
laudo dictado.

### Cuatro

357.- La principal argumentación de PEP se centra en el hecho de que las
decisiones relativas a las Controversias 34, 35, 36 y sobre gastos financieros son
violatorias del orden público mexicano. Por supuesto, un laudo es anulable
cuando el mismo es contrario al orden público mexicano (artículo 1457 fracción II
del Código de Comercio).

358.- Existe una discusión dogmática en el arbitraje, y en la doctrina de
derecho internacional privado, sobre el significado de orden público, que
trataremos de explicar, no para llegar a una conclusión definitiva, que no es el
caso, sino para que ese juzgador tenga bases para establecer la procedencia de
la solicitud de PEP.

359.- Existen nociones de orden público dadas por la dogmática jurídica.
Así, por orden público se entienden las nociones más básicas de moralidad y de
justicia de un sistema jurídico (Francisco González de Cossío, EJECUCIÓN DE
LAUDOS ARBITRABLES, en Manual de Arbitraje Comercial, Editorial Porrúa,
Página 191).

360.- Por otro lado, diversos autores señalan lo siguiente en relación al
orden público "*El orden público hace referencia a las normas fundamentales de
convivencia de un determinado país, que coinciden con las normas básicas de la
Constitución*[42]", o "*en el orden público se engloban todas las disposiciones
imperativas, es decir, todas aquéllas que las partes no podrán derogar en sus*

---

[42] Eloy Ruibola Santana, citado por Francisco Gorjón Gómez en ARBITRAJE COMERCIAL Y EJECUCIÓN DE
LAUDOS, Mc Graw Hill, Página 271.

convenios particulares"[43] o el orden público es el "*sistema que mantendrá los principios de justicia en un Estado para la correcta interpretación de su ley y asegurar la debida administración de justicia y evitar dentro del procedimiento arbitral la arbitrariedad en la que pueden caer los mismos árbitros*"[44].

361.- Es indiscutible que el orden público se constituye por: i) los principios fundamentales relativos a justicia y moralidad que el Estado desea proteger aún cuando no esté directamente involucrado; ii) las reglas designadas para servir a los intereses políticos, sociales y económicos de dicho Estado, conocidos como leyes de policía o reglas de orden público; y iii) el deber del Estado de respetar sus obligaciones ante otros Estados u organismos internacionales (Francisco González de Cossío, Obra Citada, Página 191).

362.- Eso es, existirá una violación del orden público si sucede que: i) el laudo arbitral infringe los principios de justicia y moralidad que un Estado desea proteger; ii) que el laudo arbitral contradiga disposiciones de orden público que le sirven al Estado para satisfacer sus intereses políticos, sociales o económicos; o iii) implique una violación del Estado a sus compromisos internacionales.

363.- Los principios de justicia y moralidad de orden público pueden ser procesales o sustantivos, y afectarse de acuerdo a la manera irregular en la cual se condujo el arbitraje, y la infracción grave a las garantías (constitucionales o fundamentales) del proceso, de acuerdo con el orden jurídico mexicano, o porque el laudo infringe una norma imperativa (Francisco Gorjón Gómez, ARBITRAJE COMERCIAL Y EJECUCIÓN DE LAUDOS, Mc Graw Hill, Página 274); e igualmente, dentro de las reglas de orden público encontramos también todas las disposiciones básicas que regulan la economía pública.

---

[43] Ibrahim Fadlallah citado por Francisco Gorjón Gómez en ARBITRAJE COMERCIAL Y EJECUCIÓN DE LAUDOS, Mc Graw Hill, Página 272.
[44] F. A. Mann citado por Francisco Gorjón Gómez en ARBITRAJE COMERCIAL Y EJECUCIÓN DE LAUDOS, Mc Graw Hill, Página 272.

Todas las nociones apuntadas, encuadran dentro del "orden público" cuya infracción en el Laudo reclama PEP.

364.- El sistema jurídico constitucional establecido en los artículos 126 y 134 de la Constitución, sobre la realización de obras públicas y el ejercicio y control del presupuesto o gasto público federal, es por supuesto de orden público, porque responde a las necesidades políticas, económicas y sociales del Estado Mexicano.

Estas disposiciones además, son principios básicos constitucionales de algunos Estados. Por ejemplo la Constitución Española en su artículo 133 (4) dispone que las administraciones públicas solamente podrán contraer obligaciones financieras y realizar gastos de acuerdo a las leyes. También la Constitución de Colombia, en su Título XII, regula el régimen económico y de la hacienda pública, pudiéndose resaltar que su artículo 345 es similar al artículo 126 de la Constitución Mexicana. Con estas citas podemos afirmar que las normas presupuestarias y de gasto público, son principios económicos básicos del Estado Mexicano, y para un gran número de miembros de la comunidad internacional, y no meras concepciones de orden público de derecho interno.

365.- Sobre todo, con relación a la impugnación de la decisión de las controversias técnicas 34, 35, 36 y de gastos financieros, se ha esgrimido una serie de violaciones a disposiciones de orden público, tales como el mandato de pagar obligaciones no contraídas contractualmente ni que derivan de la ley; pagos por trabajos no realizados o costos no incurridos; mandamientos de pagos en contravención a los procedimientos de orden público de pago con cargo a recursos federales, e infracciones a la responsabilidad del Estado por intereses moratorios, y en general, al régimen de derecho administrativo que constituye el marco de regulación del contrato de obra pública, que establece un régimen exorbitante de derecho a favor del Estado, tendiente a lograr el bien común.

366.- El Tribunal Arbitral dejó de aplicar en su resolución disposiciones administrativas de orden público. Esta inobservancia del derecho mexicano o de normas aplicables, no puede catalogarse simplemente como un error de derecho, por dos razones: la primera ya fue explicada: esta conducta del Tribunal constituye una violación al acuerdo de arbitraje, de cuyos términos se deduce que el procedimiento de arbitraje sería de estricto derecho. La segunda razón es que dichas disposiciones no pueden ser renunciadas por los particulares, cuya observancia es obligatoria, por lo que obligatoriamente tenía que tomarlas en cuenta el Tribunal. La falta de aplicación de normas, se reitera, en el caso, no es una cuestión de fondo o casacionista, sino de orden público acorde con la naturaleza de las normas que se han dejado de aplicar.

En este tenor, nuestras más altas autoridades han establecido lo siguiente:

> **CONTRATOS ADMINISTRATIVOS, APLICABILIDAD DEL CODIGO CIVIL, EN LOS**[45]. No siempre son de aplicación forzosa los preceptos del Código Civil, tratándose cuestiones administrativas, cuando de preferencia a toda legislación debe acatarse un precepto de la Constitución.
> Amparo administrativo en revisión 3977/36. Gavito Hermanos y Compañía. 8 de julio de 1938. Unanimidad de cinco votos. Relator: José María Truchuelo.
>
> **ORDEN PÚBLICO. ES UN CONCEPTO JURÍDICO INDETERMINADO QUE SE ACTUALIZA EN CADA CASO CONCRETO, ATENDIENDO A LAS REGLAS MÍNIMAS DE CONVIVENCIA SOCIAL**[46]. El orden público no constituye una noción que pueda configurarse a partir de la declaración formal contenida en una ley. Por el contrario, ha

---

[45] No. Registro: 331,037. Tesis aislada. Materia(s): Administrativa. Quinta Época. Instancia: Segunda Sala. Fuente: Semanario Judicial de la Federación. LVII. Tesis: Página: 220.

[46] No. Registro: 177,560. Tesis aislada. Materia(s): Común. Novena Época. Instancia: Tribunales Colegiados de Circuito. Fuente: Semanario Judicial de la Federación y su Gaceta. XXII, Agosto de 2005. Tesis: I.4o.A.63 K. Página: 1956.

# EXHIBIT 1
Part 7

sido criterio constante de la Suprema Corte de Justicia de la Nación que corresponde al juzgador examinar su presencia en cada caso concreto, de tal suerte que se perfila como un concepto jurídico indeterminado de imposible definición **cuyo contenido sólo puede ser delineado por las circunstancias de modo, tiempo y lugar que prevalezcan en el momento en que se realice la valoración. En todo caso, para darle significado, el juzgador debe tener presentes las condiciones esenciales para el desarrollo armónico de la comunidad, es decir, las reglas mínimas de convivencia social**; en la inteligencia de que la decisión que se tome en el caso específico no puede descansar en meras apreciaciones subjetivas, sino en elementos objetivos que traduzcan las preocupaciones fundamentales de la sociedad, siempre buscando no obstaculizar la eficacia de los derechos de tercero.

CUARTO TRIBUNAL COLEGIADO EN MATERIA ADMINISTRATIVA DEL PRIMER CIRCUITO.

Amparo directo 312/2004. Alberto Salmerón Pineda. 12 de enero de 2005. Unanimidad de votos. Ponente: Jesús Antonio Nazar Sevilla. Secretario: Ernesto González González.

Amparo directo 453/2004. Hospital Ángeles del Pedregal, S.A. de C.V. 23 de febrero de 2005. Unanimidad de votos. Ponente: Jesús Antonio Nazar Sevilla. Secretaria: Indira Martínez Fernández.

**ORDEN PUBLICO, LEYES DE**[47]. El orden público que tiene en cuenta la ley y la jurisprudencia, para establecer una norma sobre las nulidades radicales, no puede estar constituido por una suma de intereses meramente privados; para que el orden público esté interesado, **es preciso que los intereses de que se trate, sean de tal**

---

[47] No. Registro: 362,355. Tesis aislada. Materia(s): Común. Quinta Época. Instancia: Tercera Sala. Fuente: Semanario Judicial de la Federación. XXXVII. Tesis: Página: 1835. Genealogía: Apéndice 1917-1985, Octava Parte, Común, tesis relacionada con la jurisprudencia 193, página 315.

> **manera importantes, que, no obstante el ningún perjuicio y aun la aquiescencia del interesado, el acto prohibido pueda causar un daño a la colectividad, al Estado o a la nación.**
> Amparo civil directo 2785/31. Díaz Rubín Pedro y coagraviados. 30 de marzo de 1933. Unanimidad de cuatro votos. Ausente: Manuel Padilla. La publicación no menciona el nombre del ponente.
>
> **LEYES DE ORDEN PUBLICO, RENUNCIA DE LAS (LEGISLACION DEL DISTRITO FEDERAL)[48].**
> En los artículos 6o., 15 y 1309 del Código Civil de 1884, se encuentra, respectivamente, la ineficacia de la renuncia de las leyes de interés público, la prohibición de ser alteradas por convenio entre particulares y el tenerse por no hecha la misma renuncia.
> Amparo civil en revisión 8398/39. Formoso Padín Joaquín. 20 de octubre de 1941. Unanimidad de cuatro votos. Ausente: Eduardo Vasconcelos. Relator: Roque Estrada.

## VIII.   Costos Incurridos en el Arbitraje.

367.- En los párrafos 764 a 771, páginas 177 a 179, y el Capítulo XII inciso 6. subinciso (ii), del Laudo Arbitral, el Tribunal Arbitral condena a PEP a pagar a COMMISA los costos incurridos en el Arbitraje por plantear la excepción de incompetencia en un monto de USD 200 mil dólares.

El Tribunal Arbitral considera en el párrafo 770, atendiendo al criterio del vencimiento[49], lo siguiente:

---

[48] No. Registro: 308,917. Tesis aislada. Materia(s): Civil. Quinta Época. Instancia: Cuarta Sala. Fuente: Semanario Judicial de la Federación. LXX. Tesis: Página: 1195.

[49] Párrafo 767 del Laudo Final.- "Ni las partes, ni el Reglamento de la CCI han fijado el criterio que el Tribunal Arbitral debe seguir en la asignación de gastos y costas entre las partes. Ante este silencio el Tribunal Arbitral acude al artículo 1455 C.com. dedicado a las costas, que establece el criterio del vencimiento, si bien

> *"En cuanto a las pretensiones de falta de competencia del Tribunal Arbitral y de falta de requisitos de procedibilidad planteada por la Demandada, el Tribunal Arbitral las ha rechazado íntegramente, indicando que <todas las pretensiones y peticiones formuladas por la Demandante en su acción y por la Demandada en su reconvención quedan sujetas a la cláusula 23.3 del Contrato, y que el Tribunal Arbitral tiene competencia para resolverlas>. **Habiendo sido vencida la Demandada completamente en sus objeciones jurisdiccionales,** le corresponde asumir la proporción de los gastos razonables en que ha incurrido la Demandante para contestar dichas pretensiones. El Tribunal Arbitral, a la vista de las circunstancias del caso, decide que estos gastos ascienden a 200.000 USD y que deben ser satisfechos por la Demandada"*

368.- El criterio del vencimiento no es aplicable en el caso de la resolución de excepciones procesales, porque la misma no decide ningún punto del litigio planteado por las partes, sino solamente, como en el caso ha ocurrido, se ha decidido en principio (y no de manera inmutable) [50] quién es el Tribunal Competente. Por tanto, el pago de esta cantidad es completamente injustificado. Sirve de apoyo la siguiente jurisprudencia, aplicada por analogía a la interpretación del artículo 1455 del Código de Comercio:

**COSTAS EN EL JUICIO EJECUTIVO MERCANTIL. NO PROCEDE LA CONDENA A SU PAGO CUANDO POR SENTENCIA INTERLOCUTORIA SE DECLARA PROCEDENTE LA EXCEPCIÓN DE INCOMPETENCIA POR DECLINATORIA**

---

permitiendo al Tribunal Arbitral prorratear los elementos de estas costas entre las partes, si lo estima razonable, <teniendo en cuenta las circunstancias del caso>".

[50] Se reitera que de conformidad con el artículo 1432 del Código de Comercio, la resolución definitiva sobre la competencia de un Tribunal Arbitral corresponde a los órganos jurisdiccionales, por lo que no es una resolución definitiva ni irrecurrible.

(INTERPRETACIÓN DEL ARTÍCULO 1084, FRACCIÓN III, DEL CÓDIGO DE COMERCIO)[51]. Conforme a dicha disposición, siempre será condenado a pagar costas el que intente un juicio ejecutivo y no obtenga sentencia favorable, de donde se advierte que la fracción III del artículo 1084 del Código de Comercio adopta la teoría del vencimiento conforme a la cual la condena se determina siempre por el resultado del proceso, lo que da al actor la calidad de vencido cuando no acredite la procedencia de su acción. En ese sentido, se concluye que en los juicios ejecutivos en los que se emita sentencia interlocutoria que declare procedente la excepción de incompetencia hecha valer por la vía declinatoria y se remitan los autos a un Juez diverso, no se surte el supuesto contenido en la fracción aludida y, por tanto, no procede la condena al pago de costas, pues esa resolución no resuelve el litigio planteado **y, por ende, no puede conceptuarse al actor como parte vencida, dado que el resultado del proceso objetivamente no le ha sido adverso, ya que la incompetencia por declinatoria sólo implica que un diverso juzgador se avocará al conocimiento de la contienda para resolver lo que legalmente corresponda.** Sin que obste a lo anterior el hecho de que la condena en costas también pueda decretarse a través de sentencias interlocutorias, pero solamente será por aquellas que impidan el pronunciamiento de fondo que resuelva la cuestión principal planteada.

**Contradicción de tesis 128/2005-PS.** Entre las sustentadas por los Tribunales Colegiados Primero y Tercero, ambos en Materia Civil del Cuarto Circuito. 23 de noviembre de 2005. Cinco votos. Ponente: José de Jesús Gudiño Pelayo. Secretario: Rogelio Alberto Montoya Rodríguez.

---

[51] No. Registro: 175,979. Jurisprudencia. Materia(s): Civil. Novena Época. Instancia: Primera Sala. Fuente: Semanario Judicial de la Federación y su Gaceta. XXIII, Febrero de 2006. Tesis: 1a./J. 185/2005. Página: 175.

**Tesis de jurisprudencia 185/2005. Aprobada por esta Primera Sala de este Alto Tribunal, en sesión de fecha treinta de noviembre de dos mil cinco.**

369.- Por otro lado, el Tribunal Arbitral decidió en la Orden Procesal No. 2 resolver la cuestión de competencia conjuntamente con el fondo del asunto, tal y como lo hizo. No hubo audiencias o diligencias adicionales con relación a las cuestiones competenciales, sino que se litigó conjuntamente con el fondo del asunto, por lo que ningún retraso o costo adicional pudo haberse generado. En su caso, fue el propio Tribunal Arbitral el que retrasó el procedimiento para suplir la deficiencia de la queja y de la prueba de COMMISA, con relación a las controversias 34 y 35, como se expone en los antecedentes del proceso de arbitraje, por lo que no solamente es injustificada la condena al pago de costos incurridos en el arbitraje, sino completamente injusta.

370.- Ahora, el punto principal en el caso, es que las Controversias Técnicas 34, 35 y 36, relativas a retrasos en el inicio de los trabajos con embarcaciones y malos tiempos, son improcedentes por no ser materia de arbitraje ni constituir controversias técnicas en los términos de la cláusula 23.2 del Contrato, o por no ser daños legales compensable conforme al Contrato y pactarse una excusa de responsabilidad a favor de PEP; como ya quedó expuesto en las consideraciones tres y cuatro, y cuatro, de los capítulos correspondientes a las causas de nulidad de la decisión de las mismas.

371.- En ese sentido, y por razones de congruencia de la resolución, la nulidad del Laudo Arbitral respecto a las controversias indicadas; o, la resolución definitiva de la incompetencia del Tribunal Arbitral, tiene como consecuencia necesaria la anulación de esta condena por costos incurridos en el arbitraje.

372.- En otras palabras, si la materia de las controversias técnicas 34, 35 y 36 no son un daño legal o contractual que PEP deba compensar; o no son materias arbitrables por disposición contractual; o si el Tribunal Arbitral es

incompetente para resolver sobre las controversias planteadas por COMMISA - como ese Juzgador deberá resolver-, es evidente que su resolución deberá modificar de igual manera y por la misma razón esta condena por supuestos costos incurridos.

### VIII. Competencia del Tribunal Arbitral.

373.- El tercer párrafo del artículo 1432 del Código de Comercio, establece que el Tribunal Arbitral será el competente para resolver sobre su propia competencia, dándole potestad a los Tribunales Nacionales, una vez resuelta la competencia en primera instancia por el Tribunal Arbitral, para que resuelva definitivamente la competencia de dicho Tribunal Arbitral, sobre la base del acuerdo de arbitraje.

374.- El Tribunal Arbitral decidió resolver la cuestión de competencia planteada por PEP conjuntamente con el fondo del asunto, de conformidad con la Orden Procesal No. 2, lo que efectivamente sucedió, tal como se observa en el Capítulo VI del Laudo Final, al resolver los puntos litigiosos 1(a) y 2 (a), (b) y (c), por lo que el momento procesal oportuno para solicitarle a Usted Juez, que resuelva definitivamente la competencia del Tribunal Arbitral, es conjuntamente con la solicitud de nulidad del laudo, al tener ambas como causa precisamente el laudo emitido y resolvió materias no previstas en el acuerdo de arbitraje, conforme al artículo 1457 fracción I inciso c) del mismo ordenamiento.

375.- El punto litigioso 1 (a) se refería a lo siguiente:

> "¿Constituyen todas las pretensiones y peticiones formuladas por la Demandante en su demanda y por la Demandada en su reconvención <Controversia, reclamación, diferencia o disputa que sobrevenga o se relacione o esté vinculada con el Contrato o el incumplimiento del mismo, (como exige la

> cláusula 23.3 del mismo), y es el Tribunal
> Arbitral competente para resolverlas?".

El Tribunal Arbitral se declaró competente para conocer de todas las controversias y reclamaciones propuestas por la Demandante, alegando que todas las materias se relacionan o están vinculadas al Contrato relativo al Proyecto IPC-28, y quedan sujetas a la cláusula 23.3 del Contrato, según los párrafos 103[52] y 105[53] del Laudo Arbitral, haciendo caso omiso del texto de las Cláusulas 23.2 y 23.3 del Contrato, entre otras.

376.- Es importante subrayar que de conformidad con la cláusula 23.3 del Contrato, para que una disputa, reclamación o controversia técnica, sea materia del arbitraje deben acreditarse dos supuestos: a) que estén relacionadas o vinculadas con el contrato o con el incumplimiento del mismo; y b) que se hayan formalizado como controversias técnicas. El Tribunal Arbitral solamente aborda en este punto la primera de las condiciones, aún y cuando las parte, claramente habían pactado en la cláusula 23.3 del Contrato lo siguiente:

> "23.3  **Arbitraje.**  Cualquier controversia, reclamación, diferencia o disputa que sobrevenga o se relacione o esté vinculada con este Contrato o el incumplimiento del mismo será dirimida finalmente mediante arbitraje conducido en el Distrito Federal, México, de acuerdo con las Reglas de Conciliación y Arbitraje de la Cámara Internacional de Comercio que estén en vigor en ese momento. El número de árbitros será de tres y el idioma para conducir el arbitraje será el español. **No obstante lo anterior, cualquier controversia técnica deberá ser sometida previamente al procedimiento previsto en la Cláusula 23.2 y sólo en caso**

[52] "Analizando las pretensiones de la Demandante se advierte que se trata de peticiones <que están vinculadas con el Contrato>, y más específicamente, con su cumplimiento o con su incumplimiento (tal como lo exige la Cláusula 23.3 del Contrato). El Tribunal no alberga duda alguna que la voluntad de las partes al otorgar el Contrato fue precisamente que pretensiones del tipo de las hoy formuladas por COMMISA fueran resueltas a través del arbitraje".
[53] "En resumen, el Tribunal Arbitral llega a la conclusión de que todas las peticiones y pretensiones formuladas por la Demandante en su acción y por la Demandada en su reconvención quedan sujetas a la cláusula 23.3 del Contrato, y que el Tribunal Arbitral tiene competencia para resolverlas".

> *de que mediante dicho procedimiento no*
> *se logré un acuerdo entre las partes, éstas*
> *quedarán facultadas para acudir al*
> *recurso previsto en la Cláusula 23.3".*

377.- Esta división de los requisitos contenidos en el acuerdo de arbitraje es incongruente y constituye un estudio indebido del caso, porque la competencia se determina también por el cumplimiento de procedimientos previos; porque se deja de examinar en su integridad en el acuerdo de arbitraje; y porque el acuerdo de arbitraje no se entiende, si no se le relaciona con las cláusulas 23.1 y 23.2[54] del mismo Contrato.

378.- El Tribunal Arbitral, en su consideración 104, únicamente declara de manera dogmática que todas las controversias están vinculadas al contrato, o a su cumplimiento o incumplimiento, pero de ninguna manera hace un análisis caso por caso, si efectivamente las controversias están relacionadas con el contrato.

379.- El Tribunal Arbitral, simple y llanamente, indica que si la controversia surgió durante la vigencia del contrato, y tomando como pretexto la ejecución del Contrato, son materias arbitrables, sin atender a que el sistema de responsabilidad derivado del Contrato, acordado con COMMISA en beneficio de PEP, sólo le permite a COMMISA realizar reclamaciones por prestaciones pactadas expresamente en el Contrato, excluyéndose a PEP por cualquier daño legal no previsto en el Contrato. La cláusula 23.2 del Contrato, en su primera parte, literalmente dispone lo siguiente:

> *"23.2 Controversias Técnicas. El*
> *Contratista no tendrá derecho a efectuar*
> *ningún reclamo y PEP no será*
> *responsable por daños legales*
> *(incluyendo negligencia) o contractuales*
> *ante el Contratista, sus proveedores*
> *secundarios o subcontratistas, excepto en*

---

[54] En otras palabras, la Cláusula 23 se subdivide en la 23.1, la 23.2 y la 23.3.

*los casos especificamente previstos en
este Contrato ... ".*

Esto es, dicha Cláusula asume el contenido del artículo 2117 del Código Civil que permite a los contratantes regular su responsabilidad, y excluir las normas generales sobre responsabilidad. Es decir, la responsabilidad de PEP está limitada por el propio contrato, y COMMISA renunció a cualquier otro tipo de reclamación.

Esta excepción especificamente se referían a dos reclamaciones: la controversia 36 relativa a malos tiempos, y a las controversias 34 y 35 relativas a embarcaciones.

380.- En el Contrato de Obra Pública a Precios Unitarios y Tiempo Determinado número PEP-O-IT-136/98 (IPC-28), se pactó expresamente por las partes que no habría compensación económica, es decir, pagos con cargo al erario federal por las suspensiones a la ejecución de los trabajos causadas por condiciones climáticas adversas o malos tiempos, considerados como eventos de caso fortuito o fuerza mayor. En efecto, en las cláusulas 12.1 y 12.4 del contrato se pactó lo siguiente:

> "12.1 *Alcance del Caso Fortuito o Fuerza Mayor.* ....... *Tratándose de trabajos costa afuera, las tormentas únicamente serán consideradas como caso fortuito o fuerza mayor cuando así lo determinen en forma conjunta el supervisor de PEP y el representante autorizado del Contratista, asentando en bitácora que las actividades se suspenden por caso fortuito o fuerza mayor; en caso de controversia, se estará a lo dispuesto por la Capitanía del Puerto más cercano al Sitio de los Trabajos, que hubiere declarado oficialmente el cierre de tal puerto".*

> "12.4 *Efectos del Caso Fortuito o de Fuerza Mayor. A menos que el Caso Fortuito*

> *o Fuerza Mayor impida total y definitivamente*
> *o en forma considerable el cumplimiento de*
> *este Contrato, en cuyo caso se estará a lo*
> *establecido en la Cláusula 10.2.4, el Caso*
> *Fortuito o Fuerza Mayor sólo actuará para*
> *diferir el cumplimiento de las obligaciones*
> *pactadas en este Contrato y no para excusar*
> *el incumplimiento".*

381.- De igual manera, en la cláusula 23.2 del Contrato se pactó que PEP no sería responsable de ningún daño contractual o legal, excepto en los casos específicamente previstos en este Contrato, en la siguiente forma:

> *"23.2    **Controversias    Técnicas.**    El*
> *Contratista no tendrá derecho a efectuar*
> *ningún reclamo y PEP no será responsable*
> *por daños legales (incluyendo negligencia) o*
> *contractuales ante el Contratista, sus*
> *proveedores secundarios o subcontratistas,*
> *excepto en los casos específicamente*
> *previstos en este Contrato....".*

En ese sentido, tenemos una Cláusula expresa en el Contrato que específica que en caso de suspensiones a los trabajos por Caso Fortuito o Fuerza Mayor (tormentas), PEP sólo tendrá obligación de diferir la fecha de terminación de los trabajos.

Por otro lado, la cláusula 23.2 del Contrato, tiene un doble efecto: el primero de fondo ya que constituye para PEP una excusa de responsabilidad, es decir, PEP no responde económicamente por malos tiempos porque no está esa responsabilidad en el contrato (solo diferir la fecha de terminación); y una segunda formal, es decir, si no es una prestación económica del contrato, su pago o cualquier disputa, reclamo o controversia que pretenda su pago, no puede ser materia del arbitraje, porque no puede constituirse como controversia técnica relacionada con la ejecución de los trabajos.

Siguiendo con este lineamiento, en los 16 Convenios Modificatorios celebrados entre las partes, no se modificó o alteró la Cláusula 12 del Contrato, relativa a Caso Fortuito o Fuerza Mayor. Al contrario, en cada uno de ellos se pactó expresamente, que cada una de las cláusulas del contrato original, subsistían sin variación alguna, en cuanto no hubieren sido modificadas expresamente.

382.- En conclusión, la Controversia Técnica 36 no es materia de arbitraje por acuerdo de las partes, y el Tribunal Arbitral no tiene competencia para resolverlas, al no ser una prestación pactada en el contrato a cargo de PEP y a favor de COMMISSA.

383.- Con relación a las controversias 34 y 35, relativa a retrasos en el inicio de los trabajos por falta de plataformas, la pretensión de COMMISA, visible en el párrafo 80, página 23 del Laudo Final, y página 8 del Acta de Misión, apartado **(c)** 3 (c), fue la siguiente:

> *"Con base en las reclamaciones antes señaladas, Commisa demanda una compensación de aproximadamente US$81 millones de dólares. Dicha suma se calcula de acuerdo con el Contrato EPC-28. En caso de que por alguna razón el Tribunal Arbitral determinará que las cuotas o tarifas por tiempos de espera o de reserva que se establecen en el Contrato EPC-28 no son aplicables para el cálculo de la compensación correspondiente a estos retrasos, Commisa atentamente solicita que se dicte laudo conforme al cual se decrete el pago de una indemnización a cargo de PEP que resulta suficiente a para compensar a Commisa por los daños y perjuicios sufridos como consecuencia de los retrasos antes sufridos. Para tales efectos, Commisa estima que dichos daños y perjuicios ascienden aproximadamente a US$81 millones de dólares".*

Esto es, COMMISA reclamaba, en caso de que no fuera procedente el pago de las tarifas de espera pactadas en el contrato (y el tribunal resolvió que no lo eran)[55], y el pago de una indemnización de daños y perjuicios.

384.- Esta reclamación por daños y perjuicios está fuera del arbitraje o no es materia del arbitraje porque no se trata de una prestación pactada en el contrato a favor de COMMISA, o en otro sentido, de conformidad con el primer párrafo de la cláusula 23.2 del Contrato, PEP está excluido de pago de cualquier prestación no contemplada en el Contrato. En consecuencia, ante la imposibilidad de cualquier disputa técnica respecto a esta materia, el Tribunal Arbitral carece de competencia para resolverla.

385.- En esa tesitura, el Tribunal Arbitral infringió la competencia impuesta en el acuerdo de arbitraje, y el acuerdo mismo de arbitraje, por lo que se ese Juzgador debe resolver definitivamente que el Tribunal Arbitral carece de competencia para resolver las controversias referidas.

386.- Esta clara exposición sobre la incompetencia del Tribunal Arbitral, en el laudo se combate mediante dos consideraciones insuficientes:

En los párrafos 100 y 101, el Tribunal Arbitral considera, respectivamente, lo siguiente:

> " ... *Compárese esta cláusula (la 23.3) con el texto estándar de la cláusula de arbitraje propuesto por la propia CCI: <todas las desavenencias que deriven de este contrato o guarden relación con éste>. Del análisis comparativo puede inducirse que la voluntad de las partes al celebrar el Contrato EPC-28 no fue la de restringir el ámbito de sumisión al arbitraje, sino al contrario, convenir que*

---

[55] Párrafos 165, 166 y 167 del Laudo Final.

> *todo tipo de disputas derivadas del Contrato,
> o simplemente vinculadas al mismo, fueran
> resueltas mediante arbitraje".*

> *"Como dice el artículo 1851 Código Civil
> Federal (<C.c.>), <si los términos de un
> contrato son claros y no dejan duda sobre la
> intención de los contratantes, se estará al
> sentido literal de sus cláusulas>. Y en el
> presente caso, los términos de la Cláusula
> 23.3 son absolutamente claros, y no dejan
> lugar a duda alguna, que las partes
> convinieron en que todas las controversias
> derivadas del cumplimiento o incumplimiento
> del Contrato, sin exclusión alguna, fueran
> resueltas mediante arbitraje".*

Estas consideraciones del Tribunal Arbitral carecen de fundamentación. En el primer argumento el Tribunal Arbitral deja de observar que la cláusula de arbitraje modelo de la CCI no es similar a la cláusula 23.3 del contrato, que establece el acuerdo arbitral, porque ésta última establece limitaciones al arbitraje al señalar:

> *"23.3  **Arbitraje.**  Cualquier controversia,
> reclamación, diferencia o disputa que
> sobrevenga o se relacione o esté vinculada
> con este Contrato o el incumplimiento del
> mismo será dirimida finalmente mediante
> arbitraje conducido en el Distrito Federal,
> México, de acuerdo con las Reglas de
> Conciliación y Arbitraje de la Cámara
> Internacional de Comercio que estén en vigor
> en ese momento. El número de árbitros será
> de tres y el idioma para conducir el arbitraje
> será el español. **No obstante lo anterior,
> cualquier controversia técnica deberá ser
> sometida previamente al procedimiento
> previsto en la Cláusula 23.2 y sólo en caso
> de que mediante dicho procedimiento no
> se logré un acuerdo entre las partes, éstas
> quedarán facultadas para acudir al
> recurso previsto en la Cláusula 23.3".*

Siendo así las cosas, es claro que no fue la voluntad de las partes que cualquier disputa o controversia fueran materia del arbitraje, sino tan solo aquéllas que hubieren sido formalizadas como controversias técnicas. Por la misma razón, la segunda consideración del tribunal arbitral es infundada e inexacta, toda vez que evidentemente no atiende al tenor literal de la cláusula 23.3 ni tampoco atiende el contenido de la cláusula 23.2 relativa a controversias técnicas. Ante esta falta de aplicación de disposiciones pertinentes, es evidente que la decisión es infundada.

387.- Ahora bien, en el párrafo 104 del Laudo Arbitral se expresa, con relación al mismo tema, lo siguiente:

> "La postura de PEP es especialmente incongruente, pues ha planteado una serie de pretensiones en la vía reconvencional; en ellas pide que se condene al Contratista al pago de una cláusula penal prevista en el Contrato y al pago del coste de determinados apoyos prestados a Commisa durante la ejecución de la obra. Con respecto a estas pretensiones reconvencionales, PEP sí defiende que el Tribunal Arbitral tiene competencia y que la litis está correctamente entablada. El Tribunal Arbitral no alcanza a comprender cómo se puede argumentar que las pretensiones del actor escapan de la cláusula 23.3 del Contrato, mientras que las reconvencionales de la Demandada se hallan incluidas dentro de su ámbito".

388.- El pago de penas convencionales por atraso reclamadas por PEP en vía reconvencional, están pactadas en las Cláusulas 11 y 11.1 del Contrato, por lo que de ninguna manera puede ser contradictoria la conducta de PEP. Por otro lado, la Cláusula 23.2 se ha establecido a favor de PEP y no de la Contratista. Esto es, COMMISA sí está obligada para con PEP a resarcirla de cualquier pérdida o daño que resulte de la ejecución de los trabajos o del cumplimiento o incumplimiento de los trabajos, porque PEP no la excusó de responsabilidad en



esos casos; COMMISA sí excuso a PEP del pago de daños no pactados expresamente.

389.- Los puntos litigiosos  2 (a), (b) y (c), consisten en lo siguiente:

> *"(a)¿Constituye alguna de las pretensiones o peticiones formuladas por la Demandante una controversia técnica, tal como se define este concepto en el Contrato EPC-28?;* **(b)** *De ser la respuesta a la anterior pregunta 2. (a) afirmativa, ¿se han sometido dicha o dichas controversias técnicas al procedimiento previsto en la cláusula 23.2 del Contrato?;* **(c)** *De ser negativa la respuesta a la anterior pregunta 2. (a) ¿cuál sería la consecuencia a los efectos del presente arbitraje?".*

Sobre este tema, el Tribunal Arbitral resuelve infundada y equivocadamente en el párrafo 121 del Laudo Arbitral lo siguiente:

> " *... la petición principal del Demandante consiste en 39 Controversias Técnicas, que fueron sometidas correctamente sometidas al procedimiento previsto en la cláusula 23.2 del Contrato, quedando expedita la vía arbitral para su reclamación; ... y que en consecuencia , no existe impedimento alguno para entrar a conocer el fondo de las reclamaciones".*

Es importante señalar también en este párrafo la infundada consideración del Tribunal Arbitral de considerar que las pretensiones reconvencionales de PEP y la solicitud de prórroga no requieren ser formalizadas como controversias técnicas, al haberse planteado una vez terminada la obra y cesado el Supervisor.

390.- Para poder entender claramente este punto, es importante entender que es una Controversia Técnica. Las partes pactamos en la cláusula 23.2 del Contrato lo siguiente:

> "23.2 ***Controversias Técnicas.*** *El Contratista no tendrá derecho a efectuar ningún reclamo y PEP no será responsable por daños legales (incluyendo negligencia) o contractuales ante el Contratista, sus proveedores secundarios o subcontratistas, excepto en los casos específicamente previstos en este Contrato.*
>
> *Para efectos de esta Cláusula se entenderá por Controversia Técnica toda diferencia que surja por cualquier reclamo o sea atribuible a la interpretación o ejecución de este Contrato, entre el Supervisor y el Contratista, en relación con los Anexos Técnicos del Contrato (A, B, B-1, B-2, B-3, CEV, DT, DT-1, DT-2.1, DT-2.2, DT-3, DT-4, E-2, F-1 Y F-2)*
>
> *Si por cualquier motivo el Supervisor y el Contratista no coinciden en la apreciación para resolver un reclamo de ajuste derivado de una Controversia Técnica, el Contratista deberá hacer formal dicha Controversia Técnica por escrito al Supervisor y solicitarle la determinación correspondiente. Este tipo de solicitud del Contratista deberá ser claramente identificado indicando que se trata de una Controversia Técnica sujeta a resolución al amparo de esta Cláusula 23, debiendo contener un resumen de los hechos en controversia y la propuesta del Contratista para resolverlos ... ".*

391.- De conformidad con la cláusula anteriormente transcrita, tenemos que puede haber controversias, disputas o reclamos, informales, por llamarlos de alguna manera (aunque es obvio que deben ser por escrito), y formales. Las controversias formales deben plantearse por escrito, de manera formal, **especificar en el documento que se trata de una controversia técnica,**

proporcionando los hechos que motivan la reclamación y una propuesta de solución.

392.- En el presente caso tenemos, como ha quedado probado en el juicio de Arbitraje, que la demandante COMMISA, presentó y formalizó extemporáneamente las controversias técnicas 19, 34, 35 y 36, en un momento en que por disposición contractual, ya no podían ser atendidas, por lo que las mismas no podían ser materia del arbitraje ni ser válidamente consideradas.

393.- Del Acta de Recepción Física Total de los trabajos de 30 de agosto de 2002, que se anexa como prueba a la presente solicitud, se evidencia que en esa fecha la demandante no había planteado formalmente una controversia técnica por obstrucciones (C.T. 19), pago de diferencias por tiempos de espera por trabajos de la Castoro 10 en plataformas (C. T. 27), por retrasos en el inicio de los trabajos con embarcaciones en los términos y condiciones contractuales (C. T. 34 y 35), o por retrasos por malos tiempos, en la que hubiere planteado por escrito los motivos de su reclamo (C. T. 36) Véase también el Voto Particular del árbitro D. Darío Oscós Coria que es parte integrante del Laudo Final.

394.- En el Acta de Recepción Física Total del Contrato PEP-O-IT-136/98 de 30 de agosto de 2007, en la página 17 (folio 1158), se establece un capítulo titulado "RECLAMOS EN ELABORACIÓN POR COMMISA". Estos reclamos pendientes de elaboración se dividen en varios paquetes de reclamaciones, que son los siguientes:

Los paquetes 1 a 5 se refieren a diversos extraordinarios relativos a trabajos de construcción relativos al retiro de obstrucciones, que en laudo se decidieron como Controversia Técnica 19.



El Paquete **7** se refiere a "Afectaciones por condiciones climatólogicas (Castoro 10 y Bar Protector), que en laudo se decidieron como Controversia Técnica 36.

En el paquete 13 se comprende la reclamación por "Retraso en el inicio de la construcción por falta de disponibilidad de las plataformas" (Notificación de Cambio 23), que en laudo se decidieron como Controversias Técnicas 34 y 35; la reclamación por "Variación de costos de trabajos en tuberías partes superiores (top sides), que en laudo se decidieron como Controversia Técnica 27.

395.- Es muy importante señalar que el Acta de Recepción Física Total de los Trabajos fue firmada tanto por los representantes de COMMISA, Ingenieros Juan Manuel Herrera y Nicolás Martínez Bocanegra, al igual que por los representantes de PEP. Es preciso hacer notar de igual manera que el listado de Reclamos o Controversias Técnicas en proceso de elaboración, fue una manifestación de COMMISA, tal como se desprende del párrafo puesto al pie del listado y que a la letra dice:

> "LA CONTRATISTA MANIFIESTA QUE FALTA INCLUIR EN ESTE CUADRO EL MONTO DE ALGUNOS PRECIOS (como en la reclamación referente a malos tiempos, es decir, en esta fecha ni siquiera tenía COMMISA una cantidad líquida) EN LO REFERENTE A OBRA EXTRAORDINARIA EJECUTADA ASÍ COMO DIVERSOS RECLAMOS QUE HASTA EL MOMENTOSE ENCUENTRAN EN PROCESO DE ELABORACIÓN".

396.- La preclusión del derecho de COMMISA para ventilar sus reclamos mediante el arbitraje, va aparejada de la preclusión de su derecho a reclamar de PEP el pago de cualquier cantidad de dinero por estos reclamos, toda vez que el Anexo B Sección 5, del Contrato, denominado "Modificaciones" establece que "*toda demora del contratista para dar aviso o presentar la propuesta a que se*

refiere el párrafo anterior, será motivo suficiente para rechazar la reclamación si el retraso perjudica a PEP y en la medida que lo haya perjudicado. **En ningún caso se considerará una reclamación del Contratista si se hace después de la Recepción Parcial o Total ...**".

Así las cosas, podemos afirmar que las consideraciones del Tribunal Arbitral son infundadas, y a veces atentan contra el buen sentido, como se expondrá a continuación.

397.- En el capítulo correspondiente a otras controversias, se estableció claramente que solamente en 29 eventos de adecuación de trabajos y remoción de obstrucciones COMMISA cumplió con el procedimiento de modificación contractual previstos en el contrato. Las otras 51 reclamaciones de obstrucciones no cumplieron con este requisito, y así se demuestra con el Acta de Recepción Física Total, cuya parte conducente transcribimos en párrafos anteriores.

Por tal razón es infundado y falso lo asentado por el Tribunal Arbitral en la parte final del párrafo 112 del Laudo Arbitral, porque a la controversia técnica 19 nunca se le dio ese carácter. Es más, es ininteligible la consideración del Tribunal Arbitral en el contexto del Contrato, porque no estaríamos hablando de una controversia técnica sino de cuando menos cinco controversias técnicas relativas a obstrucciones, sino es que más, de acuerdo también con el Acta de Recepción Física de los Trabajos ya transcrita supra.

En el párrafo 115 el Tribunal Arbitral señala que:

> "*Constituyen hechos probados que el 30 de agosto de 2002 las partes otorgaron el <Acta de Recepción Física Tota> prevista en la cláusula 9.2.6 del Contrato. En el Acta ambas partes reconocieron que existían aproximadamente 30 reclamaciones relativas a Controversias Técnicas en marcha, y Commisa advirtió que faltaba por incluir el*

> *monto de alguna obra extraordinaria y*
> *diversos reclamos adicionales, lo que implica*
> *que la reclamación existía, a los efectos del*
> *Anexo B2 del Contrato, aunque estuviera*
> *pendiente su cuantificación ...".*

En esta afirmación, una vez más se vuelve a equivocar el tribunal arbitral. Las reclamaciones que se listaron en el "Acta de Recepción Física Total" de los Trabajos estaban en proceso de elaboración. Es decir, fueron presentadas posteriormente al Acta mencionada, cuando por disposición de la parte final de la Sección 5 del Anexo B-2 del Contrato, ni siquiera podían ser ya atendidas[56], y mucho menos formalizadas como controversias técnicas. Vale precisar también que en el Contrato se distingue entre reclamo y Controversia Técnica, por lo que su utilización como sinónimo por parte del Tribunal Arbitral es infundada.

398.- El Tribunal Arbitral hace una afirmación infundada en el párrafo 115 del Laudo Arbitral, cuando señala que PEP admitió expresamente en su Escrito de Concusiones (documento R 29, página 21, que con este escrito se acompaña como prueba) que las 39 reclamaciones de COMMISA se substanciaron como Controversia Técnica en los términos de la Cláusula 23.2 del Contrato. En efecto, el tribunal arbitral señala:

> "Aún cuando en el contrato IPC-28,
> COMMISA y PEP establecieron un
> procedimiento para dirimir todas aquéllas
> divergencias que surgieran con motivo de la
> interpretación o ejecución del contrato
> <cláusula 23.2 Controversias Técnicas> <de
> hecho algunos reclamos fueron resueltos en
> los términos de dicho procedimiento>, las
> partes establecieron mesas de trabajo"

---

[56] *"...toda demora del contratista para dar aviso o presentar la propuesta a que se refiere el párrafo anterior, será motivo suficiente para rechazar la reclamación si el retraso perjudica a PEP y en la medida que lo haya perjudicado. En ningún caso se considerará una reclamación del Contratista si se hace después de la Recepción Parcial o Total ..."*

Con esto no tiene razón en afirmar el Tribunal Arbitral que PEP reconoció a los 39 reclamos como controversias técnicas, sino solamente a algunos. La frase tampoco le permite identificar a cuáles de los 39 reclamos se les dio el carácter de controversias técnicas, y lo que es más importante, tampoco puede el Tribunal Arbitral afirmar con sustento que se refieren a las reclamaciones presentadas después del "Acta de Recepción Física Total" de los Trabajos.

399.- En el párrafo 117 el Tribunal Arbitral afirma que a COMMISA no le ha precluido su derecho por haber abandonado las mesas de trabajo, por lo siguiente: "... *De acuerdo con el tenor literal de la cláusula 23.2 del Contrato, transcurridos 30 días naturales desde el inicio de las negociaciones, ambas partes tienen expedito el acceso al arbitraje* ...".

400.- Después del Acta de Recepción Física de los Trabajos, no eran admisibles ni reclamos, ni controversias técnicas, por disposición del último párrafo de la Sección 5 del Anexo B-2 del Contrato. Las negociaciones a que se refiere el último párrafo del artículo 23.2 del Contrato, son para resolver en definitiva una Controversia Técnica, resuelta previamente por el Supervisor del Contrato. En el caso esto era imposible jurídicamente hablando, porque ni siquiera se había elaborado un reclamo, ni había resolución del supervisor.

Las negociaciones se llevaron a cabo, como es usual en toda operación que no termina satisfactoriamente para las partes, para tratar de evitar un pleito judicial o una disputa arbitral, según el caso.

401.- Las indicadas negociaciones fueron sacadas de su contexto por el Tribunal Arbitral, para determinar a conveniencia, que se había cumplido con el procedimiento contractual, y no es así. El Tribunal mismo se contradice en este hecho, porque el mismo Tribunal reconoce que una vez que se recibe y acepta la obra, y cesa en sus funciones el Supervisor, no hay posibilidad de desarrollar el



procedimiento descrito en la cláusula 23.2 del Contrato (párrafo 118 del Laudo Final). En efecto, el tribunal arbitral señala:

> "*118. La alegación de PEP es , además, incongruente con su propia actitud en este arbitraje: PEP ha planteado reclamaciones en vía reconvencional, sin haber alegado ni probado con respecto a ellas el cumplimiento del procedimiento de Controversia Técnica diseñado en la Cláusula 23.2 ...*"

402.- Para ser cierta la consideración anteriormente transcrita, primero tiene que demostrase que PEP está sujeto a la Cláusula 23.2 del Contrato para plantear sus reclamaciones. Esto no es así, porque como se desprende del párrafo tercero del indicado numeral, el obligado a plantear formalmente es COMMISA: ya que "*si por cualquier motivo el Supervisor y el Contratista no coinciden en la apreciación para resolver un reclamo de ajuste derivado de una Controversia Técnica, **el Contratista**, deberá hacer formal dicha controversia ...*".

403.- Se vuelve a insistir, COMMISA responde a PEP por cualquier daño que le cause, contractual o legal, sin limitación y sin requisitos previos. Así está pactado el Contrato, y una vez más vuelve el Tribunal Arbitral a ignorar, que se trata de un contrato administrativo y no mercantil, sujeto a distintos principios.

404.- Por la misma razón es infundada y falsa la consideración del Tribunal Arbitral contenida en el mismo párrafo 118 del Tribunal Arbitral que dice:

> "*El comportamiento de PEP muestra cual debe ser la recta interpretación de la cláusula 23 del Contrato: las Controversias Técnicas únicamente pueden plantearse durante la fase en que se están ejecutando los trabajos. Terminados éstos, otorgada el Acta de Recepción Total de la obra, cesa el Supervisor en sus funciones y, por lo tanto, no hay posibilidad de desarrollar el procedimiento descrito en la cláusula 232 del*

> *Contrato. Es por esta razón que el demandado ha podido válidamente plantear sus pretensiones reconvencionales, sin tener que pasar por el procedimiento de las Controversias Técnicas".*

De la conducta de PEP, no puede deducirse más que, al no estar obligado a formalizar sus reclamaciones en Controversia Técnica, éstas pueden realizarse durante la ejecución de los trabajos o una vez recibida la obra, y ser materia de arbitraje por estar relacionada con el contrato. Existen en el contrato diversas cláusulas en ese sentido para exigir responsabilidad al contratista por trabajos mal ejecutados, faltantes, vicios ocultos y garantías. En cambio, no es posible para el Contratista formalizar sus controversias una vez terminado el contrato, por disposición del último párrafo de la Sección 5 del Anexo B-2 del Contrato, y mucho menos formalizarlas en Controversia Técnica. En su caso, COMMISA tendría que ejercer sus derechos ante los Tribunales Nacionales, sin opción de acudir al arbitraje, al no cumplir con el segundo supuesto para que una disputa, reclamación o controversia sea arbitrable.

La interpretación de esta cláusula por parte del Tribunal Arbitral es insuficiente. No puede seriamente afirmar que el Contratista puede plantear sus reclamaciones como le venga en gana, una vez terminado el Contrato, ya que atenta contra el principio contractual que impide que el cumplimiento de un contrato quede al arbitrio de una de las partes, que es un principio toral del derecho internacional privado, que el Tribunal Arbitral violentó. Más bien, el contratista ya no puede plantear sus reclamaciones de ninguna manera, en el arbitraje.

405.- Es importante subrayar que el Supervisor de la Obra no cesa en sus funciones terminada la obra, sino hasta que se extingan todos los derechos y obligaciones que resulten de la misma, es decir, hasta que se liquide el contrato mediante la estimación final, a la que ya nos referimos en el capítulo correspondiente a Gastos Financieros. Tan es así, que con fecha 8 de abril de

2003, siete meses después de terminada la obra, por supuesto, de manera extemporánea y sin posibilidad de surtir efectos, COMMISA le solicita al supervisor del Contrato, Ingeniero Alfredo Gómez Rangel que formalizara la Controversia Técnica relativa a malos tiempos (Documento COM/EP2800/2003-5556). Este documento era conocido por el Tribunal Arbitral, y negligentemente no fue tomado en cuenta en la decisión, tal como se acredita con la cita que hace del mismo el árbitro disidente Licenciado Darío Oscós Coria en su Voto Particular (página 4, párrafo 8).

406.- Por otro lado, este mismo documento acredita, tomando en cuenta la conducta de las partes, que COMMISA aún no había formalizado Controversia Técnica alguna en esta materia, al terminar el Contrato, y que su reclamación fue extemporánea, cuando no había posibilidad jurídica que PEP tomara en cuenta el fondo del asunto (por ejemplo, de manera similar a un recurso extemporáneo que es ineficaz para acreditar la definitividad en el amparo). En tal virtud, es un contrasentido la actitud del Tribunal Arbitral en demostrar que se formalizó la controversia técnica, aún en contra de la expresa manifestación de COMMISA y por ello también procede que se declare nulo el laudo arbitral.

Se subraya que, esto refuerza la interpretación de PEP del "Acta de Recepción Física Total" de los Trabajos, en el sentido de que tampoco COMMISA formalizó su controversia técnica con respecto a las controversias técnicas 19, 27, 34 y 35.

407.- En estas consideraciones, el Tribunal Arbitral trata de justificar en forma infundada que COMMISA no tenía obligación de sujetarse a la cláusula 23.2 del contrato, y además, se contradice en el momento de decidir el fondo de las controversias, por lo que el laudo es completamente incongruente, y por ende, carece de fundamentación y motivación, atentando contra la soberanía constitucional que es de orden público y por ello el laudo resulta nulo.

Por ejemplo, en la controversia 36 el Tribunal Arbitral trata de justificar que la Contratista si presentó una controversia técnica. Véanse los párrafos 233 y 234, página 56, del Laudo Final, en la cual el Tribunal Arbitral manifiesta que COMMISA supuestamente alegó su derecho a una remuneración por malos tiempos debido a la reprogramación de los trabajos, que de ninguna manera puede ser considerada la formalización de una controversia técnica. El párrafo en cuestión dice *"Esto no incluye ningún tiempo adicional de espera por condiciones climatológicas debido a la extensión del programa de trabajo"*.

408.- Formalizar la controversia, contractualmente no es lo mismo que insinuar o presumir un supuesto derecho, como lo hizo COMMISA. La decisión del Tribunal Arbitral aprobó la conducta de COMMISA, en plena contradicción con el pacto contractual. Lo cierto es que para efectos del arbitraje, COMMISA tenía que haber formalizado previa y oportunamente, como Controversia Técnica, todos sus reclamos tal como lo exige el acuerdo de arbitraje contenido en la Cláusula 23.3 del Contrato de Obra Pública. Si no fue así, dicha Controversia Técnica no podía ser materia de arbitraje, por lo que las consideraciones del Tribunal Arbitral se refieren a controversias no previstas en el acuerdo de arbitraje, ya que sólo controversias técnicas formales pueden ser materia de arbitraje; o en su caso, el Laudo Arbitral contiene decisiones que exceden los términos del acuerdo de arbitraje, ya que el Tribunal Arbitral sólo puede resolver en definitiva, controversias técnicas.

409.- De todo lo expuesto, resulta evidente que el laudo arbitral se refiere a controversias no previstas en el acuerdo arbitral, que el laudo arbitral excede los términos del acuerdo arbitral, que el laudo arbitral es contrario al orden público y por ello es procedente que se declare la nulidad del laudo arbitral.

(FIN DE LA CITA DE LA DEMANDA DE NULIDAD)

## SOBRE LOS EXTREMOS DE LA ACCIÓN

Por lo que toca a lo que la actora incidental llama **extremos de la acción,** es pertinente señalar a Su Señoría que COMMISA pretende fundarse exclusivamente en lo que dispone el artículo 1461 del Código de Comercio y por eso afirma que para conceder la ejecución del laudo se requiere única y exclusivamente que se acompañe copia autenticada del laudo y del acuerdo de arbitraje, sin mayor deliberación por el Juzgador. Los ordenamientos legales están integrados por artículos y sus disposiciones están articuladas, o concatenadas, para ser interpretadas armónicamente, y por ello es preciso que conjuntamente con lo dispuesto por el artículo 1461 del Código de Comercio, se atienda lo dispuesto por el artículo 1462 del Código de Comercio que claramente determina que se puede denegar el reconocimiento o la ejecución de un laudo arbitral cuando éste vaya contra el orden público, en una concepción completa y no limitada a las normas imperativas, o cuando se refiera a controversias no previstas en el acuerdo de arbitraje, cuando contenga decisiones que exceden los términos del acuerdo de arbitraje, cuando el procedimiento arbitral no se ajuste al acuerdo celebrado entre las partes, cuando el objeto de la controversia no es susceptible de arbitraje, todo lo cual sucedió en nuestro caso como ha quedado demostrado anteriormente en este mismo escrito, al exponer la excepción de nulidad del laudo arbitral.

Toda vez que la misma ley determina que Su Señoría tiene la facultad para negar el reconocimiento y ejecución del laudo arbitral por cualquiera de las razones mencionadas en el artículo 1462 del Código de Comercio, es evidente que no existe *cosa juzgada* consistente en la emisión del laudo arbitral, como lo pretende la contraparte. El laudo no es una ejecutoria.

## CONTESTACIÓN A LOS HECHOS DE LA DEMANDA

1.- Contesto el hecho primero de la demanda, que confieso por ser cierto.

2.- Contesto el hecho segundo de la demanda, que confieso por ser cierto.

3.- Contesto el hecho tercero de la demanda, que confieso por ser cierto.

4.- Contesto el hecho cuarto de la demanda, que confieso por ser cierto.

Aclaro que el árbitro mexicano DARÍO ULISES OSCÓS CORIA emitió voto disidente de los dos árbitros extranjeros JOSÉ W. FERNÁNDEZ y JUAN FERNÁNDEZ-ARMESTO, por considerar que la decisión en el arbitraje era ilegal.

5.- No es cierto este hecho. En la propia Acta de Misión consta que entre los puntos litigiosos se encuentran la falta de jurisdicción y competencia del Tribunal Arbitral, por lo que es claro que la situación nunca fue aceptada por PEP.

6.- Contesto el hecho sexto de la demanda, que confieso por ser cierto.

7.- Contesto el hecho séptimo de la demanda, que confieso por ser cierto.

8.- Contesto el hecho octavo de la demanda, que confieso por ser cierto.

9.- Contesto el hecho noveno de la demanda, que confieso por ser cierto.

Aclaro que el laudo arbitral no fue aprobado por unanimidad de los árbitros, sino solamente por mayoría, en atención a que el árbitro DARÍO ULISES OSCÓS CORIA, emitió un voto disidente de la opinión de los otros dos árbitros extranjeros, considerando que la decisión en el laudo era ilegal. Es preciso puntualizar que el árbitro que mejor conocía el derecho mexicano, que era el derecho aplicable al fondo del arbitraje, era precisamente el indicado profesionista.

Aclaro asimismo que el laudo arbitral no puede ser reconocido ni ejecutado por las siguientes razones:

I.- El laudo arbitral es contrario al orden público, como ha quedado demostrado en la exposición de la excepción y defensa de nulidad del laudo arbitral.

II.- El laudo arbitral se refiere a controversias no previstas en el acuerdo de arbitraje y contiene decisiones que exceden los términos del acuerdo de arbitraje, como ha quedado demostrado en la exposición de la excepción y defensa de nulidad del laudo arbitral.

III.- El procedimiento arbitral no se ajustó al acuerdo celebrado por las partes, como ha quedado demostrado en la exposición de la excepción y defensa de nulidad del laudo arbitral.

IV.- El objeto de la controversia en el arbitraje no es susceptible de arbitraje, como ha quedado demostrado en la exposición de la excepción y defensa de nulidad del laudo arbitral.

10.- Contesto el hecho décimo de la demanda y niego que COMMISA se vea obligada a promover el presente incidente, toda vez que el incidente es improcedente en razón de que se ventila ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, en el Expediente No. 158/2008-II, el incidente de nulidad de laudo arbitral, debiendo ser la resolución del mismo, un requisito previo o condición previa a cualquier intento o pretensión de ejecución del laudo.

11.- Al ser analógicas las causales de nulidad con aquéllas causas que impiden el reconocimiento de un laudo arbitral comercial, al demostrarse la nulidad se demuestra al mismo tiempo que dicho laudo no puede ser ejecutado, remitiéndonos en obvio de repeticiones, a los argumentos vertidos que

demuestran la nulidad del laudo como contestación, defensa y excepción a la solicitud de COMMISA para ejecutar el laudo.

## SE CONTESTAN LAS CONSIDERACIONES DE DERECHO DE LA ACTORA COMMISA

Son inaplicables las consideraciones de derecho y las normas invocadas por COMMISA, por las siguientes razones:

1.- Niego que COMMISA tenga derecho para reclamar el reconocimiento y ejecución del laudo arbitral, toda vez que dicho laudo arbitral resulta nulo por las siguientes razones:

I.- El reconocimiento y la ejecución del laudo arbitral es contrario al orden público.

II.- El laudo arbitral se refiere a controversias no previstas en el acuerdo de arbitraje y contiene decisiones que exceden los términos del acuerdo de arbitraje.

III.- El procedimiento arbitral no se ajustó al acuerdo celebrado por las partes.

IV.- El objeto de la controversia en el arbitraje no es susceptible de arbitraje.

2.- El arbitro DARÍO ULISES OSCÓS CORIA, único arbitro mexicano en el presente caso, y conocedor de las Leyes Federales Mexicanas, emitió voto disidente en contra de la opinión de los otros dos árbitros extranjeros.

3.- Es improcedente el procedimiento de reconocimiento y ejecución del laudo arbitral, toda vez que conforme al artículo 1462 del Código de Comercio, el



laudo arbitral resulta nulo, y se actualizan las causales para negar su reconocimiento o ejecución.

4.- Es falso lo aseverado por la actora incidental, toda vez que las partes celebraron un contrato de obra de naturaleza **administrativa**, como lo ha determinado el Sexto Tribunal Colegiado en Materia Administrativa del Primer Circuito en la ejecutoria correspondiente al expediente RA-123/2006, cuya copia se ofrece como prueba.

Con fundamento en lo dispuesto por el artículo 1462 del Código de Comercio, es evidente que se actualizan los supuestos de nulidad del laudo arbitral que son los siguientes:

1.- Niego que COMMISA tenga derecho para reclamar el reconocimiento y ejecución del laudo arbitral, toda vez que dicho laudo arbitral resulta nulo por las siguientes razones:

I.- El reconocimiento y la ejecución del laudo arbitral es contrario al orden público.

II.- El laudo arbitral se refiere a controversias no previstas en el acuerdo de arbitraje y contiene decisiones que exceden los términos del acuerdo de arbitraje.

III.- El procedimiento arbitral no se ajustó al acuerdo celebrado por las partes.

IV.- El objeto de la controversia en el arbitraje no es susceptible de arbitraje.

Asimismo, debe tomarse en consideración que contra la opinión de COMMISA, los particulares no pueden ni renunciar ni derogar las normas de derecho público ni las garantías individuales que son de orden público y además el

principio de supremacía constitucional es un principio de orden público contra el cual no pueden prevalecer los pactos de los particulares.

Independientemente de la nomenclatura que pretenda usar COMMISA, las garantías de legalidad, fundamentación y motivación son irrenunciables, y no pueden prescindir de ellas los árbitros de ningún tribunal que se precie de ser serio y honesto, toda vez que una resolución que no esté debidamente fundada y motivada se presta a ser manipulada por los caprichos de los árbitros, que consideran que la envestidura del nombramiento de árbitros les da facultades para dictaminar lo que les venga en gana, ante la controversia que se les plantea.

5.- Es falso lo afirmado por la actora, toda vez que se actualizan las causas de nulidad del laudo arbitral, mismos hechos que impiden que el laudo sea ejecutable, como se ha venido mencionando en este escrito, remitiéndonos al párrafo precedente en obvio de repeticiones.

6.- Es falso lo afirmado por la actora en relación al concepto de orden público, toda vez que los principios básicos del orden jurídico, como son el derecho de defensa, la fundamentación y motivación así como la imparcialidad del tribunal han sido violados en el procedimiento arbitral, como quedó demostrado en este escrito.

7.- El laudo carece de las condiciones para considerarse una ejecutoria. Es falso que el laudo objeto de la controversia constituya cosa juzgada, toda vez que con base en el artículo 1462 del Código de Comercio el laudo arbitral es anulable, al haber interpuesto PEP en tiempo y forma incidente de nulidad del laudo en los términos de los artículos 1457, 1458 y 1460 del Código de Comercio; y lo que es más importante: el laudo aún no ha sido reconocido por los Tribunales del País, y por tanto no es ejecutable.

Por otra parte, de los artículos 1461 y 1463 del Código de Comercio se desprende que la nulidad o el reconocimiento de un laudo, debe ser previo a la solicitud de ejecución del mismo. Es decir, de conformidad con el primero de las disposiciones citadas, solamente después de que un laudo haya sido reconocido, se puede solicitar la ejecución del mismo. Así, la acción de reconocimiento de laudo no se intenta conjuntamente con su ejecución, pues de otra manera se infringiría el orden natural de las cosas, puesto que no puede ejecutarse un laudo, mientras no se declare su validez.

Es importante mencionar nuevamente que <u>en el presente caso se pactó un arbitraje en estricto derecho y conforme a Leyes Federales Mexicanas</u> y el laudo arbitral no se dictó conforme a las Leyes Federales Mexicanas aplicables al caso como queda demostrado en el capítulo de excepciones y defensas, por lo que claramente no fue motivado de conformidad con el acuerdo de las partes.

8.- Es falso lo aseverado por COMMISA que afirma que no hubo violaciones al procedimiento arbitral.

Las violaciones al procedimiento arbitral han quedado ampliamente demostradas en el capítulo de excepciones y defensas, toda vez que el arbitraje no fue de estricto derecho ni se basó en las Leyes Federales Mexicanas; además incluyó temas no arbitrables y el tribunal arbitral se excedió en sus facultades. Por ello, la decantada autonomía del tribunal arbitral es una ilusión de COMMISA toda vez que dicho tribunal arbitral debía actuar conforme a las Leyes Federales Mexicanas en un arbitraje de estricto derecho.

Por ejemplo, en el tema relativo a las controversias 34 y 35, al motivarse y fundamentarse la nulidad de la decisión, se expone claramente que PEP objetó oportunamente la actuación del Tribunal Arbitral, que excedía su mandato al introducir al pleito cuestiones no disputadas por las partes o nuevas demandas; y además, se hace ver ahí mismo que la propia COMMISA objetó dichas

actuaciones por considerar que el Tribunal Arbitral no respetaba los puntos litigiosos contenidos en el Acta de Misión, y al que nos remitimos en obvio de repeticiones. Podemos señalar también, que otras violaciones al procedimiento ocurrieron durante la emisión del laudo, como lo es su notoria incongruencia.

**Es aplicable al presente caso lo dispuesto por el artículo 1462 del Código de Comercio, así como lo dispuesto por los artículos 14, 16, 126 y 134 de la Constitución.**

9.- Es falso lo afirmado por la actora, toda vez que consta en el laudo arbitral que PEP continuamente en el desarrollo del proceso objetó la conducta del Tribunal Arbitral, así como se evidencia en los antecedente que en este escrito se reproducen, y en las pruebas que se ofrecen.

## CONTESTACIÓN AL INCIDENTE DE ACUMULACIÓN

Es la segunda vez que COMMISA plantea en México una solicitud para que el laudo arbitral sea reconocido y ejecutado, por consiguiente, también COMMISA ha solicitado en diversas ocasiones al juez OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, que su o sus procedimientos de reconocimiento y ejecución del laudo arbitral, se acumule o acumulen al Incidente de Nulidad del laudo arbitral presentado por PEP contra COMMISA ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL, expediente 158/2008. Primero, el presentado ante el juzgado NOVENO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, expediente No. 192/2008, lo cual fue rechazado por el juez OCTAVO DE DISTRITO EN MATERIA CIVIL. Posteriormente COMMISA solicitó directamente ante el mismo juez OCTAVO DE DISTRITO EN MATERIA CIVIL que el presente caso se acumulare al juicio mencionado que se ventila ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL, lo cual fue nuevamente desechado por el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL. Ahora, se lo solicita a Usted C. JUEZ, cuando es clara la

posición del juez que conoce de la nulidad, así como la firmeza de la negativa, porque COMMISA no se inconformó de ninguna manera.

Todo ello pone de manifiesto que COMMISA anda buscando dentro de los Tribunales Federales (primero ante el NOVENO DE DISTRITO EN MATERIA CIVIL y ahora ante el SEXTO DE DISTRITO EN MATERIA CIVIL) quién pueda complacer sus anhelos de que se ejecute un laudo arbitral, sin que previamente sea examinada su validez, y que evidentemente es nulo por las razones mencionadas en el artículo 1462 del Código de Comercio y expuestas en el capítulo de excepciones y defensas de nulidad del laudo arbitral.

Vale hacerle notar a ese Juzgador, ante la omisión dolosa de COMMISA, que antes de los dos negocios judiciales narrados, ésta ya ha iniciado acciones legales ante la Corte de Distrito de los Estados Unidos (de América) del Distrito de Columbia (en Washington, D. C.), para que se confirmara, reconociera y se hiciera cumplir el laudo arbitral citado en antecedentes. La referencia de dicha solicitud es el caso (Civil General) 1:08-CV-00469, asignado al Juez Richard W. Roberts, el 19 de marzo de 2008, el cual está valorando suspender el procedimiento hasta que se resuelva el incidente de nulidad.

Con el propósito de que Su Señoría tenga pleno conocimiento de los antecedentes del presente caso es pertinente mencionar que PEP desde el día 7 de mayo de 2008 demandó a COMMISA ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL, bajo el EXPEDIENTE No. 158/2008 la nulidad del laudo arbitral y al día de hoy en dicho procedimiento el juez ha citado a las partes para oír sentencia, por lo cual solicito a Su Señoría que suspenda el presente procedimiento hasta en tanto el juez OCTAVO DE DISTRITO EN MATERIA CIVIL, dicte sentencia sobre la nulidad del laudo arbitral.

De los artículos 1461 y 1463 del Código de Comercio se desprende que la nulidad o el reconocimiento de un laudo, debe ser previo a la solicitud de ejecución del mismo. Es decir, de conformidad con el primero de las disposiciones citadas, solamente después de que un laudo haya sido reconocido, se puede solicitar la

ejecución del mismo. Así, la acción de reconocimiento de laudo no se intenta conjuntamente con su ejecución, pues de otra manera se infringiría el orden natural de las cosas, puesto que no puede ejecutarse un laudo, mientras no se declare su validez.

Por ello resulta improcedente el incidente de acumulación de autos que se pasa a contestar a continuación:

1.- Contesto el hecho primero del Incidente de acumulación de autos, mismo que niego toda vez que el laudo no es objeto del presente procedimiento de acumulación de autos.

Aclaro que lo que pretende COMMISA es que se acumulen los autos del presente juicio a los autos del incidente de nulidad del laudo arbitral que se tramita ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, bajo el EXPEDIENTE No. 158/2008-II y el Juez OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, quién desechó por improcedente la solicitud de COMMISA. Este es el objeto de la acumulación y no el laudo.

En esas condiciones, este trámite de acumulación se realiza bajo el supuesto de que el juez al que en su caso se remitirían los autos no está de acuerdo con la acumulación; y en la condición de que COMMISA no se inconformó de ninguna forma contra la negativa del JUEZ OCTAVO DE DISTRITO para negar la acumulación del presente expediente al suyo.

2.- Contesto el hecho segundo del Incidente de acumulación de autos, que es cierto.

Aclaro que en el incidente de nulidad mencionado, el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, **ya se celebró la**



audiencia final del juicio y se citó a las partes para oír sentencia, por lo que la acumulación de autos es improcedente en los términos del artículo 72 del Código Federal de Procedimientos Civiles, legislación aplicable al tratarse de dos incidentes tramitados de conformidad con el artículo 360 del Código Federal de Procedimientos Civiles.

3.- Contesto el hecho tercero del Incidente de acumulación de autos, que niego por ser hecho de terceros.

4.- Contesto el hecho cuarto del Incidente de acumulación de autos, mismo que niego por ser una exposición contradictoria, al calificar en este hecho la acción de reconocimiento y ejecución de laudo como una acción independientemente, y sin embargo, en los demás hechos mencionados en la demanda se menciona que esa acción es dependiente del laudo arbitral y del juicio incidental de la nulidad del mismo.

Aclaro asimismo, que es falso que la acción que se ejercita ante Su Señoría y ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, bajo el EXPEDIENTE No. 158/2008-II tengan el mismo objeto, toda vez que el objeto de la acción que PEP ejercita ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, bajo el EXPEDIENTE No. 158/2008-II, tiene por objeto que se declare la nulidad del laudo arbitral que atenta contra el orden público; y, en cambio, la acción que ejercita COMMISA ante Su Señoría tiene por objeto el reconocimiento y la ejecución del laudo arbitral.

Es evidente que para poder reconocer y ejecutar un laudo arbitral primero debe determinarse si el laudo es nulo o válido y posteriormente cuando se haya determinado su nulidad o validez, entonces posteriormente se podrá pensar en el reconocimiento y ejecución de un laudo que haya sido declarado como válido.

217

En consecuencia, es improcedente tramitar el reconocimiento y ejecución de un laudo arbitral mientras no se haya declarado la validez de dicho laudo que ha sido impugnado de nulo, como lo determina el artículo 366 del Código Federal de Procedimientos Civiles.

Además, antes de decretarse la ejecución de un lado arbitral, primero debe declararse su reconocimiento como lo establecen nuestros más altos tribunales, en la siguiente forma:

> "No. Registro: 192,709
> Tesis aislada
> Materia(s): Civil
> Novena Época
> Instancia: Tribunales Colegiados de Circuito
> Fuente: Semanario Judicial de la Federación y su Gaceta X, Diciembre de 1999
> Tesis: IX.1º.39 C
> Página: 733
>
> LAUDOS ARBITRALES DE CARÁCTER COMERCIAL PRONUNCIADOS EN EL EXTRANJERO. SU EJECUCIÓN.
> Para ejecutar en el país un laudo arbitral de carácter comercial emitido en el extranjero, es preciso que previamente se produzca su reconocimiento, lo que puede hacerse al pronunciar la resolución final en el incidente que se debe promover conforme al artículo 360 del Código Federal de Procedimientos Civiles, pues los artículos 1461 al 1463 del Código de Comercio, ley aplicable al caso, no excluyen a dicha categoría de laudos arbitrales de ser reconocidos; amén de que sería ilógico que se procediera a la ejecución, con la sola promoción del incidente y después, en la resolución final de éste, se denegara tal reconocimiento o bien la ejecución, por estarse en alguno de los casos que la propia ley contempla.
>
> PRIMER TRIBUNAL COLEGIADO DEL NOVENO CIRCUITO.

> Amparo en revisión 29/99. Aceros San Luis, S. A.
> de C. V., y otros.    12 de agosto de 1999.
> Unanimidad de votos. Ponente: Enrique Arizpe
> Narro. Secretario: Juan Guillermo Alanís Sánchez."

Por tal razón, COMMISA actúa indebidamente al acumular su acción de reconocimiento con su acción de ejecución en el mismo incidente, por lo cual debe declararse improcedente de pleno derecho su pretensión de ejecutar el laudo, sin haber obtenido previamente el reconocimiento del mismo.

5.- Contesto el hecho quinto del Incidente de acumulación de autos, que niego por ser falso, toda vez que es falso lo que afirma COMMISA al aseverar que existen identidad de acciones en el procedimiento que se tramita ante Su Señoría y la acción ejercitada por PEP ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, bajo el EXPEDIENTE No. 158/2008-II, toda vez que PEP ha ejercitado una **acción de nulidad de laudo arbitral,** tendiente a declarar la invalidez del laudo, mientras que COMMISA pretende ejercitar una acción de reconocimiento y ejecución del laudo arbitral, tendiente a su cumplimiento forzoso. Es decir, se quiere acumular una acción declarativa con una acción ejecutiva. Así, en los juicios que se pretenden acumular no se ejercitan las mismas acciones ni tiene el mismo objeto.

6.- Contesto el hecho sexto del Incidente de acumulación de autos, que niego por ser falso, toda vez que no procede la acumulación solicitada por la actora, por las razones mencionadas y además porque en el juicio que se tramita ante el juzgado OCTAVO DE DISTRITO EN MATERIA CIVIL EN EL DISTRITO FEDERAL, bajo el EXPEDIENTE No. 158/2008-II **ya se citó a las partes para oír sentencia,** y eso hace imposible la acumulación de conformidad con el artículo 72 del Código Federal de Procedimientos Civiles.

7.- Existe la presunción clara de que COMMISA ha solicitado la acumulación para entorpecer el dictado de la sentencia en el incidente de nulidad

por PEP, ya que no hay razón jurídica para la acumulación. Véase el texto del artículo 72 del Código Federal de Procedimientos Civiles, que señala:

> **"Artículo 72.**- Dos o más litigios deben acumularse cuando la decisión de cada uno exige la comprobación, la constitución o la modificación de relaciones jurídicas, derivadas, en todo o en parte, del mismo hecho, el cual tiene necesariamente que comprobarse en todo caso, o tienden en todo o en parte al mismo efecto, o cuando, en dos o más juicios, debe resolverse, total o parcialmente, una misma controversia. Para que proceda la acumulación es necesario que los juicios no estén para verificarse la audiencia final de la primera instancia. La acumulación se hará del más nuevo al más antiguo".

Es preciso señalar que de entrada, se exige la misma condición para los dos juicios que se pretenden acumular, de tal suerte que si en alguno de ellos no se reproduce, es improcedente la acumulación.

En ese tenor, la sentencia que se va a dictar en el incidente de nulidad promovido por PEP ante el JUEZ OCTAVO DE DISTRITO, no requiere que en el presente incidente se compruebe, o constituya o modifique una relación jurídica derivada del laudo. En segundo lugar, como ya lo mencionamos, el incidente de nulidad tiene un mero efecto declarativo como lo es la declaración de que el laudo es nulo o que carece de validez, y el presente incidente tiene un efecto de ejecución o imposición coactiva del laudo, o el pago de una cantidad de dinero. Por último, no hay disposición legal que indique que las controversias deben tramitarse conjuntamente, por el contrario, el Código de Comercio separa claramente ambos incidentes, al tratarse de distintas controversias u objeto de litigio.

De cualquier manera, ya sea de conformidad con el Código de Comercio, o de conformidad con el Código Federal de Procedimientos Civiles, la acumulación de juicios o autos es notoriamente improcedente.

## SOLICITUD DE APLAZAMIENTO DE LA DECISIÓN EN EL PRESENTE JUICIO.

Con fundamento en lo dispuesto por el artículo 1463 del Código de Comercio, solicito que Su Señoría aplace la decisión del presente juicio hasta en tanto el C. Juez Octavo de Distrito en materia Civil en el Distrito Federal, expediente 158/2008 decida el incidente de nulidad de laudo arbitral planteado por PEP contra COMMISA y en el cual ya se citó para oír sentencia, en atención a que como quedó demostrado, no puede procederse a la ejecución del laudo sin antes dirimir la controversia sobre su nulidad

Por otra parte, mi representada está exenta de prestar la garantía exigida por el artículo 387 del Código Federal de Procedimientos Civiles, de conformidad con lo dispuesto por el artículo 4 del mismo ordenamiento, que establece:

> **"Artículo 4.**- Las instituciones, servicios y dependencias de la Administración Pública de la Federación y de las entidades federativas tendrán, dentro del procedimiento judicial, en cualquier forma en que intervengan, la misma situación que otra parte cualquiera; pero nunca podrá dictarse, en su contra, mandamiento de ejecución ni providencia de embargo, **y estarán exentos de prestar las garantías que este Código exija de las partes"**.

# EXHIBIT 1
Part 8

# P R U E B A S DE LA CONTESTACIÓN AL INCIDENTE DE RECONOCIMIENTO Y EJECUCIÓN DEL LAUDO, Y DEL INCIDENTE DE ACUMULACIÓN,

Con fundamento en los artículos 1462 y demás relativos del Código de Comercio, así como en el artículo 360 y demás relativos del Código Federal de Procedimientos Civiles, se ofrecen las pruebas siguientes:

## I. DOCUMENTALES.

**1. Testimonio del Poder General de la escritura No. 25,078** del Libro 366, pasada ante la fe del Notario Público 237 del Distrito Federal, Licenciado ALFREDO AYALA HERRERA, con el cual el suscrito tiene acreditada su personalidad en autos.

Relaciono esta prueba con todos y cada uno de los antecedentes de esta contestación de demanda, así como con las excepciones y defensas opuestas y con todos y cada uno de los hechos de la contestación de la demanda.

Esta prueba es idónea para demostrar la personalidad con que se actúa porque evidencia su otorgamiento en escritura pública de conformidad con la fracción I del artículo 2555 del Código Civil Federal, y porque hace prueba plena en los términos del artículo 1292 del Código de Comercio.

**2. Laudo Final** emitido con fecha 15 de enero de 2008 en el Juicio de Arbitraje, referencia: Caso 13716/CCO/JRF, promovido por Corporación Mexicana de Mantenimiento Integral, S. de R. L. de C. V., en contra de PEMEX Exploración y Producción.

Esta probanza se ofrece con relación a los Capítulos de excepciones y defensas, así como de hechos y de derecho, para demostrar el objeto y la causa o



causas de la excepción o defensa de nulidad, del laudo arbitral.    Este documento es el idóneo para demostrar el objeto y la causa o causas de nulidad, en los términos de los artículos 1461 y 1462 del Código de Comercio, aplicado por mayoría de razón, que exige como documento base de la acción el laudo original o su copia certificada.

Este documento contiene las consideraciones y decisiones del Tribunal Arbitral, que PEP acusa de ser anulables por infringir el artículo 1462 del Código de Comercio. Este es el principal documento con el cual PEP demostrará los vicios de que adolecen las decisiones del Tribunal Arbitral sobre las Controversias: 19, relativa a obstrucciones; 27, relativa a diferencias por tiempos de espera por trabajos en plataformas; 34 y 35, relativas a retraso de trabajos con embarcaciones por falta de acceso; 36, relativa a pagos por suspensiones a los trabajos por malos tiempos; 37 y 39 por trabajos de cruces; la decisión sobre el pago de gastos financieros; la decisión por la cual se declara competente para conocer de todas las controversias; y la decisión de condenar a pagar a PEP por los costos incurridos en el arbitraje; ya sea porque el Tribunal Arbitral dejó en indefensión a PEP, impidiéndole que hiciera valer sus derechos; o se refirió en el laudo a una controversia no prevista en el acuerdo de arbitraje o que excedía los términos del arbitraje; o porque el procedimiento arbitral no se ajustó al acuerdo de las partes plasmado en el compromiso arbitral, o porque el laudo contiene decisiones contrarias al orden público mexicano.

Relaciono esta prueba con todos y cada uno de los puntos de esta contestación de demanda, así como con las excepciones y defensas opuestas y con todos y cada uno de los hechos de la contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante



el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal.

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**3. Comunicación de la Corte Internacional de Arbitraje** de la Cámara Internacional de Comercio de fecha 7 de febrero de 2008, firmada por D. José Ricardo Feris, Consejero de la Secretaría de la Corte Internacional de Arbitraje de la Cámara Internacional de Arbitraje, enviada por mensajería y recibida por la Oficina del Abogado General de Petróleos Mexicanos con fecha 11 de febrero de 2008, la cual se ofrece para demostrar la oportunidad de la presente solicitud.

Este documento es idóneo para demostrar la notificación del laudo en atención a que se realizó por la Secretaría de la Corte Internacional de Arbitraje, en los términos de los artículos 3.2 y 28.1 del Reglamento de Arbitraje de la CCI, ordenamiento procesal conforme al cual se desarrolló el procedimiento de arbitraje, atendiendo al compromiso arbitral contenido en la cláusula 23.3 del Contrato de Obra Pública.

Relaciono esta prueba con todos y cada uno de los antecedentes de esta contestación de demanda, así como en todos y cada uno de los hechos de la contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**4. Contrato No. PEP-O-IT-136/98 (IPC-28)** celebrado entre la empresa Corporación Mexicana de Mantenimiento Integral, S. de R. L. de C. V. (COMMISA) y Pemex Exploración y Producción (PEP) de fecha 4 de septiembre de 1998, documental que se ofrece con relación a los capítulos de antecedentes, así como de hechos y de derecho de las excepciones y defensas de nulidad del laudo arbitral y de contestación de la demanda.    Los hechos que se pretende probar con el mismo son los siguientes:

a) El acuerdo de arbitraje: la cláusula 23.3 Contrato contiene el compromiso en árbitros signado por PEP y COMMISA, mediante el cual se comprometieron a resolver sus controversias técnicas mediante arbitraje, de conformidad con el Reglamento de Arbitraje de la Cámara de Comercio Internacional, así como que el arbitraje tendría como sede la ciudad de México, Distrito Federal, y se desarrollaría en idioma español.

b) El método de resolver controversias entre las partes de conformidad con la cláusula 23 del Contrato, la cual establece en su inciso 23.1, la aplicación de las leyes federales mexicanas para la regulación del Contrato; en su inciso 23.2, el procedimiento de controversia técnica como requisito previo al arbitraje; y el inciso 23.3 que establece el compromiso en árbitros, y la estipulación de que solamente controversias técnicas pueden ser materia de arbitraje.

c) La cláusula 23.2 del Contrato, en su primer párrafo determina la falta de responsabilidad de PEP por daños legales (por negligencia o contractuales), que no estuvieran expresamente pactados en el Contrato.

d) El objeto del Contrato, y la obligación de COMMISA a terminar los trabajos acatando lo establecido en los diversos ordenamientos y en los anexos técnicos del Contrato, contenida en la cláusula1.

e) La remuneración términos de pagos del contrato, de conformidad con la cláusula 3 del Contrato: se demuestra con esta cláusula que se trata de un contrato de obra a precios unitarios; que se estableció un procedimiento de pago formal, que ni el Tribunal Arbitral ni COMMISA, obedecieron; las funciones del supervisor en el procedimiento de pago; la necesidad de elaborar estimación para la obtención del pago, su autorización y presentación en ventanilla única por parte de COMMISA.

f) Los extremos conforme a los cuáles se genera el pago de gastos financieros.

g) Los efectos de las suspensiones a los trabajos por caso fortuito, de conformidad con la cláusula 4.4 y 12.1 y 12.2, que sólo generarían prórrogas y no pagos.

h) La naturaleza formal de las modificaciones contractuales (cláusula 5).

i) Con la cláusula 6 se prueba la obligación del Contratista de realizar trabajos extraordinarios; la definición de éstos; y su remuneración.

j) La naturaleza del Acta de Recepción Física de los Trabajos en los términos de la cláusula 9.2.6 del Contrato;

k) Las condiciones de remuneración por suspensiones a los trabajos, y la definición de gastos no recuperables (cláusula 10.1.2.

l) La ausencia de responsabilidad por caso fortuito, y la consideración que se hace de caso fortuito a las condiciones climáticas adversas, de conformidad con la cláusula 16.

m) Las obligaciones del contratista relativas a embarcaciones (cláusula 16), y

n) Cualquier otra referencia a acuerdos contenidos en el Contrato de Obra Pública.

Este documento es el idóneo para demostrar el acuerdo entre las partes, para la ejecución de la obra pública solicitada, de conformidad con el artículo 214 del Código Federal del Código Federal de Procedimientos Civiles, por encima de testigos o presunciones.

Relaciono esta prueba con todos y cada uno de los puntos de esta contestación de demanda, así como en todos y cada uno de los hechos de las excepciones y defensas opuestas y de la contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante

el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.     Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**5. Anexo B 2 "Generalidades" del Contrato** No. PEP-O-IT-136/98 (IPC-28) celebrado entre la empresa Corporación Mexicana de Mantenimiento Integral, S. de R. L. de C. V. (COMMISA) y Pemex Exploración y Producción (PEP), que forma parte integrante del Contrato de Obra, y que se ofrece con relación a los capítulos de antecedentes, así como de hechos y de derecho IV, secciones tercera y cuarta, V, sección cuarta, VII, secciones 1 y 2, y XI, de excepciones y defensas y de contestación de demanda, para demostrar lo que se entiende por "Programa de Trabajo" (numeral 3), así como el incumplimiento de COMMISA al procedimiento de modificación contractual y la preclusión de su derecho para realizar cualquier reclamación (numeral 5). Este documento es idóneo para demostrar estos hechos o derecho, porque constituye un anexo técnico que desarrolla estos temas con relación al Contrato.

Relaciono esta prueba con todos y cada uno de los antecedentes de esta demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

6. Anexo B 2 "Plan para la Ejecución del Trabajo" del Contrato No. PEP-O-IT-136/98 (IPC-28) celebrado entre la empresa Corporación Mexicana de Mantenimiento Integral, S. de R. L. de C. V. (COMMISA) y Pemex Exploración y Producción (PEP), que se ofrece con relación al Capítulo V, sección primera de excepciones y defensas, para demostrar las condiciones de arribo de las embarcaciones con relación al pago de tarifas de espera. Este documento es idóneo para ese efecto por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de esta contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**7. Convenio Número Uno al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 4 de febrero de 2000; este documento se ofrece con relación a excepciones y defensas, Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue

modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de esta contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**8. Convenio Número Dos al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 31 de mayo de 2000; este documento se ofrece con relación a excepciones y defensas, Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe



formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de esta contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**9. Convenio Número Tres al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 20 de julio de 2000; este documento se ofrece con relación a excepciones y

232

defensas, Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de esta contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**10. Convenio Número Cuatro al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 29 de agosto de 2000; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**11. Convenio Número Cinco al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 3 de noviembre de 2000; ; este documento se ofrece con relación a excepciones y defensas, Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su

Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**12. Convenio Número Seis al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 21 de noviembre de 2000; ; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el

incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**13. Convenio Número Siete al Contrato** No. PEP-O-IT-136/98 (IPC-28) de 26 de diciembre de 2000; ; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**14. Convenio Número Ocho al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 16 de mayo de 2001; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por se parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante



el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.        Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**15. Convenio Número Nueve al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 13 de junio de 2001; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada.        Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoria dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**16. Convenio Número Diez al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 19 de septiembre de 2001; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**17. Convenio Número Once al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 29 de noviembre de 2001; este documento se ofrece con relación a excepciones y defensas, Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales



jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**18. Convenio Número Doce al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 22 de diciembre de 2001; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda



modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**19. Convenio Número Trece al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 1 de febrero de 2002; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

244

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**20. Convenio Número Catorce al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 22 de febrero de 2002; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su

Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**21. Convenio Número Quince al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 16 de marzo de 2002; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el

incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**22. Convenio Número Dieciséis al Contrato** No. PEP-O-IT-136/98 (IPC-28) de fecha 31 de mayo de 2002; ; este documento se ofrece con relación a excepciones y defensas Capítulos IV y XI, relativo a malos tiempos e incompetencia del Tribunal Arbitral, y se ofrece para demostrar que: i) toda modificación se debe formalizar en convenio; ii) que toda cláusula no modificada expresamente continúa imponiéndose a las partes; iii) que la cláusula 12 sobre caso fortuito no fue modificada; y, iii) que la cláusula 23.2 sobre daños legales jamás fue modificada. Este documento es idóneo por ser parte integrante del Contrato.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**23. Reglamento de Arbitraje** de la Cámara de Comercio Internacional vigente a partir del 1º. de enero de 1998. Este documento se ofrece para demostrar el derecho o normas procesales aplicadas al procedimiento de arbitraje; así como con relación a los capítulos de hecho y de derecho I, II, III, V (segunda y cuarta), VIII (tres y cuatro), y IX (tres), de excepciones y defensas para demostrar el incumplimiento que del mismo hizo el Tribunal Arbitral.    Este documento es idóneo porque conforme al mismo se debió desarrollar el procedimiento de Arbitraje.    Por otro lado se ofrece una copia certificada de edición oficial o propia de la Cámara de Comercio Internacional.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante



el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoria, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**24. Acta de Misión.** Este documento emitido por las partes y el Tribunal Arbitral durante el procedimiento de arbitraje, se ofrece con relación a los capítulos de hecho y de derecho II, V (primera, segunda, tercera y cuarta), VIII (nulidad), IX (tres) y XI del presente escrito, y se ofrece para demostrar: i) la fecha del acta de misión, así como la fecha para interponer nuevas demandas; ii) los puntos litigiosos a resolver por el Tribunal Arbitral, y las pretensiones y demandas de las partes; iii) que nunca se le dieron a los árbitros facultades para resolver como amigable componedor o ex aequo et bono; y, iv) la violación grave cometida por el Tribunal Arbitral en contra del procedimiento de arbitraje, al resolver cuestiones que no eran materia litigiosa ni pretensión de ninguna de las partes.

Este documento prueba los hechos listados ya que de conformidad con el artículo 18 del Reglamento de Arbitraje, el Tribunal Arbitral debe consignar en el



mismo, una exposición sumaria de las pretensiones de las partes, y una lista de puntos litigiosos a resolver.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**25. Orden Procesal no. 1 ter.** Este documento constituye una actuación del Tribunal Arbitral y se ofrece con relación a los capítulos de hechos y de derecho II y III de excepciones y defensas para demostrar que en el procedimiento de arbitraje las comunicaciones se remitían por mensajería, fax o correo

electrónico. Este documento es idóneo para ese efecto, en atención a que en la página 11 del Acta de Misión se convino que todas las comunicaciones de las partes y del Tribunal se realizarían en la forma prevista en las órdenes procesales expedidas por el Tribunal Arbitral.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**26. Orden Procesal no. 2** y Comunicación A 24 del Tribunal Arbitral. Estos documentos son actuaciones del Tribunal Arbitral, y se ofrecen con relación a los



# EXHIBIT 1
Part 9

capítulos de hecho y de derecho X y XI, de excepciones y defensas para demostrar que el Tribunal Arbitral decidió resolver las cuestiones de competencia en el Laudo Final, y que por tanto las cuestiones de competencia y jurisdicción planteadas por PEP no dilataron el procedimiento ni le causaron a la contraparte costos adicionales en el arbitraje. Este documento es idóneo para ese efecto puesto que el Tribunal Arbitral dispuso del procedimiento de arbitraje mediante órdenes procesales.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**27. Orden Procesal 6** y Comunicación A 39 del Tribunal Arbitral. Estos documentos son actuaciones del Tribunal Arbitral, y se ofrecen con relación a los capítulos de hecho y de derecho V (segunda) de excepciones y defensas para demostrar la orden y el contenido de las diligencias para mejor proveer ordenadas por el Tribunal Arbitral, así como la violación grave del procedimiento arbitral por parte del Tribunal Arbitral.; de igual manera se ofrecen con relación al capítulo VI, de excepciones y defensas para demostrar que el Tribunal Arbitral no entendió las argumentaciones y excepciones de PEP, y que resolvió la controversia de cruces con pruebas deficientes. Este documento es idóneo para ese efecto puesto que el Tribunal Arbitral dispuso del procedimiento de arbitraje mediante órdenes procesales.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su



Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**28. Comunicación C 44 de COMMISA** de fecha 12 de marzo de 2007. Esta comunicación se ofrece con relación al capítulo V (segunda) de excepciones y defensas opuestas en este ocurso, y se ofrece para demostrar cuál era la pretensión de COMMISA con relación a las controversias técnicas 34 y 35, así como la violación grave del procedimiento arbitral por parte del Tribunal Arbitral. Este documento es idóneo para ese efecto puesto que proviene directamente de la contraparte, COMMISA.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.     Sin embargo, en caso de juzgarlo pertinente Su

Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**29. Comunicación A 49 del Tribunal Arbitral** de fecha 31 de julio de 2007. Esta actuación del Tribunal Arbitral se ofrece con relación al capítulo V (segunda) de excepciones y defensas del presente escrito, para demostrar que el Tribunal introdujo nuevas demandas al pleito con el pretexto de solicitar prueba adicional a las partes; que dejó en indefensión a PEP, y que violó gravemente el procedimiento de arbitraje. Este documento es idóneo para ese fin porque proviene directamente del Tribunal Arbitral, y se encuentra relacionado en las consideraciones del Tribunal.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal,



Expediente 227/2008.     Sin embargo, en caso de juzgarlo pertinente Su
Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en
Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez
Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que
acompaño, como ANEXO UNO.

**30. Comunicación C 47 de COMMISA** de fecha 3 de agosto de 2007. Esta
actuación de COMMISA  se ofrece con relación al capítulo V (segunda) de
excepciones y defensas contenidas en el presente escrito, para demostrar que el
Tribunal introdujo nuevas demandas al pleito con el pretexto de solicitar prueba
adicional a las partes; que dejó en indefensión a PEP, y que violó gravemente el
procedimiento de arbitraje.        Este documento es idóneo para ese fin porque
proviene directamente de la demandante en el arbitraje COMMISA.

Relaciono esta prueba con todos y cada uno de los puntos de la
contestación de demanda, así como en todos y cada uno de los hechos de
excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi
poder el documento ofrecido como prueba, por haberlo presentado en el juicio
incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante
el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente
No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se
me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,
toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita
ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el
incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita

ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**31. Comunicación A 50 del Tribunal Arbitral** de 6 de agosto de 2007. Esta comunicación del Tribunal Arbitral se ofrece con relación al capítulo V (segunda) excepciones y defensas del presente escrito, para demostrar que el Tribunal introdujo nuevas demandas al pleito con el pretexto de solicitar prueba adicional a las partes; que dejó en indefensión a PEP, y que violó gravemente el procedimiento de arbitraje. Este documento es idóneo para ese fin porque proviene directamente del Tribunal Arbitral.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el



incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**32. Comunicación R 39 de PEP** de fecha 7 de agosto de 2007. Este comunicado de PEP se ofrece con relación al capítulo V (segunda) excepciones y defensas del presente escrito, para demostrar que PEP se opuso en su debida oportunidad a la actuación del Tribunal Arbitral tendiente a violentar gravemente el procedimiento de Arbitraje. Este es documento es idóneo para ese fin porque demuestra que PEP no renunció a su derecho a objetar de nulidad la decisión de las controversias 34 y 35, en los términos del artículo 33 del Reglamento de Arbitraje.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**33. Comunicación A 51 del Tribunal Arbitral** de 10 de agosto de 2007. Esta comunicación del Tribunal Arbitral se ofrece con relación al capítulo V (segunda) excepciones y defensas del presente escrito, para demostrar que el Tribunal Arbitral decidió posponer la objeción planteada por PEP en su comunicado R 39, hasta el dictado del Laudo Final. Este documento es idóneo para demostrar el hecho por ser su autor el Tribunal Arbitral.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.       Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**34. Comunicación C 49 de COMMISA** de fecha 21 de agosto de 2007. Esta actuación de COMMISA  se ofrece con relación al capitulo V (segunda) excepciones y defensas del presente escrito, para demostrar que el Tribunal introdujo nuevas demandas al pleito con el pretexto de solicitar prueba adicional a las partes; que dejó en indefensión a PEP, y que violó gravemente el procedimiento de arbitraje.       Este documento es idóneo para ese fin porque proviene directamente de la demandante COMMISA.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**35. Documento COM/EP2800/2003-5556 de fecha 8 de abril de 2003,** y recibido por PEP con esa misma fecha. Este documento se ofrece con relación a los capítulos de hecho y de derecho IV (tercera), VIII y XI, excepciones y defensas para demostrar que la Controversia Técnica 36 relativa a malos tiempos, fue presentada extemporáneamente, después de la terminación de los trabajos; que era necesaria la formalización de la controversia técnica como requisito previo al arbitraje; que el Supervisor del Contrato se encontraba todavía en funciones en esa fecha. Este documento es idóneo para ese efecto porque fue citado en el voto particular del Lic. Darío Oscós Coria, coárbitro designado, como prueba de su voto disidente.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio

incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**36. Escrito de Alegatos de PEP.** Esta actuación de PEP dentro del procedimiento de arbitraje, se ofrece con relación al capítulo XI de excepciones y defensas para demostrar que no todas las reclamaciones de COMMISA fueron formalizadas como controversias técnicas, y para desmentir al Tribunal Arbitral sobre el punto, y de igual manera evidenciar su descuido en cuanto a la valoración de las pruebas.

Este documento es idóneo para el efecto porque el Tribunal Arbitral cita este documento expresamente, para tener por acreditados los hechos que se pretende desmentir.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**37. Comunicación de 29 de junio de 2006,** remitida por la Licenciada Deva Villanúa Gómez, exhibiendo la relación de documentos presentados en las audiencias del caso. Este documento se ofrece como prueba con relación al capítulo V (segundo) excepciones y defensas para demostrar que el Tribunal Arbitral no motivo ni fundamento el Laudo, dado que su texto contradice puntualmente las consideraciones del Tribunal. Este documento es idóneo puesto que la suscrita es Secretaria Administrativa del Tribunal Arbitral de conformidad con el apartado E del Acta de Misión.

263

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008. Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**38. Orden de Cambio No. 1 Rev. 2 del Contrato** PEP-O-IT-136/98. Este documento se ofrece con relación al capítulo V (primera y segunda) excepciones y defensas para demostrar que PEP no se comprometió a pagar tarifas de espera por los retrasos iniciales de las embarcaciones; que el Tribunal Arbitral de manera oficiosa introdujo nuevas demandas al pleito; que en las diligencias para mejor



proveer el Tribunal Arbitral actuó de mala fe; y en general, la violación grave al procedimiento arbitral por parte del Tribunal Arbitral.

Este documento es idóneo para producir el efecto probatorio señalado, porque el Tribunal Arbitral fundo su decisión precisamente en este documento.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**39. Documento COM/EP2800/99-0302** de fecha 15 de marzo de 1999. Este documento se ofrece con relación a los capítulos VIV, V y XI excepciones y



defensas del presente escrito, para demostrar con relación a la controversia sobre malos tiempos e incompetencia, que no hubo formalización de controversia técnica como requisito previo al arbitraje; y con relación a la controversia por retrasos iniciales, para demostrar que COMMISA no demostró la causación de daño alguno, y que el Tribunal Arbitral condenó a pagar prestaciones que no se devengaron. Este documento es idóneo para ese efecto, porque el Tribunal Arbitral se refiere expresamente a este documento para justificar que COMMISA formalizó controversia técnica con relación a los malos tiempos, y para determinar las tarifas que PEP debía pagar por los retrasos en los trabajos con embarcaciones.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**40. Acta No. DEPC-RPEP-IPC-28-001-2002** de fecha 30 de agosto de 2002  que consigna la Recepción Física Total de los Trabajos del Contrato No. PEP-O-IT-136/98, celebrado entre Pemex Exploración Y Producción y la compañía Corporación Mexicana de Mantenimiento Integral, S. de R. L. de C. V.   Este documento se ofrece con relación a los capítulos de hechos y de derecho I, IV, V, VII, VIII y X, excepciones y defensas para demostrar la fecha de terminación de los trabajos; que en la fecha de elaboración del acta de misión COMMISA no había formalizado sus controversias técnicas relativas a malos tiempos, retrasos iniciales, obstrucciones, pagos de diferencias por trabajos en plataformas; que el derecho de COMMISA para reclamar sobre estas materias había precluido; que en estas materias COMMISA no cumplió con los requisitos previos del Contrato para someterse al arbitraje; y, que el Tribunal Arbitral excedió su mandato y resolvió controversias no contempladas en el acuerdo de arbitraje. Este documento es idóneo para ese efecto puesto que es referido en el Voto Particular del Lic. Dario Oscós Coria, coárbitro disidente.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.     Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**41. Documento EP2800/COM/99-1696** de fecha 11 de junio de 1999. Este documento se ofrece como prueba con relación al capítulo V (segundo) excepciones y defensas para demostrar que el Tribunal Arbitral no motivó ni fundamentó el Laudo, dado que su texto contradice puntualmente las consideraciones del Tribunal.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**42. Documento EP2800/COM/99 1604** de 21 mayo de 1999.    Este documento se ofrece como prueba con relación al capítulo V (segundo) excepciones y defensas para demostrar que el Tribunal Arbitral no motivó ni fundamentó el Laudo, dado que su texto contradice puntualmente las consideraciones del Tribunal.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.      Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**43. Documento.** Consistente en el voto particular emitido por el árbitro integrante del Tribunal Darío Ulises Oscós Coria, en el laudo arbitral correspondiente al procedimiento de arbitraje 13716/CCO/JRF administrado por la Corte Internacional de Arbitraje de la Cámara Internacional de Comercio, y que forma parte del Laudo arbitral que se impugna, que se ofrece para demostrar todos los hechos al mismo imputados.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**44. Documento.-** Consistente en todo lo actuado en el procedimiento arbitral 13716/CCO/JRF administrado por la Corte Internacional de Arbitraje de la Cámara Internacional de Comercio, siendo actora COMMISA y demandado PEP, misma que exhibiré en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal a quien ya se le solicitó como se acredita con la copia de dicha solicitud que para tal fin se exhibe, sin embargo, de juzgarlo pertinente Su Señoría, solicito de requiera éste para que el mencionado juez remita el expediente correspondiente.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante

el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**45. Artículo de Revista:** El orden público como motivo para denegar el reconocimiento y la ejecución de laudos arbitrales internacionales, suscrito por el Dr. José Luis Sequeiros, que se ofrece con relación al capítulo IX de excepciones y defensas de este ocurso para demostrar el derecho internacional privado citado, y la violación al orden público cometido en el laudo.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante

el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**46. Artículo de Revista:** El orden público como causa de denegación del reconocimiento de un laudo arbitral extranjero: criterios para su aplicación práctica, signado por Alvaro López de Argumedo Piñeiro y Marcos De Benito Llopis-Llombart, que se ofrece con relación al capítulo IX de excepciones y defensas de este ocurso para demostrar el derecho internacional privado citado, y la violación al orden público cometido en el laudo.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante

el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.       Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**47.- Expediente 1950/2004** formado con motivo del juicio de Amparo promovido por CORPORACIÓN MEXICANA DE MANTENIMIENTO INTEGRAL, R. L. DE C. V., en contra de PEMEX EXPLORACIÓN Y PRODUCCIÓN y otras autoridades.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.     Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

**48.- Procedimiento arbitral 13716/CCO/JRF** administrado por la Corte Internacional de Arbitraje de la Cámara Internacional de Comercio, certificación que fue expedida por D. Jasón A. Fry, Secretario General de la Corte Internacional de Arbitraje de la CCI, así como de las actuaciones que se precisaron en esta prueba, y que fue presentada por escrito de fecha 5 de Junio del 2008.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

Bajo protesta de decir verdad manifiesto a Su Señoría que no tengo en mi poder el documento ofrecido como prueba, por haberlo presentado en el juicio incidental de nulidad del laudo arbitral promovido por PEP contra COMMISA ante el Juzgado Octavo de Distrito en materia Civil en el Distrito Federal, Expediente No. 158/2008.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, toda vez que dicho documento obra en el expediente No. 158/2008, que se tramita ante esa autoridad, por haberlo presentado PEP en ese juicio en que se tramita el incidente de nulidad del laudo arbitral cuyo reconocimiento y ejecución se tramita ante Su Señoría, C. Juez Sexto de Distrito en Materia Civil en el Distrito Federal, Expediente 227/2008.    Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO UNO.

## II. DOCUMENTAL PÚBLICA.

Consistente en copia de todas las actuaciones del expediente 158/2008-II seguido ante el JUEZ OCTAVO DE DISTRITO en Materia Civil de Distrito Federal, que se ofrece con relación a todos los hechos de la contestación en la cual se haga referencia a este escritoo, y para demostrar especialmente la existencia de un procedimiento para anular el laudo, y la improcedencia de la acumulación, así como de todos aquellos hechos que deriven de su examen.

Exhibiré este documento en el momento procesal oportuno y una vez que se me expida por el C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, Sin embargo, en caso de juzgarlo pertinente Su Señoría, solicito que Su Señoría dirija oficio al C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal,

Demuestro que ya he solicitado el documento mencionado del C. Juez Octavo de Distrito en Materia Civil en el Distrito Federal, con el documento que acompaño, como ANEXO DOS.

**III. PRESUNCIONAL.**

Consistente en aquellas presuncionales que la Ley o ese Juzgador deriven de lo actuado y por actuar y que me favorezcan.

Relaciono esta prueba con todos y cada uno de los puntos de la contestación de demanda, así como en todos y cada uno de los hechos de excepciones y defensas y contestación de la demanda.

# D E R E C H O

Son aplicables al presente caso las normas contenidas en el artículo 1462 del Código de Comercio, así como en el artículo 360, siguientes y demás relativos del Código Federal de Procedimientos Civiles.

**Por lo expuesto y fundado, A USTED C. JUEZ, atentamente pido que se sirva:**

PRIMERO.- Tenerme por presentado con este escrito dando contestación a la demanda presentada por la actora y por opuestas las excepciones que hago valer, consistentes en incompetencia, litispendencia y nulidad del laudo..

SEGUNDO.- En virtud de que se ha opuesto la excepción de incompetencia por declinatoria, ordenar la suspensión del procedimiento y en su oportunidad declarar la procedencia de la misma, absteniéndose Su Señoría de conocer del presente negocio.

TERCERO.- En su caso, resolver la improcedencia de las prestaciones del actor y la procedencia de las defensas y excepciones del demandado.

277

PROTESTO A USTED MI CONSIDERACIÓN RESPETUOSA.

México, Distrito Federal a quince de agosto del dos mil ocho.


LIC. CLAUDIO ERIC DEVEZE MONTOYA
**Apoderado de PEP**